IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

REMBRANDT TECHNOLOGIES, LP,

                    Plaintiff,

    v.

COMCAST CORPORATION; COMCAST
CABLE COMMUNICATIONS; LLC; and
COMCAST OF PLANO, LP,

                    Defendants.

Civil Action No. 2:05-cv-443-TJW
(JURY)

## DEFENDANT'S NOTICE OF SERVICE OF INITIAL DISCLOSURES

Pursuant to Federal Rule of Civil Procedure 5, Defendant Comcast Corporation, served COMCAST CORPORATION'S INITIAL DISCLOSURES PURSUANT TO DOCKET CONTROL ORDER AND DISCOVERY ORDER to all counsel of record on June 1, 2006.

Respectfully submitted,

_____/s/_____

Jennifer Haltom Doan
Texas Bar No. 08809050
John Peyton Perkins, III
Texas Bar No. 24043457
HALTOM & DOAN, LLP
6500 N. Summerhill Road, Suite 1A
P. O. Box 6227
Texarkana, TX 75505-6227
Telephone:  903-255-1000
Facsimile:  903-255-0800
E-mail:  jdoan@haltomdoan.com

Brian L. Ferrall
Leo L. Lam
Eric H. MacMichael
Steven K. Yoda
Keker & Van Nest, LLP
710 Sansome Street
San Francisco, CA 94111-1704
Telephone: 415-676-2235
Facsimile: 415-397-7188

**ATTORNEYS FOR
DEFENDANTS COMCAST
CORPORATION, COMCAST
CABLE COMMUNICATIONS,
LLC AND COMCAST OF
PLANO, LP**

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this motion was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by certified mail, return receipt requested, on this 8th day of June, 2006.

_____
        /s/
John Peyton Perkins, III

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| REMBRANDT TECHNOLOGIES, LP | § | |
| | § | |
| V. | § | CIVIL NO. 2:05-CV-443(TJW) |
| | § | |
| COMCAST CORPORATION, ET AL. | § | |

## ORDER APPOINTING MEDIATOR

IT IS ORDERED that Judge Robert Faulkner, JAMS, 8401 N. Central Expressway, Suite 610, Dallas, Texas 75225, telephone number 214/744-5267 and fax number 214/720-6010, is hereby appointed as mediator in the above referenced case. The Court designates plaintiff's counsel to be responsible for timely contacting the mediator and defendant's counsel to coordinate a date for the mediation. Mediation shall be completed by **May 24, 2007.**

Mediation shall be governed by the Court-Annexed Mediation Plan, Appendix H to the Local Court Rules for the Eastern District of Texas. In particular, the Mediation Plan requires the presence at the mediation conference of all parties, corporate representatives, and any other required claims professionals (e.g., insurance adjusters, etc.) with full authority to negotiate a settlement. Exceptions to this requirement may be made only by the presiding judge in writing.

SIGNED this 15th day of June, 2006.

_T. John Ward_

T. JOHN WARD
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| REMBRANDT TECHNOLOGIES, LP | § | |
| | § | |
| V. | § | CIVIL NO. 2:05-CV-443(TJW) |
| | § | |
| COMCAST CORPORATION, ET AL. | § | |

**AMENDED DISCOVERY ORDER**

After a review of the pleaded claims and defenses in this action, in furtherance of the

management of the court's docket under Fed. R. Civ. P. 16, and after receiving the input of the

parties to this action, it is ORDERED AS FOLLOWS:

1.   **Disclosures.**   Except as provided by paragraph 1(h), within thirty (30) days after the

Scheduling Conference, each party shall disclose to every other party the following

information:

(a)      the correct names of the parties to the lawsuit;

(b)      the name, address, and telephone number of any potential parties;

(c)      the legal theories and, in general, the factual bases of the disclosing party's claims or

defenses (the disclosing party need not marshal all evidence that may be offered at

trial);

(d)      the name, address, and telephone number of persons having knowledge of relevant

facts, a brief statement of each identified person's connection with the case, and a

brief, fair summary of the substance of the information known by any such person;

(e)      any indemnity and insuring agreements under which any person or entity carrying on

an insurance business may be liable to satisfy part or all of a judgment entered in this

action or to indemnify or reimburse for payments made to satisfy the judgment;

(f)     any settlement agreements relevant to the subject matter of this action;

(g)     any statement of any party to the litigation;

(h)     for any testifying expert, by the date set by the court in the Docket Control Order, each party shall disclose to the other party or parties:

     a.     the expert's name, address, and telephone number;

     b.     the subject matter on which the expert will testify;

     c.     if the witness is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the disclosing party regularly involve giving expert testimony:

          1.     all documents, tangible things, reports, models, or data compilations that have been provided to, reviewed by, or prepared by or for the expert in anticipation of the expert's testimony; and

          2.     the disclosures required by Fed. R. Civ. P. 26(a)(2)(B) and Local Rule CV-26.

     d.     for all other experts, the general substance of the expert's mental impressions and opinions and a brief summary of the basis for them or documents reflecting such information.

2.     **Protective Orders.**   The Court has issued a protective order in this case.

3.     **Additional Disclosures.**    In addition to the disclosures required in Paragraph 1 of this Order, at the Scheduling Conference, the court shall amend this discovery order and require each party, without awaiting a discovery request, to provide, to the extent not already provided, to every other party the following:

(a)     the disclosures required by the Patent Rules for the Eastern District of Texas;

(b)     **By June 16, 2006**, a copy of all documents, data compilations, and tangible things in the possession, custody, or control of the party that are relevant to the case, except to the extent these disclosures are affected by the time limits set forth in the Patent Rules for the Eastern District of Texas.   By written agreement of all parties, alternative forms of disclosure may be provided in lieu of paper copies.  For example, the parties may agree to exchange images of documents electronically or by means of computer disk; or the parties may agree to review and copy disclosure materials at the offices of the attorneys representing the parties instead of requiring each side to furnish paper copies of the disclosure materials;

(c)     within forty-five (45) days after the Scheduling Conference, a complete computation of any category of damages claimed by any party to the action, making available for inspection and copying as under Rule 34, the documents or other evidentiary material on which such computation is based, including materials bearing on the nature and extent of injuries suffered; and

(d)     within forty-five (45) days after the Scheduling Conference, those documents and authorizations described in Local Rule CV-34; and

The court shall order these disclosures in the absence of a showing of good cause by any party objecting to such disclosures.

4.     **Discovery Limitations**.  Discovery is limited to the disclosures described in Paragraphs 1 and 3 together with **35 interrogatories**, **60 requests for admissions (except that the parties may serve unlimited requests for admission for authentication purposes),** the depositions of the parties, depositions on written questions of custodians of business records for third

parties, **depositions of four (4) expert witnesses per side,** and **sixty (60) additional hours of third party and Rule 30(b)(1) depositions per side.** "Side" means a party or a group of parties with a common interest. Any party may move to modify these limitations for good cause.

5.  **Privileged Information**. There is no duty to disclose privileged documents or information. However, the parties are directed to meet and confer concerning privileged documents or information after the Scheduling Conference. Within sixty (60) days after the Scheduling Conference, the parties shall exchange privilege logs identifying the documents or information and the basis for any disputed claim of privilege in a manner that, without revealing information itself privileged or protected, with enable the other parties to assess the applicability of the privilege or protection. Any party may move the court for an order compelling the production of any documents or information identified on any other party's privilege log. If such a motion is made, the party asserting privilege shall respond to the motion within the time period provided by Local Rule CV-7. The party asserting privilege shall then file with the Court within thirty (30) days of the filing of the motion to compel any proof in the form of declarations or affidavits to support their assertions of privilege, along with the documents over which privilege is asserted for *in camera* inspection. If the parties have no disputes concerning privileged documents or information, then the parties shall inform the court of that fact within sixty (60) days after the Scheduling Conference.

6.  **Pre-trial disclosures**. Each party shall provide to every other party regarding the evidence that the disclosing party may present at trial as follows:

    (a)  The name and, if not previously provided, the address and telephone number, of each witness, separately identifying those whom the party expects to present at trial and

those whom the party may call if the need arises.

(b)     The designation of those witnesses whose testimony is expected to be presented by means of a deposition and, if not taken stenographically, a transcript of the pertinent portions of the deposition testimony.

(c)     An appropriate identification of each document or other exhibit, including summaries of other evidence, separately identifying those which the party expects to offer and those which the party may offer if the need arises.

These disclosures shall be made at least 30 days before trial. Within 14 days thereafter, unless a different time is specified by the court, a party may serve and file a list disclosing (1) any objections to the use under Rule 32(a) of a deposition designated by another party under subparagraph (B) and (2) any objections, together with the grounds therefor, that may be made to the admissibility of materials identified under subparagraph (C). Objections not so disclosed, other than objections under Rules 402 and 403 of the Federal Rules of Evidence, shall be deemed waived unless excused by the court for good cause shown.

7.     **Signature.** The disclosures required by this order shall be made in writing and signed by the party or counsel and shall constitute a certification that, to the best of the signer's knowledge, information and belief, such disclosure is complete and correct as of the time it is made. If feasible, counsel shall meet to exchange disclosures required by this order; otherwise, such disclosures shall be served as provided by Fed. R. Civ. P. 5. The parties shall promptly file a notice with the court that the disclosures required under this order have taken place.

8.     **Duty to Supplement**. After disclosure is made pursuant to this order, each party is under a duty to supplement or correct its disclosures immediately if the party obtains information on the basis of which it knows that the information disclosed was either incomplete or

incorrect when made, or is no longer complete or true.

9.    **Disputes.**

(a)    Except in cases involving claims of privilege, any party entitled to receive disclosures may, after the deadline for making disclosures, serve upon a party required to make disclosures a written statement, in letter form or otherwise, of any reason why the party entitled to receive disclosures believes that the disclosures are insufficient. The written statement shall list, by category, the items the party entitled to receive disclosures contends should be produced. The parties shall promptly meet and confer. If the parties are unable to resolve their dispute, then the party required to make disclosures shall, within fourteen (14) days after service of the written statement upon it, serve upon the party entitled to receive disclosures a written statement, in letter form or otherwise, which identifies (1) the requested items that will be disclosed, if any, and (2) the reasons why any requested items will not be disclosed. The party entitled to receive disclosures may thereafter file a motion to compel.

(b)    Counsel are directed to contact the chambers of the undersigned for any "hot-line" disputes before contacting the Discovery Hotline provided by Local Rule CV-26(e). If the undersigned is not available, the parties shall proceed in accordance with Local Rule CV-26(e).

10.    **No Excuses.**  A party is not excused from the requirements of this Discovery Order because it has not fully completed its investigation of the case, or because it challenges the sufficiency of another party's disclosures, or because another party has not made its disclosures. Absent court order to the contrary, a party is not excused from disclosure

because there are pending motions to dismiss, to remand or to change venue.

11.   **Filings.**  Any filings in excess of twenty (20) pages, counsel is directed to provide a courtesy

copy to chambers, simultaneously with the date of filing.

12.   **Modifications to Patent Rules.**   The attached Appendix C applies to this case and

supplements the Patent Rules for the Eastern District of Texas.  These modifications are not

intended to apply to any other case except as may be expressly provided by order of this

Court.

SIGNED this 15th day of June, 2006.

_____

T. JOHN WARD
UNITED STATES DISTRICT JUDGE

**APPENDIX C**

**ORDER RELATING TO PATENT CASES BEFORE JUDGE T. JOHN WARD**

The Court issues certain modifications to the Eastern District Patent Rules.   The modifications relate to three issues: (1) Notice Requirements, (2) Infringement and Invalidity Contentions for Software, and (3) Deadlines Related to Claim Construction.

**I.      Notice Requirements**

The Court has seen a dramatic increase in the number of disputes related to parties serving "supplemental," "additional," or "revised" P.R. 3-1 or P.R. 3-3 disclosures.  In the past, parties were not required to provide notice to the Court regarding compliance with P.R. 3-1 or P.R. 3-3.  Thus, certain parties attempted to avoid the rule that Preliminary Contentions are final except as provided in P.R. 3-6 and P.R. 3-7.  Accordingly, the Court modifies P.R. 3-1 and P.R. 3-3 in the following manner:

> **P.R. 3-1(g):**  Any time a party claiming patent infringement serves Preliminary Infringement Contentions on an opposing party, the party claiming patent infringement shall also file with the Court a Notice of Compliance with P.R. 3-1.

> **P.R. 3-3(e):**  Any time a party opposing patent infringement serves Preliminary Invalidity Contentions on an opposing party, the party opposing patent infringement shall also file with the Court a Notice of Compliance with P.R. 3-3.

Under this Court's interpretation of the Patent Rules, leave of Court is required for serving "amended," "supplemental," or "revised" P.R. 3-1 or P.R. 3-3 disclosures.  The Court will strike "amendments," "supplements," or "revisions" of P.R. 3-1 or P.R. 3-3 disclosures that do not comply with P.R. 3-6 or P.R. 3-7.

**II.      Infringement and Invalidity Contentions for Software**

Additional modifications to the Patent Rules regarding P.R. 3-1 and P.R. 3-3 are being made to reduce discovery disputes and motion practice resulting from patents that contain software claim limitations. The Patent Rules require a party asserting claims of patent infringement to take a firm position in the litigation as it relates to infringement early on in the case. This and other courts in the Eastern District of Texas, however, recognize that software claim limitations present unique challenges for the parties because parties claiming patent infringement do not typically have access to an opposing party's source code before filing suit. At the same time, parties opposing a claim for patent infringement are hampered in their ability to prepare a defense absent specific infringement contentions from the party asserting claims of patent infringement.

The lack of access to source code coupled with an opponent's right to prepare a defense has led to numerous discovery disputes. To alleviate these disputes and to provide clear direction to the parties as to their rights and responsibilities under the Patent Rules, the Court modifies the Patent Rules in a manner consistent with such cases as *American Video Graphics, L.P. v. Electronic Arts, Inc.*, 359 F. Supp. 2d 558 (E.D. Tex. 2005).

The Court's modifications to P.R. 3-1and P.R. 3-3 are set out below.

**P.R. 3-1 (h):** If a party claiming patent infringement asserts that a claim element is a software limitation, the party need not comply with P.R. 3-1 for those claim elements until 30 days after source code for each Accused Instrumentality is produced by the opposing party. Thereafter, the party claiming patent infringement shall identify, on an element-by-element basis for each asserted claim, what source code of each Accused Instrumentality allegedly satisfies the software limitations of the asserted claim elements.

**P.R. 3-3(f):** If a party claiming patent infringement exercises the provisions of P.R. 3-1(g), the party opposing a claim of patent infringement may serve, not later than 30 days after receipt of a P.R. 3-1(g) disclosure, supplemental "Preliminary Invalidity Contentions" that amend only those claim elements identified as software limitations by the party claiming patent infringement.

Thus, if a party claiming patent infringement asserts that a claim element (or the entire claim)

is software, that party need only identify the element as a software limitation in its initial compliance with P.R. 3-1, but does not need to identify where such limitation is met in the Accused Instrumentality. After receipt of the source code for an Accused Instrumentality, the party is permitted 30 days to supplement its P.R. 3-1 disclosure to identify, with specificity, the source code of the Accused Instrumentality that allegedly satisfies the software claim elements. P.R. 3-1(g) does not allow Plaintiff the opportunity to modify or amend any non-software claim contentions.

Likewise, once a party opposing a claim of patent infringement is in receipt of a P.R. 3.1(g) disclosure, the party is allowed 30 days to modify its initial P.R. 3-3 disclosures, but only to the extent the modifications relate to the software claim elements identified by the party claiming patent infringement. P.R. 3-3(e) does not allow a party opposing a claim of infringement an opportunity to modify or amend any non-software contentions.

## III.    Claim Construction Deadlines

The final amendments to the Patent Rules relate to claim construction deadlines. In the Eastern District Patent Rules, claim construction deadlines are triggered by the filing of the parties' Infringement and Invalidity Contentions. The increase of patent cases before this Court has resulted in a large number of Claim Construction hearings and, as a result, strict application of the Patent Rules yields a P.R. 4-5 deadline approximately three months or more before Court could accommodate a Claim Construction Hearing.

To facilitate the case, resolve discovery disputes, and have claim construction hearings a reasonable time after briefing is complete, the Court modifies the deadlines in P.R. 4-1 and P.R. 4-3 as set forth below:

**4-1. Exchange of Proposed Terms and Claim Elements for Construction.**
**(a)** Not later than *140 days before the date set for the Claim Construction Hearing*, each party shall simultaneously exchange a list of claim terms, phrases, or clauses

which that party contends should be construed by the Court, and identify any claim element which that party contends should be governed by 35 U.S.C. § 112(6).

**4-3. Joint Claim Construction and Prehearing Statement.**
Not later than ***30 days after "Exchange of Preliminary Claim Constructions and Extrinsic Evidence" in compliance with P.R. 4.2***, the parties shall complete and file a Joint Claim Construction and Prehearing Statement, which shall contain the following information:

Thus, the Court's modifications will make the trigger of P.R. 4-1 through P.R. 4-5 the date of the Claim Construction Hearing. For clarification, the Court notes that the "140 days" set forth in P.R. 4-1 was not chosen to confuse the parties but was instead chosen so as to be evenly divisible by 7. Thus, whatever the date of the Claim Construction Hearing, the deadline for complying with P.R. 4-1 will always fall on a weekday. If that weekday is a Federal Holiday, the deadline for complying with P.R. 4-1 is extended to the first day that is not a Saturday, Sunday or other Federal Holiday.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| REMBRANDT TECHNOLOGIES, LP | § | |
| | § | |
| V. | § | CIVIL NO. 2:05-CV-443(TJW) |
| | § | |
| COMCAST CORPORATION, ET AL. | § | |

**DOCKET CONTROL ORDER**

In accordance with the case scheduling conference held herein on the 2nd day of May, 2006,

it is hereby

**ORDERED** that the following schedule of deadlines is in effect until further order of this

court:

**August 6, 2007**             Jury Selection - 9:00 a.m. in **Marshall, Texas**

**July 26, 2007**              Pretrial Conference - 9:30 a.m. in **Marshall, Texas**

**July 20, 2007**              Joint Pretrial Order, Joint Proposed Jury Instructions and
Form of the Verdict.

**July 23, 2007**              **Motions in Limine (due three days before final Pre-Trial
Conference).**

Three (3) days prior to the pre-trial conference provided for
herein, the parties shall furnish a copy of their respective
Motions in Liming to the Court by facsimile transmission,
**903/935-2295.** The parties are directed to confer and advise
the Court on or before 3:00 o'clock p.m. the day before the
pre-trial conference which paragraphs are agreed to and those
that need to be addressed at the pre-trial conference.

| | |
|---|---|
| **July 6, 2007** | Response to Dispositive Motions (including *Daubert* motions)[1] <br><br> **Responses to dispositive motions filed prior to the dispositive motion deadline, including *Daubert* Motions, shall be due in accordance with Local Rule CV-7(e). Motions for Summary Judgment shall comply with Local Rule CV56.** |
| **June 22, 2007** | For Filing Dispositive Motions and any other motions that may require a hearing (including *Daubert* motions) |
| **May 24, 2007** | Mediation to be completed |
| **May 23, 2007** | Defendant to Identify Trial Witnesses |
| **May 9, 2007** | Plaintiff to Identify Trial Witnesses |
| **May 9, 2007** | Discovery Deadline |
| **(Three weeks after the final expert witness report is due.)** | Expert Discovery Deadline |
| _____ | **30** Days after claim construction ruling <br> Designate Rebuttal Expert Witnesses other than claims construction <br> Expert witness report due <br> Refer to Discovery Order for required information. |

_____

[1]    The parties are directed to Local Rule CV-7(d), which provides in part that "[i]n the event a party fails to oppose a motion in the manner prescribed herein the court will assume that the party has no opposition." Local Rule CV-7(e) provides that a party opposing a motion has **12 days, in addition to any added time permitted under Fed. R. Civ. P. 6(e),** in which to serve and file a response and any supporting documents, after which the court will consider the submitted motion for decision.

| | |
|---|---|
| _____ | **15** Days after claim construction ruling<br>Comply with P.R. 3-8. |
| _____ | **15** Days after claim construction ruling<br>Party with the burden of proof to designate Expert Witnesses other than claims construction<br>Expert witness report due<br>Refer to Discovery Order for required information. |
| **February 8, 2007** | Claim construction hearing 9:00 a.m., **Marshall, Texas.** |
| **January 17, 2007** | Comply with P.R. 4-5(c). |
| **January 10, 2007** | Comply with P.R. 4-5(b). |
| **December 27, 2006** | Comply with P.R. 4-5(a). |
| **December 4, 2006** | Discovery deadline–claims construction issues |
| **November 27 2006** | Respond to Amended Pleadings |
| **November 9, 2006** | Amend Pleadings<br>**(It is not necessary to file a Motion for Leave to Amend before the deadline to amend pleadings except to the extent the amendment seeks to add a new patent in suit. It is necessary to file a Motion for Leave to Amend after November 9, 2006).** |
| **November 9, 2006** | Comply with P.R. 4-3. |
| **October 10, 2006** | Comply with P.R. 4-2. |
| **July 7, 2006** | Privilege Logs to be exchanged by parties<br>(or a letter to the Court stating that there are no disputes as to claims of privileged documents). |

| September 20, 2006 | Comply with P.R. 4-1. |
| June 16, 2006 | Comply with P.R. 3-3. |
| June 1, 2006 | Join Additional Parties |
| May 12, 2006 | Comply with P.R. 3-1. |

IT IS ORDERED that the Court will appoint a mediator in the above referenced case, as the parties have been unable to agree.

IT IS FURTHER ORDERED that the Court will appoint a technical advisor in this case, as the parties have been unable to agree.

## OTHER LIMITATIONS

1.    All depositions to be read into evidence as part of the parties' case-in-chief shall be **EDITED** so as to exclude all unnecessary, repetitious, and irrelevant testimony; **ONLY** those portions which are relevant to the issues in controversy shall be read into evidence.

2.    The Court will refuse to entertain any motion to compel discovery filed after the date of this Order unless the movant advises the Court within the body of the motion that counsel for the parties have first conferred in a good faith attempt to resolve the matter.  See Eastern District of Texas Local Rule CV-7(h).

3.    The following excuses will not warrant a continuance nor justify a failure to comply with the discovery deadline:

    (a)    The fact that there are motions for summary judgment or motions to dismiss pending;

    (b)    The fact that one or more of the attorneys is set for trial in another court on the same day, unless the other setting was made prior to the date of this order or was made as a special provision for the parties in the other case;

(c)     The failure to complete discovery prior to trial, unless the parties can demonstrate that it was impossible to complete discovery despite their good faith effort to do so.

SIGNED this 15th day of June, 2006.

_____
T. JOHN WARD
UNITED STATES DISTRICT JUDGE

Case 1:07-cv-00398-GMS   Document 187-5   Filed 06/28/2007   Page 1 of 18
Case 2:05-cv-00443-TJW-CE   Document 53   Filed 06/15/2006   Page 1 of 18
Case 2:05-cv-00443-TJW   Document 44   Filed 05/15/2006   Page 2 of 19

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

U.S. CLERK
DISTRICT COURT

06 JUN 15  PM 5: 00

... EASTERN ... RSHALL

BY_____

| | |
|---|---|
| REMBRANDT TECHNOLOGIES, LP | |
| Plaintiff, | |
| v. | Case No. 2:05cv443-TJW |
| COMCAST CORPORATION, | |
| Defendant. | |

## PROTECTIVE ORDER

WHEREAS, Plaintiff Rembrandt Technologies, LP ("Rembrandt"), and Defendant Comcast Corporation ("Comcast"), through counsel, stipulate to entry of this Protective Order ("Order") pursuant to Fed. R. Civ. P. 26(c) to prevent unnecessary disclosure or dissemination of confidential information; and

WHEREAS, the parties recognize that confidential information is being produced for use in this civil action;

IT IS HEREBY ORDERED that the following provisions of this Order shall govern the treatment of confidential information produced by a party ("Producing Party") to any other party ("Receiving Party") in the course of this civil action:

1.      The term "Confidential Information" as used in this Order includes all information and tangible things that constitute or disclose trade secrets or other confidential or proprietary information of one of the parties. Confidential Information may be contained in discovery information or materials produced or obtained in this action by or through any means and by or through any person or entity. The Confidential Information contained therein and all

Case 1:07-cv-00398-GMS    Document 187-5    Filed 06/28/2007    Page 2 of 18
Case 2:05-cv-00443-TJW-CE    Document 53    Filed 06/15/2006    Page 2 of 18
Case 2:05-cv-00443-TJW    Document 44    Filed 05/15/2006    Page 3 of 19

copies, recordings, abstracts, excerpts, analyses or other writings that contain, reveal or

otherwise disclose such Confidential Information shall also be deemed Confidential Information

      2.    Confidential Information shall be disclosed, disseminated and used by the

Receiving Party only for purposes of litigation between the parties to this action. Except with

the prior written consent of the Producing Party or upon prior order of this Court, Confidential

Information shall not be disclosed except in accordance with the terms, conditions, and

restrictions of this Order

      3.    Produced documents, interrogatory responses, responses to requests for

admission and other documents containing "Confidential Information" shall be marked by

conspicuously affixing a legend, which includes the words "CONFIDENTIAL," or "HIGHLY

CONFIDENTIAL—ATTORNEYS' EYES ONLY", as appropriate, on each page containing

Confidential Information at the time such documents are produced or such information is

disclosed (or on the cover or container of computer storage media, such as discs or tapes). The

parties may designate material other than the produced documents as containing Confidential

Information in the following manner:

      (a)    Testimony or information disclosed at a deposition that contains

Confidential Information or Highly Confidential Information may be designated by indicating on

the record at the deposition the portions of the testimony which contain such information that is

to be made subject to the provisions of this Order  Alternatively, a Producing Party may

designate testimony or information disclosed at a deposition, including exhibits, that contains

Confidential Information or Highly Confidential Information by notifying all parties in writing,

within fifteen (15) days after the Producing Party's receipt of the transcript, of the specific pages

and lines of the transcript that contain such information  Whether or not designation is made at

Case 1:07-cv-00398-GMS   Document 187-5   Filed 06/28/2007   Page 3 of 18
Case 2:05-cv-00443-TJW-CE   Document 53   Filed 06/15/2006   Page 3 of 18
Case 2:05-cv-00443-TJW   Document 44   Filed 05/15/2006   Page 4 of 19

the time of a deposition, accessibility to each transcript (and the information contained therein) of any deposition in its entirety shall be limited to outside counsel of record and designated in-house counsel only, from the taking of the deposition until fifteen (15) days after actual receipt of the transcript by the Producing Party, or until receipt of the notice referred to in this paragraph, whichever occurs sooner. At the expiration of the said fifteen (15) day period, unless notice hereunder to the contrary is given at the time of the deposition or prior to the expiration of said period, the entire transcript shall be deemed non-confidential.

        (b)     Confidential Information or Highly Confidential Information contained in any affidavits, briefs, memoranda or other papers filed with the Court in this action may be designated as Confidential Information or Highly Confidential Information by indicating on the face of such documents that one or more parties considers them to contain such information.

        4.     The parties may designate as HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY any materials that qualify for protection under the standards developed under Fed. R. Civ. P. 26(c), but not including those material which qualify for the designation "CONFIDENTIAL" under paragraph 5. Subject to the provisions of paragraphs 6 and 7 herein, material designated as HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY, and any summary, description or report of the information contained in such materials, may be disclosed only to the following persons:

        (a)     the Court, persons employed by the Court, and stenographers transcribing the testimony or argument at a hearing, trial or deposition in this action or any appeal therefrom;

Case 1:07-cv-00398-GMS   Document 187-5   Filed 06/28/2007   Page 4 of 18
Case 2:05-cv-00443-TJW-CE   Document 53   Filed 06/15/2006   Page 4 of 18
Case 2:05-cv-00443-TJW   Document 44   Filed 05/15/2006   Page 5 of 19

(b)     technical and damages consultants and experts who are not current employees of any party in this matter and who have been retained by counsel to provide assistance in this action, with disclosure only to the extent necessary to perform such work;

(c)     graphics, translation, design and/or trial consulting services, including mock jurors, retained by a party;

(d)     photocopy, document imaging and database services and consultants retained by counsel to set up, maintain and/or operate computer systems, litigation databases or to convert data for inclusion in such databases;

(e)     John Meli, Executive Vice President and General Counsel of Rembrandt, and one in-house counsel employed by Comcast (following identification and approval by Rembrandt, such approval not to be unreasonably withheld); and two (2) paralegals and/or clerical employees assisting each of those two individuals; and

(f)     the parties' outside counsel of record in this action as specifically set forth below and any other counsel for a party that appears in this action, and their paralegal assistants, law clerks, stenographic and clerical employees who are assisting in the prosecution, defense and/or appeal of this action. Any individual outside counsel of record who receives information designated HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY may not participate in patent prosecution for the Receiving Party, and the individual outside counsel who receives any such information may not discuss the information with anyone involved in patent prosecution for the Receiving Party. Outside counsel of record for the parties are as follows:

For Rembrandt:

    Fish & Richardson P.C.
    225 Franklin Street
    Boston, MA  02110
    Ireland, Carroll & Kelley, P.C.

Case 1:07-cv-00398-GMS    Document 187-5    Filed 06/28/2007    Page 5 of 18
Case 2:05-cv-00443-TJW-CE    Document 53    Filed 06/15/2006    Page 5 of 18
Case 2:05-cv-00443-TJW    Document 44    Filed 05/15/2006    Page 6 of 19

6101 S. Broadway, Suite 500
Tyler, Texas 7503

Jones & Jones, Inc., P.C
201 West Houston Street, Drawer 1249
Marshall, Texas 75671-1249

Brown McCaroll, L.L.P.
1127 Judson Road, Suite 220
P.O. Box 3999
Longview, Texas 75601-5157

Parker & Clayton
100 E. Ferguson, Suite 1114
Tyler, Texas 75702

For Comcast:

Keker & Van Nest, LLP
710 Sansome Street
San Francisco, CA  94111-1704

Halton & Doan, LLP
6500 N. Summerhill Road, Suite 1A
P.O. BOX 6227
Texarkana, TX  75505-6227

5.      The parties may designate as CONFIDENTIAL any materials of a

financial or accounting nature that qualify for protection under the standards developed under

Fed. R. Civ. P. 26(c). Subject to the provisions of paragraphs 6 and 7 herein, material designated

as CONFIDENTIAL, and any summary, description or report of the information contained in

such materials, may be disclosed only to the following persons:

(a)      the Court, persons employed by the Court, and stenographers

transcribing the testimony or argument at a hearing, trial or deposition in this action or any

appeal therefrom;

5

Case 1:07-cv-00398-GMS   Document 187-5   Filed 06/28/2007   Page 6 of 18
Case 2:05-cv-00443-TJW-CE   Document 53   Filed 06/15/2006   Page 6 of 18
Case 2:05-cv-00443-TJW   Document 44   Filed 05/15/2006   Page 7 of 19

       (b)     technical and damages consultants and experts who are not current employees of any party in this matter and who have been retained by counsel to provide assistance in this action, with disclosure only to the extent necessary to perform such work;

       (c)     graphics, translation, design and/or trial consulting services, including mock jurors, retained by a party:

       (d)     photocopy, document imaging and database services and consultants retained by counsel to set up, maintain and/or operate computer systems, litigation databases or to convert data for inclusion in such databases:

       (e)     John Meli, and Dr. Paul Schneck, Chief Executive Officer of Rembrandt, and one in-house counsel employed by Comcast and one other employee of Comcast (following identification and approval by Rembrandt, such approval not to be unreasonably withheld ; and two (2) clerical employees assisting each of those individuals; and,

       (f)     the parties' outside counsel of record in this action and any other counsel for a party that appears in this action, and their paralegal assistants, law clerks, stenographic and clerical employees who are assisting in the prosecution, defense and/or appeal of this action

     6.    (a)     A party may exclude from a deposition any person who is not entitled to view Confidential Information or Highly Confidential Information when such information is the subject of examination.

       (b)     No Confidential Information or Highly Confidential Information shall be revealed or disclosed, in whole or in part, directly or indirectly, to any individual described in subparagraphs 4(b)-(f) and 5(b)-(f) until that individual has been given a copy of this Order and has duly completed and signed an undertaking in the form attached hereto as

Case 1:07-cv-00398-GMS    Document 187-5    Filed 06/28/2007    Page 7 of 18
Case 2:05-cv-00443-TJW-CE    Document 53    Filed 06/15/2006    Page 7 of 18
Case 2:05-cv-00443-TJW    Document 44    Filed 05/15/2006    Page 8 of 19

Exhibit A, the original of which shall be retained, until the conclusion of this action including all appeals, by counsel for each party who intends to or does disclose to such individual any Confidential Information or Highly Confidential Information.

(c)    Before individuals under subparagraphs 4(b) and 5(b) may have access to Confidential Information or Highly Confidential Information, the Receiving Party must submit to the Producing Party the individual's signed undertaking as well as the individual's curriculum vitae setting forth his or her name, address, qualifications and relevant work experience, including, but not limited to, the identity of any company in the telecommunications industry for whom said individual has consulted or worked during the last five (5) years. If the Producing Party does not object in writing, within five (5) business days from receipt of the undertaking, Confidential Information or Highly Confidential Information may then be disclosed to the retained consultant or former employee. If timely objection is made, the parties shall attempt in good faith to resolve the disclosure issue. If the issue cannot be resolved, the Producing Party has fifteen (15) days from receipt of the undertaking to bring a motion to preclude the retained consultant or former employee from viewing the Producing Party's Confidential Information or Highly Confidential Information. If the Producing Party does not bring such a timely motion, Confidential Information or Highly Confidential Information may be disclosed to the retained consultant or former employee.

(d)    Pursuant to subparagraph 6(c), the disclosure of the identity of a consulting expert will not be a waiver of any privilege or right to withhold from production that applies to communications or work product. Furthermore, the parties agree that by stipulating to the entry of this Protective Order, the parties do not intend to modify in any way the normal

Case 1:07-cv-00398-GMS    Document 187-5    Filed 06/28/2007    Page 8 of 18
Case 2:05-cv-00443-TJW-CE    Document 53    Filed 06/15/2006    Page 8 of 18
Case 2:05-cv-00443-TJW    Document 44    Filed 05/15/2006    Page 9 of 19

discovery rules applicable to consulting experts, or other agreements reached between the parties regarding such discovery.

       7.    In addition to the terms set forth in paragraphs 4 through 6 herein governing the disclosure of Confidential Information or Highly Confidential Information, information or materials that contain, embody, or otherwise reflect a party's source code shall be provided the following further protections:

       (a)    Any and all such source code, except for hard (non-electronic) copies, shall be stored and viewed only at the offices of one (1) agreed-upon source code custodian ("Source Code Custodian") located in one of the following locations: Wilmington, Delaware; Boston, Massachusetts; or Austin, Texas.

       (b)    Subject to subparagraphs (c) and (d), any source code produced in electronic form shall be stored and viewed only at the offices of the Source Code Custodian and shall be maintained in a secured, locked area. No electronic copies of source code shall be made. Any such source code shall only be viewed or analyzed on a stand-alone computer (a computer that is not connected to any internal or external computer or computer network) located within the above-described locations. The Source Code Custodian shall maintain a Source Code Access Log identifying, for each and every time any source code is viewed, accessed or analyzed: (1) the name of each person who accessed the code; (2) the date and time of access; (3) the length of time of access; and (4) whether any hard (non-electronic) copies of any portion of the code were copied and the portion of the code copied. The Receiving Party reviewing source code shall be allowed to make hard (non-electronic) copies of material that they, in good faith, consider relevant. The parties shall negotiate reasonable limitations on the amount of source code that is released by Producing Party at any given time.

      (c)      Any hard (non-electronic) copies of

source code shall be stored and viewed only within the United States at:

           (i)      a secured, locked area in one of the offices of the Source

Code Custodian, each such location within the United States, provided the hard (non-electronic)

copies are marked with the designation "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY";

           (ii)      the Court;

           (iii)      the site where any deposition relating to the source code is

taken;

           (iv)      any intermediate location reasonably necessary to transport

the information (e.g., a hotel prior to the deposition).

      (d)      For each and every hard (non-

electronic) copy of any source code, or any portion of any source code, the Source Code

Custodian shall maintain a log detailing the location of the copy.  Excessive reproduction of

source code should be avoided.

      (e)      Prior to the Receiving Party taking possession of a hard (non-electronic)

copy of source code as provided for under this paragraph, the Receiving Party

shall inform the Producing Party as to specifically what portions of source code it plans

to take into its possession.  The Producing Party shall then have twenty-

four (24) hours if informed on a weekday, or seventy two (72) hours if informed on a weekend in

which to object in writing to the Receiving Party as to the extent or relevance of the source code

the reviewing party seeks to possess.  If objection is made, the parties shall meet and confer in

good faith within three (3) business days and attempt to resolve the objection.  If the objection is

Case 1:07-cv-00398-GMS   Document 187-5   Filed 06/28/2007   Page 10 of 18
Case 2:05-cv-00443-TJW-CE   Document 53   Filed 06/15/2006   Page 10 of 18
Case 2:05-cv-00443-TJW   Document 44   Filed 05/15/2006   Page 11 of 19

not resolved, the Producing Party shall have five (5) business days after the conference to file a motion with the Court for relief from production of the subject portions of source code. The subject portions of source code shall be retained by the Producing Party, pending the court's resolution of the motion.

(f)     To the extent any source code becomes an exhibit to a deposition, one copy of the exhibit may be maintained at the U.S. office of outside counsel of record for each party in a secure, locked area. Counsel shall not designate source code as an exhibit solely for authentication purposes and shall only designate as an exhibit that portion of source code reasonably necessary for questioning.

8.     Designation of Confidential Information or Highly Confidential Information as "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" or "CONFIDENTIAL" shall constitute a representation that such information has been reviewed by an attorney for the Producing Party and that there is a valid basis for such designation. Subject to the conditions set forth in Paragraph 7, Confidential Information or Highly Confidential Information shall be maintained by the Receiving Party under the overall supervision of outside counsel. The attorneys of record for the parties shall exercise best efforts to ensure that the information and documents governed by this Protective Order are (i) used only for the purposes set forth herein, and (ii) disclosed only to authorized persons. Moreover, any person in possession of Confidential Information or Highly Confidential Information shall exercise reasonably appropriate care with regard to the storage, custody or use of such Confidential Information or Highly Confidential Information in order to ensure that the confidential or restricted nature of the same is maintained.

Case 1:07-cv-00398-GMS    Document 187-5    Filed 06/28/2007    Page 11 of 18
Case 2:05-cv-00443-TJW-CE    Document 53    Filed 06/15/2006    Page 11 of 18
Case 2:05-cv-00443-TJW    Document 44    Filed 05/15/2006    Page 12 of 19

9.    It is the intention of this Protective Order that the following categories of

information shall not be and should therefore not be designated as Confidential Information or

Highly Confidential Information: (a) any information that at the time of its disclosure in this

action is part of the public domain by reason of publication or otherwise; (b) any information that

after its disclosure in this action has become part of the public domain by reason of publication

or otherwise through no act, omission or fault of the Receiving Party; (c) any information that at

the time of its disclosure in this action is rightfully in the possession of the Receiving Party, its

trial counsel or any expert retained by or for the Receiving Party under no obligations of

confidence to any third party with respect to that information; or (d) any information that after its

disclosure in this action is rightfully received by the Receiving Party, its trial counsel or any

expert retained by or for the Receiving Party under no obligations of confidence or otherwise

from any third party having the right to make such disclosure.  During the pendency of this

action, any disputes as to whether information is confidential under the terms of this Order shall

be resolved according to the procedure set forth in paragraph 10 hereof.

10.    If a party disagrees with any Confidential Information or Highly

Confidential Information designation, such party shall first make its objection known to the

Producing Party and request a change of designation.  The parties shall first try to dispose of

such dispute in good faith on an informal basis.  If the dispute cannot be resolved, the party

challenging the designation may request appropriate relief from the Court no sooner than five (5)

days following the service of a written notice of disagreement. The burden of proving that

information has been properly designated as Confidential Information or Highly Confidential

Information is on the party making such designation  Until a determination by the Court, the

information in issue shall be treated as Confidential Information or Highly Confidential

Case 1:07-cv-00398-GMS    Document 187-5    Filed 06/28/2007    Page 12 of 18
Case 2:05-cv-00443-TJW-CE    Document 53    Filed 06/15/2006    Page 12 of 18
Case 2:05-cv-00443-TJW    Document 44    Filed 05/15/2006    Page 13 of 19

Information and subject to the terms of this Order. Any failure to object to any material being designated as Confidential Information or Highly Confidential Information shall not be construed as an admission by any non-designating party that the material constitutes or contains a trade secret or other confidential information.

11.    During the course of preparing for a deposition or testimony, unless otherwise entitled to access under this Protective Order, a fact deponent/witness may be shown Confidential Information or Highly Confidential Information from another party's documents strictly limited to those documents which on their face reveal that they were authored or received by the deponent/witness in the normal course of business and outside the context of this litigation. This shall not preclude a Producing Party from showing documents that it has produced to its own witnesses and deponents, regardless whether the Producing Party has designated the document(s) it produced as Confidential , and regardless whether such person was the author or a recipient of the document.

12.    At the deposition of a third party or former employee of a Producing Party, such third party or former employee of a Producing Party may be shown documents designated as Confidential only if the document was authored by or received by that third party or former employee.

13.    Any person receiving Confidential Information or Highly Confidential Information shall not disclose such information to any person who is not entitled to receive such information under this Order. If Confidential Information or Highly Confidential Information is disclosed to any person not entitled to receive disclosure of such information under this Order, the person responsible for the disclosure will inform counsel for the Producing Party and, without prejudice to other rights and remedies of any party, make a reasonable good faith effort

Case 1:07-cv-00398-GMS   Document 187-5   Filed 06/28/2007   Page 13 of 18
Case 2:05-cv-00443-TJW-CE   Document 53   Filed 06/15/2006   Page 13 of 18
Case 2:05-cv-00443-TJW   Document 44   Filed 05/15/2006   Page 14 of 19

to retrieve such material and to prevent further disclosure by the person who received such information.

14.     Written material constituting or revealing Confidential Information or Highly Confidential Information, when filed with the Court in this action for any reason, shall be filed in sealed envelopes or other appropriate sealed containers on which shall be endorsed the title of this action, an indication of the nature of the contents of such sealed envelope or other container, a designation in the form set forth in paragraphs 4 or 5 hereof, and a statement substantially in the following form:

HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY

FILED UNDER SEAL PURSUANT TO COURT ORDER

Civil Action No. 2:05cv443-TJW

15.     The Clerk of the Court is directed to place and maintain under seal in accordance with this Order any such pleading or other document filed with or delivered to this Court pursuant to Paragraph 14 or any other provision thereof.

16.     Nothing herein shall prevent disclosure beyond the terms of this Order if the party producing Confidential Information or Highly Confidential Information consents in writing to such disclosure, or if the Court, after notice to all affected parties, orders or permits such disclosure.

17.     The inadvertent production in discovery of any privileged or otherwise protected or exempted information, as well as the inadvertent production in discovery of information without an appropriate designation of confidentiality, shall not be deemed a waiver or impairment of any claim or privilege or protection including but not limited to the attorney-client privilege, the protection afforded to work-product materials or the subject matter thereof,

13

Case 1:07-cv-00398-GMS    Document 187-5    Filed 06/28/2007    Page 14 of 18
Case 2:05-cv-00443-TJW-CE    Document 53    Filed 06/15/2006    Page 14 of 18
Case 2:05-cv-00443-TJW    Document 44    Filed 05/15/2006    Page 15 of 19

or the confidential nature of any such information, provided that the Producing Party shall promptly notify the Receiving Party in writing when inadvertent production is discovered. Upon receiving written notice from the Producing Party that privileged information or work-product material has been inadvertently produced, all such information, and all copies thereof, shall be returned to counsel for the Producing Party and the Receiving Party shall not use such information for any purpose until further Order of the Court.

18.    Any violation of the terms of this Protective Order shall be punishable by money damages, interim or final injunctive or other equitable relief, sanctions, contempt of court citation, or such other or additional relief as deemed appropriate by the Court.

19.    Until such time as this Protective Order has been entered by the Court, the parties agree that upon execution by the parties, it will be treated as though it had been "So Ordered."

20    Third parties who produce information in this action may avail themselves of the provisions of this Protective Order, and discovery materials produced by third parties shall then be treated by the parties in conformance with this Protective Order.

21.    By entering this Order and limiting the disclosure of information in this case, the Court does not intend to preclude another court from finding that such information may be relevant and subject to disclosure in another case. Any person or party subject to this order that may be subject to a motion to disclose another party's information designated Confidential or pursuant to this order shall promptly notify that party of the motion so that it may have an opportunity to appear and be heard on whether that information should be disclosed.

22.    In the event that any of the parties (a) is subpoenaed in another action, (b) is served with a demand in another action to which it is a party, or (c) is served with any other

Case 1:07-cv-00398-GMS    Document 187-5    Filed 06/28/2007    Page 15 of 18
Case 2:05-cv-00443-TJW-CE    Document 53    Filed 06/15/2006    Page 15 of 18
Case 2:05-cv-00443-TJW    Document 44    Filed 05/15/2006    Page 16 of 19

legal process by a person not a party to this litigation, and is requested to produce or otherwise disclose discovery material that is designated as Confidential by another party, the party subpoenaed or served in accordance with this paragraph shall object to production of the Confidential material and shall give prompt written notice to the Producing Party. Should the person seeking access to the Confidential material take action against the party covered by this Order to enforce such a subpoena, demand or other legal process, it shall respond by setting forth the existence of this Order. Nothing in this Order shall be construed as requiring production of Confidential material covered by this Order.

23 (a) Within sixty (60) days after filing of the final judgment in this action, or, if such judgment is appealed from, entry of a mandate affirming such final judgment, all Confidential Information or Highly Confidential Information shall be destroyed by all Receiving Parties or shall be returned to the Producing Party at the written election of the Producing Party which election shall be made within twenty days of the filing of the aforementioned final judgment or mandate. If any Receiving Party destroys any such Confidential Information or Highly Confidential Information, that party shall inform the Producing Party in writing.

(b) Notwithstanding the foregoing, one designated outside counsel of record for each party may maintain in its files one copy of each affidavit, affirmation, certification, declaration, brief, record on appeal, notice of motion, deposition transcript, exhibit to a deposition or affidavit (or the like), exhibit at a hearing or trial, pleading, discovery request, stipulation, correspondence between counsel for the parties, written response to a discovery request or any other document filed with the Court and the court transcript, consisting of or containing Confidential Information or Highly Confidential Information. The Receiving Party

15

Case 1:07-cv-00398-GMS   Document 187-5   Filed 06/28/2007   Page 16 of 18
Case 2:05-cv-00443-TJW-CE   Document 53   Filed 06/15/2006   Page 16 of 18
Case 2:05-cv-00443-TJW   Document 44   Filed 05/15/2006   Page 17 of 19

shall be entitled to retain one copy, and outside counsel of record for each party shall be entitled to retain copies of any expert report containing any Confidential Information or Highly Confidential Information of the Producing Party, which is not in the public docket file  All such material shall remain subject to the terms of this Order.

24.     This Order may be amended with leave of the Court by the agreement of counsel for the parties in the form of a stipulation that shall be filed in this action.

25.     This Order shall remain in full force and effect until modified, superseded, or terminated on the record by agreement of the parties or by an Order of the Court

26.     At the conclusion of the present action, the Court shall retain jurisdiction to enforce the terms of this Order.

SO ORDERED this ___15th___ day of June 2006.

T. JOHN WARD,
UNITED STATES DISTRICT JUDGE

Case 1:07-cv-00398-GMS    Document 187-5    Filed 06/28/2007    Page 17 of 18
Case 2:05-cv-00443-TJW-CE    Document 53    Filed 06/15/2006    Page 17 of 18
Case 2:05-cv-00443-TJW    Document 44    Filed 05/15/2006    Page 18 of 19

## EXHIBIT A

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

REMBRANDT TECHNOLOGIES, LP

        Plaintiff,

    v.

COMCAST CORPORATION,

        Defendant.

Case No. 2:05cv443-TJW

I, _____, hereby declare that:

        1.    I have carefully read and understand the foregoing Protective Order (the "Order") of the United States District Court for the Eastern District of Texas, in the above-captioned matter.

        2.    I agree that I will be bound by and will comply with all of the provisions of this Order and I will make no disclosures of Confidential Information or Highly Confidential Information to any person who is not permitted to have access to such Confidential Information or Highly Confidential Information by this Order, as applicable.

        3.    Upon final determination of this action, I will destroy all Confidential Information or Highly Confidential Information received by me within sixty (60) days after filing of the final order or mandate as described in paragraph 21(a) , or I will return such Confidential Information or Highly Confidential Information within sixty (60) days to the Producing Party. If I destroy such Confidential Information or Highly Confidential Information, I agree to send a letter to the Producing Party confirming the same.

        4.    I understand that a violation of this undertaking is punishable as a contempt of court and hereby submit to the jurisdiction of this Court for the purpose of enforcement of this Order.

Case 1:07-cv-00398-GMS    Document 187-5    Filed 06/28/2007    Page 18 of 18
Case 2:05-cv-00443-TJW-CE    Document 53    Filed 06/15/2006    Page 18 of 18
Case 2:05-cv-00443-TJW    Document 44    Filed 05/15/2006    Page 19 of 19

     5.     I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct

Executed on:_____    _____

                                                      [signature]

                                               _____

                                               [print or type name]

Title:

Business Affiliation:

Address:

Phone:

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

REMBRANDT TECHNOLOGIES, LP,

                  Plaintiff,

    v.

COMCAST CORPORATION; COMCAST
CABLE COMMUNICATIONS; LLC; and
COMCAST OF PLANO, LP,

                  Defendants.

Civil Action No. 2:05-cv-443-TJW
(JURY)

## DEFENDANT'S NOTICE OF SERVICE OF PRELIMINARY INVALIDITY CONTENTIONS

       Pursuant to Federal Rule of Civil Procedure 5, Defendant Comcast Corporation, served

COMCAST CORPORATION'S PRELIMINARY INVALIDITY CONTENTIONS to all

counsel of record on June 16, 2006.

                    Respectfully submitted,

                    _____/s/_____

                    Jennifer Haltom Doan
                    Texas Bar No. 08809050
                    John Peyton Perkins, III
                    Texas Bar No. 24043457
                    HALTOM & DOAN, LLP
                    6500 N. Summerhill Road, Suite 1A
                    P. O. Box 6227
                    Texarkana, TX 75505-6227
                    Telephone: 903-255-1000
                    Facsimile: 903-255-0800
                    E-mail: jdoan@haltomdoan.com

Brian L. Ferrall
Leo L. Lam
Eric H. MacMichael
Steven K. Yoda
Keker & Van Nest, LLP
710 Sansome Street
San Francisco, CA 94111-1704
Telephone:  415-676-2235
Facsimile:  415-397-7188

**ATTORNEYS FOR DEFENDANTS
COMCAST CORPORATION,
COMCAST CABLE
COMMUNICATIONS, LLC AND
COMCAST OF PLANO, LP**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  As such, this motion was served on all counsel who are deemed to have consented to electronic service.  Local Rule CV-5(a)(3)(A).  Pursuant to FED. R. CIV. P. 5(d) and Local Rule CV-5(e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by certified mail, return receipt requested, on this 19th day of June, 2006.


_____/s/_____
John Peyton Perkins, III

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| REMBRANDT TECHNOLOGIES, LP | Civil Action No. 2:05-cv-00443-TJW |
| v. | |
| COMCAST CORPORATION; COMCAST CABLE COMMUNICATIONS, LLC; AND COMCAST OF PLANO, LP | Jury Trial Demanded |

PLAINTIFF'S NOTICE OF DISCLOSURE UNDER SECTION 3(C) OF THE
COURT'S AMENDED DISCOVERY ORDER

Plaintiff Rembrandt Technologies, LP hereby notifies the Court that it has served its

Disclosures pursuant to Section 3(c) of the Court's Amended Discovery Order on June 16, 2006.

Respectfully submitted,

PARKER & BUNT, P.C.

/s/ Robert ChristopherBunt
Robert Christopher Bunt
State Bar No.  00787165
PARKER & BUNT, P.C.
100 E. Ferguson, Suite 1114
Tyler, Texas 75702
Tel: 903/531-3535
Fax: 903/533-9687
E-mail:  cbunt@cox-internet.com

Robert M. Parker
State Bar No. 15498000
PARKER & BUNT, P.C.
100 E. Ferguson, Suite 1114
Tyler, Texas  75702
Tel: 903-531-3535
Fax: 903-533-9687
E-mail: rmparker@cox-internet.com

Otis Carroll – Lead Attorney
State Bar No. 03895700
IRELAND, CARROLL & KELLEY, P.C.
6101 S. Broadway, Suite 500
Tyler, Texas 75703
Tel: (903) 561-1600
Fax: (903) 581-1071
E-mail: Fedserve@icklaw.com

OF COUNSEL:

Frank E. Scherkenbach
Lawrence K. Kolodney
FISH & RICHARDSON, P.C.
225 Franklin Street
Boston, Massachusetts 02110
Tel: (617) 542-5070
Fax: (617) 542-8906

Alan D. Albright
State Bar No. 00973650
FISH & RICHARDSON, P.C.
One Congress Plaza, 4th Floor
111 Congress Avenue
Austin, Texas 78701
Tel: (512) 391-4930
Fax: (512) 391-6837

Timothy Devlin
FISH & RICHARDSON, P.C.
919 Market Street, Suite 1100
P.O. Box 1114
Wilmington, Delaware 19899
Tel: (302) 652-5070
Fax: (302) 652-0607

Franklin Jones, Jr.
State Bar No. 00000055
JONES & JONES, INC., P.C.
201 West Houston Street, Drawer 1249
Marshall, Texas 75671-1249
Tel: 903-938-4395
Fax: 903-938-3360
E-mail: maizieh@millerlawfirm.com

S. Calvin Capshaw, III
State Bar No. 03783900
BROWN MCCARROLL, L.L.P.
1127 Judson Road, Suite 220, P.O. Box 3999
Longview, Texas 75601-5157
Tel: 903-236-9800
Fax: 903-236-8787
E-mail: ccapshaw@bmcmail.com
Attorneys for Plaintiff
REMBRANDT TECHNOLOGIES, LP.


## CERTIFICATE OF SERVICE

I hereby certify that the all counsel of record, who are deemed to have consented to electronic service are being served this 19th day of June, 2006, with a copy of this document via the Court's CM/ECF system per Local Rule CD-5(a)(3). Any other counsel of record will be served by electronic mail, facsimile transmission and/or first class mail on this same date.

*/s/ Robert Christopher Bunt*
Robert Christopher Bunt

6-1-5563

**F I L E D**
U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

JUN 1 4 2006

DAVID J. MALAND, CLERK

BY
DEPUTY _____

**Appendix K**

Revised: 12/3/03

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION
## APPLICATION TO APPEAR PRO HAC VICE

1   This application is being made for the following:  Case#   **2:05-cv-0043-TJW**

Style: **Rembrandt Technologies, LP v Comcast Corporation et al.**

2.  Applicant is representing the following party/ies: **Rembrandt Technologies LP**

3.  Applicant was admitted to practice in **New York on 9/27/99**

4.  Applicant is in good standing and is otherwise eligible to practice law before this court.

5.  Applicant is not currently suspended or disbarred in any other court.

6   Applicant has/**has not** had an application for admission to practice before another court denied (please circle appropriate language).  If so, give complete information on a separate page.

7.  Applicant has/**has not** ever had the privilege to practice before another court suspended (please circle).  If so, give complete information on a separate page.

8.  Applicant has/**has not** been disciplined by a court or Bar Association or committee thereof that would reflect unfavorably upon applicant's conduct, competency or fitness as a member of the Bar (please circle)  If so, please complete information on a separate page.

9   Describe in detail on a separate page any charges, arrests or convictions for criminal offense(s) filed against you. **None** Omit minor traffic offenses.

10.  There are no pending grievances or criminal matters pending against the applicant.

11.  Applicant has been admitted to practice in the following courts:

_____

12.  Applicant has read and will comply with the Local Rules of the Eastern District of Texas, including Rule AT-3, the "Standards of Practice to be Observed by Attorneys."

13.  Applicant has included the requisite $25 fee (see Local Rule AT-1(d)).

14.  Applicant understands that he/she is being admitted for the limited purpose of appearing in the case specified above only

**Application Oath:**

I, **Frederick Yu,** do solemnly swear (or affirm) that the above information is true; that I will discharge the duties of attorney and counselor of this court faithfully; that I will demean myself uprightly under the law and the highest ethics of our profession; and that I will support and defend the Constitution of the United States.

Dated: _May 11, 2006_          Signature _____

Name (please print)   **Frederick Yu**

State Bar Number:   **2997856 - NY**

Firm Name:   **Fish & Richardson P.C.**

Address/P.O. Box:   **919 N. Market Street, Suite 1100,**

**P.O. Box 1114**

City/State/Zip:   **Wilmington, DE 19899-1114**

Telephone #:   **302-652-5070**

Fax #:   **302-652-0607**

E-mail Address:   **yu@fr.com**

Applicant is authorized to enter an appearance as counsel for the party/parties listed above. This application has been approved for the court this 14 day of _____June_____, 20__.

David J. Maland, Clerk

U.S. District Court, Eastern District of Texas

By   _____
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| REMBRANDT TECHNOLOGIES, LP | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. 2:05cv443 |
| vs. | § | |
| | § | |
| COMCAST CORPORATION, | § | |
| COMCAST CABLE | § | |
| COMMUNICATIONS, LLC, and | § | |
| COMCAST OF PLANO, LP | § | |
| | § | |
| Defendants. | § | |

## ORDER

Before the Court is Defendants, Comcast Corporation, Comcast Cable Communications, LLC, and Comcast of Plano, LP's (collectively "Comcast" or "Defendants"), motion to transfer venue to the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1404(a). (Doc. 10). For the following reasons, Defendants' motion is DENIED.[1]

## Background

Rembrandt Technologies, LP ("Rembrandt" or "Plaintiff") filed suit against Comcast for allegedly infringing four of its patents: U.S. Patent Nos. 4,937,819 ("the '819 patent"), 5,719,858 ("the '858 patent"), 5,852,631 ("the '631 patent"), 5,243,627 ("the '627 patent"). These patents "relate to the transmission or receipt of digital data," but more particularly, the '819 and '858 patents deal with digital voice transmission, the '631 patent deals with high speed internet

---

[1] The Court elected to delay ruling on the motion to transfer until the Federal Circuit acted on a petition for writ of mandamus out of the Tyler Division of the Eastern District of Texas that presented similar facts. *See* Network-1 Security Solutions, Inc. v. D-Link Corporation et al., 6:05cv291; Order Denying Petition for Writ of Mandamus, June 2, 2006. As the Federal Circuit elected to deny the petition, this Court enters the following order.

service, and the '627 patent deals with digital cable service. Defendant's Motion to Compel, p. 2-3. Plaintiff alleges that Defendants infringe their patents, "through the use of third-party devices, including cable modems and cable modem head-end systems." Plaintiff's Response, p. 3.

Comcast Corporation is a Pennsylvania corporation, Comcast Cable is a Delaware corporation, and Comcast of Plano, LP is a limited partner in a Delaware limited partnership whose general partner is Comcast of Plano GP, LLP. All of these entities have their principal place of business in Philadelphia, Pennsylvania, in the Eastern District of Pennsylvania. Rembrant is also headquartered in the Eastern District of Pennsylvania in Bala Cynwyd, Pennsylvania.

Defendants concede that venue is proper in the Eastern District of Texas under 28 U.S.C. § 1400, and Plaintiff does not argue that the Eastern District of Pennsylvania would be an improper venue. The issue is whether the convenience of the parties and the interests of justice favor transfer. Comcast argues that transfer to the Eastern District of Pennsylvania is appropriate under 28 U.S.C. § 1404(a) for the following reasons: (1) Comcast's known potential engineering, marketing, and financial witnesses work in the Eastern District of Pennsylvania, (2) both parties' sources of proof are in the Eastern District of Pennsylvania, (3) the Eastern District of Pennsylvania district can exercise subpoena power over third-party witnesses, and (4) the Eastern District of Texas has no interest in adjudicating this dispute between various Eastern District of Pennsylvania parties.

### Legal Standard for Transfer of Venue Under 28 U.S.C. § 1404

28 U.S.C. § 1404(a) enables a district court to transfer any civil action to another district or division where it might have been brought for the convenience of parties and witnesses, in the

2

interest of justice. The purpose of the statute is to protect litigants, witnesses, and the public against unecessary inconvenience and expense, and to avoid wasted time, energy, and money. *Houston Trial Reports, Inc. v. LRP Publications, Inc.*, 85 F. Supp.2d 663, 668 (E.D. Tex. 1999); *see also Van Dusen v. Barrack*, 376 U.S. 612, 622, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964). The court possesses broad discretion in deciding whether transfer of venue is proper. *Balawajder v. Scott*, 160 F.3d 1066 (5th Cir. 1998). In adjudicating motions to transfer, the court employs an "individualized, case-by-case consideration of convenience and fairness." *Van Dusen*, 376 U.S. at 622. Movant bears the burden of demonstrating that the forum sought is more convenient. *Chretien v. Home Depot U.S.A., Inc.*, 169 F.Supp.2d 670, 672 (S.D. Tex. 2001) *citing Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir. 1989). "Unless the balance of factors strongly favors the moving party, the Plaintiff's choice of forum generally should not be disturbed." *Houston Trial Reports,* 85 F.Supp.2d at 667-668 *citing Henderson v. AT&T Corp.*, 918 F.Supp. 1059, 1065 (S.D. Tex. 1996).

The first determination made under 1404(a) is whether the claim could have been filed in the forum to which transfer is sought. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004). If so, the Court evaluates several private and public interest factors, none of which is given dispositive weight, to ascertain "the convenience of the parties and witnesses. *Id*.

The private factors include: (1) the relative ease of access to sources of proof; (2) the availability of the compulsory process to secure witnesses' attendance; (3) the willing witnesses' cost of attendance; and (4) all other practical problems that make the case's trial easy, expeditious, and inexpensive. *Id*. Plaintiff's choice of forum is a factor to be considered with the private factors, but that choice is not conclusive or determinative. *In re Horseshoe Entm't*, 337 F.3d 429, 434 (5th Cir. 2003).

3

The public factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having local issues decided at home; (3) the forum's familiarity with the governing law; and (4) the avoidance of unnecessary conflict of law problems involving foreign law's application. *Volkswagen AG*, 371 F.3d at 203.

## Analysis

*Private Interests*

Defendants contend that the preferred forum for this case is the Eastern District of Pennsylvania because that is where the "center of gravity of the alleged infringing activity," is situated. W*histler Group v. PNI Corp.*, 2003 U.S. Dist. LEXIS 21968, *11 (N.D. Tex. 2003). However, the Court finds *Whistler* to be distinguishable for several reasons.

In *Whistler,* the defendant in an ongoing patent suit in the Northern District of California sued the plaintiff in that litigation in the Northern District of Texas.  To avoid duplicative litigation and wasted resources, the case was transferred from the Northern District of Texas to the Northern District of California where both lawsuits could be heard together. *Id.* at *18. Although the Court in *Whistler* considered the "center of gravity of the alleged infringing activity," it is clear that the Court opted for transfer primarily because the related case in California involved the same parties, similar patents, and overlapping witnesses and discovery. *Id.* at *16.  Additionally, the concept of the "center of gravity" is already contemplated by other factors in the transfer analysis set out in *Volkswagen* (cite omitted). *See also Zoltar Satellite Systems, Inc. V. LG Electronics Mobile Communications Co.*, 402 F.Supp.2d 731, 735 (E.D. Tex. 2005); *Purdy v. Munden*, 356 F.Supp.2d 658, 659 (E.D. Tex. 2005); *Bolt v. Toyota Industries Corp.*, 351 F.Supp.2d 597, 598 (E.D. Tex. 2004).

In the "center of gravity" analysis employed in *Whistler* "the location of a product's development, testing, research, and production," establish the "center of gravity of the alleged infringement." *Whistler*, 2003 U.S. Dist. LEXIS 21968, *11-12, *see also Minka Lighting, Inc. v. Trans Globe Imports, Inc.*, 2003 U.S. Dist. Lexis 8862 (N.D. Tex. May 23, 2003). However, under the *Volkswagen* analysis, the Court considers "a product's development, testing, research, and production," when it weighs the relative ease of access to sources of proof.[2] *Volkswagen*, 371 F.3d at 203. The Court also weighs the location of the alleged infringement when it considers the local forum's interest in deciding local issues as home. As the location of the alleged patent infringement already figures appreciably in these two factors, treating the "center of gravity" as an independent factor would, in effect, double count the weight allotted to the location of the alleged infringement. Therefore, the Court will not consider the "center of gravity" as an independent factor in this analysis.

*(i) Plaintiff's Choice of Forum*

Defendants argue that the Court should not defer to Plaintiff's choice of forum because this action has no connection to the Eastern District of Texas. However, a connection to the Eastern District of Texas does exist in this case because Plaintiff alleges that infringement occurred here. Accordingly, Plaintiff's choice of forum is a factor to be considered, and it weighs against transfer. *In re Horseshoe Entm't*, 337 F.3d at 434.

*(ii) Ease of access to sources of proof*

Rembrandt alleges that Comcast purchased devices from third parties and used them together in a way that practices its patents. Engineering documents may establish how the

---

[2] In *Whistler*, the Court considered the sources of proof and "center of gravity" together in the same discussion, indicating that the factors are closely related. *See Whistler* at *11-12.

devices were used, and Comcast contends that those, and most of the other relevant documents, are located in Philadelphia.  Plaintiff counters that the alleged infringement occurred nationwide, and records of the infringing activity that occurred in the Eastern District of Texas will be located here.  However, neither party seriously contends that the ease of access to documentary sources of proof weighs significantly for or against transfer. *See Eliserio v. Floydada Housing Authority*, 388 F.Supp.2d 774 (S.D. Tex. 2005) (location of documents is not given much weight unless there is a showing that the documents are so voluminous that transport is a major undertaking).  Generally, engineering documents and most other documentary sources of proof may be transported relatively easily, and Comcast has made no showing that transporting documents in this case would be uncharacteristically burdensome.  Accordingly, this factor is neutral.

*(iii) The availability of compulsory process to secure the attendance of witnesses*

The attorneys that prosecuted the '819 and '627 patents are outside the subpoena power of this Court, and within the subpoena power of the Eastern District of Pennsylvania.[3]  However, it is unclear what issues these attorneys would testify to at trial.  Rembrandt points out that prosecuting attorneys normally testify in cases where inequitable conduct is at issue, but Comcast does not allege inequitable conduct in this case.  While Comcast has identified two possible witnesses for whom compulsory process would be available in the transferee district, but not this district, the likelihood that the attorneys will testify at trial and substantive import of their testimony are largely unknown.  Further, any Court within 100 miles of these witnesses may procure these witnesses' depositions, and the video recording of a deposition may be used

---

[3] The firms that prosecuted the '631 and '858 patents are located in Atlanta, Georgia with an additional office in Huntsville, Alabama.

6

at trial.  Thus, the Court finds this factor is neutral.

*(iv) Willing witnesses' cost of attendance*

Comcast argues that its witnesses and Rembrandt's witnesses are principally located in the Eastern District of Pennsylvania, which weighs in favor of transfer.  However, to the extent those witnesses are employees of either party, their convenience is given less consideration because their testimony can be compelled. *See TIG Ins. Co. v. NAFCO Ins. Co.*, 177 F.Supp.2d 561, 568 (N.D. Tex. 2001); *SMI-Owen Steel Co., Inc., v. St. Paul Fire & Marine Ins. Co.*, 113 F.Supp.2d 1101 (S.D. Tex. 2000).

The inventors live in Florida, but considering that traveling to Marshall from Florida is no more inconvenient than traveling to Philadelphia from Florida, this fact does not weigh for or against transfer.  Although it may be true that many of the witnesses in this case reside in the Eastern District of Pennsylvania, those witnesses are party witnesses whose cost of attendance warrants less weight in the transfer analysis.  Therefore, this factor is neutral.

*(v) Practical problems that make the case's trial easy, expeditious, and inexpensive*

Neither party devoted significant argument to this factor, and the Court finds that it is neutral.

*Public Interests*

*(i) administrative difficulties flowing from court congestion*

Comcast argues that this factor is neutral because the average time to trial in the Eastern District of Pennsylvania is only two weeks longer than the average time to trial in the Eastern District of Texas.  Rembrandt argues that transfer will delay the case by more than two weeks because the case will have to begin anew in the transferee district.  Further, the Eastern District of Texas has a set of patent rules designed to ensure that patent cases progress as smoothly as

7

possible. Rembrandt's arguments are well taken, and it appears that transfer could result in appreciable delay. Therefore, this factor weighs against transfer.

> *(ii) the local interest in having local issues decided at home*

Rembrandt and Comcast are headquartered in the Eastern District of Pennsylvania and, Comcast argues, the citizens of that district have a strong interest in adjudicating this dispute between the locally based parties. By contrast, Defendants argue, the citizens of the Eastern District of Texas have no interest in adjudicating this dispute, and it would be unfair to burden them with jury duty. Although the parties are headquartered in the Eastern District of Pennsylvania, the alleged infringement occurred nationwide, including in this district, and the citizens of the Eastern District of Texas have an interest in enforcing United States patent law. *Source, Inc. v. Rewards Network, Inc.*, No. 2:04cv347, 2005 WL 2367562 at *3 (E.D. Tex. Sept. 27, 2005). Thus, the localized genesis of the dispute is somewhat offset by the national scope of the alleged infringement.

Further, the patent venue statute allows actions to be brought in any venue where the Defendant resides or where the Defendant has committed acts of infringement and has a regular and established place of business. 28 U.S.C. § 1400. The patent venue statute expresses no preference between the two alternatives, and under the statute, the Eastern District of Texas and the Eastern District of Pennsylvania are equally viable venues for this lawsuit. Opting in favor of the Eastern District of Pennsylvania over the Eastern District of Texas merely because Comcast is headquartered in the Eastern District of Pennsylvania would burden the choice provided for in the patent venue statute. Accordingly, this factor is neutral.

> *(iii) the forum's familiarity with the governing law*

The Eastern District of Pennsylvania and the Eastern District of Texas are equally

8

capable of hearing this case, therefore, this factor is neutral.

*(iv) the avoidance of unnecessary conflict of law problems involving foreign law's application*

This case is governed by federal patent law, therefore, this factor does not weigh in the Court's analysis.

### Conclusion

Comcast failed to carry its burden and establish that transfer is appropriate in this case. Accordingly, Comcast's motion to transfer venue to the Eastern District of Pennsylvania (Doc. 10) is DENIED.

**So ORDERED and SIGNED this 29th day of June, 2006.**

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE

**Appendix K**                                    Revised: 12/3/03

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
_____ DIVISION
## APPLICATION TO APPEAR PRO HAC VICE

1. This application is being made for the following: Case #  2:05-cv-00443-TJW

Style:_____

2. Applicant is representing the following party/ies:

   Rembrandt Technologies, LP

3. Applicant was admitted to practice in ___MA___ (state) on November 29, 2005 (date).

4. Applicant is in good standing and is otherwise eligible to practice law before this court.

5. Applicant is not currently suspended or disbarred in any other court.

6. Applicant has/has not had an application for admission to practice before another court denied (please circle appropriate language). If so, give complete information on a separate page.

7. Applicant has/has not ever had the privilege to practice before another court suspended (please circle). If so, give complete information on a separate page.

8. Applicant has/has not been disciplined by a court or Bar Association or committee thereof that would reflect unfavorably upon applicant's conduct, competency or fitness as a member of the Bar (please circle). If so, give complete information on a separate page.

9. Describe in detail on a separate page any charges, arrests or convictions for criminal offense(s) filed against you. Omit minor traffic offenses.

10. There are no pending grievances or criminal matters pending against the applicant.

11. Applicant has been admitted to practice in the following courts:

    U.S.D.C. - D. Mass. - 1/26/06

12. Applicant has read and will comply with the Local Rules of the Eastern District of Texas, including Rule AT-3, the "Standards of Practice to be Observed by Attorneys."

13. Applicant has included the requisite $25 fee (see Local Rule AT-1(d)).

14. Applicant understands that he/she is being admitted for the limited purpose of appearing in the case specified above only.

**Application Oath:**

   I, ___Michael S. Forman___ do solemnly swear (or affirm) that the above information is true; that I will discharge the duties of attorney and counselor of this court faithfully; that I will demean myself uprightly under the law and the highest ethics of our profession; and that I will support and defend the Constitution of the United States.

Date 6/29/06            Signature _____

Name (please print)   Michael S. Forman

State Bar Number   MA 663,026

Firm Name:   Fish & Richardson P.C.

Address/P.O. Box:   225 Franklin Street

City/State/Zip:   Boston, MA  02110-2804

Telephone #:   (617) 542-5070

Fax #:   (617) 542-8906

E-mail Address:   Forman@fr.com

Secondary E-Mail Address:

Applicant is authorized to enter an appearance as counsel for the party/parties listed above.  This application has been approved for the court this 3 day of July , 20 06

David J. Maland, Clerk

U.S. District Court, Eastern District of Texas

By

Deputy Clerk

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

REMBRANDT TECHNOLOGIES, LP

    v.

COMCAST CORPORATION; COMCAST
CABLE COMMUNICATIONS, LLC; AND
COMCAST OF PLANO, LP

Civil Action No. 2:05-cv-00443-TJW

## PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND MOTION FOR EXPEDITED BRIEFING SCHEDULE

## I.    INTRODUCTION

Rembrandt is the owner of four United States patents relating to various techniques used in electronic communication. These inventions were developed after years of research by Paradyne Corporation, a premier designer and manufacturer of communication products. In this action, Rembrandt asserts that Comcast infringes these patents through Comcast's provision of cable services and cable internet services.

Central to Rembrandt's allegations of infringement is an understanding of how certain devices used in Comcast's cable internet and television networks operate internally. Yet, despite a court-ordered deadline of June 16, 2006 to complete production of documents, Comcast has not produced any source code, and failed to produce the vast majority of email and other relevant electronic messages. Instead, Comcast has repeatedly delayed producing this information. Further, in the last few days, Comcast has made the unbelievable assertion that it has absolutely no source code in its possession, notwithstanding the fact that it forced this Court to resolve a dispute regarding the number of locations in which source code would be housed. Despite knowing it had a clear duty to produce source code, as evidenced by the communications between the parties as early as January, 2006, Comcast has admitted that it neglected to determine whether such source code was under its control. Indeed, to Rembrandt's knowledge, Comcast has not yet begun to review its agreements with its suppliers relating to source code.

Comcast also has failed to obtain what it asserts are required clearances for the production of documents it claims are subject to third party confidentiality obligations.

As set forth below, Comcast's delays are extensive, inexcusable, and prejudicial. With the claim construction process beginning in under two months, Rembrandt's ability to review and digest any subsequently produced documents has already been irreparably compromised. To obviate any further prejudice, Comcast should be ordered to produce all remaining requested documents within its possession, custody, or control, within one week of the Court's order.[1] Rembrandt also requests a shortened briefing period for resolution of this motion to facilitate resolution of this issue.

## II.    FACTUAL BACKGROUND

In this action, Rembrandt asserts that Comcast has infringed, and continues to infringe, Rembrandt's U.S. Patent Nos. 4,937,819, 5,243,627, 5,719,858, and 5,852,631. Rembrandt's patents relate to mechanisms to ensure fast and efficient communication between devices. Three of the asserted patents are infringed through Comcast's provision of cable internet services. The fourth patent is infringed by Comcast's reception of digital television signals, which Comcast retransmits over its cable lines to its subscribers.

Even before the Court issued its proposed docket control order requiring the document production of parties to be complete by June 16, 2006 (*see* Docket No. 28 at ¶ 3(b)), Rembrandt placed Comcast on notice of the scope of document production and discovery that would be required in the case. Almost seven months ago, Rembrandt's counsel wrote to Comcast's counsel to identify categories of documents Rembrandt expected to be included in Comcast's document production. (*See* Ex. A at 1.) Included among these categories were "[a]ll software (including source code) relating to Comcast's broadband service offerings" (*id.*), "[a]ll software (including source code) relating to the use in any Comcast cable network of trellis encoding, Reed-Solomon encoding, interleaving algorithms, and documentation describing such software" (*id.* at 2), and documents evidencing the extent to which Comcast's network includes

---

[1]    Rembrandt notes that there are a number of additional discovery-related disputes among the parties, and that efforts are underway to resolve these disputes without invoking the Court's

components that comply with two relevant standards, the DOCSIS and ATSC standards (*id.* at 1 & 2.). With respect to source code, Rembrandt requested that Comcast seek relevant source code from third parties, to the extent the source code was within Comcast's control but not its immediate possession. (*See id.* at 2.)

On January 26, 2006, not having received a response, Rembrandt again wrote to Comcast, reiterating its request that Comcast seek the production of source code from third parties. Noting that the case would likely generate substantial amounts of discovery, Rembrandt requested that Comcast agree to the early commencement of third party discovery in order to streamline and expedite the process. (*See* Ex. B.)

Comcast replied on January 31, 2006, stating, "The early commencement of document discovery from Comcast, or from third parties who have conducted business with Comcast, does not seem justified." (Ex. C.) According to Comcast, early discovery was not justified because the deadlines set by the rules "appear to fairly balance the burdens on both the plaintiff and defendant." (Ex. C.)

### A.      Comcast's Delay on Email and Third Party Documents

Despite Rembrandt's early notification of the extent of discovery that would be required, on April 28, 2006, counsel for Comcast wrote to counsel for Rembrandt, noting, "it will likely be impossible for us to review every Comcast email that might conceivably be responsive to Rembrandt's document requests. To avoid the extreme and undue burden of reviewing every email, we propose to use search terms to manage email discovery." (Ex. D.) Rembrandt agreed that, in lieu of manually reviewing email, Comcast could perform a keyword search, provided that Comcast would not further cull the results based on Comcast's perception of a document's relevance or irrelevance. This was over three months ago, three months after Rembrandt's initial communication regarding document product, and over a month before the deadline for production.

On May 2, 2006, the Court held its scheduling conference in this case. During the conference, Comcast's attorney stated that, "if the scope of the case, after we see the

---

assistance. However, the extreme lateness of Comcast's document production necessitated Rembrandt's motion to compel.

infringement contentions, is particularly broad, broader than I understand it to be now, for example, . . . technically it will be difficult, if not impossible, for us to truly produce all relevant documents by June 16." (Ex. M at 10:5-10.)  The Court asked, "are you saying that you believe, based upon your understanding of what the infringement position is, that you can make a good faith effort and will make—and will comply with the requirements of that paragraph on or about June 16th, but that if after seeing the infringement contentions, you may need additional time to produce other documents?" (*Id.* at 10:18-24.)  Comcast's attorney responded, "I think based upon my understanding now, we can come—we can come very close.  We may even be able to meet the June 16 deadline." (*Id.* at 10:25-11:3.)  The scope of Rembrandt's infringement contentions, served ten days later, was entirely consistent with Rembrandt's January 29 letter.  But Comcast did not meet that deadline, and, significantly, never requested an extension.

Several weeks before the deadline to produce documents, counsel for Rembrandt provided a list of proposed email search terms.  When Comcast failed to respond, Rembrandt counsel wrote an additional letter on May 25, 2006, seeking to ensure that relevant emails would be produced on time:

> On Tuesday, we provided a list of proposed search terms for Comcast's email system and users.  We are awaiting your proposal regarding the population and databases on which the search terms should run. . . . .  Given that under this proposal Comcast would not need to conduct any review of emails for relevance, we expect that such production will be made by Comcast's deadline for producing documents.  ***We are prepared to discuss any remaining issues at your convenience, so that we can ensure timely production of Comcast's email documents***.

(Ex. E at 1.)[2]

Having received no response to the May 25, 2006 letter, Rembrandt again wrote on June 5, 2006, stating that Rembrandt "would appreciate hearing back from you as [to] whether Comcast will comply with the Court's Order and produce all documents on June 16th."  (Ex. F.)

Rembrandt received no response to the June 5, 2006 letter.  On June 16, 2006, Comcast produced a set of documents.  On June 26, 2006, Rembrandt wrote, asking whether Comcast's production included email documents.  "Rembrandt provided a list of search terms weeks ago,

---

[2] Unless otherwise indicated, all emphasis in this brief has been added.

and we understood that Comcast would provide a proposal regarding the universe for the search. We have not heard any word from Comcast to date."  (Ex. G.)  Rembrandt also asked "whether Comcast intends to produce any additional documents as part of a 'rolling' production, or whether Comcast completed its production by the Court-ordered deadline."  (*Id.*)  Still, no response was forthcoming, and Rembrandt again wrote on July 3, 2006, reiterating these requests.  (*See* Ex. H.)

On July 5, 2006, counsel for Comcast finally responded to Rembrandt's repeated requests.  Comcast noted that its document production included no results from any keyword search for email.  It instead included "only those [e-mails] that were collected as part of the standard document collection process.  It does not include e-mails collected electronically by search terms.  We are in the process of gathering and sorting e-mails that are responsive to the search terms sent to us earlier by [Rembrandt's counsel]." (Ex. I.)  The search terms had been provided on May 23, 2006, *a month and a half earlier*.  (*See* Ex. E at 1.)

In the same letter, Comcast also stated, "we realize that there are likely other relevant, responsive and non-privileged documents that may not have been included in the June production.  As with the e-mails, we are in the process of seeking out and producing any such remaining documents." (Ex. I.)  As noted above, this occurred almost six months after Rembrandt identified the documents it expected to receive and suggested an early exchange of discovery, and after Comcast responded that no such early discovery was justified, because the deadlines set by the rules "appear to fairly balance the burdens on both the plaintiff and defendant."  (Ex. C.)

On July 7, 2006, three weeks after the deadline for production of all documents, Comcast for the first time identified yet an additional category of documents that had not been produced.  "There are a number of documents that have been collected and are in our possession, but which contain third-party confidential information.  We are in the process of determining whether we have contractual obligations to maintain those documents as confidential." (Ex. J.)

On July 21, 2006, Rembrandt again wrote to Comcast, noting that "we have not received any source code from Comcast" and that "we still await Comcast's production of email."  On July 25, 2006, the parties conferred regarding the outstanding issues.  Comcast's counsel,

however, noted that emails had only recently been collected, and that no electronic keyword search had yet been run on the collected emails.  Rembrandt wrote to confirm this conversation on July 27, 2006, noting that a further conversation had been scheduled for Monday, July 31, 2006.  Rembrandt asked when Comcast's counsel would be available on that date.  (*See* Ex. L.)

Comcast never replied to provide any available times for the scheduled meet-and-confer on July 31.  Instead, at 6:12 PM local time that day, Rembrandt's counsel received a written response.  (*See* Ex. N.)  Although Rembrandt had requested that all emails be produced by Friday, August 4 (*see* Ex. L at 1), Comcast stated that its ***automated*** keyword search would not even be complete before Friday, August 11, and that it would produce documents at an unspecified date thereafter.  (*See* Ex. N at 1.)  Moreover, although Rembrandt had requested that Comcast produce all documents previously withheld due to confidentiality agreements by Friday, August 4 (*see* Ex. L at 2), Comcast declined to specify a date by which such documents would be produced (*see* Ex. N at 2).

### B.    Comcast's Delay Regarding Source Code

With respect to source code, during the scheduling conference on May 2, 2006, the parties engaged in an extensive discussion with the Court regarding how source code would be treated.  Both parties agreed that source code would be housed with a neutral third party. Rembrandt requested that multiple third parties be selected in locations convenient both to Comcast and to Rembrandt's experts.  (*See* Ex. M at 16:6-17.)  Comcast, however, requested that only one location be available.  Comcast's counsel stated, "Number of copies is something that is—really, ***my client is quite concerned about***, and that's why our position is we should have simply one copy. . . . [There] are accidents when you have multiple copies." (*Id.* at 16:24-17:5.) The parties ultimately briefed the issue (*see* Docket Nos.  44 and 45) and the Court adopted Comcast's proposal that source code only be housed in a single location (*see* Docket No. 53).  At no point during the parties' discussions or in the parties' briefing did Comcast suggest what it now claims: that it has absolutely no source code to produce.

During the parties' meeting on July 25, 2006, Comcast's counsel stated, for the first time, that despite the parties' extensive discussions, the colloquy during the scheduling conference, and the subsequent briefing, no source code was in fact in Comcast's possession or custody.

Comcast represented that the source code would be in the possession of the third parties who manufacture the equipment used on Comcast's networks. In Rembrandt's July 27, 2006 letter, Rembrandt's counsel noted that Comcast configures cable modems for use on Comcast's network; those configuration files, and the source code to any web sites used in configuring the modems, are undoubtedly in Comcast's possession, and should be produced. (*See* Ex. L at 2.) Comcast's July 31, 2006 letter fails to address this issue. (*See* Ex. N at 2.)

Moreover, Comcast may very well have control over its suppliers' source code, but has failed to even conduct the review it says is necessary to determine that fact. In its July 25 letter, Comcast's counsel further revealed that Comcast had not even reviewed its agreements with vendors to determine whether provisions in those agreements provided Comcast with control over source code. (*See* Ex. L at 3.) In its subsequent letter, Comcast declined to specify a date by which it will even determine whether any source code is within its control. (*See* Ex. N at 2.) This letter comes almost two months after the Scheduling Conference, and well over a month after the deadline for production of all relevant documents.

This motion, seeking to compel Comcast to complete its document production, including all email, third party confidential documents, and source code in its possession, custody, or control, followed.

## III.  ARGUMENT

### A.  Legal Standards

The relevant legal standards are familiar. "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. . . ." Fed. R. Civ. P. 26(b)(1). This rule applies equally to confidential or sensitive information, whose confidentiality may be assured by a protective order entered by the Court. *See* Fed. R. Civ. P. 26(c); *Corning, Inc. v. SRU Biosystems, LLC*, 223 F.R.D. 191, 195 (D. Del. 2004) ("In order to permit parties to proceed with litigation involving confidential information, protective orders, such as the one entered in this case, must be respected by the parties and thus are presumed by courts to be effective. Otherwise, many complex cases, particularly patent cases, would be impossible to prosecute and defend."); *see also Federal Open Market Committee v. Merrill*, 443 U.S. 340, 362 n.24 (1979) ("[O]rders forbidding any disclosure of trade secrets or confidential commercial

information are rare.  More commonly, the trial court will enter a protective order restricting disclosure to counsel or to the parties.")

A district court's scheduling order cannot lightly be disregarded by a party.  Deadlines set in the scheduling order "shall not be modified except upon a showing of good cause and by leave of the district judge."  Fed. R. Civ. P. 16(b); *see also Barrett v. Atlantic Richfield Co.*,  95 F.3d 375, 380 (5th Cir. 1996) ("Consistent with the authority vested in the trial court by rule 16, [the Court of Appeals for the Fifth Circuit] gives the trial court broad discretion to preserve the integrity and purpose of the pretrial order.").

The Court's Rule 16 docket control Order required disclosure, by June 16, 2006, of "all documents, data compilations, and tangible things in the possession, custody, or control of the party that are relevant to the case, except to the extent these disclosures are affected by the time limits set forth in the Patent Rules for the Eastern District of Texas." (Docket No. 28 at 3, ¶ 3(b).)

**B.      Comcast Should Have Produced Its Email By the Court-Ordered Deadline of June 16, 2006, and Should Be Ordered to Produce Within One Week**

Comcast has been aware of the scope of relevant documents for over seven months, since Rembrandt's letter of January 9, 2006.  This letter (Ex. A)was explicit in listing the categories of documents Rembrandt expected would be relevant to the parties' dispute, including "[d]ocuments evidencing the extent to which the Comcast cable network . . . complies with any version of the Data Over Cable Service Specifications ('DOCSIS') standard," "[a]ll software (including source code) relating to Comcast's broadband service offerings, and documentation describing such software," and "[d]ocuments evidencing the extent to which the Comcast cable network . . . complies with the Advanced Television Systems Committee ('ATSC') Digital Television Standard." (Ex. A. at 1-2.)

Anticipating that the volume of discovery had the potential to be large, Rembrandt invited Comcast to begin the process early, before the Court's scheduling conference.  (*See* Ex. B.)  Comcast refused.  (*See* Ex. C.)  At the May 2, 2006 scheduling conference, counsel for Comcast stated that the only reason its production might be delayed was if Rembrandt's infringement contentions were broader than Comcast then understood them to be.  (Ex. M. at

8

10:5-10.)  Rembrandt served its infringement contentions on May 12, 2006.  The scope of the

accused instrumentalities in the infringement contentions was consistent with Rembrandt's

January 9, 2006 letter.

As recited above, Rembrandt sent repeated letters requesting that Comcast confirm

whether it anticipated completing its document production by June 16, 2006.  Only after the

deadline had come and gone did Comcast acknowledge that it had not produced the bulk of its

relevant emails.  (*See* Ex. I.)  Comcast provided no justification for its failure.  (*See id.*)

There can be no dispute that Comcast's email contains material that is relevant to

Rembrandt's infringement allegations.    Rembrandt's infringement contentions turn not only on

how the devices at issue work internally, but also how they are configured by Comcast.

Comcast's internal emails almost certainly contain information pertaining to the configuration of

these devices.  Moreover, Comcast engineers almost certainly send internal emails as technical

problems arise, providing information about the internal workings of Comcast's system.  These

engineers likely also contact the third-party suppliers to resolve such problems.  Email

correspondence likely includes financial information relevant to a determination of a reasonable

royalty amount, as well as information regarding when Comcast first learned of Rembrandt's

patents.  In short, Comcast's email is likely to disclose information relevant to nearly every

salient issue in this litigation.

The matter is particularly pressing because the claim construction process begins on

September 20, 2006.  (*See* Docket No. 52 at 4.)  Rembrandt's claim construction position will be

predicated, in large part, on information contained in Comcast's emails regarding how Comcast's

networks are configured. Despite Comcast's representation to the Court that "we can come very

close" to meeting the June 16, 2006 deadline (Ex M at 11), as of July 25 Comcast had not even

**begun** searching its email production for the keywords agreed upon by the parties many weeks

ago.  During the scheduling conference, the Court required Comcast to "comply with the

requirements of that paragraph [3(b)] on or about June 16th."  Yet, by failing to even search the

bulk of its email, Comcast has not complied.

Because Comcast has known of its obligation since January, it should not be permitted any further delays.  The Court should order it to produce within one week, and impose sanctions for further noncompliance.

### C.  Comcast Should Be Ordered to Produce All Relevant Source Code Within Its Possession, Custody or Control

#### 1.  Comcast Undoubtedly Has Possession of Some Relevant Source Code

On July 25, 2006 for the first time, despite lengthy negotiations and motion practice, Comcast represented that no source code existed within its possession.  Certain source code, however, is undoubtedly in Comcast's possession.  For example, Comcast must configure a subscriber's cable modem as well as its own cable modem head-end device.  The software files used to do so are highly relevant to the dispute, because they provide information regarding the precise configuration of Comcast's system.  Moreover, it is likely that at least some aspects of the modem configuration take place through communication between a cable modem and an automated server such as a web site.  The source code used on the configuration web site is similarly relevant to Rembrandt's infringement contentions.  Any analogous configuration files or server software used by Comcast's ATSC receivers would be similarly relevant.

Rembrandt noted the likely existence of these documents to Comcast in Rembrandt's letter of July 27, 2006.  (*See* Ex. L. at 2.)  In its response, Comcast declined to indicate whether these documents would be produced.  (*See* Ex. N at 2.)

#### 2.  Comcast Should Be Ordered to Request Source Code From Third-Party Suppliers

Comcast carefully states that it only lacks *possession* of source code.  The Court's Order, however, required production of all documents "possession, custody, or ***control*** of the party."  Comcast had a duty to exercise its control by timely requesting source code from the third parties in whose possession it may be found.  Comcast should be required to exercise its control now.

As one district court summarized the applicable law:

> A party to a lawsuit cannot escape the obligation to produce documents by incanting . . . "not in my possession."  That a party does not possess documents is simply immaterial if those documents remain in that party's custody or control. *Searock v. Stripling,* 736 F.2d 650, 653 (11th Cir.1984); *M.L.C., Inc. v. North American Philips Corp.,* 109 F.R.D. 134, 136 S.D.N.Y.1986).  The word "control" is to be broadly construed.  A party controls documents that it has the

10

right, authority, or ability to obtain upon demand. *Id*; *Searock, supra*, 736 F.2d at 653.

*Scott v. Arex, Inc.*, 124 F.R.D. 39, 41 (D. Conn. 1989). Therefore, Comcast must, at minimum, state whether it has the "right, authority, or ability" to obtain the relevant source code from its third-party suppliers on demand. Comcast must also produce any agreements between it and its third-party suppliers relating to the devices at issue in this litigation, because these agreements will likely include terms pertaining to Comcast's access to the third-party source code.

Moreover, in its Motion for Entry of Protective Order (Docket No. 45), Comcast has also stated that "much of the same source code at issue in this case" was also involved in the *Caritas Techs., Inc. v. Comcast Corp.* case now pending before Judge Folsom in the Eastern District of Texas. (Docket No. 45 at 4.) How can Comcast assert that it now has no source code in its possession? Certainly, to the extent any relevant source code has been produced in that case, the code is in the "possession" of Comcast, requiring it to be produced. *Compare In re Bankers Trust Co.*, 61 F.3d 465, 469 (6th Cir. 1995) ("[P]arties in possession of documents forwarded to them by a federal agency have 'possession, custody or control' within the meaning of Rule 34, notwithstanding the fact that the agency by regulation retains ownership and restricts disclosure").[3]

### D. Comcast Should Produce Its Third-Party Confidential Documents Immediately

Comcast has also stated that it has withheld documents subject to confidentiality agreements with third parties. Comcast has been aware of the scope of discovery that would be required by this case since January. There is no reason that Comcast could not have sent notice letters to interested third parties at that time. The notice letters could have given those third parties an opportunity to intervene and move for a protective order by June 16, 2006, the court-ordered deadline. Comcast could have avoided any issue with disclosing confidential information simply by sending the notice letters promptly. Comcast's own dilatory actions should not now shield it from the obligation to produce all relevant documents.

---

[3] To the extent the protective order in place restricts disclosure of these documents, Comcast should be required, at minimum, to seek the assent of the interested parties to disclose the documents in the present litigation.

In fact, there is no basis whatsoever for withholding third party documents. The Protective Order in this case protects confidential information. It expressly applies to third parties. (Docket No. 53, ¶ 20.) There is no legitimate reason to withhold information on the purported basis of confidentiality.

### E.   Comcast Should Be Ordered to Pay Rembrandt's Costs Associated With This Motion

Federal Rule of Civil Procedure 37(a)(4) speaks in mandatory terms. It provides that "the court **shall** . . . require the party . . . whose conduct necessitated the motion . . . to pay the moving party the reasonable expenses incurred in making the motion, including attorney's fees." *Id.* The only exceptions are: a) where the motion was not filed without first making a good faith effort to obtain the discovery without court action; b) the opposing party's nondisclosure was substantially justified; and c) other circumstances make an award of expenses unjust.

None of these exceptions applies here. Rembrandt has been more than diligent in seeking to have Comcast provide its discovery in a timely manner. Rembrandt sent at least five letters from January through July seeking to ensure that Comcast would comply with its discovery obligations in a timely fashion, to no avail. Rembrandt conferred with Comcast before and during the scheduling conference, and, regarding email, on at least two other occasions.[4] Nor can it be said that Comcast's nondisclosure was substantially justified. Comcast was aware of the obligation since January, did not ever contest the obligation, and represented to the Court that it would comply with its obligation on or about June 16, 2006. For the same reason, no other circumstances exist that would make an award of expenses unjust.

## IV.   CONCLUSION

For the foregoing reasons, the Court should allow Rembrandt's motion to compel, ordering, in the form attached, production of all relevant documents within one week, and further requiring Comcast to pay Rembrandt's reasonable expenses incurred in making this motion.

---

[4]   A conference took place on July 25, and another brief conference took place when the parties agreed on keywords.

Given the existing delays and the upcoming claim construction deadlines, Rembrandt respectfully requests a shortened briefing period, requiring Comcast to file any opposition by Tuesday, August 8, and requiring Rembrandt to file any reply by Wednesday, August 9.[5]

---

[5] Rembrandt requested Comcast's assent to a shortened briefing schedule, but Comcast refused.

Respectfully submitted,

Dated:  August 1, 2006

FISH & RICHARDSON P.C.


By:  */s/ Otis Carroll with permission by Robert Christopher Bunt*
Otis Carroll
State Bar No. 03895700
Wesley Hill
State Bar No. 24032294
IRELAND, CARROLL & KELLEY, P.C.
6101 S.  Broadway, Suite 500
Tyler, Texas 75703
Tel: (903) 561-1600
Fax: (903) 581-1071
Email: fedserv@icklaw.com

Frank E.  Scherkenbach
Lawrence K.  Kolodney
Michael H.  Bunis
Denis Ticak
Thomas A.  Brown
FISH & RICHARDSON, P.C.
225 Franklin Street
Boston, MA 02110
Tel: 617-542-5070
Fax: 617-542-8906

Timothy Devlin
FISH & RICHARDSON, P.C.
919 N.  Market Street, Suite 1100
Wilmington, DE 19899-1114
Tel: 302-652-5070
Fax: 302-652-0607

Alan D.  Albright
State Bar # 00973650
FISH & RICHARDSON, P.C.
One Congress Plaza, 4th Floor
111 Congress Avenue
Austin, TX 78701
Tel: 512-391-4930
Fax; 512-591-6837

Attorneys for Plaintiff
REMBRANDT TECHNOLOGIES, LP

14

## CERTIFICATE OF CONFERENCE ON MOTION TO COMPEL

I certify that as set forth above, including on July 25, 2006, I conferred with counsel for defendants. As set forth in more detail above, counsel did not assent to the relief requested by Rembrandt's Motion to Compel.

/s/ Thomas A. Brown
Thomas A. Brown

## CERTIFICATE OF CONFERENCE ON MOTION FOR EXPEDITED BRIEFING SCHEDULE

I certify that on August 1, 2006, I conferred with counsel for defendants. Counsel did not assent to the relief requested by Rembrandt's Motion for an Expedited Briefing Schedule.

/s/ Robert Christopher Bunt

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this motion was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to FED. R. CIV. P. 5(d) and Local Rule CV-5(e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by certified mail, return receipt requested, on this first day of August, 2006.

/s/ Robert Christopher Bunt

21389109.doc

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

REMBRANDT TECHNOLOGIES, LP

    v.

COMCAST CORPORATION;
COMCAST CABLE
COMMUNICATIONS, LLC; AND
COMCAST OF PLANO, LP

    Civil Action No. 2:05-cv-00443-TJW

## PROPOSED ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL

Upon review of the motion of Plaintiff Rembrandt Technologies, LP to compel the production of documents, along with all supporting and opposing memoranda, the Court finds that Plaintiff's motion is well-taken, and should be, and is hereby, GRANTED.

Accordingly, it is ORDERED that each defendant must produce all relevant documents, including, but not limited to, all email documents responsive to the set of keywords agreed upon by the parties; all documents previously withheld due to third party confidentiality agreements; and all relevant source code within Comcast's possession or custody, within one week of this Order. It is further ORDERED that Defendants shall take all steps reasonably necessary to ensure that all source code within Defendants' individual or collective control be similarly produced within one week of this Order.

It is further ORDERED that Defendants pay Plaintiff's reasonable costs, including attorneys' fees, associated with the filing of this motion.

IT IS SO ORDERED.

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

REMBRANDT TECHNOLOGIES, LP

    v.

COMCAST CORPORATION;
COMCAST CABLE
COMMUNICATIONS, LLC; AND
COMCAST OF PLANO, LP

Civil Action No. 2:05-cv-00443-TJW

## PROPOSED ORDER GRANTING PLAINTIFF'S MOTION FOR SHORTENED BRIEFING SCHEDULE

Upon review of the motion of Plaintiff Rembrandt Technologies, LP for a shortened briefing schedule on its motion compel the production of documents, the Court finds that Plaintiff's motion is well-taken, and should be, and is hereby, GRANTED.

Accordingly, it is ORDERED that Defendants must respond to Plaintiff's motion to compel by Tuesday, August 8, 2006. Plaintiff must file a reply, if any, within one day after any opposition filed by Defendants.

IT IS SO ORDERED.

# FISH & RICHARDSON P.C.

1425 K STREET, N.W.
11TH FLOOR
WASHINGTON, DC 20005

Frederick P. Fish
1855-1930

W.K. Richardson
1859-1951

Telephone
202 783-5070

Facsimile
202 783-2331

Web Site
www.fr.com

***VIA FACSIMILE & FIRST CLASS MAIL***

January 9, 2006

Asim Bhansali, Esq.
Keker & Van Nest, LLP
710 Sansome Street
San Francisco, CA  94111-1704



BOSTON

DALLAS

DELAWARE

NEW YORK

SAN DIEGO

SILICON VALLEY

TWIN CITIES

WASHINGTON, DC

Re:    Rembrandt Technology LP v. Comcast Corporation,
         Case No. 2:05cv443 (TJW) (E.D.Tex., Marshall Div.)

Dear Mr. Bhansali:

Pursuant to the Local Rules of the Eastern District of Texas, Federal Rule of Civil Procedure 26, and Judge Ward's discovery order, the parties have a duty to produce all relevant documents without further action by the opposing party or the Court within 45 days of the scheduling conference.  In order to facilitate the prompt production of documents by the Comcast Corporation ("Comcast"), Rembrandt Technology LP ("Rembrandt") identifies the following categories of documents it expects to be included as part of the disclosures required by the above-referenced rules:

1.    Documents evidencing the extent to which the Comcast cable network, including components used in or with the Comcast cable network, complies with any version of the Data Over Cable Service Specifications ("DOCSIS") standard.  Included in this category of documents are any manuals, user guides or other written material describing the DOCSIS standard or Comcast's compliance with the DOCSIS standard, and any compliance reports and correspondence with any compliance or certification bodies;

2.    All software (including source code) relating to Comcast's broadband service offerings, and documentation describing such software.  This category of documents includes, without limitation, software and documentation related to:  (1) broadband Internet Service; (2) voice over Internet protocol; (3) any scheduling algorithms run at the cable-headend or elsewhere to assign timeslots in an upstream data allocation MAP; (4) all cable head-end software that is used to (a) schedule services or allocate timeslots, (b) initiate ranging requests and calculate and transmit ranges to attached cable modems, (c) negotiate physical layer connections and modulation schemes with attached cable modems;  (d) negotiate and implement link layer connections with attached cable modems; or (e) implement error control or error correction; (5) all cable modem software that is used to (a) manage one or more

service flows, (b) respond to a ranging request message, (c) run a truncated binary exponential back-off algorithm or to otherwise determine when to transmit a message in a REQUEST or REQUEST / DATA information element, (d) negotiate physical layer connection or modulation scheme with a cable-headend; (e) negotiate and implement link layer connections with a cable-headend; or (e) implement error control or error correction.

3.      Documents evidencing the extent to which the Comcast cable network, including components used in or with the Comcast cable network, complies with the Advanced Television Systems Committee ("ATSC") Digital Television Standard. Included in this category of documents are any manuals, user guides or other written materials describing the ATSC standard or evidencing Comcast's compliance with the ATSC standard, including compliance reports and correspondence with any compliance or certification bodies;

4.      All software (including source code) relating to the use in any Comcast cable network of trellis encoding, Reed-Solomon encoding, interleaving algorithms, and documentation describing such software; and

5.      Information sufficient to identify the make and model of every digital television receiver used by Comcast to receive over-the-air digital television signals for retransmission to cable television customers.  In addition, please provide all software (both source code and object code) used in connection with such television receivers as well as any schematic diagrams, design documents and documents describing any theory or method of operation for any such television receivers. Moreover, please include the location of each such television receiver and the period of time each such television receiver has or had been in service.

It is Rembrandt's understanding that the some or all of the categories of software enumerated above may be in the possession of a Comcast agent or vendor.  To the extent that such source code is not in Comcast's immediate possession, kindly see to it that such software is produced from such third party or parties, thereby obviating the need for additional discovery mechanisms.  In an effort to make this discovery process as efficient as possible, we include a draft Protective Order for your review and consideration.

FISH & RICHARDSON P.C.
Asim Bhansali, Esq.
**January 9, 2006**
Page 3


Please note that we have listed the above document types in an effort to streamline
the discovery process. This list is, by no means, intended to limit or otherwise release
Comcast from its obligations under Judge Ward's discovery order, the Federal Rules
or the Local Rules of the Eastern District of Texas.

Should you have any questions relating to the above issues, do not hesitate to call me
directly.

Very truly yours,

Frank E. Scherkenbach

Enclosure

# FISH & RICHARDSON P.C.

1425 K STREET, N.W.
11TH FLOOR
WASHINGTON, DC 20005

Telephone
202 783-5070

Facsimile
202 783-2331

Web Site
www.fr.com

Frederick P. Fish
1855-1930

W.K. Richardson
1859-1951

**VIA FACSIMILE & FIRST CLASS MAIL**

January 26, 2006

Asim Bhansali, Esq.
Keker & Van Nest, LLP
710 Sansome Street
San Francisco, CA 94111-1704



BOSTON

DALLAS

DELAWARE

NEW YORK

SAN DIEGO

SILICON VALLEY

TWIN CITIES

WASHINGTON, DC

Re:  Rembrandt Technology LP v. Comcast Corporation,
Case No. 2:05cv443 (TJW) (E.D.Tex., Marshall Div.)

Dear Mr. Bhansali:

We write regarding certain discovery issues in the above-referenced litigation. We expect that the dispute will give rise to a substantial amount of third party discovery. To date, you have not responded to our letter of January 9, 2006 requesting that Comcast obtain relevant third party documents and provide them pursuant to document exchange in this case. Assuming that Comcast is unwilling to secure such discovery from third parties, we understand that Judge Ward allows third party discovery in advance of the Court Scheduling Conference by agreement of the parties. Accordingly, please let us know if Comcast will agree to begin third party discovery now.

We are available for a telephone conference if you believe it would be useful to address this proposal. Should you have any questions relating to the above issues, do not hesitate to call me directly at (617) 521-7852.

Very truly yours,

Michael H. Bunis

LAW OFFICES
# KEKER & VAN NEST
## LLP

710 SANSOME STREET
SAN FRANCISCO, CA 94111-1704
TELEPHONE (415) 391-5400
FAX (415) 397-7188

2006 FEB -1 AM 7: 44

RECEIVED

FEB 0 1 2006

FISH & RICHARDSON, P.C.
BOSTON OFFICE

## FACSIMILE TRANSMISSION COVER SHEET

January 31, 2006

| To | Telephone | Facsimile |
|----|-----------|-----------|
| Michael H. Bunis | | 617-542-8906 |
| Fish & Richardson | | |
| Boston, MA | | |

| From | Telephone | Code |
|------|-----------|------|
| BRIAN L. FERRALL | (415) 773-6635 | 6240/Dot |

Re   Rembrandt Technologies, LP v. Comcast Corp.

### Number of Pages (Including Cover):  4

## NO ORIGINAL WILL FOLLOW THIS TRANSMISSION

### COMMENTS

Correspondence dated January 31, 2006

Operator _____                          Time Sent _____

## IF YOU ENCOUNTER ANY DIFFICULTIES RECEIVING THIS TRANSMISSION,
## PLEASE CALL (415) 676-2277 OR (415) 391-5400

The information contained in this facsimile transmission is legally privileged and confidential and intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you receive this communication in error, please notify us immediately by telephone, and return the original transmission to us at the above address via the U.S. Postal Service. Thank you.

360919.01

LAW OFFICES

# KEKER & VAN NEST
## LLP

710 SANSOME STREET
SAN FRANCISCO, CA 94111-1704
TELEPHONE (415) 391-5400
FAX (415) 397-7188
WWW.KVN.COM

BRIAN L. FERRALL
BFERRALL@KVN.COM

January 31, 2006

**VIA FACSIMILE**

Michael H. Bunis
Fish & Richardson, P.C.
225 Franklin Street
Boston, MA  02110
Facsimile #:  617-542-8906

Re:     *Rembrandt Technologies, LLP v. Comcast Corporation; et al.*

Dear Mr. Bunis:

I write in response to your letter of January 26 to my law partner Asim Bhansali regarding discovery in the above-captioned matter. First, to avoid any confusion in the future, I want to point out that your letter dated January 9 was mistakenly faxed to Mr. Bhansali at his former law firm, Smyser Kaplan, in Houston. I'm sure you'll want to make sure that this error is corrected on your computer network.

Second, with regard to your requests concerning discovery, we are not inclined to alter the timeline set forth in the Federal Rules and the Local Rules. Those appear to fairly balance the burdens on both the plaintiff and defendant. The early commencement of document discovery from Comcast, or from third parties who have conducted business with Comcast, does not seem justified. Nonetheless, I'm happy to discuss this with you further if you would like. I'm generally available next Tuesday, February 7.

Third, we will evaluate your draft protective order and provide you comments.

Fourth, please find attached an executed copy of the agreement you propose regarding drafts of experts, reports and declarations. Please sign and return an executed copy to us.

Very truly yours,

BRIAN L. FERRALL

Enclosure

366341.01

# FISH & RICHARDSON P.C.

225 Franklin Street
Boston, Massachusetts
02110-2804

Telephone
617 542-5070

Facsimile
617 542-8906

Web Site
www.fr.com

Frederick P. Fish
1855-1930

W.K. Richardson
1859-1951

January 26, 2006

Asim M. Bhansali, Esq.
Keker & Van Nest, LLP
710 Sansome Street
San Francisco, CA  94111-1704

Michael H. Bunis, Esq.
Fish & Richardson P.C.
225 Franklin Street
Boston, MA  02110



ATLANTA

AUSTIN

BOSTON

DALLAS

DELAWARE

NEW YORK

SAN DIEGO

SILICON VALLEY

TWIN CITIES

WASHINGTON, DC

Re:    Rembrandt Technology LP v. Comcast Corporation,
       Case No. 2:05cv443 (TJW) (E.D.Tex., Marshall Div.)

Counsel:

  This confirms the parties' understanding regarding discovery related to expert witnesses in the above-captioned action.  The parties will only seek final expert reports of witnesses and will not seek, and the parties need not produce, drafts of expert reports, declarations and/or affidavits.

  The parties, however, will identify and produce copies of any documents "considered by the witness in forming the opinion" as required by Fed. R. Civ. P. 26(a)(2)(B) and any equivalent local rule in the Eastern District of Texas.  Moreover, parties will produce any retention agreements, any invoices from the expert and/or documents relating to payments to the expert.

  Nothing in this agreement is intended to restrict the parties' ability to inquire into the basis of any of the opinions expressed by the experts in their reports.

FISH & RICHARDSON P.C.

Asim M. Bhansali, Esq.
January 26, 2006
Page 2


        Please sign and return a copy of this letter to confirm agreement to the
conditions set forth above.


Agreed by the parties:

Rembrandt Technologies, LP       Comcast Corporation; Comcast Cable
                                Communications, LLC; and
                                Comcast Of Plano, LP

—————————————    ~~Asim Bhansali~~  Brian L. Ferrall
Michael H. Bunis          KEKER & VAN NEST, LLP
FISH & RICHARDSON P.C.    710 Sansome Street
225 Franklin Street         San Francisco, CA  94111-1704
Boston, MA  02110-2804


Dated: _____    Dated: __1/31/06__

LAW OFFICES

# KEKER & VAN NEST
### LLP

710 SANSOME STREET
SAN FRANCISCO, CA 94111-1704
TELEPHONE (415) 391-5400
FAX (415) 397-7188

## FACSIMILE TRANSMISSION COVER SHEET

April 28, 2006

| To | Telephone | Facsimile |
|---|---|---|
| Timothy Devlin, Esq.<br>Fish & Richardson, P.C.<br>Wilmington, Delaware 19899 | (302) 652-5070 | (302) 652-0607 |
| Otis Carroll, Esq.<br>Ireland, Carroll & Kelley, P.C.<br>Tyler, Texas 75703 | (903) 561-1600 | (903) 581-1071 |
| BRIAN L. FERRALL | (415) 773-6635 | **6240/Dot** |

Re   **Rembrandt Technologies, LP v. Comcast Corp.**

**Number of Pages (Including Cover): 3**

## NO ORIGINAL WILL FOLLOW THIS TRANSMISSION

### <u>COMMENTS</u>

Correspondence dated April 28. 3006

Operator _____                          Time Sent _____

### IF YOU ENCOUNTER ANY DIFFICULTIES RECEIVING THIS TRANSMISSION, PLEASE CALL (415) 676-2277 OR (415) 391-5400

The information contained in this facsimile transmission is legally privileged and confidential and intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you receive this communication in error, please notify us immediately by telephone, and return the original transmission to us at the above address via the U.S. Postal Service. Thank you.

360919.01

LAW OFFICES

# KEKER & VAN NEST
## LLP

710 SANSOME STREET
SAN FRANCISCO, CA 94111-1704
TELEPHONE (415) 391-5400
FAX (415) 397-7188
WWW.KVN.COM

BRIAN L. FERRALL
BFERRALL@KVN.COM

April 28, 2006

**VIA FACSIMILE**

Timothy Devlin, Esq.
Fish & Richardson, P.C.
919 N. Market Street, Suite 1100
P.O. Box 1114
Wilmington, Delaware 19899
Facsimile #: (302) 652-0607

Otis Carroll, Esq.
Ireland, Carroll & Kelley, P.C.
6101 S. Broadway, Suite 500
Tyler, TX 75703
Facsimile #: (903) 581-1071

Re:  *Rembrandt Technologies, LLP v. Comcast Corporation; et al.*

Dear Counsel:

I write to raise two issues regarding the production of documents that perhaps should be addressed prior to next week's scheduling conference in this case.

The first concerns email. As you know, it will likely be impossible for us to review every Comcast email that might conceivably be responsive to Rembrandt's document requests. To avoid the extreme and undue burden of reviewing every email, we propose to use search terms to manage email discovery. To that end, we invite you to propose a list of potential search terms, or, if you prefer, we will take the first shot at crafting such a list over the next week or two and submit it for your review. Once the parties agree on a fixed list of terms and search strings, we will use it to search the collected Comcast email, review the resultant emails for responsiveness and privilege, and produce them to Rembrandt. We would of course, agree that Rembrandt can and should do the same.

Further, because of the extensive time and computing resources required by the search process itself, we hope and intend to resolve all search-term issues *before* conducting any email searching so that the parties would have to search its email only once and will be able to avoid time consuming and costly multiple searches. In addition to making email discovery more manageable, another obvious motivation for negotiating and agreeing in advance on a reasonable list of search terms is to avoid needless disputes and motion practice over issues such as how email documents were searched.

Timothy Devlin, Esq.
Otis Carroll, Esq.
April 28, 2006
Page 2

Please let us know if you would agree to proceed with email discovery as proposed above.

The second issue concerns the dates for other document production. Without Rembrandt's infringement contentions, Comcast is, of course, unable to discern the full extent of documents that may need to be produced. If Rembrandt's contentions are particularly broad, however, we imagine that the document production from Comcast will be enormous. While we have every intention of meeting the June 16 deadline for core technical documents that are in Comcast's possession, it will not likely be possible to meet that deadline for truly all documents that might be relevant to the case. Therefore, we would propose a production on a rolling basis for purposes of the complete document production. We are happy to discuss your priorities, or to consider interim deadlines.

Please contact us to discuss these matters, or perhaps we can discuss in Marshall on Tuesday.

Very truly yours,

BRIAN L. FERRALL

cc: Jennifer Haltom Doan

# FISH & RICHARDSON P.C.

Suite 1100
919 N. Market Street
P.O. Box 1114
Wilmington, Delaware
19899-1114

Telephone
302 652-5070

Facsimile
302 652-0607

Web Site
www.fr.com

Frederick P. Fish
1855-1930

W.K. Richardson
1859-1951

May 25, 2006

Brian L. Ferrall, Esq.
Keker & Van Nest, L.L.P.
710 Sansome Street
San Francisco. CA 94111-1704

Re:    Rembrandt v. Comcast Corporation
       USDC-E.D. TX (Marshall) - Civil Action No. 2:05-cv-00443-TJW



Dear Brian:

I am writing to follow up regarding several issues we spoke about on Tuesday of this week.

ATLANTA

AUSTIN

BOSTON

DALLAS

DELAWARE

NEW YORK

SAN DIEGO

SILICON VALLEY

TWIN CITIES

WASHINGTON, DC

On Tuesday, we provided a list of proposed search terms for Comcast's email system and users. We are awaiting your proposal regarding the population and databases on which the search terms should run, and we are also awaiting any comments you have regarding our proposed list of search terms.

Given that under this proposal Comcast would not need to conduct any review of emails for relevance, we expect that such production will be made by Comcast's deadline for producing documents. We are prepared to discuss any remaining issues at your convenience, so that we can ensure timely production of Comcast's email documents.

We are also awaiting any comments you have to the proposed Protective Order Rembrandt submitted with its brief regarding source code. As I mentioned, we believe it would be useful to clean up any remaining differences to the parties' proposed texts, recognizing that the only remaining issue is the number and location of source code repositories. We agreed that you would provide comments to the draft that we attached to our brief, and we look forward to your comments.

We are considering your position regarding Rembrandt's designation of its preliminary infringement contentions, and I hope to provide a final response or proposal to you early next week. Please let me know if that timing raises any particular issues for you.

During our call, you noted potential issues with a number of topics from Rembrandt's 30(b)(6) notice, and suggested a conference call to discuss the notice. As I mentioned, we are happy to have a conference call, but we agreed that Comcast

FISH & RICHARDSON P.C.

Brian L. Ferrall, Esq.
May 25, 2006
Page 2

would send a letter outlining any issues so that we can conduct the call efficiently. We look forward to your letter.

Finally, we agreed to try to provide lists of proposed technical advisors this week, possibly by today. We informed you today that due to the vacation of one of our attorneys, we expect to be able to provide our list tomorrow.

If you have any questions regarding these issues, please let us know.

Very truly yours,

Timothy Devlin

TD:sam

80033500.doc

# FISH & RICHARDSON P.C.

225 Franklin Street
Boston, Massachusetts
02110-2804

Frederick P. Fish
1855-1930

Telephone
617 542-5070

W.K. Richardson
1859-1951

**VIA FACSIMILE**

Facsimile
617 542-8906

Web Site
www.fr.com

June 5, 2006

Brian L. Ferrall, Esq.
Keker & Van Nest, L.L.P.
710 Sansome Street
San Francisco. CA 94111-1704

Re:     Rembrandt v. Comcast Corporation, et al.
        USDC-E.D. TX (Marshall) - Civil Action No. 2:05-cv-00443-TJW

ATLANTA

AUSTIN

Dear Brian:

BOSTON

DALLAS

DELAWARE

NEW YORK

SAN DIEGO

SILICON VALLEY

TWIN CITIES

WASHINGTON, DC

I write as a follow up to your letter to Tim Devlin of April 28th in which you indicated that Comcast had some concerns about its ability to meet the document production deadline as set forth in Judge Ward's Order.  You further indicated that Comcast would be producing documents on a rolling basis.  To date, we have not received any documents and would appreciate hearing back from you as whether Comcast will comply with the Court's Order and produce all documents on June 16th, or if Comcast is still pursuing a rolling production strategy, kindly indicate when such production will begin.

In addition, as you may recall, on January 9th, we first wrote to Asim Bhansali of your firm regarding the production of documents in this case.  In that correspondence (a copy of which is attached for your convenience) we indicated the types of documents we expected Comcast to include in its production.  In addition to the categories listed therein, we also note that we expect Comcast to produce documents relating to sales and marketing of Comcast's bundled Broadband/Telephone/Cable products as these materials are relevant to Rembrandt's calculation of damages in this case.

Should you have any questions, do not hesitate to call me directly at (617) 521-7852.

Very truly yours,

Michael H. Bunis

MHB/dtb

21347438.doc

# FISH & RICHARDSON P.C.

1425 K STREET, N.W.
11TH FLOOR
WASHINGTON, DC 20005

Frederick P. Fish
1855-1930

W.K. Richardson
1859-1951

Telephone
202 783-5070

Facsimile
202 783-2331

Web Site
www.fr.com

**VIA FACSIMILE & FIRST CLASS MAIL**

January 9, 2006

Asim Bhansali, Esq.
Keker & Van Nest, LLP
710 Sansome Street
San Francisco, CA 94111-1704



BOSTON

DALLAS

DELAWARE

NEW YORK

SAN DIEGO

SILICON VALLEY

TWIN CITIES

WASHINGTON, DC

Re:    Rembrandt Technology LP v. Comcast Corporation,
       Case No. 2:05cv443 (TJW) (E.D.Tex., Marshall Div.)

Dear Mr. Bhansali:

        Pursuant to the Local Rules of the Eastern District of Texas, Federal Rule of
Civil Procedure 26, and Judge Ward's discovery order, the parties have a duty to
produce all relevant documents without further action by the opposing party or the
Court within 45 days of the scheduling conference.  In order to facilitate the prompt
production of documents by the Comcast Corporation ("Comcast"), Rembrandt
Technology LP ("Rembrandt") identifies the following categories of documents it
expects to be included as part of the disclosures required by the above-referenced
rules:

        1.    Documents evidencing the extent to which the Comcast cable network,
including components used in or with the Comcast cable network, complies with any
version of the Data Over Cable Service Specifications ("DOCSIS") standard.
Included in this category of documents are any manuals, user guides or other written
material describing the DOCSIS standard or Comcast's compliance with the DOCSIS
standard, and any compliance reports and correspondence with any compliance or
certification bodies;

        2.    All software (including source code) relating to Comcast's broadband
service offerings, and documentation describing such software.  This category of
documents includes, without limitation, software and documentation related to:  (1)
broadband Internet Service; (2) voice over Internet protocol; (3) any scheduling
algorithms run at the cable-headend or elsewhere to assign timeslots in an upstream
data allocation MAP; (4) all cable head-end software that is used to (a) schedule
services or allocate timeslots, (b) initiate ranging requests and calculate and transmit
ranges to attached cable modems, (c) negotiate physical layer connections and
modulation schemes with attached cable modems;  (d) negotiate and implement link
layer connections with attached cable modems; or (e) implement error control or error
correction; (5) all cable modem software that is used to (a) manage one or more

FISH & RICHARDSON P.C.
Asim Bhansali, Esq.
**January 9, 2006**
Page 2

service flows, (b) respond to a ranging request message, (c) run a truncated binary exponential back-off algorithm or to otherwise determine when to transmit a message in a REQUEST or REQUEST / DATA information element, (d) negotiate physical layer connection or modulation scheme with a cable-headend; (e) negotiate and implement link layer connections with a cable-headend; or (e) implement error control or error correction.

3.  Documents evidencing the extent to which the Comcast cable network, including components used in or with the Comcast cable network, complies with the Advanced Television Systems Committee ("ATSC") Digital Television Standard. Included in this category of documents are any manuals, user guides or other written materials describing the ATSC standard or evidencing Comcast's compliance with the ATSC standard, including compliance reports and correspondence with any compliance or certification bodies;

4.  All software (including source code) relating to the use in any Comcast cable network of trellis encoding, Reed-Solomon encoding, interleaving algorithms, and documentation describing such software; and

5.  Information sufficient to identify the make and model of every digital television receiver used by Comcast to receive over-the-air digital television signals for retransmission to cable television customers. In addition, please provide all software (both source code and object code) used in connection with such television receivers as well as any schematic diagrams, design documents and documents describing any theory or method of operation for any such television receivers. Moreover, please include the location of each such television receiver and the period of time each such television receiver has or had been in service.

It is Rembrandt's understanding that the some or all of the categories of software enumerated above may be in the possession of a Comcast agent or vendor. To the extent that such source code is not in Comcast's immediate possession, kindly see to it that such software is produced from such third party or parties, thereby obviating the need for additional discovery mechanisms. In an effort to make this discovery process as efficient as possible, we include a draft Protective Order for your review and consideration.

FISH & RICHARDSON P.C.
Asim Bhansali, Esq.
**January 9, 2006**
Page 3


Please note that we have listed the above document types in an effort to streamline the discovery process. This list is, by no means, intended to limit or otherwise release Comcast from its obligations under Judge Ward's discovery order, the Federal Rules or the Local Rules of the Eastern District of Texas.

Should you have any questions relating to the above issues, do not hesitate to call me directly.

Very truly yours,

*Frank E. Scherkenbach*

Frank E. Scherkenbach

Enclosure

x x x COMMUNICATION RESULT REPORT ( JUN. 5. 2006 11:44AM ) x x x

FAX HEADER 1: (1) FISHRICHARDSON16175428906
FAX HEADER 2: FISH&RICHARDSON16175428906

TRANSMITTED/STORED : JUN. 5. 2006 11:42AM
FILE MODE        OPTION              ADDRESS                          RESULT      PAGE
-----------------------------------------------------------------------------------------
2951 MEMORY TX                       Keker & Van Nest LLP             OK          5/5

-----------------------------------------------------------------------------------------
REASON FOR ERROR
E-1) HANG UP OR LINE FAIL            E-2) BUSY
E-3) NO ANSWER                       E-4) NO FACSIMILE CONNECTION

# FISH & RICHARDSON P.C.

225 Franklin Street
Boston, Massachusetts
02110-2804

Telephone
617 542-5070

Facsimile
617 542-8906

Web Site
www.fr.com

**Date**  June 5, 2006

**To**  Brian L. Ferrall, Esq.
Keker & Van Nest, L.L.P.
710 Sansome Street
San Francisco. CA 94111-1704
Telephone: (415) 391-5400

**Facsimile number**  18866-00153531 / (415) 397-7188

**From**  Michael H. Bunis

**Re**  v. Comcast Corporation, et al.
Our Ref.: 18866-001LL1

**Number of pages including this page**  4

**Message**

NOTE: This facsimile is intended for the addressee only and may contain privileged or confidential information. If you have received this facsimile in error, please immediately call us collect at 617 542-5070 to arrange for its return. Thank you.

# FISH & RICHARDSON P.C.

Suite 1100
919 N. Market Street
P.O. Box 1114
Wilmington, Delaware
19899-1114

Telephone
302 652-5070

Facsimile
302 652-0607

Web Site
www.fr.com

Frederick P. Fish
1855-1930

W.K. Richardson
1859-1951

**BY EMAIL**

June 26, 2006

Brian L. Ferrall, Esq.
Keker & Van Nest, L.L.P.
710 Sansome Street
San Francisco. CA 94111-1704

FR

ATLANTA

AUSTIN

BOSTON

DALLAS

DELAWARE

NEW YORK

SAN DIEGO

SILICON VALLEY

TWIN CITIES

WASHINGTON, DC

Re:    Rembrandt v. Comcast Corporation
       USDC-E.D. TX (Marshall) - Civil Action No. 2:05-cv-00443-TJW

Dear Brian:

I am writing regarding Comcast's recent production of documents.

First, please let us know whether Comcast's production includes a production of
email documents.  Rembrandt provided a list of search terms weeks ago, and we
understood that Comcast would provide a proposal regarding the universe for the
search.  We have not heard any word from Comcast to date.  If Comcast's production
includes email, please provide the list of search terms used (or confirm that
Rembrandt's proposed terms were used), as well as a list of those individuals, files,
folders, and/or archives whose contents were searched.

Second, please let us know whether Comcast intends to produce any additional
documents as part of a "rolling" production, or whether Comcast completed its
production by the Court-ordered deadline.  To the extent that Comcast intends to
produce documents in the future, please confirm that any such production will be in
the form of multi-page TIFF format rather than single-page TIFF.  Please note that,
by this letter and request, Rembrandt in no way waives any objection to any belated
production by Comcast.  Rembrandt reserves all rights and objections regarding any
production by Comcast after the deadline.

Given the size of Comcast's production, any delays will severely prejudice
Rembrandt's ability to adequately review Comcast's documents and to conduct
further discovery.

Very truly yours,

Timothy Devlin

TD:kxk

# FISH & RICHARDSON P.C.

225 Franklin Street
Boston, Massachusetts
02110-2804

Frederick P. Fish
1855-1930

Telephone
617 542-5070

W.K. Richardson
1859-1951

**VIA EMAIL**

Facsimile
617 542-8906

July 3, 2006

Web Site
www.fr.com

Brian L. Ferrall, Esq.
Keker & Van Nest LLP
710 Sansome Street
San Franciso, CA 94111-1704

Re:     Rembrandt v. Comcast Corporation, et al.
        <u>USDC-E.D. TX (Marshall) – Civil Action No. 2:05-cv-00443-TJW</u>



ATLANTA

AUSTIN

BOSTON

DALLAS

DELAWARE

NEW YORK

SAN DIEGO

SILICON VALLEY

TWIN CITIES

WASHINGTON, DC

Dear Brian:

I am writing regarding my June 26, 2006 letter addressing Comcast's document production. Comcast has not yet responded to the issues we raised in that letter.

First, we requested that you inform us whether Comcast's production includes emails and what search terms were used when collecting such emails. Second, we requested whether Comcast intends on producing additional documents as part of a "rolling" production. Third, we wanted to confirm that any future production, if any, could be in multi-page TIFF format rather than single-page TIFF.

Please note that any further delays in response will further prejudice Rembrandt's ability to adequately review Comcast's documents and to conduct further discovery. We look forward to hearing back from you shortly regarding these issues.

Very truly yours,

*Timothy Devlin /d.t.*

Timothy Devlin

LAW OFFICES

# KEKER & VAN NEST
### LLP

710 SANSOME STREET
SAN FRANCISCO, CA 94111-1704
TELEPHONE (415) 391-5400
FAX (415) 397-7188

## FACSIMILE TRANSMISSION COVER SHEET

July 5, 2006

| To | Telephone | Facsimile |
|---|---|---|
| Timothy Devlin, Esq.<br>Fish & Richardson, P.C.<br>Wilmington, Delaware 19899 | (302) 652-5070 | (302) 652-0607 |
| Jennifer Haltom Doan, Esq.<br>Haltom & Doan, L.L.P. | (903) 255-1000 | (903) 255-0800 |

From:

| Brian L. Ferrall | (415) 391-5400 | 6240/gap |
|---|---|---|

Re    **Rembrandt Technologies, LP v. Comcast Corp.**

### Number of Pages (Including Cover): 2

## ORIGINAL WILL FOLLOW THIS TRANSMISSION

### <u>COMMENTS</u>

<u>Operator</u> _____

<u>Time Sent</u>_____

## IF YOU ENCOUNTER ANY DIFFICULTIES RECEIVING THIS TRANSMISSION, PLEASE CALL (415) 676-2277 OR (415) 391-5400

The information contained in this facsimile transmission is legally privileged and confidential and intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you receive this communication in error, please notify us immediately by telephone, and return the original transmission to us at the above address via the U.S. Postal Service. Thank you.

360919.01

LAW OFFICES

# KEKER & VAN NEST
### LLP

710 SANSOME STREET
SAN FRANCISCO, CA 94111-1704
TELEPHONE (415) 391-5400
FAX (415) 397-7188
WWW.KVN.COM

BRIAN L. FERRALL
BFERRALL@KVN.COM

July 5, 2006

**VIA FACSIMILE & U.S. MAIL**

Timothy Devlin, Esq.
Fish & Richardson, P.C.
919 N. Market Street, Suite 1100
Wilmington, DE 19899

*Re:    Rembrandt Technologies, LLP v. Comcast Corporation, et al.*

Dear Tim:

I write in response to your July 3 letter regarding document production.

Comcast's approximately 1.8 million pages of production to-date includes some e-mails, but only those that were collected as part of the standard document collection process. It does not include e-mails collected electronically by search terms. We are in the process of gathering and sorting e-mails that are responsive to the search terms sent to us earlier by Tom Brown.

As to your second question, but for e-mails, Comcast believes it produced most of its responsive documents in June. However, given the size of the universe of potentially responsive documents, we realize that there are likely other relevant, responsive and non-privileged documents that may not have been included in the June production. As with the e-mails, we are in the process of seeking out and producing any such remaining documents.

As to your third question, I do not know whether multi-page tiffs are possible. I have asked our practice support this question and someone from my firm will get back to you shortly.

Very truly yours,

Brian L. Ferrall

BLF/gap

376416.01

LAW OFFICES

# KEKER & VAN NEST
## LLP

710 SANSOME STREET
SAN FRANCISCO, CA 94111-1704
TELEPHONE (415) 391-5400
FAX (415) 397-7188

## FACSIMILE TRANSMISSION COVER SHEET

July 7, 2006

| To | Telephone | Facsimile |
|---|---|---|
| Timothy Devlin, Esq. | (302) 652-5070 | (302) 652-0607 |
| Fish & Richardson, P.C. | | |
| Wilmington, Delaware 19899 | | |
| | | |
| Jennifer Haltom Doan, Esq. | (903) 255-1000 | (903) 255-0800 |
| Haltom & Doan, L.L.P. | | |

From:

| BRIAN L. FERRALL | (415) 391-5400 | 6240/dfox |
|---|---|---|

Re    Rembrandt Technologies, LP v. Comcast Corp.

### Number of Pages (Including Cover): 2

## ORIGINAL WILL NOT FOLLOW THIS TRANSMISSION

## **COMMENTS**

Correspondence dated July 7, 2006

Operator _____                                Time Sent _____

## IF YOU ENCOUNTER ANY DIFFICULTIES RECEIVING THIS TRANSMISSION,
## PLEASE CALL (415) 676-2277 OR (415) 391-5400

The information contained in this facsimile transmission is legally privileged and confidential and intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you receive this communication in error, please notify us immediately by telephone, and return the original transmission to us at the above address via the U.S. Postal Service. Thank you.

360919.01

KEKER & VAN NEST LLP

LAW OFFICES

# KEKER & VAN NEST
## LLP

710 SANSOME STREET
SAN FRANCISCO, CA 94111-1704
TELEPHONE (415) 391-5400
FAX (415) 397-7188
WWW.KVN.COM

BRIAN L. FERRALL
BFERRALL@KVN.COM

July 7, 2006

**VIA FACSIMILE**

Timothy Devlin, Esq.
Fish & Richardson, P.C.
919 N. Market Street, Suite 1100
Wilmington, DE 19899
Facsimile #: (302) 652-0607

     *Re:*   *Rembrandt Technologies, LLP v. Comcast Corporation, et al.*

Dear Tim:

    I write in further response to your letter of July 3, 2006.

    First, we have confirmed that we can produce documents in multi-page tiff format as you requested. Unless I hear otherwise from you, I will instruct our office to prepare any further production in that format.

    Additionally, I omitted one item from my previous letter. There are a number of documents that have been collected and are in our possession, but which contain third-party confidential information. We are in the process of determining whether we have contractual obligations to maintain those documents as confidential, and if so, obtaining approval for their production. As we work out these issues (which we have done already with many third-parties) we will produce these documents to Rembrandt promptly.

                Very truly yours,

                BRIAN L. FERRALL

BLF:daf
cc:   Jennifer Haltom Doan

# FISH & RICHARDSON P.C.

225 Franklin Street
Boston, Massachusetts
02110-2804

Telephone
617 542-5070

Facsimile
617 542-8906

Web Site
www.fr.com

Frederick P. Fish
1855-1930

W.K. Richardson
1859-1951

<u>VIA EMAIL</u>

July 21, 2006

Eugene Paige, Esq.
Keker & Van Nest, LLP
710 Sansome Street
San Francisco, CA 94111-1704

Re:   Rembrandt v. Comcast Corporation
      <u>USDC-E.D. TX (Marshall) – Civil Action No. 2:05-cv-00443-TJW</u>



ATLANTA

AUSTIN

BOSTON

DALLAS

DELAWARE

NEW YORK

SAN DIEGO

SILICON VALLEY

TWIN CITIES

WASHINGTON, DC

Dear Gene:

I write regarding Comcast's document production. At the scheduling conference, we understood that Comcast would put forth its best efforts to comply with the scheduling order, which required production of all relevant documents over one month ago. Nevertheless, there has been no production regarding certain categories of documents.

First, we have not received any source code from Comcast for any cable modem, cable modem head-end, or digital television receiver. The claim construction process begins in two months, and we anticipate that review of the source code will take substantial time. Please let us know when Comcast will be prepared to deposit any relevant source code within its possession, custody, or control with a source code repository in conformance with the protective order.

Second, we still await Comcast's production of email. We note that this production is over one month late. It is our understanding that the parties agreed, immediately before the scheduling conference, all non-privileged emails that matched the agreed-upon search terms would be produced, and that Comcast would not further limit its production of these emails based on any perceived lack of relevance. Please let us know as soon as possible if your understanding differs, and also please let us know when these emails will be produced.

In addition to these items, we have identified a number of categories of documents that, while relevant, do not appear to be in Comcast's production thus far:

- All cable franchise agreements;

- All agreements between Comcast and individual stations carried by Comcast;

- All advertising in print, video, or audio for any product or set of products that include cable internet or cable television service;

F I S H & R I C H A R D S O N P.C.

Eugene Paige, Esq.
**July 21, 2006**
Page 2

- All documents reflecting offerings combining cable television with cable internet and/or telephone service;

- All license agreements between Comcast and any patent holder, wherein the license covers cable internet service or cable television service; and

- Any communication regarding Rembrandt, including without limitation communications regarding any Rembrandt litigation.

We would like to discuss these items at your earliest convenience. Please let us know when you are available.

Very truly yours,

Thomas A. Brown

21378944.doc

# FISH & RICHARDSON P.C.

225 Franklin Street
Boston, Massachusetts
02110-2804

Frederick P. Fish
1855-1930

W.K. Richardson
1859-1951

Telephone
617 542-5070

Facsimile
617 542-8906

Web Site
www.fr.com

<u>VIA EMAIL</u>

July 27, 2006

Eric MacMichael
Keker & Van Nest, LLP
710 Sansome Street
San Francisco CA  94111-1704

Re:    Rembrandt v. Comcast, Civ. No. 2:05-cv-00443-TJW (E.D. Tex.)



ATLANTA

AUSTIN

BOSTON

DALLAS

DELAWARE

NEW YORK

SAN DIEGO

SILICON VALLEY

TWIN CITIES

WASHINGTON, DC

Dear Eric:

We write, in light of our discussion of Monday, July 25, 2006, regarding Comcast's document production.

<u>Comcast's failure to produce the bulk of its relevant email communications</u>

Although Comcast's document production was due to be completed on June 16, you informed us on Monday, July 24 that Comcast's vendor had only recently collected potentially relevant email. Even more disturbing was your revelation that, at the time of our discussion, this vendor still had not run the keyword search the parties agreed to in May. This delay is severely prejudicial to Rembrandt's ability to prepare its case. We have already organized the documents for review, and begun our review of various groups of documents. Much of this work will have to be duplicated and begun anew when we receive Comcast's remaining production. Moreover, the claim construction process begins in under eight weeks, and it will be virtually impossible to adequately review each email in advance of this date.

You estimated that Comcast would not be able to produce the bulk of the emails until two to three weeks hence. As we noted during our call, this time frame is unacceptable. You confirmed, pursuant to the parties' agreement, that Comcast is reviewing these documents only for privilege, and is not culling the search results based on Comcast's perception of relevance. We do not understand how an automated search for keywords, followed by a mostly-automated privilege search for attorneys' names and privilege designations, can take two to three weeks. In any event, this amount of time is simply unavailable given the deadlines in the case.

We agreed that we would have a follow-up discussion on Monday, July 31. We ask that Comcast confirm in advance of that call that Comcast's email production will be complete by next Friday, August 4. Nevertheless, as observed above, production by that late date will already cause substantial prejudice to Rembrandt's case, and we reserve all options in seeking relief due to such prejudice.

FISH & RICHARDSON P.C.

Eric MacMichael
July 27, 2006
Page 2

You stated that the email was collected from individual custodians who Comcast believes are most likely to be in possession of relevant information. So that we may independently verify Comcast's judgment, we ask that the names and job descriptions of each of the custodians whom Comcast has selected be produced by next Monday, July 31, and that Comcast confirm its intention to produce this information on said date in advance of our Monday meeting..

Comcast's failure to produce documents covered by confidentiality agreements

You also noted that Comcast has confidentiality agreements that require Comcast to provide notice to certain third parties before disclosing their information. Comcast could have resolved this matter long ago by sending notice letters to such third parties well in advance of the discovery deadline. We ask that all documents previously withheld due to confidentiality agreements be produced, with Comcast's email production, by next Friday, August 4, and that Comcast confirm its intention to produce these documents on said date in advance of our Monday meeting.

Comcast's failure to produce any source code to date

During our discussion you stated that no relevant source code was within Comcast's possession. We note that the parties engaged in lengthy discussions regarding the treatment of source code in the protective order, and ultimately were required to engage the Court's assistance to resolve the matter. Not once did Comcast suggest to us or the Court that no relevant source code was within Comcast's possession. You can imagine our concern given that Comcast was so particular about how source code was to be treated in the protective order, now that Comcast has denied such source code exists in its possession, custody or control.

We are also unclear why Comcast failed to make us or the Court aware that it was not acting on its own behalf—but only possibly on behalf of third parties—when staking positions regarding the treatment of source code. This is particularly true considering Comcast's failure, as described above to even contact many third parties regarding Comcast's need to produce documents.

Moreover, based on our investigation and document review, we find it unbelievable that Comcast has *no* relevant source code. For example, our review of documents produced thus far suggests that Comcast installs a number of applications on cable modems. At minimum, the source code related to these applications should be produced. In addition, Comcast configures the cable modems and ATSC receivers for its network. These configuration files, too, should be produced. Furthermore, we have seen references to a technician-accessible internal configuration web site. The source code (for example, HTML as well as CGI) for this web site should be produced as well. Of course, these requests are merely exemplary, and we ask that Comcast

F I S H   &   R I C H A R D S O N   P.C.

Eric MacMichael
July 27, 2006
Page 3

produce *all* relevant source code by Monday, July 31, and confirm in advance of our Monday meeting that it intends to do so.

In addition, as we noted during the call, the relevant inquiry is whether any source code is within Comcast's possession, custody or *control*. Whether Comcast has control over source code depends, in part, on Comcast's right to request the source code from the vendors, which, in turn, depends in part on any provisions of any agreements between Comcast and its vendors. You noted that you have not yet reviewed any such agreements. We ask that Comcast review these documents and that it inform Rembrandt at our meeting on Monday if Comcast in fact has control over each relevant vendor's source code. We also ask, as noted below, that these agreements be produced by Friday, August 4.

With respect to Rembrandt's review of source code, we note our understanding that the protective order permits simultaneous review of source code on multiple non-networked computers located in the same facility. Please let us know prior to Monday, July 31, 2006 if your understanding differs.

<u>Comcast's failure to produce other categories of documents</u>

Our review of documents produced thus far indicates that the following categories of documents have not yet been produced by Comcast. For convenience, we have re-listed document categories below that were previously included in our July 21 letter.

- Documents evidencing any effort to design the Accused Instrumentalities, or any portion thereof, to avoid infringement of any patent;

- All patents owned or licensed by Comcast that relate to the Accused Instrumentalities or any portion thereof;

- All patent license agreements executed by Comcast that relate to the Accused Instrumentalities or any portion thereof;

- All documents evidencing any contribution by Comcast to any patent relating to the Accused Instrumentalities or any portion thereof;

- All documents relating to Comcast broadband products, including without limitation profitability projections; product definition documents, and marketing research;

- All documents relating to Comcast's revenues, profits, and expenses, including margin and profitability projections and reports, beginning one year

FISH & RICHARDSON P.C.

Eric MacMichael
July 27, 2006
Page 4

prior to Comcast's first manufacture, use, sale, offer for sale, or importation of any of the Accused Instrumentalities or portions thereof;

- All documents relating to marketing of the products and services at issue in this litigation, including relevant portions of Comcast's web sites, and relevant print advertisements;

- All cable franchise agreements;

- All agreements between Comcast and content providers, such as individual stations carried by Comcast;

- All advertising in print, video, or audio for any product or set of products that include cable internet or cable television service;

- All documents reflecting offerings combining cable television with cable internet and/or telephone service;

- All license agreements between Comcast and any patent holder, wherein the license covers cable internet service or cable television service; and

- Any communication regarding Rembrandt, including without limitation communications regarding any Rembrandt litigation.

Please confirm by Monday that these documents will be produced by Friday, August 4.

<u>Interrogatory Responses</u>

We discussed Comcast's response to Rembrandt's Interrogatory No. 3. We ask that Comcast supplement its response to this interrogatory, and that the deadline for Rembrandt to respond to Comcast's Second Set of Interrogatories be extended until two weeks after service of Comcast's supplemental response (with no extra 3-day period); but in no event would Rembrandt's response be due earlier than the default deadline under the Federal Rules. Furthermore, we note our understanding that, pending Comcast's supplementation, Rembrandt is not required to respond to Comcast's Second Set of Interrogatories. Please let us know if your understanding differs.

With respect to those of Comcast's interrogatory responses that reference Comcast's document production pursuant to Fed. R. Civ. P. 33(d), we ask that Comcast supplement its response to reference specific documents by Bates number or Bates number ranges, as Rembrandt did with its responses. A generic reference to

FISH & RICHARDSON P.C.

Eric MacMichael
July 27, 2006
Page 5


Comcast's production is inadequate, particularly given the size of the production and the relative burden that would be imposed on Rembrandt to search through the production versus the burden on Comcast to identify relevant documents.

You confirmed that Comcast did not withhold information based on any objection that an interrogatory was overly broad or unduly burdensome. We also ask that Comcast identify any interrogatories for which it has withheld information based on any of its objections. For the remaining interrogatories, we ask that Comcast either supplement its response or confirm that Comcast's response is complete based on all information within its possession, custody, or control.

We ask that you confirm by Monday that any supplementation based on information presently within Comcast's possession, custody or control will be completed within two weeks, i.e., by August 10, 2006.

Privilege

Based on your representation that the document Bates numbered COMREM00662978-00662982 was in fact privileged, we will destroy all remaining copies of this document.

Our reviewers have come across three additional documents that claim on their face to be privileged. Review of these documents has been limited to the individual attorney who initially viewed the document. Although the documents are labeled on their face "attorney-client privileged," the contents of some of these documents do not in fact appear to be privileged, as determined by the individual attorney.

The documents are Bates numbered COMREM 64320, 64325, and 586182. For now, we have segregated these documents and have limited review to a single attorney. Please let us know whether it is Comcast's position that these documents are privileged.

Please further confirm prior to Monday July 31, 2006 that Comcast would similarly shield from review any document that Rembrandt may have produced that appears to be, or claims to be on its face, privileged, until the parties resolve the matter.

Please also note that while Rembrandt is segregating and destroying copies of these documents, and may do so for others as our review proceeds, Rembrandt retains all arguments and rights with respect to these documents, including any position that Comcast has waived privilege through their production.

I look forward to speaking with you on Monday. Please let me know what times you are available.

FISH & RICHARDSON P.C.

Eric MacMichael
July 27, 2006
Page 6

Very truly yours,

Thomas A. Brown

21384627.doc

```
 1            IN THE UNITED STATES DISTRICT COURT

 2               EASTERN DISTRICT OF TEXAS

 3                   MARSHALL DIVISION

 4

 5   REMBRANDT TECHNOLOGIES,   )(

 6   LP,                       )(

 7       PLAINTIFF,            )(

 8                             )(

 9   VS.                       )( CASE NO. 2:05-CV-000443(TJW)

10                             )(

11   COMCAST CORPORATION       )(

12   ET AL.,                   )(

13       DEFENDANTS.           )(

14            _____

15

16              SCHEDULING CONFERENCE

17

18            _____

19

20            On the 2nd day of May, 2006, the following

21   proceedings came on to be heard in the above-entitled

22   and numbered cause before the Honorable T. John Ward,

23   United States District Court, Eastern District of Texas,

24   Marshall Division, held in Marshall, Texas.

25            Proceedings reported by machine shorthand.
```


COPY

```
 1                        A P P E A R A N C E S

 2

 3      FOR THE PLAINTIFF:

 4

 5      Mr. Frank E. Scherkenbach
        FISH & RICHARDSON, P.C.
 6      225 Franklin Street
        Boston, Massachusetts 02110
 7      (617) 542-5070

 8
        Mr. Alan D. Albright
 9      FISH & RICHARDSON, P.C.
        111 Congress Avenue
10      Suite 810
        Austin, Texas  78701
11      (512) 226-8106

12
        Mr. Collin Michael Maloney
13      IRELAND, CARROLL & KELLEY
        6101 S. Broadway
14      Suite 500
        Tyler, Texas  75703
15      (903) 561-1600

16
        Mr. Franklin Jones, Jr.
17      JONES & JONES
        201 W. Houston Street
18      Marshall, Texas  75670
        (903) 938-4395
19
        Mr. Robert Christopher Bunt
20      PARKER & BUNT, P.C.
        100 East Ferguson
21      Suite 1114
        Tyler, Texas  75702
22      (903) 531-3535

23      Mr. Sidney Calvin Capshaw, III
        BROWN MCCARROLL
24      1127 Judson Road
        Suite 220
25      Longview, Texas  75601
        (903) 236-9800
```

```
 1  Mr. Robert M. Parker
    PARKER & CLAYTON
 2  100 E. Ferguson
    Suite 1114
 3  Tyler, Texas  75702
    (903) 533-9288
 4
    Mr. Timothy Devlin
 5  FISH & RICHARDSON
    919 N. Market Street
 6  Suite 1100
    Wilmington, Delaware  19899
 7  (302) 652-5070

 8
    FOR COMCAST:
 9
    Mr. Brian L. Ferrall
10  KEKER & VAN NEST
    710 Sansome Street
11  San Francisco, California  94111
    (415) 391-5400
12

13  Mr. James N. Haltom
    6500 North Summerhill Road
14  Suite 1A
    Crown Executive Center
15  Texarkana, Texas 75503
    (903) 255-1000
16

17  Mr. John Perkins
    6500 North Summerhill Road
18  Suite 1A
    Crown Executive Center
19  Texarkana, Texas 75503
    (903) 255-1000
20

21

22

23

24

25
```

1                          I N D E X

2

3      May 2, 2006

4                                               Page

5          Appearances                          2

6          Scheduling Conference                5

7          Court Reporter's Certificate         23

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          THE COURT:  Please be seated.  All right.

2    We have a scheduling conference this afternoon in this

3    case of Rembrandt Technologies versus Comcast,

4    2:05-cv-443.

5          What says the plaintiff?

6          MR. MALONEY:  Collin Maloney on behalf of

7    the plaintiff, Rembrandt Technologies, Your Honor.

8    We're ready.  Along with me is Frank Scherkenbach, Alan

9    Albright, Tim Devlin, they're all from Fish Richardson,

10   Calvin Capshaw, Chris Bunt, Robert Parker, and Franklin

11   Jones.  We're all here ready to proceed, Your Honor.

12         THE COURT:  All right.

13         MR. HALTOM:  Jim Haltom for Comcast.  My

14   cast is not as big, Your Honor, but I have Brian Ferrall

15   from Keker & Van Nest, and John Perkins, and I've also

16   been instructed to advise the Court that Mrs. Doan is in

17   Denver, and she will be here in my absence, which should

18   be soon.

19         THE COURT:  She's going to be here today in

20   your absence?

21         MR. MALONEY:  No, sir.  No, she's in Denver.

22         THE COURT:  Okay.  I was going to say, you

23   got me a little confused, but that's all right.

24         MR. MALONEY:  Your Honor, I neglected to

25   mention, we have our client representative, Mr. John Eli

1    here, also.

2              THE COURT:  Well, I've seen that y'all have

3    conferred, and I see we got competing positions on

4    several issues here.  I guess we'll take these up and

5    make sure I understand what you're -- what we're arguing

6    about here as far as deadlines go.

7              You agree that the deadline for exchanging

8    privilege logs is going to be July the 7th, 2006, and

9    the parties agree that you're going to put the expert

10   discovery deadline three weeks, is it three weeks, after

11   the last expert witness report is due, which is -- would

12   be determined off of the claim construction rule.  Have

13   I got that?  Is that what y'all are proposing?

14             MR. FERRALL:  Correct, Your Honor.

15             MR. SCHERKENBACH:  Yes, Your Honor.

16             THE COURT:  Okay.  Now then, let's see, are

17   there any more deadlines that you want to -- that we

18   need to talk about?  I don't see any other deadlines.

19   Other things deal with the manner in which we're going

20   to do discovery, correct?

21             MR. SCHERKENBACH:  I believe that's correct,

22   Your Honor.

23             MR. FERRALL:  Yes, although one of the --

24   one of the issues that Comcast raises has to do with the

25   deadline for the document production of relevant

1    documents.

2              THE COURT:  That's what I was saying, but

3    that's over in the discovery order.

4              MR. FERRALL:  Fair enough.

5              THE COURT:  Right.  I'm just -- but as far

6    as mediation, let's see, that -- have y'all agreed upon

7    a mediator?

8              MR. SCHERKENBACH:  We haven't, Your Honor.

9    We've discussed that we both think mediation would be

10   appropriate, but we haven't settled on an individual at

11   this time.

12             THE COURT:  How long do you think you're

13   going to need to either agree or decide that you can't

14   agree?

15             MR. SCHERKENBACH:  I think we can agree on a

16   person in relatively short order, say within a couple of

17   weeks.

18             THE COURT:  Three weeks?

19             MR. FERRALL:  Yes, I think that's

20   reasonable.

21             THE COURT:  Three weeks.  Either advise me

22   of who you have agreed to, and make sure by advising me,

23   you can just call chambers and say, "We've agreed," and

24   I'll enter an order.  Make sure you -- all we need is

25   their address in case it's somebody we haven't used

1   before, or if you can't agree, I need a short letter

2   from you saying that you can't agree and you request the

3   Court to select one, but please do not make -- identify

4   anybody who -- the plaintiff wants this person or the

5   defendant wants this, so I don't start off choosing a

6   mediator that one of you just doesn't like.  At least

7   I'll be doing it blind, is what I'm saying.  So if

8   you'll do that within three weeks.

9           All right.  Now then, just in general,

10   before we get to the specifics of how we're going to

11   proceed in discovery, the patent rules of this district,

12   along with certain provisions in the discovery order as

13   proposed to you, have mandatory disclosure requirements

14   that are far in excess of what's presently found in the

15   Federal Rules of Civil Procedure.

16           Are there any objections or requests to

17   modify the mandatory disclosure requirements of either

18   of those?

19           MR. SCHERKENBACH:  None from the plaintiff,

20   Your Honor.

21           MR. FERRALL:  None, Your Honor.

22           THE COURT:  All right.  So, now then, we're

23   going to get down to the specifics of the discovery

24   order, correct?

25           MR. SCHERKENBACH:  Yes, Your Honor.

```
 1                    THE COURT:  All right.  Tell me the first

 2    ones, I guess, as far as mandatory disclosure, is found

 3    in the paragraph 3; is that right?  Is that where we

 4    are?

 5                    MR. SCHERKENBACH:  Yes, Your Honor, I

 6    believe Comcast has an issue with the initial disclosure

 7    of documents due on June 16th, Docket Control Order 3B.

 8    That's their issue.

 9                    THE COURT:  All right.  Tell me what you

10    want to do.

11                    MR. FERRALL:  Well, Your Honor --

12                    THE COURT:  I've read what you said.  I'm

13    just not sure I understand fully your disagreement.

14                    MR. FERRALL:  Fair enough.  Fair enough.

15    And our -- we conferred at length, both on the phone and

16    before our conference today.

17                    The issue is the volume and -- the volume of

18    construction to comply with Rule 3B is something that I

19    can represent to the Court, no matter what, it's going

20    to be very large, and the question is the full extent of

21    it, which I have a little difficulty evaluating now

22    before the infringement contentions.

23                    I can tell you that we've been working

24    diligently to collect documents.  We have a massive

25    volume collected, and it will be produced, and we talked
```

1   about producing at least as much as we can even before

2   the June 16 deadline, to the extent we have them

3   available and producing, I'm certain, a massive amount

4   by June 16th.

5          I'm concerned, if the scope of the case,

6   after we see the infringement contentions, is

7   particularly broad, broader than I understand it to be

8   now, for example, that technically it will be difficult,

9   if not impossible, for us to truly produce all relevant

10  documents by June 16th.

11         And so I just raise the issue with the

12  Court.  I don't know that there is a -- a definitive

13  change.  I would request some leeway for a rolling

14  production after June 16 --

15         THE COURT:  Well --

16         MR. FERRALL:  -- to accommodate --

17         THE COURT:  -- let me ask you this,

18  Counselor, are you saying that you believe, based upon

19  your understanding of what the infringement position is,

20  that you can make a good faith effort and will make --

21  and will comply with the requirements of that paragraph

22  on or about June 16th, but that if after seeing the

23  infringement contentions, you may need additional time

24  to produce other documents?

25         MR. FERRALL:  Yeah, I think based upon my

1    understanding now, we can come -- we can come very

2    close.  We may even be able to meet the June 16

3    deadline.

4             THE COURT:  Well, all I would -- if you look

5    at this Court's history, there's no sanction of any type

6    that's ever been issued where somebody's made a good

7    faith effort, and then they come back and say, "Well,

8    it's broader than I thought, Judge."  As a matter of

9    fact, there's never been a hearing that I had to even

10   conduct on that sort of situation because that's a

11   reasonable position to take, and I generally only get --

12   my ears only get red about unreasonable positions.

13            Most people know what red ears in this court

14   mean.  It's not good for anybody present.

15            MR. FERRALL:  Red is usually not good.

16            THE COURT:  No, that's not good.  So I would

17   just hesitate to entertain -- I mean, enter any order

18   other than, you know, you make a good faith effort, and,

19   then as you see the infringement contentions, you have a

20   duty to supplement under the Court's order, and I don't

21   think we need anything more than that.

22            Do you think we need more than that?

23            MR. SCHERKENBACH:  I do not, Your Honor.  I

24   think they get our contentions in 10 days, and that's

25   still a month in advance of the deadline, and, as

```
 1   Mr. Ferrall has acknowledged, they've been collected and
 2   they may well be able to meet it.
 3            THE COURT:  Well, even if they need
 4   additional time, looks like y'all ought to be able to
 5   agree to that, if you can agree to it.  It looks like
 6   you would be winning the motion as long as the time you
 7   requested was reasonable.
 8            MR. SCHERKENBACH:  I think we'll be able to
 9   work it out.
10            MR. FERRALL:  Thank you.
11            THE COURT:  Okay.  So that takes care of
12   that section.  Now then, what about the --
13            MR. SCHERKENBACH:  I think we've worked the
14   rest of these out, Your Honor.
15            THE COURT:  Okay.
16            MR. SCHERKENBACH:  Under proposed discovery
17   modifications, there were three issues there.  One was
18   the number of interrogatories.  Your -- your order says
19   60.  The federal rule, of course, says 25, and Comcast
20   thought 60 was a little generous.  I think we've
21   compromised on 35, if the Court would approve that
22   number.
23            THE COURT:  That's by agreement?
24            MR. SCHERKENBACH:  By agreement.
25            MR. FERRALL:  Yes.
```

1          THE COURT:  That's approved.  The Court is

2    more in the business of settling disagreements rather

3    than agreements.

4          MR. SCHERKENBACH:  All right.  Well, we're

5    going to keep those to a minimum, Your Honor.

6          THE COURT:  All right.

7          MR. SCHERKENBACH:  The next issue was the

8    number of hours for third-party and Rule 30b1

9    depositions.  We were concerned as the plaintiff about

10   the potential number of third parties, so wanted 80

11   hours.  Comcast thought the 40-hour default was fine.

12   We've compromised, I believe, on 60, and I think that's

13   by agreement.

14         MR. FERRALL:  That's right, Your Honor.

15         THE COURT:  All right.  60 it is.

16         MR. SCHERKENBACH:  And the number of expert

17   witnesses, your order says three.  Comcast would like

18   the opportunity to have, perhaps, four, and we're fine

19   with that.

20         THE COURT:  All right.  What about the

21   request for admissions?  Y'all got that worked out, too?

22         MR. SCHERKENBACH:  I'm sorry.  I'm being

23   told to make sure both sides get four.  That's agreed.

24         MR. FERRALL:  Right.

25         THE COURT:  Four per side.

1          MR. SCHERKENBACH:  Right.

2          MR. FERRALL:  Sure.

3          MR. SCHERKENBACH:  Well, on the request for

4  admissions, I believe where we came out was that the 60

5  would be fine if Your Honor would be amenable to

6  allowing additional ones for authentication if they were

7  ever necessary, and I hasten to add that in my practice,

8  they're almost never, because I stipulate to that sort

9  of thing, so...

10         THE COURT:  Okay.  Is that agreeable to you?

11         MR. FERRALL:  That's agreeable.

12         THE COURT:  We'll leave that that way, then.

13         MR. FERRALL:  Right.

14         THE COURT:  What about -- where are you on

15  your protective order?

16         MR. SCHERKENBACH:  That's the next issue.

17         THE COURT:  All right.

18         MR. SCHERKENBACH:  We've spent a lot of time

19  discussing it, and I think that's the first thing to

20  say, including this afternoon.  We have agreed, I

21  believe, across the board with one exception, and that

22  has to do with treatment of source code.  I know you've

23  dealt with this issue many times, and I don't know if

24  Your Honor wants to sort of go into it now, but we have

25  differing views of that.

1          As the plaintiff, we'd like it to be

2    available in more than one location.  There's a dispute

3    over number of locations.  There's not a dispute over

4    how to handle it.  Confidentiality issues have been

5    worked out.  Having it at neutral locations have been

6    worked out.  It really comes down to the number of

7    locations and where they are to be.

8          And we took that as far as we could today,

9    and we can either discuss it further in front of you or

10   put together a competing proposal, and Your Honor could

11   decide, put it in front of you in the next week or so.

12          THE COURT:  Well, you've got me.

13          MR. SCHERKENBACH:  Okay.  Well, let me just

14   tell you.  Our concern is making it convenient for the

15   experts, Your Honor.  Obviously, we're all happy to be

16   here in front of you and in this jurisdiction, but the

17   experts are all over the place on both sides, and what

18   we had requested as the plaintiff is three locations,

19   one in Texas.  One of our experts is in Austin, and we'd

20   like the code to be available in preferably Austin, but,

21   you know, Dallas or here would be fine, but preferably

22   Austin.

23          THE COURT:  Not here.  That's not practical.

24   Let's be -- you said, "here"?  You're talking about --

25          MR. SCHERKENBACH:  Well, you're going to

1    hear from Mr. Ferrall.  I think that that's his

2    proposal.  We don't think it's practical.

3             MR. FERRALL:  Anywhere in the Eastern

4    District, but I can explain my position.

5             THE COURT:  All right.

6             MR. SCHERKENBACH:  So anyway, we'd like

7    Austin, Your Honor.  Our one expert's there.  We would

8    like a couple of locations on the East Coast.  Our

9    second expert is in New York.  So either New York or

10   Boston would be convenient for him to get to, and,

11   again, this is not in Fish & Richardson's office.  We're

12   willing to put it in a neutral third-party location.

13            And then the last place would be, believe it

14   or not, Delaware, which is near to both Comcast and to

15   Rembrandt and is where a number of our lawyers are

16   located.  But, again, not in our office, just at a

17   neutral location in Delaware.

18            THE COURT:  All right.

19            MR. FERRALL:  So I think we're -- one of the

20   things we did reach an agreement on is a neutral

21   location of some sort is something that both parties can

22   agree to.  So the difference is number of copies and

23   location.

24            Number of copies is something that is --

25   really, my client is quite concerned about, and that's

1  why our position is we should have simply one copy.  No

2  one questions the integrity of plaintiff's counsel.

3  We've worked with them and have a lot of respect for

4  them, but, you know, the way these -- the way problems

5  happen are accidents when you have multiple copies.

6         And so we've worked this out in a number of

7  other cases in which Comcast is involved, both in this

8  district and others.  Judge Folsom recently entered an

9  order that we worked out with the plaintiffs that --

10  that we're comfortable with, and I submit to Your Honor,

11  it is -- it is likely to involve some of the same source

12  code, because that case also involves some of the same

13  accused services.

14         So what -- what I'm here to primarily urge

15  on the Court is that we -- we do limit it to one copy.

16  It's, after all -- I mean, I'm not sure how important

17  the source code is anyway, but an expert will look at

18  it.  I'm not sure why we need to have multiple copies

19  around the country, and I just fear that the danger is

20  much greater whenever you have multiple copies.  So

21  that's -- that's the copy issue that's of primary

22  importance.

23         The location is one where I -- we've talked

24  about different locations.  If it's going to be one

25  location, I'm not sure what plaintiff's preference would

 1   be, but it seems we -- we can't seem to find an

 2   agreement.  Maybe we can continue to discuss it and work

 3   something out, but for lack of an agreed place, I

 4   suggested somewhere in the Eastern District.  Obviously,

 5   we pick the most convenient place, subject to a neutral

 6   law firm, for example, who could host if and handle it,

 7   but I figured the Eastern District would be a place that

 8   no one could really object to, and given a lack of other

 9   agreement on location, that was sort of the default that

10   we proposed.

11              THE COURT:  All right.  The first time

12   you're going to be producing agreed -- I mean, sensitive

13   documents is when?

14              MR. FERRALL:  We'll be producing documents

15   prior to June 16th.

16              THE COURT:  Well, submit your competing

17   versions and not more than 15 pages of argument by the

18   15th of this month, and I'll get you an order out --

19              MR. FERRALL:  Very well.

20              THE COURT:  -- the first part of the month,

21   the first part of June, that way it doesn't slow down

22   your discovery.

23              MR. SCHERKENBACH:  Thank you, Your Honor.

24              THE COURT:  All right.  What else can we

25   talk about here today that would help us?

```
 1              MR. FERRALL:  I don't think we have anything
 2    else on the agenda, Your Honor.
 3              MR. SCHERKENBACH:  Nothing else from the
 4    plaintiff, either, Your Honor.
 5              THE COURT:  Deadline on mediation.  My clerk
 6    called that to my attention.  I generally try to
 7    complete that within 15 days after the final discovery
 8    deadline.  Is that a problem?
 9              MR. FERRALL:  That will not be a problem,
10    Your Honor.
11              MR. SCHERKENBACH:  It's not a problem, Your
12    Honor.
13              THE COURT:  Okay.  We'll use that day.  All
14    right.  If there's nothing further, y'all are excused.
15    Thank you for being here.
16              MR. SCHERKENBACH:  Thank you, Your Honor.
17              MR. FERRALL:  Thank you.
18              THE COURT:  Oh, wait a minute.  Wait a
19    minute.  Something that's dear to my heart.  How
20    technical is the technology here?  Do I need a technical
21    advisor?  Everybody be seated except those that are
22    going to explain to me.  You both have got local counsel
23    and know of the Court's limited abilities, so --
24              MR. SCHERKENBACH:  I'll be honest with you,
25    Your Honor, not that I wouldn't otherwise be, there are
```

1    four patents.  They break down, I think, into two

2    groups.  Three of them relate to cable modems and

3    services that involve cable modems.  I don't think you

4    would have a lot of problems with those.  In fact, based

5    on what I understand you've handled in the past, I don't

6    think they're going to be a big problem for you.

7            The fourth patent relates to digital

8    television, transmission and retransmission and how the

9    signals are coded and encoded.  You're going to need

10   some help.  I need some help.  Now, we can provide it,

11   the parties can provide it, or you can get it in some

12   other form, but it's a difficult one.

13           THE COURT:  Well, I don't know.  You know,

14   this Court's procedure generally is if we're going to

15   get some technical help, I encourage tutorials, of

16   course, to be submitted before the Markman hearing, in

17   advance of that to give me time to look at them.

18           They're most helpful if you -- everything is

19   always most helpful if you can agree upon the tutorial.

20   If you can't, the one that's presented in the more --

21   the least adversarial argumentive basis is the one

22   that's most helpful to the Court.

23           Secondly, but, you know, if you think you

24   could agree upon a technical advisor that I would

25   consult -- usually, I use lawyers that are in the field

1    that are -- anywhere from D.C. to San Francisco, I

2    guess, or Houston or Dallas or wherever.

3          In absence of an agreement, what I'll do is

4    I will propose someone to you that I feel comfortable

5    with and then give each one of you seven days of which

6    to file objections in camera because, generally, the

7    objections that are sustained, and nearly always

8    objections have been sustained because they've been made

9    in good faith, but there's just some things that the

10   other side doesn't know about and they certainly don't

11   need to know about them.

12         And so the only objection I routinely

13   overrule is when I select a lawyer, and somebody says,

14   "No, we were adverse to that law firm and we had a bad

15   relationship."  I think the folks I select are more

16   professional than that.  So that's the only -- my

17   routine one.  So do you think you can agree on a

18   technical advisor or not?

19         MR. FERRALL:  I think we -- we haven't

20   discussed it, but --

21         THE COURT:  Okay.  I'm going to give you

22   30 days to talk about that and just advise me, "We can

23   agree, and then so-and-so," or "We can't agree," and

24   I'll kick in the other procedure.

25         MR. FERRALL:  Very good.

1          THE COURT:  Does that work?

2          MR. FERRALL:  I think that makes a lot of

3    sense, Your Honor.

4          THE COURT:  Okay.  All right.  Other than me

5    slipping a stitch on that, have I forgotten anything

6    else?

7          MR. FERRALL:  Actually, Your Honor, can I

8    just raise one other point?  There is a motion to

9    transfer that's been assigned to Magistrate Love, and so

10   I don't think there's anything more to discuss here.  I

11   just wanted to raise that that is -- it is pending.

12         THE COURT:  Well, there's a similar issue, I

13   understand, that might be going up the appellate ladder

14   that might have some close facts, similar facts.  So the

15   Court may just carry that along for a while.  Y'all will

16   just need to proceed accordingly.

17         MR. FERRALL:  Absolutely.

18         THE COURT:  All right.  I don't intend to

19   rule until I at least know what's going to happen on the

20   mandamus, okay?

21         MR. FERRALL:  Okay.  Fair enough.  Thank

22   you, Your Honor.

23         MR. SCHERKENBACH:  Thank you, Your Honor.

24         THE COURT:  All right.  Y'all are excused.

25         (Court recessed.)

1      I, SHELLY HOLMES, Substitute Official Court

2  Reporter in and for the United States District Court,

3  Eastern District of Texas, Marshall Division, do hereby

4  certify that the above and foregoing contains a true and

5  correct transcription of all portions of evidence and

6  other proceedings requested in writing by counsel for

7  the parties to be included in this volume of the

8  Reporter's Record, in the above-styled and numbered

9  cause, all of which occurred in open Court or in

10  chambers and were reported by me.

11      I further certify that this Reporter's

12  Record of the proceedings truly and correctly reflects

13  the exhibits, if any, admitted by the respective

14  parties.

15      I further certify that the total cost for

16  the preparation of this Reporter's Record is $ 124.⁰⁰

17  and was paid/will be paid by _John Perkins_

18      WITNESS MY OFFICIAL HAND this the _9th_

19  day of, May, 2006.

20

21  _____

22  SHELLY HOLMES, Texas CSR 7804
    Expiration Date:  12/31/06

23  John Foster, Certified Shorthand
    Reporter

24  Firm Registration No. 109
    P.O. Box 68

25  Henderson, Texas  75653
    (903) 657-8626

Case 2:05-cv-00443-TJW-CE Document 185-27 Filed 06/28/2010 Page 1 of 4

LAW OFFICES

# KEKER & VAN NEST
### LLP

710 SANSOME STREET
SAN FRANCISCO, CA 94111-1704
TELEPHONE (415) 391-5400
FAX (415) 397-7188
WWW.KVN.COM

ERIC H. MacMICHAEL
EMACMICHAEL@KVN.COM

July 31, 2006

Tom Brown, Esq.                         Michael Bunis, Esq.
Fish & Richardson, P.C.                 Fish & Richardson, P.C.
225 Franklin Street                     225 Franklin Street
Boston, MA  02110                       Boston, MA  02110
Facsimile #:  (617) 542-8906            Facsimile #:  (617) 542-8906

Re:    ***Rembrandt Technologies, LP v. Comcast Corporation, et al***.

Dear Tom,

I write in response to your letter dated July 27, 2006.  In addition, I am available to discuss these matters at your earliest convenience.

E-mail communications:

We are in the process of running the search terms that Rembrandt provided us, and will produce responsive email communications as soon as that search is completed.  We anticipate that this process will be finished by Friday, August 11, and that relevant email communications will be produced shortly thereafter.  As I explained during our telephone conversation on Monday, July 25, 2006, any delay in Comcast's production of email has been occasioned by the sheer volume of email that was collected, and the process of procuring a third-party vendor who can process such electronic data in the necessary format.  Comcast is working diligently toward that end.

Rembrandt's claim of prejudice from the delay in email production is, quite frankly, confusing.  Because Comcast does not design, develop, or manufacture any of the accused instrumentalities in this case, it is difficult to fathom how Comcast's email is germane to the preparation of Rembrandt's case.  Similarly, Comcast's email production has no relevance whatsoever to the claim construction process in this case.  Nevertheless, Comcast has agreed to produce email communications responsive to the search terms that Rembrandt submitted, without exception.  In addition, we will produce the names of the custodians from whom email was collected.

July 31, 2006
Page 2

Documents covered by confidentiality agreements:

The following companies are currently withholding permission or have not responded to Comcast's notice of intent to produce documents covered by existing non-disclosure or confidentiality agreements: CableMatrix; IP Unity; Lucent; Nortel Networks; Terayon; Ambit Microsystems; Siemens; and Samsung.

Comcast is diligently attempting to procure consent from these companies and will produce any withheld documents as soon as this issue is resolved. Please note that Comcast cannot simply produce confidential documents at Rembrandt's request without first giving such third parties the opportunity to bring a motion for entry of a protective order to shield any sensitive, confidential or proprietary information.

Source code:

As explained during our call last Monday, Comcast has learned that it does not possess any source code relevant to the operation of the accused instrumentalities. Again, Comcast does not design, develop, or manufacture any of these products – therefore, the absence of such source code in Comcast's production is not terribly surprising. Furthermore, Rembrandt's suggestion that Comcast withheld this information in bad faith while the parties negotiated the treatment of source code in the protective order belies certain key facts: At the time the parties engaged in discussions for the treatment of source code some months ago, Comcast was not in possession of Rembrandt's infringement contentions or list of accused instrumentalities, and therefore did not know the basis or scope of Rembrandt's claims. In addition, Comcast expressly conditioned its production of source code "to the extent any is responsive." (See Comcast's Motion for Entry of Protective Order, at pg. 3). As Comcast does not possess any source code relevant to the accused products, it has not produced any.

Turning to the issue of control over source code, Comcast will review its agreements with key vendors to determine whether it has the right to request source code, and will inform Rembrandt when it has learned more about this issue. We note that Comcast has produced all such agreements that it has been able to locate through a diligent search, and will produce any that are hereafter uncovered.

Other categories of documents:

- Documents evidencing any effort to design the Accused Instrumentalities, or any portion thereof, to avoid infringement of any patent: To date, Comcast has been unable to locate any such documents. We are still searching and will produce any responsive documents that are hereafter discovered.

- All patents owned or licensed by Comcast that relate to the Accused Instrumentalities or any portion thereof: To date, Comcast has been unable to locate any such documents.

We are still searching and will produce any responsive documents that are hereafter discovered.

- All patent license agreements executed by Comcast that relate to the Accused Instrumentalities or any portion thereof:  To date, Comcast has been unable to locate any such documents.  We are still searching and will produce any responsive documents that are hereafter discovered.

- All documents evidencing any contribution by Comcast to any patent relating to the Accused Instrumentalities or any portion thereof:  To date, Comcast has been unable to locate any such documents.  We are still searching and will produce any responsive documents that are hereafter discovered.

- All documents relating to Comcast broadband products, including without limitation profitability projections; product definition documents, and marketing research:  Comcast will review its production to identify responsive documents and will search for and produce further responsive documents to the extent they have not already been produced.

- All documents relating to Comcast's revenues, profits, and expenses, including margin and profitability projections and reports, beginning one year prior to Comcast's first manufacture, use, sale, offer for sale, or importation of any of the Accused Instrumentalities or portions thereof:  Comcast has already produced some such documents as part of its initial document production.  *See, e.g.,* COMREM00000001 – COMREM00001180.  Comcast is still searching and will produce any additional responsive documents that are hereafter discovered.

- All documents relating to marketing of the products and services at issue in this litigation, including relevant portions of Comcast's web sites, and relevant print advertisements:  Comcast will review its production to identify responsive documents and will search for and produce further responsive documents to the extent they have not already been produced.

- All cable franchise agreements:  Comcast does not understand how such agreements are relevant to the issues in this case.  Please explain the basis and scope of this request.  In the meantime, Comcast will review its production to identify responsive documents and will search for and produce samples of such documents to the extent they have not already been produced.

- All agreements between Comcast and content providers, such as individual stations carried by Comcast:  Comcast does not understand how such agreements are relevant to the issues in this case.  Please explain the basis and scope of this request.  In the meantime, Comcast will review its production to identify responsive documents and will

search for and produce samples of such documents to the extent they have not already been produced.

- All advertising in print, video, or audio for any product or set of products that include cable internet or cable television service: Comcast will review its production to identify responsive documents and will search for and produce further responsive documents to the extent they have not already been produced.

- All documents reflecting offerings combining cable television with cable internet and/or telephone service: Comcast will review its production to identify responsive documents and will search for and produce further responsive documents to the extent they have not already been produced.

- All license agreements between Comcast and any patent holder, wherein the license covers cable internet service or cable television service: Comcast has been unable to locate any such documents thus far; we are still searching and will produce any documents that are hereafter discovered.

- Any communication regarding Rembrandt, including without limitation communications regarding any Rembrandt litigation: To date, Comcast has been unable to locate any such documents.

<u>Interrogatory Responses:</u>

Comcast will supplement its response to Rembrandt's Interrogatory No. 3, as well as any other interrogatory that Comcast determines to be incomplete at this time. In addition, in those interrogatory responses that reference Comcast's document production pursuant to Fed. R. Civ. P. 33(d), Comcast will reference specific documents by Bates number where it can reasonably do so. As I indicated during our last discussion however, this process will take some time. Therefore, Comcast will supplement its interrogatory responses by Friday, August 17, which is imminently reasonable given the number and broad scope of Rembrandt's requests.

Sincerely,

Eric H. MacMichael

EHM:dc

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| REMBRANDT TECHNOLOGIES, LP | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Civil Action No. 2:05-cv-443 (TJW) |
| | § | |
| COMCAST CORPORATION, COMCAST | § | |
| CABLE COMMUNICATIONS, LLC, and | § | JURY |
| COMCAST OF PLANO, LP | § | |
| | § | |
| Defendants | § | |

**DEFENDANT COMCAST CORPORATION'S OPPOSITION TO PLAINTIFF'S
REQUEST FOR EXPEDITED BRIEFING ON MOTION TO COMPEL**

Defendants Comcast Corporation; Comcast Cable Communications, LLC; and Comcast of Plano, LP (collectively, "Comcast") respectfully oppose Plaintiff Rembrandt Technologies' ("Rembrandt") request for an expedited briefing schedule on its Motion to Compel Production of Documents.

**I.      INTRODUCTION AND BACKGROUND**

Rembrandt's motion to compel, and its accompanying request for an expedited schedule for such a motion, is a tempest in a teapot—a dispute largely of Rembrandt's own making, and largely about information which, if relevant at all, has no bearing whatsoever on claim construction issues.  In sum, Comcast is not opposing the production of <u>any</u> of the material sought by Rembrandt, to the extent it is in Comcast's custody or control.  And Comcast intends to complete the production in the next few weeks.  This motion should never have been filed at all, much less on an expedited basis.

Far from shirking its discovery obligations, to date Comcast has produced, entirely at its own expense, a cumulative document production *exceeding 2.2 million pages*.  In addition, Comcast has sought to cooperate with Rembrandt whenever possible regarding e-mail discovery, including agreeing to all of the e-mail search terms proposed by Rembrandt.  Exh. I to

Rembrandt's Motion (July 5, 2006 Ferrall Ltr.).  Nevertheless, without having reached an impasse over any issue regarding document production, local counsel for Rembrandt informed Comcast on August 1, 2006 that Rembrandt intended to file a motion to compel before Judge Ward.  Counsel for Rembrandt declined to specify the reasons why or the subject matter at issue, and refused to engage in a meet and confer prior to the filing of said motion.  (*See* Exh. A, August 1, 2006, Doan letter).[1]

This news came as quite a surprise to Comcast, as the parties had just recently engaged in their first (and only) discussion regarding the issues that are the subjects of Rembrandt's motion. Furthermore, just one day earlier, July 31st, Comcast sent Rembrandt a detailed letter explaining Comcast's position on these issues, agreeing to many of Rembrandt's requests.  (*See* Exh. B, July 31, 2006, MacMichael letter).   In this letter, Comcast invited Rembrandt to meet and confer over any remaining concerns.  *Id.*

Upon learning of Rembrandt's contemplated motion to compel, Comcast sent yet another letter to Rembrandt explaining that any such motion was both unnecessary and premature at this stage.  (*See* Exh. C, August 1, 2006, MacMichael letter).  Comcast again invited Rembrandt to meet and confer over any outstanding issues in lieu of involving the Court in such an embryonic discovery dispute.  *Id.*  Undeterred, Rembrandt did not respond to either of these letters, and went ahead and filed its motion to compel.

In that motion, Rembrandt seeks to compel the production of 3 categories of documents: (1) E-mail communications; (2) source code relevant to the operation of the accused instrumentalities; and (3) third-party documents in Comcast's possession that have heretofore been withheld because of Comcast's contractual obligations to these third parties.  In addition, Rembrandt seeks to have this motion heard on an expedited basis, giving Comcast only five court days to respond.  (*See* Rembrandt's Proposed Order on Motion to Shorten Briefing Schedule.)

---

[1]   In support of this response, Comcast attaches true and correct copies of correspondence between counsel for plaintiff and Comcast as Exhibits A, B, and C.

## II.   ARGUMENT

### A.   There Is No Legitimate Need To Hear This Motion On An Expedited Basis

Rembrandt cites no authority for its request to deny Comcast the time allotted under the Local Rules to respond to this motion.  *See* L.R. CV-7(e).  Furthermore, Rembrandt's claim of exigency—that "Rembrandt's claim construction position will be predicated, in large part, on information contained in Comcast's emails . . ."—is unlikely, if not simply ludicrous.  (*See* Pltf.'s Mot. to Compel Prod. of Documents & Mot. for Expedited Briefing, at 9.)

First, as a legal matter, information regarding the accused devices is irrelevant to claim construction.  *See, e.g., NeoMagic Corp. v. Trident Microsystems, Inc.*, 287 F.3d 1062, 1074 (Fed. Cir. 2002) ("It is well settled that claims may not be construed by reference to the accused device").

Second, the formal documentation regarding the operation of the Accused Instrumentalities is largely in the hands of the vendors who sell such equipment to Comcast, to the extent it is not found in materials already produced by Comcast.  It is unlikely that emails will contain definitive specifications not found in other documentation either produced by Comcast or subpoenaed from third parties.

Third, to the extent that Rembrandt receives emails or any remaining documents in the next several weeks, there is ample time to incorporate those into any claim construction argument to which they could be relevant, which are not due until October 10.

Additionally, Comcast is prejudiced in having to respond so quickly.  With additional time, Comcast could likely bring many of these issues to closure, either by producing the material Comcast is currently processing, or confirming that other requested material does not exist.  Over only a few days—and in August when many Comcast employees are not available—it is impossible for Comcast to get all the information it might otherwise provide in response.

As this is the *only* justification Rembrandt has mustered for wanting to have its motion heard on an expedited basis, Comcast respectfully submits that the Court should hear this motion on its normal schedule.

**B.** **Comcast Has Agreed To Produce The Bulk Of Documents Requested by Rembrandt**

    **1.** **Comcast has agreed to produce all relevant e-mail communications.**

As explained to Rembrandt in Comcast's July 31, 2006, letter (Exh. B), Comcast agreed to all of Rembrandt's proposed search terms for e-mails, and is in the process of running those terms on the massive database of emails collected thus far. Privileged emails then need to be removed and the results need to be formatted. Comcast anticipates this process will be completed in a couple of weeks, although Comcast believes that it can produce an initial batch of approximately 40,000 e-mails and attachments by August 11[th.]

Contrary to Rembrandt's suggestion that Comcast has tried to shirk its discovery obligations, Comcast has been cooperative from the start of e-mail discovery. Comcast agreed to Rembrandt's proposed search terms, without exception. In addition, Comcast agreed to produce the e-mails and attachments in a format requested by Rembrandt. Any delay in Comcast's production of e-mail has been occasioned by the sheer volume of email that was collected, and the process of procuring a third-party vendor who can process such electronic data in the necessary format. Comcast is working diligently toward that end, and anticipates completing its email production in a couple of weeks.

    **2.** **Comcast stands ready to produce third-party documents withheld because of contractual obligations.**

Comcast has identified and withheld a small number of documents based on concerns over confidentiality agreements with certain third parties who have objected to Comcast's production of any potentially confidential information. To date, the total number of documents withheld on this basis numbers less than 500, out of a production of over 189,000 documents. Despite Rembrandt's claim that Comcast has been dilatory in obtaining consent from these third parties, Comcast sent notice letters to over 20 companies more than 2 months ago, and has since diligently attempted to procure consent from those companies that objected. Such efforts include reviewing Comcast's database to identify those documents that are subject to active confidentiality agreements between Comcast and one of the objectors. Through such efforts,

Comcast has limited the number of documents withheld to less than 500.

Comcast stands ready to produce these documents should the Court so order. It is only out of deference to its contractual obligations with these third parties that Comcast has not produced these documents, to allow such third parties the opportunity to bring a motion for entry of a protective order to shield any sensitive, confidential or proprietary information.

### 3. Comcast has no relevant source code.

As explained to Rembrandt during the parties' only discussion over the issue, and again in its July 31st letter (Exh. B), Comcast does not possess any source code relevant to the operation of the Accused Instrumentalities identified by Rembrandt. Comcast does not design, develop, or manufacture any of these devices, and there is no need to have source code in order simply to use the devices.[2] Since Comcast does not possess any, it has not and cannot produce any, and no motion to compel can change that.

Rembrandt makes much of the fact that Comcast and Rembrandt disputed terms in the otherwise stipulated protective order regarding the treatment of source code. But that hardly proves that Comcast has responsive source code. First, at the time the parties discussed the protection of source code, Rembrandt had not provided its infringement contentions or list of accused instrumentalities, and therefore did not know the basis or scope of Rembrandt's case. Second, Comcast knew, from ongoing litigation experience, that third-party vendors would resist production of source code if the protections afforded by court order were not sufficient. Comcast had experienced this already in a matter pending before Judge Folsom, *Caritas v. Comcast*. Thus, Comcast believed that its proposed protective order would facilitate third-party discovery of source code, which would <u>expedite</u> discovery for Rembrandt.

Turning to the issue of control over source code, Comcast does not believe it has any rights to access and produce third-party source code. And although Rembrandt's counsel already has many if not all of the relevant agreements with third party vendors, it has not cited any provision to the contrary. Nonetheless, Comcast has agreed to re- review its agreements with

---

[2] Similarly, the owner of a personal computer needs no source code in order to operate the computer.

key vendors to determine whether it has the right to request source code, and will inform Rembrandt by August 11, 2006.

Finally, Rembrandt claims that Comcast "undoubtedly" has some source code; for example, files used to configure cable modems within Comcast's network. (*See* Pltf.'s Mot. to Compel Prod. of Documents & Mot. for Expedited Briefing, at 10). Setting aside whether such files are relevant to this case, Comcast notes that Rembrandt *first* raised this issue in its July 27th letter. (*See* Ex. L to Pltf.'s Mot. to Compel.) Comcast will investigate this question, and should it become aware of responsive materials—source code or otherwise—it will produce them. To bring an expedited motion on this issue without an adequate meet and confer, however, is an utter waste of the Court's time.

## III.    CONCLUSION

Comcast opposes Rembrandt's request for an expedited briefing schedule on its Motion to Compel Production of Documents.

Respectfully submitted,

_____/s/_____
Jennifer Haltom Doan
Texas Bar No. 08809050
John Peyton Perkins, III
Texas Bar No. 24043457
HALTOM & DOAN, LLP
6500 N. Summerhill Road, Suite 1A
P. O. Box 6227
Texarkana, TX 75505-6227
Telephone:  903-255-1000
Facsimile:  903-255-0800
E-mail:  jdoan@haltomdoan.com

Brian L. Ferrall
Leo L. Lam
Eric H. MacMichael
Steven K. Yoda
Keker & Van Nest, LLP
710 Sansome Street
San Francisco, CA 94111-1704
Telephone: 415-676-2235
Facsimile: 415-397-7188

**ATTORNEYS FOR DEFENDANTS
COMCAST CORPORATION,
COMCAST CABLE
COMMUNICATIONS, LLC AND
COMCAST OF PLANO, LP**

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this motion was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to FED. R. CIV. P. 5(d) and Local Rule CV-5(e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by certified mail, return receipt requested, on this 4th day of August, 2006.

_____/s/_____
John Peyton Perkins, III

# EXHIBIT A

# HALTOM & DOAN, LLP

TRIAL & APPELLATE COUNSEL
Practicing in Texas & Arkansas

6500 N. Summerhill Road, Suite 1A, Texarkana, Texas 75503
Mailing: P. O. Box 6227, Texarkana, Texas 75505-6227
903.255.1000    www.haltomdoan.com    903.255.0800 (fax)

Jennifer H. Doan
Board Certified – Personal Injury Trial Law
Texas Board of Legal Specialization

Direct Dial: 903-255-1002
jdoan@haltomdoan.com

August 1, 2006

**Via Telecopy and E-mail**

Robert Christopher Bunt
Parker & Bunt, PC
100 E. Ferguson, Suite 1114
Tyler, TX 75702

Re:    *Rembrandt Technologies, LP v. Comcast Corporation et al;* In the United States
       District Court, Marshall Division; Civil Action No. 2:05-cv-443

Dear Chris:

I appreciate you calling this afternoon regarding the motion to compel that your client supposedly intends to file today. As I mentioned, I could not believe we could not have a meaningful meet and confer pursuant to Local Rule CV-7(h) about the motion to compel. Specifically, I do not know the subject of the motion to compel, or what efforts, if any, either party has expended to try to resolve this matter. As such, I suggested that you either send me a copy of the motion and we would have a meaningful meet and confer tomorrow morning. If we could not agree then, your guys could file the motion. Alternatively, we could have a meet and confer with local counsel and national counsel on the phone to address the subject matter this afternoon or tomorrow. As I understand it, neither alternative is acceptable to your national counsel.

As I mentioned, I am extremely disappointed that your national counsel would not engage in a meaningful meet and confer pursuant to Local Rule CV 7(h) regarding this issue. I look forward to learning what the issues concern in reading the plaintiff's motion to compel. In the certificate of conference, you can note that we did not meet and confer.

Furthermore, given your client's actions, we intend to ask Judge Ward to enter his standing order regarding in person meet and confer meetings.

Of course, should you wish to delay in filing the motion until after we discuss the motion, I am available all day tomorrow—just let me know what time.

Robert Christopher Bunt
Page 2
August 1, 2006

Very truly yours,

Jennifer Haltom Doan

JHD:pg
25070.00004

cc:    Otis Carroll, Jr., Patrick Kelley, and Collin Michael Maloney
       Sidney Calvin Capshaw, III and Elizabeth DeRieux
       Robert M. Parker
       Frank E. Scherkenbach, Lawrence K. Kolodney, Michael H. Bunis, Thomas A.
           Brown, and Denis Ticak
       Timothy Devlin
       Alan D. Albright
       Franklin Jones, Jr.

# EXHIBIT B

LAW OFFICES

# KEKER & VAN NEST
## LLP

710 SANSOME STREET
SAN FRANCISCO, CA 94111-1704
TELEPHONE (415) 391-5400
FAX (415) 397-7188
WWW.KVN.COM

ERIC H. MACMICHAEL
EMACMICHAEL@KVN.COM

July 31, 2006

Tom Brown, Esq.                    Michael Bunis, Esq.
Fish & Richardson, P.C.            Fish & Richardson, P.C.
225 Franklin Street                225 Franklin Street
Boston, MA  02110                  Boston, MA  02110
Facsimile #: (617) 542-8906        Facsimile #: (617) 542-8906

Re:    *Rembrandt Technologies, LP v. Comcast Corporation, et al.*

Dear Tom,

    I write in response to your letter dated July 27, 2006.  In addition, I am available to discuss these matters at your earliest convenience.

E-mail communications:

    We are in the process of running the search terms that Rembrandt provided us, and will produce responsive email communications as soon as that search is completed.  We anticipate that this process will be finished by Friday, August 11, and that relevant email communications will be produced shortly thereafter.  As I explained during our telephone conversation on Monday, July 25, 2006, any delay in Comcast's production of email has been occasioned by the sheer volume of email that was collected, and the process of procuring a third-party vendor who can process such electronic data in the necessary format.  Comcast is working diligently toward that end.

    Rembrandt's claim of prejudice from the delay in email production is, quite frankly, confusing.  Because Comcast does not design, develop, or manufacture any of the accused instrumentalities in this case, it is difficult to fathom how Comcast's email is germane to the preparation of Rembrandt's case.  Similarly, Comcast's email production has no relevance whatsoever to the claim construction process in this case.  Nevertheless, Comcast has agreed to produce email communications responsive to the search terms that Rembrandt submitted, without exception.  In addition, we will produce the names of the custodians from whom email was collected.

377989.01

July 31, 2006
Page 2

Documents covered by confidentiality agreements:

The following companies are currently withholding permission or have not responded to Comcast's notice of intent to produce documents covered by existing non-disclosure or confidentiality agreements: CableMatrix; IP Unity; Lucent; Nortel Networks; Terayon; Ambit Microsystems; Siemens; and Samsung.

Comcast is diligently attempting to procure consent from these companies and will produce any withheld documents as soon as this issue is resolved. Please note that Comcast cannot simply produce confidential documents at Rembrandt's request without first giving such third parties the opportunity to bring a motion for entry of a protective order to shield any sensitive, confidential or proprietary information.

Source code:

As explained during our call last Monday, Comcast has learned that it does not possess any source code relevant to the operation of the accused instrumentalities. Again, Comcast does not design, develop, or manufacture any of these products -- therefore, the absence of such source code in Comcast's production is not terribly surprising. Furthermore, Rembrandt's suggestion that Comcast withheld this information in bad faith while the parties negotiated the treatment of source code in the protective order belies certain key facts: At the time the parties engaged in discussions for the treatment of source code some months ago, Comcast was not in possession of Rembrandt's infringement contentions or list of accused instrumentalities, and therefore did not know the basis or scope of Rembrandt's claims. In addition, Comcast expressly conditioned its production of source code "to the extent any is responsive." (See Comcast's Motion for Entry of Protective Order, at pg. 3). As Comcast does not possess any source code relevant to the accused products, it has not produced any.

Turning to the issue of control over source code, Comcast will review its agreements with key vendors to determine whether it has the right to request source code, and will inform Rembrandt when it has learned more about this issue. We note that Comcast has produced all such agreements that it has been able to locate through a diligent search, and will produce any that are hereafter uncovered.

Other categories of documents:

- Documents evidencing any effort to design the Accused Instrumentalities, or any portion thereof, to avoid infringement of any patent: To date, Comcast has been unable to locate any such documents. We are still searching and will produce any responsive documents that are hereafter discovered.

- All patents owned or licensed by Comcast that relate to the Accused Instrumentalities or any portion thereof: To date, Comcast has been unable to locate any such documents.

July 31, 2006
Page 3

We are still searching and will produce any responsive documents that are hereafter discovered.

- All patent license agreements executed by Comcast that relate to the Accused Instrumentalities or any portion thereof: To date, Comcast has been unable to locate any such documents. We are still searching and will produce any responsive documents that are hereafter discovered.

- All documents evidencing any contribution by Comcast to any patent relating to the Accused Instrumentalities or any portion thereof: To date, Comcast has been unable to locate any such documents. We are still searching and will produce any responsive documents that are hereafter discovered.

- All documents relating to Comcast broadband products, including without limitation profitability projections; product definition documents, and marketing research: Comcast will review its production to identify responsive documents and will search for and produce further responsive documents to the extent they have not already been produced.

- All documents relating to Comcast's revenues, profits, and expenses, including margin and profitability projections and reports, beginning one year prior to Comcast's first manufacture, use, sale, offer for sale, or importation of any of the Accused Instrumentalities or portions thereof: Comcast has already produced some such documents as part of its initial document production. *See, e.g.,* COMREM00000001 – COMREM00001180. Comcast is still searching and will produce any additional responsive documents that are hereafter discovered.

- All documents relating to marketing of the products and services at issue in this litigation, including relevant portions of Comcast's web sites, and relevant print advertisements: Comcast will review its production to identify responsive documents and will search for and produce further responsive documents to the extent they have not already been produced.

- All cable franchise agreements: Comcast does not understand how such agreements are relevant to the issues in this case. Please explain the basis and scope of this request. In the meantime, Comcast will review its production to identify responsive documents and will search for and produce samples of such documents to the extent they have not already been produced.

- All agreements between Comcast and content providers, such as individual stations carried by Comcast: Comcast does not understand how such agreements are relevant to the issues in this case. Please explain the basis and scope of this request. In the meantime, Comcast will review its production to identify responsive documents and will

July 31, 2006
Page 4

      search for and produce samples of such documents to the extent they have not already been produced.

- All advertising in print, video, or audio for any product or set of products that include cable internet or cable television service:  Comcast will review its production to identify responsive documents and will search for and produce further responsive documents to the extent they have not already been produced.

- All documents reflecting offerings combining cable television with cable internet and/or telephone service:  Comcast will review its production to identify responsive documents and will search for and produce further responsive documents to the extent they have not already been produced.

- All license agreements between Comcast and any patent holder, wherein the license covers cable internet service or cable television service:  Comcast has been unable to locate any such documents thus far; we are still searching and will produce any documents that are hereafter discovered.

- Any communication regarding Rembrandt, including without limitation communications regarding any Rembrandt litigation:  To date, Comcast has been unable to locate any such documents.

<u>Interrogatory Responses:</u>

      Comcast will supplement its response to Rembrandt's Interrogatory No. 3, as well as any other interrogatory that Comcast determines to be incomplete at this time.  In addition, in those interrogatory responses that reference Comcast's document production pursuant to Fed. R. Civ. P. 33(d), Comcast will reference specific documents by Bates number where it can reasonably do so.  As I indicated during our last discussion however, this process will take some time.  Therefore, Comcast will supplement its interrogatory responses by Friday, August 17, which is imminently reasonable given the number and broad scope of Rembrandt's requests.

                                    Sincerely,

                                      Eric H. MacMichael

EHM:dc

# EXHIBIT C

LAW OFFICES

# KEKER & VAN NEST
LLP

710 SANSOME STREET
SAN FRANCISCO, CA 94111-1704
TELEPHONE (415) 391-5400
FAX (415) 397-7188
WWW.KVN.COM

ERIC H. MACMICHAEL
EMACMICHAEL@KVN.COM

August 1, 2006

**VIA E-MAIL**

Tom Brown, Esq.                        Michael Bunis, Esq.
Fish & Richardson, P.C.                Fish & Richardson, P.C.
225 Franklin Street                    225 Franklin Street
Boston, MA  02110                      Boston, MA  02110
Facsimile #:  (617) 542-8906           Facsimile #:  (617) 542-8906
tbrown@fr.com                          mbunis@fr.com

Dear Tom:

Without specifying the reasons why or the subject matter at issue, local counsel for
Rembrandt has informed us that Rembrandt intends to file a motion to compel imminently before
Judge Ward. This news came as quite a surprise to us, as the parties have just recently engaged
in their first (and only) discussion regarding the issues that presumably are the subjects of
Rembrandt's contemplated motion. We strongly feel that any such motion would be both
premature and unnecessary, especially in light of the fact that we just sent you a letter yesterday
detailing Comcast's position on the issues that Rembrandt has raised, agreeing to many of
Rembrandt's requests. In this same letter, Comcast invited Rembrandt to meet and confer over
any remaining concerns. Filing a motion to compel without even responding to this letter would
be hasty, and is likely to burden the Court unnecessarily with discovery issues that can be
worked out between the parties. Furthermore, such unannounced and preemptive tactics are
inconsistent with Rembrandt's obligations under the Fed.R.Civ.P. and the local rules of this
Court to meet and confer in good faith prior to the filing of any motion. *See* Local Rule CV-
7(h).

We once again invite Rembrandt to meet and confer over any issues that it feels are
pressing at this time. We look forward to hearing from you.

Sincerely,

Eric H. MacMichael

EHM:dc

cc:   Kim Kilbey
      Michael Forman

378086.01

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

REMBRANDT TECHNOLOGIES, LP,

                     Plaintiff,

    v.

COMCAST CORPORATION; COMCAST
CABLE COMMUNICATIONS; LLC; and
COMCAST OF PLANO, LP,

                    Defendants.

Case No. 2:05-CV-443-TJW

Jury

## DEFENDANT COMCAST CORPORATION'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS

    Defendants Comcast Corporation; Comcast Cable Communications, LLC; and Comcast of Plano, LP (collectively, "Comcast") respectfully oppose Plaintiff Rembrandt Technologies' ("Rembrandt") Motion to Compel Production of Documents.

## I. INTRODUCTION AND BACKGROUND

    Rembrandt's Motion to Compel Production of Documents is a dispute largely of Rembrandt's own making. In short, Comcast is not opposing the production of any of the material sought by Rembrandt, to the extent it is in Comcast's custody or control. And Comcast intends to complete the necessary investigation and production in the next few weeks. Thus, the entire motion boils down to Rembrandt's attempt to expedite this production by a few days. This motion should never have been filed at all, as this dispute is something the parties can and should work out amongst themselves.

    Far from shirking its discovery obligations, to date Comcast has produced, entirely at its own expense, a cumulative document production *exceeding 2.2 million pages*. In addition, Comcast has sought to cooperate with Rembrandt whenever possible regarding e-mail discovery,

including agreeing to all of the e-mail search terms proposed by Rembrandt. Exh. I to Rembrandt's Motion (July 5, 2006 Ferrall Ltr.). Nevertheless, without having reached an impasse over any issue regarding document production, local counsel for Rembrandt informed Comcast on August 1, 2006 that Rembrandt intended to file a motion to compel. Counsel for Rembrandt declined to specify the reasons why or the subject matter at issue, and refused to engage in a meet and confer prior to the filing of said motion. (*See* Ex. A, August 1, 2006, Doan Letter.)[1]

This news came as quite a surprise to Comcast, as the parties had just recently engaged in their first (and only) discussion regarding the issues that are the subjects of Rembrandt's motion. Furthermore, just one day earlier, July 31st, Comcast sent Rembrandt a detailed letter explaining Comcast's position on these issues, agreeing to many of Rembrandt's requests. (*See* Ex. B, July 31, 2006 MacMichael letter.) In this letter, Comcast invited Rembrandt to meet and confer over any remaining concerns. *Id.*

Upon learning of Rembrandt's contemplated motion to compel, Comcast sent yet another letter to Rembrandt explaining that any such motion was both unnecessary and premature at this stage. (*See* Ex. C, August 1, 2006 MacMichael letter.) Comcast again invited Rembrandt to meet and confer over any outstanding issues in lieu of involving the Court in such an embryonic discovery dispute. *Id.* Undeterred, Rembrandt did not respond to either of these letters, and went ahead and filed its motion to compel.

In that motion, Rembrandt seeks to compel the production of 3 categories of documents: (1) E-mail communications; (2) source code relevant to the operation of the accused instrumentalities; and (3) third-party documents in Comcast's possession that have heretofore been withheld because of Comcast's contractual obligations to these third parties.

---

[1] In support of this opposition, Comcast attaches true and correct copies of correspondence between counsel for Rembrandt and counsel for Comcast as Exhibits A, B, and C.

## II. ARGUMENT

**A.    Comcast Has Agreed To Produce The Bulk Of Documents Requested by Rembrandt**

    **1.    Comcast has agreed to produce all relevant e-mail communications.**

As explained to Rembrandt in Comcast's letter dated July 31, 2006 (Ex. B), Comcast agreed to all of Rembrandt's proposed search terms for e-mails, and is in the process of running those terms on the massive database of emails collected thus far.  Privileged emails then need to be removed and the results need to be formatted.  Comcast anticipates this process will be completed by Monday, August 28th, at which time all responsive and non-privileged e-mails will be produced.

Contrary to Rembrandt's suggestion that Comcast has tried to shirk its discovery obligations, Comcast has been cooperative from the start of e-mail discovery.  Comcast agreed to Rembrandt's proposed search terms, without exception.  In addition, Comcast agreed to produce the e-mails and attachments in a format requested by Rembrandt.  And, Comcast produced approximately 35,000 e-mail communications on August 11, 2006.  Any delay in Comcast's production of the remaining e-mails has been occasioned by the sheer volume of email that was collected, and the process of procuring a third-party vendor who can process such electronic data in the necessary format.  Comcast is working diligently toward that end, and anticipates completing its email production in a few weeks.

    **2.    Comcast stands ready to produce third-party documents withheld because of contractual obligations.**

Comcast has identified and withheld a small number of documents based on concerns over confidentiality agreements with certain third parties who have objected to Comcast's production of any potentially confidential information.  To date, the total number of documents withheld on this basis numbers less than 500, out of a production of over 189,000 documents. Despite Rembrandt's claim that Comcast has been dilatory in obtaining consent from these third parties, Comcast sent notice letters to over 20 companies more than 2 months ago, and has since diligently attempted to procure consent from those companies that objected.  Such efforts include

reviewing Comcast's database to identify those documents that are subject to active confidentiality agreements between Comcast and one of the objectors. Through such efforts, Comcast has limited the number of documents withheld to less than 500.

Comcast stands ready to produce these documents should the Court so order. It is only out of deference to its contractual obligations with these third parties that Comcast has not produced these documents, to allow such third parties the opportunity to bring a motion for entry of a protective order to shield any sensitive, confidential or proprietary information.

### 3. Comcast has no relevant source code.

As explained to Rembrandt during the parties' only discussion over the issue, and again in its July 31st letter, Comcast does not possess any source code relevant to the operation of the Accused Instrumentalities identified by Rembrandt. Comcast does not design, develop, or manufacture any of these devices, and there is no need to have source code in order simply to use the devices.[2] Since Comcast does not possess any, it has not and cannot produce any, and no motion to compel can change that.

Rembrandt makes much of the fact that Comcast and Rembrandt disputed terms in the otherwise stipulated protective order regarding the treatment of source code. But that hardly proves that Comcast has responsive source code. First, at the time the parties discussed the protection of source code, Rembrandt had not provided its infringement contentions or list of accused instrumentalities, and therefore did not know the basis or scope of Rembrandt's case. Second, Comcast knew, from ongoing litigation experience, that third-party vendors would resist production of source code if the protections afforded by court order were not sufficient. Comcast had experienced this already in a matter pending before Judge Folsom, *Caritas v. Comcast*. Thus, Comcast believed that its proposed protective order would facilitate third-party discovery of source code, which would <u>expedite</u> discovery for Rembrandt.

Turning to the issue of control over source code, Comcast does not believe it has any rights to access and produce third-party source code. To date, Comcast has reviewed a

---

[2] Similarly, the owner of a personal computer needs no source code in order to operate the computer.

representative sample of its agreements with key vendors to determine whether it has the right to request or inspect source code, and has learned that it does not. This is hardly surprising given that source code is almost always a closely-guarded asset of a company, and Comcast has no reason to review or inspect source code for these devices. And, although Rembrandt's counsel already has many if not all of the relevant agreements with third party vendors, it has not cited any provision to the contrary.

Finally, Rembrandt claims that Comcast "undoubtedly" has some source code; for example, files used to configure cable modems within Comcast's network. (*See* Pltf.'s Mot. to Compel Prod. of Documents & Mot. for Expedited Briefing, at 10). Setting aside whether such files are relevant to this case, Comcast notes that Rembrandt *first* raised this issue in its July 27th letter. (*See* Ex. L to Pltf.'s Mot. to Compel.) Comcast is currently investigating this question, and should it become aware of responsive materials—source code or otherwise—it will produce them. To bring a motion on this issue, however, before giving Comcast any meaningful chance to respond, is an utter waste of the Court's time.

### III. CONCLUSION

For these reasons, Comcast opposes Rembrandt's Motion to Compel Production of Documents.

By:_____/s/ Jennifer Haltom Doan_____
        Jennifer Haltom Doan
        Texas Bar No. 08809050
        John Peyton Perkins, III
        Texas Bar No. 24043457
        HALTOM & DOAN, LLP
        6500 Summerhill Road, Suite 1A
        P.O. Box 6227
        Texarkana, TX  75505-6227
        Telephone:  (903) 255-1000
        Facsimile:  (903) 255-0800

Brian L. Ferrall
Leo L. Lam
Matthew M. Werdegar
Eric H. MacMichael
KEKER & VAN NEST, LLP
710 Sansome Street
San Francisco, CA 94111-1724
Telephone: (415) 391-5400
Facsimile: (415) 397-7188

**Attorneys for Defendant
COMCAST CORPORATION**

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). All other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by certified mail, return receipt requested, on this 17th day of August, 2006.

_____/s/ John Peyton Perkins, III_____
John Peyton Perkins, III

# EXHIBIT A

# HALTOM & DOAN, LLP

## TRIAL & APPELLATE COUNSEL
### Practicing in Texas & Arkansas

6500 N. Summerhill Road, Suite 1A, Texarkana, Texas 75503
Mailing:  P. O. Box 6227, Texarkana, Texas 75505-6227
903.255.1000    www.haltomdoan.com    903.255.0800 (fax)

Jennifer H. Doan
Board Certified – Personal Injury Trial Law
Texas Board of Legal Specialization

Direct Dial: 903-255-1002
jdoan@haltomdoan.com

August 1, 2006

**Via Telecopy and E-mail**

Robert Christopher Bunt
Parker & Bunt, PC
100 E. Ferguson, Suite 1114
Tyler, TX 75702

Re:     *Rembrandt Technologies, LP v. Comcast Corporation et al;* In the United States
        District Court, Marshall Division; Civil Action No. 2:05-cv-443

Dear Chris:

         I appreciate you calling this afternoon regarding the motion to compel that your
client supposedly intends to file today.  As I mentioned, I could not believe we could not
have a meaningful meet and confer pursuant to Local Rule CV-7(h) about the motion to
compel.  Specifically, I do not know the subject of the motion to compel, or what efforts,
if any, either party has expended to try to resolve this matter.  As such, I suggested that
you either send me a copy of the motion and we would have a meaningful meet and
confer tomorrow morning.  If we could not agree then, your guys could file the motion.
Alternatively, we could have a meet and confer with local counsel and national counsel
on the phone to address the subject matter this afternoon or tomorrow.  As I understand it,
neither alternative is acceptable to your national counsel.

         As I mentioned, I am extremely disappointed that your national counsel would not
engage in a meaningful meet and confer pursuant to Local Rule CV 7(h) regarding this
issue.  I look forward to learning what the issues concern in reading the plaintiff's motion
to compel.  In the certificate of conference, you can note that we did not meet and confer.

         Furthermore, given your client's actions, we intend to ask Judge Ward to enter his
standing order regarding in person meet and confer meetings.

         Of course, should you wish to delay in filing the motion until after we discuss the
motion, I am available all day tomorrow—just let me know what time.

Robert Christopher Bunt
Page 2
August 1, 2006

Very truly yours,

Jennifer Haltom Doan

JHD:pg
25070.00004

cc:   Otis Carroll, Jr., Patrick Kelley, and Collin Michael Maloney
      Sidney Calvin Capshaw, III and Elizabeth DeRieux
      Robert M. Parker
      Frank E. Scherkenbach, Lawrence K. Kolodney, Michael H. Bunis, Thomas A.
          Brown, and Denis Ticak
      Timothy Devlin
      Alan D. Albright
      Franklin Jones, Jr.

# EXHIBIT B

LAW OFFICES

# KEKER & VAN NEST
### LLP

710 SANSOME STREET
SAN FRANCISCO, CA 94111-1704
TELEPHONE (415) 391-5400
FAX (415) 397-7188
WWW.KVN.COM

ERIC H. MACMICHAEL
EMACMICHAEL@KVN.COM

July 31, 2006

Tom Brown, Esq.                          Michael Bunis, Esq.
Fish & Richardson, P.C.                  Fish & Richardson, P.C.
225 Franklin Street                      225 Franklin Street
Boston, MA 02110                         Boston, MA 02110
Facsimile #: (617) 542-8906              Facsimile #: (617) 542-8906

Re:   ***Rembrandt Technologies, LP v. Comcast Corporation, et al.***

Dear Tom,

I write in response to your letter dated July 27, 2006. In addition, I am available to discuss these matters at your earliest convenience.

E-mail communications:

We are in the process of running the search terms that Rembrandt provided us, and will produce responsive email communications as soon as that search is completed. We anticipate that this process will be finished by Friday, August 11, and that relevant email communications will be produced shortly thereafter. As I explained during our telephone conversation on Monday, July 25, 2006, any delay in Comcast's production of email has been occasioned by the sheer volume of email that was collected, and the process of procuring a third-party vendor who can process such electronic data in the necessary format. Comcast is working diligently toward that end.

Rembrandt's claim of prejudice from the delay in email production is, quite frankly, confusing. Because Comcast does not design, develop, or manufacture any of the accused instrumentalities in this case, it is difficult to fathom how Comcast's email is germane to the preparation of Rembrandt's case. Similarly, Comcast's email production has no relevance whatsoever to the claim construction process in this case. Nevertheless, Comcast has agreed to produce email communications responsive to the search terms that Rembrandt submitted, without exception. In addition, we will produce the names of the custodians from whom email was collected.

377989.01

July 31, 2006
Page 2

Documents covered by confidentiality agreements:

The following companies are currently withholding permission or have not responded to Comcast's notice of intent to produce documents covered by existing non-disclosure or confidentiality agreements: CableMatrix; IP Unity; Lucent; Nortel Networks; Terayon; Ambit Microsystems; Siemens; and Samsung.

Comcast is diligently attempting to procure consent from these companies and will produce any withheld documents as soon as this issue is resolved. Please note that Comcast cannot simply produce confidential documents at Rembrandt's request without first giving such third parties the opportunity to bring a motion for entry of a protective order to shield any sensitive, confidential or proprietary information.

Source code:

As explained during our call last Monday, Comcast has learned that it does not possess any source code relevant to the operation of the accused instrumentalities. Again, Comcast does not design, develop, or manufacture any of these products -- therefore, the absence of such source code in Comcast's production is not terribly surprising. Furthermore, Rembrandt's suggestion that Comcast withheld this information in bad faith while the parties negotiated the treatment of source code in the protective order belies certain key facts: At the time the parties engaged in discussions for the treatment of source code some months ago, Comcast was not in possession of Rembrandt's infringement contentions or list of accused instrumentalities, and therefore did not know the basis or scope of Rembrandt's claims. In addition, Comcast expressly conditioned its production of source code "to the extent any is responsive." (See Comcast's Motion for Entry of Protective Order, at pg. 3). As Comcast does not possess any source code relevant to the accused products, it has not produced any.

Turning to the issue of control over source code, Comcast will review its agreements with key vendors to determine whether it has the right to request source code, and will inform Rembrandt when it has learned more about this issue. We note that Comcast has produced all such agreements that it has been able to locate through a diligent search, and will produce any that are hereafter uncovered.

Other categories of documents:

- Documents evidencing any effort to design the Accused Instrumentalities, or any portion thereof, to avoid infringement of any patent: To date, Comcast has been unable to locate any such documents. We are still searching and will produce any responsive documents that are hereafter discovered.

- All patents owned or licensed by Comcast that relate to the Accused Instrumentalities or any portion thereof: To date, Comcast has been unable to locate any such documents.

July 31, 2006
Page 3

We are still searching and will produce any responsive documents that are hereafter discovered.

- All patent license agreements executed by Comcast that relate to the Accused Instrumentalities or any portion thereof:  To date, Comcast has been unable to locate any such documents.  We are still searching and will produce any responsive documents that are hereafter discovered.

- All documents evidencing any contribution by Comcast to any patent relating to the Accused Instrumentalities or any portion thereof:  To date, Comcast has been unable to locate any such documents.  We are still searching and will produce any responsive documents that are hereafter discovered.

- All documents relating to Comcast broadband products, including without limitation profitability projections; product definition documents, and marketing research:  Comcast will review its production to identify responsive documents and will search for and produce further responsive documents to the extent they have not already been produced.

- All documents relating to Comcast's revenues, profits, and expenses, including margin and profitability projections and reports, beginning one year prior to Comcast's first manufacture, use, sale, offer for sale, or importation of any of the Accused Instrumentalities or portions thereof:  Comcast has already produced some such documents as part of its initial document production.  *See, e.g.*, COMREM00000001 – COMREM00001180.  Comcast is still searching and will produce any additional responsive documents that are hereafter discovered.

- All documents relating to marketing of the products and services at issue in this litigation, including relevant portions of Comcast's web sites, and relevant print advertisements:  Comcast will review its production to identify responsive documents and will search for and produce further responsive documents to the extent they have not already been produced.

- All cable franchise agreements:  Comcast does not understand how such agreements are relevant to the issues in this case.  Please explain the basis and scope of this request.  In the meantime, Comcast will review its production to identify responsive documents and will search for and produce samples of such documents to the extent they have not already been produced.

- All agreements between Comcast and content providers, such as individual stations carried by Comcast:  Comcast does not understand how such agreements are relevant to the issues in this case.  Please explain the basis and scope of this request.  In the meantime, Comcast will review its production to identify responsive documents and will

July 31, 2006
Page 4

search for and produce samples of such documents to the extent they have not already
been produced.

- All advertising in print, video, or audio for any product or set of products that include
  cable internet or cable television service: Comcast will review its production to identify
  responsive documents and will search for and produce further responsive documents to
  the extent they have not already been produced.

- All documents reflecting offerings combining cable television with cable internet and/or
  telephone service: Comcast will review its production to identify responsive documents
  and will search for and produce further responsive documents to the extent they have not
  already been produced.

- All license agreements between Comcast and any patent holder, wherein the license
  covers cable internet service or cable television service: Comcast has been unable to
  locate any such documents thus far; we are still searching and will produce any
  documents that are hereafter discovered.

- Any communication regarding Rembrandt, including without limitation communications
  regarding any Rembrandt litigation: To date, Comcast has been unable to locate any such
  documents.

<u>Interrogatory Responses:</u>

Comcast will supplement its response to Rembrandt's Interrogatory No. 3, as well as any
other interrogatory that Comcast determines to be incomplete at this time. In addition, in those
interrogatory responses that reference Comcast's document production pursuant to Fed. R. Civ.
P. 33(d), Comcast will reference specific documents by Bates number where it can reasonably do
so. As I indicated during our last discussion however, this process will take some time.
Therefore, Comcast will supplement its interrogatory responses by Friday, August 17, which is
imminently reasonable given the number and broad scope of Rembrandt's requests.

Sincerely,

Eric H. MacMichael

EHM:dc

377989.01

# EXHIBIT C

LAW OFFICES

# KEKER & VAN NEST
### LLP

710 SANSOME STREET
SAN FRANCISCO, CA 94111-1704
TELEPHONE (415) 391-5400
FAX (415) 397-7188
WWW.KVN.COM

ERIC H. MacMICHAEL
EMACMICHAEL@KVN.COM

August 1, 2006

**VIA E-MAIL**

Tom Brown, Esq.                          Michael Bunis, Esq.
Fish & Richardson, P.C.                   Fish & Richardson, P.C.
225 Franklin Street                       225 Franklin Street
Boston, MA  02110                         Boston, MA  02110
Facsimile #:  (617) 542-8906              Facsimile #:  (617) 542-8906
tbrown@fr.com                             mbunis@fr.com

Dear Tom:

　　　Without specifying the reasons why or the subject matter at issue, local counsel for Rembrandt has informed us that Rembrandt intends to file a motion to compel imminently before Judge Ward. This news came as quite a surprise to us, as the parties have just recently engaged in their first (and only) discussion regarding the issues that presumably are the subjects of Rembrandt's contemplated motion. We strongly feel that any such motion would be both premature and unnecessary, especially in light of the fact that we just sent you a letter yesterday detailing Comcast's position on the issues that Rembrandt has raised, agreeing to many of Rembrandt's requests. In this same letter, Comcast invited Rembrandt to meet and confer over any remaining concerns. Filing a motion to compel without even responding to this letter would be hasty, and is likely to burden the Court unnecessarily with discovery issues that can be worked out between the parties. Furthermore, such unannounced and preemptive tactics are inconsistent with Rembrandt's obligations under the Fed.R.Civ.P. and the local rules of this Court to meet and confer in good faith prior to the filing of any motion. *See* Local Rule CV-7(h).

　　　We once again invite Rembrandt to meet and confer over any issues that it feels are pressing at this time. We look forward to hearing from you.

Sincerely,

Eric H. MacMichael

EHM:dc

cc:   Kim Kilbey
      Michael Forman

378086.01

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| REMBRANDT TECHNOLOGIES, LP | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 2:05-CV-443 (TJW) |
| | § | |
| COMCAST CORPORATION, COMCAST | § | (JURY) |
| CABLE COMMUNICATIONS, LLC, AND | § | |
| COMCAST OF PLANO, LP | § | |
| | § | |
| Defendants | § | |

## NOTICE OF APPEARANCE

Notice is hereby given that the undersigned attorney, Andrew W. Spangler, enters his appearance in this matter as counsel for Plaintiff, Rembrandt Technologies, LP, for the purpose of receiving notices and orders from the Court.

DATED this 21st day of August, 2006.

Respectfully submitted,

By:  /s/ Andrew W. Spangler
Andrew W. Spangler
State Bar No. 24041960
BROWN McCARROLL  LLP
1127 Judson Road, Suite 220
Longview, TX 75601-5157
P.O. Box 3999
Longview, Texas 75606-3999
Telephone: (903) 236-9800
Facsimile: (903) 236-8787
E-mail: aspangler@mailbmc.com
ATTORNEYS FOR PLAINTIFF
REMBRANDT TECHNOLOGIES LP

## CERTIFICATE OF SERVICE

I hereby certify that the following counsel of record who are deemed to have consented to electronic service are being served this 21st day of August, 2006, with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).  Any other counsel of record will be served by, electronic mail, facsimile transmission and/or first class mail on this same date.

/s/ Andrew W. Spangler
Andrew W. Spangler

LON:162630.1
52670.1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| REMBRANDT TECHNOLOGIES, LP | § | |
| | § | |
| v. | § | Civil Action No. 2:05cv443 [TJW] |
| | § | JURY DEMANDED |
| COMCAST CORPORATION, COMCAST | § | |
| CABLE COMMUNICATIONS, LLC, and | § | |
| COMCAST OF PLANO, LP | § | |

**NOTICE OF APPEARANCE OF COUNSEL
FOR MOVANT TIME WARNER CABLE, INC.**

Movant, TIME WARNER CABLE, INC., files this Notice of Appearance of Counsel, and hereby notifies the Court that Michael E. Jones of the law firm Potter Minton, A Professional Corporation, 110 N. College, Suite 500, Tyler, Texas 75702, is appearing as counsel for movant Time Warner Cable, Inc. in the above-referenced matter. All pleadings, discovery, correspondence and other material should be served upon counsel at the address referenced above.

Dated: August 28, 2006

Respectfully submitted,

POTTER MINTON
A Professional Corporation
110 N. College, Suite 500 (75702)
P. O. Box 359
Tyler, Texas 75710
903 597 8311
903 593 0846 (Facsimile)
mikejones@potterminton.com


By:/s/ Michael E. Jones
MICHAEL E. JONES
State Bar No. 10929400

ATTORNEYS FOR TIME WARNER
CABLE, INC.

**CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record who have consented to electronic service and are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this the 28th of August, 2006. Any other counsel of record will be served by first class mail.

/s/ Michael E. Jones

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| REMBRANDT TECHNOLOGIES, LP | § | |
| | § | |
| VS. | § | CIVIL CASE NO. 2:05-CV-443 TJW |
| | § | |
| COMCAST CORPORATION | § | JURY DEMAND |

## PLAINTIFF'S MOTION TO EXCEED PAGE LIMITS

Plaintiff respectfully requests leave to file its Reply in Support of Motion to Compel Production of Documents in excess of the page limits imposed by Local Rule CV-7(a)(2). Counsel has attempted to contact counsel for defendant to seek agreement for the relief requested herein but, as reflected in the certificate of conference, counsel did not hear back from opposing counsel at the time of filing.

Good cause exists for the granting of this motion in that plaintiffs motion is within the limits imposed by Local Rule CV-7(a)(2), however, the additional pages are needed for the seven-page deposition excerpt attached thereto.

An order reflecting the relief requested is attached for the Court's convenience.

Respectfully submitted,

By: __/s/ Otis Carroll (by perm. Collin Maloney)
Otis Carroll
State Bar No. 03895700
Wesley Hill
State Bar No. 24032294
IRELAND, CARROLL & KELLEY, P.C.
6101 S. Broadway, Ste. 500
Tyler, Texas 75703
(903) 561-1600
(903) 581-1071 (fax)

ATTORNEYS FOR REMBRANDT
TECHNOLOGIES, LP

CERTIFICATE OF CONFERENCE

Pursuant to Local Rule 7(h), movant has tried contacting opposing counsel regarding

relief requested herein and has been unable to reach opposing counsel, therefore, movant submits

this motion as opposed.

/s/ Collin Maloney

CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document

was served on all parties via electronic delivery and/or United States mail this 29th day of

August, 2006.

/s/ Collin Maloney

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| REMBRANDT TECHNOLOGIES, LP | § | |
| | § | |
| VS. | § | CIVIL CASE NO. 2:05-CV-443 TJW |
| | § | |
| COMCAST CORPORATION | § | JURY DEMAND |

## ORDER GRANTING MOTION TO EXCEED PAGE LIMITS

Before the Court is Plaintiff's Motion to Exceed Page Limits. Having considered the matter, the Court finds the motion meritorious. Accordingly, the Court GRANTS the motion and allows Plaintiff to exceed the page limits in the above-referenced matter.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

REMBRANDT TECHNOLOGIES, LP    §
                              §
VS.                           §    CIVIL CASE NO. 2:05-CV-443 TJW
                              §
COMCAST CORPORATION           §    JURY DEMAND

## PLAINTIFF'S AGREED MOTION TO EXCEED PAGE LIMITS

Plaintiff respectfully requests leave to file its Reply in Support of Motion to Compel

Production of Documents in excess of the page limits imposed by Local Rule CV-7(a)(2).

Good cause exists for the granting of this motion in that plaintiffs motion is within the

limits imposed by Local Rule CV-7(a)(2), however, the additional pages are needed for the

seven-page deposition excerpt attached thereto.  Counsel for defendant agrees to relief requested

herein.  The Reply in Support of Motion to Compel Production of Documents is attached hereto

as Exhibit A.

An order reflecting the relief requested is attached for the Court's convenience.

Respectfully submitted,

By:   /s/ Otis Carroll (by perm. Collin Maloney)
      Otis Carroll
      State Bar No. 03895700
      Wesley Hill
      State Bar No. 24032294
      IRELAND, CARROLL & KELLEY, P.C.
      6101 S. Broadway, Ste. 500
      Tyler, Texas  75703
      (903) 561-1600
      (903) 581-1071 (fax)


      ATTORNEYS FOR REMBRANDT
      TECHNOLOGIES, LP

CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that he has consulted with opposing counsel and that opposing counsel agrees to the relief requested in this motion.

/s/ Collin Maloney

CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was served on all parties via electronic delivery and/or United States mail this 29th day of August, 2006.

/s/ Collin Maloney

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

REMBRANDT TECHNOLOGIES, LP

    v.

COMCAST CORPORATION; COMCAST
CABLE COMMUNICATIONS, LLC; AND
COMCAST OF PLANO, LP

Civil Action No. 2:05-cv-00443-TJW

### PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL PRODUCTION OF DOCUMENTS

## I.     INTRODUCTION

In its Response, Comcast does not dispute the relevance of the documents Rembrandt seeks.  To this day, however, only three weeks away from the commencement of the claim construction process (*see* Docket No. 52, P.R. 4-1), and two and a half months after the court-ordered deadline to produce all relevant documents (*See* Docket No. 28 at ¶ 3(b)), Rembrandt is *still waiting* for the following categories of clearly relevant documents:

- documents, including configuration files and source code, evidencing the technical operation of Comcast's network;
- relevant third party documents in Comcast's possession; and
- complete production of emails having agreed-upon search terms.

Comcast's response is to assert that this dispute is "largely of Rembrandt's own making." (Comcast Opp. (Docket No. 61) at 1.)  But it is Comcast who has created this dispute by failing, to this day, to complete production of this basic information.  Rembrandt, by contrast, has done everything in its power to *avoid* this dispute.  Rembrandt wrote to Comcast's counsel in January, 2006, outlining categories of documents likely to be produced in this case.  Rembrandt wrote numerous other letters outlining issues and deficiencies with Comcast's production, and conferred with Comcast counsel on at least two occasions.  Nothing has worked.

Throughout these discussions, Comcast asserted that it was acting diligently and suggested that the documents would be forthcoming soon.  Now, however, Comcast has admitted that it did not begin to collect a single document from its employees until May 8, 2006—*four months* after Rembrandt's initial letter, and only *one month* before all relevant documents were due to be produced under this Court's docket control order.  This testimony by a 30(b)(6) witness contradicts statements made by Comcast's counsel during the Scheduling Conference.  To be sure, this is a dispute of Comcast's making.

Comcast's efforts to deflect the issue and blame Rembrandt should be rejected.  It should be ordered to produce all relevant documents immediately, and pay Rembrandt's costs associated with filing this motion.

## II.      ARGUMENT

### A.      Comcast's Technical Documents Are Relevant and Should Be Produced

Comcast does not deny that it is in possession of technical documents such as configuration files for the equipment within its network.  (Comcast Opp. (Docket No. 61) at 6.)  Comcast also does not dispute that it is in possession of source code for servers that likely generate such configuration files or other relevant information.  These documents should have been produced long ago.  There can be no dispute that the configuration files for the devices that make up Comcast's network, which likely control many details of the network's operation, are highly relevant to this patent infringement lawsuit .

Comcast's assertion that Rembrandt raised this issue recently has little merit.  These documents were identified in Rembrandt's January 9 letter requesting documents "evidencing the extent to which the Comcast cable network . . . complies with any version of the [relevant] standard."  Rembrandt cannot be expected to identify in minute detail every relevant document in Comcast's possession, custody or control.  Indeed, this Court does not even require Rembrandt to specify categories of documents Comcast must produce.  Rembrandt's January 9 letter was a courtesy aimed to assist Comcast in meeting its deadlines.  It is disingenuous for

Comcast to suggest that Rembrandt's failure to incant certain magic words relieved Comcast of its obligation to produce these highly relevant documents.  They are clearly relevant and should be produced.

### B.  Comcast Has No Excuse for its Extended Delays in Producing E-mails and Third Party Information

Over two months have passed since the deadline for production (*see* Docket No. 28 at ¶ 3(b)), and Comcast has yet to complete production of its e-mail documents and third party documents subject to confidentiality agreements.

Comcast's delay is unreasonable and unacceptable.  To this date, Comcast has failed to give a date certain by which it will have completed its production of relevant e-mail, even though the parties agreed on e-mail search terms long ago.  With respect to purportedly confidential third-party documents, Comcast admits that it sent notice letters requesting permission to disclose third-party confidential information only shortly before June 16, 2006—the date Comcast was required to produce all documents.  (Comcast Opp. (Docket No. 61) at 4.)  As with the other categories of relevant documents, Comcast has still failed to indicate when its production would be complete.

In the face of all this, Comcast still denies that it is "shirking its discovery obligations." (Comcast Opp. at 1.)  Rembrandt cannot agree.  For over seven months, Rembrandt has repeatedly requested that Comcast produce its relevant documents in a timely manner. Comcast's continued failure to do so has prejudiced Rembrandt's ability to begin noticing substantive depositions.  It has also prejudiced Rembrandt's ability to prepare for the claim construction process, which begins on September 20, by depriving Rembrandt of information useful to determine what claim elements will be genuinely in dispute.  *See Vivid Technologies, Inc. v. American Science & Engineering, Inc.,* 200 F.3d 795, 803 (Fed. Cir. 1999).

**C.    Comcast's Rule 30(b)(6) Witness Admitted That Comcast's Document Collection Efforts Were Late, in Contrast to Its Attorney's Statements**

On August 24, 2006, Rembrandt took a Rule 30(b)(6) deposition of Comcast on three noticed topics: Comcast's search for and production of documents in accordance with this Court's scheduling order and the Federal Rules of Civil Procedure (topic 14); Comcast's document collection efforts (topic 32); and the location of all documents relevant to this action (topic 33).

Comcast produced a witness who knew virtually nothing about any of these topics.  She was not familiar with the documents Comcast employees were asked to produce (Ex. A at 63:9-14); she did not know whether Comcast employees searched for any documents that were specifically requested by Rembrandt (*id.* at 70:16-71:1); and she did not know whether a keyword search list was used for documents other than e-mails (*id.* at 76:7-10).

Comcast's witness did know the answer to one important question:

> Q.   And May 8th, 2006 was the first time that Comcast employees were asked to collect documents relevant to this litigation?
> A.   That is correct.

(*Id.* at 83:16-19.)  In other words, even though Rembrandt identified relevant categories of documents on January 9, 2006, Comcast waited until May 8, 2006—four months later, and ***only five weeks before Comcast's document production was due to be completed***—to even request any documents from its own employees.

This witness testimony contradicts statements made by Comcast's attorney at the scheduling conference, held May 2, 2006.  During that conference, Comcast's counsel represented to the Court that a "massive" volume of documents had already been collected:

> I can tell you that we've been working diligently to collect documents.  ***We have a massive volume collected,*** and it will be produced . . . .

(Ex. M. to Docket No. 59 at 9:23-25, emphasis added).  Yet Comcast's Rule 30(b)(6) witness testified that ***no*** documents had been collected before May 8, 2006.  (Ex. A at 83:16-84:20.)

During that same conference, Comcast's counsel represented that Comcast would come "very close" to meeting the document production deadline, and might even meet the deadline. "[W]e can come—we can come very close. We may even be able to meet the June 16 deadline." (Ex. M to Docket No. 59 at 10:25-11:3.)  This statement also came six days before Comcast even ***requested*** documents from its employees.  Comcast does not attempt to explain how it could have expected to meet the June 16 deadline before even having requested documents from its own employees.

### D.     The Parties Have Sufficiently Met and Conferred

Comcast's sole purported defense is that the parties' dispute is "embryonic."  (*See* Comcast Opp. at 2.)  In fact, this discovery dispute matured months ago.  Rembrandt sought to confer about these issues on at least ten occasions before filing its Motion, including by sending eight letters (*see* exhibits A, B, E, F, G, H, K, and L to Rembrandt's Motion to Compel (Docket No. 59)) and participating in at least two conferences regarding the matters in dispute (one held immediately before the May 2, 2006 scheduling conference, and a second telephonic conference held on July 25, 2006).

Even after these efforts, Rembrandt repeatedly sought meeting times for a final telephone conference scheduled for July 31.  Comcast never responded to confirm that scheduled conference.  Instead Comcast's counsel sent a letter after the close of business on July 31, which once again failed to give dates certain by which any of Rembrandt's long-standing requests would be addressed.  Under these circumstances, Rembrandt's only remaining option was to bring this matter to the Court's attention.

## III.    CONCLUSION

For the foregoing reasons and those set forth in its memorandum in support of its motion, Rembrandt respectfully requests that this Court grant Rembrandt's motion to compel, order Comcast to produce all relevant documents immediately, and require Comcast to pay Rembrandt's costs associated with filing this motion.

Dated:  August 29, 2006                    Respectfully submitted,

                                           FISH & RICHARDSON P.C.


                                    By:  /s/ Otis Carroll (by permission Collin Maloney)
                                           Otis Carroll
                                           State Bar No. 03895700
                                           Colin Maloney
                                           State Bar No. 00794219
                                           IRELAND, CARROLL & KELLEY, P.C.
                                           6101 S. Broadway, Suite 500
                                           Tyler, TX 75703
                                           Tel: (903) 561-1600
                                           Fax: (903) 581-1071
                                           Email: fedserv@icklaw.com

                                           Frank E. Scherkenbach
                                           Lawrence K. Kolodney
                                           Michael H. Bunis
                                           Denis Ticak
                                           Thomas A. Brown
                                           FISH & RICHARDSON P.C.
                                           225 Franklin Street
                                           Boston, MA 02110
                                           Tel: 617-542-5070
                                           Fax: 617-542-8906

                                           Timothy Devlin
                                           FISH & RICHARDSON P.C.
                                           919 N. Market Street, Suite 1100
                                           Wilmington, DE 19899-1114
                                           Tel: 302-652-5070
                                           Fax: 302-652-0607

                                           Alan D. Albright
                                           State Bar # 00973650
                                           FISH & RICHARDSON P.C.
                                           One Congress Plaza, 4th Floor
                                           111 Congress Avenue
                                           Austin, TX 78701
                                           Tel: 512-391-4930
                                           Fax: 512-591-6837

                                    Counsel for Plaintiff
                                    REMBRANDT TECHNOLOGIES, LP

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on August 29, 2006 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(a)(3).  Any other counsel of record will be served by U.S. mail.

Brian L. Ferrall, Esq.                   Attorneys for Defendants
Leo L. Lam, Esq.                         Comcast Corporation, Comcast Cable
Eric MacMichael, Esq.                    Communications, LLC and Comcast of
Keker & Van Nest, L.L.P.                 Plano, LP
710 Sansome Street
San Francisco, CA 94111-1704


Jennifer Haltom Doan                     Attorneys for Defendants
John Peyton Perkins, III                 Comcast Corporation, Comcast Cable
Haltom & Doan, LLP                       Communications, LLC and Comcast of
6500 N. Summerhill Road                  Plano, LP
Crown Executive Center, Suite 1A
P. O. Box 6227
Texarkana, TX 75505-6227

21403999.2.doc

Page 1

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

REMBRANDT TECHNOLOGIES, LP,               )
                                          )
            Plaintiff,                    )
                                          ) Civil Action No.
v.                                        ) 2:05-cv-00443-TJW
                                          )
COMCAST CORPORATION, COMCAST              )
CABLE COMMUNICATIONS, LLC AND             )
COMCAST OF PLANO, LP,                     )
                                          )
            Defendants.                   )

            Videotape deposition of ROSEMARIE PIERCE
taken pursuant to notice at the Hotel Sofitel, Nice
Room, 120 South 17th Street, Philadelphia,
Pennsylvania, beginning at 9:25 a.m., on Thursday,
August 24, 2006, before Kurt A. Fetzer, Registered
Diplomate Reporter and Notary Public.

APPEARANCES:

        THOMAS A. BROWN, ESQ.
        FISH & RICHARDSON, P.C.
          225 Franklin Street
          Boston, Massachusetts  02110
          For the Plaintiff

        ERIC MacMICHAEL, ESQ.
        KEKER & VAN NEST, LLP
          710 Sansome Street
          San Francisco, California  94111
          For the Defendants

            WILCOX & FETZER
1330 King Street -  Wilmington, Delaware 19801
            (302) 655-0477
            www.wilfet.com

Page 63

1    were asked to produce.

2       Q.   So are you familiar with what they were asked

3    to produce?

4       A.   I did not review the actual list of what they

5    were asked to produce, but it is my understanding that

6    they were asked to produce all relevant documents

7    regarding the accused products in their operations and

8    functionality.

9       Q.   I understand that you haven't reviewed the

10   list.  But are you familiar with everything that they

11   were asked to produce?

12              MR. MacMICHAEL:  That's a yes or no

13   question.

14      A.   No.

15      Q.   You're not.

16              What instructions were employees given to

17   determine what documents were relevant?

18              MR. MacMICHAEL:  Objection.  Objection.

19   Vague as to relevant.  Calls for a legal conclusion

20   and I'm going to object on attorney-client and

21   attorney work product privilege.

22              Instructions to individual employees as to

23   what is relevant reflect attorney work product and in

24   many cases attorney-client communications, so I am

Page 70

1    question, the legal hold listed a lot of categories of

2    documents to collect.  I'm not an IP paralegal.  I

3    don't understand about patents.  So I do not know if

4    that list included number 1 specifically or number 2

5    specifically, but I do know that it contained requests

6    for relevant documents regarding the accused products

7    and that if they had questions they were to contact

8    the legal department.

9        Q.   Do you know whether Comcast employees searched

10   for documents responsive to the request in paragraph 1

11   of Exhibit 3?

12            MR. MacMICHAEL:  Objection.  Asked and

13   answered.

14       A.   Wasn't that the same question you just asked

15   me?

16       Q.   Well, I just need to know yes or no whether

17   Comcast employees searched for documents listed in

18   paragraph 1 of Exhibit 3 or whether you don't know?

19       A.   Then I would have to say that I do not know.

20       Q.   Do you know if Comcast employees searched for

21   documents listed in paragraph 2 of Exhibit 3?

22            MR. MacMICHAEL:  Same objection to the

23   last question.

24       A.   I would have to say I don't know for number 2,

Page 71

```
 1    number 3, number 4 and number 5.

 2       Q.   Okay.  That makes it faster.

 3              Does Comcast have a document retention

 4    policy?

 5              MR. MacMICHAEL:  Objection.  Vague as to

 6    time.

 7              You can answer.

 8       A.   It presently does.

 9       Q.   How long has Comcast had a document retention

10    policy?

11              MR. MacMICHAEL:  Objection.  Calls for

12    speculation.

13              You can answer, if you know.

14       A.   It has had a retention policy during my tenure.

15    I would not know prior to my tenure with the company.

16       Q.   Has this document -- strike that.

17              Have any Comcast -- strike that.

18              Has the Comcast document retention policy

19    changed during your tenure at Comcast?

20       A.   It has been updated, yes.

21       Q.   Has Comcast produced its document retention

22    policy?

23       A.   I do not know.

24              THE WITNESS:  Was it requested?
```

Page 76

1    list was used for e-mails.

2      Q.   And is it an accurate statement that you do not

3    know whether a keyword search list was used for any

4    other documents other than e-mails?

5           MR. MacMICHAEL:  I'm sorry.  Could you

6    repeat the question?

7      Q.   Is it an accurate summary of your testimony to

8    say that you do not know whether a keyword search list

9    was used for documents other than e-mails?

10     A.   I do not know for certain.

11     Q.   With respect to -- well, strike that.

12          Was a keyword search done on e-mails?

13          MR. MacMICHAEL:  Objection.  Asked and

14   answered.

15     A.   It's my belief or it's my understanding that it

16   was, but I do not know for certain.  I was not

17   involved in that aspect of the production.

18          I know that the list of employees' e-mail

19   boxes were snapshotted, they took a snapshot of them

20   and that was, the whole snapshot was produced.

21     Q.   Now, the employees whose e-mail boxes were

22   snapshotted, are those employees all listed on

23   Exhibit 1?

24     A.   I believe so, yes.

Page 83

1    is accurate.

2      A.   It's my understanding that it is, yes.

3      Q.   So it's your understanding that, is it your

4    understanding that employees were first notified of

5    what documents were relevant on April 18, 2005?

6      A.   2006.

7              MR. MacMICHAEL:  Objection.  I'm sorry.

8    Objection.  Vague as to relevant.  Vague as to notify.

9              You can answer if you understand.

10     A.   The employees were sent the notice of the legal

11   hold on April 18th of '06.

12     Q.   So April 18, 2006 was the first time that

13   Comcast employees were asked to retain documents

14   relevant to this litigation?

15     A.   I believe so, yes, formally.

16     Q.   And May 8th, 2006 was the first time that

17   Comcast employees were asked to collect documents

18   relevant to this litigation?

19     A.   That is correct.

20     Q.   And e-mails were collected between May and July

21   of 2006?

22     A.   Sometime in that time frame, yes.  That's when

23   the snapshots were taken.

24     Q.   What does specific follow-up document

Page 84

```
 1   collection efforts refer to?

 2            MR. MacMICHAEL:  Objection.  The document

 3   speaks for itself.

 4            You can testify as to your understanding.

 5   A.    That's the time period that we actually did the

 6   collection, when they were sending them in and we were

 7   sending them out to the vendors or to the vendor and

 8   they were doing the e-mail snapshots to the vendor.

 9   The vendors were taking the electronic documents off

10   of our servers.

11   Q.    Were any documents collected before May 8, 2006

12   regarding this litigation?

13   A.    The patents were reviewed during that time.

14   Q.    Were any documents collected from Comcast

15   employees other than attorneys prior to May 8, 2006?

16   A.    I do not know.

17   Q.    To your knowledge, were any documents prior to

18   May 8, 2006 collected from Comcast employees other

19   than attorneys?

20   A.    I'm not aware of any.  I don't know.

21            (Plaintiff's Deposition Exhibit No. 5 was

22   marked for identification.)

23   BY MR. BROWN:

24   Q.    I'm showing you what's been marked as Exhibit
```

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| REMBRANDT TECHNOLOGIES, LP | § | |
| | § | |
| VS. | § | CIVIL CASE NO. 2:05-CV-443 TJW |
| | § | |
| COMCAST CORPORATION | § | JURY DEMAND |

## ORDER GRANTING MOTION TO EXCEED PAGE LIMITS

Before the Court is Plaintiff's Agreed Motion to Exceed Page Limits. Having considered

the matter, the Court finds the motion meritorious. Accordingly, the Court GRANTS the motion

and allows Plaintiff to exceed the page limits in the above-referenced matter.

# SEALED

# DOCUMENT

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

REMBRANDT TECHNOLOGIES, LP

v.

COMCAST CORPORATION; COMCAST
CABLE COMMUNICATIONS, LLC; AND
COMCAST OF PLANO, LP

Civil Action No. 2:05-CV-443 (TJW)

## NOTICE OF NON-OPPOSITION

Notice is hereby given that Plaintiff does not oppose the request for extension of page

limits in Docket No. 67, Time Warner Cable, Inc.'s Motion for Leave to Exceed the Page Limits

Regarding the Motion to Disqualify Fish & Richardson, P.C. and Memorandum of Law in

Support.

DATED this 31st day of August, 2006.

Respectfully submitted,

By:  /s/ Otis W. Carroll by permission Elizabeth L. DeRieux
Otis W. Carroll, Jr. – Lead Attorney
Ireland Carroll & Kelley, PC
6101 S Broadway
Suite 500
Tyler, TX 75703
Telephone:  (903) 561-1600
Facsimile: (903) 581-1071
E-mail: fedserv@icklaw.com

Franklin Jones, Jr.
Jones & Jones - Marshall
201 W Houston St
PO Drawer 1249
Marshall, TX 75670
Telephone: (903) 938-4395
Facsimile: (903) 938-3360
E-mail: maizieh@millerfirm.com

Robert Christopher Bunt
Parker & Bunt, P.C.
100 East Ferguson, Ste. 1114
Tyler, TX 75702
Telephone: (903) 531-3535
Facsimile: (903) 533-9687
E-mail: cbunt@cox-internet.com

Robert M. Parker
Parker & Bunt, P.C.
100 E. Ferguson
Suite 1114
Tyler, TX 75702
Telephone: (903) 533-9288
Facsimile: (903) 533-9687
E-mail: rmparker@cox-internet.com

S. Calvin Capshaw
State Bar No. 03783900
Elizabeth L. DeRieux
State Bar No. 05770585
Andrew W. Spangler
State Bar No. 24041960
BROWN McCARROLL  LLP
1127 Judson Road, Suite 220,
P.O. Box 3999 (75606-3999)
Longview, Texas 75601-5157
Telephone: (903) 236-9800
Facsimile: (903) 236-8787
E-mail: ccapshaw@mailbmc.com
E-mail: ederieux@mailbmc.com
E-mail: aspangler@mailbmc.com

ATTORNEYS FOR PLAINTIFF

OF COUNSEL:
Frank E. Scherkenbach
Lawrence K. Kolodney
FISH & RICHARDSON, P.C.
225 Franklin Street
Boston, Massachsetts 02110
Telephone:  (617) 542-5070
Facsimile: (617) 542-8906
E-mail:  scherkenbach@fr.com
E-mail:  kolodney@fr.com

Alan D. Albright
State Bar No. 00973650
FISH & RICHARDSON, P.C.
One Congress Plaza
4th Floor
111 Congress Avenue
Austin, Texas 78701
Telephone: (512) 391-4930
Facsimile: (512) 391-6837
E-mail: albright@fr.com

Timothy Devlin
Frederick Yu
FISH & RICHARDSON
919 N. Market Street, Suite 1100
P.O. Box 1114
Wilmington, Delaware 19899
Telephone: (302) 652-5070
Facsimile: (302) 652-0607
E-mail: yu@fr.com
E-mail: tdevlin@fr.com

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served this 31st day of August, 2006, with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3). Any other counsel of record will be served by electronic mail, facsimile transmission and/or first class mail on this same date.

/s/Elizabeth L. DeRieux
Elizabeth L. DeRieux

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| REMBRANDT TECHNOLOGIES, LP | § | |
| | § | |
| v. | § | Civil Action No. 2:05cv443 [TJW] |
| | § | JURY DEMANDED |
| COMCAST CORPORATION, COMCAST | § | |
| CABLE COMMUNICATIONS, LLC, and | § | |
| COMCAST OF PLANO, LP | § | |

**NOTICE OF APPEARANCE OF ADDITIONAL COUNSEL
FOR MOVANT TIME WARNER CABLE INC.**

Movant, Time Warner Cable Inc., files this Notice of Appearance of Additional Counsel, and hereby notifies the Court that Diane V. DeVasto of the law firm Potter Minton, A Professional Corporation, 110 N. College, Suite 500, Tyler, Texas 75702, is appearing as additional counsel for Time Warner Cable Inc. in the above-referenced matter. All pleadings, discovery, correspondence and other material should be served upon counsel at the address referenced above.

Dated: September 5, 2006                         Respectfully submitted,


                                                 /s/ Diane V. DeVasto
                                                 Diane V. DeVasto
                                                 State Bar No. 05784100
                                                 dianedevasto@potterminton.com
                                                 POTTER MINTON
                                                 A Professional Corporation
                                                 110 N. College, Suite 500
                                                 Tyler, Texas 75702
                                                 903/597-8311
                                                 903/593-0846 Facsimile

                                                 ATTORNEYS FOR
                                                 TIME WARNER CABLE INC.

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who have consented to electronic service and are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this the 5th of September, 2006. Any other counsel of record will be served by first class mail.

*/s/Diane V. DeVasto*

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| **REMBRANDT TECHNOLOGIES, LP** | § | |
| | § | |
| **Plaintiff** | § | |
| | § | **Civil Action No. 2:05-cv-443-TJW** |
| **v.** | § | **Jury** |
| | § | |
| **COMCAST CORPORATION, COMCAST** | § | |
| **CABLE COMMUNICATIONS, LLC, and** | § | |
| **COMCAST OF PLANO, LP** | § | |

## DEFENDANT COMCAST'S UNOPPOSED MOTION TO EXCEED PAGE LIMIT

The Comcast Defendants respectfully move to file Defendant Comcast's Surreply to Plaintiff's Motion to Compel Production of Documents in excess of the page limit, in that it exceeds five (5) pages including attachments.

Counsel for Comcast has discussed this Motion with counsel for the plaintiff, and it is unopposed.

FOR ALL THESE REASONS, Defendant Comcast respectfully requests the Court to enter an Order granting Defendant Comcast's Unopposed Motion to Exceed Page Limit and instruct the Clerk of Court to file Defendant Comcast's Surreply to Plaintiff's Motion to Compel Production of Documents, as attached hereto as Exhibit "A".

Respectfully submitted,

_____/s/_____
Jennifer Haltom Doan
Texas Bar No. 08809050
John Peyton Perkins, III
Texas Bar No. 24043457
HALTOM & DOAN, LLP
6500 N. Summerhill Road, Suite 1A
P. O. Box 6227
Texarkana, TX 75505-6227
Telephone: 903-255-1000
Facsimile: 903-255-0800
E-mail: jdoan@haltomdoan.com

Brian L. Ferrall
Leo L. Lam
Eric H. MacMichael
Steven K. Yoda
Keker & Van Nest, LLP
710 Sansome Street
San Francisco, CA 94111-1704
Telephone:  415-676-2235
Facsimile:  415-397-7188

**ATTORNEYS FOR DEFENDANTS
COMCAST CORPORATION,
COMCAST CABLE
COMMUNICATIONS, LLC AND
COMCAST OF PLANO, LP**

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  As such, this motion was served on all counsel who are deemed to have consented to electronic service.  Local Rule CV-5(a)(3)(A).  Pursuant to FED. R. CIV. P. 5(d) and Local Rule CV-5(e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by certified mail, return receipt requested**, on this 6th day of September, 2006.**

_____/s/_____
Jennifer Haltom Doan

# EXHIBIT A

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| **REMBRANDT TECHNOLOGIES, LP** | § | |
| | § | |
| **Plaintiff** | § | |
| | § | |
| **v.** | § | **Civil Action No. 2:05-cv-443-TJW** |
| | § | **Jury** |
| **COMCAST CORPORATION, COMCAST** | § | |
| **CABLE COMMUNICATIONS, LLC, and** | § | |
| **COMCAST OF PLANO, LP** | § | |

**DEFENDANT COMCAST'S SURREPLY TO PLAINTIFF'S
MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

Defendants Comcast Corporation, Comcast Cable Communications, LLC, and Comcast of Plano, LP (collectively, "Comcast") respectfully file this Surreply to Plaintiff's Motion to Compel Production of Documents and would respectfully show the Court as follows:

### I.     INTRODUCTION

In its reply brief, Rembrandt fails to respond to every major issue raised by Comcast's Opposition.  First, Rembrandt ignores the fact that Comcast has already produced more than 59,000 e-mails and attachments to date in this litigation, and that the remainder of Comcast's e-mails will likely be produced before this motion is even heard.  Second, Rembrandt does not, and cannot, dispute that Comcast does not design the devices that are accused in this case, and as such, does not maintain or have access to any third-party source code.  Third, nothing Rembrandt cites suggests that Rembrandt raised the relevance of so-called "configuration files" prior to Rembrandt's letter of July 27, 2006 – mere days before this motion was filed.  Fourth, Rembrandt makes no showing of prejudice from Comcast's production of those files in the next few weeks, as Comcast is in the process of doing.  Finally, Rembrandt says nothing about Comcast's efforts to produce as many third party confidential documents as possible without violating contractual obligations, including Comcast's sending notice letters to over 20

companies on May 19, 2006, and spending thousands of dollars to review documents from the objectors.

Instead, Rembrandt devotes the bulk of its reply brief to the *timing* of the production that Comcast already completed, which has no bearing whatsoever on the issues raised (or the relief requested) in Rembrandt's Motion.  Rembrandt has not been seriously inconvenienced from the minor delays in Comcast's document production, and this motion should never have been filed.

## II.    ARGUMENT

### A.    Comcast Is Producing All Relevant E-Mail Communications

As explained in its opposition brief, Comcast has made diligent efforts to produce all e-mail communications responsive to Rembrandt's search terms.  In fact, Comcast has produced over 59,000 e-mails and attachments to date, and the remainder are currently being formatted by Comcast's outside vendor and will be produced shortly.  Contrary to Rembrandt's apparent beliefs, however, it takes time to process and format an e-mail production of this magnitude, and the speed at which this is completed is not entirely in Comcast's control.  Rembrandt will have all responsive e-mail communications in a matter or days, which is the same timeframe Comcast has said from the beginning.  Further, Rembrandt has made no showing of prejudice from this short delay.[1]  Consequently, Rembrandt's motion should be denied.

### B.    Comcast Has No Source Code for the Accused Devices And Has Responded Diligently To Rembrandt's Request for Configuration Files.

Based on interviews with several Comcast custodians, Comcast has confirmed that it does not have possession of any source code or firmware, as those terms are commonly used, relevant to the operation of the accused devices.  Furthermore, based on a review of agreements

---

[1] Contrary to the stance it has taken in this motion, Rembrandt itself has been producing documents on a "rolling" basis throughout this litigation.  For example, Rembrandt produced approximately 800 pages of responsive documents on September 1, 2006, with no explanation for their delay.  Similarly, Rembrandt produced 6,400 pages on July 10th, and another 800 on July 31st – both times well after the discovery deadline of June 16, 2006. Rembrandt can hardly be heard to complain about such conduct by Comcast.

with key vendors, Comcast is satisfied that it does not have the right to request or inspect any third-party source code relating to these devices. Once again, this is what Comcast has said from the beginning, and Rembrandt, who is in possession of the same agreements with the key equipment vendors, has not cited any provision to the contrary.

Perhaps sensing that source code is a dead issue, Rembrandt shifts course in its reply brief and argues that Comcast has delayed in producing so-called "configuration files" for the accused devices. (Reply brief at 2-3.) As the evidence makes clear, Rembrandt never raised the configuration files prior to Rembrandt's letter of July 27, 2006. (*See* Ex. L to Rembrandt's opening brief.) Since Rembrandt's July 27th letter, Comcast has diligently investigated this issue and has identified certain configuration files used in Comcast's network. These files, which are quite voluminous (approximately 400,000 pages), are currently being collected and will be produced shortly. Any claim that Comcast has delayed unnecessarily in collecting these documents is simply not true. And again, given the state of this case, Rembrandt has not identified any prejudice from the production of these files in September, as Comcast now anticipates. The motion should be denied as moot as to these files.

Much of Rembrandt's motion in this regard is dedicated toward attempting to show how these configuration files were requested long ago. While irrelevant to the motion itself, Rembrandt's accusations require correction. Rembrandt claims that its letter of January 9, 2006 requesting all documents "evidencing the extent to which the Comcast cable network … complies with any version of the [relevant] standard" was sufficient to identify the relevance of these particular files. (Reply at 2.) Apart from the dubiousness of this claim on its face, Rembrandt ignores the fact that it did not even identify which aspects of Comcast's network were at issue in this case until May of 2006 when it served its first set of interrogatories and preliminary infringement contentions. Rembrandt's January 9 letter was so impossibly vague, with potential application to an enormous network of equipment and devices, that Comcast could

not possibly know that cable modem configuration files were demanded.   Indeed, if configuration files are so "highly relevant", as Rembrandt now contends, it is odd that Rembrandt waited **over 10 months** after this case was filed before making any specific mention of this.

Similarly, Rembrandt's statement that Comcast "does not dispute that it is in possession of source code for servers that likely generate such configuration files" (Reply at 2) is just wrong, both as to what Comcast has said previously on this issue, and as to whether Comcast does in fact have possession of such source code.  Based on Comcast's recent investigation, it has learned that certain vendors do provide Comcast with the software that is used to generate these configuration files.  Comcast does <u>not</u> possess or have access to the source code underlying this operation, however.  Comcast only has copies of executable code, and only for some vendors.  And, even though such software does not seem relevant, Comcast has already offered to produce whatever executable code it has in order to resolve this issue. (*See* Ex. 1.)

### C.      Comcast Did Not Delay In Its Document Collection Efforts

Despite having no bearing on the relief requested in this motion, Rembrandt takes issue with the timing of Comcast's document collection efforts as deduced from a recent statement from Comcast's 30(b)(6) witness.  (Reply at 4-5)  Here again, Rembrandt presents a very skewed version of the facts.

In the months leading up to the Court's scheduling conference on May 2, 2006, Comcast's outside attorneys were engaged in collecting thousands of documents for this case in conjunction with collection efforts for other ongoing litigations, including *Caritas Technologies, Inc. v. Comcast Corporation* (Civil Action No. 2-05CV-339DF.)  At the time, it was thought that the *Caritas* document collection would overlap with this case, based on Rembrandt's identification in the complaint of high speed data services and VoIP as accused services.  (*See* Complaint at ¶¶ 23, 29.)  VoIP is at the center of the *Caritas* case, and shares some of the same

equipment as the high speed data network. Consequently, when Comcast's outside counsel stated at the scheduling conference that a large volume of documents had already been collected for this case, he was referring to the ongoing efforts to search for and review documents collected for the *Caritas* case, and from the *Caritas* production. Comcast's 30(b)(6) witness has not been involved with this aspect of the *Caritas* matter or with outside counsel's efforts in this regard, and thus had no way of knowing.

Comcast began its internal document collection for this case on May 8, 2006. While Rembrandt tries to portray this as delinquent or tardy, Comcast could not realistically have started its collection any sooner. Until Rembrandt served its first set of interrogatories on May 3, 2006, and its preliminary infringement contentions on May 12, 2006, Comcast was not even aware of the devices or products that were at issue in this case. (*See* Exhs. A and B to Rembrandt's First Set of Interrogatories, attached hereto as Ex. 2.) Indeed, prior to the initial Scheduling Conference in this case, counsel for Comcast asked if Rembrandt's counsel could provide its infringement contentions earlier than the rules allowed to allow Comcast to begin document collection earlier. Rembrandt's counsel declined. Thus, May 3, 2006 marked the first time in this case that Rembrandt specified with any measure of detail which components of Comcast's network it was accusing of infringement. Comcast began its internal document collection promptly thereafter. That Rembrandt seeks to portray Comcast's efforts in this regard as "late" is altogether mystifying.

## III.   <u>CONCLUSION</u>

Comcast respectfully requests that the Court deny Rembrandt's Motion to Compel Production of Documents.

Respectfully submitted,

_____/s/_____

Jennifer Haltom Doan
Texas Bar No. 08809050
John Peyton Perkins, III
Texas Bar No. 24043457
HALTOM & DOAN, LLP
6500 N. Summerhill Road, Suite 1A
P. O. Box 6227
Texarkana, TX 75505-6227
Telephone:  903-255-1000
Facsimile:  903-255-0800
E-mail:  jdoan@haltomdoan.com

Brian L. Ferrall
Leo L. Lam
Eric H. MacMichael
Steven K. Yoda
Keker & Van Nest, LLP
710 Sansome Street
San Francisco, CA 94111-1704
Telephone:  415-676-2235
Facsimile:  415-397-7188

**ATTORNEYS FOR DEFENDANTS**
**COMCAST CORPORATION,**
**COMCAST CABLE**
**COMMUNICATIONS, LLC AND**
**COMCAST OF PLANO, LP**

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  As such, this motion was served on all counsel who are deemed to have consented to electronic service.  Local Rule CV-5(a)(3)(A).  Pursuant to FED. R. CIV. P. 5(d) and Local Rule CV-5(e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by certified mail, return receipt requested**, on this 6ᵗʰ day of September, 2006.**

_____/s/_____

Jennifer Haltom Doan

# EXHIBIT 1

LAW OFFICES

# KEKER & VAN NEST
### LLP

**710 SANSOME STREET**
**SAN FRANCISCO, CA 94111-1704**
**TELEPHONE (415) 391-5400**
**FAX (415) 397-7188**
**WWW.KVN.COM**

ERIC H. MacMICHAEL
EMACMICHAEL@KVN.COM

September 1, 2006

**VIA E-MAIL**

Tom Brown, Esq.                          Michael Bunis, Esq.
Fish & Richardson, P.C.                  Fish & Richardson, P.C.
225 Franklin Street                      225 Franklin Street
Boston, MA  02110                        Boston, MA  02110
Facsimile #:  (617) 542-8906             Facsimile #:  (617) 542-8906
tbrown@fr.com                            mbunis@fr.com

Re:  Rembrandt Technologies, LP v. Comcast Corporation, et al.

Dear Michael and Tom:

I write in regards to several discovery issues that have been raised recently.

Source Code

Comcast has confirmed that it does not have possession of any source code or firmware, as those terms are traditionally used, that run on the accused devices.  Furthermore, based on a review of agreements with key vendors, as well as interviews with several Comcast custodians, Comcast does not believe it has the right to request or inspect any third-party source code.

Configuration Files for CMTS / Cable Modem Products

Based on your letter of July 27th, Comcast has investigated the existence of so-called configuration files for its Cable Modem Termination Systems or Cable Modems (collectively, "cable modem products").  We have identified the existence of electronic files used to configure those cable modem products that are currently deployed in Comcast's network.  Because the number of files is quite large, we are currently determining the most efficient way of gathering this information to produce.  We will inform you shortly as to when you can expect it, but we anticipate that it will be ready for production by Friday, September 15th.

Additionally, while Comcast does not possess any software relating to the operation of the cable modem products, it has learned that certain vendors do provide Comcast with software that is used to generate these configuration files.  Comcast does <u>not</u> possess or have access to the source code underlying this software, however.  Comcast only has copies of executable code, and only for some vendors.  While we do not see the relevance of software used to generate configuration files, if you would like copies of this executable code, we will make every effort to collect it.

September 1, 2006
Page 2

Configuration Files for 8VSB Digital Receiver Products

Comcast does not possess or maintain software or configuration files for its 8VSB Digital
Receivers. The receivers are configured manually when they are installed at the head-end, and
subsequent software or firmware upgrades are typically installed directly on the device by the
vendor and/or through web-based access that is hosted on the device itself. Comcast has no right
(or business reason) to maintain copies of these software / firmware upgrades and, accordingly, it
does not.

Agreements with Content Providers

During our conversation on August 28, 2006, you requested copies of all agreements with
content / service providers dating as far back as the earliest issue date of the patents-in-suit.
Before Comcast undertakes the burden of searching for and collecting such agreements, we
would ask Rembrandt to articulate more fully the contemplated relevance of these agreements.
As I'm sure you realize, the accused digital receivers play no part in the distribution of most of
the video content on Comcast's network. In it's letter of August 16, 2006, Rembrandt makes the
bare assertion that these agreements are "relevant because they relate to the revenues that
Comcast receives for analogous services." Such is a fairly liberal standard for relevance that, if
applied across the board, would result in very few aspects of Comcast's business being
considered irrelevant. Please explain Rembrandt's theory as to how these agreements are
relevant to this case, and Comcast will evaluate in a timely manner.

Cable Franchise Agreements

As explained during our conversation on August 28, 2006, although these agreements do not
seem relevant at all, Comcast has produced a sample-set of franchise agreements. Given the
uniform nature of these agreements, it is not clear to Comcast why Rembrandt needs a copy of
every agreement for each region across the country, which number in the hundreds if not
thousands. Please explain the relevance of a complete set of these agreements. Further, I noted
that these are public documents which Rembrandt can obtain directly from the appropriate city /
municipality grantor. Therefore, it seems that the burden of collecting these documents is the
same for both parties.

License and Royalty Agreements

During our conversation on August 28, 2006, you requested copies of all license and royalty
agreements involving Comcast that relate to the accused products or services. We note that
many of the vendor agreements that we have already produced contain the relevant licenses for
these products. We are currently searching for any additional agreements, and will produce them
as soon as we are able to.

September 1, 2006
Page 3

Please do not hesitate to contact me should you have any additional questions.

Sincerely,

Eric H. MacMichael

EHM:dc

cc:    Kim Kilbey
       Michael Forman

# EXHIBIT 2

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

REMBRANDT TECHNOLOGIES, LP

v.

COMCAST CORPORATION, COMCAST
CABLE COMMUNICATIONS, LLC, and
COMCAST OF PLANO, LP

Civil Action No. 2:05-cv-00443-TJW

---

## PLAINTIFF REMBRANDT TECHNOLOGIES, LP'S FIRST SET OF INTERROGATORIES

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiff Rembrandt Technologies, LP requests that Defendants Comcast Corporation, Comcast Cable Communications, LLC, and Comcast of Plano, LP answer the following interrogatories separately, fully, and under oath, within 30 days of service of this request. Defendants are subject to a duty to timely supplement all responses to these interrogatories in accordance with Rule 26(e) of the Federal Rules of Civil Procedure.

## A. DEFINITIONS

1. "Plaintiff" or "Rembrandt" shall mean Rembrandt Technologies, LP including without limitation all of its corporate locations, and all predecessors, and affiliates, and all past or present directors, officers, agents, representatives, employees, consultants, and attorneys.

2. "Defendants," "Comcast," "you," or "your" means Comcast Corporation, Comcast Cable Communications, LLC, and Comcast of Plano, LP, individually and collectively, including without limitation all of their corporate locations, and all predecessors, and affiliates, and all past or present directors, officers, agents, representatives, employees, consultants, and attorneys,

entities acting in joint-venture or partnership relationships with any one or more of them, and others acting on behalf of any one or more of them.

3.   Any reference to any individual person, either singularly or as a part of a defined group, includes that individual person's employees, agents, successors, assignees, heirs, and representatives.

4.   The term "all" includes and encompasses "any."

5.   The words "and" and "or" shall be construed conjunctively or disjunctively, whichever makes the request most inclusive.

6.   The "'627 patent" shall mean U.S. Patent No. 5,243,627.

7.   The "'631 patent" shall mean U.S. Patent No. 5,852,631.

8.   The "'858 patent" shall mean U.S. Patent No. 5,719,858.

9.   The "'819 patent" shall mean U.S. Patent No. 4,937,819.

10. "Identify" means:

  (a) (with respect to Persons) to give, to the extent known, the Person's full name, present or last known address, and when referring to a natural Person, additionally, the present or last known place of employment.

  (b) (with respect to Documents) to give, to the extent known, the (i) type of Document, (ii) general subject matter, (iii) date of the Document, and (iv) author(s), addressee(s), and recipient(s).

11. "Person" means any natural person or any business, legal, or governmental entity or association.

12. "Document" shall be synonymous in meaning and equal in scope to the broadest meaning provided by Rule 34 of the Federal Rule of Civil Procedure 34, including, without limitation, electronic or computerized data compilations. A draft or non-identical copy is a separate Document within the meaning of this term.

13. "Thing" means any tangible object other than a Document including, without limitation, objects of every kind and nature, as well as prototypes, models, drafts, or specimens thereof.

14. "Communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise, and without limitation as to means or method).

15. "Prior Art" means that information which is defined by the broadest interpretation of 35 U.S.C. § 102 and 103, including, without limitation, information or knowledge that is accessible to a person of ordinary skill in the art, including that which would be obvious from such information or knowledge.

16. The terms "concern" and "concerning" mean relating to, referring to, describing, evidencing, constituting, embodying, containing, comprising, indicating, identifying, describing, discussing, involving, evidencing, or otherwise pertaining to the referenced subject.

17. The phrase "state in detail" means to state and describe, with specificity, each and every fact, circumstance, incident, act, omission, event, date, and/or legal contention relating to the matters inquired of in said interrogatory.

18. An "instrumentality" includes, without limitation, a method, process, system or apparatus.

19. A patent claim "covers" an instrumentality if the instrumentality infringes the claim, or would infringe the claim but for the existence of a license.

20. Used in reference to a patent or patent application, the term "related" means a patent or patent application that is related to the referenced patent in any way, including any parent, continuation, continuation-in-part, divisional, reexamination, reissue, or foreign counterpart patent or application.

21. The "patents-in-suit" refer to the '627 patent, the '631 patent, the '858 patent, the '819 patent, as well as U.S. Patent No. 5,710,761, U.S. Patent No. 5,103,227, and any patents or patent applications related to these patents.

22. "Infringed," "infringement" or "infringe" refers to any form of infringement actionable under United States law, including direct infringement, contributory infringement, inducement to infringe, literal infringement, and infringement under the doctrine of equivalents.

23. The singular and masculine form of any noun or pronoun shall embrace and be read and applied as embracing the plural, the feminine and the neuter, except where circumstances clearly make it inappropriate.

24. The "Relevant DOCSIS-Compliant Instrumentalities" are Comcast's cable network, and methods of delivering data over Comcast's cable network, and the instrumentalities associated with delivering data over Comcast's cable network, including those products listed on Exhibit A, and any other cable modems or cable modem termination systems that comply with any of the DOCSIS 1.0, 1.1 or 2.0, as used in connection with Comcast's cable network.

25. The "Relevant ATSC Instrumentalities" are the system and method used by Comcast to receive and rebroadcast digital television signals, and the instrumentalities associated with receiving and rebroadcasting digital television signals, including the products listed on Exhibit B, and any other digital television equipment compliant with the ATSC standard, as used in connection with Comcast's cable network.

26. The "Accused Instrumentalities" are the Relevant DOCSIS-Compliant Instrumentalities and the Relevant ATSC Instrumentalities.

27. The "DOCSIS 1.0 standard" means Society of Cable Telecommunications Engineers (Engineering Committee, Data Standards Subcommittee), Data-Over-Cable Service Interface Specification, DOCSIS 1.0 Radio Frequency Interface (RFI) (ANSI/SCTE 22-1 2002).

28. The "DOCSIS 1.1 standard" means the Data-Over-Cable Service Interface Specifications and Radio Frequency Interface Specification, SP-RFI-v1.1-I01-990311.

29. The "DOCSIS 2.0 standard" means the Data-Over-Cable Service Interface Specifications and Radio Frequency Interface Specification, SP-RFI-v2.0-I04-030730.

30. The "ATSC standard" means the "ATSC Standard: Digital Television Standard (A/53), Revision B, and, where appropriate in context, specifically Section 4 of Annex D of that standard.

## B.    INTERROGATORIES

INTERROGATORY NO. 1:

State in detail all facts upon which Comcast relies in asserting each of Comcast's Affirmative Defenses set forth in Defendants' Answer and Counterclaims and provide the identity of all individuals with knowledge of any such facts and the identity of all documents and things concerning any such facts.

INTERROGATORY NO. 2:

State in detail all facts upon which Comcast relies in asserting each of Comcast's Counterclaims set forth in Defendants' Answer and Counterclaims and provide the identity of all individuals with knowledge of any such facts and the identity of all documents and things concerning any such facts.

INTERROGATORY NO. 3:

If you contend that Comcast has not infringed any claim of Plaintiff's patent-in-suit, explain the specific basis for each such contention, including which specific claim limitation(s) Comcast alleges are not met literally or equivalently by the Accused Instrumentalities, the reasons why Comcast so alleges, and the identity of each person with information concerning such contention and the production numbers of all documents that support such contentions.

INTERROGATORY NO. 4:

State in detail the circumstances under which Comcast first became aware of each of the patents-in-suit, identifying each person who first gained knowledge of each patent-in-suit and the circumstances under which that person became aware of the patent.

INTERROGATORY NO. 5:

Identify each cable modem, cable modem termination system, digital television receiver, and any other Accused Instrumentality that Comcast has made, used, sold, imported, or caused

any of these acts, or any such device used in connection with any data network or cable television network owned or operated by Comcast, since June 26, 1990, and identify three persons affiliated with Comcast with the most knowledge concerning the information sought by this interrogatory.  For each product identified, include the manufacturer and model number, state whether Comcast makes, uses, sells, imports, or causes any of these acts.

INTERROGATORY NO. 6:

For each cable modem and cable modem termination system identified in your response to Interrogatory No. 5 (collectively the "cable modem products"), state whether the cable modem product is compliant with any version of DOCSIS, and, if so, which version or versions, and explain in detail the basis for your contention, if any, that the cable modem or cable modem termination system is either (a) not compliant with DOCSIS 2.0, or (b) not compliant with any version of DOCSIS.

INTERROGATORY NO. 7:

For each digital television receiver identified in your response to Interrogatory No. 5 (collectively the "ATSC products"), state whether the digital television receiver receives and/or decodes signals generated by equipment that is compliant with the ATSC Digital Television Standard. Explain in detail the basis for your contention, if any, that the digital television receiver does not receive and/or decode signals generated by equipment that is compliant with the ATSC Digital Television Standard.

INTERROGATORY NO. 8:

For each product identified in your response to Interrogatory No. 5 used by Comcast or used in connection with any data or cable network owned or operated by Comcast, explain in detail the manner in which the product is used.

INTERROGATORY NO. 9:

For each product identified in your response to Interrogatory No. 5, explain in detail the manner in which the product is acquired by Comcast and, where applicable, distributed to an

end-user, including an identification of each step in the supply chain, beginning with the manufacturer of the product, and ending with the installation at the end-user's location.

INTERROGATORY NO. 10:

For each applicable product identified in your response to Interrogatory No. 5, identify the person or persons involved in the design or development of the product's software, firmware, or other instructions intended to be executed by a processor or microprocessor. If a natural person is identified, identify the person's employer (if any), and state the person's address and telephone number. If a corporate person is identified, state the person's principal place of business, the address at which the software or firmware development takes place, and identify the natural person or persons responsible for such development.

INTERROGATORY NO. 11:

For each product identified in your response to Interrogatory No. 5, identify all communications between Comcast and the manufacturer of the product relating to the product.

INTERROGATORY NO. 12:

State with specificity Comcast's revenues derived from each cable modem product (specified by manufacturer and model), including the revenues by month Comcast derives from the provision of data service through the specified cable modem product, separately including equipment rental fees, service provision fees, and any other type of fee or charge for the use of Comcast's cable modem network, cable modem, or cable modem head-end, and identify three persons affiliated with Comcast with the most knowledge concerning the information sought by this interrogatory.

INTERROGATORY NO. 13:

State with specificity Comcast's revenues derived from each ATSC product, including a list of ATSC products (specified by manufacturer and model), including the revenues by month Comcast derives from customers who receive signals originally received from the specified ATSC product, separately including equipment rental fees, service provision fees, and any other type of fee or charge for cable television service, or any tier or service level thereof, and identify

7

three persons affiliated with Comcast with the most knowledge concerning the information sought by this interrogatory.

INTERROGATORY NO. 14:

Explain in detail all manners in which Comcast receives over-the-air TV signals according to the Terrestrial Broadcast provisions of the ATSC Digital TV Standard, and transmits such signals to its customers since September 7, 1993, and identify three persons affiliated with Comcast with the most knowledge concerning the information sought by this interrogatory.

INTERROGATORY NO. 15:

For each Accused Instrumentality identified in response to Interrogatory No. 5, identify all persons involved in the conception, design or development of any such product, whether or not such persons are currently or were previously employed by Comcast, and state the role that each such person played in the conception, design or development.

INTERROGATORY NO. 16:

To the extent that persons other than Comcast sell or offer for sale any of the cable modem products or ATSC products on behalf of Comcast, or for use with any data network or cable television network owned or operated by Comcast, identify the persons, providing the address, telephone number, and person at each entity in charge of such activities, and the dates during which each entity performed such activities since June 26, 1990.

INTERROGATORY NO. 17:

Identify all persons involved in Comcast's marketing, accounting, design, and development of any of the cable modem products and ATSC products, including the provision of cable modem service, indicating for each person which activity each person is associated with.

INTERROGATORY NO. 18:

List every patent that includes one or more claims that cover any of the cable modem products or ATSC products, and for each listed patent, include the name and address of the patent owner, identify the cable modem or ATSC product(s) covered by the patent, and identify

the claim or claims covering the cable modem or ATSC product(s), and identify with specificity any licensing agreement Comcast has entered with respect to the patent.

Respectfully submitted,

Dated:  May 3, 2006                    FISH & RICHARDSON P.C.


By:  /s/ Thomas A. Brown
     Otis Carroll
     State Bar No. 03895700
     Wesley Hill
     State Bar No. 24032294
     IRELAND, CARROLL & KELLEY, P.C.
     6101 S. Broadway, Suite 500
     Tyler, Texas 75703
     Tel: (903) 561-1600
     Fax: (903) 581-1071
     Email: fedserv@icklaw.com

     Frank E. Scherkenbach
     Lawrence K. Kolodney
     Michael H. Bunis
     Denis Ticak
     Thomas A. Brown
     FISH & RICHARDSON, P.C.
     225 Franklin Street
     Boston, MA 02110
     Tel: 617-542-5070
     Fax: 617-542-8906

     Timothy Devlin
     FISH & RICHARDSON, P.C.
     919 N. Market Street, Suite 1100
     Wilmington, DE 19899-1114
     Tel: 302-652-5070
     Fax: 302-652-0607

     Alan D. Albright
     State Bar # 00973650
     FISH & RICHARDSON, P.C.
     One Congress Plaza, 4th Floor
     111 Congress Avenue
     Austin, TX 78701
     Tel: 512-391-4930
     Fax; 512-591-6837

Attorneys for Plaintiff
REMBRANDT TECHNOLOGIES, LP

## **PROOF OF SERVICE**

On May 3, 2006, I caused a copy of the following document(s):

PLAINTIFF REMBRANDT TECHNOLOGIES, LP'S FIRST SET OF
INTERROGATORIES

to be served by FedEx and electronic mail on the interested parties in this action by placing a true
and correct copy thereof, enclosed in a sealed envelope, and addressed as follows:

Brian L. Ferrall, Esq.                    Attorneys for Defendants
Leo L. Lam, Esq.                          Comcast Corporation, Comcast Cable
Keker & Van Nest, LLP                     Communications, LLC and Comcast of
710 Sansome Street                        Plano, LP
San Francisco, CA 94111

I declare under penalty of perjury that the above is true and correct.  Executed on May 3,
2006, at Boston, MA.

/s/ Thomas A. Brown
                          Thomas A. Brown

21267806.doc

## EXHIBIT A

Relevant DOCSIS-Compliant Instrumentalities

Note: "CM" and "CMTS" below identify a product as a cable modem or a cable modem termination system, respectively.

| Vendor | Product Identification |
|---|---|
| ADC Telecommunications, Inc. | Cuda 12000 (CMTS) |
| Ambit Microsystems Inc. | • 600740EUW (CM)<br>• U10C018 (CM) |
| Arris Group Inc. | • Cadant C4 (CMTS)<br>• CM450A (CM) |
| Belkin Corporation | F5D5530-W (CM) |
| Best Data Products, Inc. | CMX300v2 (CM) |
| BigBand Networks, Inc. | Cuda 12000 (CMTS) |
| Broadxent Inc. | 8601 (CM) |
| CastleNet Technology Inc. | • CXC150 (CM)<br>• CXC250 (CM)<br>• DP1110XB2 (CM) |
| Cisco Systems, Inc. | • uBR7246 (CMTS)<br>• uBR10012 (CMTS) |
| Com21, Inc. | DP1110XB (CM) |
| D-Link Corporation | • DCM-202 (CM)<br>• DCM-201 (CM) |
| Electroline Equipment Inc. | • DHT-PS-NA-02 (CM)<br>• DHT-PS-NA-01 (CM) |

| | |
|---|---|
| Linksys | • WCG200 (CM<br>• BEFCMU10 (CM)<br>• BEFCMU10 ver. 2 (CM)<br>• BEFCMU10 ver. 3 (CM)<br>• BEFCMU10 ver. 4 (CM)<br>• BEFCMUH4 (CM) |
| Motorola, Inc. | • SB3100 (CM)<br>• SB4100 (CM)<br>• SB4200 (CM)<br>• SB4220 (CM)<br>• SB5100 (CM)<br>• SB5101 (CM)<br>• SB5120 (CM)<br>• SBG900 (CM)<br>• SBG1000 (CM) |
| Netgear Inc. | • CVG824G (CM)<br>• CG814WG (CM)<br>• CG814Mv2 (CM) |
| Pace Micro Technology plc | TDC775D (CM) |
| Samsung Telecommunications America LLP | SCM-140U (CM) |
| Scientific-Atlanta, Inc. | • DPX100 (CM)<br>• DPX2100 (CM)<br>• DPC2100 (CM) |
| SMC Networks Inc. | • SMC8004CM (CM)<br>• SMC8013WG (CM) |
| Terayon Communication Systems, Inc. | • ECM615 (CM)<br>• TJ715 (CM)<br>• TJ715X (CM)<br>• TJ716X (CM)<br>• BW3500 (CMTS) |

| Thomson Inc. | • DHG525 (CM)<br>• DCW725 (CM)<br>• DCM425 (CM)<br>• DCM325 (CM)<br>• DCW615 (CM)<br>• DCM315 (CM)<br>• DCM305 (CM)<br>• DCM245 (CM) |
|---|---|
| Toshiba America, Inc. | • PCX2000 (CM)<br>• PCX1100U (CM)<br>• PCX2600 (CM)<br>• PCX2200 (CM)<br>• PCX2500 (CM) |
| Zoom Technologies Inc. | 5241 (CM) |

**EXHIBIT B**

Relevant ATSC Instrumentalities

| Vendor | Product Identification |
|---|---|
| Harmonic Inc. | ProView ATSC 8VSB Receiver PVAR 6000 |
| KTech Telecommunications, Inc. | DVM-150E Professional DTV Receiver/Decoder |
| Motorola, Inc. | HDD1100 High Definition Decoder |
| Scientific-Atlanta, Inc. | <ul><li>D6238 Demodulator</li><li>D6239 Demodulator/Multiplexer</li></ul> |
| Terayon Communication Systems, Inc. | CP 7585 Dual 8VSB to ASI Demodulator |
| Wegener Communications, Inc. | <ul><li>DTV742 8VSB 4 Channel Multiplexer</li><li>DTV744 8VSB 4 Channel Demodulator</li><li>DTV720 Transport Stream Multiplexer</li></ul> |

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| **REMBRANDT TECHNOLOGIES, LP** | § | |
| | § | |
| **Plaintiff** | § | |
| | § | |
| **v.** | § | **Civil Action No. 2:05-cv-443-TJW** |
| | § | **Jury** |
| **COMCAST CORPORATION, COMCAST** | § | |
| **CABLE COMMUNICATIONS, LLC, and** | § | |
| **COMCAST OF PLANO, LP** | § | |

## ORDER GRANTING DEFENDANTS' MOTION TO EXCEED PAGE LIMIT

Defendants Comcast Corp., Comcast Cable Communications, LLC ("Comcast Cable"), and Comcast of Plano, LP (collectively, "Comcast"), filed an Agreed Motion to Exceed the Page Limit in Defendant's Reply to Plaintiff's Opposition to Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a). The Court, having reviewed the motion, and being well-advised, finds that the motion should the GRANTED.

It is therefore ORDERED that Comcast shall be allowed to exceed the page limit in Defendant's Reply to Plaintiff's Opposition to Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a). It is further

ORDERED, ADJUDGED and DECREED that the Clerk of Court is to file Defendant's Reply to Plaintiff's Opposition to Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) as attached as Exhibit "A" to Defendants' Agreed Motion to Exceed Page Limit.

SO ORDERED.