IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| REMBRANDT TECHNOLOGIES, LP<br>Plaintiff,<br><br>v.<br><br>COMCAST CORPORATION, COMCAST<br>COMMUNICATIONS, LLC, and COMCAST<br>OF PLANO, LP<br>Defendants. | § § § § § § § § § § § | Civil Action No. 2:05-CV-443 [TJW]<br><br>JURY |

**NOTICE OF APPEARANCE OF BECK, REDDEN & SECREST, LLP AS COUNSEL
FOR FISH & RICHARDSON, P.C. FOR THE LIMITED PURPOSE
OF OPPOSING MOTION TO DISQUALIFY**

Fish & Richardson, P.C., counsel for Plaintiff in the above-captioned matter, hereby notifies the Court that David J. Beck (as lead attorney) and Geoff A. Gannaway (as of counsel) of the law firm of Beck, Redden & Secrest, L.L.P., One Houston Center, 1221 McKinney, Suite 4500, Houston, Texas 77010, are appearing on behalf of Fish & Richardson, P.C. in the above-referenced matter for the limited purpose of opposing Time Warner Cable Inc.'s Motion to Disqualify Fish & Richardson, P.C. All pleadings, discovery, correspondence and other material should be served upon counsel at the address referenced above.

Respectfully submitted,

BECK, REDDEN & SECREST
A Registered Limited Liability Partnership


By:   /s/ Geoff Gannaway with permission of
        David. J. Beck_____
        David J. Beck
        Texas Bar No. 00000070
1221 McKinney St., Suite 4500
Houston, Texas  77010-2010
Telephone:  (713) 951-3700
Facsimile:  (713) 951-3720
Email: dbeck@brsfirm.com

**LEAD ATTORNEY APPEARING
for FISH & RICHARDSON, P.C.**


**OF COUNSEL APPEARING
for FISH & RICHARDSON, P.C.**

Geoff A. Gannaway
Texas Bar No. 24036617
BECK, REDDEN & SECREST
A Registered Limited Liability Partnership
1221 McKinney St., Suite 4500
Houston, Texas  77010-2010
Telephone:  (713) 951-3700
Facsimile:  (713) 951-3720
Email: ggannaway@brsfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via electronic mail on September 11, 2006.  I also hereby certify that all counsel of record who have consented to electronic service are being served with a notice of filing of this document, under seal, pursuant to L.R. CV-5(a)(7) on September 11, 2006.

Any other counsel of record will be served by first class mail on this same date.

                            /s/ Geoff Gannaway_____

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| REMBRANDT TECHNOLOGIES, LP | § | |
| | § | |
| v. | § | Civil Action No. 2:05-cv-443 [TJW] |
| | § | JURY DEMANDED |
| COMCAST CORPORATION, COMCAST | § | |
| CABLE COMMUNICATIONS, LLC, and | § | |
| COMCAST OF PLANO, LP | § | FILED    UNDER    SEAL |

## <u>ORDER ON TIME WARNER CABLE INC.'S MOTION TO INTERVENE</u>

CAME ON THIS DATE TO BE CONSIDERED Time Warner Cable Inc.'s Motion to

Intervene in this matter.  The Court, after reviewing and considering the motion and opposition,

if any, made by the Parties, is of the opinion that the motion should be granted.

IT IS, THEREFORE, ORDERED that Time Warner Cable Inc.'s Motion to Intervene be

GRANTED.

SIGNED this 11th day of September, 2006.

_____

T. JOHN WARD
UNITED STATES DISTRICT JUDGE

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| REMBRANDT TECHNOLOGIES, LP | § | |
| | § | |
| **Plaintiff** | § | |
| | § | |
| **v.** | § | Civil Action No. 2:05-cv-443-TJW |
| | § | Jury |
| COMCAST CORPORATION, COMCAST | § | |
| CABLE COMMUNICATIONS, LLC, and | § | |
| COMCAST OF PLANO, LP | § | |

## ORDER GRANTING DEFENDANTS' MOTION TO EXCEED PAGE LIMIT

Defendants Comcast Corp., Comcast Cable Communications, LLC ("Comcast Cable"), and Comcast of Plano, LP (collectively, "Comcast"), filed an Agreed Motion to Exceed the Page Limit in Defendant's Reply to Plaintiff's Opposition to Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a). The Court, having reviewed the motion, and being well-advised, finds that the motion should the GRANTED.

It is therefore ORDERED that Comcast shall be allowed to exceed the page limit in Defendant's Reply to Plaintiff's Opposition to Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a). It is further

ORDERED, ADJUDGED and DECREED that the Clerk of Court is to file Defendant's Reply to Plaintiff's Opposition to Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) as attached as Exhibit "A" to Defendants' Agreed Motion to Exceed Page Limit.

SIGNED this 11th day of September, 2006.

_T. John Ward_
_____
T. JOHN WARD
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| REMBRANDT TECHNOLOGIES, LP<br>Plaintiff,<br><br>v.<br><br>COMCAST CORPORATION, COMCAST<br>COMMUNICATIONS, LLC, and COMCAST<br>OF PLANO, LP<br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 2:05-CV-443 [TJW]<br><br>JURY |

**FISH & RICHARDSON, P.C.'S MOTION FOR EXTENSION OF TIME
TO RESPOND TO MOTION TO DISQUALIFY AND
MEMORANDUM OF LAW IN SUPPORT**

Fish & Richardson, P.C. files this Motion for Extension of Time to Respond to Time Warner Cable Inc.'s Motion to Disqualify and Memorandum of Law in Support, and would respectfully show the Court as follows:

1.      On August 30, 2006, Time Warner Cable Inc. filed a SEALED PATENT Motion for Leave to Exceed Page Limits (Motion to Exceed) regarding Motion to Disqualify Fish & Richardson, P.C. Attached to that Motion to Exceed was a Motion to Disqualify and Memorandum of Law in Support (Motion to Disqualify). It is not clear, because the Motion to Disqualify was filed only as an attachment to the Motion to Exceed, what date should be considered the filing date of the Motion to Disqualify. If the filing date of the Motion to Disqualify is treated as August 30, 2006, Fish & Richardson, P.C.'s response to the Motion to Disqualify, under the local rules, is currently due on September 14, 2006.

2.      David J. Beck, the lead counsel appearing on behalf of Fish & Richardson, P.C., is out of the United States until September 20, 2006.  Accordingly, Fish & Richardson, P.C. is seeking an extension of time in which to respond until September 28, 2006.

3.      This motion is not sought for delay, but so that justice may be done.

4.      Counsel for Fish & Richardson P.C. has conferred with counsel for Time Warner Cable Inc. regarding the substance of this motion.  Counsel for Time Warner Cable Inc. was unable to represent either opposition or agreement on the day he was contacted, as he was not able to contact his client.

5.      While it is not clear that the response to the Motion to Disqualify is due on September 14, 2006, Fish & Richardson P.C. files this motion out of an abundance of caution to ensure that it complies with the local deadlines.

WHEREFORE, PREMISES CONSIDERED, Fish & Richardson, P.C. pray that the Court extend the deadline to September 28, 2006 by which they must respond to the Motion to Disqualify and Memorandum of Law in Support.

Dated: September 12, 2006

1021.00001/325992.1

Respectfully submitted,

BECK, REDDEN & SECREST
A Registered Limited Liability Partnership


By:   /s/ Geoff Gannaway with permission of
     David. J. Beck
         David J. Beck
         Texas Bar No. 00000070
1221 McKinney St., Suite 4500
Houston, Texas  77010-2010
Telephone:  (713) 951-3700
Facsimile:  (713) 951-3720
Email: dbeck@brsfirm.com

**LEAD ATTORNEY APPEARING
FOR FISH & RICHARDSON, P.C.**


**OF COUNSEL APPEARING
FOR FISH & RICHARDSON, P.C.**

Geoff A. Gannaway
Texas Bar No. 24036617
BECK, REDDEN & SECREST
A Registered Limited Liability Partnership
1221 McKinney St., Suite 4500
Houston, Texas  77010-2010
Telephone:  (713) 951-3700
Facsimile:  (713) 951-3720
Email: ggannaway@brsfirm.com

## CERTIFICATE OF CONFERENCE

This certifies that counsel for Fish & Richardson P.C. conferred with counsel for the parties in a good faith attempt to resolve the matter without court intervention.  Counsel for Time Warner Cable Inc., Mike Jones, was unable to represent either opposition or agreement on the day he was contacted, as he was not able to contact his client.  Counsel for Defendants, Brian Ferrall of Keker & Van Nest, indicated that Defendants are not opposed to this motion.

                              /s/ Geoff A. Gannaway

3

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via electronic mail on September 12, 2006.

Any other counsel of record will be served by first class mail on this same date.


/s/ Geoff A. Gannaway_____

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| REMBRANDT TECHNOLOGIES, LP<br>Plaintiff,<br><br>v.<br><br>COMCAST CORPORATION, COMCAST<br>COMMUNICATIONS, LLC, and COMCAST<br>OF PLANO, LP<br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 2:05-CV-443 [TJW]<br><br>JURY |

**ORDER GRANTING FISH & RICHARDSON, P.C.'S MOTION FOR EXTENSION
OF TIME TO RESPOND TO MOTION TO DISQUALIFY AND
MEMORANDUM OF LAW IN SUPPORT**

It is the opinion of the Court that the Motion for Extension of Time to Respond to Motion

to Disqualify and Memorandum of Law in Support ("motion") filed by Fish & Richardson, P.C.

is well taken and should be granted. It is therefore,

ORDERED that the motion is GRANTED and Fish & Richardson, P.C. shall have until

September 28, 2006, to file its response to Time Warner Cable Inc.'s Motion to Disqualify and

Memorandum of Law in Support.

Case 2:05-cv-00444-TJW-CE Document 76-25 Filed 09/18/2007 Page 1 of 2

# EXHIBIT A

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| **REMBRANDT TECHNOLOGIES, LP** | § | |
| | § | |
| **Plaintiff** | § | |
| | § | |
| **v.** | § | Civil Action No. 2:05-cv-443-TJW |
| | § | Jury |
| **COMCAST CORPORATION, COMCAST** | § | |
| **CABLE COMMUNICATIONS, LLC, and** | § | |
| **COMCAST OF PLANO, LP** | § | |

**DEFENDANT COMCAST'S SURREPLY TO PLAINTIFF'S
MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

Defendants Comcast Corporation, Comcast Cable Communications, LLC, and Comcast of Plano, LP (collectively, "Comcast") respectfully file this Surreply to Plaintiff's Motion to Compel Production of Documents and would respectfully show the Court as follows:

## I.    INTRODUCTION

In its reply brief, Rembrandt fails to respond to every major issue raised by Comcast's Opposition. First, Rembrandt ignores the fact that Comcast has already produced more than 59,000 e-mails and attachments to date in this litigation, and that the remainder of Comcast's e-mails will likely be produced before this motion is even heard. Second, Rembrandt does not, and cannot, dispute that Comcast does not design the devices that are accused in this case, and as such, does not maintain or have access to any third-party source code. Third, nothing Rembrandt cites suggests that Rembrandt raised the relevance of so-called "configuration files" prior to Rembrandt's letter of July 27, 2006 – mere days before this motion was filed. Fourth, Rembrandt makes no showing of prejudice from Comcast's production of those files in the next few weeks, as Comcast is in the process of doing. Finally, Rembrandt says nothing about Comcast's efforts to produce as many third party confidential documents as possible without violating contractual obligations, including Comcast's sending notice letters to over 20

companies on May 19, 2006, and spending thousands of dollars to review documents from the objectors.

Instead, Rembrandt devotes the bulk of its reply brief to the *timing* of the production that Comcast already completed, which has no bearing whatsoever on the issues raised (or the relief requested) in Rembrandt's Motion. Rembrandt has not been seriously inconvenienced from the minor delays in Comcast's document production, and this motion should never have been filed.

## II.    <u>ARGUMENT</u>

### A.    Comcast Is Producing All Relevant E-Mail Communications

As explained in its opposition brief, Comcast has made diligent efforts to produce all e-mail communications responsive to Rembrandt's search terms. In fact, Comcast has produced over 59,000 e-mails and attachments to date, and the remainder are currently being formatted by Comcast's outside vendor and will be produced shortly. Contrary to Rembrandt's apparent beliefs, however, it takes time to process and format an e-mail production of this magnitude, and the speed at which this is completed is not entirely in Comcast's control. Rembrandt will have all responsive e-mail communications in a matter or days, which is the same timeframe Comcast has said from the beginning. Further, Rembrandt has made no showing of prejudice from this short delay.[1] Consequently, Rembrandt's motion should be denied.

### B.    Comcast Has No Source Code for the Accused Devices And Has Responded Diligently To Rembrandt's Request for Configuration Files.

Based on interviews with several Comcast custodians, Comcast has confirmed that it does not have possession of any source code or firmware, as those terms are commonly used, relevant to the operation of the accused devices. Furthermore, based on a review of agreements

---

[1] Contrary to the stance it has taken in this motion, Rembrandt itself has been producing documents on a "rolling" basis throughout this litigation. For example, Rembrandt produced approximately 800 pages of responsive documents on September 1, 2006, with no explanation for their delay. Similarly, Rembrandt produced 6,400 pages on July 10th, and another 800 on July 31st – both times well after the discovery deadline of June 16, 2006. Rembrandt can hardly be heard to complain about such conduct by Comcast.

<u>DEFENDANT'S SURREPLY TO PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS</u> – Page 2

with key vendors, Comcast is satisfied that it does not have the right to request or inspect any third-party source code relating to these devices.  Once again, this is what Comcast has said from the beginning, and Rembrandt, who is in possession of the same agreements with the key equipment vendors, has not cited any provision to the contrary.

Perhaps sensing that source code is a dead issue, Rembrandt shifts course in its reply brief and argues that Comcast has delayed in producing so-called "configuration files" for the accused devices.  (Reply brief at 2-3.)  As the evidence makes clear, Rembrandt never raised the configuration files prior to Rembrandt's letter of July 27, 2006. (*See* Ex. L to Rembrandt's opening brief.)  Since Rembrandt's July 27th letter, Comcast has diligently investigated this issue and has identified certain configuration files used in Comcast's network.  These files, which are quite voluminous (approximately 400,000 pages), are currently being collected and will be produced shortly.  Any claim that Comcast has delayed unnecessarily in collecting these documents is simply not true.  And again, given the state of this case, Rembrandt has not identified any prejudice from the production of these files in September, as Comcast now anticipates.  The motion should be denied as moot as to these files.

Much of Rembrandt's motion in this regard is dedicated toward attempting to show how these configuration files were requested long ago.  While irrelevant to the motion itself, Rembrandt's accusations require correction.  Rembrandt claims that its letter of January 9, 2006 requesting all documents "evidencing the extent to which the Comcast cable network … complies with any version of the [relevant] standard" was sufficient to identify the relevance of these particular files.  (Reply at 2.)  Apart from the dubiousness of this claim on its face, Rembrandt ignores the fact that it did not even identify which aspects of Comcast's network were at issue in this case until May of 2006 when it served its first set of interrogatories and preliminary infringement contentions.  Rembrandt's January 9 letter was so impossibly vague, with potential application to an enormous network of equipment and devices, that Comcast could

not possibly know that cable modem configuration files were demanded. Indeed, if configuration files are so "highly relevant", as Rembrandt now contends, it is odd that Rembrandt waited *over 10 months* after this case was filed before making any specific mention of this.

Similarly, Rembrandt's statement that Comcast "does not dispute that it is in possession of source code for servers that likely generate such configuration files" (Reply at 2) is just wrong, both as to what Comcast has said previously on this issue, and as to whether Comcast does in fact have possession of such source code. Based on Comcast's recent investigation, it has learned that certain vendors do provide Comcast with the software that is used to generate these configuration files. Comcast does <u>not</u> possess or have access to the source code underlying this operation, however. Comcast only has copies of executable code, and only for some vendors. And, even though such software does not seem relevant, Comcast has already offered to produce whatever executable code it has in order to resolve this issue. (*See* Ex. 1.)

### C. Comcast Did Not Delay In Its Document Collection Efforts

Despite having no bearing on the relief requested in this motion, Rembrandt takes issue with the timing of Comcast's document collection efforts as deduced from a recent statement from Comcast's 30(b)(6) witness. (Reply at 4-5) Here again, Rembrandt presents a very skewed version of the facts.

In the months leading up to the Court's scheduling conference on May 2, 2006, Comcast's outside attorneys were engaged in collecting thousands of documents for this case in conjunction with collection efforts for other ongoing litigations, including *Caritas Technologies, Inc. v. Comcast Corporation* (Civil Action No. 2-05CV-339DF.) At the time, it was thought that the *Caritas* document collection would overlap with this case, based on Rembrandt's identification in the complaint of high speed data services and VoIP as accused services. (*See* Complaint at ¶¶ 23, 29.) VoIP is at the center of the *Caritas* case, and shares some of the same

equipment as the high speed data network. Consequently, when Comcast's outside counsel stated at the scheduling conference that a large volume of documents had already been collected for this case, he was referring to the ongoing efforts to search for and review documents collected for the *Caritas* case, and from the *Caritas* production. Comcast's 30(b)(6) witness has not been involved with this aspect of the *Caritas* matter or with outside counsel's efforts in this regard, and thus had no way of knowing.

Comcast began its internal document collection for this case on May 8, 2006. While Rembrandt tries to portray this as delinquent or tardy, Comcast could not realistically have started its collection any sooner. Until Rembrandt served its first set of interrogatories on May 3, 2006, and its preliminary infringement contentions on May 12, 2006, Comcast was not even aware of the devices or products that were at issue in this case. (*See* Exhs. A and B to Rembrandt's First Set of Interrogatories, attached hereto as Ex. 2.) Indeed, prior to the initial Scheduling Conference in this case, counsel for Comcast asked if Rembrandt's counsel could provide its infringement contentions earlier than the rules allowed to allow Comcast to begin document collection earlier. Rembrandt's counsel declined. Thus, May 3, 2006 marked the first time in this case that Rembrandt specified with any measure of detail which components of Comcast's network it was accusing of infringement. Comcast began its internal document collection promptly thereafter. That Rembrandt seeks to portray Comcast's efforts in this regard as "late" is altogether mystifying.

## III.   CONCLUSION

Comcast respectfully requests that the Court deny Rembrandt's Motion to Compel Production of Documents.

Respectfully submitted,

_____/s/_____

Jennifer Haltom Doan
Texas Bar No. 08809050
John Peyton Perkins, III
Texas Bar No. 24043457
HALTOM & DOAN, LLP
6500 N. Summerhill Road, Suite 1A
P. O. Box 6227
Texarkana, TX 75505-6227
Telephone:  903-255-1000
Facsimile:  903-255-0800
E-mail:  jdoan@haltomdoan.com

Brian L. Ferrall
Leo L. Lam
Eric H. MacMichael
Steven K. Yoda
Keker & Van Nest, LLP
710 Sansome Street
San Francisco, CA 94111-1704
Telephone:  415-676-2235
Facsimile:  415-397-7188

**ATTORNEYS FOR DEFENDANTS
COMCAST CORPORATION,
COMCAST CABLE
COMMUNICATIONS, LLC AND
COMCAST OF PLANO, LP**

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  As such, this motion was served on all counsel who are deemed to have consented to electronic service.  Local Rule CV-5(a)(3)(A).  Pursuant to FED. R. CIV. P. 5(d) and Local Rule CV-5(e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by certified mail, return receipt requested**, on this 6th day of September, 2006.**

_____/s/_____

Jennifer Haltom Doan

# EXHIBIT 1

LAW OFFICES

# KEKER & VAN NEST
### LLP

710 SANSOME STREET
SAN FRANCISCO, CA 94111-1704
TELEPHONE (415) 391-5400
FAX (415) 397-7188
WWW.KVN.COM

ERIC H. MACMICHAEL
EMACMICHAEL@KVN.COM

September 1, 2006

**VIA E-MAIL**

Tom Brown, Esq.                         Michael Bunis, Esq.
Fish & Richardson, P.C.                 Fish & Richardson, P.C.
225 Franklin Street                     225 Franklin Street
Boston, MA  02110                       Boston, MA  02110
Facsimile #:  (617) 542-8906            Facsimile #:  (617) 542-8906
tbrown@fr.com                           mbunis@fr.com

Re:  Rembrandt Technologies, LP v. Comcast Corporation, et al.

Dear Michael and Tom:

I write in regards to several discovery issues that have been raised recently.

Source Code

Comcast has confirmed that it does not have possession of any source code or firmware, as those terms are traditionally used, that run on the accused devices.  Furthermore, based on a review of agreements with key vendors, as well as interviews with several Comcast custodians, Comcast does not believe it has the right to request or inspect any third-party source code.

Configuration Files for CMTS / Cable Modem Products

Based on your letter of July 27th, Comcast has investigated the existence of so-called configuration files for its Cable Modem Termination Systems or Cable Modems (collectively, "cable modem products").  We have identified the existence of electronic files used to configure those cable modem products that are currently deployed in Comcast's network.  Because the number of files is quite large, we are currently determining the most efficient way of gathering this information to produce.  We will inform you shortly as to when you can expect it, but we anticipate that it will be ready for production by Friday, September 15th.

Additionally, while Comcast does not possess any software relating to the operation of the cable modem products, it has learned that certain vendors do provide Comcast with software that is used to generate these configuration files.  Comcast does not possess or have access to the source code underlying this software, however.  Comcast only has copies of executable code, and only for some vendors.  While we do not see the relevance of software used to generate configuration files, if you would like copies of this executable code, we will make every effort to collect it.

379595.01

September 1, 2006
Page 2

Configuration Files for 8VSB Digital Receiver Products

Comcast does not possess or maintain software or configuration files for its 8VSB Digital Receivers. The receivers are configured manually when they are installed at the head-end, and subsequent software or firmware upgrades are typically installed directly on the device by the vendor and/or through web-based access that is hosted on the device itself. Comcast has no right (or business reason) to maintain copies of these software / firmware upgrades and, accordingly, it does not.

Agreements with Content Providers

During our conversation on August 28, 2006, you requested copies of all agreements with content / service providers dating as far back as the earliest issue date of the patents-in-suit. Before Comcast undertakes the burden of searching for and collecting such agreements, we would ask Rembrandt to articulate more fully the contemplated relevance of these agreements. As I'm sure you realize, the accused digital receivers play no part in the distribution of most of the video content on Comcast's network. In it's letter of August 16, 2006, Rembrandt makes the bare assertion that these agreements are "relevant because they relate to the revenues that Comcast receives for analogous services." Such is a fairly liberal standard for relevance that, if applied across the board, would result in very few aspects of Comcast's business being considered irrelevant. Please explain Rembrandt's theory as to how these agreements are relevant to this case, and Comcast will evaluate in a timely manner.

Cable Franchise Agreements

As explained during our conversation on August 28, 2006, although these agreements do not seem relevant at all, Comcast has produced a sample-set of franchise agreements. Given the uniform nature of these agreements, it is not clear to Comcast why Rembrandt needs a copy of every agreement for each region across the country, which number in the hundreds if not thousands. Please explain the relevance of a complete set of these agreements. Further, I noted that these are public documents which Rembrandt can obtain directly from the appropriate city / municipality grantor. Therefore, it seems that the burden of collecting these documents is the same for both parties.

License and Royalty Agreements

During our conversation on August 28, 2006, you requested copies of all license and royalty agreements involving Comcast that relate to the accused products or services. We note that many of the vendor agreements that we have already produced contain the relevant licenses for these products. We are currently searching for any additional agreements, and will produce them as soon as we are able to.

379595.01

September 1, 2006
Page 3


Please do not hesitate to contact me should you have any additional questions.


Sincerely,

Eric H. MacMichael

EHM:dc

cc:    Kim Kilbey
       Michael Forman

379595.01

# EXHIBIT 2

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

REMBRANDT TECHNOLOGIES, LP

      v.

COMCAST CORPORATION, COMCAST
CABLE COMMUNICATIONS, LLC, and
COMCAST OF PLANO, LP

Civil Action No. 2:05-cv-00443-TJW

---

**PLAINTIFF REMBRANDT TECHNOLOGIES, LP'S FIRST SET OF
INTERROGATORIES**

---

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiff Rembrandt

Technologies, LP  requests that Defendants Comcast Corporation, Comcast Cable

Communications, LLC, and Comcast of Plano, LP answer the following interrogatories

separately, fully, and under oath, within 30 days of service of this request.  Defendants are

subject to a duty to timely supplement all responses to these interrogatories in accordance with

Rule 26(e) of the Federal Rules of Civil Procedure.


A.      **DEFINITIONS**

    1.   "Plaintiff" or "Rembrandt" shall mean Rembrandt Technologies, LP including

without limitation all of its corporate locations, and all predecessors, and affiliates, and all past or

present directors, officers, agents, representatives, employees, consultants, and attorneys.

    2.   "Defendants," "Comcast," "you," or "your" means Comcast Corporation, Comcast

Cable Communications, LLC, and Comcast of Plano, LP, individually and collectively, including

without limitation all of their corporate locations, and all predecessors, and affiliates, and all past

or present directors, officers, agents, representatives, employees, consultants, and attorneys,

entities acting in joint-venture or partnership relationships with any one or more of them, and others acting on behalf of any one or more of them.

3.   Any reference to any individual person, either singularly or as a part of a defined group, includes that individual person's employees, agents, successors, assignees, heirs, and representatives.

4.   The term "all" includes and encompasses "any."

5.   The words "and" and "or" shall be construed conjunctively or disjunctively, whichever makes the request most inclusive.

6.   The "'627 patent" shall mean U.S. Patent No. 5,243,627.

7.   The "'631 patent" shall mean U.S. Patent No. 5,852,631.

8.   The "'858 patent" shall mean U.S. Patent No. 5,719,858.

9.   The "'819 patent" shall mean U.S. Patent No. 4,937,819.

10.  "Identify" means:

> (a) (with respect to Persons) to give, to the extent known, the Person's full name, present or last known address, and when referring to a natural Person, additionally, the present or last known place of employment.
>
> (b) (with respect to Documents) to give, to the extent known, the (i) type of Document, (ii) general subject matter, (iii) date of the Document, and (iv) author(s), addressee(s), and recipient(s).

11.  "Person" means any natural person or any business, legal, or governmental entity or association.

12.  "Document" shall be synonymous in meaning and equal in scope to the broadest meaning provided by Rule 34 of the Federal Rule of Civil Procedure 34, including, without limitation, electronic or computerized data compilations. A draft or non-identical copy is a separate Document within the meaning of this term.

13. "Thing" means any tangible object other than a Document including, without limitation, objects of every kind and nature, as well as prototypes, models, drafts, or specimens thereof.

14. "Communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise, and without limitation as to means or method).

15. "Prior Art" means that information which is defined by the broadest interpretation of 35 U.S.C. § 102 and 103, including, without limitation, information or knowledge that is accessible to a person of ordinary skill in the art, including that which would be obvious from such information or knowledge.

16. The terms "concern" and "concerning" mean relating to, referring to, describing, evidencing, constituting, embodying, containing, comprising, indicating, identifying, describing, discussing, involving, evidencing, or otherwise pertaining to the referenced subject.

17. The phrase "state in detail" means to state and describe, with specificity, each and every fact, circumstance, incident, act, omission, event, date, and/or legal contention relating to the matters inquired of in said interrogatory.

18. An "instrumentality" includes, without limitation, a method, process, system or apparatus.

19. A patent claim "covers" an instrumentality if the instrumentality infringes the claim, or would infringe the claim but for the existence of a license.

20. Used in reference to a patent or patent application, the term "related" means a patent or patent application that is related to the referenced patent in any way, including any parent, continuation, continuation-in-part, divisional, reexamination, reissue, or foreign counterpart patent or application.

21. The "patents-in-suit" refer to the '627 patent, the '631 patent, the '858 patent, the '819 patent, as well as U.S. Patent No. 5,710,761, U.S. Patent No. 5,103,227, and any patents or patent applications related to these patents.

3

22. "Infringed," "infringement" or "infringe" refers to any form of infringement actionable under United States law, including direct infringement, contributory infringement, inducement to infringe, literal infringement, and infringement under the doctrine of equivalents.

23. The singular and masculine form of any noun or pronoun shall embrace and be read and applied as embracing the plural, the feminine and the neuter, except where circumstances clearly make it inappropriate.

24. The "Relevant DOCSIS-Compliant Instrumentalities" are Comcast's cable network, and methods of delivering data over Comcast's cable network, and the instrumentalities associated with delivering data over Comcast's cable network, including those products listed on Exhibit A, and any other cable modems or cable modem termination systems that comply with any of the DOCSIS 1.0, 1.1 or 2.0, as used in connection with Comcast's cable network.

25. The "Relevant ATSC Instrumentalities" are the system and method used by Comcast to receive and rebroadcast digital television signals, and the instrumentalities associated with receiving and rebroadcasting digital television signals, including the products listed on Exhibit B, and any other digital television equipment compliant with the ATSC standard, as used in connection with Comcast's cable network.

26. The "Accused Instrumentalities" are the Relevant DOCSIS-Compliant Instrumentalities and the Relevant ATSC Instrumentalities.

27. The "DOCSIS 1.0 standard" means Society of Cable Telecommunications Engineers (Engineering Committee, Data Standards Subcommittee), Data-Over-Cable Service Interface Specification, DOCSIS 1.0 Radio Frequency Interface (RFI) (ANSI/SCTE 22-1 2002).

28. The "DOCSIS 1.1 standard" means the Data-Over-Cable Service Interface Specifications and Radio Frequency Interface Specification, SP-RFI-v1.1-I01-990311.

29. The "DOCSIS 2.0 standard" means the Data-Over-Cable Service Interface Specifications and Radio Frequency Interface Specification, SP-RFI-v2.0-I04-030730.

30. The "ATSC standard" means the "ATSC Standard: Digital Television Standard (A/53), Revision B, and, where appropriate in context, specifically Section 4 of Annex D of that standard.

## B.    INTERROGATORIES

INTERROGATORY NO. 1:

State in detail all facts upon which Comcast relies in asserting each of Comcast's Affirmative Defenses set forth in Defendants' Answer and Counterclaims and provide the identity of all individuals with knowledge of any such facts and the identity of all documents and things concerning any such facts.

INTERROGATORY NO. 2:

State in detail all facts upon which Comcast relies in asserting each of Comcast's Counterclaims set forth in Defendants' Answer and Counterclaims and provide the identity of all individuals with knowledge of any such facts and the identity of all documents and things concerning any such facts.

INTERROGATORY NO. 3:

If you contend that Comcast has not infringed any claim of Plaintiff's patent-in-suit, explain the specific basis for each such contention, including which specific claim limitation(s) Comcast alleges are not met literally or equivalently by the Accused Instrumentalities, the reasons why Comcast so alleges, and the identity of each person with information concerning such contention and the production numbers of all documents that support such contentions.

INTERROGATORY NO. 4:

State in detail the circumstances under which Comcast first became aware of each of the patents-in-suit, identifying each person who first gained knowledge of each patent-in-suit and the circumstances under which that person became aware of the patent.

INTERROGATORY NO. 5:

Identify each cable modem, cable modem termination system, digital television receiver, and any other Accused Instrumentality that Comcast has made, used, sold, imported, or caused

any of these acts, or any such device used in connection with any data network or cable television network owned or operated by Comcast, since June 26, 1990, and identify three persons affiliated with Comcast with the most knowledge concerning the information sought by this interrogatory. For each product identified, include the manufacturer and model number, state whether Comcast makes, uses, sells, imports, or causes any of these acts.

INTERROGATORY NO. 6:

For each cable modem and cable modem termination system identified in your response to Interrogatory No. 5 (collectively the "cable modem products"), state whether the cable modem product is compliant with any version of DOCSIS, and, if so, which version or versions, and explain in detail the basis for your contention, if any, that the cable modem or cable modem termination system is either (a) not compliant with DOCSIS 2.0, or (b) not compliant with any version of DOCSIS.

INTERROGATORY NO. 7:

For each digital television receiver identified in your response to Interrogatory No. 5 (collectively the "ATSC products"), state whether the digital television receiver receives and/or decodes signals generated by equipment that is compliant with the ATSC Digital Television Standard. Explain in detail the basis for your contention, if any, that the digital television receiver does not receive and/or decode signals generated by equipment that is compliant with the ATSC Digital Television Standard.

INTERROGATORY NO. 8:

For each product identified in your response to Interrogatory No. 5 used by Comcast or used in connection with any data or cable network owned or operated by Comcast, explain in detail the manner in which the product is used.

INTERROGATORY NO. 9:

For each product identified in your response to Interrogatory No. 5, explain in detail the manner in which the product is acquired by Comcast and, where applicable, distributed to an

end-user, including an identification of each step in the supply chain, beginning with the manufacturer of the product, and ending with the installation at the end-user's location.

INTERROGATORY NO. 10:

For each applicable product identified in your response to Interrogatory No. 5, identify the person or persons involved in the design or development of the product's software, firmware, or other instructions intended to be executed by a processor or microprocessor. If a natural person is identified, identify the person's employer (if any), and state the person's address and telephone number. If a corporate person is identified, state the person's principal place of business, the address at which the software or firmware development takes place, and identify the natural person or persons responsible for such development.

INTERROGATORY NO. 11:

For each product identified in your response to Interrogatory No. 5, identify all communications between Comcast and the manufacturer of the product relating to the product.

INTERROGATORY NO. 12:

State with specificity Comcast's revenues derived from each cable modem product (specified by manufacturer and model), including the revenues by month Comcast derives from the provision of data service through the specified cable modem product, separately including equipment rental fees, service provision fees, and any other type of fee or charge for the use of Comcast's cable modem network, cable modem, or cable modem head-end, and identify three persons affiliated with Comcast with the most knowledge concerning the information sought by this interrogatory.

INTERROGATORY NO. 13:

State with specificity Comcast's revenues derived from each ATSC product, including a list of ATSC products (specified by manufacturer and model), including the revenues by month Comcast derives from customers who receive signals originally received from the specified ATSC product, separately including equipment rental fees, service provision fees, and any other type of fee or charge for cable television service, or any tier or service level thereof, and identify

three persons affiliated with Comcast with the most knowledge concerning the information sought by this interrogatory.

INTERROGATORY NO. 14:

Explain in detail all manners in which Comcast receives over-the-air TV signals according to the Terrestrial Broadcast provisions of the ATSC Digital TV Standard, and transmits such signals to its customers since September 7, 1993, and identify three persons affiliated with Comcast with the most knowledge concerning the information sought by this interrogatory.

INTERROGATORY NO. 15:

For each Accused Instrumentality identified in response to Interrogatory No. 5, identify all persons involved in the conception, design or development of any such product, whether or not such persons are currently or were previously employed by Comcast, and state the role that each such person played in the conception, design or development.

INTERROGATORY NO. 16:

To the extent that persons other than Comcast sell or offer for sale any of the cable modem products or ATSC products on behalf of Comcast, or for use with any data network or cable television network owned or operated by Comcast, identify the persons, providing the address, telephone number, and person at each entity in charge of such activities, and the dates during which each entity performed such activities since June 26, 1990.

INTERROGATORY NO. 17:

Identify all persons involved in Comcast's marketing, accounting, design, and development of any of the cable modem products and ATSC products, including the provision of cable modem service, indicating for each person which activity each person is associated with.

INTERROGATORY NO. 18:

List every patent that includes one or more claims that cover any of the cable modem products or ATSC products, and for each listed patent, include the name and address of the patent owner, identify the cable modem or ATSC product(s) covered by the patent, and identify

the claim or claims covering the cable modem or ATSC product(s), and identify with specificity any licensing agreement Comcast has entered with respect to the patent.

Respectfully submitted,

Dated:  May 3, 2006                    FISH & RICHARDSON P.C.


By:  /s/ Thomas A. Brown
     Otis Carroll
     State Bar No. 03895700
     Wesley Hill
     State Bar No. 24032294
     IRELAND, CARROLL & KELLEY, P.C.
     6101 S. Broadway, Suite 500
     Tyler, Texas 75703
     Tel: (903) 561-1600
     Fax: (903) 581-1071
     Email: fedserv@icklaw.com

     Frank E. Scherkenbach
     Lawrence K. Kolodney
     Michael H. Bunis
     Denis Ticak
     Thomas A. Brown
     FISH & RICHARDSON, P.C.
     225 Franklin Street
     Boston, MA 02110
     Tel: 617-542-5070
     Fax: 617-542-8906

     Timothy Devlin
     FISH & RICHARDSON, P.C.
     919 N. Market Street, Suite 1100
     Wilmington, DE 19899-1114
     Tel: 302-652-5070
     Fax: 302-652-0607

     Alan D. Albright
     State Bar # 00973650
     FISH & RICHARDSON, P.C.
     One Congress Plaza, 4th Floor
     111 Congress Avenue
     Austin, TX 78701
     Tel: 512-391-4930
     Fax; 512-591-6837

     Attorneys for Plaintiff
     REMBRANDT TECHNOLOGIES, LP

**PROOF OF SERVICE**

On May 3, 2006, I caused a copy of the following document(s):

PLAINTIFF REMBRANDT TECHNOLOGIES, LP'S FIRST SET OF
INTERROGATORIES

to be served by FedEx and electronic mail on the interested parties in this action by placing a true
and correct copy thereof, enclosed in a sealed envelope, and addressed as follows:

| | |
|---|---|
| Brian L. Ferrall, Esq. | Attorneys for Defendants |
| Leo L. Lam, Esq. | Comcast Corporation, Comcast Cable |
| Keker & Van Nest, LLP | Communications, LLC and Comcast of |
| 710 Sansome Street | Plano, LP |
| San Francisco, CA 94111 | |

I declare under penalty of perjury that the above is true and correct.  Executed on May 3,
2006, at Boston, MA.

/s/ Thomas A. Brown
                    Thomas A. Brown

21267806.doc

## EXHIBIT A

### Relevant DOCSIS-Compliant Instrumentalities

Note: "CM" and "CMTS" below identify a product as a cable modem or a cable modem termination system, respectively.

| Vendor | Product Identification |
|---|---|
| ADC Telecommunications, Inc. | Cuda 12000 (CMTS) |
| Ambit Microsystems Inc. | • 600740EUW (CM)<br>• U10C018 (CM) |
| Arris Group Inc. | • Cadant C4 (CMTS)<br>• CM450A (CM) |
| Belkin Corporation | F5D5530-W (CM) |
| Best Data Products, Inc. | CMX300v2 (CM) |
| BigBand Networks, Inc. | Cuda 12000 (CMTS) |
| Broadxent Inc. | 8601 (CM) |
| CastleNet Technology Inc. | • CXC150 (CM)<br>• CXC250 (CM)<br>• DP1110XB2 (CM) |
| Cisco Systems, Inc. | • uBR7246 (CMTS)<br>• uBR10012 (CMTS) |
| Com21, Inc. | DP1110XB (CM) |
| D-Link Corporation | • DCM-202 (CM)<br>• DCM-201 (CM) |
| Electroline Equipment Inc. | • DHT-PS-NA-02 (CM)<br>• DHT-PS-NA-01 (CM) |

| | |
|---|---|
| Linksys | • WCG200 (CM<br>• BEFCMU10 (CM)<br>• BEFCMU10 ver. 2 (CM)<br>• BEFCMU10 ver. 3 (CM)<br>• BEFCMU10 ver. 4 (CM)<br>• BEFCMUH4 (CM) |
| Motorola, Inc. | • SB3100 (CM)<br>• SB4100 (CM)<br>• SB4200 (CM)<br>• SB4220 (CM)<br>• SB5100 (CM)<br>• SB5101 (CM)<br>• SB5120 (CM)<br>• SBG900 (CM)<br>• SBG1000 (CM) |
| Netgear Inc. | • CVG824G (CM)<br>• CG814WG (CM)<br>• CG814Mv2 (CM) |
| Pace Micro Technology plc | TDC775D (CM) |
| Samsung Telecommunications America LLP | SCM-140U (CM) |
| Scientific-Atlanta, Inc. | • DPX100 (CM)<br>• DPX2100 (CM)<br>• DPC2100 (CM) |
| SMC Networks Inc. | • SMC8004CM (CM)<br>• SMC8013WG (CM) |
| Terayon Communication Systems, Inc. | • ECM615 (CM)<br>• TJ715 (CM)<br>• TJ715X (CM)<br>• TJ716X (CM)<br>• BW3500 (CMTS) |

| Thomson Inc. | • DHG525 (CM)<br>• DCW725 (CM)<br>• DCM425 (CM)<br>• DCM325 (CM)<br>• DCW615 (CM)<br>• DCM315 (CM)<br>• DCM305 (CM)<br>• DCM245 (CM) |
|---|---|
| Toshiba America, Inc. | • PCX2000 (CM)<br>• PCX1100U (CM)<br>• PCX2600 (CM)<br>• PCX2200 (CM)<br>• PCX2500 (CM) |
| Zoom Technologies Inc. | 5241 (CM) |

14

## EXHIBIT B

Relevant ATSC Instrumentalities

| Vendor | Product Identification |
|---|---|
| Harmonic Inc. | ProView ATSC 8VSB Receiver PVAR 6000 |
| KTech Telecommunications, Inc. | DVM-150E Professional DTV Receiver/Decoder |
| Motorola, Inc. | HDD1100 High Definition Decoder |
| Scientific-Atlanta, Inc. | • D6238 Demodulator<br>• D6239 Demodulator/Multiplexer |
| Terayon Communication Systems, Inc. | CP 7585 Dual 8VSB to ASI Demodulator |
| Wegener Communications, Inc. | • DTV742 8VSB 4 Channel Multiplexer<br>• DTV744 8VSB 4 Channel Demodulator<br>• DTV720 Transport Stream Multiplexer |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| REMBRANDT TECHNOLOGIES, LP | § | |
| | § | |
| v. | § | Civil Action No. 2:05-cv-443 [TJW] |
| | § | JURY DEMANDED |
| COMCAST CORPORATION, COMCAST | § | |
| CABLE COMMUNICATIONS, LLC, and | § | |
| COMCAST OF PLANO, LP | § | |

## TIME WARNER CABLE INC.'S NOTICE OF NON-OPPOSITION TO FISH & RICHARDSON'S MOTION FOR EXTENSION OF TIME TO RESPOND TO MOTION TO DISQUALIFY (DOCKET NO. 74) AND
## AGREED MOTION TO SET BRIEFING SCHEDULE

Time Warner Cable Inc. respectfully notifies the Court of its non-opposition to Plaintiff's Motion for Extension of Time to Respond to Time Warner Cable Inc.'s Motion to Disqualify Fish & Richardson, P.C. (Docket No. 74, which was filed yesterday, September 12, 2006).

Additionally, in conference concerning this issue, please be advised that the parties have agreed concerning the following briefing schedule, and Time Warner Cable Inc. respectfully requests that the Court set the following briefing schedule concerning Time Warner Cable Inc.'s Motion to Disqualify Fish & Richardson (Dkt. No. 66).

| **Briefing** | **Deadline** |
|---|---|
| Plaintiff's Rembrandt Technologies, LP, Opposition to Motion to Disqualify Fish & Richardson, P.C. | September 28, 2006 |
| Consistent with Local Rules, Intervenor's, Time Warner Cable, Inc., Reply to Opposition to Motion to Disqualify Fish & Richardson, P. C. | October 16, 2006 |
| Consistent with Local Rules, Plaintiff's, Rembrandt Technologies, LP, Sur-Reply to Intervenor Time Warner Cable, Inc. Reply to Opposition to Motion to Disqualify Fish & Richardson, P.C. | November 3, 2006 |

WHEREFORE, PREMISES CONSIDERED, Time Warner Cable Inc. respectfully notifies the Court of its non-opposition to Plaintiff's Motion for Extension of Time (Docket No.

74) and respectfully requests that the Court set the proposed briefing schedule concerning Time

Warner Cable Inc.'s Motion to Disqualify as indicated herein.

DATED: September 13, 2006                          Respectfully submitted,


                                          /s/ Diane V. DeVasto
                                          Michael E. Jones
                                          State Bar No. 10929400
                                          mikejones@potterminton.com
                                          Diane V. DeVasto
                                          State Bar No. 05784100
                                          dianedevasto@potterminton.com
                                          POTTER MINTON
                                          A Professional Corporation
                                          110 North College
                                          500 Plaza Tower
                                          Tyler, Texas 75702
                                          Telephone:  (903) 597-8311
                                          Facsimile:   (903) 593-0846

David Benyacar
dbenyacar@kayescholer.com
Michael Rogoff
mrogoff@kayescholer.com
KAYE SCHOLER
425 Park Avenue
New York, NY 10022-3598
Tel: (212) 836-8000
Fax: (212) 836-8689

                                          **ATTORNEYS FOR INTERVENOR**
                                          **TIME WARNER CABLE INC.**

## **CERTIFICATE OF SERVICE**

      I hereby certify that the following counsel of record who are deemed to have consented to electronic service are being served this 13th day of September, 2006, with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).  Any other counsel of record will be served by First Class U.S. mail on this same date.

                      /s/ Diane V. DeVasto
                      Diane V. DeVasto

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| REMBRANDT TECHNOLOGIES, LP | § | |
| | § | |
| v. | § | Civil Action No. 2:05-cv-443 [TJW] |
| | § | JURY DEMANDED |
| COMCAST CORPORATION, COMCAST | § | |
| CABLE COMMUNICATIONS, LLC, and | § | |
| COMCAST OF PLANO, LP | § | |

## ORDER

On this day, the Court considered the Agreed Motion to Set Briefing Schedule for Parties to Respond to Intervenor's, Time Warner Cable Inc., Motion to Disqualify Fish & Richardson, P.C. The Court finds that the Motion is well-taken and should be GRANTED.

IT IS THEREFORE ORDERED that the briefing schedule concerning Time Warner Cable Inc.'s motion, Docket No. 66, is as follows:

| Briefing | Deadline |
|---|---|
| Plaintiff's Rembrandt Technologies, LP, Opposition to Motion to Disqualify Fish & Richardson, P.C. | September 28, 2006 |
| Consistent with Local Rules, Intervenor's, Time Warner Cable, Inc., Reply to Opposition to Motion to Disqualify Fish & Richardson, P. C. | October 16, 2006 |
| Consistent with Local Rules, Plaintiff's, Rembrandt Technologies, LP, Sur-Reply to Intervenor Time Warner Cable, Inc. Reply to Opposition to Motion to Disqualify Fish & Richardson, P.C. | November 3, 2006 |

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| REMBRANDT TECHNOLOGIES, LP | § | |
| | § | |
| v. | § | Civil Action No. 2:05-cv-443 [TJW] |
| | § | JURY DEMANDED |
| COMCAST CORPORATION, COMCAST | § | |
| CABLE COMMUNICATIONS, LLC, and | § | |
| COMCAST OF PLANO, LP | § | FILED    UNDER    SEAL |

**ORDER GRANTING TIME WARNER CABLE INC.'S
MOTION FOR LEAVE TO EXCEED THE PAGE LIMIT REGARDING ITS
MOTION TO DISQUALIFY FISH & RICHARDSON, P.C.
AND MEMORANDUM OF LAW IN SUPPORT**

Before the Court is Time Warner Cable Inc.'s Motion for Leave to Exceed the Page Limit Regarding its Motion to Disqualify Fish & Richardson, P.C. and Memorandum of Law in Support. Having considered the Motion, the Court finds it is meritorious and should be GRANTED.

IT IS THEREFORE ORDERED, that Time Warner Cable Inc. is authorized to exceed the usual page limits and to file, under seal, its Motion to Disqualify Fish & Richardson, P.C. and Memorandum of Law in Support.

SIGNED this 14th day of September, 2006.

_____
T. JOHN WARD
UNITED STATES DISTRICT JUDGE

**SEALED DOCUMENT**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| REMBRANDT TECHNOLOGIES, LP<br>Plaintiff,<br><br>v.<br><br>COMCAST CORPORATION, COMCAST<br>COMMUNICATIONS, LLC, and COMCAST<br>OF PLANO, LP<br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 2:05-CV-443 [TJW]<br><br>JURY |

---

**ORDER GRANTING FISH & RICHARDSON, P.C.'S MOTION FOR EXTENSION
OF TIME TO RESPOND TO MOTION TO DISQUALIFY AND
MEMORANDUM OF LAW IN SUPPORT**

---

It is the opinion of the Court that the Motion for Extension of Time to Respond to Motion

to Disqualify and Memorandum of Law in Support ("motion") filed by Fish & Richardson, P.C.

is well taken and should be granted.  It is therefore,

ORDERED that the motion is GRANTED and Fish & Richardson, P.C. shall have until

September 28, 2006, to file its response to Time Warner Cable Inc.'s Motion to Disqualify and

Memorandum of Law in Support.

SIGNED this 14th day of September, 2006.

_____
T. JOHN WARD
UNITED STATES DISTRICT JUDGE

1021.00001/326001.1

**Appendix K**

Revised: 12/3/03

FILED-CLERK
U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
### Marshall  DIVISION
## APPLICATION TO APPEAR PRO HAC VICE

06 SEP 20  AM 9: 57

TX EASTERN-MARSHALL

1. This application is being made for the following: Case # 2:05-cv-443 (TJW)

Style: Rembrandt Technologies, LP v. Comcast Corporation, et al    BY

2. Applicant is representing the following party/ies:

Time Warner Cable Inc.

3. Applicant was admitted to practice in  NY  (state) on  June 1988  (date).

4. Applicant is in good standing and is otherwise eligible to practice law before this court.

5. Applicant is not currently suspended or disbarred in any other court.

6. Applicant has/has not had an application for admission to practice before another court denied (please circle appropriate language). If so, give complete information on a separate page.

7. Applicant has/has not ever had the privilege to practice before another court suspended (please circle). If so, give complete information on a separate page.

8. Applicant has/has not been disciplined by a court or Bar Association or committee thereof that would reflect unfavorably upon applicant's conduct, competency or fitness as a member of the Bar (please circle).   If so, give complete information on a separate page.

9. Describe in detail on a separate page any charges, arrests or convictions for criminal offense(s) filed against you. Omit minor traffic offenses

10. There are no pending grievances or criminal matters pending against the applicant

11. Applicant has been admitted to practice in the following courts: New York, Eastern and Southern Districts of N.Y., the Court of Appeals for the Second Circuit.

12. Applicant has read and will comply with the Local Rules of the Eastern District of Texas, including Rule AT-3, the "Standards of Practice to be Observed by Attorneys"

13. Applicant has included the requisite $25 fee (see Local Rule AT-1(d))

14. Applicant understands that he/she is being admitted for the limited purpose of appearing in the case specified above only.

**Application Oath:**

I, Michael A. Rogoff  do solemnly swear (or affirm) that the above information is true; that I will discharge the duties of attorney and counselor of this court faithfully; that I will demean myself uprightly under the law and the highest ethics of our profession; and that I will support and defend the Constitution of the United States.

Date  9/18/06    Signature

Name (please print) <u>Michael A. Rogoff</u>

State Bar Number <u>2209179</u>

Firm Name: <u>Kaye Scholer LLP</u>

Address/P O Box: <u>425 Park Avenue</u>

City/State/Zip: <u>New York, NY 10022</u>

Telephone #: <u>(212) 836-8000</u>

Fax #: <u>(212)836-8689</u>

E-mail Address: <u>mrogoff@kayescholer.com</u>

Secondary E-Mail Address: _____

Applicant is authorized to enter an appearance as counsel for the party/parties listed above.  This application has been approved for the court this ___ day of _____, 20 06

David J Maland, Clerk

U.S. District Court, Eastern District of Texas

By _____

Deputy Clerk

Case 1:07-cv-00398-GMS   Document 188-13   Filed 06/28/2007   Page 1 of 2
Case 2:05-cv-00443-TJW-CE   Document 81   Filed 09/20/2006   Page 1 of 2
2-1-1066

FILED-CLERK
U.S. DISTRICT COURT

06 SEP 20  AM 9: 58

TX EASTERN-MARSHALL

BY _____

**Appendix K**

Revised: 12/3/03

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
### Marshall  DIVISION
### APPLICATION TO APPEAR PRO HAC VICE

1 This application is being made for the following: Case # 2:05-cv-443 (TJW)

Style: Rembrandt Technologies, LP v. Comcast Corporation, et al

2. Applicant is representing the following party/ies:

Time Warner Cable Inc.

3 Applicant was admitted to practice in __NY__ (state) on __May 1992__ (date)

4 Applicant is in good standing and is otherwise eligible to practice law before this court

5 Applicant is not currently suspended or disbarred in any other court

6. Applicant has/has not had an application for admission to practice before another court denied (please circle appropriate language) If so, give complete information on a separate page

7 Applicant has/has not ever had the privilege to practice before another court suspended (please circle) If so, give complete information on a separate page

8. Applicant has/has not been disciplined by a court or Bar Association or committee thereof that would reflect unfavorably upon applicant's conduct, competency or fitness as a member of the Bar (please circle)   If so, give complete information on a separate page

9 Describe in detail on a separate page any charges, arrests or convictions for criminal offense(s) filed against you  Omit minor traffic offenses.

10. There are no pending grievances or criminal matters pending against the applicant.

11 Applicant has been admitted to practice in the following courts:  New York, Eastern and Southern Districts of N.Y.

12 Applicant has read and will comply with the Local Rules of the Eastern District of Texas, including Rule AI-3, the "Standards of Practice to be Observed by Attorneys"

13 Applicant has included the requisite $25 fee (see Local Rule AI-1(d))

14 Applicant understands that he/she is being admitted for the limited purpose of appearing in the case specified above only

**Application Oath:**

I, David S. Benyacar do solemnly swear (or affirm) that the above information is true; that I will discharge the duties of attorney and counselor of this court faithfully; that I will demean myself uprightly under the law and the highest ethics of our profession; and that I will support and defend the Constitution of the United States.

Date 9/18/06         Signature _____

Name (please print) __David S. Benyacar__

State Bar Number ___2481794___

Firm Name: ___Kaye Scholer LLP___

Address/P O Box: __425 Park Avenue__

City/State/Zip: __New York, NY 10022__

Telephone #: __(212)836-8000__

Fax #: __(212)836-8689__

E-mail Address: __dbenyacar@kayescholer.com__

Secondary E-Mail Address: _____


Applicant is authorized to enter an appearance as counsel for the party/parties listed above. This application has been approved for the court this 20 day of _____Sept_____, 20 06

David J Maland, Clerk

U.S. District Court, Eastern District of Texas

By _____

Deputy Clerk

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| REMBRANDT TECHNOLOGIES, LP | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | C. A. No. 2:05cv443TJW |
| | § | |
| COMCAST CORPORATION, ET AL. | § | |
| | § | |
| *Defendant.* | § | |

## NOTICE OF APPEARANCE OF COUNSEL
## FOR DEFENDANTS, COMCAST CORPORATION; COMCAST CABLE
## COMMUNICATIONS, LLC; AND COMCAST OF PLANO, LP

Notice is hereby given that Harry L. Gillam, Jr. of Gillam & Smith, LLP enters his appearance on behalf of Defendants, COMCAST CORPORATION; COMCAST CABLE COMMUNICATIONS, LLC; and COMCAST OF PLANO, LP, in this matter as additional counsel.

Harry L. Gillam, Jr. may receive all communications from the Court and from other parties at Gillam & Smith, LLP, 303 South Washington Avenue, Marshall, Texas 75670; Telephone: (903) 934-8450; Facsimile: (903) 934-9257.

Respectfully submitted,

GILLAM & SMITH, LLP


  /s/
_____
Harry L. Gillam, Jr.
State Bar No. 07921800
GILLAM & SMITH, L.L.P.
303 South Washington Avenue
Marshall, Texas 75670

Telephone:  (903) 934-8450
Facsimile:  (903) 934-9257
Email:  gil@gillamsmithlaw.com

**ATTORNEY FOR DEFENDANTS,
COMCAST CORPORATION;
COMCAST CABLE
COMMUNICATIONS, LLC; and
COMCAST OF PLANO, LP**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  As such, this notice was served on all counsel who have consented to electronic service.  Local Rule CV-5(a)(3)(A).  Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by certified mail, return receipt requested, on this the 25th day of September, 2006.

/s/
_____
Harry L. Gillam, Jr.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| REMBRANDT TECHNOLOGIES, LP | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 2:05-CV-443 (TJW) |
| | § | |
| COMCAST CORPORATION, COMCAST | § | (JURY) |
| CABLE COMMUNICATIONS, LLC, AND | § | |
| COMCAST OF PLANO, LP | § | |
| | § | |
| Defendants | § | |

**PLAINTIFF REMBRANDT TECHNOLOGIES, LP'S OPPOSITION TO
TIME WARNER CABLE, INC.'S MOTION TO DISQUALIFY**

Plaintiff Rembrandt Technologies, LP ("Rembrandt") files this Response in Opposition to Intervenor Time Warner Cable, Inc.'s ("Time Warner") Motion to Disqualify Fish & Richardson ("F&R") as Rembrandt's counsel in this matter.

F&R has retained its own counsel to respond to Time Warner's claimed basis for disqualification, and Rembrandt understands that F&R's counsel will address why Time Warner fails to meet any of the legal standards governing disqualification. We, therefore, will not separately address those legal standards. Time Warner's motion, however, is more about a litigation strategy targeting Rembrandt than it is about any claimed legal prohibition on F&R's representation of Rembrandt in this matter. Therefore, we briefly will address two issues: (1) prejudice to Rembrandt and (2) waiver.

## I.    Prejudice to Rembrandt

Time Warner's assertion that disqualification of F&R will not prejudice Rembrandt is disingenuous.

It is undisputed that F&R has been preparing for and working in the Comcast litigation for over a year.  In that time, F&R has spent over six thousand hours learning the technology, reviewing documents, handling discovery disputes and the numerous other responsibilities of outside litigation counsel in a case of this complexity.  DECLARATION OF JOHN MELI at ¶ 3, attached as Exhibit A.  Rembrandt has paid over $2 million to F&R for that work.  *Id.*

Time Warner is well aware that Rembrandt cannot simply substitute in this case other counsel representing it in the Time Warner and Cox, *et al,* cases, notwithstanding its contrary assertion. Those other cases are in the very earliest stages of litigation.  Scheduling conferences have not been held, or even scheduled, in those cases.  Moreover, counsel in those cases have a significant workload preparing those cases.  They cannot simply drop their necessary work in those cases to become familiar with, and then take over, this case.

This case, by contrast, is well along, and a Markman hearing is scheduled for February 8, 2007.  Other counsel's familiarity with whatever facts and issues are common to the cases is only a tiny fraction of the two years of experience F&R has.  It is indisputable that a disqualification of F&R in this matter would result in a very significant delay in the progress of this action, and very significant damage to Rembrandt.

## II.   <u>Waiver</u>

It is Time Warner's position that F&R is in possession of such important confidential information that disqualification of F&R is required to protect against disclosure of that information.  Its very conduct in connection with this motion belies that assertion.  If Time Warner believed that the information which forms the basis of the instant motion requires such protection, it would have filed its brief – or at least its declarations – *in camera*.  In did not do so. Rather, Time Warner voluntarily disclosed its allegedly confidential information to every

attorney of record in this case – including attorneys representing Rembrandt in the Time Warner litigation. Time Warner was well aware that the law firms of Parker, Bunt & Ainsworth and Brown McCarroll, L.L.P. were counsel of record in both the Comcast and Time Warner actions, but they nevertheless provided the allegedly confidential information to them. Thus, due to Time Warner's own purposeful actions, counsel not only in the Comcast action, but also directly adverse to Time Warner in the Time Warner action, is now in possession of this information. Thus, to the extent the information was "confidential" for purposes of disqualification, Time Warner has waived any protection that such information would be afforded. *See, e.g., Nguyen, et al., v. Excel Corp.*, 197 F.3d 200, 207 (5th Cir. 1999) (holding that when confidential information is relayed to a third party, a communication is no longer confidential).

### III.   Conclusion

For the above reasons, and those stated in F&R's response, Time Warner's Motion should be denied.

DATED this 28[st] day of September, 2006.

Respectfully submitted,

By:  /s/ Otis W. Carroll by permission Andrew W. Spangler
Otis W. Carroll, Jr.   – Lead Attorney
State Bar No. 03895700
James Patrick Kelley
State Bar No. 11202500
Collin Maloney
State Bar No. 00764219
Ireland, Carroll & Kelley, PC
6101 S. Broadway, Suite 500
Tyler, TX 75703
Tel: 903-561-1600
Fax: 903-581-1071
E-mail:  fedserv@icklaw.com
E-mail:  info@icklaw.com

Robert M. Parker
State Bar No. 15498000
Robert Christopher Bunt
State Bar No. 00787165
Parker & Bunt, P.C.
100 East Ferguson, Ste. 1114
Tyler, TX 75702
Tel: 903-531-3535
Fax: 903-533-9687
E-mail: rmparker@cox-internet.com
E-mail: cbunt@cox-internet.com

S. Calvin Capshaw
State Bar No. 03783900
Elizabeth L. DeRieux
State Bar No. 05770585
Andrew W. Spangler
State Bar No. 24041960
Brown McCarroll, LLP
1127 Judson Rd, Suite 220
P.O. Box 3999
Longview, TX 75606-3999
Tel: 903-236-9800
Fax: 903-236-8787
E-mail: ccapshaw@mailbmc.com
E-mail: ederieux@mailbmc.com
E-mail: aspangler@mailbmc.com

Franklin Jones, Jr.
State Bar No. 00000055
Jones & Jones, Inc., P.C.
201 W. Houston St.
P.O. Drawer 1249
Marshall, TX 75670
Tel: 903-938-4395
Fax: 903-938-3360
E-mail: maizieh@millerfirm.com

ATTORNEYS FOR PLAINTIFF
REMBRANDT TECHNOLOGIES, LP

4

## CERTIFICATE OF SERVICE

I hereby certify that counsel of record who are deemed to have consented to electronic service are being served this 28th day of September, 2006, with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3). Any other counsel of record will be served by electronic mail, facsimile transmission and/or first class mail on this same date.

/s/ Andrew W. Spangler
Andrew W. Spangler

AUS:3777204.1
52670.1

5

# SEALED

# DOCUMENT

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

REMBRANDT TECHNOLOGIES, LP,

                            Plaintiff,

      v.

COMCAST CORPORATION; COMCAST
CABLE COMMUNICATIONS; LLC; and
COMCAST OF PLANO, LP,

                           Defendants.

Case No. 2:05-CV-443-TJW

Jury

## JOINT MOTION TO MODIFY DOCKET CONTROL ORDER

Defendants Comcast Corporation; Comcast Cable Communications, LLC; and Comcast of Plano, LP (collectively, "Comcast") submit this joint motion to modify the docket control order to extend the deadline for the parties to amend their pleadings from November 9, 2006 until November 26, 2006, and would respectfully show the Court as follows:

1.  On September 16, 2005, Plaintiff Rembrandt Technologies, LP ("Rembrandt") filed its Complaint in this Court alleging that Comcast committed acts of patent infringement. (Dkt. #1).

2.  On June 15, 2006, the Court entered a Docket Control Order, (*see* Dkt. #52), which set the deadline for the parties to amend their pleadings for November 9, 2006.

3.  The parties request that the Court modify the Docket Control Order to permit an additional two weeks, or up to and including November 27, 2006, for the parties to amend their pleadings. Also, in necessity thereof, the parties request that the deadline to respond to amended pleadings be extended two weeks until December 11, 2006.

4.   The Court can modify a Docket Control Order on a showing of good cause.  FED. R. CIV. P. 16(b); *S&W Enters. V. South Trust Bank*, 315 F.3d 533, 535 (5th Cir. 2003).  There is good cause to modify the current Docket Control Order to accommodate the extension of time for the parties to amend their pleadings, in order for additional discovery to be conducted prior to the deadline.

FOR THE FOREGOING REASONS the parties respectfully request that the Court enter the attached proposed Modified Docket Control Order, which provides the parties with an additional two weeks to amend their pleadings, and to respond to those amended pleadings.

By:_____/s/ Jennifer Haltom Doan_____
          Jennifer Haltom Doan
          Texas Bar No. 08809050
          John Peyton Perkins, III
          Texas Bar No. 24043457
          HALTOM & DOAN, LLP
          6500 Summerhill Road, Suite 1A
          P.O. Box 6227
          Texarkana, TX  75505-6227
          Telephone:  (903) 255-1000
          Facsimile:  (903) 255-0800

          Brian L. Ferrall
          Leo L. Lam
          Matthew M. Werdegar
          Eric H. MacMichael
          KEKER & VAN NEST, LLP
          710 Sansome Street
          San Francisco, CA  94111-1724
          Telephone:  (415) 391-5400
          Facsimile:  (415) 397-7188

          **ATTORNEYS FOR DEFENDANTS
          COMCAST CORPORATION,
          COMCAST CABLE
          COMMUNICATIONS, LLC; AND
          COMCAST OF PLANO, LP**

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). All other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by certified mail, return receipt requested, on this 29th day of September, 2006.


            /s/ Jennifer Haltom Doan
            Jennifer Haltom Doan

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| **REMBRANDT TECHNOLOGIES, LP** | § | |
| | § | |
| **V.** | § | **CIVIL NO. 2:05-CV-443(TJW)** |
| | § | |
| **COMCAST CORPORATION, ET AL.** | § | |

## MODIFIED DOCKET CONTROL ORDER

In accordance with the case scheduling conference held herein on the 2nd day of May, 2006, it is hereby

**ORDERED** that the following schedule of deadlines is in effect until further order of this court:

| | |
|---|---|
| **August 6, 2007** | Jury Selection - 9:00 a.m. in **Marshall, Texas** |
| **July 26, 2007** | Pretrial Conference - 9:30 a.m. in **Marshall, Texas** |
| **July 20, 2007** | Joint Pretrial Order, Joint Proposed Jury Instructions and Form of the Verdict. |
| **July 23, 2007** | **Motions in Limine (due three days before final Pre-Trial Conference).** |
| | Three (3) days prior to the pre-trial conference provided for herein, the parties shall furnish a copy of their respective Motions in Liming to the Court by facsimile transmission, 903/935-2295. The parties are directed to confer and advise the Court on or before 3:00 o'clock p.m. the day before the pre-trial conference which paragraphs are agreed to and those that need to be addressed at the pre-trial conference. |

| | |
|---|---|
| **July 6, 2007** | Response to Dispositive Motions (including *Daubert* motions)[1] |
| | **Responses to dispositive motions filed prior to the dispositive motion deadline, including *Daubert* Motions, shall be due in accordance with Local Rule CV-7(e). Motions for Summary Judgment shall comply with Local Rule CV56.** |
| **June 22, 2007** | For Filing Dispositive Motions and any other motions that may require a hearing (including *Daubert* motions) |
| **May 24, 2007** | Mediation to be completed |
| **May 23, 2007** | Defendant to Identify Trial Witnesses |
| **May 9, 2007** | Plaintiff to Identify Trial Witnesses |
| **May 9, 2007** | Discovery Deadline |
| **(Three weeks after the final expert witness report is due.)** | Expert Discovery Deadline |
| _____ | 30 Days after claim construction ruling Designate Rebuttal Expert Witnesses other than claims construction Expert witness report due Refer to Discovery Order for required information. |
| _____ | 15 Days after claim construction ruling Comply with P.R. 3-8. |
| _____ | 15 Days after claim construction ruling Party with the burden of proof to designate Expert Witnesses other than claims construction Expert witness report due Refer to Discovery Order for required information |

---

[1] The parties are directed to Local Rule CV-7(d), which provides in part that "[i]n the event a party fails to oppose a motion in the manner prescribed herein the court will assume that the party has no opposition." Local Rule CV-7(e) provides that a party opposing a motion has **12 days, in addition to any added time permitted under Fed. R. Civ. P. 6(e),** in which to serve and file a response and any supporting documents, after which the court will consider the submitted motion for decision.

| | |
|---|---|
| **February 8, 2007** | Claim construction hearing 9:00 a.m., **Marshall, Texas**. |
| **January 17, 2007** | Comply with P.R. 4-5(c). |
| **January 10, 2007** | Comply with P.R. 4-5(b). |
| **December 27, 2006** | Comply with P.R. 4-5(a). |
| **December 4, 2006** | Discovery deadline-claims construction issues |
| **December 11, 2006** | Respond to Amended Pleadings |
| **November 27, 2006** | Amend Pleadings<br>**(It is not necessary to file a Motion for Leave to Amend before the deadline to amend pleadings except to the extent the amendment seeks to add a new patent in suit. It is necessary to file a Motion for Leave to Amend after November 27, 2006).** |
| **November 9, 2006** | Comply with P.R. 4-3. |
| **October 10, 2006** | Comply with P.R. 4-2. |
| **July 7, 2006** | Privilege Logs to be exchanged by parties<br>(or a letter to the Court stating that there are no disputes as to claims of privileged documents). |
| **September 20, 2006** | Comply with P.R. 4-1. |
| **June 16, 2006** | Comply with P.R. 3-3. |
| **June 1, 2006** | Join Additional Parties. |
| **May 12, 2006** | Comply with P.R. 3-1. |

IT IS ORDERED that the Court will appoint a mediator in the above referenced case, as the parties have been unable to agree.

IT IS FURTHER ORDERED that the Court will appoint a technical advisor in this case, as the parties have been unable to agree.

## OTHER LIMITATIONS

1.  All depositions to be read into evidence as part of the parties' case-in-chief shall be EDITED so as to exclude all unnecessary, repetitious, and irrelevant testimony; ONLY those portions which are relevant to the issues in controversy shall be read into evidence.

2.  The Court will refuse to entertain any motion to compel discovery filed after the date of this Order unless the movant advises the Court within the body of the motion that counsel for the parties have first conferred in a good faith attempt to resolve the matter. See Eastern District of Texas Local Rule CV-7(h).

3.  The following excuses will not warrant a continuance nor justify a failure to comply with the discovery deadline:

    (a)  The fact that there are motions for summary judgment or motions to dismiss pending;

    (b)  The fact that one or more of the attorneys is set for trial in another court on the same day, unless the other setting was made prior to the date of this order or was made as a special provision for the parties in the other case;

    (c)  The failure to complete discovery prior to trial, unless the parties can demonstrate that it was impossible to complete discovery despite their good faith effort to do so.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| **REMBRANDT TECHNOLOGIES, LP** | § | |
| | § | |
| **V.** | § | **CIVIL NO. 2:05-CV-443(TJW)** |
| | § | |
| | § | |
| **COMCAST CORPORATION, ET AL.** | § | |

## MODIFIED DOCKET CONTROL ORDER

In accordance with the case scheduling conference held herein on the 2nd day of May, 2006, it is hereby

**ORDERED** that the following schedule of deadlines is in effect until further order of this court:

| | |
|---|---|
| **August 6, 2007** | Jury Selection - 9:00 a.m. in **Marshall, Texas** |
| **July 26, 2007** | Pretrial Conference - 9:30 a.m. in **Marshall, Texas** |
| **July 20, 2007** | Joint Pretrial Order, Joint Proposed Jury Instructions and Form of the Verdict. |
| **July 23, 2007** | **Motions in Limine (due three days before final Pre-Trial Conference).** |
| | Three (3) days prior to the pre-trial conference provided for herein, the parties shall furnish a copy of their respective Motions in Liming to the Court by facsimile transmission, 903/935-2295. The parties are directed to confer and advise the Court on or before 3:00 o'clock p.m. the day before the pre-trial conference which paragraphs are agreed to and those that need to be addressed at the pre-trial conference. |

| | |
|---|---|
| **July 6, 2007** | Response to Dispositive Motions (including *Daubert* motions)[1]<br>**Responses to dispositive motions filed prior to the dispositive motion deadline, including *Daubert* Motions, shall be due in accordance with Local Rule CV-7(e). Motions for Summary Judgment shall comply with Local Rule CV56.** |
| **June 22, 2007** | For Filing Dispositive Motions and any other motions that may require a hearing (including *Daubert* motions) |
| **May 24, 2007** | Mediation to be completed |
| **May 23, 2007** | Defendant to Identify Trial Witnesses |
| **May 9, 2007** | Plaintiff to Identify Trial Witnesses |
| **May 9, 2007** | Discovery Deadline |
| **(Three weeks after the final expert witness report is due.)** | Expert Discovery Deadline |
| _____ | 30 Days after claim construction ruling<br>Designate Rebuttal Expert Witnesses other than claims construction<br>Expert witness report due<br>Refer to Discovery Order for required information. |
| _____ | 15 Days after claim construction ruling Comply with P.R. 3-8. |
| _____ | 15 Days after claim construction ruling<br>Party with the burden of proof to designate Expert Witnesses other than claims construction<br>Expert witness report due<br>Refer to Discovery Order for required information |

---

[1] The parties are directed to Local Rule CV-7(d), which provides in part that "[i]n the event a party fails to oppose a motion in the manner prescribed herein the court will assume that the party has no opposition." Local Rule CV-7(e) provides that a party opposing a motion has **12 days, in addition to any added time permitted under Fed. R. Civ. P. 6(e),** in which to serve and file a response and any supporting documents, after which the court will consider the submitted motion for decision.

| | |
|---|---|
| **February 8, 2007** | Claim construction hearing 9:00 a.m., **Marshall, Texas**. |
| **January 17, 2007** | Comply with P.R. 4-5(c). |
| **January 10, 2007** | Comply with P.R. 4-5(b). |
| **December 27, 2006** | Comply with P.R. 4-5(a). |
| **December 4, 2006** | Discovery deadline-claims construction issues |
| **December 11, 2006** | Respond to Amended Pleadings |
| **November 27, 2006** | Amend Pleadings<br>**(It is not necessary to file a Motion for Leave to Amend before the deadline to amend pleadings except to the extent the amendment seeks to add a new patent in suit. It is necessary to file a Motion for Leave to Amend after November 27, 2006).** |
| **November 9, 2006** | Comply with P.R. 4-3. |
| **October 10, 2006** | Comply with P.R. 4-2. |
| **July 7, 2006** | Privilege Logs to be exchanged by parties<br>(or a letter to the Court stating that there are no disputes as to claims of privileged documents). |
| **September 20, 2006** | Comply with P.R. 4-1. |
| **June 16, 2006** | Comply with P.R. 3-3. |
| **June 1, 2006** | Join Additional Parties. |
| **May 12, 2006** | Comply with P.R. 3-1. |

IT IS ORDERED that the Court will appoint a mediator in the above referenced case, as the parties have been unable to agree.

IT IS FURTHER ORDERED that the Court will appoint a technical advisor in this case, as the parties have been unable to agree.

# OTHER LIMITATIONS

1.  All depositions to be read into evidence as part of the parties' case-in-chief shall be EDITED so as to exclude all unnecessary, repetitious, and irrelevant testimony; ONLY those portions which are relevant to the issues in controversy shall be read into evidence.


2.  The Court will refuse to entertain any motion to compel discovery filed after the date of this Order unless the movant advises the Court within the body of the motion that counsel for the parties have first conferred in a good faith attempt to resolve the matter. See Eastern District of Texas Local Rule CV-7(h).

3.  The following excuses will not warrant a continuance nor justify a failure to comply with the discovery deadline:

    (a)   The fact that there are motions for summary judgment or motions to dismiss pending;

    (b)   The fact that one or more of the attorneys is set for trial in another court on the same day, unless the other setting was made prior to the date of this order or was made as a special provision for the parties in the other case;

    (c)   The failure to complete discovery prior to trial, unless the parties can demonstrate that it was impossible to complete discovery despite their good faith effort to do so.

SIGNED this 3rd day of October, 2006.


_____

T. JOHN WARD
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| REMBRANDT TECHNOLOGIES, LP<br>Plaintiff,<br><br>v.<br><br>COMCAST CORPORATION, COMCAST<br>COMMUNICATIONS, LLC, and COMCAST<br>OF PLANO, LP<br>Defendants. | § § § § § § § § § § | Civil Action No. 2:05-CV-443 [TJW]<br><br>JURY  -- FILED UNDER SEAL |

---

### ORDER GRANTING FISH & RICHARDSON, P.C.'S UNOPPOSED MOTION FOR LEAVE TO EXCEED THE PAGE LIMIT REGARDING ITS OPPOSITION TO MOTION TO DISQUALIFY AND MEMORANDUM OF LAW IN SUPPORT

---

Before the Court is Fish & Richardson, P.C.'s Unopposed Motion for Leave to Exceed the Page Limit Regarding its Opposition to Motion to Disqualify and Memorandum of Law in Support. Having considered the Motion, the Court finds it is meritorious and should be GRANTED.

IT IS THEREFORE ORDERED, that Fish & Richardson, P.C. is authorized to exceed the usual limits and to file, under seal, its Opposition to Motion to Disqualify and Memorandum of Law in Support.

SIGNED this  3rd  day of October, 2006.

T. JOHN WARD
UNITED STATES DISTRICT JUDGE

SEALED DOCUMENT

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

REMBRANDT TECHNOLOGIES, LP

     v.

COMCAST CORPORATION; COMCAST
CABLE COMMUNICATIONS, LLC; AND
COMCAST OF PLANO, LP

Civil Action No. 2:05-cv-00443-TJW

### PLAINTIFF'S AGREED MOTION FOR EXTENSION OF TIME TO FILE P.R. 4-2 DISCLOSURES

Plaintiff Rembrandt Technologies, LP respectfully moves the Court for an extension of time to file its P.R. 4-2 disclosures.  Currently, Plaintiff's P.R. 4-2 disclosures are due October 10, 2006.  With counsel for Defendants' agreement, Plaintiff requests an extension of time to file its disclosures until October 13, 2006.  Plaintiff requests that the Court grants this motion and extend the deadline for Plaintiff to file its P.R. 4-2 disclosures until October 13, 2006.

Respectfully Submitted,

By: /s/ Otis Carroll ( with permission Collin Maloney)
    Otis Carroll
    State Bar No. 03895700
    James Patrick Kelley
    State Bar No. 11202500
    Collin Maloney
    State Bar No. 00794219
    Ireland, Carroll & Kelley, PC
    6101 S. Broadway, Suite 500
    Tyler, Texas 75703
    Tel: (903) 561-1600
    Fax: (903) 581-1071
    Email: Fedserv@icklaw.com

S. Calvin Capshaw
State Bar No. 03783900
Elizabeth L. DeRieux
State Bar No. 05770585
Andrew W. Spangler
State Bar No. 24041960
BROWN MCCARROLL LLP
1127 Judson Road, Suite 220 (75601-5157)
P O. Box 3999
Longview, TX 75606-3999
Tel: (903) 236-9800
Fax: (903) 236-8787
E-mail: ccapshaw@mailbmc.com
Email: ederieux@mailbmc.com
E-mail: aspangler@mailbmc.com

Robert M. Parker
State Bar No. 15498000
Robert Christopher Bunt
State Bar No. 00787165
PARKER, BUNT & AINSWORTH, P.C.
100 E. Ferguson, Suite 1114
Tyler, TX 75702
Tel: (903) 531-3535
Fax: (903) 533-9687
rcbunt@pbatyler.com
rmparker@pbatyler.com

Franklin Jones, Jr.
State Bar No. 00000055
JONES & JONES, INC. PC
201 W. Houston Street
P. O. Drawer 1249
Marshall, TX 75671-1249
Tel: (903) 938-4395
Fax: (903) 938-3360
Email: Maizieh@millerfirm.com

OF COUNSEL:
Frank E. Scherkenbach
Lawrence K. Kolodney
FISH & RICHARDSON, P.C.
225 Franklin Street
Boston, Massachusetts 02110

Telephone: (617) 542-5070
Facsimile: (617) 542-8906

Alan D. Albright
State Bar No. 00973650
FISH & RICHARDSON, P.C.
One Congress Plaza
4th Floor
111 Congress Avenue
Austin, Texas 78701
Telephone: (512) 391-4930
Facsimile: (512) 391-6837

Timothy Devlin
FISH & RICHARDSON
919 N. Market Street, Suite 1100
P.O. Box 1114
Wilmington, Delaware 19899
Telephone: (302) 652-5070
Facsimile: (302) 652-0607

**ATTORNEYS FOR PLAINTIFF**

CERTIFICATE OF CONFERENCE

Pursuant to Local Rule CV-7(h), movant has contacted opposing counsel and was informed that opposing counsel agrees to the relief requested herein.

/s/ Collin Maloney

CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was served on all parties via electronic delivery or U.S. mail this 10th day of October, 2006.

/s/ Collin Maloney

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

REMBRANDT TECHNOLOGIES, LP

v.

COMCAST CORPORATION; COMCAST
CABLE COMMUNICATIONS, LLC; AND
COMCAST OF PLANO, LP

Civil Action No. 2:05-cv-00443-TJW

**ORDER GRANTING MOTION TO EXTEND TIME TO FILE**

Before the Court is Plaintiff Rembrandt Technologies, LP's Motion to Extend

Time to file its P.R. 4-2 disclosures.  Having considered the matter, and that it is agreed,

the Court GRANTS the motion and extends Plaintiff's time to file P.R. 4-2 disclosures

until October 13, 2006.

SEALED
DOCUMENT

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| REMBRANDT TECHNOLOGIES, LP | Civil Action No. 2:05-cv-00443-TJW |
| v. | |
| COMCAST CORPORATION; COMCAST CABLE COMMUNICATIONS, LLC; AND COMCAST OF PLANO, LP | |

## JOINT MOTION TO AMEND THE PROTECTIVE ORDER

Pursuant to paragraph 24 of the Court's Protective Order (Docket No. 53), the parties jointly move to amend the Protective Order as set forth in the attached Stipulation and Proposed Order.  In support thereof, the parties state that the proposed amendments will facilitate the review of source code produced by third parties in connection with this litigation.

WHEREFORE, the parties request that the Court approve the attached Stipulation and Proposed Order.

Dated:  October 20, 2006

Respectfully submitted,

/s/ Otis Carroll _____

Otis Carroll
State Bar No. 03895700
Wesley Hill
State Bar No. 24032294
IRELAND, CARROLL & KELLEY, P.C.
6101 S. Broadway, Suite 500
Tyler, Texas 75703
Tel: (903) 561-1600
Fax: (903) 581-1071
Email: fedserv@icklaw.com

Frank E. Scherkenbach
Lawrence K. Kolodney
Michael H. Bunis
Denis Ticak
Thomas A. Brown
FISH & RICHARDSON P.C.
225 Franklin Street
Boston, MA 02110
Tel: 617-542-5070
Fax: 617-542-8906

Timothy Devlin
FISH & RICHARDSON P.C.
919 N. Market Street, Suite 1100
Wilmington, DE 19899-1114
Tel: 302-652-5070
Fax: 302-652-0607

Alan D. Albright
State Bar # 00973650
FISH & RICHARDSON P.C.
One Congress Plaza, 4th Floor
111 Congress Avenue
Austin, TX 78701
Tel: 512-391-4930
Fax; 512-591-6837

Counsel for Plaintiff
REMBRANDT TECHNOLOGIES, LP

/s/ Eric H. MacMichael
By permission Otis Carroll _____
Jennifer Haltom Doan
Texas Bar No. 08809050
John Peyton Perkins, III
Texas Bar No. 24043457
HALTOM & DOAN, LLP
6500 N. Summerhill Road, Suite 1A
P.O. Box 6227
Texarkana, TX 75505-6227
Telephone: 903-255-1000
Facsimile: 903-255-0800
Email: jdoan@haltomdoan.com

Brian L. Ferrall
Leo L. Lam
Eric H. MacMichael
Steven K. Yoda
KEKER & VAN NEST, LLP
710 Sansome Street
San Francisco, CA 94111-1704
Telephone: 415-676-2235
Facsimile: 415-397-7188

Counsel for Defendants
COMCAST CORPORATION; COMCAST
CABLE COMMUNICATIONS, LLC; AND
COMCAST OF PLANO, LP

## CERTIFICATE OF SERVICE

      The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on September 21, 2006 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(a)(3).  Any other counsel of record will be served by FedEx overnight delivery.

Brian L. Ferrall                      Attorneys for Defendants
Leo L. Lam, Esq.                    Comcast Corporation, Comcast Cable
Eric MacMichael                  Communications, LLC and Comcast of
Keker & Van Nest, L.L.P.           Plano, LP
710 Sansome Street
San Francisco, CA 94111-1704


Jennifer Haltom Doan              Attorneys for Defendants
John Peyton Perkins, III           Comcast Corporation, Comcast Cable
Haltom & Doan, LLP              Communications, LLC and Comcast of
6500 N. Summerhill Road          Plano, LP
Crown Executive Center, Suite 1A
P. O. Box 6227
Texarkana, TX 75505-6227

/s/ Otis Carroll

**JOINT MOTION TO AMEND THE PROTECTIVE ORDER  - PAGE 3**

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

**REMBRANDT TECHNOLOGIES, LP**

    v.

**COMCAST CORPORATION;**
**COMCAST CABLE**
**COMMUNICATIONS, LLC; AND**
**COMCAST OF PLANO, LP**

**Civil Action No. 2:05-cv-00443-TJW**

<u>**JOINT STIPULATION AND PROPOSED ORDER**</u>
<u>**TO AMEND THE PROTECTIVE ORDER**</u>

Plaintiff Rembrandt Technologies, LP ("Rembrandt") and Defendants Comcast

Corporation, Comcast Cable Communications, LLC, and Comcast of Plano, LP

("Comcast") hereby stipulate and jointly request, pursuant to paragraph 24 of the Court's

Protective Order (Docket No. 53) that the Protective Order be amended as set forth

below.

    1.    Replace paragraph 4(d) with the following:

        (d)    source code escrow agents, photocopy, document imaging and
database services, consultants retained by counsel to set up, maintain
and/or operate computer systems, litigation databases or to convert data
for inclusion in such databases.

    2.    Replace paragraphs 7 and 7(a) with the following:

        In addition to the terms set forth in paragraphs 4 through 6 herein
governing the disclosure of Confidential Information or Highly
Confidential Information, information or materials that contain, embody,
or otherwise reflect source code of a party or third party subpoenaed for
such source code in this litigation shall be provided the following further
protections.

        (a)    Any and all such source code, except for hard (non-electronic)
copies, shall be stored and viewed only at the facilities of one (1) agreed-

**JOINT STIPULATION AND PROPOSED ORDER**
**TO AMEND THE PROTECTIVE ORDER  - PAGE 1**

upon source code custodian ("Source Code Custodian"). The source code shall initially be deposited at a facility in the Los Angeles metropolitan region. After 45 days, the source code shall be transferred to a facility in the Dallas metropolitan region. Where source code is deposited by a third party, this subparagraph may be modified by written agreement of the parties and the third party depositing source code; in all other cases, this subparagraph may be modified by written agreement of the parties.

The parties further stipulate and request that all references to "Producing Party" in the Protective Order be construed to include third parties producing documents in this litigation.

Dated:  October 20, 2006

SO STIPULATED:

/s/ Otis Carroll                                    /s/ Eric H. MacMichael
                                                    By permission Otis Carroll_____

Otis Carroll                                        Jennifer Haltom Doan
State Bar No. 03895700                              Texas Bar No. 08809050
Wesley Hill                                         John Peyton Perkins, III
State Bar No. 24032294                              Texas Bar No. 24043457
IRELAND, CARROLL & KELLEY, P.C.                     HALTOM & DOAN, LLP
6101 S. Broadway, Suite 500                         6500 N. Summerhill Road, Suite 1A
Tyler, Texas 75703                                  P.O. Box 6227
Tel: (903) 561-1600                                 Texarkana, TX 75505-6227
Fax: (903) 581-1071                                 Telephone: 903-255-1000
Email: fedserv@icklaw.com                           Facsimile: 903-255-0800
                                                    Email: jdoan@haltomdoan.com

Frank E. Scherkenbach
Lawrence K. Kolodney                                Brian L. Ferrall
Michael H. Bunis                                    Leo L. Lam
Denis Ticak                                         Eric H. MacMichael
Thomas A. Brown                                     Steven K. Yoda
FISH & RICHARDSON P.C.                              KEKER & VAN NEST, LLP
225 Franklin Street                                 710 Sansome Street
Boston, MA 02110                                    San Francisco, CA 94111-1704
Tel: 617-542-5070                                   Telephone: 415-676-2235
Fax: 617-542-8906                                   Facsimile: 415-397-7188

Timothy Devlin                                      Counsel for Defendants
FISH & RICHARDSON P.C.                              COMCAST CORPORATION; COMCAST
919 N. Market Street, Suite 1100                    CABLE COMMUNICATIONS, LLC; AND
Wilmington, DE 19899-1114                           COMCAST OF PLANO, LP
Tel: 302-652-5070
Fax: 302-652-0607

Alan D. Albright
State Bar # 00973650
FISH & RICHARDSON P.C.
One Congress Plaza, 4th Floor
111 Congress Avenue
Austin, TX 78701
Tel: 512-391-4930
Fax; 512-591-6837

Counsel for Plaintiff
REMBRANDT TECHNOLOGIES, LP

**JOINT STIPULATION AND PROPOSED ORDER**
**TO AMEND THE PROTECTIVE ORDER  - PAGE 3**

IT IS SO ORDERED.

AO 456 (Rev. 5/85) Notice

# UNITED STATES DISTRICT COURT

_____EASTERN_____ DISTRICT OF _____TEXAS_____

REMBRANDT TECHNOLOGIES, LP
                    V.
COMCAST CORPORATION, ET AL.

**NOTICE**

CASE NUMBER:   2:05-CV-443(TJW)

TYPE OF CASE:

        X  **CIVIL**          **CRIMINAL**

X  **TAKE NOTICE** that a proceeding in this case has been set for the place, date, and time set forth below:

| PLACE<br>United States District Court<br>100 E. Houston Street<br>**MARSHALL, TX 75670** | ROOM NO.<br>Judge T. John Ward's Courtroom |
|---|---|
| | DATE AND TIME<br>October 30, 2006 @ 2:30 p.m. |

TYPE OF PROCEEDING

**HEARING ON PLAINTIFF'S MOTION TO COMPEL**

    **TAKE NOTICE** that a proceeding in this case has been continued as indicated below:

| PLACE | DATE AND TIME PREVIOUSLY<br>SCHEDULED | CONTINUED TO DATE<br>AND TIME |
|---|---|---|
| | | |

David J. Maland
US MAGISTRATE JUDGE OR CLERK OF COURT

October 23,  2006
DATE

Sonja H. Dupree
(BY) DEPUTY CLERK

TO:    ALL COUNSEL OF RECORD

**ACKNOWLEDGMENT**


**NOTICE TO COUNSEL:**  Please sign in the space provided below and return to the court by facsimile, **(903) 935-2295**, within three (3) days of your receipt of the enclosed notice.

_____


**I acknowledge receipt of the indicated notice on the date shown below.**


Case No. _____

Signature of Atty._____
                                                                    Date
Print Name of Atty._____

Counsel for _____
                        (Name of Party)


Type of Proceeding: _____
                              (e.g., Scheduling Conference)

Date of Proceeding: _____

Time of Proceeding: _____

Location of Proceeding: _____

AO 456 (Rev. 5/85) Notice

# UNITED STATES DISTRICT COURT

| EASTERN | DISTRICT OF | TEXAS |
|---|---|---|

| | |
|---|---|
| REMBRANDT TECHNOLOGIES, LP<br>V.<br>COMCAST CORPORATION, ET AL. | **NOTICE**<br><br>CASE NUMBER:  2:05-CV-443(TJW) |

TYPE OF CASE:

        X  **CIVIL**         **CRIMINAL**

**TAKE NOTICE** that a proceeding in this case has been set for the place, date, and time set forth below:

| PLACE | ROOM NO. |
|---|---|
| | DATE AND TIME |

TYPE OF PROCEEDING

**PLEASE NOTE THAT THE HEARING SET FOR 10/30/06 <u>HAS BEEN CANCELLED</u>.**

**TAKE NOTICE** that a proceeding in this case has been continued as indicated below:

| PLACE | DATE AND TIME PREVIOUSLY SCHEDULED | CONTINUED TO DATE AND TIME |
|---|---|---|
| | | |

| | |
|---|---|
| | David J. Maland<br>US MAGISTRATE JUDGE OR CLERK OF COURT |
| October 24,  2006<br>DATE | Sonja H. Dupree<br>(BY) DEPUTY CLERK |

TO:     ALL COUNSEL OF RECORD

## ACKNOWLEDGMENT

**NOTICE TO COUNSEL:** Please sign in the space provided below and return to the court by facsimile, **(903) 935-2295**, within three (3) days of your receipt of the enclosed notice.

_____

**I acknowledge receipt of the indicated notice on the date shown below.**

Case No. _____

Signature of Atty._____
                                                                Date
Print Name of Atty._____

Counsel for _____
                        (Name of Party)

Type of Proceeding: _____
                              (e.g., Scheduling Conference)

Date of Proceeding: _____

Time of Proceeding: _____

Location of Proceeding: _____

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

REMBRANDT TECHNOLOGIES, LP

      v.

COMCAST CORPORATION; COMCAST
CABLE COMMUNICATIONS, LLC; AND
COMCAST OF PLANO, LP

Civil Action No. 2:05-cv-00443-TJW

## <u>ORDER GRANTING MOTION TO EXTEND TIME TO FILE</u>

Before the Court is Plaintiff Rembrandt Technologies, LP's Motion to Extend Time to file its P.R. 4-2 disclosures. Having considered the matter, and that it is agreed, the Court GRANTS the motion and extends Plaintiff's time to file P.R. 4-2 disclosures until October 13, 2006.

SIGNED this 25th day of October, 2006.

_____
T. JOHN WARD
UNITED STATES DISTRICT JUDGE

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

REMBRANDT TECHNOLOGIES, LP

      v.

COMCAST CORPORATION;
COMCAST CABLE
COMMUNICATIONS, LLC; AND
COMCAST OF PLANO, LP

Civil Action No. 2:05-cv-00443-TJW

## JOINT STIPULATION AND ORDER
## TO AMEND THE PROTECTIVE ORDER

Plaintiff Rembrandt Technologies, LP ("Rembrandt") and Defendants Comcast

Corporation, Comcast Cable Communications, LLC, and Comcast of Plano, LP

("Comcast") hereby stipulate and jointly request, pursuant to paragraph 24 of the Court's

Protective Order (Docket No. 53) that the Protective Order be amended as set forth

below.

    1.    Replace paragraph 4(d) with the following:

        (d)    source code escrow agents, photocopy, document imaging and
database services, consultants retained by counsel to set up, maintain
and/or operate computer systems, litigation databases or to convert data
for inclusion in such databases.

    2.    Replace paragraphs 7 and 7(a) with the following:

        In addition to the terms set forth in paragraphs 4 through 6 herein
governing the disclosure of Confidential Information or Highly
Confidential Information, information or materials that contain, embody,
or otherwise reflect source code of a party or third party subpoenaed for
such source code in this litigation shall be provided the following further
protections.

        (a)    Any and all such source code, except for hard (non-electronic)
copies, shall be stored and viewed only at the facilities of one (1) agreed-

**JOINT STIPULATION AND PROPOSED ORDER**
**TO AMEND THE PROTECTIVE ORDER - PAGE 1**

upon source code custodian ("Source Code Custodian"). The source code shall initially be deposited at a facility in the Los Angeles metropolitan region. After 45 days, the source code shall be transferred to a facility in the Dallas metropolitan region. Where source code is deposited by a third party, this subparagraph may be modified by written agreement of the parties and the third party depositing source code; in all other cases, this subparagraph may be modified by written agreement of the parties.

The parties further stipulate and request that all references to "Producing Party" in the Protective Order be construed to include third parties producing documents in this litigation.

**JOINT STIPULATION AND PROPOSED ORDER**
**TO AMEND THE PROTECTIVE ORDER  - PAGE 2**

Dated: October 20, 2006

SO STIPULATED:

/s/ Otis Carroll _____

Otis Carroll
State Bar No. 03895700
Wesley Hill
State Bar No. 24032294
IRELAND, CARROLL & KELLEY, P.C.
6101 S. Broadway, Suite 500
Tyler, Texas 75703
Tel: (903) 561-1600
Fax: (903) 581-1071
Email: fedserv@icklaw.com

Frank E. Scherkenbach
Lawrence K. Kolodney
Michael H. Bunis
Denis Ticak
Thomas A. Brown
FISH & RICHARDSON P.C.
225 Franklin Street
Boston, MA 02110
Tel: 617-542-5070
Fax: 617-542-8906

Timothy Devlin
FISH & RICHARDSON P.C.
919 N. Market Street, Suite 1100
Wilmington, DE 19899-1114
Tel: 302-652-5070
Fax: 302-652-0607

Alan D. Albright
State Bar # 00973650
FISH & RICHARDSON P.C.
One Congress Plaza, 4th Floor
111 Congress Avenue
Austin, TX 78701
Tel: 512-391-4930
Fax; 512-591-6837

Counsel for Plaintiff
REMBRANDT TECHNOLOGIES, LP

/s/ Eric H. MacMichael
By permission Otis Carroll_____
Jennifer Haltom Doan
Texas Bar No. 08809050
John Peyton Perkins, III
Texas Bar No. 24043457
HALTOM & DOAN, LLP
6500 N. Summerhill Road, Suite 1A
P.O. Box 6227
Texarkana, TX 75505-6227
Telephone: 903-255-1000
Facsimile: 903-255-0800
Email: jdoan@haltomdoan.com

Brian L. Ferrall
Leo L. Lam
Eric H. MacMichael
Steven K. Yoda
KEKER & VAN NEST, LLP
710 Sansome Street
San Francisco, CA 94111-1704
Telephone: 415-676-2235
Facsimile: 415-397-7188

Counsel for Defendants
COMCAST CORPORATION; COMCAST
CABLE COMMUNICATIONS, LLC; AND
COMCAST OF PLANO, LP

**JOINT STIPULATION AND PROPOSED ORDER**
**TO AMEND THE PROTECTIVE ORDER - PAGE 3**

**IT IS SO ORDERED.**

SIGNED this 25th day of October, 2006.

_____
T. JOHN WARD
UNITED STATES DISTRICT JUDGE

**JOINT STIPULATION AND PROPOSED ORDER**
**TO AMEND THE PROTECTIVE ORDER  - PAGE 4**

FEE PAID
$25.00

**Appendix K**

Revised: 12/3/02

FILED CLERK
U.S. DISTRICT COURT
2006 OCT 24 PM 3: 42
TEXAS EASTERN
BY_____

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION
### APPLICATION TO APPEAR PRO HAC VICE

1 This application is being made for the following: Case # __2:05-CV-00443-TJW__

Style: Rembrandt Technologies, L.P. v. Comcast Communications, et al.

2. Applicant is representing the following party/ies:

Rembrandt Technologies, L.P.

3 Applicant was admitted to practice in __Texas__ (state) on __November 3, 1995__ (date)

4 Applicant is in good standing and is otherwise eligible to practice law before this court

5 Applicant is not currently suspended or disbarred in any other court

6 Applicant has/has not had an application for admission to practice before another court denied (please circle appropriate language) If so, give complete information on a separate page

7 Applicant has/has not ever had the privilege to practice before another court suspended (please circle) If so, give complete information on a separate page

8 Applicant has/has not been disciplined by a court or Bar Association or committee thereof that would reflect unfavorably upon applicant's conduct, competency or fitness as a member of the Bar (please circle) If so, give complete information on a separate page

9 Describe in detail on a separate page any charges, arrests or convictions for criminal offense(s) filed against you. Omit minor traffic offenses   NONE.

10 There are no pending grievances or criminal matters pending against the applicant

11 Applicant has been admitted to practice in the following courts:

W.D. Tex.; N.D. Tex.

12 Applicant has read and will comply with the Local Rules of the Eastern District of Texas, including Rule AI-3, the "Standards of Practice to be Observed by Attorneys."

13 Applicant has included the requisite $25 fee (see Local Rule AI-1(d)).

14 Applicant understands that he/she is being admitted for the limited purpose of appearing in the case specified above only.

**Application Oath:**

I, __Michael Chibib__ _____ do solemnly swear (or affirm) that the above information is true; that I will discharge the duties of attorney and counselor of this court faithfully; that I will demean myself uprightly under the law and the highest ethics of our profession; and that I will support and defend the Constitution of the United States

Date __10/23/2006__        Signature _____

Name (please print) Michael Chibib

State Bar Number 00793497 TX

Firm Name: Fish & Richardson, P.C.

Address/P.O. Box: 111 Congress Avenue, Suite 810

City/State/Zip: Austin, Texas 78701

Telephone #: 512-472-5070

Fax #: 512-320-8935

E-mail Address: chibib@fr.com

Secondary E-Mail Address: _____


Applicant is authorized to enter an appearance as counsel for the party/parties listed above. This
application has been approved for the court this 24 day of Oct , 20 06

David J Maland, Clerk

U.S. District Court, Eastern District of Texas

By _____

Deputy Clerk


LOGIN: mc6987

PASSWORD: nece4byj

SEALED

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| REMBRANDT TECHNOLOGIES, LP | |
| v. | Civil Action No. 2:05-cv-00443-TJW |
| COMCAST CORPORATION; COMCAST CABLE COMMUNICATIONS, LLC; AND COMCAST OF PLANO, LP | ORAL HEARING REQUESTED |

**EXPEDITED MOTION FOR CLARIFICATION REGARDING P.R. 3-1(h)
FILED BY REMBRANDT TECHNOLOGIES, LP**

**I.     INTRODUCTION**

On May 12, 2006, Plaintiff Rembrandt Technologies, LP ("Rembrandt") served very detailed infringement contentions on Defendants (collectively "Comcast"). Despite the comprehensive nature of Rembrandt's contentions, Comcast, citing P.R. 3-1(h), asserts that Rembrandt must supplement its infringement contentions over thirty times over the course of this case—every time a new batch of source code is produced by a third party in response to a subpoena. Because such a requirement would turn the purpose of the local patent rules on its head, morphing infringement contentions into moving targets, Rembrandt respectfully submits that this Court clarify Patent Rule 3-1(h), to confirm that Rembrandt need not supplement its Preliminary Infringement Contentions merely to cite evidence consistent with its previously served contentions or, alternatively, may supplement within 30 days of receipt of all source code.

The parties have agreed to brief this issue expeditiously. Accordingly, Defendants will file a response brief on Thursday, November 9, 2006. A reply, if any, would be filed Monday, November 13, and a sur-reply, if any, would be filed on Thursday, November 16. Rembrandt believes an oral hearing may be beneficial and therefore requests such.

## II.    BACKGROUND

In this patent infringement case, plaintiff Rembrandt Technologies, LP ("Rembrandt")

alleges that the defendants (collectively "Comcast") infringe four of Rembrandt's patents by

providing certain services over their cable network.  Specifically, Rembrandt contends that

Comcast infringes Rembrandt's U.S. Patent Nos. 4,937,819, 5,719,858, and 5,852,631 patents

(the "'819 patent," the "'858 patent," and the "'631 patent," respectively) by providing cable

internet service, and that Comcast infringes Rembrandt's U.S. Patent No. 5,243,627 (the "'627

patent") through Comcast's reception of digital television signals, for later retransmission over

Comcast's cable network.

Rembrandt served its Preliminary Infringement Contentions (attached as Exhibit A) on

May 12, 2006.  In those contentions, Rembrandt presented a thorough analysis of Comcast's

infringement.  Rembrandt's contentions were supported by citations to two industry standards—

the Data Over Cable Service Interface ("DOCSIS") standard, for the '819, '858, and '631

patents, and the Advanced Television Systems Committee ("ATSC") standard for the '627

patent. Comcast has since admitted that its cable modem products are compliant with the

DOCSIS standard and its digital television receivers are compliant with the ATSC standard. (*See*

Defendant Comcast Corporation's Responses to Plaintiff Rembrandt Technology, Inc.'s First Set

of Interrogatories (attached as Exhibit B) at 17 & 18.).  Comcast has never asserted that

Rembrandt's contentions do not comply with P.R. 3-1, nor has Comcast contended that

Rembrandt's contentions fail to provide notice to Comcast of how Rembrandt believes Comcast

is infringing.

Rembrandt requested that Comcast produce all source code for the Accused

Instrumentalities identified in Rembrandt's Preliminary Infringement Contentions.  In response,

Comcast stated that no source code was in its possession, custody, or control.  Comcast asserted

that each supplier of each of the devices used on Comcast's network retained control over the

source code of that device.  Rembrandt was therefore required to serve over thirty subpoenas on

these suppliers, seeking, among other documents, the source code to the devices used on

Comcast's network.

Nearly every supplier objected to Rembrandt's subpoena.  Rembrandt, however, secured

an agreement in principle from each supplier to produce source code.  To date, three suppliers,

Samsung Telecommunications America LLP, Arris Group, Inc., and Wegener Communications,

Inc., have in fact produced source code for Rembrandt's review.[1]  This code was made available

for review on October 10, 2006.[2]

Rembrandt immediately began its review of the source code that was available.  Based on

the information contained in this source code, Rembrandt determined that the code was

consistent with its earlier filed infringement contentions.  Rembrandt also discovered that the

chips used by many of these devices are supplied by separate chip manufacturers, who have

additional source code that may not be in the possession, custody, or control of the device

manufacturers.  Rembrandt promptly served subpoenas on these second-tier chip suppliers as

well.

On November 1, 2006, Rembrandt's counsel wrote to Comcast's counsel, noting that

Rembrandt's review of source code confirmed Rembrandt's infringement theory, and that, based

on Rembrandt's understanding, it was not required to supplement its infringement contentions in

these circumstances.  Rembrandt noted that, since its infringement contentions were sufficiently

detailed, any citation to source code would be merely a citation of evidence supporting

Rembrandt's infringement contentions, and no rule requires Rembrandt to cite all evidence

---

[1]   A fourth supplier, Terayon Communication Systems, Inc., also produced source code, but apparently for the wrong devices.

[2]   October 10, 2006 was the day that the escrow facility, required by this Court's Protective Order, was operational and ready to allow source code review.

supporting its contentions.  (*See* Exhibit C.)  Comcast replied on November 3, 2006 by arguing

that Rembrandt should, in fact, be required to cite source code from third parties as evidence of

infringement in its preliminary infringement contentions. (*See* Exhibit D.)  The parties also

sought to resolve this issue in a teleconference held on November 6, 2006, but were unable to do

so.  This motion followed.

## III.    ARGUMENT

### A.    This Court Should Not Require Rembrandt to Supplement Its Infringement Contentions Over Thirty Times Merely to Cite Evidence of Infringement

#### 1.    Where Comcast Has Conceded That Its Devices Comport With the Standards, Rembrandt Should Not Be Required to Cite Evidence Thereof in its Infringement Contentions

To date Rembrandt has identified over thirty suppliers who may have source code

relevant to this litigation.  While Rembrandt intends to supplement its contentions if the

production of source code requires a change in the contentions, such supplementation should not

be required where it would merely be a citation to evidence that supports Rembrandt's existing

contentions.

In its original infringement contentions, Rembrandt explained—in great detail—why a

device compliant with the ATSC or DOCSIS standards would infringe the patents-in-suit.[3]  In an

interrogatory response, Comcast admitted that its digital televisions comply with the ATSC

standard, and its cable modem devices comply with the DOCSIS standard.  (*See* Exhibit B at 17

& 18.)  To require Rembrandt to now supplement its infringement contentions in response to

each new production of source code, merely to prove what Comcast has already admitted, would

be wasteful in the extreme.[4]  Moreover, each such supplementation, under this Court's P.R. 3-

---

[3]    For the reasons set forth below, Rembrandt does not believe that these contentions preclude Rembrandt from introducing source code evidence that Comcast infringes the patents-in-suit through its use of certain devices, without reference to the standards, if necessary.

[4]    Rembrandt would, however, supplement its infringement contentions if its review of source code revealed a need to supplement.

1(f), could trigger a new set of Preliminary Invalidity Contentions, a situation that would result in substantial prejudice to Rembrandt.

In the circumstances of this case, source code should be treated like any other evidence: where it provides only supplemental evidence of infringement, it need not be cited in infringement contentions. If a plaintiff's infringement contentions provide sufficient notice to a defendant of why the defendant has infringed, the plaintiff need not identify all evidence supporting its infringement case in repeated supplemental infringement contentions, whether the additional evidence be deposition testimony, product manuals, or source code. No rule requires identification of all evidence supporting a party's infringement contentions, and there is no reason to believe that this Court created such a requirement solely with respect to source code in its P.R. 3-1(h). Rembrandt submits that the rules permit it to go forward with its infringement case, relying exclusively on source code evidence at trial, if need be, so long as Rembrandt's substantive contentions at trial are reflected in Rembrandt's infringement contentions.

Comcast's position, if accepted, would impose a disproportionately high burden on a plaintiff in a case where an Accused Instrumentality is software-based. Comcast contends that if an element is satisfied by software, a plaintiff must identify the source code for that software with specificity, even if a plaintiff has already sufficiently communicated the bases for its infringement contentions in its P.R. 3-1 statement. Moreover, Comcast argues that a plaintiff is not permitted to rely on any code other than that which is specifically identified. But Comcast cannot explain why this higher burden should apply to cases where a claim limitation is met by software, but not to any other accused products.

Comcast's position is particularly untenable in a case such as this one, where some devices may implement the claim elements in software, whereas others may implement the same claim element in hardware. Indeed, some devices may not perform a given claim limitation

except when used as specifically configured by Comcast.  In some instances, the implementation

may be in a fourth category, such as a field-programmable gate array—a device that is not

clearly hardware *or* software.  Comcast does not explain why Rembrandt should be required to

supplement its infringement contentions with respect to devices that satisfy a claim element in

software, whereas other devices that satisfy a claim element by virtue of their configuration, their

hardware, or some other mechanism, do not trigger a supplementation requirement.

     Patent Rule 3-1(h) is a rule implemented by the Court in an effort to resolve the dispute

wherein a plaintiff cannot otherwise comply with P.R. 3-1 without the production of defendants'

source code.  As this Court noted, "parties claiming patent infringement do not typically have

access to an opposing party's source code before filing suit" (Docket No. 28 at 19), precluding a

plaintiff from providing specific infringement contentions.  Specifically, it applies in a situation

where a party cannot "accurately indicate where the infringement occurs without the source

code."  *American Video Graphics, L.P. v. Electronic Arts, Inc.*, 359 F.Supp.2d 558, 560 (E.D.

Tex. 2005.)  Meanwhile, "parties opposing a claim for patent infringement are hampered in their

ability to prepare a defense ***absent specific infringement contentions*** from the party asserting

claims of patent infringement."  (Docket No. 28 at 19 (emphasis added).)  Here, however,

Rembrandt ***has*** served specific infringement contentions.  Rembrandt should be permitted to

bring before the jury all admissible evidence, including deposition and trial testimony, manuals,

diagrams, and source code.  To hold otherwise would result in a rule that punishes plaintiffs and

requires a higher discovery and admissibility standard for source code.

     Ultimately, the purpose of the patent local rules is to provide a party with early, sufficient

notice of the basis for the other party's contentions.  "The Patent Rules require a party asserting

claims of patent infringement to take a firm position in the litigation as it relates to infringement

early on in the case."  (Appendix C to Discovery Order, Docket No. 28, at 19.)  In seeking to

require near-continuous supplementation of Rembrandt's infringement contentions, Comcast

ignores this underlying purpose and instead would turn the contentions into an ongoing make-

work exercise.  Rembrandt should be permitted to supplement its infringement contentions if

source code requires a substantive change in the contentions.  Otherwise, Rembrandt should not

be required to supplement its contentions merely to provide additional, cumulative evidence of

Comcast's infringement.

### B. If Rembrandt Is Required to Cite Source Code Evidence, This Court Should Confirm that the Text of its Rule Permits a Single Supplementation Thirty Days After All Source Code Has Been Produced

This Court's P.R. 3-1(h) states:

> If a party claiming patent infringement asserts that a claim element
> is a software limitation, the party need not comply with P.R. 3-1
> for those claim elements until ***30 days after source code for each***
> ***Accused Instrumentality is produced*** by the opposing party.
> ***Thereafter***, the party claiming patent infringement shall identify,
> on an element-by-element basis for each asserted claim, what
> source code of each Accused Instrumentality allegedly satisfies the
> software limitations of the asserted claim elements.

(Docket No. 28 at 19-20 (emphasis added).)  Thus, the party claiming patent infringement need

not identify what source code satisfies the software limitations of an asserted claim element until

30 days after source code for ***each*** Accused Instrumentality is produced.

In this case, only three of over thirty third party suppliers have produced source code.  If

this Court were to require Rembrandt to supplement its infringement contentions thirty days after

***any*** source code is produced, Rembrandt would potentially be required to supplement its

contentions thirty or more times, a process that would become highly burdensome, while serving

little purpose.

If this Court holds that Rembrandt must supplement its infringement contentions by

providing a citation to source code evidencing Comcast's infringement, this Court should not

require repeated supplementations, but rather should permit Rembrandt to supplement a single

time, thirty days after all source code has been produced.

7

IV.     **CONCLUSION**

For the foregoing reasons, Rembrandt respectfully requests that this Court order that Rembrandt need not submit supplemental infringement contentions merely to cite source code evidence supporting Rembrandt's previous infringement contentions, or, alternatively, that supplemental contentions may be submitted 30 days after receipt of all source code.

Respectfully submitted,

Dated: November 6, 2006                                    FISH & RICHARDSON P.C.


                                         By: /s/ Thomas A. Brown by permission Andrew W. Spangler
                                              Otis Carroll
                                              State Bar No. 03895700
                                              Wesley Hill
                                              State Bar No. 24032294
                                              IRELAND, CARROLL & KELLEY, P.C.
                                              6101 S. Broadway, Suite 500
                                              Tyler, Texas 75703
                                              Tel: (903) 561-1600
                                              Fax: (903) 581-1071
                                              Email: fedserv@icklaw.com

                                              Frank E. Scherkenbach
                                              Lawrence K. Kolodney
                                              Michael H. Bunis
                                              Thomas A. Brown
                                              FISH & RICHARDSON P.C.
                                              225 Franklin Street
                                              Boston, MA 02110
                                              Tel: 617-542-5070
                                              Fax: 617-542-8906

                                              Timothy Devlin
                                              FISH & RICHARDSON P.C.
                                              919 N. Market Street, Suite 1100
                                              Wilmington, DE 19899-1114
                                              Tel: 302-652-5070
                                              Fax: 302-652-0607

                                              Alan D. Albright
                                              State Bar # 00973650
                                              FISH & RICHARDSON P.C.
                                              One Congress Plaza, 4th Floor
                                              111 Congress Avenue
                                              Austin, TX 78701
                                              Tel: 512-391-4930
                                              Fax; 512-591-6837

                                         Attorneys for Plaintiff
                                         REMBRANDT TECHNOLOGIES, LP

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on November 6, 2006 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(a)(3).

| | |
|---|---|
| Brian L. Ferrall<br>Leo L. Lam, Esq.<br>Eric MacMichael<br>Keker & Van Nest, L.L.P.<br>710 Sansome Street<br>San Francisco, CA 94111-1704 | Attorneys for Defendants<br>Comcast Corporation, Comcast Cable<br>Communications, LLC and Comcast of<br>Plano, LP |
| Jennifer Haltom Doan<br>John Peyton Perkins, III<br>Haltom & Doan, LLP<br>6500 N. Summerhill Road<br>Crown Executive Center, Suite 1A<br>P. O. Box 6227<br>Texarkana, TX 75505-6227 | Attorneys for Defendants<br>Comcast Corporation, Comcast Cable<br>Communications, LLC and Comcast of<br>Plano, LP |

/s/ Andrew W. Spangler

21470909

# EXHIBIT A PART 1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| REMBRANDT TECHNOLOGIES, LP | |
| Plaintiff, | Case No. 2:05-CV-443 (TJW) |
| v. | Jury Trial Demanded |
| COMCAST CORPORATION, COMCAST CABLE COMMUNICATIONS, LLC, and COMCAST OF PLANO, LP, | |
| Defendant. | |

### PLAINTIFF'S DISCLOSURE OF ASSERTED CLAIMS AND PRELIMINARY INFRINGEMENT CONTENTIONS

**Preliminary Infringement Analysis for U.S. Patent No. 5,243,627**

**A.**    **Identification of Infringed Claims**

Pursuant to Local Patent Rule 3-1(a), Rembrandt hereby identifies claims 9 and

19 of U.S. Patent No. 5,243,627 ("the '627 patent") as being infringed by defendants.

**B.**    **Identification of Accused Instrumentalities**

Defendants infringe claims 9 and 19 of the '627 patent by their use of digital

television receivers that are compliant with the Digital Television Standard, published by

the Advanced Television Systems Committee, including the original standard published

on September 15, 1995, and all subsequent revisions, including Revision D with

Amendment No. 1, published on July 27, 2005 (collectively the "ATSC Digital TV

Standard.") It is believed that all digital television receivers capable of receiving

terrestrial over-the-air digital television signals broadcast in the United States by FCC

licensed television stations are compliant with the ATSC Digital TV Standard.

Accordingly, pursuant to Local Patent Rule 3-1(b), plaintiff identifies as the

Accused Instrumentality any use by defendants of digital television receivers to receive

terrestrial over-the-air digital television signals broadcast in the United States by FCC

licensed television stations, including but not limited to reception of such signals for the

purpose of redistribution of the programming of such stations to subscribers of the cable

systems owned and/or operated by defendants. Plaintiffs do not currently know the

names or model numbers of the digital television receivers used by defendants.

**C.**    **Preliminary Infringement Claim Charts**

Pursuant to Local Patent Rule 3-1(c), plaintiff provides the following claim chart,

attached as Exhibit A, that explains how digital television receivers that are compliant

with the ATSC Digital Television Standard necessarily infringe the asserted claims. The

citations to the ATSC Digital Television Standard are included for reference, but should not be construed as limiting.

**D.    Reliance on the Doctrine of Equivalents**

Pursuant to Patent Local Rule 3-1(d), Plaintiff presently contends that Defendant's use of digital television receivers that are compliant with the ATSC Digital Television Standard infringes the identified claims, literally, or by equivalents, as set forth in the claim chart attached as Exhibit A. In the event that claim construction or discovery determinations or facts of which plaintiff is not currently aware suggest alternative explanations of such infringement, plaintiff reserves the right to provide such explanations in a supplemental disclosure. Plaintiff has included certain contentions regarding doctrine of equivalents, but reserves the right to modify or supplement any such contentions to the extent made relevant by the Court's claim construction ruling.

In the event that discovery reveals that the Accused Instrumentalities utilized by defendants implement the claimed invention in software, plaintiff reserves the right, pursuant to Judge Ward's modification to the Local Patent Rules, Rule 3-1(h), to provide supplemental infringement contentions within 30 days of the production of source code for such software, should such supplemental contentions be necessary.

**E.    Statement of Earliest Priority Date**

Pursuant to Patent Local Rule 3-1(e), Plaintiff states that the earliest priority date all claims of the '627 Patent are entitled to is the August, 22, 1991 filing date of the '627 patent.

2

F.    **Identification of Instrumentalities Embodying the Patent**

Pursuant to Patent Local Rule 3-1(f), Plaintiff states that it does not manufacture any products that embody the claims of the '627 Patent.

PARKER & BUNT, P.C.

/s/ Robert Christopher Bunt
Robert Christopher Bunt
    State Bar No. 00787165
PARKER & BUNT, P.C.
100 E. Ferguson, Suite 1114
Tyler, Texas 75702
Tel: 903/531-3535
Fax: 903/533-9687
E-mail: cbunt@cox-internet.com

Robert M. Parker
State Bar No. 15498000
PARKER & BUNT, P.C.
100 E. Ferguson, Suite 1114
Tyler, Texas 75702
Tel: 903-531-3535
Fax: 903-533-9687
E-mail: rmparker@cox-internet.com

3

Otis Carroll – Lead Attorney
State Bar No. 03895700
IRELAND, CARROLL & KELLEY, P.C.
6101 S. Broadway, Suite 500
Tyler, Texas 75703
Tel: (903) 561-1600
Fax: (903) 581-1071
E-mail: Fedserve@icklaw.com

OF COUNSEL:

Frank E. Scherkenbach
Lawrence K. Kolodney
FISH & RICHARDSON P.C.
225 Franklin Street
Boston, Massachusetts 02110
Tel: (617) 542-5070
Fax: (617) 542-8906

Alan D. Albright
State Bar No. 00973650
FISH & RICHARDSON P.C.
One Congress Plaza, 4th Floor
111 Congress Avenue
Austin, Texas 78701
Tel: (512) 391-4930
Fax: (512) 391-6837

Timothy Devlin
FISH & RICHARDSON P.C.
919 Market Street, Suite 1100
P.O. Box 1114
Wilmington, Delaware 19899
Tel: (302) 652-5070
Fax: (302) 652-0607

Franklin Jones, Jr.
State Bar No. 00000055
JONES & JONES, INC., P.C.
201 West Houston Street, Drawer 1249
Marshall, Texas 75671-1249
Tel: 903-938-4395
Fax: 903-938-3360
E-mail: maizieh@millerlawfirm.com

4

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 21, 2006, a true and correct copy of this document was served on the following attorneys of record at the address and in the manner indicated:

**BY ELECTORNIC MAIL AND**
**FEDERAL EXPRESS**
Brian L. Ferrall
Keker & Van Nest
710 Sansome Street
San Franciscco, CA  94111

**VIA ELECTRONIC MAIL AND**
**FEDERAL EXPRESS**
John Peyton Perkins, III
James N. Haltom
Haltom & Doan, LLP
6500 N. Summerhill Road, Suite 1A
P.O. Box 6227
Texarkana, TX 75505-6227

*/S/ Timothy Devlin*
Timothy Devlin

7

# EXHIBIT A

| 9. | Receiver apparatus for recovering information | Rembrandt does not express a position at this time as to whether this portion of the preamble of this claim limits the claim's scope. Nevertheless, Rembrandt identifies below aspects of the Accused Instrumentalities that correspond to this portion of the claim preamble.

The Accused Instrumentalities are television receivers that recover information from digital TV signals. |
| | from a received stream of trellis encoded signal points, | Rembrandt does not express a position at this time as to whether this portion of the preamble of this claim limits the claim's scope. Nevertheless, Rembrandt identifies below aspects of the Accused Instrumentalities that correspond to this portion of the claim preamble.

The Accused Instrumentalities are receivers that receive digital television signals transmitted in compliance with the ATSC Standard. The ATSC Standard provides that terrestrial broadcast signals be trellis encoded to generate a stream of trellis encoded VSB signal points. (*See, e.g.,* ATSC Digital TV Standard (original), pp. 51-55; Revision B, pp. 56-59; Revision C, pp. 63-67; Revision D, pp. 67-71.) The receivers, in turn, must demodulate the received VSB signals to generate a stream of trellis encoded VSB signal points.

In the event this portion of the preamble is construed as limiting and found to be not literally present in the Accused Instrumentalities, Rembrandt contends that that the Accused Instrumentalities meet the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Instrumentalities are insubstantial. The aforementioned features perform substantially the same function (providing information to a receiver), in |

| | | |
|---|---|---|
| | substantially the same way (using convolutional encoders to generate a sequence of values that control the output of a digital modulator), to achieve substantially the same result (encoding signals for transmission that may be received by a receiver and demodulated to provide digital values), as the recited limitation.

This claim element may include features that relate to software of the Accused Instrumentalities, and Rembrandt reserves the right to supplement or modify these contentions under Judge Ward's modification to the Local Patent Rules, Rule 3-1(h). | |
| said signal points having been transmitted to said receiver apparatus by transmitter apparatus which generates said signal points by generating a plurality of streams of trellis encoded channel symbols in response to respective portions of said information, | | Rembrandt does not express a position at this time as to whether this portion of the preamble of this claim limits the claim's scope. Nevertheless, Rembrandt identifies below aspects of the Accused Instrumentalities that correspond to this portion of the claim preamble.

A transmitter compliant with the ATSC Standard is required to have twelve trellis encoders operating in parallel, or an equivalent circuit or software module. (*See* ATSC Standard Figure D8, p. 57 and associated text.) Each trellis encoder receives a stream of 8-bit Reed-Solomon symbols generated by an upstream Reed-Solomon encoder. (*See, e.g.*, ATSC Digital TV Standard (original) Figure 1, p. 47, Figure 5, p. 51, Table 2, p. 54 and p 50; Revision B, Figure D1, p. 51, Figure D5, p. 55, Table D2, p. 59, and pp. 54-55; Revision C, Figure D1, p. 58, Figure D5, p. 62, Table D2, p. 66 and pp. 61-62; Revision D, Figure D5.1, p. 60, Figure D5.2, p. 61, Figure D5.6, p. 66, Table D5.2, p. 70, and pp. 65-66.) Each trellis encoder trellis encodes each received Reed-Solomon symbol in response to the symbols to generate a trellis encoded channel symbol. As each trellis encoder generates successive trellis encoded channel symbols, it generates a stream of trellis encoded channel symbols. The twelve trellis encoders therefore generate a plurality of streams of trellis encoded channel symbols. ATSC compliant |

2

| | |
|---|---|
| | receivers must be capable of recovering information encoded in this fashion.

In the event this portion of the preamble is construed as limiting and found to be not literally present in the Accused Instrumentalities, Rembrandt contends that that the Accused Instrumentalities meet the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Instrumentalities are insubstantial. The aforementioned features perform substantially the same function (receiving a signal including a number of streams of encoded information), in substantially the same way (receiving signals transmitted using multiple convolutional encoders or an emulation thereof, to achieve substantially the same result (generating respective streams of encoded data in response to respective portions of an input stream), as the recited limitation.

This claim element may include features that relate to software of the Accused Instrumentalities, and Rembrandt reserves the right to supplement or modify these contentions under Judge Ward's modification to the Local Patent Rules, Rule 3-1(h). |
| each of said channel symbols being comprised of a plurality of signal points, | Rembrandt does not express a position at this time as to whether this portion of the preamble of this claim limits the claim's scope. Nevertheless, Rembrandt identifies below aspects of the Accused Instrumentalities that correspond to this portion of the claim preamble.

Each trellis encoded channel symbol encoded by one of the twelve trellis encoders in an ATSC compliant transmitter comprises four Vestigial Sideband (VSB) values (signal points), that are provided to the VSB modulator. (See, e.g. ATSC Digital TV Standard (original), pp. 51–52; Revision B, pp. 56–57; Revision C, pp. 63–64; Revision D; pp. 67–69.) An ATSC compliant receiver must be capable of recovering information |

| | |
|---|---|
| | encoded in this fashion.

In the event this portion of the preamble is construed as limiting and found to be not literally present in the Accused Instrumentalities, Rembrandt contends that that the Accused Instrumentalities meet the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Instrumentalities are insubstantial. The aforementioned features perform substantially the same function (providing an encoded signal from a transmitter that uses multiple convolutional encoders or an emulation thereof), in substantially the same way (generating, for respective input values processed by a convolutional encoder, multiple output values for controlling a digital modulator), to achieve substantially the same result (producing multiple values for controlling the output of a digital modulator), as the recited limitation.

This claim element may include features that relate to software of the Accused Instrumentalities, and Rembrandt reserves the right to supplement or modify these contentions under Judge Ward's modification to the Local Patent Rules, Rule 3-1(h). |
| and by interleaving the signal points of said generated channel symbols to form said stream of trellis encoded signal points, | Rembrandt does not express a position at this time as to whether this portion of the preamble of this claim limits the claim's scope. Nevertheless, Rembrandt identifies below aspects of the Accused Instrumentalities that correspond to this portion of the claim preamble.

The signal points output by respective ones of the twelve trellis encoders in an ATSC compliant transmitter are interleaved by an output multiplexer that outputs, for a given segment, one signal point from each trellis encoder every twelve time periods, thus forming a stream of trellis encoded signal points. (See, e.g., ATSC Digital TV Standard (original), Table 2, p. 54; Revision B, |

4

| | |
|---|---|
| | Table D2, p. 59; Revision C, Table D2, p. 66; Revision D, Table D5.2, p. 70.) An ATSC compliant receiver must be capable of recovering information encoded in this fashion.<br><br>In the event this portion of the preamble is construed as limiting and found to be not literally present in the Accused Instrumentalities, Rembrandt contends that that the Accused Instrumentalities meet the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Instrumentalities are insubstantial. The aforementioned features perform substantially the same function (intermixing values for a digital modulator), in substantially the same way (arranging the output values from a single encoder in a pre-determined manner), to achieve substantially the same result (a stream of intermixed values in which values from multiple encoders are intermixed together according to the prearranged pattern), as the recited limitation.<br><br>This claim element may include features that relate to software of the Accused Instrumentalities, and Rembrandt reserves the right to supplement or modify these contentions under Judge Ward's modification to the Local Patent Rules, Rule 3-1(h). |
| said interleaving being carried out in such a way that the signal points of each channel symbol are non-adjacent in said stream of trellis encoded signal points | Rembrandt does not express a position at this time as to whether this portion of the preamble of this claim limits the claim's scope. Nevertheless, Rembrandt identifies below aspects of the Accused Instrumentalities that correspond to this portion of the claim preamble.<br><br>The signal points (VSB values) from each trellis encoded channel symbol (trellis encoded Reed-Solomon symbol) in an ATSC compliant transmitter are non-adjacent in the stream of trellis encoded signal points. (*See, e.g.*, ATSC Digital TV Standard (original), Table 2, p. 54; Revision B, Table D2, |

5

| | |
|---|---|
| | p. 59; Revision C, Table D2, p. 66; Revision D, Table D5.2, p. 70.) An ATSC compliant receiver must be capable of recovering information encoded in this fashion.<br><br>In the event this portion of the preamble is construed as limiting and found to be not literally present in the Accused Instrumentalities, Rembrandt contends that that the Accused Instrumentalities meet the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Instrumentalities are insubstantial. The aforementioned features perform substantially the same function (separating the output values of a given convolutional encoder that correspond to a single input symbol), in substantially the same way (intermixing output values from respective convolutional encoders), to achieve substantially the same result (creating a stream of output values for controlling the input of a digital modulator, so that values corresponding to a single input symbol are spaced apart in the stream), as the recited limitation.<br><br>This claim element may include features that relate to software of the Accused Instrumentalities, and Rembrandt reserves the right to supplement or modify these contentions under Judge Ward's modification to the Local Patent Rules, Rule 3-1(b). |
| and such that the signal points of adjacent symbols in any one of said channel symbol streams are non-adjacent in said stream of trellis encoded signal points, | Rembrandt does not express a position at this time as to whether this portion of the preamble of this claim limits the claim's scope. Nevertheless, Rembrandt identifies below aspects of the Accused Instrumentalities that correspond to this portion of the claim preamble.<br><br>The signal points that make up adjacent trellis encoded channel symbols generated by any given trellis encoder in an ATSC compliant transmitter are themselves non-adjacent in the output stream. (See, e.g., ATSC Digital TV |

| | Standard (original), Table 2, p. 54; Revision B, Table D2, p. 59; Revision C, Table D2, p. 66; Revision D, Table D5.2, p. 70.) An ATSC compliant receiver must be capable of recovering information encoded in this fashion. |
| | In the event this portion of the preamble is construed as limiting and found to be not literally present in the Accused Instrumentalities, Rembrandt contends that that the Accused Instrumentalities meet the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Instrumentalities are insubstantial. The aforementioned features perform substantially the same function (separating the output values of a given convolutional encoder that correspond to adjacent input symbol to that encoder), in substantially the same way (intermixing output values from multiple respective convolutional encoders), to achieve substantially the same result (creating a stream of output values for controlling the input of a digital modulator, so that values corresponding to adjacent input symbols for a given convolutional encoder are spaced apart in the stream), as the recited limitation. |
| | This claim element may include features that relate to software of the Accused Instrumentalities, and Rembrandt reserves the right to supplement or modify these contentions under Judge Ward's modification to the Local Patent Rules, Rule 3-1(h). |
| said receiver apparatus comprising<br><br>means for deinterleaving the interleaved signal points to recover said plurality of streams of trellis encoded channel symbols, and | The Accused Instrumentalities include electronics and/or one or more processors executing code that implement the following features. ATSC Standard compliant receivers necessarily have deinterleaving circuitry or software that allocates received signal points to respective trellis decoder circuits or software modules, or an equivalent circuit or software module, thus recovering the twelve streams of trellis encoded channel symbols generated by the transmitter. (See, e.g., Guide to Use of the ATSC DTV |

| | |
|---|---|
| | Standard (published as Document A/54A by ATSC on December 4, 2003) at Figure 9.11, p. 99.)<br><br>In the event this limitation is construed or applied in such a way that it is found not to be literally present in the Accused Instrumentalities, Rembrandt contends that the Accused Instrumentalities meet the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Instrumentalities are insubstantial. The aforementioned features perform substantially the same function (forming streams of demodulated signal values), in substantially the same way (allocating the received signal points t values), to achieve substantially the same result (streams of demodulated signal values), as the recited limitation.<br><br>This claim element may include features that relate to software of the Accused Instrumentalities, and Rembrandt reserves the right to supplement or modify these contentions under Judge Ward's modification to the Local Patent Rules, Rule 3-1(h). |
| a distributed Viterbi decoder for recovering said information from the deinterleaved signal points. | On information and belief, ATSC Standard compliant receivers necessarily have a distributed Viterbi decoder, or an equivalent circuit or software module, that recovers the originally encoded information encoded by the distributed trellis encoder described in the ATSC Standard. (See, e.g., Guide to Use of the ATSC DTV Standard (published as Document A/54A by ATSC on December 4, 2003) at Figure 9.11, p. 99.)<br><br>In the event this limitation is construed or applied in such a way that it is found not to be literally present in the Accused Instrumentalities, Rembrandt contends that the Accused Instrumentalities meet the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused |

| | | |
|---|---|---|
| | | Instrumentalities are insubstantial. The aforementioned features perform substantially the same function (processing separate streams of demodulated digital values), in substantially the same way (using separate instances of a maximum-likelihood algorithm), to achieve substantially the same result (recovering the previously encoded information), as the recited limitation.<br><br>This claim element may include features that relate to software of the Accused Instrumentalities, and Rembrandt reserves the right to supplement or modify these contentions under Judge Ward's modification to the Local Patent Rules, Rule 3-1(h). |
| 19. | 19. A method for use in a receiver to recover information | Rembrandt does not express a position at this time as to whether this portion of the preamble of this claim limits the claim's scope. Nevertheless, Rembrandt identifies below aspects of the Accused Instrumentalities that correspond to this portion of the claim preamble.<br><br>The Accused Instrumentalities are television receivers that recover information from digital TV signals utilizing the claimed method. |
| | from a received stream of trellis encoded signal points, | Rembrandt does not express a position at this time as to whether this portion of the preamble of this claim limits the claim's scope. Nevertheless, Rembrandt identifies below aspects of the Accused Instrumentalities that correspond to this portion of the claim preamble.<br><br>The Accused Instrumentalities are receivers that receive digital television signals transmitted in compliance with the ATSC Standard. The ATSC Standard provides that terrestrial broadcast signals be trellis encoded to generate a stream of trellis encoded VSB signal points. (See, e.g., ATSC Digital TV Standard (original), pp. 51-55; Revision B, pp. 56-59; Revision C, pp. 63-67; Revision D, pp. 67-71. The receivers, in turn, must demodulate the received VSB signals to generate a stream of trellis encoded |

| | |
|---|---|
| | VSB signal points. |
| | In the event this portion of the preamble is construed as limiting and found to be not literally present in the Accused Instrumentalities, Rembrandt contends that that the Accused Instrumentalities meet the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Instrumentalities are insubstantial. The aforementioned features perform substantially the same function (providing information to a receiver), in substantially the same way (using convolutional encoders to generate a sequence of values that control the output of a digital modulator), to achieve substantially the same result (encoding signals for transmission that may be received by a receiver and demodulated to provide digital values), as the recited limitation. |
| said signal points having been transmitted to said receiver apparatus by a method which includes the steps of | Rembrandt does not express a position at this time as to whether this portion of the preamble of this claim limits the claim's scope. Nevertheless, Rembrandt identifies below aspects of the Accused Instrumentalities that correspond to this portion of the claim preamble. |
| generating a plurality of streams of trellis encoded channel symbols in response to respective portions of said information, | A transmitter compliant with the ATSC Standard is required to have twelve trellis encoders operating in parallel, or an equivalent circuit or software module. (*See* ATSC Standard Figure D8, p. 57 and associated text.) Each trellis encoder receives a stream of 8-bit Reed-Solomon symbols generated by an upstream Reed-Solomon encoder. (*See, e.g.,* ATSC Digital TV Standard (original) Figure 1, p. 47, Figure 5, p. 51, Table 2, p. 54 and p 50; Revision B, Figure D1, p. 51, Figure D5, p. 55, Table D2, p. 59, and pp. 54-55; Revision C, Figure D1, p. 58, Figure D5, p. 62, Table D2, p. 66 and pp. 61-62; Revision D, Figure D5.1, p. 60, Figure D5.2, p. 61, Figure D5.6, p. 66, Table D5.2, p. 70, and pp. 65-66.) Each trellis encoder trellis encodes |

10

| | |
|---|---|
| | each received Reed-Solomon symbol in response to the symbols to generate a trellis encoded channel symbol. As each trellis encoder generates successive trellis encoded channel symbols, it generates a stream of trellis encoded channel symbols. The twelve trellis encoders therefore generate a plurality of streams of trellis encoded channel symbols. ATSC compliant receivers must be capable of recovering information encoded in this fashion. |
| | In the event this portion of the preamble is construed as limiting and found to be not literally present in the Accused Instrumentalities, Rembrandt contends that that the Accused Instrumentalities meet the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Instrumentalities are insubstantial. The aforementioned features perform substantially the same function (receiving a signal including a number of streams of encoded information), in substantially the same way (receiving signals transmitted using multiple convolutional encoders or an emulation thereof), to achieve substantially the same result (generating respective streams of encoded data in response to respective portions of an input stream), as the recited limitation. |
| | This claim element may include features that relate to software of the Accused Instrumentalities, and Rembrandt reserves the right to supplement or modify these contentions under Judge Ward's modification to the Local Patent Rules, Rule 3-1(h). |
| each of said channel symbols being comprised of a plurality of signal points, and | Rembrandt does not express a position at this time as to whether this portion of the preamble of this claim limits the claim's scope. Nevertheless, Rembrandt identifies below aspects of the Accused Instrumentalities that correspond to this portion of the claim preamble. |
| | Each trellis encoded channel symbol encoded by one of the twelve trellis |

11

| | |
|---|---|
| | encoders in an ATSC compliant transmitter comprises four Vestigial Sideband (VSB) values (signal points), that are provided to the VSB modulator. (See, e.g., ATSC Digital TV Standard (original), pp. 51-52; Revision B, pp. 56-57; Revision C, pp. 63-64; Revision D, pp. 67-69.) An ATSC compliant receiver must be capable of recovering information encoded in this fashion.

In the event this portion of the preamble is construed as limiting and found to be not literally present in the Accused Instrumentalities, Rembrandt contends that that the Accused Instrumentalities meet the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Instrumentalities are insubstantial. The aforementioned features perform substantially the same function (providing an encoded signal from a transmitter that uses multiple convolutional encoders or an emulation thereof), in substantially the same way (generating, for respective input values processed by a convolutional encoder, multiple output values for controlling a digital modulator), to achieve substantially the same result (producing multiple values for controlling the output of a digital modulator), as the recited limitation.

This claim element may include features that relate to software of the Accused Instrumentalities, and Rembrandt reserves the right to supplement or modify these contentions under Judge Ward's modification to the Local Patent Rules, Rule 3-1(h). |
| interleaving the signal points of said generated channel symbols to form said stream of trellis encoded signal points, | Rembrandt does not express a position at this time as to whether this portion of the preamble of this claim limits the claim's scope. Nevertheless, Rembrandt identifies below aspects of the Accused Instrumentalities that correspond to this portion of the claim preamble. |

| | |
|---|---|
| | The signal points output by respective ones of the twelve trellis encoders in an ATSC compliant transmitter are interleaved by an output multiplexer that outputs, for a given segment, one signal point from each trellis encoder every twelve time periods, thus forming a stream of trellis encoded signal points. (*See, e.g.*, ATSC Digital TV Standard (original), Table 2, p. 54; Revision B, Table D2, p. 59; Revision C, Table D2, p. 66; Revision D, Table D5.2, p. 70.) An ATSC compliant receiver must be capable of recovering information encoded in this fashion. |
| | In the event this portion of the preamble is construed as limiting and found to be not literally present in the Accused Instrumentalities, Rembrandt contends that that the Accused Instrumentalities meet the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Instrumentalities are insubstantial. The aforementioned features perform substantially the same function (intermixing values for a digital modulator), in substantially the same way (arranging the output values from a single encoder in a pre-determined manner), to achieve substantially the same result (a stream of intermixed values in which values from multiple encoders are intermixed together according to the prearranged pattern), as the recited limitation.

This claim element may include features that relate to software of the Accused Instrumentalities, and Rembrandt reserves the right to supplement or modify these contentions under Judge Ward's modification to the Local Patent Rules, Rule 3-1(b). |
| said interleaving being carried out in such a way that the signal points of each channel symbol are non-adjacent in said stream of trellis encoded signal points | Rembrandt does not express a position at this time as to whether this portion of the preamble of this claim limits the claim's scope. Nevertheless, Rembrandt identifies below aspects of the Accused Instrumentalities that correspond to this portion of the claim preamble. |

13

| | |
|---|---|
| | The signal points (VSB values) from each trellis encoded channel symbol (trellis encoded Reed-Solomon symbol) in an ATSC compliant transmitter are non-adjacent in the stream of trellis encoded signal points. (*See, e.g.*, ATSC Digital TV Standard (original), Table 2, p. 54; Revision B, Table D2, p. 59; Revision C, Table D2, p. 66; Revision D, Table D5.2, p. 70.) An ATSC compliant receiver must be capable of recovering information encoded in this fashion. |
| | In the event this portion of the preamble is construed as limiting and found to be not literally present in the Accused Instrumentalities, Rembrandt contends that that the Accused Instrumentalities meet the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Instrumentalities are insubstantial. The aforementioned features perform substantially the same function (separating the output values of a given convolutional encoder that correspond to a single input symbol), in substantially the same way (intermixing output values from respective convolutional encoders), to achieve substantially the same result (creating a stream of output values for controlling the input of a digital modulator, so that values corresponding to a single input symbol are spaced apart in the stream), as the recited limitation. |
| | This claim element may include features that relate to software of the Accused Instrumentalities, and Rembrandt reserves the right to supplement or modify these contentions under Judge Ward's modification to the Local Patent Rules, Rule 3-1(h). |
| and such that the signal points of adjacent symbols in any one of said channel symbol streams are non-adjacent in said stream of | Rembrandt does not express a position at this time as to whether this portion of the preamble of this claim limits the claim's scope. Nevertheless, Rembrandt identifies below aspects of the Accused Instrumentalities that |

14

| | |
|---|---|
| trellis encoded signal points, | correspond to this portion of the claim preamble.<br><br>The signal points that make up adjacent trellis encoded channel symbols generated by any given trellis encoder in an ATSC compliant transmitter are themselves non-adjacent in the output stream. (*See, e.g.*, ATSC Digital TV Standard (original), Table 2, p. 54; Revision B, Table D2, p. 59; Revision C, Table D2, p. 66; Revision D, Table D5.2, p. 70.) An ATSC compliant receiver must be capable of recovering information encoded in this fashion.<br><br>In the event this portion of the preamble is construed as limiting and found to be not literally present in the Accused Instrumentalities, Rembrandt contends that that the Accused Instrumentalities meet the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Instrumentalities are insubstantial. The aforementioned features perform substantially the same function (separating the output values of a given convolutional encoder that correspond to adjacent input symbols to that encoder), in substantially the same way (intermixing output values from multiple respective convolutional encoders), to achieve substantially the same result (creating a stream of output values for controlling the input of a digital modulator, so that values corresponding to adjacent input symbols for a given convolutional encoder are spaced apart in the stream), as the recited limitation.<br><br>This claim element may include features that relate to software of the Accused Instrumentalities, and Rembrandt reserves the right to supplement or modify these contentions under Judge Ward's modification to the Local Patent Rules, Rule 3-1(h). |
| said method comprising the steps of | ATSC Standard compliant receivers necessarily have deinterleaving circuitry or software that allocates received signal points to respective trellis decoder |

15

| | |
|---|---|
| deinterleaving the interleaved signal points to recover said plurality of streams of trellis encoded channel symbols, and | circuits or software modules, or an equivalent circuit or software module, thus recovering the twelve streams of trellis encoded channel symbols generated by the transmitter. (*See, e.g.*, Guide to Use of the ATSC DTV Standard (published as Document A/54A by ATSC on December 4, 2003) at Figure 9.11, p. 99.)

In the event this limitation is construed or applied in such a way that it is found not to be literally present in the Accused Instrumentalities, Rembrandt contends that the Accused Instrumentalities meet the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Instrumentalities are insubstantial. The aforementioned features perform substantially the same function (forming streams of demodulated signal values), in substantially the same way (allocating the received signal points to respective trellis decoders or software modules), to achieve substantially the same result (streams of demodulated signal values), as the recited limitation.

This claim element may include features that relate to software of the Accused Instrumentalities, and Rembrandt reserves the right to supplement or modify these contentions under Judge Ward's modification to the Local Patent Rules, Rule 3-1(h). |
| using a distributed Viterbi decoder to recover said information from the deinterleaved signal points. | On information and belief, ATSC Standard compliant receivers necessarily have a distributed Viterbi decoder, or an equivalent circuit or software module, that recovers the originally encoded information encoded by the distributed trellis encoder described in the ATSC Standard. (*See, e.g.*, Guide to Use of the ATSC DTV Standard (published as Document A/54A by ATSC on December 4, 2003) at Figure 9.11, p. 99.)

In the event this limitation is construed or applied in such a way that it is |

16

found not to be literally present in the Accused Instrumentalities, Rembrandt contends that the Accused Instrumentalities meet the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Instrumentalities are insubstantial. The aforementioned features perform substantially the same function (processing separate streams of demodulated digital values), in substantially the same way (using separate instances of a maximum-likelihood algorithm), to achieve substantially the same result (recovering the previously encoded information), as the recited limitation.

This claim element may include features that relate to software of the Accused Instrumentalities, and Rembrandt reserves the right to supplement or modify these contentions under Judge Ward's modification to the Local Patent Rules, Rule 3-1(h).

17

21195715.doc

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

REMBRANDT TECHNOLOGIES, LP

        Plaintiff,

    v.

COMCAST CORPORATION, COMCAST
CABLE COMMUNICATIONS, LLC, and
COMCAST OF PLANO, LP,

        Defendant.

Case No. 2:05-CV-443 (TJW)

Jury Trial Demanded

## PLAINTIFF'S DISCLOSURE OF ASSERTED CLAIMS AND PRELIMINARY INFRINGEMENT CONTENTIONS

**Preliminary Infringement Analysis for U.S. Patent No. 4,937,819**

A.    **Identification of Infringed Claims**

Pursuant to Local Patent Rule 3-1(a), Rembrandt hereby identifies claims 1, 2, 11, 12, and 14 of U.S. Patent No. 4,937,819 ("the '819 patent") as infringed by Defendants.

B.    **Identification of Accused Instrumentalities**

Defendants infringe claims 1, 2, 11, 12 and 14 of the '819 patent by their sale, offer for sale, lease, use or operation of high speed cable networks that employ cable modems and cable modem termination systems that have the capability of being operated in compliance with the Data-Over-Cable Service Interface Specification (DOCSIS), versions ANSI/SCTE 22-1, dated 2002 ("DOCSIS 1.0"), SP-RFIv1.1-C01-050907, dated September 7, 2005 ("DOCSIS 1.1") and SP-RFIv2.0-I09-050812, dated August 12, 2005 ("DOCSIS 2.0"). On information and belief, most if not all cable modems and cable modem termination systems sold, leased, used or operated by Defendants conform to either the DOCSIS 1.0, 1.1 or 2.0 standards.

Accordingly, pursuant to Local Patent Rule 3-1(b), Rembrandt identifies as the Accused Instrumentalities (1) Comcast's high speed cable modem network and infrastructure, including any DOCSIS compliant cable modems and DOCSIS compliant cable modem termination systems configured for use in the Defendant's cable modem network ("Accused System"), (2) Comcast's use or operation of its high speed cable modem network and infrastructure ("Accused Method"), and (3) any computer software (including firmware, whether stored on an EPROM, EEPROM, field programmable gate array, or otherwise) configured for use in Comcast's high speed cable modem network and infrastructure, including in any DOCSIS compliant cable modems ("Accused CM Software") and DOCSIS compliant cable modem termination systems ("Accused CMTS Software"), (collectively, "Accused Software").

2

The DOCSIS compliant CMs and CMTSes configured for use in Comcast's high speed cable modem network include, without limitation, those products identified in Exhibit A, attached hereto. Rembrandt is not currently aware of the names or model numbers of all the CMs and CMTSes used by Defendants or by customers of Defendants, and reserves the right to modify or supplement the attached list as discovery progresses.

Rembrandt reserves the right to add additional Accused Instrumentalities as discovery progresses.

C.    **Preliminary Infringement Claim Charts**

Pursuant to Local Patent Rule 3-1(c), plaintiff provides the following claim chart, attached hereto as Exhibit B, that explains how Defendants infringe the asserted claims in connection with their sale, offer for sale, lease, use or operation of a high speed cable modem network that includes DOCSIS compliant CMs, CMTSes. For clarity and convenience, the following claim charts primarily cite to the disclosure found in the DOCSIS 1.0 specification, but the same analysis applies to the DOCSIS 1.1 and 2.0 specifications, as DOCSIS 1.1 and 2.0 CMs and CMTSes are backwards compatible with DOCSIS 1.0 CMs and CMTSes, respectively. (*See, e.g.,* DOCSIS 1.1 specification at Appendix G ("Besides supporting a rich set of QoS features for DOCSIS 1.1 CMs, the DOCSIS 1.1 CMTS must be backwards compatible with a DOCSIS 1.0 CM. Furthermore, it is necessary for a 1.1 CM to function like a 1.0 CM when interoperating with a 1.0 CMTS."); *see also* DOCSIS 2.0 specification at Annex G ("As well as supporting DOCSIS 2.0 capable CMs, the DOCSIS 2.0 CMTS must be backwards compatible with DOCSIS 1.0 and DOCSIS 1.1 CMs. Furthermore, it is necessary for a DOCSIS 2.0 CM to function like a 1.0 CM when interoperating with a 1.0 CMTS and to function like a 1.1 CM

3

when interoperating with a 1.1 CMTS.").) Other citations are included for reference, but any citations should not be construed as limiting.

**D.     Reliance on the Doctrine of Equivalents**

Pursuant to Local Patent Rule 3-1(d), Plaintiff presently contends that Defendants sale, offer for sale, lease, use or operation of a high speed cable modem network that includes DOCSIS 1.0, 1.1 and 2.0 compatible CMs, CMTSes literally infringes the identified claims.  In the alternative, Plaintiff reserves the right to rely on the doctrine of equivalents should claim construction or discovery determinations or facts of which Plaintiff is not currently aware suggest such reliance.  Plaintiff has included certain contentions regarding doctrine of equivalents, but reserves the right to modify or supplement any such contentions to the extent made relevant by the Court's claim construction ruling.

In the event that discovery reveals that the Accused Instrumentalities utilized by Defendants implement the claimed invention in software, Plaintiff reserves the right, pursuant to Judge Ward's modification to the Local Patent Rules, Rule 3-1(h), to provide supplemental infringement contentions within 30 days of the production of source code for such software, should such supplemental contentions be necessary.

In the following claim charts, Plaintiff has subdivided each claim element into sub-elements to better explicate where on the Accused Instrumentalities each element may be found. The subdivisions in the following chart should not be taken as an indication of the boundaries of claim elements for the purposes of determining infringement under the doctrine of equivalents.

**E.     Statement of Earliest Priority Date**

Pursuant to Patent Local Rule 3-1(e), Plaintiff states that the earliest priority date all claims of the '819 Patent are entitled to is the September 26, 1988 filing date of the '819 patent.

**F.**  **Identification of Instrumentalities Embodying the Patent**

Pursuant to Patent Local Rule 3-1(f), Plaintiff states that it does not manufacture any

products that embody the claims of the '819 Patent.

PARKER & BUNT, P.C.

/s/ Robert Christopher Bunt
Robert Christopher Bunt
State Bar No. 00787165
PARKER & BUNT, P.C.
100 E. Ferguson, Suite 1114
Tyler, Texas 75702
Tel: 903/531-3535
Fax: 903/533-9687
E-mail: cbunt@cox-internet.com

Robert M. Parker
State Bar No. 15498000
PARKER & BUNT, P.C.
100 E. Ferguson, Suite 1114
Tyler, Texas 75702
Tel: 903-531-3535
Fax: 903-533-9687
E-mail: rmparker@cox-internet.com

5

.

                                        Otis Carroll – Lead Attorney
                                        State Bar No. 03895700
                                        IRELAND, CARROLL & KELLEY, P.C.
                                        6101 S. Broadway, Suite 500
                                        Tyler, Texas 75703
                                        Tel: (903) 561-1600
                                        Fax: (903) 581-1071
                                        E-mail: Fedserve@icklaw.com

OF COUNSEL:

Frank E. Scherkenbach
Lawrence K. Kolodney
FISH & RICHARDSON P.C.
225 Franklin Street
Boston, Massachusetts 02110
Tel: (617) 542-5070
Fax: (617) 542-8906

Alan D. Albright
State Bar No. 00973650
FISH & RICHARDSON P.C.
One Congress Plaza, 4th Floor
111 Congress Avenue
Austin, Texas 78701
Tel: (512) 391-4930
Fax: (512) 391-6837

Timothy Devlin
FISH & RICHARDSON P.C.
919 Market Street, Suite 1100
P.O. Box 1114
Wilmington, Delaware 19899
Tel: (302) 652-5070
Fax: (302) 652-0607

Franklin Jones, Jr.
State Bar No. 00000055
JONES & JONES, INC., P.C.
201 West Houston Street, Drawer 1249
Marshall, Texas 75671-1249
Tel: 903-938-4395
Fax: 903-938-3360
E-mail: maizieh@millerlawfirm.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 21, 2006, a true and correct copy of this document was served on the following attorneys of record at the address and in the manner indicated:

**BY ELECTORNIC MAIL AND**
**FEDERAL EXPRESS**
Brian L. Ferrall
Keker & Van Nest
710 Sansome Street
San Franciscco, CA  94111

**VIA ELECTRONIC MAIL AND**
**FEDERAL EXPRESS**
John Peyton Perkins, III
James N. Haltom
Haltom & Doan, LLP
6500 N. Summerhill Road, Suite 1A
P.O. Box 6227
Texarkana, TX 75505-6227

_/S/ Timothy Devlin_
Timothy Devlin

7



CableHome® - DOCSIS® - PacketCable™ Certified Products - 10/28/05

CH = CableHome   D = DOCSIS   PC = PacketCable

Beginning with Certification Wave 28, products may be awarded certification/qualification of multiple specifications through the CableLabs "combined certification program".

Note that the combined certification will not necessarily reflect any product certified prior to CW28, unless that product is submitted for re-certification.

Disclaimer: The model number, software version and hardware version information is provided by the vendor when submitting product for certification and CableLabs assumes no responsibility for accuracy or completeness of that information.

* This product is certified only for the uses as defined in the executive summary of the certification application.

| CW Version | Spec | Type | Manufacturer | CL ID | Model # | SW Version | HW Version | OEM Vendor ID | Spec Combo - Certified As | Verified For Interoperability |
|---|---|---|---|---|---|---|---|---|---|---|
| 39 | D2.0 | Embedded PS | VideoView Technology | Wide391 | VM-100 | 17.1.7.17 | 35.4.2 | | D1.1, D2.0 | |
| 39 | C1.1 | CM | SMC | Smco391 | SMC8014WG-CHM | 3.17.11 | 1.66 | | D1.1, D2.0, CH1.1 | |
| 39 | D2.0 | CM | Axxey | Axas391 | CMM300 | 1.65 | 1.6 | | D1.1, D2.0 | x |
| 38 | D1.1 | CM | Tollgrade | Toll391 | 1.0.0 | 1.0.2 | 1.0.0 | | D1.1 | |
| 38 | D2.0 | DSG eCM | Pace | Pace381 | TDC775D | 3.7.16001 | V1.0 | | D1.1, D2.0 | |
| 38 | D2.0 | CM | Arris | Arri381 | TM502G | 4.5.1.0 | 01 | | D1.1, D2.0 | |
| 38 | PC1.0 in D2.0 | EMTA | Motorola | Moto382 | SBV5200 | SBV5200.2.1.3710.1-SCAN05-SH | 1 | | D1.1, D2.0, PC1.0 | |
| 38 | PC1.0 in D2.0 | EMTA | Motorola | Moto383 | SBV5121 | SBV5121-2.17.5.23-SCAN05-NOSH | | | D1.1, D2.0, PC1.0 | |
| 38 | PC1.0 in D2.0 | EMTA | Pace | Pace381 | DV015 | v05.38.01 | V1.0 | | D1.1, D2.0, PC1.0 | |
| 38 | PC1.0 in D2.0 | EMTA | Scientific Atlanta | Scie382 | DPC2203 | v2.0.2r1254 | 1.0 | | D1.1, D2.0, PC1.0 | |
| 38 | PC1.0 in D2.0 | EMTA | Scientific Atlanta | Scie381 | DPC2223 | v2.0.2r1154 | 1.0 | | D1.1, D2.0, PC1.0 | |
| 38 | PC1.0 in D2.0 | EMTA | Thomson | Thom381 | DHG535 | STT02.00.00 | 5.0 | | D1.1, D2.0, PC1.0 | |
| 38 | PC1.0 in D2.0 | EMTA | Thomson | Thom392 | DHG525 | STT02.06.00 | 2.31 | | D1.1, D2.0, PC1.0 | |
| 38 | PC1.0 in D2.0 | EMTA | Ambit | Amb381 | U10G021 | 4.71.1001 | 2.0 | | D1.1, D2.0, PC1.0 | |
| 38 | C1.1 | Embedded PS | Cisco-Linksys | Link383 | WCG104 | 2.0.3.7.16 | 2.0 | | D1.1, D2.0, CH1.1 | |
| 38 | PC1.0 in D2.0 | EMTA | Cisco-Linksys | Link382 | CMP200B | 2.0.3.7.16 | 1.0 | | D1.1, D2.0, PC1.0 | |
| 38 | C1.1 | Embedded PS | Motorola | Moto381 | SBG940 | SCAN01-NOSH | 1 | | D1.1, D2.0, CH1.1 | |
| 38 | D2.0 | CM | Alpha | Alph381 | Alpha OAH | 2.01.014H1.0 | 1.0 | | D1.1, D2.0 | |
| 38 | PC1.0 in D2.0 | EMTA | Cisco-Linksys | Link381 | CMP300B | 17.0.5.23 | 59.0 | | D1.1, D2.0, PC1.0 | |
| 38 | P1.1 | MG | Nuera | 4Nuer371 | BTX-4K | 1.1 | A | | PC1.0, PC1.1 | |
| 37 | P1.1 | MG | Siemens | 3Siem371 | Surpass hiQ 8000 | 08.04.01.US.05 | Sun Microsystems Netra 1400T | | PC1.0, PC1.1 | |
| 37 | P1.1 | MG | Nortel | 3Nort371 | CS 2000 MGC | SN08.PSM | SN08 PHM | | PC1.0, PC1.1 | |
| 37 | P1.1 | CMS | Siemens | 0Siem371 | Surpass hiQ 8000 | 08.04.01.US.05 | Sun Microsystems Netra 1400T | | PC1.0, PC1.1 | |
| 37 | P1.1 | CMS | Nortel | 0Nort371 | CS 2000 CMS | SN08.PSC | SN08 PHC | | PC1.0, PC1.1 | |
| 37 | D2.0 | CM | Turbocomm | Turb371 | EC420 | 17.0.1.1 | 29.2 | | D1.1, D2.0 | |
| 37 | D2.0 | CM | Motorola | Moto371 | SB5121 | SB5121-2.17.0.12-SCAN05-NOSH | 1.0 | | D1.1, D2.0 | |
| 37 | D2.0 | CM | Asustek | Asus371 | ACM604BEB | 3.7.7 | 3.60 | | D1.1, D2.0 | |
| 37 | D1.1 | CM | Toshiba | Tosh352 | PCX2500 | 2.18.007 | 3.2.1 | | D1.1 | |
| 37 | D1.1 | CM | Toshiba | Tosh361 | PCX2200 | 2.18.007 | 25.0.0 | | D1.1 | |
| 37 | D2.0 | CM | Arris | Arri351 | TTM402P Phase 2 | 4.4.1.2 | 32 | | D1.1, D2.0 | |
| 37 | PC1.0 in D2.0 | EMTA | Thomson | Thom341 | DHG525 | STT62.06.00 | 5.0 | | D1.1, D2.0, PC1.0 | |
| 37 | PCMM in D2.0 | CMTS+MM | Motorola | 2Moto341 | BSR 64000 | 4.1.0708P10.12.KRAU | CHS-0009-01 | | D2.0, PCMM | |
| 34 | PCMM | Policy Server | Tektonika | 51ekt341 | Policy Manager 1.0 | PS-R1.0-20050209120 | SUNV/Ultra-80 | | PCMM | |
| 34 | P1.1 | MG | Cisco | 4Cisc341 | MGX8880 | 5.50 | VX5M | | PC1.0, PC1.1 | |
| 34 | PC1.0 in D2.0 | EMTA | Ambit | Amb341 | U10C017 | 4.36.1018 | 2.22 | | D1.1, D2.0, PC1.0 | |
| 34 | PCMM | Policy Server | Camiant | 5Cami341 | CMMS-2275 | 2.0.0 | Intel SR 1300 Server | | PCMM | |
| 34 | D2.0 | CMTS | Bigband Networks | 2Bigb341 | Cuda 12000 (C12-DM2x8-2.0) | R6.0.0 | Rev 4 | | D1.1, D2.0 | |
| 34 | P1.0 | MG | Nuera | 4Nuer341 | BTX-4K | 1.1.0.4 | A | | PC1.0 | |
| 34 | PC1.0 in D2.0 | EMTA | Cisco-Linksys | Link341 | CMP21B | 2.0.3.5.10 | 2.1 | | D1.1, D2.0, PC1.0 | |
| 34 | PC1.0 in D2.0 | EMTA | Cisco-Linksys | Link342 | CG2P2W6 | 2.0.3.5.10 | 2.1 | | D1.1, D2.0, PC1.0 | |
| 34 | PC1.0 in D2.0 | EMTA | Netgear | Ntgr341 | CVG824G | 3.5.8R01 | 1.00 | | D1.1, D2.0, PC1.0 | |
| 34 | PCMM | Policy Server | Tazz Networks | 5Tazz341 | TAZZ PCS | PCMM 1.2 | SUN V60/V20z | | PCMM | |
| 34 | PC1.0 in D2.0 | EMTA | Tenyo | Tenb341 | TJ945 | 16.0.0.10 | 31.0 | | D1.1, D2.0, PC1.0 | |
| 34 | PCMM | Policy Server | CableMetrix | 5Cabl341 | 0035F | 0.8.8 | NA | | PCMM | |
| 34 | PCMM | Policy Server | C-Cor | 5Ccor341 | NA | 1.0 | NA | | PCMM | |
| 34 | PCMM | CMS | Sonus | 0Sonu341 | ASX Access Server | V06.01.00R004 | SUNFIRE V120 | | PCMM | |
| 34 | P1.0 | EMTA | Scientific Atlanta | Scie332 | BEFCMU10 ver. 5 | v2.0.2r1251 | 1.0 | | PC1.0 | |
| 33 | C1.1 | Embedded PS | Cisco-Linksys | Link331 | U10C019 | 2.0.3.5.6 | 4.10 | | D1.1, D2.0, CH1.1 | |
| 33 | PC1.0 in D2.0 | EMTA | Scientific Atlanta | Scie331 | CG2P2W6 | 5.66.1000 | 2.1 | | D1.1, D2.0, PC1.0 | |
| 33 | D3.1 | EMTA | Cisco-Linksys | Link333 | DPX2203 | 2.0.3.2r1151 | 2.1 | | D1.1, D2.0, PC1.0 | |
| 33 | PC1.0 in D2.0 | EMTA | Cisco-Linksys | Link332 | CV827B | 2.0.2.02r | 2.1 | | D1.1, D2.0, PC1.0 | |
| 33 | PC1.0 in D2.0 | EMTA | Thomson | Thom351 | DHG525 | STT62.05.00 | 5.0 | | D1.1, D2.0, PC1.0 | |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 32 | D2.0 | CMTS+CSG Agent | Motorola | 2Moto321 | BSR 64000 | 4.1.0108P10.KRAU | CHS-0009-01 | | D1.1, D2.0 |
| 32 | D2.0 | | Zoom | Zoom321 | 5241 | 5.35.33.5 | 100 | | D1.1, D2.0 |
| 32 | D2.0 | CMTS+CSG Agent | Arris | 2Arris321 | C4-CMTS-2100-1 | CMTS_V04.02.00.10 | Rev 4 | | D1.1, D2.0 |
| 32 | D1.1 | CMTS+CSG Agent | Bigband Networks | 1Bigb321 | Cuda 12000 | R5.0 | 55.1 | | R5.1.0 |
| 32 | D1.0 | CM | Tempon | Tera321 | TJ716x | 15.0.0.20 | V0.9 | | D1.1 |
| 32 | D1.1 | Embedded PS | Zyxel | Zyxel322 | Prestige 974 | V3.70.0.11 | V3.9 | | D1.1, D2.0 |
| 32 | C1.1 | DSG+CM | Scientific-Atlanta | Sci&321 | R300 DVL PR | 2.23.7 | 1.0 | | D1.1, D2.0, CH1.1 |
| 32 | C1.1 | Embedded PS | Zyxel | Zyxel321 | Prestige 971 | V3.70.0.1 | V4.1 | | D1.1, D2.0, CH1.1 |
| 32 | C1.1 | Embedded PS | Thomson | Thom321 | DCW775 | STSA.06.01 | 2.0 | | D1.1, D2.0, CH1.1 |
| 32 | C1.1 | Embedded PS | Cisco-Linksys | Link321 | CGZP2WB | 2.0.3.4-2 | 2.0 | | D1.1, D2.0, CH1.1 |
| 32 | C1.1 | CM | Arris | Arti321 | TM402G | 4.4.1 | 07 | | D1.1, D2.0 |
| 31 | C1.1 | CM | Tollgrade | Toll321 | 1.0.0 | 1.0.2 | 1.0.0 | | D1.1, PC1.0, PC1.0 |
| 31 | PC1.1 in D1.1 | Embedded PS | Cisco | Ntgr321 | CG814WG | 3.4.2.13 | 1.02 | | D1.1, PC1.0, PC1.0 |
| 31 | | CMTS+PC | Cisco | 1Casc311 | uBR7246 VXR/MC28U | 12.2(15)BC2zn1 | MC28U:Rev 6.5 | | D1.1, D2.0, PC1.0 |
| 31 | | EMTA | Motorola | 2Moto311 | SBV5220 | SBV5220-2.9.1.0-SCM11-NOSH | 1 | | D1.1 |
| 31 | D1.1 | CM | Electroline | Elec311 | DHT-PS-NA-01 | 2.14 | 42 | | D1.1 |
| 31 | D1.1 | CM | AM Communications | Amco311 | 5362 | 1.68 | 4.0 | | D1.1 |
| 31 | D1.1 | CM | Toll311 | Toll311 | 1.0.0 | 1.0.2 | 1.0.0 | | D1.1, D2.0 |
| 31 | D1.1 | CM | Electroline | 2Moto301 | BSR 64000 | 4.1.0104P08.KRAU | 01 | | D1.1 |
| 31 | C1.1 | Embedded PS | Electroline | Elec302 | DHT-PS-NA-01 | 2.10 | 4.0 | | D1.1, D2.0, CH1.1 |
| 31 | C1.1 | CM | Thomson | Thomn302 | DCW775 | STSA.02.01 | 35.0 | | D1.1, D2.0 |
| 31 | D2.0 | CM | Tempon | Tera301 | TJ716x | V3.0.0.24 | | | D1.1, D2.0 |
| 30 | D2.0 | CM | Motorola | Moto301 | SBV5220 | SBV5220-2.9.1.0- | SCM08-NOSH | | D1.1, D2.0 |
| 30 | PC1.0 in D2.0 | EMTA | Cisco-Linksys, LLC | Link301 | CMZP2B | 2.0.3.2 | 2.0 | | D1.1, D2.0, PC1.0 |
| 30 | PC1.0 in D2.0 | EMTA | Scientific-Atlanta | Sci&301 | DPX2203 | v2.0.2r143 | 2.22 | | D1.1, D2.0, PC1.0 |
| 30 | PC1.0 in D2.0 | EMTA | Ambit | Ambit301 | U10C017 | 4.36.1007 | 2.22 | | D1.1, D2.0, PC1.0 |
| 30 | PC1.0 in D2.0 | EMTA | Cisco-Linksys, LLC | Link302 | CGZP2WB | 2.0.3.2.5 | 2.0 | | D1.1, D2.0, PC1.0 |
| 30 | D2.0 | Scientific-Atlanta | Sci&302 | Sci&302 | WebSTAR DPC2100 | v2.0.2r242 | 2.0 | | D1.1, PC1.0, PC1.1 |
| 29 | D2.0 | CMTS+PC | Motorola | 1Moto301 | BSR 64000 | 3.1.0106P57.05.KRBU | 1.20 | | D1.1, D2.0 |
| 29 | D2.0 | CM | Ambit | Amb&291 | U10C016 | 2.93.1003 | 2.0 | | D1.1, D2.0 |
| 29 | D2.0 | CM | Cisco-Linksys | Link291 | BEFCM1010 ver. 4 | 2.0.3.1.1 | 100 | | D1.1, D2.0 |
| 29 | D2.0 | CM | Conexant | Conx291 | ACM651 | 5.35.33.5 | 10 | | D1.1, D2.0 |
| 29 | D2.0 | CM | Conexant | Conx292 | XCM651 | 5.35.33.5 | | | D1.1, D2.0 |
| 29 | D2.0 | | | | | SBR5120-2.13.0.2- | | Com291 | D1.1, D2.0 |
| 29 | D2.0 | CM | Motorola | Moto291 | SBR5120 | SCM05-NOSH | 4 | | D1.1, D2.0 |
| 29 | D2.0 | CM | Thomson | Thom291 | DCM425 | ST02.01.02 | 4.0 | | D1.1, D2.0, CH1.1 |
| 29 | D2.0 | PS | Scientific-Atlanta | Sci&291 | WebSTAR DPC2100 | v2.0.2r142 | 1.2 | | D1.1, D2.0 |
| 29 | D2.0 | CM | Cisco-Linksys | Link293 | GGVGW | 2.0.3.1.0 | 2.0 | | D1.1, D2.0 |
| 29 | D1.1 | CMTS | ADC | 1Adco291 | Cuda 12000 | R5.5.0 | | | R5.5.0 |
| 29 | D1.1 | CMTS | Motorola | 1Moto292 | BSR 64000 | 3.1.0106P57.05.KRBU | Rev4 | | D1.0, D1.1 |
| 29 | D1.1 | MG | AmbioCodes | 4Audc291 | Mediant 5000 | 2.9.1.36_1 | CHS-0009-01 | | PC1.0 |
| 29 | P1.0 | MG | General Bandwidth | 4Genb291 | G8 | net_1001_0_0_BX | Rev B | | PC1.0 |
| 28 | PC1.0 in D2.0 | EMTA | Motorola | Moto282 | SBV5120 | SBV5120-2.9.0.1- | 1.0 | | D1.1, D2.0, PC1.0 |
| 28 | C2.1 | Embedded PS | Cisco-Linksys | Link282 | WCG200 ver. 2 | 2.0.5.1.27 | 2.0 | | D1.1, D2.0, CH1.1 |
| 28 | C1.0 | Embedded PS | Ambit | 2Amb291 | C4-CMTS-2100-1 | CMTS_V04.00.00.104 | 4.7 | | D1.1, CH1.0 |
| 28 | D2.0 | CM | Motorola | 2Amb286 | 60740EU | 5.11.1111 | 3 | | D1.1, D2.0 |
| 28 | C1.0 | Embedded PS | Motorola | Moto282 | SBG900 | 2.9.0.1.1.1- | | | D1.1, D2.0, CH1.0 |
| 28 | | | | | | net_1001_0_0_BX | 1 | | |
| 28 | C1.0 | Embedded PS | Motorola | Moto281 | SBG940 | SBG940-2.1.8.1- | | | D1.1, D2.0, CH1.0 |
| 28 | | | | | | SCM00-NOSH | | | |
| 28 | | | | | | SBG940-2.1.8.1- | | | |
| 28 | C1.0 | CM | Motorola | Moto281 | SBG901 | SCM00-NOSH | 1 | | D1.1, D2.0 |
| 28 | | | | | | SBS101-2.A.0.1-SCM09- | | | |
| 28 | | | | | | NOSH | | | |
| 28 | D2.0 | CM | Motorola | Moto283 | SBV5120 | SBV5120-2.8.0.4- | | | D1.1, D2.0 |
| 28 | D2.0 | CM | Cisco-Linksys | Link281 | WCG200A | SCM02-NOSH | 1 | | D1.1, D2.0, CH1.1 |
| 28 | D2.0 | CM | Shenzhen Coship | Cosh281 | CDA9200A | 2.10.10 | 1.29 | | D1.1, D2.0 |
| 28 | D2.0 | CM | Askey | Aske281 | CME100 | 12.0.2.15 | 35.0 | | D1.1, D2.0, CH1.1 |
| 28 | D2.0 | CM | D-Link | Dlin281 | DCM-202 | 2.0.2.0.5 | 2.1 | | D1.1, D2.0 |
| 28 | D2.0 | CMTS | Dawhalnet | Dawh281 | DCM-202 | 2.0.1 | 1A | | D1.1, D2.0 |
| 28 | D2.0 | CM | Ambit | 2Amb281 | U10206 | 10.2.0 | 29.2 | | D1.1, D2.0 |
| 28 | D2.0 | CM | Castlenet | Cast281 | 718x2 (C3) | 4.0.1.45 | 04 | | D1.1, D2.0 |
| 28 | D2.0 | CM | Ambit | Amb&281 | DP1110XB2A | 2.7.2.289 | 4.0 | | D1.1, D2.0 |
| 28 | D2.0 | MGC | Nortel Networks | 3Nort281 | 1001MEU | 2.93.1000 | 1.18 | | PC1.0, D1.0, CH1.1 |
| 28 | P1.0 | CM | Castlenet | Cast282 | CS 2000 MGC | SN98.V5M | 1 | | D1.1, D2.0 |
| 28 | C1.1 | Embedded PS | Netgear | Ntgr281 | DP1110XB2 | 2.8.2.517 | SN05.PHM | | D1.1, D2.0 |
| 28 | D2.0 | CM | Conexant | Conx281 | CG814WG | 2.10.0021 | 1.02 | Hts252 | D1.1, D2.0, CH1.1 |
| 28 | | | | | ACM951 | 5.29.30.6.MOD8 | 100 | JHC0061 | D1.1, D2.0 |

| Wave | PICS | Type | Manufacturer | Code | Product | Version | Info | Cert | DOCSIS |
|---|---|---|---|---|---|---|---|---|---|
| 28 | P1.0 | CMS | Siemens | 0Siem281 | Surpass hiG 8000 | 06.02.01/US.09 | Sun Microsystems / Netra 1400T | | PC1.0 |
| 28 | PC1.0 in D1.1 | CMTS+PC | Cisco | 1Cisc281 | uBR7246 VXR/MC28U | 12.21(5)9BC2p | MC28U Rev 6.5 | | D1.1, PC1.0, PC1.1 |
| 28 | PC1.0 in D2.0 | EMTA | Arris | Arr281 | TM402P | TS3.04.01.01.01/3004C | 04 | | D1.1, D2.0, PC1.0 |
| 28 | D1.1 | CM | Electroline | Elec281 | DHT-PS-NA-01 | 2.0.0 | 01 | | D1.1 |
| 28 | D1.1 | CM | Toshiba | Tosh281 | PCX1000NA25 | 1.8.02H | 6:11 | | D1.1 |
| 28 | D1.0 | CM | Toshiba | Tosh282 | PCX1100UPA22813 | 1.8.022 | 6.62 | | D1.0 |
| 28 | D2.0 | CM | Thomson | Thom281 | DCM325 | ST31.08.01 | 1.7 | | D1.1, D2.0 |
| 28 | D2.0 | CM | Thomson | Thom282 | DCM325 | ST32.00.00 | 1.7 | | D1.1, D2.0 |
| 28 | D2.0 | Embedded PS | Conexant | Cone282 | XCM851 | 5.28.3/0.A.M/AM8 | 010 | | CH1.0 |
| 28 | D2.0 | CM | Ambit | Ambi272 | 60740EU/W | 5.11.1111 | 4.7 | | D2.0 |
| 28 | D2.0 | CM | Cisco-Linksys | Link271 | BEFCMU10 ver.3 | 2.0.2.0.1 | 41.0 | | D2.0 |
| 28 | D1.1 | CMTS | Terayon | Tera272 | TJ815g | 12.21(5)5C//c1 | | | D1.1 |
| 27 | C1.0 | Embedded PS | Cisco | 1Cisco271 | uBR7246VXR/MC28U | 12.21(5)9BC2p | MC28U. Rev 6.2 | | CH1.0 |
| 27 | C1.0 | CM | Motorola | Moto271 | SG9900 | SCM02-NOSH | 2 | | D1.1 |
| 27 | P1.0 | CM | Best Data | Best271 | CMX300V2 | 0.144S7.2570 | 10 | | PC1.0 |
| 27 | P1.0 | CM | Telcordia | 0Telc271 | Telcordia Call Agent | v2.0.h1133 | 1.1 | Camt261 | D2.0 |
| 27 | PC1.0 in D2.0 | CMS | Scientific Atlanta | Scie273 | WebSTAR DPC2100 | v2.0.h1133 | 1.1 | | D2.0 |
| 27 | D2.0 | EMTA | Scientific Atlanta | Scie271 | WebSTAR DPX2203 | 3.0.14 | 19.0.1 | | D2.0 |
| 27 | D2.0 | CM | Toshiba | Tosh271 | PCX2600DNA20823 | v2.0.h1134 | 1.3 | | D2.0 |
| 27 | D2.0 | Embedded PS | Scientific Atlanta | Scie274 | WebSTAR DPX2100 | v2.0.h1133 | 1.3 | | CH1.0 |
| 27 | C1.0 | Embedded PS | Scientific Atlanta | Scie272 | WebSTAR DPX2320 | 2.92R01 | 1.02 | | CH1.0 |
| 27 | C1.0 | CM | Netgear | Ntgr271 | CG814WG | SB5100.2.3.1.6-SCM01* | 3.1 | | D2.0 |
| 27 | D2.0 | CM | Thomson | Thom271 | DCM315 | NOSH | | Xroo241 | D2.0 |
| 26 | D2.0 | CM | Motorola | Moto282 | SG9900 | SCM05-NOSH | 1 | | D2.0 |
| 26 | D1.0 | CM | Thomson | Thom262 | DCM625D/CM625R | SFA1.03.00 | 1.1 | | D1.1 |
| 26 | D1.0 | CM | Ambit | Ambi261 | 6067EU | 4.57.1002 | 1.12 | | D1.0 |
| 26 | D1.0 | CM | Scientific Atlanta | Scie261 | WebSTAR DPX2100 | v2.0.h1131-0424 | 1.11 | | PC1.0 |
| 26 | D1.0 | MG | Nuera | Nrtm261 | BTX-8 | 2.0 | 2.0 | | PC1.0 |
| 26 | D1.0 | CMS | Cedar Point | 4Nurm261 | SAFARI | 2.0.7.3 | 1.1 | | PC1.0 |
| 26 | D1.0 | CM | Thomson | 0Ceda261 | DCM915 (UCCM815R) | S140.04.00 | 1.4 | | PC1.0 |
| 26 | D1.1 | CM | Scientific Atlanta | Thom265 | WebSTAR DPX2320 | 2.0.7.3 | 1.1 | | CH1.0 |
| 26 | C1.0 | Embedded PS | Scientific Atlanta | Scie263 | Code 19000 (D-12) | 2.0.7.3 | | | PC1.0 |
| 26 | PC1.0 in D1.1 | CMTS+PC | ADC | 1Adco261 | DMIX6SPME-SF) | R5.0.0 | CMTS Rev 14 | | |
| 25 | D2.0 | CM | Motorola | Moto264 | SB5100 | SCM01-NOSH | 3 | | D2.0 |
| 25 | D1.0 | CM | Belkin | Belk261 | F5D5630-W | v2.0.h1132 | 1.0 | | D2.0 |
| 25 | D1.0 | CM | Cabletron | Cad261 | CXC-150 | 2.0.2.0.1 | 2.1 | | D2.0 |
| 25 | D1.1 | CM | SMC | Smco262 | SMC8004CM | SN08.PSC | SN08.PSC | | D2.0 |
| 25 | D1.1 | CM | Thomson | Thom261 | DCM315/DCM315R | 2.0.1 | 29.2 | | D2.0 |
| 25 | D1.0 | CM | Thomson | Thom264 | DCM315/DCM315R | ST31.07.00 | 3.6 | | D2.0 |
| 25 | D1.1 | Embedded PS | Thomson | Thom263 | DCM315/DCM315R | v2.0.108.00 | 3i | | CH1.0 |
| 25 | D1.1 | CM | Thomson | Ntgr261 | DCM316D/CM316R | ST31.08.00 | 1.2b | | D2.0 |
| 25 | D1.1 | CM | Texas Instruments | Texa261 | TNETC421A | 10.2.4 | 50.1 | | D2.0 |
| 25 | D2.0 | CM | Terayon | Tera263 | TJ715X | 12.21.100.001 | 51.2 | | D2.0 |
| 25 | D1.1 | CM | Terayon | Tera262 | TAx02 | v2.0.h1132 | 10.0 | | D1.1 |
| 25 | PC1.0 | CM | Toshiba | Tosh263 | PCX2200DA20817 | 1.8.017 | 7.4 | Har251 | PC1.0 |

| | | | Cat. | Manufacturer | Model | Product | Product Spec | Version | Notes | |
|---|---|---|---|---|---|---|---|---|---|---|
| 26 | D1.1 | | CM | Motorola | Moto263 | SBG1000 | SBG1000-1.1.3.5-SCMDO-NOSH | 1 | | D1.1 |
| 26 | D1.1 | | CM | Linksys | Link261 | BEFCMU110 ver.3 | 5.1S.20.2.FORTMESH. 1.0 | 1.0 | | D1.1 |
| 26 | D1.1 | | CM | Castnet | Cast252 | CXC250 | 2561 | 0/0 | | D1.1 |
| 26 | D1.1 | PC1.0 in D1.1 | CM | Lanteux | Link263 | WCG200 | 1.1.3.0.1 | 0/0 | | PC1.0 |
| 26 | P1.0 | | CMS | Syndeo | SSynd251 | Syon 426 | 2.2.6.8 | Sun Blade 1000 | | D2.0 |
| 26 | D2.0 | | CM | Terayon | Teri253 | TJT15 | 6.20 | 9.0 | | CH1.0 |
| 26 | C1.0 | | Embedded PS | Linksys | Link256 | WCG200 | 2.0.1.0.2 | 1.0b | | CH1.0 |
| 26 | C1.0 | | Embedded PS | Thomson | Thom254 | DCW615/DCW615R | 2.82/2.63 | 1.60 | | CH1.0 |
| 26 | P1.0 | | CMS | Toshiba | Tosh253 | PCX4500/DA2784I | 1.0.0 | 17.0.0 | | D1.0 |
| 26 | P1.0 | | CM | Arris | Arri252 | CM4/50A | R4.0 | R4.0 | | PC1.0 |
| 26 | D2.0 | | CMS | Cisco | CCis253 | BTS10200 | CM.04.02.011703C | 2.0.1.6.1 | | D1.1 |
| 26 | D1.1 | | CM | Linksys | Link265 | WCG200 | 2.0.1.6.1 | 3.0 | | D2.0 |
| 26 | D1.1 | | CM | Linksys | Link251 | BEFCMU10 | 1.1.5 | 10.b | | D1.1 |
| 26 | D1.1 | | CM | Linksys | Link267 | WCG200 | 2.0.1.6.1 | 2.1 | | D1.1 |
| 26 | D1.1 | | CM | Scientific Atlanta | Scie252 | WebSTAR DPX100 | 1.1.2/1.1.3.1 | 2.1 | | D2.0 |
| 26 | D2.0 | | CM | SMC | Smcn253 | SMC8013WG | 2.0.0 | 8.15 | | D2.0 |
| 26 | D2.0 | | CM | Terayon | Tera251 | TA-102 | 2215 | 5.26 | | PC1.0 |
| 26 | D2.0 | | CM | Terayon | Tera252 | TJT15 | 5.26 | 1.40 | | D2.0 |
| 26 | D2.0 | | CM | Thomson | Thom252 | DCW615/DCW615R | 2.61R01 | 1.12 | | D2.0 |
| 26 | D2.0 | | CM | Ambit | Amb251 | 60670EU | 2.67.2001 | 01 | | D2.0 |
| 26 | D2.0 | | CM | Arris | Arri253 | CM4/50A | CM.04.02.011703C | 010 | | D1.1 |
| 26 | D1.1 | | CM | Castlenet | Cast253 | CXC250 | 5.12.21 | 1.2 | | D2.0 |
| 26 | D1.1 | | CM | Thomson | Thom252 | DCW615, DCW215R | ST32.06.00 | 1A | | D2.0 |
| 26 | D1.1 | | CM | Hitron | Hitr252 | BRC5-2520T | 2.0.1 | 1A | | D2.0 |
| 26 | D2.0 | | CM | Terayon | Tera255 | TJT15X | 5.25 | 7.0 | | D1.1 |
| 25 | D2.0 | | CM | Motorola | Moto256 | SB5120 | SB5120-2.9.2.9-SCM-03-NOSH | 1 | | D2.0 |
| 25 | D2.0 | | CM | Motorola | Moto256 | SB5120 | SB5120-2.9.2.9-SCM-03-NOSH | 1 | | D2.0 |
| 25 | D2.0 | PC1.0 in D1.1 | CM | Scientific Atlanta | Scie251 | WebSTAR DPX2100 | 2.0.1r1.1.3.1 | 2 | | PC1.0 |
| 25 | D2.0 | PC1.0 in D1.1 | CM | Arris | 1Arri251 | C4-CMTS-2100-1 | CMTS_V03.01.00.20 | 1.1 | | D2.0 |
| 25 | D1.1 | | CMTS+PC | Terayon | Tera251 | TJT15 | 6.20 | 1.3 | | D2.0 |
| 25 | | | CM | Terayon | Tera252 | PCX2600/DA2823 | 1.0.13 | 7.0 | | D2.0 |
| 25 | PC1.0 in D1.1 | | CM | Netgear | Ntgr251 | CGR14MA2 | 2.0.0 | 19.0.0 | | D1.1 |
| 25 | D2.0 | | CM | Motorola | Moto252 | SB5120 | SB5120-2.9.2.9-SCM-03-NOSH | 1A | | D1.1 |
| 25 | D1.1 | | CM | Hitron | Hitr251 | BRG-35207 | 03-NOSH | 05-NOSH | | D1.1 |
| 25 | D1.1 | | CM | Com2001 | Com2251 | EC330A | 9.7.9 | 4A | | D1.1 |
| 25 | D1.1 | | CM | D-Link | Dlin251 | DP1110X02 | 2.5.2.111 | 17.0 | | PC1.0 |
| 25 | D1.1 | | CM | | | DCM-201 | 1.1.0 | 4A | | NFE400: Rev A0, HW Hitr251 |
| 25 | PC1.0 in D1.1 | | CMTS+PC | Cisco | 1Cisc253 | uBR7246vxr | 12.2(11)BC2p | 1.03 | rev B0, MC16S rev 1.0, | PC1.0 |
| 25 | PC1.0 in D1.1 | | EMTA | Arris | Arri251 | TTM200P | TM.03.02.0207G3C | 05 | | PC1.0 |
| 25 | D1.0 | | CM | Thomson | Thom251 | DCM315/DCM415R | SB3100-1.4.8.13- | 1.2 | | D1.0 |
| 25 | D1.1 | | CMS | Motorola | Moto259 | SB3100 | SCM00-NOSH | 1 | Rev 1.3 | | D1.1 |
| 25 | D1.1 | | CMTS | Cisco | 1Cisc252 | uBR7114 | 12.2(11)BC0c | Rev 1.3 | | D1.1 |
| 25 | D1.0 | | CM | Toshiba | Tosh251 | PCX2600/DA2823 | SBV4200-0T2.04- | 19.0.0 | | D1.0 |
| 24 | D1.1 | PC1.0 in D1.1 | EMTA | Motorola | Moto255 | SBV4200 | SCM00-NOSH | 1 | Rev 4.0 MC28 Rev A0 | PC1.0 |
| 24 | D1.1 | PC1.0 in D1.1 | CMTS+PC | Cisco | 1Cisc251 | uBR10012 | 12.2(11)BC2p | | PCA-0100 | PC1.0 |
| 24 | D1.1 | PC1.0 in D1.1 | CMTS+PC | Motorola | 1Moto251 | BSR64000 | 1.3.0T04P21.KRAU | 2.0 | | PC1.0 |
| 24 | D1.1 | PC1.0 in D1.0 | CM | Terayon | 2Tera251 | BW5500 | 1.30.1.21 | 7.0 | | PC1.0 |
| 24 | D1.1 | PC1.0 in D2.0 | CM | Arcitel | Klpo251 | CM01001 | 5.26 | 4.6 | | CH1.0 |
| 24 | C1.0 | | Embedded PS | DX Antenna | Ambt253 | 607A0EUW | 5.11.1001 | 5.11 | | D1.1 |
| 24 | D1.1 | | CM | Arris | Dxan251 | CDM-1300/DA2B821 | 1.0.6 | 02 | | D1.1 |
| 24 | D1.1 | | GM | | Arri243 | TC00DA1420 | 1.0.1.21 | | Tosh221 | D1.1 |
| 24 | D1.1 | | CM | Motorola | Moto242 | SB5100 | SB5100-1.1.1.1-SCM01- | NOSH | | D1.1 |
| 24 | D1.1 | | CM | Klpro | Klpo241 | CM01001 | NOSH | 7.0 | | D1.1 |
| 24 | D1.1 | | CM | Com21 | Com241 | DP1110X02 | 5.25 | 1.0 | | D1.0 |
| 24 | D1.1 | | CM | Broadnet | Broa241 | BN01 | 2.5.5.110 | 5.2 | | D1.0 |
| 24 | D1.1 | | CM | Askey | Aske241 | CME100 | 1.1.1.r1 | 1.0 | | D1.0 |
| 24 | D1.0 | | CM | Arris | Arri241 | TM02/091H02 | 3.5.1 | 04 | | D1.0 |
| 24 | D1.0 | | CM | Ambit | Ambt241 | 60914E | 2.23.1099 | 1.6 | | D1.0 |
| 24 | D1.0 | | CM | Toshiba | Tosh243 | PCX2200/DA2Z818 | 1.7.022 | 7.6 | | D1.0 |
| 24 | D1.0 | | CM | Thomson | Thom242 | DCM305/DCM305R | ST23.1B.41 | 028 | | D1.0 |

| Num | Ver | Type | Manufacturer | Model | Product | Version | Version | | Ver |
|---|---|---|---|---|---|---|---|---|---|
| 24 | D1.1 | CM | Pioneer | Pon241 | BT-4885OW | 1.1 r1 | 1.0 | | D1.1 |
| 24 | D1.1 | CMTS | Scientific-Atlanta | tSoa231 | Prisma GT | 1.1.1.16B | M2.0-G1 | 1.hpr231 | D1.1 |
| 24 | D2.0 | CM | Toshiba | Tos245 | PCX2610DAZ2781 | 1.0 | 17.0.0 | | D2.0 |
| 24 | D2.0 | CM | Thomson | Thom241 | DCM3150/CM315R | ST31.01.00 | 1.1 | | D1.0 |
| 24 | D2.0 | CM | Terayon | Tera243 | TJ715 | 6.19 | 3.0 | | D2.0 |
| 24 | D1.1 | CMTS | Cisco | 1Cisc241 | UBR7012 | 12.2(11)BC2c1 | Rev 3.0 MC5s20/S rev. | | D1.1 |
| 24 | D2.0 | CMTS | Terayon | 2Tera241 | BW0500 | 2.0.0.021 | 5.0 | | D2.0 |
| 24 | D1.1 | CMTS | Arris | 1Arti242 | ARCC00048 | 4.2.8 | 2.0 | | D1.1 |
| | | | | | | | 01 | | |
| | | | | | | | rev B0, MC16S rev 1.0, | | |
| | | | | | | | NPE400 Rev.A0, HW | | |
| 24 | D1.1 | CMTS | Cisco | 1Cisc241 | uBR7200 VXR | 12.2(11)BC1c | 1.03 | | D1.1 |
| 24 | D1.1 | CM | Texas Instruments | Texa242 | TNETC405 | 27.8.2 | 13.1 | | D2.0 |
| 24 | C1.0 | CM | Scientific-Atlanta | Soa241 | WebSTAR DPX2100 | 2.0.1.14 | 1.1 | | D2.0 |
| 24 | D2.0 | CM | Thomson | Thon244 | DCM3150/DCM315R | 7.0 | 8.0 | | D2.0 |
| 24 | D1.1 | CM | Xincstech | Xros241 | XCM-3900 | 7.0.2 | 6.0.1 | | D2.0 |
| 24 | D1.1 | CM | Scientific-Atlanta | Soa242 | WebSTAR DPX203 | 10.4 r4 | 5.0 | | D1.1 |
| 24 | D1.1 | CM | Arris | Arti242 | TC000A103 | 4.2.0 | 2.1 | | D1.1 |
| 24 | D1.1 | CM | Toshiba | Tob241 | PCX3000DAZ8831 | 6.2.3 | 13.0.0 | | D1.1 |
| 24 | D1.1 | CM | Texas Instruments | Texa241 | CX500 | 8.2.2 | 200.2 | | D1.1 |
| 24 | D1.1 | CM | Terayon | Tera242 | TJ715 | 5.25 | 7.0 | | D1.1 |
| 24 | D1.1 | CM | Terayon | Tera241 | TA-102 | 2.21 | 8.15 | | D1.0, D1.1 |
| 24 | D1.1 | CM | Scientific-Atlanta | Soa243 | WebSTAR DPR362 | 1.1.1.0 | 1.0 | | D1.1 |
| 24 | D2.0 | CM | Motorola | Moto243 | SB5100 | NOSH | 1 | | D2.0 |
| 24 | C1.0 | Embedded PS | Netgear | Ngr241 | CG314VHH | 2.64 | 1.30 | | CH1.0 |
| 24 | PC1.0 in D1.1 | EMTA | Arris | Arti241 | TM022S102 | 2.5 | 2.64 | | CH1.0 |
| 24 | PC1.0 in D1.1 | Embedded PS | Toshiba | Tosh242 | PCX3000DAZ8831 | 7.2.3 | 13.0.0 | | PC1.0 |
| 24 | PC1.0 in D1.1 | CMTS+PC | Cisco | 1Cisc241 | UBR7246 VXR | 12.2(11)BC1c | NPE400 | | PC1.0 |
| 24 | PC1.0 in D2.0 | CMTS+PC | Terayon | 2Tera241 | BW0500 | 2.0.0.0.16 | 2.0 | | CH1.0 |
| 23 | D1.1 | CM | Linksys | Link241 | BEFCMUHH | 2.64 | 1.30 | | D1.1 |
| 23 | D1.0 | CM | Ambit | Ambi242 | 6087EEU | 2.57.1001 | 1.12 | | D1.0 |
| 23 | D1.0 | CM | Thomson | Thon231 | DCM3500/CM405R | ST24.15.40 | 028 | | D1.0 |
| 23 | D1.0 | CM | Toshiba | Tosh233 | PCX2200DAZ8817 | 1.7.021 | 7.4 | | D1.0 |
| 23 | D1.0 | CM | Askey | Aski231 | CME075 | 1.41 | 5.4 | | D1.0 |
| 23 | D1.0 | CM | Belkin | Belk231 | F3DX530-W | 0.13845.2310 | 10 | | D1.0 |
| 23 | D1.0 | CM | CastleNet | Cast231 | CXC150 | 0.13845.2310 | 10 | | D1.0 |
| 23 | D1.0 | CM | Com21 | Crmb231 | DP1110SB | 2.3.2.109i | 3 | | D1.0 |
| 23 | D1.0 | CM | Hitron | Hit231 | BRG-35X0 | 1.0.0 | 4A | Htr201 | D1.0 |
| 23 | D1.0 | CM | Toshiba | Tosh231 | PCX2500DAZ8821 | 5.0 | 9.2.3 | | D1.0 |
| 23 | D1.1 | CM | Linksys | Link233 | BEFCMU10 Ver 2 | 0.11 | 4.0 | | D1.0 |
| 23 | D1.1 | CM | Toshiba | Tosh232 | PCX5000DA28850 | 1.1.4 | 7.0 | | D1.0 |
| 23 | D1.1 | CMTS | Motorola | Moto231 | BSR 64000 | 17.021BV | PCA-0100 | | D1.0 |
| 23 | D1.0 | CMTS | Terayon | 1Tera231 | BW0500 | 0.1070P08A.KRBU | 2.0 | | D1.0 |
| 23 | D1.0 | CMTS | Intel | Inte231 | 5200 | 1.3.21.2 | 9 | | D1.0 |
| 23 | D1.0 | CMTS | Juniper | 1Jnpr231 | Juniper G1 | 14.5.4 | M2.0-01 | | D1.0 |
| 23 | D1.1 | CM | Linksys | Link231 | BEFCMUHH | 2.1.1.16b | 1.30 | | D1.1 |
| 23 | D1.0 | CM | Motorola | Moto231 | SBG1000 | SBG1000v0.1.1.1- SCM03-NOSH | 1 | | D1.0 |
| 23 | D1.1 | CM | Arris | Arti231 | CM003DA103 | 3.3.0 | 5.1 | | D1.1 |
| 23 | D1.0 | CM | Thomson | Thon202 | DCW272 | 2.63 | 1 | | D1.1 |
| 23 | D1.0 | CM | Netgear | Ngr231 | CM212 | 1.01 | 1.30 | | D1.1 |
| 23 | D1.0 | CM | Motorola | Moto232 | SB4300 | 2.7.1b | 3A | | D1.1 |
| 23 | D1.0 | CM | Netgear | Ngr232 | CG914W | 2.83 | 1 | | D1.1 |
| 23 | D1.0 | CM | Scientific-Atlanta | Soa231 | WebStar DPX100 | 2.5.1r1.1.3 | 1.10 | | D1.1 |
| 23 | D1.0 | CM | Scientific-Atlanta | Soa232 | Webstar DPX2100 | 2.0.1r | 2.0 | | D1.1 |
| 23 | D1.0 | CM | SMC | Simon231 | SMC8012WG | 2.63 | 1.0 | | D1.1 |
| 23 | D1.0 | CM | Efficient Networks, Inc. | Eff231 | SpeedStream 6101 | 2.22.2 | 1.00 | | D1.1 |
| 22 | D1.1 | CM | Fujitsu | Fmts231 | FSC102 | 1.1.2 r1 | 1.8 | | D1.1 |
| 22 | D1.1 | CM | Motorola | Moto224 | SB4200 | 1.4.8.5 | 5.1 | ASKE211 | D1.1 |
| 22 | D1.1 | CMTS | Cisco | 1Cisc221 | UBR7200VXRMC28C | 12.7(7)BC1c | 1 | | D1.1 |
| 22 | D1.1 | CM | Texas Instruments | Texa221 | TNETC405T | 6.3.0 | NPE-400: Rev.A0 HW | | D1.1 |
| 22 | D1.1 | CM | Toshiba | Tosh222 | PCX25000DA28821 | 2.0.7 | 1.03, MC28C, Rev B0 | | D1.1 |
| 22 | D1.1 | CM | Motorola | Moto223 | SB4100 | 1.4.8.5 | HW 2.03 | | D1.1 |
| | | | | | | | 9.1 | | |
| | | | | | | | 9.2.2 | | |
| | | | | | | | 0 | | |
| 22 | D1.1 | CMTS | ADC | 1Adcc221 | UBR1x6SPM-SF) | R3.1.23 | CMTS: Rev A5 | | D1.1 |

| # | Type | Vendor | ID | Model | Version | Rev/Ver | Note | DOCSIS |
|---|------|--------|-----|-------|---------|---------|------|--------|
| 22 | CMTS | Arris | 1Arri222 | ARCD00048 | 4.2.6 | 01 | | D1.1 |
| 22 | CMTS | Juniper | 1Jnpr221 | Juniper G10 | 2.1.0.18 | 2.0 | 1Jnpr221 | D1.1 |
| 22 | CMTS | Motorola | 1Moto221 | BSR 64000 | 1.2.0.HRC | PCA-0057-02 | | D1.1 |
| 22 | CMTS | Motorola | 1Moto222 | BSR 1000 | 01.01.15.PRR | PCA-0027-A00 | | D1.1 |
| 22 | CM | Com21 | Cmto222 | DP 1110XB | 2.3.2.108 | 03 | | D1.1 |
| 22 | CMTS | ADC | 1Adco222 | Cuda 12000 (C-12-DMToADSM-SFI) | R3.1.23 | CMTS: Rev. 23 | | D1.1 |
| 22 | CM | Motorola | Moto222 | SB4220 | SB4220-1.6.3.0-SCM-01-NVSH | 01 | | D1.1 |
| 22 | CM | Toshiba | Tosh324 | PCX2200 | 1.7.017 | 7.3 | | D1.0 |
| 22 | CM | Scientific-Atlanta | 1Sac271 | Prisma G10 | 2.16.18 | 2.0 | | D1.0 |
| 22 | CM | Com21 | Cmto221 | DP 1110XB | 2.3.1.108 | 3 | | D1.1 |
| 22 | CM | Correlant | Corr221 | EC2770 | 1.9.10 | 7.41 | | D1.1 |
| 22 | CM | Joohong | Jhco222 | SL-2800 | Ver6.1.0 | Ver2.1 | | D1.0 |
| 22 | CM | AsusTek | Asus222 | ACM6545EB | 1.4 | 1.4 | | D1.0 |
| 22 | CM | Linksys | Link222 | BEFCMUH41 | 1.0.0 | 0A | | D1.0 |
| 22 | CM | Linksys | Link223 | BEFCMUH4 | 2.62 | 1.10 | | D1.0 |
| 22 | CM | Motorola | Moto221 | SB4220 | SB4220-0.6.3.5-SCM- | | | D1.0 |
| 22 | CM | Pioneer | Pion221 | BT-M800W | 1.0.7.r1 | 3.0 | | D1.0 |
| 22 | CM | Scientific-Atlanta | Sate221 | WebStar DPX100 | 1.0.5.r1.1 | 1.0 | | D1.0 |
| 22 | CM | 3Com | 3Com221 | 3CR29223 | 02.05 | 2.00 | | D1.0 |
| 22 | CM | Scientific-Atlanta | Scie223 | WebStar DPX100 | 1.0.5.r1.1 | 2.2 | | D1.0 |
| 22 | CM | Thomson | Thom221 | DCM305/305R | ST02.05.01 | 028 | | D1.0 |
| 22 | CM | Thomson | Thom222 | DCM305/305R | ST03.10.00 | 026 | | D1.0 |
| 21 | CM | Toshiba | Tosh221 | PCX2500/0A226021 | 1.0.6 | 9.1.1 | | D1.0 |
| 21 | CM | Scientific-Atlanta | Sate222 | WebStar DPX100 | 1.0.5.r1.1 | 2.1 | | D1.0 |
| 21 | CMTS | Broadcom | Brod221 | 8601 | 1.1.2.r1.1 | 5.1 | | D1.1 |
| 21 | CM | Arris | 1Arri221 | C4-CMTS-2100-1 | v02.00.02.10 | 1.0 | Aske211 | D1.1 |
| 21 | CM | Conexant | Cone211 | CX9421CM | 4.12734 | 24943.15.0 | | D1.1 |
| 21 | CM | Askey | Aske211 | CME775 | 1.1.2.r1 | 5.1 | | D1.1 |
| 21 | CM | Arris | Arri211 | CMX3600- | 2.1.0 | 04 | | D1.1 |
| 21 | CM | SMC | Adtr211 | CSMC3011CM-B | 2.3.1 | 3.0 | | D1.1 |
| 21 | CM | Thomson | Thom212 | RCA DCM305 | ST.22.04.b00 | 028 | | D1.1 |
| 21 | CM | Motorola | Moto214 | SB4200 | 0.4.4.0p | Rev. 1 | | D1.0 |
| 21 | CM | Motorola | Moto213 | SB4100 | 0.4.4.0b | Rev. 0 | | D1.0 |
| 21 | CM | Linksys | Link211 | BEFMCU10 ver.2 | 1.0.6 | 4.0 | | D1.0 |
| 21 | CM | AsusTek | Asus211 | ACM6545EB | 1.80 | 1.00 | | D1.0 |
| 21 | CM | Askey | Aske211 | HMX0bc | 71-0001-10 | RCA 219 767/1 R1A | | D1.0 |
| 21 | CM | Quanta Network Systems | Quan211 | QCM200 | 2.4.1 | 3.2 | | D1.1 |
| 21 | CM | DX Antenna | Dxan211 | CDM-120/DM2820 | 1.16.006 | 3.2.1 | Tosh182 | D1.1 |
| 21 | CMTS | Arris | 1Arri212 | C4-CMTS-2100 | V01.01.00.12 | 3.0 | | D1.0 |
| 21 | CM | Linksys | Link212 | BEFCM210 | 1.0.4 Ref.2 | 3.0 | | D1.1 |
| 21 | CM | Scientific-Atlanta | Scie211 | WebSTAR DPX213 | 1.1.2.r1 | 2.1 | | D1.0 |
| 21 | CM | Tellabs | Tell211 | CVM315A | 2.5.0 | RevA | | D1.0 |
| 21 | CM | Terayon | Tera211 | ECM615 | 4.54 | 1.2 | | D1.0 |
| 21 | CM | Terayon | Tera212 | ECM715 | 5.08 | 3.0 | | D1.0 |
| 21 | CM | Thomson | Thom211 | DCM245/0CM245R | ST.1C.00.00 | 026 | | D1.1 |
| 21 | CMTS | Coresma | Crsm211 | CM0511 | 0.5086.360 | 04 | Cast191 | D1.0 |
| 21 | CM | Best Data | Best211 | CX3000 | 0.5086.360 | 04 | Cast191 | D1.0 |
| 21 | CMTS | Xtreamtech | Xtre211 | XCM-3000 | 5.0.2 | 5.1.2 | | D1.1 |
| 21 | CMTS | RiverStone | 1Rstn211 | RS 8600 | 8.2.1.1 | Backplane RevA | RiverStone | D1.1 |
| 21 | CMTS | Terayon | 1Tera212 | B2800 | 6.1.2.C.1 | 300-005-03-0B | | D1.1 |
| 21 | CMTS | ADC | 1Adco211 | UBR2X12 | R3.1.91 | 1.0 | | D1.1 |
| 20 | CMTS | Cisco | 1Cisc211 | UBR10012 | 12.2(4)BCc | Rev 4.0 MC28 Rev.A0 | | D1.1 |
| 20 | CM | Scientific-Atlanta | Sate212 | WebSTAR DPX213 | 1.1.2.r1 | 1.0 | 1Jnpr211 | D1.1 |
| 20 | CM | Samsung | 0Sate201 | Prisma G10 | 2.0.0 | 2.0.0 | | D1.3 |
| 20 | CM | Motorola | Moto201 | SCM140U | 2.1.0 | 14.00 | | D1.3 |
| 20 | CM | Scientific-Atlanta | Same211 | SB4100 | 0.4.3.9p | Rev. 0 | | D1.3 |
| 20 | CM | Ericsson | Eric201 | WebSTAR DPX100 | 1.1.1.r1 | 2.0 | | D1.3 |
| 20 | CM | Arris | Arri201 | HM206C | 1.1.0 | 1.0 | | D1.3 |
| 20 | CM | Toshiba | Tosh204 | AQTM01NA | 1.0.r4 | V1A | | D1.1 |
| 20 | CM | Thomson | Thom201 | PCX2200/0A228817 | DXC 112 2293/1 R1B | ROA 117 8493/1 R2A | | D1.1 |
| 20 | CM | Scientific-Atlanta | Scie201 | RCA DCM245 | ST13.05.00 | 25 | | D1.1 |
| 20 | CM | Tellabs | Tell201 | WebSTAR DPX100 | 1.0.5.r1 | 1.0 | | D1.1 |
| 20 | CM | Motorola | Moto202 | CNM410A | V3.20 | Rev.1 | | D1.1 |
| 20 | CM | Andri | Andr201 | 601HHE | 2.25.988 | 1.6 | | D1.1 |

| # | | Type | Company | Device ID | Model | SW Version | HW Version | Chipset | | # |
|---|---|---|---|---|---|---|---|---|---|---|
| 20 | D1.0 | CM | Hilron | Hitr201 | BRG-3520 | 1.0.1 | 3A | | D1.0 | 20 |
| 20 | D1.0 | CM | D-Link | Dlnk201 | DCM-200 | 4.4/98.2.1 | 3.2 | | D1.0 | 20 |
| 20 | D1.0 | CM | Cisco | Cisc201 | UBR925 | Ver 1.2.2 | 3.1 | | D1.0 | 20 |
| 20 | D1.0 | CM | Ambit | Amb202 | 6023TEUW | 5.1.309 | 4.2 | | D1.0 | 20 |
| 20 | D1.1 | CMTS | 3Com | 3Com201 | 3CR29223 | 01.22 | 2.00 | | D1.0 | 20 |
| 20 | D1.0 | CM | Panasonic | 1Cisc201 | UBRT200 VX5/MC16S | 12.1/12CX2 | rev B0  MC16S rev 1.0 | | D1.1 | 20 |
| 20 | D1.1 | CMTS | Toshiba | Pana201 | TZ-CM200 | 1.7.14 | 2.1 | | D1.0 | 20 |
| 20 | D1.0 | CM | Toshiba | Tosb202 | PCX2500 / DA2B821 | 2.0.3 | 9.1.0 | | D1.0 | 20 |
| 20 | D1.0 | CMTS | Cisco | Tosb203 | PCX3000 / DA2B831 | 2.2.3 | 13.0.0 | | D1.0 | 20 |
| 20 | D1.0 | CM | Toshiba | 0Cisc201 | UBR10012 | 12.2(2)ZF1 | rev 3.0 MC29 Rev A0 | | D1.0 | 20 |
| 20 | D1.0 | CMTS | Cisco | Tosb201 | PCX3500 / DA2B821 | 1.2 | 9.1.0 | | D1.0 | 20 |
| 20 | D1.1 | CM | Texas Instruments | Texa201 | TNETC405T | 4.0.9 | 9.0 | | D1.1 | 20 |
| 19 | D1.0 | CMTS | Pacific Broadband | 6Pbco201 | Kodak G10 | 2.0.0.16 | 2.0.0 (M2.0/A1.2/02.0) | | D1.0 | 19 |
| 19 | D1.0 | CM | Thomson | Thom191 | DCM245 / DCM245R | 5.1.2.07.01 | 29.5 | | D1.0 | 19 |
| 19 | D1.0 | CM | Samsung | Sams191 | SAM-120U | 1.1.0 | 12.20 | | D1.0 | 19 |
| 19 | D1.0 | CM | Scientific-Atlanta | Scie191 | WebSTAR DPX110 | 1.0.4 Release 2 | 4.0 | Scie191 | D1.0 | 19 |
| 19 | D1.0 | CM | Scientific-Atlanta | Scie192 | WebSTAR DPX110 | 1.0.4 Release 2 | 3.0 | Scie192 | D1.0 | 19 |
| 19 | D1.0 | CM | Askey | Aske192 | CME63 | 1.0.4 Release 2 | 3.0 | | D1.0 | 19 |
| 19 | D1.0 | CM | Terayon | Tera192 | E-DAK15 | 3.5.9 | 1.2 | | D1.0 | 19 |
| 19 | D1.0 | CM | Correlant | Corr191 | EC280T | 1.7.11 | 7.11 | | D1.0 | 19 |
| 19 | D1.0 | CM | Askey | Aske191 | CMH033 | 1.0.4 Release 2 | 3.0 | | D1.0 | 19 |
| 19 | D1.0 | CM | Accton | Actn191 | SMC8002CM | 4.5096 | 9414.18.0 | | D1.0 | 19 |
| 19 | D1.0 | CM | Hauppauge Computer | Haup191 | BRG-3510 | 1.0.9M1.2 | 0.0 | | D1.0 | 19 |
| 19 | D1.0 | CM | LG Innotek | LGIn192 | LCM5000 | 1.0.9M1.2 | 0.0 | | D1.0 | 19 |
| 19 | D1.0 | CM | Terayon | Tera191 | ECM610 | 3.47 | 1.2 | | D1.0 | 19 |
| 19 | D1.0 | CM | AsusTek | Asus191 | ACM6050EB | 0.50/65.360 | 1.30 | | D1.0 | 19 |
| 19 | D1.0 | CM | CastleNet | Cast191 | CXC110 | 04 | 04 | | D1.0 | 19 |
| 19 | D1.0 | CM | Ericsson | Eric191 | HM200c | CXC 112 20561 R58 | RCA 117 8439/1 R2A | | D1.0 | 19 |
| 19 | D1.0 | CM | Ericsson | Eric192 | HM204c | CXC 112 20561 R58 | RCA 117 8439/1 R2A | | D1.0 | 19 |
| 19 | D1.0 | CM | Ericsson | Eric193 | HM200c | R30 | R2B | | D1.0 | 19 |
| 19 | D1.0 | CM | High Speed Surfing | High191 | SM200 | 0.50/65.360 | 03 | | D1.0 | 19 |
| 19 | D1.0 | CM | LG Innotek | Lgin191 | LCM100 | 4.5096 | 03 | | D1.0 | 19 |
| 19 | D1.0 | CM | Motorola | Moto191 | SB4100 | 4.2.12p | Rev 1 | | D1.1 | 19 |
| 19 | D1.0 | CM | SMC | Smcn191 | SMC 8002 CM | 2.8.3 | 1.6 | | D1.0 | 19 |
| 19 | D1.0 | CM | Motorola | Moto192 | SB4100 | 1.0.9M1.2 | Rev.0 | | D1.0 | 19 |
| 19 | D1.0 | CM | Tri-Gem Computer | Trig191 | Dream Port 1200 | 10.0M1.2 | A0 | | D1.0 | 19 |
| 19 | D1.0 | CM | Motorola | Moto193 | SB4101 | 4.0.12P | Rev.4 | | D1.0 | 19 |
| 19 | D1.1 | CM | Panasonic | Pana191 | TZ-CM2000 | 1.7.11 | 2.1 | | D1.0 | 19 |
| 19 | D1.1 | CMTS | Cadant | 1Cada191 | C4-CMTS-2100 | v90.80.17 | 01.0 | Correlant EC280T | D1.1 | 19 |
| 19 | D1.0 | CM | Ambit | Ambi191 | 6019ME | 2.22.2 | 1.8 | Correlant EC280T | D1.0 | 19 |
| 19 | D1.1 | CMTS | Arris | 1Arr191 | 1500 Cornerstone CMTS | 4.2.0 | 01 | | D1.1 | 19 |
| 19 | D1.0 | CM | Toshiba | Tosb192 | PCX1600/DA2B816 | 1.7.011 | 7.1 | | D1.0 | 19 |
| 19 | D1.0 | CM | Toshiba | Tosb194 | PCX1200/DA2B815 | 1.7.011 | 7.0 | | D1.0 | 19 |
| 19 | D1.1 | CMTS | Motorola | 0Mrto191 | DCM-2100 | Release 11x | 484447-001 Rev A | | D1.1 | 19 |
| 19 | D1.0 | CM | Turbocomm | Turb191 | EC200T | 1.7.11 | 7.0 | | D1.0 | 19 |
| 19 | D1.0 | CM | Toshiba | Tosb193 | PCX2500/DA2B821 | 9.0.0.0 | 9.0.0 | | D1.1 | 19 |
| 19 | D1.1 | CM | Texas Instruments | Texa191 | TNETC405 | 2.0.1 | 2.0.0 | | D1.1 | 19 |
| 19 | D1.0 | CM | Zoom | Zoom191 | 5041 Zoom Cable Modem | 4.100 | 140 | | D1.0 | 19 |
| 18 | D1.0 | CM | Samsung | Same191 | SDM-120U | 2.0.1 | 26 | | D1.0 | 18 |
| 18 | D1.0 | CM | Ericsson | Eric182 | HM204c | CXC112 20561 R5A | A0 | | D1.0 | 18 |
| 18 | D1.0 | CM | Linksys | Link181 | BEUCM11 | 0.43/61.108 | RCA117 8439/1 R2A | | D1.0 | 18 |
| 18 | D1.0 | CM | D-Link | Dlin181 | DCM-200 | 4.4382 | 04 | | D1.0 | 18 |
| 18 | D1.0 | CM | Net & Sys | Nets181 | MNG3000 | 2.1.0 | 3.2 | | D1.0 | 18 |
| 18 | D1.0 | CM | Ericsson | Eric185 | HM200c | R30 | R2B | | D1.0 | 18 |
| 18 | D1.0 | CM | Zoom | Zoom181 | 5001 | 1.86 | 0205-014 (MIB 295914) | Ambil | D1.0 | 18 |
| 18 | D1.0 | CM | US Robotics | Usro181 | USR6000 | 2.13.2 | 1.6 | | D1.0 | 18 |
| 18 | D1.0 | CM | Thomson | Thom181 | DCM245R | ST12.07 | 26 | | D1.0 | 18 |
| 18 | D1.0 | CM | Toshiba | Tosb181 | PCX2000/DA2B820 | 1.1R.005 | 3.3.2 | Ambit | D1.0 | 18 |
| 18 | D1.0 | CM | 3Com | 3Com183 | 3CR29250 | 2.16.1 | 1.6 | | D1.0 | 18 |
| 18 | D1.0 | CM | Toshiba | Tosb182 | PCX2000/DA2B820 | 1.1R.005 | 3.2.1 | Ambit | D1.0 | 18 |
| 18 | D1.0 | CM | Ambit | Amb181 | 6016ME | 2.6.3 | 2.6 | | D1.0 | 18 |
| 18 | D1.0 | CM | Hilron | Hilr181 | BRG-3510 | 1.08.M1.2 | A0 | | D1.0 | 18 |
| 18 | D1.0 | CM | CadleNet | Cast181 | CXC110-Dual Link | 0.45/60.230 | 04 | | D1.0 | 18 |
| 18 | D1.0 | CM | 3Com | 3Com181 | 3CR29250 | 2.16.5 | 1.5 | Ambil | D1.0 | 18 |
| 18 | D1.1 | CMTS | Pacific Broadband | 0Pbco181 | KDD04K F10 | 1.0.1.2 | M1.1 / A1.7 / D1.1 | | D1.0 | 18 |
| 18 | D1.0 | CM | High Speed Surfing | High181 | SM100 | 0.43/61.108 | 04 | Cast172 | D1.0 | 18 |

| # | | # | | Type | Mfr code | Manufacturer | Model | Version | Version | Note | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 16 | D1.0 | 16 | D1.0 | CM | Infi181 | Infosee | | | | | D1.0 |
| 18 | D1.0 | 18 | D1.0 | CM | Hitr182 | Hitron | | | | | D1.0 |
| 18 | D1.0 | 18 | D1.0 | CM | Eric181 | Ericsson | | | | | D1.0 |
| 17 | D1.0 | 17 | D1.0 | CM | Siens171 | Samsung | SCM-130U | V2.1.0 | V2.1.0 | | D1.0 |
| 17 | D1.0 | 17 | D1.0 | CM | Gtsc171 | Global Telemann | MediaLync CM-2000 | K | Rev.0.5 | | D1.0 |
| 17 | D1.0 | 17 | D1.0 | CM | Sams171 | Samsung | SCM-120R | 4.4381 | 12.00 | | D1.0 |
| 17 | D1.0 | 17 | D1.0 | CM | Scie171 | Scientific-Atlanta | Webstar DPX-110 | 1.0.3R4 | 3.0 | | D1.0 |
| 17 | D1.0 | 17 | D1.0 | CM | High171 | High Speed Surfing | SM4110 | 0.4381.108 | 04 | | D1.0 |
| 17 | D1.0 | 17 | D1.0 | CM | Texa171 | Texas instruments | ECM210 | 1.7.8 | 6.62 | | D1.0 |
| 17 | D1.0 | 17 | D1.0 | CM | Aske171 | Askey | TNETC060G | 2.17 | 3.2 | Aske171 | D1.0 |
| 17 | D1.0 | 17 | D1.0 | CM | Nort171 | Nortel Networks | CME0G3 | 1.0.3R4 | 3.0 | | D1.0 |
| 17 | D1.0 | 17 | D1.0 | CM | Moto174 | Motorola | CM115U | 1.0.3R4 | 3.0 | | D1.0 |
| 17 | D1.0 | 17 | D1.0 | CM | Moto173 | Motorola | SB4100 Rev 3 | 4.0.9p | Rev 3 | | D1.0 |
| 17 | D1.0 | 17 | D1.0 | CM | Moto172 | Motorola | SB4100 Rev 1 | 4.0.9p | Rev 1 | Correxlant | D1.0 |
| 17 | D1.0 | 17 | D1.0 | CM | Mot172 | Motorola | SB4100 Rev 0 | 4.0.9p | Rev 0 | Aske171 | D1.0 |
| 17 | D1.0 | 17 | D1.0 | CM | Mats171 | Matsushita | TZ-CM100 | 1.1 | 1.1 | | D1.0 |
| 17 | D1.0 | 17 | D1.0 | CM | Cisc171 | Cisco | CVA 122 | cvs120-k1v4y5-mz.TBN 3.1 | 3.1 | | D1.0 |
| 17 | D1.0 | 17 | D1.0 | CM | Daiko171 | Daikos | CableXpert CMZ1100 | 0.4.3.81 | 1.0 | | D1.0 |
| 17 | D1.0 | 17 | D1.0 | CM | Cast172 | Castlenel | CXC110-CTI | 0.4381.108 | 04 | | D1.0 |
| 17 | D1.0 | 17 | D1.0 | CM | Elsa171 | ElsaAG | Microdisk Cable | 1.0.8 | A3 | GVC | D1.0 |
| 17 | D1.0 | 17 | D1.0 | CM | Moto171 | Motorola | SD1000 | 3.2.12p | Rev 1 | | D1.0 |
| 17 | D1.0 | 17 | D1.0 | CM | Eric171 | Ericsson | HM204c R1A (ZAT 510 102/14) | R3D | R1A | | D1.0 |
| 17 | D1.0 | 17 | D1.0 | CM | Eric172 | Ericsson | 11/214) | R4A | R1A | | D1.0 |
| 17 | D1.0 | 17 | D1.0 | CM | Cast171 | Cadient | CXC110aCableir | 0.4381.108 | 04 | | D1.0 |
| 17 | D1.0 | 17 | D1.0 | CM | Powe171 | Powercom | PCR-2600U | 4.4382 | V3.2 | | D1.0 |
| 17 | D1.0 | 17 | D1.0 | CMTS | Aarti171 | Arris | Cornerstone CMTS-1500 | 4.0.0 | 00 | | D1.0 |
| 17 | D1.0 | 17 | D1.0 | CMTS | 0Rters171 | RiverStone | RS 8000 | 6.1.2.C.1 | Baciciplane, 300-001-05-0A CMTS module 02 | | D1.0 |
| 17 | D1.0 | 17 | D1.0 | CMTS | 0Tell171 | Tellabs | Cablespan 2700 | 6.1.2.C.1 | Baciciplane: 300-005-06--2A CMTS module -2 | | D1.0 |
| 17 | D1.0 | 17 | D1.0 | CMTS | 0Tera171 | Terayon | BE 2000BE-CMTS41 | 6.1.2.C.1 | Baciciplane: 300-001-05-0A CMTS module 02 / Line card rev 3 | | D1.0 |
| 17 | D1.0 | 17 | D1.0 | CMTS | 0Cisc172 | Cisco | UBR 7100 | 4.4.EC | upconcvrv 7 | | D1.0 |
| 16 | D1.0 | 16 | D1.0 | CMTS | 3Com173 | 3Com | 3CR29241 | 01.03 | 2.0 | | D1.0 |
| 16 | D1.0 | 16 | D1.0 | CMTS | 3Com172 | 3Com | 3CR29223 | 01.15 | 2.0 | | D1.0 |
| 16 | D1.0 | 16 | D1.0 | CMTS | Acch171 | Archon | SMC 8001 | 21.0 | 2/1 | | D1.0 |
| 16 | D1.0 | 16 | D1.0 | CMTS | Zoom161 | Zoom | 5031 | 2.0.4.2.70 | 029301 | | D1.0 |
| 16 | D1.0 | 16 | D1.0 | CMTS | 0Ride161 | RiverDelta | BSR54000 | 00.01.00.0A | CHS-0001-02 | | D1.0 |
| 16 | D1.0 | 16 | D1.0 | CM | Tosh161 | Toshiba | DAZ8633 | 1.7.007 | 6.62 | | D1.0 |
| 16 | D1.0 | 16 | D1.0 | CM | Nort161 | Nortel Networks | CM220 | v2.4 patch 1 | V1.4 | | D1.0 |
| 16 | D1.0 | 16 | D1.0 | CM | 0Cisc161 | Cisco | UBR7200/MC29C | 12.1(0a)EC | A0 | | D1.0 |
| 16 | D1.0 | 16 | D1.0 | CM | Elsa161 | ElsaAG | 204 | 1.30 | G | | D1.0 |
| 16 | D1.0 | 16 | D1.0 | CM | Dlin161 | D-Link | DCM-1000 | 4.0770 | 3.2 | | D1.0 |
| 16 | D1.0 | 16 | D1.0 | CM | Ambi161 | Ambit | 60016P | v2.2 patch9 | v3.1 | Ambit | D1.0 |
| 16 | D1.0 | 16 | D1.0 | CM | Ambt161 | Ambit | 60116HE | 2.2.7 | 1.4 | | D1.0 |
| 15 | D1.0 | 15 | D1.0 | CM | Arri161 | Arris | CM250R | S71.08 | 2.5 | | D1.0 |
| 15 | D1.0 | 15 | D1.0 | CM | Tera151 | Terayon | ECM410 | 1.7.6 | 6.12 | | D1.0 |
| 15 | D1.0 | 15 | D1.0 | CM | Futu152 | Future Networks | FN110C | V2.19 | V1.C | | D1.0 |
| 15 | D1.0 | 15 | D1.0 | CM | Nets151 | Net.& Sys | MKG-1000 | 2.200 | 1.03 | Thomson | D1.0 |
| 15 | D1.0 | 15 | D1.0 | CM | 3Com161 | 3Com | 3CR29223 | v1.1.0 | v2.00 | | D1.0 |
| 15 | D1.0 | 15 | D1.0 | CM | Aske151 | Askey | RT060 | 1.0.0 | V8.0 | | D1.0 |
| 15 | D1.0 | 15 | D1.0 | CM | Cisc151 | Cisco | UBR905 | ubr025-k1i2c0sv4y5-mz | A0 | | D1.0 |
| 15 | D1.0 | 15 | D1.0 | CM | Olse151 | Ore | C1001 | 1.0.3657 | 01 | | D1.0 |
| 15 | D1.0 | 15 | D1.0 | CMTS | 0Rism151 | RiverStone | RS 8000 | 6.1.0.1 | Chassis: rev B, CMTS: Rev -02 | | D1.0 |
| 15 | D1.0 | 15 | D1.0 | CM | Tosh153 | Toshiba | PCX1100U/DAZ8813 | 1.7.005 | 6.62 | | D1.0 |
| 15 | D1.0 | 15 | D1.0 | CM | Luca151 | Lucent (Delta Kalsel) | Demax 38-003 | V2.91.0 | v6.0 | | D1.0 |
| 15 | D1.0 | 15 | D1.0 | CM | Tosh152 | Toshiba | PCX1100U/DAZ8811 | 1.7.006 | 6.12 | Aske131 | D1.0 |
| 15 | D1.0 | 15 | D1.0 | CMTS | 0Ride152 | RiverDelta | BSR 1000 | 2.1.9 | BSR 1000 | | D1.0 |

| ID | | | Type | Manufacturer | Code | Model | Version | Rev / Chassis | Notes | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 15 | D1.0 | D1.0 | CMTS | Terayon | 01test151 | Teralink 2000 TLi- | 6.1 | Rev 2 | Chassis rev6: CMTS: | D1.0 | D1.0 |
| 15 | D1.0 | D1.0 | CM | Terayon | Tera152 | CMTS41A | 1.7.6 | 6.02 | | D1.0 | D1.0 |
| 15 | D1.0 | D1.0 | CM | Seejin | Seej151 | ECM210 | V1.13 | V1.2 | | D1.0 | D1.0 |
| 15 | D1.0 | D1.0 | CM | Maspro | Masp151 | SC-5100E | V1.0 | V1.0 | | D1.0 | D1.0 |
| 15 | D1.0 | D1.0 | CMTS | Terayon | Tera153 | 77TCX42 | 0098-58 | D | | D1.0 | D1.0 |
| 15 | D1.0 | D1.0 | CM | Motorola | Moto152 | TCX53II | Rev v2.2.9 | A0 | | D1.0 | D1.0 |
| 15 | D1.0 | D1.0 | CM | Cisco | OCisc151 | SB3100 Rev C | 12.1(2)EC1 | 25 | | D1.0 | D1.0 |
| 15 | D1.0 | D1.0 | CM | Thomson | Thom151 | UBR 7200 VXR | ST 1.0A | 2.0 | | D1.0 | D1.0 |
| 15 | D1.0 | D1.0 | CM | Com21 | Cmto151 | DCM235/235R | 2.1.6.100 | v1.0 | | D1.0 | D1.0 |
| 15 | D1.0 | D1.0 | CM | CIS | Cisn151 | DP1110 | 1.18 | E | | D1.0 | D1.0 |
| 15 | D1.0 | D1.0 | CM | ElsaAG | Elsa151 | WR-CAMBRIDTE | | | | D1.0 | D1.0 |
| | | | | | | 204 | | | | | |
| | | | | | | DCM 2000 475390-001- | | | | | |
| 14 | D1.0 | D1.0 | CMTS | Motorola | 0Moto151 | 01 | Rev 1.0 | 475595-001-00 Rev 01 | | D1.0 | D1.0 |
| 14 | D1.0 | D1.0 | CM | GVC | Grovi41 | CMA0A0CON | rev 1.44.32.52 | Rev 31 | PowerCom | D1.0 | D1.0 |
| 14 | D1.0 | D1.0 | CM | D-Link | Dlin141 | DCM100 | 0.44.32.52 | Rev 2.3 | Tosh131 | D1.0 | D1.0 |
| 14 | D1.0 | D1.0 | CM | DX Antenna | Dxan141 | DAZ8811 | 1.7.003 | Rev 6.11 | | D1.0 | D1.0 |
| | | | | | | | | Engine, WiME206- | | | |
| | | | | | | | | 900148RA, T426TG01, | | | |
| 14 | D1.0 | D1.0 | CMTS | Motorola | 0Moto142 | MMLN 4094D | 5.2 | Rev C | TurboNet | D1.0 | D1.0 |
| 14 | D1.0 | D1.0 | CM | Ericsson | Eric142 | HM209L | Rev R1E | Rev R2B | Communications | D1.0 | D1.0 |
| 14 | D1.0 | D1.0 | CM | Com21 | Com141 | DP121 | 1.6.19 | 6.6 | | D1.0 | D1.0 |
| 14 | D1.0 | D1.0 | CM | Ericsson | Eric141 | HM209c | Rev R1D | Rev R2B | | D1.0 | D1.0 |
| 14 | D1.0 | D1.0 | CM | Anris | 0Ant142 | CMTS-1000 | 3.2.1 | Rev 08 | | D1.0 | D1.0 |
| 14 | D1.0 | D1.0 | CM | Cisco | OCisc141 | UBR 7200 VXR | 12.0(11)SC | A0 | | D1.0 | D1.0 |
| 14 | D1.0 | D1.0 | CM | AsusTek | Asus141 | AC660000E3 | 23 | 1.3 | | D1.0 | D1.0 |
| 14 | D1.0 | D1.0 | CM | Zoom | Zoom142 | 5611 | 0.44.32.52 | 0295-01C | | D1.0 | D1.0 |
| 14 | D1.0 | D1.0 | CM | Ambit | Ambi141 | 6909BE | 2.0.13 | 1.3 | | D1.0 | D1.0 |
| 14 | D1.0 | D1.0 | CM | Terayon | Tera141 | ECM210 | Rev 1.6.19 | Rev 6.6 | TurboNet | D1.0 | D1.0 |
| 14 | D1.0 | D1.0 | CM | Ambit | Ambi142 | 6903BU | 2.5 | 2.0 | | D1.0 | D1.0 |
| 14 | D1.0 | D1.0 | CM | Anris | Anri141 | CM20UU | ST 5.14 | V25 | | D1.0 | D1.0 |
| 14 | D1.0 | D1.0 | CM | Thomson | Thom141 | DCM 225 | Ver 5.14 | Ver 25 | | D1.0 | D1.0 |
| 14 | D1.0 | D1.0 | CM | Samsung | Sams141 | SCM-110R Ether | Rev 2.0.2 | Rev 11.10 | RCA | D1.0 | D1.0 |
| 14 | D1.0 | D1.0 | CM | Zoom | Zoom141 | 5901 | 1.43.32.52 | 0295-01 | | D1.0 | D1.0 |
| 14 | D1.0 | D1.0 | CM | Motorola | Moto143 | SB3100 Rev C. | Rev 5.2.6 | Rev C | | D1.0 | D1.0 |
| 13 | D1.0 | D1.0 | CM | Powercom | Powe141 | PCR-2600 | 0.44.32.51 | Rev 2.3 | | D1.0 | D1.0 |
| 13 | D1.0 | D1.0 | CM | Motorola | Moto141 | SB3100 Rev D | Rev v3.2.6 | Rev D | | D1.0 | D1.0 |
| 13 | D1.0 | D1.0 | CM | GVC | Grovi31 | CMX-50 | 3.1.0 | 8 | | D1.0 | D1.0 |
| 13 | D1.0 | D1.0 | CM | Alcatel | Alca131 | UMI141 | 1.7.3 | 6.10 | | D1.0 | D1.0 |
| 13 | D1.0 | D1.0 | CM | Toshiba | Tosh131 | DAZ8811 | 1.7.003 | 6.11 | | D1.0 | D1.0 |
| 13 | D1.0 | D1.0 | CMTS | 3Com | 03Com135 | 88-0.09978-10 | 4.4.18 | Rev B | | D1.0 | D1.0 |
| 13 | D1.0 | D1.0 | CM | Jooking | Jook131 | Superlink 2000 | 1.7.3 | 6.10 | | D1.0 | D1.0 |
| 13 | D1.0 | D1.0 | CM | Sohwaie | Sohs131 | NSG200 | 1.7.3 | 6.10 | | D1.0 | D1.0 |
| 13 | D1.0 | D1.0 | CMTS | BAS | 0Bas131 | Coda | 0.158 | D | | D1.0 | D1.0 |
| 13 | D1.0 | D1.0 | CM | Cisco | Cisc131 | UBR924 | ubr920+a1y5-mst.120RTLN | A0 | | D1.0 | D1.0 |
| 13 | D1.0 | D1.0 | CM | Toshiba | Tosh132 | DAZ8815 | 1.6.016 | 6.6 | | D1.0 | D1.0 |
| 13 | D1.0 | D1.0 | CM | 3Com | 3Com133 | 3CR29220 | 1.0.4 | 2.00 | Asket121 | D1.0 | D1.0 |
| 13 | D1.0 | D1.0 | CM | Askey | Aske131 | CMED33 | V2.91.0 | V6.0 | | D1.0 | D1.0 |
| 13 | D1.0 | D1.0 | CM | Motorola | Moto133 | SB3100 Rev C. | v3.2.1 | Rev C | | D1.0 | D1.0 |
| 13 | D1.0 | D1.0 | CM | NetGame | Netn131 | Phazer | 2.9 | 6.0 | | D1.0 | D1.0 |
| 13 | D1.0 | D1.0 | CM | 3Com | 3Com131 | 3CR29210 | 3.1.0 | B.2 | | D1.0 | D1.0 |
| 13 | D1.0 | D1.0 | CM | Nortel Networks | Nort131 | CM115 | V2.91.0 | V6.0 | | D1.0 | D1.0 |
| 13 | D1.0 | D1.0 | CM | ZyXel | Zyxe131 | 941 | 2.4 | Zygate v1.58 | | D1.0 | D1.0 |
| 13 | D1.0 | D1.0 | CM | Future Networks | Futu131 | 100L | V2.13 | V2.21 | Asket121 | D1.0 | D1.0 |
| 13 | D1.0 | D1.0 | CM | Future Networks | Futu132 | 110L | V2.13 | V1.0 | | D1.0 | D1.0 |
| 13 | D1.0 | D1.0 | CMTS | 3Com | 03Com134 | 80-000971-01 | 3.61.48-1 | Rev 1.0 | | D1.0 | D1.0 |
| 12 | D1.0 | D1.0 | CM | NetStar | Nsg131 | CM231 | 2.80 | 6.0 | | D1.0 | D1.0 |
| 12 | D1.0 | D1.0 | CM | BestData | Best131 | CMX110 | 1.6.3.3 | 0.10 | | D1.0 | D1.0 |
| 12 | D1.0 | D1.0 | CM | Anris | Anri122 | CM220 | ST 4.65 | V24 | | D1.0 | D1.0 |
| 12 | D1.0 | D1.0 | CM | Askey | Aske121 | CMED39 | v2.80 | v6.0 | | D1.0 | D1.0 |
| 12 | D1.0 | D1.0 | CM | Anris | Anri121 | CM220U | 3.1.0 | V25 | | D1.0 | D1.0 |
| 12 | D1.0 | D1.0 | CM | 3Com | 3Com121 | DCM 225 | ST 5.65 | L3 | | D1.0 | D1.0 |
| 12 | D1.0 | D1.0 | CM | Thomson | Thom123 | 2940 | ST5.06 | V25 | | D1.0 | D1.0 |
| 12 | D1.0 | D1.0 | CM | High Speed Surfing | High121 | SM100 | 6.16.16 | 6.1 | | D1.0 | D1.0 |
| 12 | D1.0 | D1.0 | CM | Thomson | Thom122 | DCM 215 | ST6.06b | V24 | | D1.0 | D1.0 |
| 12 | D1.0 | D1.0 | CM | Thomson | Thom121 | DCM 215 | ST6.05 | V24 | | D1.0 | D1.0 |
| 12 | D1.0 | D1.0 | CM | Turbocomm | Turb121 | CM410 | 6.16.16 | 6.1 | | D1.0 | D1.0 |
| 12 | D1.0 | D1.0 | CM | Terayon | Tera121 | ECM100 | 6.16.16 | 6.1 | | D1.0 | D1.0 |

| No. | D1.0 | Type | Manufacturer | Code | Model | Version | Rev/Firmware | Qual. |
|---|---|---|---|---|---|---|---|---|
| 12 | D1.0 | CM | Tenyon | Tere122 | ECM110 | 1.6.16 | 5.4 | D1.0 |
| 12 | D1.0 | CM | Motorola | Moto122 | MMLN3150A | 2.0.0051 | 74352G01 | D1.0 |
| 12 | D1.0 | CM | Motorola | Mote121 | MLN0020A | 1.0CL08 | 75087G01 | D1.0 |
| 12 | D1.0 | CM | Toshiba | Tosh122 | DA2B811 | 1.7.002 | 6.1 | D1.0 |
| 12 | D1.0 | CM | Dieswaft | Dass121 | VIX020 | v2.80 | v6.0 | D1.0 |
| 12 | D1.0 | CM | Com21 | Cmto123 | DP111 | 1.6.16 | 1.6.16 | D1.0 |
| 11 | D1.0 | CM | Toshiba | Tosh121 | DA2B811 | 1.6.016 | 6.1 | D1.0 |
| 11 | D1.0 | CM | Com21 | Cmto114 | DP101 | 1.6.14 | 5.4 | D1.0 |
| 11 | D1.0 | CM | Com21 | Cmto112 | CP2001 | 1.0.5.100 | 6500106 rev65 | D1.0 |
| 11 | D1.0 | CM | Thomson | Thom111 | DCM 205 | ST 1.1.0 | ve 16 | D1.0 |
| 11 | D1.0 | CMTS | Cisco | OCtsc111 | UBR7200 | 11.3(1a)NA1 | A0 | D1.0 |
| 11 | D1.0 | CM | Com21 | Cmto113 | CP3001 | 1.1.0.100 | 6500106 rev65 | D1.0 |
| 11 | D1.0 | CM | DX Antenna | Dsan111 | DA2B901D | 1.6.003 | 5.21 | D1.0 |
| 11 | D1.0 | CM | General Instrument | Gene112 | SB3100B | V3.0.7 | -001Rev9 | D1.0 (Trosh092) |
| 11 | D1.0 | CM | Best Data | Best111 | CMX100 | 1.6.14 | 5.4 | D1.0 |
| 11 | D1.0 | CM | General Instrument | Gene111 | SB3100A | V3.0.7 | -002RevA | D1.0 |
| 10 | D1.0 | CM | Com21 | Cmto111 | CP3001 | 1.0.1.100 | 6500087 rev64 | D1.0 |
| 10 | D1.0 | CM | Thomson | Thom101 | DCM 105 | ST 20.5.3 | HW Ver 12 | D1.0 |
| 10 | D1.0 | CM | Terayon | Tera101 | ECM100 | 1.6.8 | 5.4 | D1.0 |
| 10 | D1.0 | CMTS | Cisco | OcR091 | DES901E02 | 2.0.0 | 03 | D1.0 |
| 9 | D1.0 | CM | Toshiba | Tosh092 | PCX1000DA2B801F | Ver 1.6.003 | Ver 5.21 | D1.0 |
| 9 | D1.0 | CMTS | Philips | Phil091 | PD10D | 1.76 | 1.11 | D1.0 |
| 9 | D1.0 | CM | Sony | Sony091 | CMR-5000 | 1.1 (0.76.1) | 1.11 | D1.0 |
| 9 | D1.0 | CM | Askey | Askef091 | CMD010 | 1.76 | 1.11 | D1.0 |
| 9 | D1.0 | CM | Motorola | Moto091 | MMLN4204D | 5.01Dp13b | MAC, 74039G01, Rev A; Engine, MXME2306-900MTX-Ht; 74612G01, Rev1b+RevA MTX-LC; 74039G01, Rev i2; MRX, 74387G01, Rev C | D1.0 |
| 9 | D1.0 | CM | Cisco | Cisc091 | UBR904 | 11.2(6)NA.obr900a1y4- mx.cablelabs 15may09 | A0 | D1.0 |
| 9 | D1.0 | CM | Samsung | Sams091 | SCM-100R | 1.1.76 | 1.2 | D1.0 |
| 8 | D1.0 | CM | 3Com | 3Com081 | 3CR292-DE56 | 12.30 | A01-3 | D1.0 |
| 8 | D1.0 | CMTS | Arris | ByrN081 | DE3804E25 | V1.00.3 | 02 | D1.0 |
| 6 | D1.0 | CM | General Instrument | Gene081 | SB3100 | V1.1.1 | X9J002 | D1.0 |
| 6 | D1.0 | CM | Toshiba | Tosti071 | DA2B801E | 1.51k | 5.2 | D1.0 |
| 7 | D1.0 | CMTS | Cisco | OCbc071 | UBR7200 | 11.3(7)NA | A0 | D1.0 |
| 7 | D1.0 | CM | Thomson | Thom071 | DCM 105 | STB.4 | Pilot 1c Rev4 | D1.0, CH1.0 |

B

| 1 | A communications network comprising: | Rembrandt does not express a position at this time as to whether the preamble of this claim limits the claim's scope. Nevertheless, Rembrandt identifies below aspects of the Accused Instrumentalities that correspond to the claim preamble.<br><br>Comcast owns and operates a cable communication network that complies with the DOCSIS 1.0, 1.1 and/or 2.0 specifications. (*See, e.g.*, http://www.comcast.com/Benefits/CHSIBenefits.asp.) The DOCSIS 1.0, 1.1 and 2.0 specifications are directed toward providing internet access through such a communications network. (*See, e.g.*, DOCSIS 1.0, 1.1, and 2.0 at § 1.1 ("This document defines the radio-frequency interface specifications for high-speed data-over-cable systems.") and  at § 1.3.1 ("The intended service will allow transparent bi-directional transfer of Internet Protocol (IP) traffic, between the cable system headend and customer locations, over an all-coaxial or hybrid-fiber/coax (HFC) cable network."))<br><br>In the event the preamble is construed as limiting and found to be not literally present in the Accused Instrumentalities, Rembrandt contends that that the Accused Instrumentalities meet the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Instrumentalities are insubstantial.[1]  The aforementioned features of the Accused Instrumentalities perform substantially the same function (communicating data), in substantially the same way (by transmitting and receiving signals over a network), to achieve substantially the same result (enabling the exchange of data), as the recited limitation. |
|   | a master unit; | The Comcast cable network includes one or more DOCSIS compliant cable modem termination systems (CMTSes).  Each CMTS can act as and acts as a master unit that communicates with a plurality cable modems (CMs). (*See, e.g.*, DOCSIS 1.0, |

[1] Any use within these charts of the words "limitation" or "portion" of a claim are for convenience, and do not constitute any admission that such language within the claim forms the boundaries of a claim element for purposes of the doctrine of equivalents.  Moreover, no statement in these contentions should be construed as an admission that any language of the preamble is limiting.  Rembrandt takes no position at this time regarding whether any language of any preamble is limiting.

1

| | |
|---|---|
| | 1.1 and 2.0 at § 1.3.1 ("The transmission path over the cable system is realized at the headend by a Cable Modem Termination System (CMTS), and at each customer location by a Cable Modem (CM).")

In the event this limitation is construed or applied in such a way that it is found to be not literally present in the Accused Instrumentalities, Rembrandt contends that the Accused Instrumentalities meet the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Instrumentalities are insubstantial. The aforementioned features of the Accused Instrumentalities perform substantially the same function (a unit communicating with a plurality of remote units), in substantially the same way (connection to the plurality of remote units via a communications network), to achieve substantially the same result (data communications with a plurality of remote units), as the recited limitation. |
| a plurality of remote units communicating with said master unit in a multidrop configuration; | The Comcast cable network includes a plurality of cable modems (CMs). Each cable modem is remotely located at a customer location, where it is typically connected to a local computer or network of computers. A customer's computer or computer network communicates with a Comcast CMTS that, on information and belief, is typically located at a Comcast facility, through its CM. For example, to establish Internet connectivity, a residential customer's personal computer is connected to or otherwise communicates with a CM, and communicates through the CM with a remotely located Comcast CMTS.

Each CMTS in the Comcast network typically services a plurality of CMs that are connected to the CMTS via a cable network. Thus, each CMTS acts as a master unit that communicates with a plurality of remote units in a multi-drop configuration. (See, e.g., DOCSIS 1.0, 1.1 and 2.0 at § 1.3.1 ("The transmission path over the cable system is realized at the headend by a Cable Modem Termination System (CMTS), and at each customer location by a Cable Modem (CM).")) The plurality of remote units can be the plurality of CMs that communicate with each CMTS. Alternatively, the plurality of remote units can be the plurality of CMs together with the computers or computer networks to which each CM is attached. |

| | |
|---|---|
| | In the event this limitation is construed or applied in such a way that it is found to be not literally present in the Accused Instrumentalities, Rembrandt contends that the Accused Instrumentalities meet the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Instrumentalities are insubstantial. The aforementioned features of the Accused Instrumentalities perform substantially the same function (a number of units in locations remote from a master unit communicating with a master unit in a configuration that involves one master unit and a plurality of remote units), in substantially the same way (by transmitting data to the master unit and receiving data from said master unit), to achieve substantially the same result (responding to the received data in time slots that are assigned to each application program), as the recited limitation. |
| wherein each of said remote units execute at least one application program, at least one of said remote units executing at least two application programs, | Each of the CMs communicating with a CMTS can execute and executes one or more application programs. The application programs can be one or more service flows or service flow managers running on each CM, one or more IP host applications running on each CM, or one or more end-user applications running on computers that are attached to each CM. On information and belief, at times one or more of the CMs communicating with a CMTS, or CMs together with the computers to which they are attached, executes two or more of the above identified application programs.

For example, each CM can run one or more "services" or "service flows" to support communications with the CMTS. Each service or service flow has its own ID and independently communicates with the CMTS. (*See, e.g.,* DOCSIS 1.0 at § 6.1.2.3 ("The concept of Service IDs is central to the operation of the MAC protocol. Service IDs provide both device identification and class-of-service management. In particular, they are integral to upstream bandwidth allocation. A Service ID defines a particular mapping between a CM and the CMTS. This mapping is the basis on which bandwidth is allocated to the CM by the CMTS and by which class of service is implemented. . . . The CMTS MAY assign one or more Service IDs (SIDs) to each CM, corresponding to the classes of service required by the CM."); *see also* |
| | |

DOCSIS 1.1 at § 6.1.2.3 and DOCSIS 2.0 at § 8.1.2.3 ("The concept of Service Flows is central to the operation of the MAC protocol. Service Flows provide a mechanism for upstream and downstream Quality of Service management. In particular, they are integral to bandwidth allocation. A Service Flow ID defines a particular unidirectional mapping between a CM and the CMTS. Active Upstream Service Flow IDs also have associated Service IDs or SIDs. Upstream bandwidth is allocated to SIDs, and hence to CMs, by the CMTS. Service IDs provide the mechanism by which upstream Quality of Service is implemented. The CMTS MAY assign one or more Service Flow IDs (SFIDs) to each CM, corresponding to the Service Flows required by the CM.").

In addition, each CM acts as an IP host, and can run one or more host IP applications such as SNMP, TFTP, or DHCP. (*See, e.g.*, DOCSIS 1.0 and 1.1 at § 3.1 and DOCSIS 2.0 at § 5.1 ("The CM and CMTS operate as forwarding agents and also as end-systems (hosts)... The principal function of the cable modem system is to transmit Internet Protocol (IP) packets transparently between the headend and the subscriber location. Certain management functions also ride on IP, so that the protocol stack on the cable network is as shown in Figure 3-1."); *see also* DOCSIS 1.0 and 1.1 at § 3.4 and DOCSIS 2.0 at § 5.4 ("In addition to the transport of user data, there are several network management and operation capabilities which depend upon the Network Layer. These include: • SNMP (Simple Network Management Protocol, [RFC-1157]), MUST be supported for network management. • TFTP (Trivial File Transfer Protocol, [RFC-1350]), a file transfer protocol, MUST be supported for downloading operational software and configuration information, as modified by TFTP Timeout Interval and Transfer Size Options [RFC-2349]• DHCP (Dynamic Host Configuration Protocol, [RFC-2131]), a framework for passing configuration information to hosts on a TCP/IP network, MUST be supported.").)

Similarly, each of the CMs together with the computers or computer networks to which they are attached can run one or more application programs such as a world wide web browser, an e-mail client, and/or a file sharing client or program.

In the event this limitation is construed or applied in such a way that it is found to be

4

| | | |
|---|---|---|
| | | not literally present in the Accused Instrumentalities, Rembrandt contends that the Accused Instrumentalities meet the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Instrumentalities are insubstantial. The aforementioned features of the Accused Instrumentalities perform substantially the same function (running a program, including, for one remote unit running at least two programs), in substantially the same way (executing instructions at the remote unit), to achieve substantially the same result (execute a program at the remote unit, including at least two programs at one of the remote units), as the recited limitation.

This claim element may include features that relate to software of the Accused Instrumentalities, and Rembrandt reserves the right to supplement or modify these contentions under Judge Ward's modification to the Local Patent Rules, Rule 3-1(h). |
| said remote units receiving messages outbound from said master unit and responding in a time slot assigned to each of said application programs; | | Each CM or CM together with the computer or computer network to which it is attached receives outbound messages from the CMTS in the downstream direction. For example, each CM receives an allocation MAP that is transmitted from the CMTS. (*See, e.g.*, DOCSIS 1.0 at § 6.4.1 and DOCSIS 1.1 at § 7.1.1 ("The allocation map is a varying-length MAC Management message that is transmitted by the CMTS to define transmission opportunities on the upstream channel.")) 

The upstream channel in a DOCSIS communications network is slotted or divided into a plurality of TDMA time slots. Each CM or CM together with the computers or computer networks to which it is attached uses these time slots to transmit information to the CMTS. For at least certain portions of the MAP, the CMTS controls the usage of these time slots, and can assign particular CMs, particular service flows within CMs, and/or application programs running on computers that are attached to the CMs, to transmit in particular time slots through the downstream allocation MAP. (*See, e.g.*, DOCSIS 1.0 and 1.1 at § 3.5.3 and DOCSIS 2.0 at § 5.5.3 ("The upstream channel is characterized by many transmitters (CMs) and one receiver (the CMTS). Time in the upstream channel is slotted, providing for Time Division Multiple Access at regulated time ticks. The CMTS . . . controls the allowed usage for each interval. Intervals may be granted for transmissions by |

5

| | |
|---|---|
| | particular CMs, or for contention by all CMs."). |
| | In the event this limitation is construed or applied in such a way that it is found to be not literally present in the Accused Instrumentalities, Rembrandt contends that the Accused Instrumentalities meet the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Instrumentalities are insubstantial. The aforementioned features of the Accused Instrumentalities perform substantially the same function (receiving information from a central unit and responding in a manner that coordinates the transfer of information from the remote units to the central unit), in substantially the same way (sending information in assigned time slots), to achieve substantially the same result (transmitting information in a manner that helps avoid collisions), as the recited limitation. |
| | This claim element may include features that relate to software of the Accused Instrumentalities, and Rembrandt reserves the right to supplement or modify these contentions under Judge Ward's modification to the Local Patent Rules, Rule 3-1(h). |
| said master unit including a master network timing means with a period which is divided into a plurality of subframes, | The Accused Instrumentalities include electronics and/or one or more processors executing code that implement the following features. |
| | The CMTS includes a 10.24 MHz clock that drives a 32 bit counter to provide a 32-bit timestamp having a period. On information and belief, the period is approximately 419 seconds. (See, e.g., DOCSIS 1.0 at § 6.3.2.1, DOCSIS 1.1 at § 6.3.2, and DOCSIS 2.0 at § 8.3.2 (Defining the CMTS's SYNC timestamp as "The count state of an incrementing 32 bit binary counter clocked with the CMTS 10.24 MHz master clock.")) |
| | The CMTS counts a fixed number of TDMA time slots or "mini-slots" whose timing is based upon the 32 bit timestamp counter. (See, e.g., DOCSIS 1.0 at § 6.5.4, DOCSIS 1.1 at § 7.3.4, DOCSIS 2.0 at § 9.3.4.1.2 (Disclosing that the CMTS "counts mini-slots in a 32-bit counter that normally counts to $(2^{32} - 1)$ and then wraps back to zero. The least-significant bits (i.e., bit 0 to bit 25-M) of the mini-slot |

6

| | |
|---|---|
| | counter MUST match the most-significant bits (i.e., bit 6+M to bit 31) of the SYNC timestamp counter.'') |
| | The CMTS divides the fixed number of mini-slots in a TDMA frame into a plurality of allocation MAPS, each of which may be variable in length, but none of which may be greater than $2^{12}$ or 4096 mini-slots in length. These allocation MAPS thus divide the mini-slot count of a full TDMA period into a plurality of subframes. (See, e.g., DOCSIS 1.0 at § 6.4.2, DOCSIS 1.1 at § 7.1.5 and DOCSIS 2.0 at § 9.1.5. (Indicating that the number of mini-slots in an allocation MAP "MAY vary from MAP to MAP," but that the size of an allocation MAP "MUST NOT describe more than 4096 mini-slots into the future.'')) |
| | In the event this limitation is construed or applied in such a way that it is found to be not literally present in the Accused Instrumentalities, Rembrandt contends that the Accused Instrumentalities meet the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Instrumentalities are insubstantial. The aforementioned features of the Accused Instrumentalities perform substantially the same function (providing timing intervals for the assignment of transmission opportunities), in substantially the same way (by dividing a fixed period of time into a plurality of subintervals or subframes), to achieve substantially the same result (defining timing intervals during which the remote units can be assigned to transmit to the master unit in a time division multiple access fashion), as the recited limitation. The structure corresponding to the foregoing limitation may include a plurality of CMs communicating with a CMTS, or, in the alternative, a plurality of CMs together with computers or computer networks to which they are attached. |
| | This claim element may include features that relate to software of the Accused Instrumentalities, and Rembrandt reserves the right to supplement or modify these contentions under Judge Ward's modification to the Local Patent Rules, Rule 3-1(h). |
| wherein each subframe is divided into said time slots, and each of said | As discussed above, at least portions of each allocation MAP is divided into a plurality of mini-slots. An application program running on a CM or on a computer |

# EXHIBIT A PART 2

| | |
|---|---|
| time slots is used as an interval in which one of said application programs in said one of said remote units is assigned to transmit to said master unit in a time division multiple access fashion; and | or computer network attached to the CM can be assigned to transmit to the CMTS in one or more of the mini-slots that are defined in the allocation MAP. (*See, e.g.,* DOCSIS 1.0 at § 6.4, DOCSIS 1.1 at § 7.1 and DOCSIS 2.0 at § 9.1 ("The upstream channel is modeled as a stream of mini-slots. The CMTS MUST generate the time reference for identifying these slots. It MUST also control access to these slots by the cable modems. For example, it MAY grant some number of contiguous slots to a CM for it to transmit a data PDU.")) |
| | In the event this limitation is construed or applied in such a way that it is found to be not literally present in the Accused Instrumentalities, Rembrandt contends that the Accused Instrumentalities meet the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Instrumentalities are insubstantial.  The aforementioned features of the Accused Instrumentalities perform substantially the same function (providing intervals for the assignment of remote unit transmission opportunities), in substantially the same way (dividing a fixed sub-period into timeslots for transmission of data by each of the remote units), to achieve substantially the same result (transmitting data from a number of remote units in a manner that shares access to the network by a timing mechanism), as the recited limitation. |
| | This claim element may include features that relate to software of the Accused Instrumentalities, and Rembrandt reserves the right to supplement or modify these contentions under Judge Ward's modification to the Local Patent Rules, Rule 3-1(h). |
| said master unit including ranging means communicating with said master network timing means wherein a transmission time between said master unit and each of said respective remote units is calculated and transmitted from said master unit to each of said | The Accused Instrumentalities include electronics and/or one or more processors executing code that implement the following features. |
| | Each CMTS includes means to calculate and transmit the range to each of the CMs that are connected to that CMTS.  (*See, e.g.,* DOCSIS 1.0 at § 6.5, DOCSIS 1.1 at § 7.3 and DOCSIS 2.0 at § 9.3 ("[T]he cable modem MUST be able to time its transmissions precisely to arrive at the CMTS at the start of the assigned mini-slot. To accomplish this, two pieces of information are |

8

| respective remote units, | needed by each cable modem: a global timing reference sent downstream from the CMTS to all cable modems; [and] a timing offset, calculated during a ranging process, for each cable modem.")) |
| --- | --- |
| | The CMTS's ranging means include means to broadcast a synchronization signal to each of the CMs that are attached to it. The CMs synchronize their local clocks to the timestamp that is contained in this synchronization signal. (See, e.g., DOCSIS 1.0 at § 6.5.1, DOCSIS 1.1 at § 7.3.1 and DOCSIS 2.0 at § 9.3.1 ("The CMTS MUST create a global timing reference by transmitting the Time Synchronization (SYNC) MAC management message downstream at a nominal frequency. The message contains a timestamp that exactly identifies when the CMTS transmitted the message. Cable modems MUST then compare the actual time the message was received with the timestamp and adjust their local clock references accordingly.")) |
| | The CMTS's ranging means also include means for the CMTS to grant intervals to each CM, during which each CM can transmit a range request signal to the CMTS. (See, e.g., DOCSIS 1.0 at § 6.4.1.1.3, DOCSIS 1.1 at § 7.1.2.3 and DOCSIS 2.0 at § 9.1.2.3 ("The Initial Maintenance IE provides an interval in which new stations may join the network. A long interval, equivalent to the maximum round-trip propagation delay plus the transmission time of the Ranging Request (RNG-REQ) message . . . MUST be provided to allow new stations to perform initial ranging."); see also, DOCSIS 1.0 at § 6.4.1.1.4, DOCSIS 1.1 at § 7.1.2.4 and DOCSIS 2.0 at § 9.1.2.4 ("The Station Maintenance IE provides an interval in which stations are expected to perform some aspect of routine network maintenance, such as ranging or power adjustment.")) |
| | Based on the timing of one or more of the SYNC signal, the granting of an interval for a RNG-REQ message, and the receipt of the RNG-REQ message by the CMTS, the CMTS calculates a range delay for a given CM. On information and belief, ranging is performed in Comcast's DOCSIS compliant cable network as follows, although no specific implementation is |

9

relied upon for purposes of Rembrandt's Preliminary infringement allegations as set forth herein. The CMTS periodically sends out time synchronization or SYNC messages to one or more attached CMs. The SYNC message contains a timestamp, and the CMs synchronize their local clocks to this timestamp, thereby ignoring any range or propagation delay $T_{RANGE}$ in the transmission of the SYNC message. The CMTS also sends out one or more allocation MAPs that contain one or more intervals during which an attached CM can perform ranging. Each ranging interval specifies a time $T_{REQ}$ at which an attached CM can transmit a ranging request message to the CMTS. However, because the CM is synchronized to a range delayed SYNC timestamp, it does not transmit its range request message until time $T_{REQ} + T_{RANGE}$. Moreover, due to the range delay, the CMTS does not receive the CMs range request message until time $T_{REQ} + 2 T_{RANGE}$. By noting the difference between the time it receives the CMs range request messages ($T_{REQ} + 2 T_{RANGE}$), and the time it requested the messages ($T_{REQ}$), the CMTS can calculate the range delay ($T_{RANGE}$) to each CM.

Once a CMTS calculates the range delay to an attached CM, it transmits that information to the CM so that the CM can adjust its local transmission time. (See, e.g., DOCSIS 1.0 at § 6.5.3, DOCSIS 1.1 at § 7.3.3, and DOCSIS 2.0 at § 9.3.1 ("Once the CMTS has successfully received the Ranging Request message, it MUST return a Ranging Response message addressed to the individual cable modem. Within the Ranging Response message MUST be a temporary SID assigned to this cable modem until it has completed the registration process. The message MUST also contain information on RF power level adjustment and offset frequency adjustment as well as any timing offset corrections.))

In the event this limitation is construed or applied in such a way that it is found to be not literally present in the Accused Instrumentalities, Rembrandt contends that the Accused Instrumentalities meet the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Instrumentalities are insubstantial. The aforementioned features of the Accused Instrumentalities perform substantially the

10

| | |
|---|---|
| each of said respective remote units using said transmission time to adjust initiation of said time slots. | same function (calculating range delay for one or more remote units and providing that range delay to the remote units), in substantially the same way (by measuring the delay in messages transmitted between the master unit and the respective remote units), to achieve substantially the same result (transmission of the range delay between the master unit and each of the remote units to synchronize the timing of transmissions between the master unit and remote units), as the recited limitation.

This claim element may include features that relate to software of the Accused Instrumentalities, and Rembrandt reserves the right to supplement or modify these contentions under Judge Ward's modification to the Local Patent Rules, Rule 3-1(h).

Each CM uses the ranging offset that is calculated and sent to it by the CMTS to adjust its transmission time to account for range delays. (See, e.g., DOCSIS 1.0 and 1.1 at § 4.2.7, and DOCSIS 2.0 at § 6.2.19.1 ("Ranging Offset is the delay correction applied by the CM to the CMTS Upstream Frame Time derived at the CM. It is an advancement equal to roughly the round-trip delay of the CM from the CMTS, and is needed to synchronize upstream transmissions in the TDMA scheme. . . . The CM MUST implement the correction with resolution of at most 1 symbol duration (of the symbol rate in use for a given burst), and (other than a fixed bias) with accuracy within $\pm0.25$ μsec plus $\pm1/2$ symbol owing to resolution."))

In the event this limitation is construed or applied in such a way that it is found to be not literally present in the Accused Instrumentalities, Rembrandt contends that the Accused Instrumentalities meet the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Instrumentalities are insubstantial. The aforementioned features of the Accused Instrumentalities perform substantially the same function (adjusting the initiation of transmission in timeslots by respective remote units), in substantially the same way (using range delay transmission times provided by the master unit), to achieve substantially the same result (adjustment of the initiation of time slots based on the received transmission times), as the recited limitation. |

11

| | | |
|---|---|---|
| | | This claim element may include features that relate to software of the Accused Instrumentalities, and Rembrandt reserves the right to supplement or modify these contentions under Judge Ward's modification to the Local Patent Rules, Rule 3-1(h). |
| 2 | The network of claim 1 wherein said remote units include a reservation request generator which activates a reservation request bit for requesting an additional time interval inbound to said master unit, and | In a DOCSIS compliant system, the CMs may request and may be granted bandwidth (time slots) that are assigned by the CMTS. The CMs then transmit data in the assigned time slots, and can set a "piggyback" bit in the header portion of the transmitted data packet to request additional time slots. (See, e.g., DOCSIS 1.0 at § 6.4.2.1 ("Only one type of upstream request is inherent to the allocation protocol: a request for upstream bandwidth. This request MAY be transmitted any time that either a request or a data PDU is allowed from the particular station. It MAY be transmitted during an interval described by any of: A Request IE; A Request/Data IE[6]; A Data Grant IE. In addition, it MAY be piggybacked[7] on a data transmission. The request includes: The Service ID making the request; [and] The number of mini-slots or ATM cells requested"); see also DOCSIS 1.1 at § 7.1.3 and DOCSIS 2.0 at § 9.1.3.) When a CM piggybacks a request for additional time slots, it sets at least one bit in the Extended Header portion of the MAC layer Packet Data PDU (See, e.g., DOCSIS 1.0 at § 6.4.2.1 fn. 7 ("When piggybacked, these values are carried in the Extended Header (Section 6.2.6, EH_TYPE=1)."); see also DOCSIS 1.1 at § 7.1.3 and DOCSIS 2.0 at § 9.1.3.) |
| | | In the event this limitation is construed or applied in such a way that it is found to be not literally present in the Accused Instrumentalities, Rembrandt contends that the Accused Instrumentalities meet the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Instrumentalities are insubstantial. The aforementioned features of the Accused Instrumentalities perform substantially the same function (generating a request for an additional time interval), in substantially the same way (by activating a bit or bits to request the upstream bandwidth), to achieve substantially the same result (request additional time intervals for transmission opportunities by a remote unit), as the recited limitation. |
| | | This claim element may include features that relate to software of the Accused |

12

| | | |
|---|---|---|
| | | Instrumentalities, and Rembrandt reserves the right to supplement or modify these contentions under Judge Ward's modification to the Local Patent Rules, Rule 3-1(h). |
| | wherein said master unit includes a reservation request processor communicating to said master network timing means, said reservation request processor being responsive to said reservation request bit. | On information and belief, when a CMTS receives a data packet from a CM, it checks the data packet's header to determine whether the extended header is used, whether bits in the extended header indicate a piggyback request for additional time slots, and if so how many additional time slots the CM is requesting. (*See, e.g.,* DOCSIS 1.0 and 1.1 at § 6.2.6, and DOCSIS 2.0 at § 8.2.6 ("A compliant CMTS & CM MUST support extended headers.")) <br><br> In the event this limitation is construed or applied in such a way that it is found to be not literally present in the Accused Instrumentalities, Rembrandt contends that the Accused Instrumentalities meet the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Instrumentalities are insubstantial. The aforementioned features of the Accused Instrumentalities perform substantially the same function (responding to a request for additional time slots), in substantially the same way (by finding and responding to one or more reservation request bits transmitted by a remote unit), to achieve substantially the same result (reserve additional time slots for transmission of data by the remote unit), as the recited limitation. <br><br> This claim element may include features that relate to software of the Accused Instrumentalities, and Rembrandt reserves the right to supplement or modify these contentions under Judge Ward's modification to the Local Patent Rules, Rule 3-1(h). |
| 11 | The network of claim 2 wherein said time slot comprises a format so as to include | Rembrandt does not express a position at this time as to whether the preamble of this claim limits the claim's scope. Nevertheless, Rembrandt identifies below aspects of the Accused Instrumentalities that correspond to the claim preamble. <br><br> On information and belief, data is sent over the Comcast cable network in a format, for example the form of a Physical Media Dependent ("PMD") data frame that is FDMA/TDMA burst modulated. (*See, e.g.,* DOCSIS 1.0 and 1.1 at § 4.2.1 ("The |

13

| | |
|---|---|
| | upstream Physical Media Dependent (PMD) sublayer uses a FDMA/TDMA burst modulation format. . . . Each burst supports a flexible modulation, symbol rate, preamble, randomization of the payload, and programmable FEC encoding."); *see also* DOCSIS 2.0 at § 6.2.1.)<br><br>In the event this limitation is construed or applied in such a way that it is found to be not literally present in the Accused Instrumentalities, Rembrandt contends that the Accused Instrumentalities meet the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Instrumentalities are insubstantial. The aforementioned features of the Accused Instrumentalities perform substantially the same function (communicating data), in substantially the same way (by transmitting and receiving formatted signals), to achieve substantially the same result (enabling the exchange of data), as the recited limitation.<br><br>This claim element may include features that relate to software of the Accused Instrumentalities, and Rembrandt reserves the right to supplement or modify these contentions under Judge Ward's modification to the Local Patent Rules, Rule 3-1(h). |
| a preamble, | The PMD burst modulated data frame contains a preamble. (*See, e.g.,* DOCSIS 1.0 and 1.1 at § 4.2.1 ("The upstream Physical Media Dependent (PMD) sublayer uses a FDMA/TDMA burst modulation format. . . . Each burst supports a flexible modulation, symbol rate, preamble, randomization of the payload, and programmable FEC encoding."); *see also* DOCSIS 2.0 at § 6.2.1.)<br><br>In the event this limitation is construed or applied in such a way that it is found to be not literally present in the Accused Instrumentalities, Rembrandt contends that the Accused Instrumentalities meet the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Instrumentalities are insubstantial. The aforementioned features of the Accused Instrumentalities perform substantially the same function (providing a signal for synchronization of the timing of communications between the master unit and remote units), in substantially the same |

14

| | |
|---|---|
| | way (by placing preamble data in one or more time slot), to achieve substantially the same result (to allow synchronization of communications between the master unit and remote units), as the recited limitation.<br><br>This claim element may include features that relate to software of the Accused Instrumentalities, and Rembrandt reserves the right to supplement or modify these contentions under Judge Ward's modification to the Local Patent Rules, Rule 3-1(h). |
| a poll response data bit, | On information and belief, CMTSes in the Comcast cable network can poll one or more CMs to which they are attached using either directed Request or directed Request/Data IEs, or a real-time or non-real time polling service, and the CMs can send one or more data bits to the CMTSes in response to being polled by those IEs or polling services. (See, e.g., DOCSIS 1.0 at § 6.4.1, DOCSIS 1.1 at § 7.1.1 and DOCSIS 2.0 at § 9.1.1 ("The allocation MAP is a varying-length MAC Management message that is transmitted by the CMTS to define transmission opportunities on the upstream channel. It includes a fixed length header and a variable number of information elements (IEs). . . . Each information element defines the allowed usage for a range of mini-slots."); *see also* DOCSIS 1.0 at § 6.4.1.1.1, DOCSIS 1.1 at § 7.1.2.1 ("The Request IE provides an upstream interval in which requests MAY be made for bandwidth for upstream data transmission. . . . If unicast, this is an invitation for a particular CM to request bandwidth."); *see also* DOCSIS 1.0 at § 6.4.1.1.2, DOCSIS 1.1 at § 7.1.2.2 and DOCSIS 2.0 at § 9.1.2.2 ("The Request/Data IE provides an upstream interval in which requests for bandwidth or short data packets MAY be transmitted."); *see also*, DOCSIS 1.1 at § 8.2.4 and DOCSIS 2.0 at § 10.2.4 ("The Non-Real-Time Polling Service (nrtPS) . . . offers unicast polls on a regular basis. . . In order for this service to work correctly, the Request / Transmission Policy setting . . . SHOULD be such that the CM is allowed to use contention request opportunities. . . . All other bits of the Request/Transmission Policy are not relevant to the fundamental operation of this scheduling service and should be set according to network policy."); *see also*, DOCSIS 2.0 at § 10.2.2 ("The Real-Time Polling Service (rtPS) . . . offers real-time, periodic, unicast request opportunities. . . In order for this service to work correctly, the Request / Transmission Policy. . . SHOULD be such that the CM is prohibited |

15

| | |
|---|---|
| | from using any contention request or request/data opportunities. The Request / Transmission Policy SHOULD also prohibit piggyback requests.) While the DOCSIS standard indicates the piggyback or reservation request mechanism recited in claim 2 may be prohibited when the real-time polling service is used, it does not require that it be prohibited. Moreover, the DOCSIS standard allows piggyback requests to be made when polling is done using unicast Request or Request/Data IEs, and the non-real-time polling service. |
| | In the event this limitation is construed or applied in such a way that it is found to be not literally present in the Accused Instrumentalities, Rembrandt contends that the Accused Instrumentalities meet the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Instrumentalities are insubstantial. The aforementioned features of the Accused Instrumentalities perform substantially the same function (providing data in response to a received poll from a master unit), in substantially the same way (addition of poll response data in a transmission from a remote unit to the master unit), to achieve substantially the same result (poll response data in inbound traffic), as the recited limitation. |
| | This claim element may include features that relate to software of the Accused Instrumentalities, and Rembrandt reserves the right to supplement or modify these contentions under Judge Ward's modification to the Local Patent Rules, Rule 3-1(h). |
| said reservation request bits, | As discussed above, when a CM transmits data, it can set a piggyback bit in the header portion of the transmitted data packet to request additional time slots. (See, e.g., DOCSIS 1.0 at § 6.4.2.1; DOCSIS 1.1 at § 7.1.3 and DOCSIS 2.0 at § 9.1.3) |
| | In the event this limitation is construed or applied in such a way that it is found to be not literally present in the Accused Instrumentalities, Rembrandt contends that the Accused Instrumentalities meet the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Instrumentalities are insubstantial. The aforementioned features of the Accused Instrumentalities perform substantially the |

16

| | |
|---|---|
| | same function (requesting an additional time intervals), in substantially the same way (by adding a reservation request bit to a data transmission from a remote unit to the master unit), to achieve substantially the same result (request an additional time interval by the remote unit), as the recited limitation.<br><br>This claim element may include features that relate to software of the Accused Instrumentalities, and Rembrandt reserves the right to supplement or modify these contentions under Judge Ward's modification to the Local Patent Rules, Rule 3-1(h). |
| at least one priority bit and | As discussed above, when a CM sets bits in the "piggyback" field of the extended MAC header portion of a MAC data frame, it includes bits indicating the service flow ID or SID of the service flow that is requesting the additional time slots. (*See, e.g.,* DOCSIS 1.0 at § 6.4.2.1 ("Only one type of upstream request is inherent to the allocation protocol: a request for upstream bandwidth. This request MAY be transmitted any time that either a request or a data PDU is allowed from the particular station. It MAY be transmitted during an interval described by any of: A Request IE; A Request/Data IE[5]; A Data Grant IE. In addition, it MAY be piggybacked[7] on a data transmission. The request includes: The Service ID making the request; [and] The number of mini-slots or ATM cells requested"); *see also* DOCSIS 1.1 at § 7.1.3 and DOCSIS 2.0 at § 9.1.3.)<br><br>The SID of the service flow requesting the additional data grant is associated with a QoS parameter that determines the priority of the service flow's data request. (*See, e.g.,* DOCSIS 1.0 at § 6.3.2.7 (indicating that a CMTS must generate a Registration Response message that includes Service Class Data including a "Service ID / service class tuple for each class of service granted"); *see also* DOCSIS 1.1 at § 8.1 and DOCSIS 2.0 at § 10.1 ("The principal mechanism for providing enhanced QoS is to classify packets traversing the RF MAC interface into a Service Flow. A Service Flow is a unidirectional flow of packets that is provided a particular Quality of Service. The CM and CMTS provide this QoS by shaping, policing, and prioritizing traffic according to the QoS Parameter Set defined for the Service Flow.").)<br><br>In the event this limitation is construed or applied in such a way that it is found to be |

17

| | |
|---|---|
| | not literally present in the Accused Instrumentalities, Rembrandt contends that the Accused Instrumentalities meet the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Instrumentalities are insubstantial. The aforementioned features of the Accused Instrumentalities perform substantially the same function (defining the relative priority or importance of a remote unit transmission), in substantially the same way (by adding one or more bits indicating the priority of the remote unit's transmission), to achieve substantially the same result (provide a priority indicator for use in determining the relative priority of a remote unit's transmission), as the recited limitation.

This claim element may include features that relate to software of the Accused Instrumentalities, and Rembrandt reserves the right to supplement or modify these contentions under Judge Ward's modification to the Local Patent Rules, Rule 3-1(h). |
| error detection bit. | As explained above, the PMD data frame is FEC or Forward Error Correction encoded, and contains one or more error detection bits. (*See, e.g.,* DOCSIS 1.0 and 1.1 at § 4.2.1 ("The upstream Physical Media Dependent (PMD) sublayer uses a FDMA/TDMA burst modulation format. . . . Each burst supports a flexible modulation, symbol rate, preamble, randomization of the payload, and programmable FEC encoding."); *see also* DOCSIS 2.0 at § 6.2.1.)

In the event this limitation is construed or applied in such a way that it is found to be not literally present in the Accused Instrumentalities, Rembrandt contends that the Accused Instrumentalities meet the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Instrumentalities are insubstantial. The aforementioned features of the Accused Instrumentalities perform substantially the same function (providing data for detection of errors in inbound transmissions), in substantially the same way (addition of a error detection bit to inbound data), to achieve substantially the same result (a data bit included in inbound data for use in detecting errors in inbound data), as the recited limitation. |

18

| | | |
|---|---|---|
| | | This claim element may include features that relate to software of the Accused Instrumentalities, and Rembrandt reserves the right to supplement or modify these contentions under Judge Ward's modification to the Local Patent Rules, Rule 3-1(h). |
| 12 | The network of claim 1 wherein the master unit includes means for calculating clock drifts of the remote units and issuing reset commands to correct the same whereby each remote unit determines its transmit epoch accurately, thereby minimizing guard time while maintaining contention-free transmission to said master unit, said means for calculating clock drifts and issuing reset commands being in communication with said master network timing means. | The Accused Instrumentalities include electronics and/or one or more processors executing code that implement the following features.

On information and belief, each CMTS in the Comcast network uses the ranging means discussed above in reference to claim 1 to provide feedback correction to the range offset that is initially calculated for each CM. (*See, e.g.,* DOCSIS 1.0 at § 6.4.1.1.4, DOCSIS 1.1 at § 7.1.2.4 and DOCSIS 2.0 at § 9.1.2.4 ("The Station Maintenance IE provides an interval in which stations are expected to perform some aspect of routine network maintenance, such as ranging or power adjustment.").)

This feedback correction includes any correction due to a drift in the CMs local clock. (*See, e.g.,* DOCSIS 1.0 and 1.1 at § 4.2.7 ("Ranging Offset is the delay correction applied by the CM to the CMTS Upstream Frame Time derived at the CM. . . . The CMTS MUST provide feedback correction for this offset to the CM, based on reception of one or more successfully received bursts. . . . The CM MUST implement the correction with resolution of at most 1 symbol duration."); *see also* DOCSIS 2.0 at § 6.2.19.)

On information and belief, the CMTS calculates CM clock drifts as follows, although no specific implementation is relied upon for purposes of Rembrandt's Preliminary infringement allegations as set forth herein. The CMTS periodically sends out time synchronization or SYNC messages to all attached CMs. The SYNC messages contain a timestamp, and the CMs synchronize their local clocks to this timestamp, thereby ignoring any range or propagation delay Trange in the transmission of the SYNC message.

The CMTS also sends out one or more allocation MAPs that contain one or more maintenance intervals during which an attached CM can perform ranging. Each |

19

maintenance interval is directed to a specific CM, and requests the CM to send a range request message at a global time $T_{REQ}$ to correct for range delays, network delay, and or drifts in the CMs local clock. However, because the CM is synchronized to a range delayed SYNC timestamp, it does not transmit its range request message until time $T_{REQ}$ + $T_{RANGE}$. Moreover, due to the range delay, the CMTS does not receive the CM's range request messages until time $T_{REQ}$ + 2 $T_{RANGE}$.

By noting the difference between the time it receives the CMs range request messages ($T_{REQ}$ + 2 $T_{RANGE}$) and the time it requested the messages ($T_{REQ}$), the CMTS can calculate the range delay ($T_{RANGE}$) of the CM.

Once a CMTS determines the range delay to the CM, which includes any network delays or delays due to local clock drifts, it transmits that information to the CM so that the CM can adjust its local transmission times or reset its clock. (*See, e.g.*, DOCSIS 1.0 at § 6.5.3, DOCSIS 1.1 at § 7.3.3, and DOCSIS 2.0 at § 9.3.3.1 ("Once the CMTS has successfully received the Ranging Request message, it MUST return a Ranging Response message addressed to the individual cable modem. Within the Ranging Response message MUST be a temporary SID assigned to this cable modem until it has completed the registration process. The message MUST also contain information on RF power level adjustment and offset frequency adjustment as well as any timing offset corrections.))

In the event this limitation is construed or applied in such a way that it is found to be not literally present in the Accused Instrumentalities, Rembrandt contends that the Accused Instrumentalities meet the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Instrumentalities are insubstantial. The aforementioned features of the Accused Instrumentalities perform substantially the same function (calculating alterations in relative clock time and issuing reset commands to modify remote unit timing), in substantially the same way (by monitoring alterations in relative clock time in the remote units and issuing reset commands under given circumstances, for example when they become too large), to

20

| 14 | A method for a plurality of remote units to operate a plurality of application programs in communication with a master unit in a multidrop configuration, comprising the steps of: | achieve substantially the same result (maintaining accurate timing of transmissions from respective remote units), as the recited limitation.

This claim element may include features that relate to software of the Accused Instrumentalities, and Rembrandt reserves the right to supplement or modify these contentions under Judge Ward's modification to the Local Patent Rules, Rule 3-1(h).

Rembrandt does not express a position at this time as to whether the preamble of this claim limits the claim's scope. Nevertheless, Rembrandt identifies below aspects of the Accused Instrumentalities that correspond to the claim preamble.

Comcast owns and operates a cable communications network that complies with the DOCSIS 1.0, 1.1 and/or 2.0 specifications. (*See, e.g.,* DOCSIS 1.0, 1.1 and 2.0 at http://www.comcast.com/Benefits/CHSIBenefits.asp). The DOCSIS 1.0, 1.1 and 2.0 specifications describe a method for providing internet access through such a communications network. (*See, e.g.,* DOCSIS 1.0, 1.1, and 2.0 at § 1.1 ("This document defines the radio-frequency interface specifications for high-speed data-over-cable systems.") and at § 1.3.1 ("The intended service will allow transparent bi-directional transfer of Internet Protocol (IP) traffic, between the cable system headend and customer locations, over an all-coaxial or hybrid-fiber/coax (HFC) cable network."))

The method described in the DOCSIS 1.0, 1.1 and 2.0 specifications allows a plurality of application programs that are located either on a plurality of CMs or on computers or computer networks that are attached to the plurality of CMs to communicate with the CMTS in a multi-drop configuration. (*See, e.g.,* DOCSIS 1.0, 1.1 and 2.0 at § 1.3.1 ("The transmission path over the cable system is realized at the headend by a Cable Modem Termination System (CMTS), and at each customer location by a Cable Modem (CM).").)

In the event the preamble is construed as limiting and found to be not literally present in the Accused Method, Rembrandt contends that the Accused Method meets the recited limitation under the doctrine of equivalents, because any purported |

21

| | differences between the recited limitation and the aforementioned features of the Accused Method are insubstantial. The aforementioned features of the Accused Method performs substantially the same function (operating a number of application programs on a number of units located remotely from and communicating with a master master unit), in substantially the same way (transmitting data between the master unit and respective remote units), to achieve substantially the same result (operate the number of application programs on the number of remotely located units), as the recited limitation.

This claim element may include features that relate to software of the Accused Instrumentalities, and Rembrandt reserves the right to supplement or modify these contentions under Judge Ward's modification to the Local Patent Rules, Rule 3-1(h). |
|---|---|
| calculating and storing in said master unit inbound and outbound transmission times between the master unit and said remote units; | The CMTS generates and stores an allocation MAP that indicates future times during which CMs are expected to send ranging requests. The CMTS then compares the inbound times of the CMs ranging requests with their expected inbound times (as indicated on the stored allocation MAP) to determine the CMs range offset.

Each CMTS calculates and transmits the range to each of the CMs that are connected to that CMTS. (See, e.g., DOCSIS 1.0 at § 6.5, DOCSIS 1.1 at § 7.3 and DOCSIS 2.0 at § 9.3 ("[T]he cable modem MUST be able to time its transmissions precisely to arrive at the CMTS at the start of the assigned mini-slot. To accomplish this, two pieces of information are needed by each cable modem: a global timing reference sent downstream from the CMTS to all cable modems; [and] a timing offset, calculated during a ranging process, for each cable modem.")])

The CMTS's ranging means include means to broadcast a synchronization signal to each of the CMs that are attached to it. The CMs synchronize their local clocks to the timestamp that is contained in this synchronization signal. (See, e.g., DOCSIS 1.0 at § 6.5.1, DOCSIS 1.1 at § 7.3.1 and DOCSIS 2.0 at § 9.3.1 ("The CMTS MUST create a global timing reference by transmitting the Time Synchronization (SYNC) MAC management message downstream |

22

at a nominal frequency. The message contains a timestamp that exactly identifies when the CMTS transmitted the message. Cable modems MUST then compare the actual time the message was received with the timestamp and adjust their local clock references accordingly.")

The CMTS's ranging means also include means for the CMTS to grant intervals to each CM, during which each CM can transmit a range request signal to the CMTS. (See, e.g., DOCSIS 1.0 at § 6.4.1.1.3, DOCSIS 1.1 at § 7.1.2.3 and DOCSIS 2.0 at § 9.1.2.3 ("The Initial Maintenance IE provides an interval in which new stations may join the network. A long interval, equivalent to the maximum round-trip propagation delay plus the transmission time of the Ranging Request (RNG-REQ) message . . . MUST be provided to allow new stations to perform initial ranging."); see also, DOCSIS 1.0 at § 6.4.1.1.4, DOCSIS 1.1 at § 7.1.2.4 and DOCSIS 2.0 at § 9.1.2.4 ("The Station Maintenance IE provides an interval in which stations are expected to perform some aspect of routine network maintenance, such as ranging or power adjustment."))

Based on the timing of one or more of the SYNC signal, the granting of an interval for a RNG-REQ message, and the receipt of the RNG-REQ message by the CMTS, the CMTS calculates a range delay for a given CM. On information and belief, ranging is performed in Comcast's DOCSIS compliant cable network as follows, although no specific implementation is relied upon for purposes of Rembrandt's Preliminary infringement allegations as set forth herein. The CMTS periodically sends out time synchronization or SYNC messages to one or more attached CMs. The SYNC message contains a timestamp, and the CMs synchronize their local clocks to this timestamp, thereby ignoring any range or propagation delay $T_{RANGE}$ in the transmission of the SYNC message. The CMTS also sends out one or more allocation MAPs that contain one or more intervals during which an attached CM can perform ranging. Each ranging interval specifies a time $T_{REQ}$ at which an attached CM can transmit a ranging request message to the CMTS. However, because the CM is synchronized to a range delayed

23

SYNC timestamp, it does not transmit its range request message until time $T_{REQ} + T_{RANGE}$. Moreover, due to the range delay, the CMTS does not receive the CMs range request message until time $T_{REQ} + 2 T_{RANGE}$. By noting the difference between the time it receives the CMs range request messages ($T_{REQ} + 2 T_{RANGE}$), and the time it requested the messages ($T_{REQ}$), the CMTS can calculate the range delay ($T_{RANGE}$) to each CM.

On information and belief, the range delay to each CM is stored in the CMTS. The range delay is a representation of the inbound and outbound transmission times between the CMTS and the CM.

In the event the preamble is construed as limiting and found to be not literally present in the Accused Method, Rembrandt contends that that the Accused Method meets the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Method are insubstantial. The aforementioned features of the Accused Method performs substantially the same function (obtaining transmission times between the master unit and the remote units), in substantially the same way (by determining time differences related to transmissions between the master unit and the respective remote units), to achieve substantially the same result (minimizing unused bandwidth by more precisely timing transmissions between the master unit and each of the remote units), as the recited limitation.

This claim element may include features that relate to software of the Accused Instrumentalities, and Rembrandt reserves the right to supplement or modify these contentions under Judge Ward's modification to the Local Patent Rules, Rule 3-1(h).

| | |
|---|---|
| dividing a period of a clock in said master unit into a number of subframes, dividing each subframe into a number of slots, each corresponding to transmission times for one of said remote units, and | The CMTS includes a 10.24 MHz clock that drives a 32 bit counter to provide a 32-bit timestamp having a period. On information and belief, the period is approximately 419 seconds. (See, e.g., DOCSIS 1.0 at § 6.3.2.1, DOCSIS 1.1 at § 6.3.2, and DOCSIS 2.0 at § 8.3.2 (Defining the CMTS's SYNC timestamp as "The count state of an incrementing 32 bit binary counter clocked with the CMTS 10.24 MHz master clock.")) |

24

| assigning a slot to each of said application programs in said one of said remote units; | The CMTS counts a fixed number of TDMA time slots or "mini-slots" whose timing is based upon the 32 bit timestamp counter.  (See, e.g., DOCSIS 1.0 at § 6.5.4, DOCSIS 1.1 at § 7.3.4, DOCSIS 2.0 at § 9.3.4.1.2 (Disclosing that the CMTS "counts  mini-slots in a 32-bit counter that normally counts to $(2^{32} - 1)$ and then wraps back to zero. The least-significant bits (i.e., bit 0 to bit 25-M) of the mini-slot counter MUST match the most-significant bits (i.e., bit 6+M to bit 31) of the SYNC timestamp counter.") |
| | The CMTS divides the fixed number of mini-slots in a TDMA frame into a plurality of allocation MAPS, each of which may be variable in length, but none of which may be greater than $2^{12}$ or 4096 mini-slots in length.  These allocation MAPS thus divide the mini-slot count of a full TDMA period into a plurality of subframes.  (See, e.g., DOCSIS 1.0 at § 6.4.2, DOCSIS 1.1 at § 7.1.5 and DOCSIS 2.0 at § 9.1.5. (Indicating that the number of mini-slots in an allocation MAP "MAY vary from MAP to MAP," but that the size of an allocation MAP "MUST NOT describe more than 4096 mini-slots into the future.")) |
| | An application program running on a CM or on a computer or computer network attached to the CM is assigned by the CMTS to transmit to the CMTS in one or more mini-slots in the allocation MAP subframe.  (See, e.g., DOCSIS 1.0 and 1.1 at § 3.5.3 and DOCSIS 2.0 at § 5.5.3  ("The upstream channel is characterized by many transmitters (CMs) and one receiver (the CMTS). Time in the upstream channel is slotted, providing for Time Division Multiple Access at regulated time ticks.  The CMTS . . . controls the allowed usage for each interval. Intervals may be granted for transmissions by particular CMs, or for contention by all CMs.").) |
| | In the event the preamble is construed as limiting and found to be not literally present in the Accused Method, Rembrandt contends that that the Accused Method meets the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Method are insubstantial.  The aforementioned features of the Accused Method performs substantially the same function (assigning a time slot to each |

25

| | |
|---|---|
| | application program in the remote units), in substantially the same way (dividing a fixed period of time into a plurality of intervals and subintervals (time slots), and assigning a time slot to the application programs on the remote units), to achieve substantially the same result (transmitting data from applications on the remote units in a manner that shares access to the network via a timing mechanism), as the recited limitation. |
| | This claim element may include features that relate to software of the Accused Instrumentalities, and Rembrandt reserves the right to supplement or modify these contentions under Judge Ward's modification to the Local Patent Rules, Rule 3-1(h). |
| transmitting from said master unit to each of said respective remote units the transmission time between said master unit and said respective remote unit, each of said respective remote units using said transmission time to adjust initiation of said slots; and | Once a CMTS determines the range delay to the CMs that are attached to it, the CMTS transmits that information to the CMs. (See, e.g., DOCSIS 1.0 at § 6.3.2.5m DOCSIS 1.1 at § 6.3.6 ("A Ranging Response MUST be transmitted by a CMTS in response to received RNG-REQ." The response MUST include "[t]he time by which to offset frame transmission so that frames arrive at the expected mini-slot time at the CMTS."); see also DOCSIS 2.0 at § 8.3.6) |
| | Each CM uses the ranging offset or transmission time that is calculated and sent to it by the CMTS to adjust its transmission time to account for range delays. (See, e.g., DOCSIS 1.0 and 1.1 at § 4.2.7, and DOCSIS 2.0 at § 6.2.19.1 ("Ranging Offset is the delay correction applied by the CM to the CMTS Upstream Frame Time derived at the CM. . . . The CM MUST implement the correction with resolution of at most 1 symbol duration.").) |
| | In the event the preamble is construed as limiting and found to be not literally present in the Accused Method, Rembrandt contends that that the Accused Method meets the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Method are insubstantial. The aforementioned features of the Accused Method performs substantially the same function (transmitting information to the |

26

| | |
|---|---|
| | remote units for use in adjusting the timing of transmission), in substantially the same way (by transmitting the transmission time between the master unit and the respective remote units, whereby the respective remote units use the transmission times to adjust initiation of transmissions), to achieve substantially the same result (initiation of transmissions within time slots using the transmission times between the master unit and the respective remote units), as the recited limitation.

This claim element may include features that relate to software of the Accused Instrumentalities, and Rembrandt reserves the right to supplement or modify these contentions under Judge Ward's modification to the Local Patent Rules, Rule 3-1(h). |
| transmitting data from each of said remote units to said master unit in a time division multiple access configuration wherein each application in each remote unit transmits during said assigned subframe. | The allocation MAP's mini-slots are divided into time slots to allow TDMA data transmission. For at least certain portions of the MAP, the CMTS controls the usage of these time slots, and can assign them to application programs that are running on the CMs, particular service flows within CMs, and/or application programs running on computers that are attached to the CMs, to allow the transmission of data in one or more assigned time slots. (*See, e.g.*, DOCSIS 1.0 and 1.1 at § 3.5.3 and DOCSIS 2.0 at § 5.5.3 ("The upstream channel is characterized by many transmitters (CMs) and one receiver (the CMTS). Time in the upstream channel is slotted, providing for Time Division Multiple Access at regulated time ticks. The CMTS … controls the allowed usage for each interval. Intervals may be granted for transmissions by particular CMs, or for contention by all CMs.").)

In the event the preamble is construed as limiting and found to be not literally present in the Accused Method, Rembrandt contends that that the Accused Method meets the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Method are insubstantial. The aforementioned features of the Accused Method performs substantially the same function (transmitting information to a central unit in a manner that coordinates the transfer of information from the remote units to the central unit), in substantially the same way (transmitting data from the remote unit to the central unit in a time division multiple access fashion), to achieve substantially the same result (transmitting information in a manner that helps avoid |

27

collisions), as the recited limitation.

This claim element may include features that relate to software of the Accused Instrumentalities, and Rembrandt reserves the right to supplement or modify these contentions under Judge Ward's modification to the Local Patent Rules, Rule 3-1(h).

28

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

REMBRANDT TECHNOLOGIES, LP

          Plaintiff,

    v.

COMCAST CORPORATION, COMCAST
CABLE COMMUNICATIONS, LLC, and
COMCAST OF PLANO, LP,

          Defendant.

Case No. 2:05-CV-443 (TJW)

Jury Trial Demanded

**PLAINTIFF'S DISCLOSURE OF ASSERTED CLAIMS AND PRELIMINARY INFRINGEMENT CONTENTIONS**

**Preliminary Infringement Analysis for U.S. Patent No. 5,719,858**

1

**A.    Identification of Infringed Claims**

Pursuant to Local Patent Rule 3-1(a), Rembrandt hereby identifies claims 1, 7, 8, 9, 10, 11, 15, 20 and 26 of U.S. Patent No. 5,719,858 ("the '858 patent") as infringed by defendants.

**B.    Identification of Accused Instrumentalities**

Defendants infringe, induce or contribute to the infringement of claims 1, 7, 9, 10, 11, 15, 20 and 26 of the '858 patent by their sale, lease or use of a high speed cable network that employ cable modems and cable modem termination systems that have the capability of being operated in compliance with the Data-Over-Cable Service Interface Specification (DOCSIS), versions ANSI/SCTE 22-1, dated 2002 ("DOCSIS 1.0"), SP-RFIv1.1-C01-050907, dated September 7, 2005 ("the DOCSIS 1.1 standard") and SP-RFIv2.0-I09-050812, dated August 12, 2005 (the "DOCSIS 2.0 standard"). It is believed that all cable modems and cable modem termination systems sold, leased, or used by Defendants conform to either the DOCSIS 1.0, 1.1 or 2.0 standards.

Accordingly, pursuant to Local Patent Rule 3-1(b), Rembrandt identifies as the Accused Instrumentalities (1) Comcast's high speed cable modem network and infrastructure, including any DOCSIS compliant cable modems and DOCSIS compliant cable modem termination systems configured for use in the Defendant's cable modem network ("Accused System"), (2) Comcast's use or operation of its high speed cable modem network and infrastructure ("Accused Method"), and (3) any computer software (including firmware, whether stored on an EPROM, EEPROM, field programmable gate array, or otherwise) configured for use in Comcast's high speed cable modem network and infrastructure, including in any DOCSIS compliant cable modems ("Accused CM Software") and DOCSIS compliant cable modem termination systems ("Accused CMTS Software"), (collectively, "Accused Software").

2

The DOCSIS compliant CMs and CMTSes configured for use in Comcast's high speed cable modem network include, without limitation, those products identified in Exhibit A, attached hereto. Rembrandt is not currently aware of the names or model numbers of all the CMs and CMTSes used by Defendants or by customers of Defendants, and reserves the right to modify or supplement the attached list as discovery progresses.

Rembrandt reserves the right to add additional Accused Instrumentalities as discovery progresses

## C. **Preliminary Infringement Claim Chart**

Pursuant to Local Patent Rule 3-1(c), plaintiff provides the following claim chart, attached hereto as Exhibit B, that explains how Defendants infringe the asserted claims in connection with their sale, offer for sale, lease, use or operation of a high speed cable modem network that includes DOCSIS compliant CMs, CMTSes. For clarity and convenience, the following claim charts primarily cite to the disclosure found in the DOCSIS 1.0 specification, but the same analysis applies to the DOCSIS 1.1 and 2.0 specifications, as DOCSIS 1.1 and 2.0 CMs and CMTSes are backwards compatible with DOCSIS 1.0 CMs and CMTSes, respectively. See, e.g., DOCSIS 1.1 specification at Appendix G ("Besides supporting a rich set of QoS features for DOCSIS 1.1 CMs, the DOCSIS 1.1 CMTS must be backwards compatible with a DOCSIS 1.0 CM. Furthermore, it is necessary for a 1.1 CM to function like a 1.0 CM when interoperating with a 1.0 CMTS."); see also DOCSIS 2.0 specification at Annex G ("As well as supporting DOCSIS 2.0 capable CMs, the DOCSIS 2.0 CMTS must be backwards compatible with DOCSIS 1.0 and DOCSIS 1.1 CMs. Furthermore, it is necessary for a DOCSIS 2.0 CM to function like a 1.0 CM when interoperating with a 1.0 CMTS and to function like a 1.1 CM when interoperating

3

with a 1.1 CMTS."). Other citations are included for reference, but any citations should not be construed as limiting.

**D.    Reliance on the Doctrine of Equivalents**

Pursuant to Patent Local Rule 3-1(d), Plaintiff presently contends that Defendants sale, offer for sale, lease, use or operation of a high speed cable modem network that includes DOCSIS 1.0, 1.1 and 2.0 compatible CMs, CMTSes literally infringes the identified claims. In the alternative, Plaintiff reserves the right to rely on the doctrine of equivalents should claim construction or discovery determinations or facts of which Plaintiff is not currently aware suggest such reliance. Plaintiff has included certain contentions regarding doctrine of equivalents, but reserves the right to modify or supplement any such contentions to the extent made relevant by the Court's claim construction ruling.

In the event that discovery reveals that the Accused Instrumentalities utilized by Defendants implement the claimed invention in software, Plaintiff reserves the right, pursuant to Judge Ward's modification to the Local Patent Rules, Rule 3-1(h), to provide supplemental infringement contentions within 30 days of the production of source code for such software, should such supplemental contentions be necessary.

In the following claim charts, Plaintiff has subdivided each claim element into sub-elements to better explicate where on the Accused Instrumentalities each element may be found. The subdivisions in the following chart should not be taken as an indication of the boundaries of claim elements for the purposes of determining infringement under the doctrine of equivalents.

**E.    Statement of Earliest Priority Date**

Pursuant to Patent Local Rule 3-1(e), Plaintiff states that the earliest priority date all claims of the '858 Patent are entitled to is the July 31, 1995 filing date of the '858 patent.

**F.** **Identification of Instrumentalities Embodying the Patent**

Pursuant to Patent Local Rule 3-1(f), Plaintiff states that it does not manufacture any

products that embody the claims of the '858 Patent.

PARKER & BUNT, P.C.

/s/ *Robert ChristopherBunt*
Robert Christopher Bunt
State Bar No. 00787165
PARKER & BUNT, P.C.
100 E. Ferguson, Suite 1114
Tyler, Texas 75702
Tel: 903/531-3535
Fax: 903/533-9687
E-mail: cbunt@cox-internet.com

Robert M. Parker
State Bar No. 15498000
PARKER & BUNT, P.C.
100 E. Ferguson, Suite 1114
Tyler, Texas 75702
Tel: 903-531-3535
Fax: 903-533-9687
E-mail: rmparker@cox-internet.com

5

Otis Carroll – Lead Attorney
State Bar No. 03895700
IRELAND, CARROLL & KELLEY, P.C.
6101 S. Broadway, Suite 500
Tyler, Texas 75703
Tel: (903) 561-1600
Fax: (903) 581-1071
E-mail: Fedserve@icklaw.com

OF COUNSEL:

Frank E. Scherkenbach
Lawrence K. Kolodney
FISH & RICHARDSON P.C.
225 Franklin Street
Boston, Massachusetts 02110
Tel: (617) 542-5070
Fax: (617) 542-8906

Alan D. Albright
State Bar No. 00973650
FISH & RICHARDSON P.C.
One Congress Plaza, 4th Floor
111 Congress Avenue
Austin, Texas 78701
Tel: (512) 391-4930
Fax: (512) 391-6837

Timothy Devlin
FISH & RICHARDSON P.C.
919 Market Street, Suite 1100
P.O. Box 1114
Wilmington, Delaware 19899
Tel: (302) 652-5070
Fax: (302) 652-0607

Franklin Jones, Jr.
State Bar No. 00000055
JONES & JONES, INC., P.C.
201 West Houston Street, Drawer 1249
Marshall, Texas 75671-1249
Tel: 903-938-4395
Fax: 903-938-3360
E-mail: maizieh@millerlawfirm.com



CableHome® - DOCSIS® - D = DOCSIS   PC = PacketCable™ Certified Products - 10/28/05
CH = CableHome   D = DOCSIS   PC = PacketCable
Beginning with Certification Wave 28, products may be awarded certification/qualification of multiple specifications through the CableLabs "combined certification program".
Note that additional certification will only apply retroactively to any product certified prior to Certification Wave 28, unless that product is submitted for re-certification.
Disclaimer: The model number, software version and hardware version information is provided by the vendor when submitting product for certification and CableLabs assumes no responsibility for accuracy or completeness of that information.
* This product is certified only for the uses as defined in the executive summary of the certification application.

| CW | Version | Type | Manufacturer | CL ID | Model # | SW Version | HW Version | OEM Vendor ID | Spec Combo - Certified As | Verified For Interoperability |
|---|---|---|---|---|---|---|---|---|---|---|
| 39 | D2.0 | CM | WideView Technology | Wfdb391 | VMA100 | 17.1.7.17 | 35A.2 | | D1.1, D2.0 | |
| 39 | C1.1 | Embedded PS | SMC | Smcb391 | SMC201HVG-CHM | 17.1.7.11 | 1.65 | | D1.1, D2.0, CH1.1 | |
| 39 | D2.0 | CM | Askey | Askb391 | CMX300 | 2.0.3.8.5 | 1.0 | | D1.1, D2.0 | |
| 38 | D1.1 | CM | Tollgrade | Tol8391 | 1.0.0 | 1.0.2 | 1.0.0 | | D1.1 | |
| 38 | D2.0 | CM | Pace | Pace8391 | TDC7750 | 3.7.16001 | V1.0 | | D1, D2.0 | |
| 38 | D2.0 | DSG eCM | Arris | Arri381 | TM502G | 4.5.0 | 01 | | D1.1, D2.0 | |
| 38 | PC1.0 in D2.0 | EMTA | Motorola | Motc382 | SBV5300 | SBV5200-2.1.3716.1- / SBV5121-2.17.5.23-SCM00-SH | 1 | | D1, D2.0, PC1.0 | x |
| 38 | PC1.0 in D2.0 | EMTA | Motorola | Motc383 | SBV5121 | SCM00-NOSH v05.38.01 | V1.0 | | D1.1, D2.0, PC1.0 | |
| 38 | PC1.0 in D2.0 | EMTA | Pace | Pac381 | DV015 | v2.0.2r1254 | 1.0 | | D1.1, D2.0, PC1.0 | |
| 38 | PC1.0 in D2.0 | EMTA | Scientific Atlanta | Sci6382 | DPC2203 | v2.0.2r1254 | 1.0 | | D1.1, D2.0, PC1.0 | |
| 38 | PC1.0 in D2.0 | EMTA | Scientific Atlanta | Sci6381 | DPC2223 | S170.01.00 | 1.0 | | D1.1, D2.0, PC1.0 | |
| 38 | PC1.0 in D2.0 | EMTA | Thomson | Thom381 | DHC635S | ST02.06.00 | 5.0 | | D1.1, D2.0, PC1.0 | |
| 38 | PC1.0 in D2.0 | EMTA | Thomson | Thom382 | DHC535S | 4.7.1-1001 | 2.31 | | D1.1, D2.0, PC1.0 | |
| 38 | C1.1 | EMTA | Ambit | Amb2381 | U10C021 | 2.0.3.7.16 | 2.0 | | D1.1, D2.0, PC1.1 | |
| 38 | PC1.0 in D2.0 | Embedded PS | Cisco-Linksys | Link382 | WCG104 | 2.0.3.7.16 | 1.0 | | D1.1, D2.0, CH1.1 | |
| 38 | C1.1 | EMTA | Cisco-Linksys | Link382 | CMP2009 | SBG940 v2.1.1-SCM01-NOSH | 1 | | D1.1, D2.0, CH1.1 | |
| 38 | D2.0 | Embedded PS | Motorola | Motc381 | SBG940 | SBG940 v2.1.1-SCM01-NOSH | 1.0 | | D1.1, D2.0, PC1.0 | |
| 38 | PC1.0 in D2.0 | CM | Alpha | Alph381 | Alpha CMH | 2.01.01AH1.0 | 66.0 | | D1.1, D2.0, PC1.1 | |
| 37 | P1.1 | MG | Cisco-Linksys | Link351 | CMP3009 | 17.0.5.23 | A | | PC1.0, PC1.1 | |
| 37 | P1.1 | MGC | Siemens | 3Siem371 | Surpass hiQ 8000 | 08.04.01.US.05 | SN08.P3M Sun Microsystems Netra 1400T | | PC1.0, PC1.1 | |
| 37 | P1.1 | MGC | Nortel | 3Nor371 | CS 2000 MGC | SN08.P3M | Sun Microsystems | | | |
| 37 | P1.1 | CMS | Siemens | 0Siem371 | Surpass hiQ 8000 | 08.04.01.US.06 | SN08.P5C Sun Microsystems Netra 1400T | | PC1.0, PC1.1 | |
| 37 | P1.1 | CMS | Nortel | 0Nor371 | CS 2000 CMS | 17.0.1.1 | SN08.PHC | | PC1.0, PC1.1 | |
| 37 | D2.0 | CM | Turbocomm | Turb371 | EC420 | SBV5121-2.17.0.12- SCM01-NOSH | 29.2 | | D1.1, D2.0 | |
| 37 | D2.0 | CM | Motorola | Motc371 | SB5121 | SCM01-NOSH | 1.0 | | D1.1, D2.0 | |
| 37 | D2.0 | CM | Asustek | Asus371 | ACM6M6WEB | 3.7.7 | 3.00 | | D1.1, D2.0 | |
| 36 | D2.0 | CM | Toshiba | Toteb382 | PCX2000 | 2.1R.007 | 3.2.1 | | D1.1, D2.0 | |
| 36 | D2.0 | CM | Toshiba | Tost351 | PCX3500 | 4.5.2 | 25.0.0 | | D1.1, D2.0 | |
| 35 | D2.0 | CM | Ambit | Amb351 | U10C017 | 4.4.1 | 32 | | D1.1, D2.0 | |
| 35 | D2.0 | EMTA | Thomson | Thom341 | TTM402P Phase 2 | ST02.06.00 | 5.0 | | D1.0, D2.0, PC1.0 | |
| 34 | PCMM | CMTS+MM | Motorola | 2Mote341 | BSR 64000 | 4.1.0106P10.12.KRAU | CHS-0003-01 | | PCMM | |
| 34 | PCMM | Policy Server | Tekordia | 5Tele341 | Policy Manager 1.0 | PS-R1.0-20050209120 | SUNW Ultra-80 | | PCMM | |
| 34 | P1.1 | MG | Cisco | 4Cisc341 | MGX8880 | 5.50 | V3SM | | PC1.0, PC1.1 | |
| 34 | PC1.0 in D2.0 | EMTA | Ambit | Amb341 | U10C017 | 4.36.1018 | 2.22 | | PCMM | |
| 34 | PCMM | Policy Server | Camtel | 5Cam341 | CAMS-2276 | 2.0.0 | Intel SR 1300 Server | | | |
| 34 | D2.0 | CMTS | Bighead Networks | 2Bigb341 | Code 1200E (G12-DM2x8-2.0) | R6.0.0 | Rev 4 | | D1.1, D2.0 | |
| 34 | P1.0 | MG | Nuera | 4Nue0341 | BTX-4K | 11.0.4 | A | | PC1.0 | |
| 34 | PC1.0 in D2.0 | EMTA | Cisco-Linksys | Link341 | CMP2B | 2.0.3.5.10 | 2.1 | | D1.1, D2.0, PC1.0 | |
| 34 | PC1.0 in D2.0 | EMTA | Cisco-Linksys | Link342 | CG2P2W/B | 2.0.3.8.10 | 2.1 | | D1.1, D2.0, PC1.0 | |
| 34 | PC1.0 in D2.0 | EMTA | Helper | Hlp341 | CVC8G4G | 3.5.8R01 | 1.00 | | D1.1, D2.0, PC1.0 | |
| 34 | PCMM | Policy Server | Tazz Networks | 5Tazz341 | TAZZ PCS | PCMM 1.2 | SUN V80/V20z | | PCMM | |
| 34 | PC1.0 in D2.0 | EMTA | Tenyon | Ten341 | TJ846 | 16.0.0.10 | 31.0 | | D1, D2.0, PC1.0 | |
| 34 | PCMM | Policy Server | CableMetrix | 5Cab341 | CM5P | 0.8.6 | NA | | PCMM | |
| 34 | PCMM | Policy Server | C-Cor | 5Ccor341 | ODSP | 1.0 | NA | | PCMM | |
| 34 | PC1.0 | CMS | Sonus | 0Sonu341 | ASX Access Server | V06.01.00F004 | SUNFIRE V120 | | PC1.0 | |
| 34 | D2.0 | EMTA | Scientific Atlanta | Sci4332 | DPX2213 | v2.0.2r1251 | 1.0 | | D1.0, D2.0, PC1.0 | |
| 33 | PC1.0 in D2.0 | EMTA | Cisco-Linksys | Link331 | BEFCMU10 ver. 5 | 2.0.3.5.6 | 2.0 | | D1.1, D2.0, PC1.0 | |
| 33 | D2.0 | CM | Ambit | Amb341 | U10C018 | 5.56.1019 | 4.10 | | D1, D2.0, CH1.1 | |
| 33 | C1.1 | Embedded PS | Cisco-Linksys | Link333 | CG2P2W/B | 2.0.3.5.6 | 2.1 | | D1.1, D2.0, PC1.0 | |
| 33 | PC1.0 in D2.0 | EMTA | Scientific Atlanta | Sci4331 | DPX2203 | v2.0.2r1151 | 2.1 | | D1.1, D2.0, PC1.0 | |
| 33 | PC1.0 in D2.0 | EMTA | Cisco-Linksys | Link332 | CMP2B | 2.0.3.5.6 | 2.1 | | D1.0, D2.0, PC1.0 | |
| 33 | PC1.0 in D2.0 | EMTA | Thomson | Thom331 | DHC635S | ST02.05.00 | 5.0 | | D1.1, D2.0, PC1.0 | |

| # | Ver | Type | Manufacturer | Code | Model | Spec | Extra | Versions |
|---|---|---|---|---|---|---|---|---|
| 32 | D2.0 | CMTS+DSG Agent | Motorola | 2Moto321 | BSR 64000 | 4.1.0T08P10.KRAU 5.35.33.5 | CHS-0009-01 100 | D1.1, D2.0 |
| 32 | D2.0 | CM | Zoom | Zoom321 | 5241 | CMTS_V04.02.00.10 | 2.0 | D1.1, D2.0 |
| 32 | D2.0 | CMTS+DSG Agent | Arris | 2Arri321 | C4-CMTS-2100-1 | R5.0 | Rev4 | D1.1 |
| 32 | D1.1 | CMTS+DSG Agent | Bigband Networks | 1Bigb321 | Cuda 12000 | 15.0.0.20 | 56.1 | D1.1, D2.0 |
| 32 | D2.0 | CM | Terayon | Tera321 | TJ115x | V3.70.01 | V3.9 | D1.1, D2.0, CH1.1 |
| 32 | D2.0 | CM | Zyxel | Zyxel322 | Prestige 974 | 2.23.7 | 1.0 | D2.0 |
| 32 | D2.0 | Embedded PS | Scientific Atlanta | Sci321 | 8300 DVI.PR | V3.70.01 | V4.1 | D1.1, D2.0, CH1.1 |
| 32 | C1.1 | CM | Zyxel | Zyxe321 | Prestige 971 | ST3A.06.01 | 4.1 | D1.1, D2.0, CH1.1 |
| 32 | C1.1 | Embedded PS | Thomson | Thom321 | DCW725 | 2.0.3.4.2 | 07 | D1.1, D2.0, CH1.1 |
| 32 | C1.1 | Embedded PS | Cisco-Linksys | Link321 | CG2772VB | 4.4.1 | 1.0 | D1.1, D2.0, CH1.1 |
| 32 | C1.1 | CM | Arris | Arri321 | TM4020 | 1.0.2 | 1.00 | D1.1, D2.0 |
| 31 | C1.1 | CM | Tollgrade | Toll321 | 1.0.0 | 12.21(9)6C2p1 | 1.02 | D1.1, D2.0, PC1.0 |
| 31 | PC1.0 in D1.1 | Embedded PS | Netgear | Ngr321 | CG814WG | SBV5220.2.10.0.0- | | D1.1, PC1.0, PC1.1 |
| 31 | | CMTS+PC | Cisco | 1Cisc311 | uBR7246 VXRMAC2NU | | MC28URev 6.5 | D1.1, D2.0, PC1.0 |
| 31 | PC1.0 in D2.0 | EMTA | Motorola | Moto311 | SBV5220 | SBV5220.2.10.0.0- | 1 | D1.1 |
| 31 | D1.1 | CM | Electroline | Elec311 | DH-FPS-MA-01 | SCM41-N-DSH | | D1.1 |
| 31 | D1.1 | CM | AM Communications | Amco311 | 9302 | 2.14 | 4.0 | D1.1 |
| 31 | D2.0 | CM | Tollgrade | Toll311 | 1.0.0 | 1.68 | 4.0 | D1.0 |
| 31 | D1.1 | CMTS | Motorola | 2Moto301 | BSR 64000 | 4.1.0T04P08.KRAU | 10.0 | D1.1 |
| 31 | C1.1 | CM | Electroline | Elec302 | DH-FPS-MA-01 | 2.10 | | D1.0 |
| 30 | D2.0 | Embedded PS | Thomson | Thom302 | DCW725 | ST5A.02.01 | 4.0 | D1.1, D2.0, CH1.1 |
| 30 | D2.0 | CM | Terayon | Tera301 | TJ115x | 14.0.1.4101 | 35.0 | D1.1, D2.0 |
| 30 | D2.0 | CM | Motorola | Moto301 | SBV5220 | SBV5220.2.3.1.0- | 1 | D1.1, D2.0 |
| 30 | PC1.0 in D2.0 | CM | Cisco-Linksys, LLC | Link301 | CM2P2B | SCM00-NOSH | 1 | D1.1, D2.0, PC1.0 |
| 30 | PC1.0 in D2.0 | EMTA | Scientific Atlanta | Scia301 | DPX2203 | 2.0.3.2.5 | 2.1 | D1.1, D2.0, PC1.0 |
| 30 | PC1.0 in D2.0 | EMTA | Ambit | Ambi301 | DPX2203 | v2.0.2r1143 | 2.22 | D1.1, D2.0, PC1.0 |
| 30 | PC1.0 in D2.0 | EMTA | Ambit | Ambi301 | U10C017 | 4.36.1007 | 2.0 | D1.1, PC1.0, PC1.1 |
| 30 | D2.0 | CM | Cisco-Linksys | Link302 | U10C017 | 2.0.3.3 | 2.0 | D1.1, D2.0 |
| 30 | C1.1 | CM | Scientific Atlanta | Scie302 | CG2P2AB | 2.0.2r1242 | 2.0 | D1.1, D2.0 |
| 30 | D2.0 | CMTS+PC | Motorola | 2Moto291 | WebSTAR DPC2100 | 3.1.0T00P57.05.KRBU | CHS-0009-01 | D1.1, PC1.0, PC1.1 |
| 30 | D2.0 | CM | Ambit | Ambi291 | BSR 64000 | 2.93.1003 | 1.20 | D1.1, D2.0 |
| 30 | D2.0 | CM | Cisco-Linksys | Link291 | U10C018 | 2.0.3.1.1 | 2.0 | D1.1, D2.0 |
| 30 | D2.0 | CM | Conexant | Cone291 | BEFCMU10 ver. 4 | 5.35.33.5 | 100 | D1.1, D2.0 |
| 29 | D2.0 | CM | Conexant | Cone292 | ACM851 | 5.35.33.5 | 10 | D1.1, D2.0 |
| 29 | D1.1 | CM | Motorola | Moto291 | XCM851 | SB51PD.0.13.0.2- | | D1.1, D2.0 |
| 29 | D1.1 | CM | Thomson | Thom291 | SB5120 | SCM00-NOSH | 4.0 | D1.1, D2.0 |
| 29 | D2.0 | CM | Scientific Atlanta | Scia291 | DCM425 | STB2.01.02 | 1.2 | D1.0, D2.0, CH1.1 |
| 29 | D1.1 | PS | Cisco-Linksys | Link293 | CGV2W | v2.0.2r1142 | 2.0 | D1.0, D1.1 |
| 29 | D1.1 | CMTS | ADC | 1Adco291 | Cuda 12000 | R5.5.0 | Rev4 | D1.0, D1.1 |
| 29 | P1.0 | CMTS | Motorola | 1Moto292 | BSR 64000 | 3.1.0T09P57.05.KRBU | CHS-0009-01 | PC1.0 |
| 29 | P1.0 | MG | Audiocodes | Audio291 | Mediant 5000 | rel_1001_0_BX | | PC1.0 |
| 29 | P1.0 | MG | General Bandwidth | 4Gene291 | G6 | | | |
| 29 | PC1.0 in D2.0 | EMTA | Motorola | Moto292 | SBV5120 | SBV5120.2.9.0.1- SCM00-NOSH | 1 | D1.1, D2.0, PC1.0 |
| 29 | D1.1 | CM | Cisco-Linksys | Link292 | WCG200 ver. 2 | 2.0.3.1.1 | 2.0 | D1.1, D2.0, CH1.1 |
| 29 | D2.0 | CMTS | Arris | 2Arri291 | C4-CMTS-2100-1 | CMTS_V04.00.00.104 | 2.0 | D1.1, D2.0 |
| 29 | C1.0 | Embedded PS | Ambit | Ambi282 | 6074OEU | 5.11.111 | 4.7 | D1.1, D2.0, CH1.1 |
| 28 | D2.0 | CM | Motorola | Moto286 | SB6900 | 2.18.25/GM01 | 3 | D1.1, D2.0 |
| 28 | C1.0 | Embedded PS | Motorola | Moto284 | SB6940 | SB6940.2.1.8.1- SCM00-NOSH | 1 | D1.1, D2.0 |
| 28 | D2.0 | CM | Motorola | Moto284 | SB6940 | SB6940.2.12.1- SCM00-NOSH | 1 | D1.1, D2.0 |
| 28 | D2.0 | CM | Motorola | Moto287 | SB5101 | SB5101.2-4.01-SCM00- NOSH | 1 | D1.1, D2.0 |
| 28 | D2.0 | CM | Motorola | Moto283 | SBV5120 | SBV5120-2.8.0.4- SCM00-NOSH | 1 | D1.1, D2.0, CH1.1 |
| 28 | C1.1 | Embedded PS | Cisco-Linksys | Link281 | WCG200 | 2.0.2.10.0 | 1.28 | D1.1, D2.0 |
| 28 | D2.0 | CM | Shenzhen Coship | Cosh281 | CCM2000A | 12.0.2.13 | 35.0 | D1.1, D2.0 |
| 28 | D2.0 | CM | Arris | Arri281 | CME100 | 2.0.2.0.6 | 2.1 | D1.1, D2.0 |
| 28 | D2.0 | CM | D-Link | Dlin281 | DCM-202 | 2.0.1 | 1A | D1.1, D2.0 |
| 28 | D2.0 | CMTS | Dashrest | Dash281 | LP3200 | 10.2.1 | 2B-2 | D1.1, D2.0, CH1.1 |
| 28 | P1.0 | CM | Arris | Arri281 | TER622_C3 | 4.0.1.45 | 04 | D1.1, D2.0 |
| 28 | D2.0 | CM | Castlenet | Cast281 | DPF1110/83A | 2.7.2.280 | 1.0 | D1.1, D2.0 |
| 28 | P1.0 | CMTS | Ambit | Ambi281 | 10016EU | 2.93.1000 | 1.18 | D1.1, D2.0 |
| 28 | D2.0 | MGC | Nortel Networks | 3Nort281 | CS 2000 MGC | SN06.PFM | HP252 | D1.1, D2.0 |
| 28 | P1.0 | CM | Castlenet | Cast282 | DPH110 | 2.5.117 | JACO261 | D1.1, D2.0, CH1.1 |
| 28 | D2.0 | Embedded PS | Netgear | Ngr281 | CG814WG | 2.10.0R01 | 1.02 | D1.1, D2.0 |
| 28 | D2.0 | CM | Conexant | Cone281 | ACM851 | 5.29.30.6.MOOB | 100 | D1.1, D2.0 |

| # | Spec | Type | Manufacturer | Code | Product | Version | HW | Cert | Spec Versions |
|---|---|---|---|---|---|---|---|---|---|
| 28 | P1.0 | CMS | Siemens | 05iem281 | Surpass hiQ 8000 | 06.02.01.US.09 | | | PC1.0 |
| 28 | PC1.1 In D1.1 | CMTS+PC | Cisco | 1Gic281 | uBR7246 VXR/MC28U | 12.2(15)BC2b | Sun Microsystems hsns 1400T | | D1.1, PC1.0, PC1.1 |
| 28 | PC1.0 In D2.0 | EMTA | Arris | ArC81 | TM402P | 7S.04.01.01.0130AC | MC781 Rev 6.5 | | D1.1, D2.0, PC1.0 |
| 28 | D1.1 | CM | Electroline | Elec281 | DHT-PS-NA-01 | 2.00 | 04 | | D1.1 |
| 28 | D1.1 | CM | Toshiba | Tosh281 | PCX1100/UDA28 | 1.8.022 | 01 | | D1.1 |
| 28 | D1.0 | CM | Toshiba | Tosh282 | PCX1100/UDA20813 | 1.8.02.4.1311 | 6.92 | | D1.0 |
| 28 | D1.1 | CM | Thomson | Thom282 | DCM625 | ST31.08.01 | 1.7 | | D1.1, D2.0 |
| 28 | D1.0 | CM | Thomson | Thom281 | DCM325 | ST32.00.00 | 1.7 | | D1.1, D2.0 |
| 28 | C1.0 | CM | Conexant | Cone282 | XCM651 | 5.29.30.6.MAMI | 010 | | CH1.0 |
| 28 | C1.0 | Embedded PS | AmHt | Amht272 | 6074/0EUW | 5.1.1.1514 | 4.7 | | D2.0 |
| 28 | C1.0 | CM | Cisco-Linksys | Link271 | BEFCMU10 ver.3 | 2.0.2.0.1 | 1.0 | | D2.0 |
| 28 | D2.0 | CM | Terayon | Tera272 | T.815p | 4.21.5 | 41.0 | Cast281 | D1.1 |
| 28 | D1.1 | CMTS | Cisco | 1Cisco271 | uBR7246VXR/MC28U | 12.2(15)2C21 | MC28U Rev 6.2 | | |
| 27 | C1.0 | Embedded PS | Motorola | Moto271 | SCB900 | | 2 | | D2.0 |
| 27 | D1.1 | CM | Best Data | Best271 | CMX300v2 | SB5901-NOSH | 2 | | D1.1 |
| 27 | C1.0 | CMS | Telcordia | tTel271 | Telcordis Cell Agent | 0.14457.2570 | Sun Ultra 80 | | PC1.0 |
| 27 | D2.0 | CM | Scientific Atlanta | Sci-e271 | WebSTAR DPC2100 | 2.3.3 | 19.0.1 | | PC1.0 |
| 27 | D2.0 | EMTA | Scientific Atlanta | Sci-e274 | WebSTAR DPX2203 | v2.0.1r1133 | 1.3 | | D2.0 |
| 27 | PC1.0 In D2.0 | CM | Scientific Atlanta | Sci-e272 | PCX2200/UDA2823 | 3.0.14 | 1.1 | | C1.0 |
| 27 | C1.0 | Embedded PS | Scientific Atlanta | Sci-e272 | WebSTAR DPX2100 | v2.0.1r1133 | 1.1 | Xroa241 | CH1.0 |
| 27 | C1.0 | Embedded PS | Neigeer | Nlgr271 | WebSTAR DPR2320 | v2.0.1r1133 | 1.02 | | CH1.0 |
| 27 | C1.0 | Embedded PS | Thomson | Thom271 | CGW1HWG | 2.9R01 | 3.1 | | CH1.0 |
| 27 | D2.0 | CM | Motorola | Moto273 | DCM315 | ST32.0A.00 | 3 | | D2.0 |
| 26 | D2.0 | CM | Motorola | Moto272 | SBG900 | SBG900v2.1.6.0- SCM04-NOSH | 2 | | D2.0 |
| 26 | D2.0 | CM | Cadabras, Inc. | Cabl271 | CRM0900 | 7.0.2 | 6.0.1 | | D2.0 |
| 26 | D2.0 | CM | Zyxel | Zyxe271 | Prestige 994 | 5W_REV.3.61 | HW_REV.3.6 | | D2.0 |
| 26 | P1.0 | MGC | Cisco | 3Cisc271 | BTS10200 | R6L.4.1C11 | BTS10200 | | PC1.0 |
| 26 | P1.0 | CMS | Cisco | 0Cisc271 | BTS10200 | R6L4.1Q11 | BTS10200 | | PC1.0 |
| 26 | D2.0 | CMS | Cedar Point | 0Cda271 | SAFARI | R3.0.5.3 | 1.2 | | PC1.0 |
| 26 | D2.0 | CM | Motorola | Moto262 | SBG900 | SBG900v2.1.3.4- SCM02-NOSH | | | D2.0 |
| 26 | D1.1 | CM | Thomson | Thom262 | DCM625/DCM625R | ST41.03.00 | 1.1 | | D1.1 |
| 26 | D1.0 | CM | Ambit | Ambt261 | 6057/6EU | 2.57.1.002 | 1.12 | | D1.0 |
| 26 | D1.1 | CM | Scientific Atlanta | Scie261 | WebSTAR DPX2100 | v1.0.1r1131-0424 | 1.11 | | PC1.0 |
| 26 | D1.1 | MG | Nuera | 4Nuer261 | BTX-8 | 2.0 | 2.0 | | PC1.0 |
| 26 | D1.1 | CMS | Cedar Point | 0Ceda261 | SAFARI | 2.0.2.3 | 2.3 | | D1.1 |
| 26 | P1.0 | CMS | Thomson | Thom260 | DCW1615 (DCW615R) | ST40.04.00 | 1.4 | | CH1.0 |
| 26 | C1.0 | Embedded PS | Thomson | Scie263 | WebSTAR DPR2320 | v2.0.1r132 | 1.1 | | PC1.0 |
| 26 | PC1.0 In D1.1 | CMTS+PC | ADC | 1Adoc261 | Cuda 12000 (C-12 DMTX05/FME-5F7) | R5.0.0 | CMTS: Rev 14 | | PC1.0 |
| 26 | D2.0 | CM | Motorola | Moto261 | SB5100 | NOSH | 3 | | D2.0 |
| 26 | D2.0 | CM | Scientific Atlanta | Scie265 | WebSTAR DPC2100 | v2.0.1r1132 | 1.0 | | D2.0 |
| 26 | D1.0 | CM | Askey | Aske261 | CME100 | 2.0.2.0.1 | 2.1 | | PC1.0 |
| 26 | P1.0 | CMS | Nortel Networks | Nort261 | CS2000 | SR0.1 PSC | SN05.PHC | | D1.1 |
| 26 | D1.1 | CM | Jachoong | Jbou261 | SL2810 | t0.2.0 | 29.2 | | D1.0 |
| 26 | D1.0 | CM | Zyxel | Zyxe261 | Prestige 994 | 3.60 | 3.8 | | D1.1 |
| 26 | D1.1 | CM | Cisco | Cisc261 | Ubr925 | 12.2.8.T | 9 | | D1.1 |
| 26 | D1.1 | CM | Linksys | Link294 | WIC2000 | 1.1.3.0.1 | 1.2b | | D1.1 |
| 26 | D1.1 | CM | Arris | 1Arr261 | CMTS 2000 | 3.2.1.100.001 | 2.2 | Hic251 | PC1.0 |
| 26 | PC1.0 In D2.0 | EMTA | Scientific Atlanta | Scie264 | WebSTAR DPX2203 | v2.01r1132 | 1.1 | | |
| 25 | D1.1 | CM | Motorola | Moto264 | SB5100 | SB5100v1.4.8.15- NOSH | | | D1.1 |
| 25 | D2.0 | CM | Belkin | Belk261 | F5D5530-W | 0.14457.2571 | 10 | | D1.1 |
| 25 | D1.0 | CM | Castlenet | Cast261 | CXC-150 | 0.14457.2570 | 10 | | D1.0 |
| 25 | P1.0 | CM | SMC | Smcn262 | SMC8004CM | 2.0.1 | 1A | | CH1.0 |
| 25 | D1.1 | CM | Thomson | Thom261 | DCM315/DCM315R | ST31.07.00 | 1.3 | | D1.1 |
| 25 | D1.1 | CM | Thomson | Thom264 | DCM315/DCM315R | ST31.08.00 | 1.5 | | D1.1 |
| 25 | PC1.0 In D2.0 | Embedded PS | Nelgeer | Nlgr261 | CGW1HWG | 2.9R01 | 1.02 | | D1.0 |
| 25 | D1.1 | CM | Thomson | Thom263 | DCM316/DCM316R | ST39.10 | 50.1 | | CH1.0 |
| 25 | D1.0 | CM | Texas Instruments | Tera261 | TNETC421A | 10.2.4 | 51.2 | | D2.0 |
| 25 | D2.0 | CM | Terayon | Tera263 | T.2715X | 6.2.0 | 6.2 | | D2.0 |
| 25 | D2.0 | CM | Terayon | Terk262 | TA-102 | 6.0.1v | 9.3 | | D2.0 |
| 25 | D1.1 | CM | Toshiba | Tosh263 | PCX2200/DA22817 | 1.8.017 | 7.4 | | D1.1 |

| No | Cert1 | Type | Manufacturer | Model ID | Product | Spec | Ver | Notes | Cert2 |
|---|---|---|---|---|---|---|---|---|---|
| 26 | D1.1 | CM | Motorola | Moto253 | SBG1000 | SBG1000-1.1.3.1-SCM00-NOSH | 1 | | D1.1 |
| 26 | D1.1 | CM | Linksys | Link261 | BEFCMU10 ver.3 | 5.19.20.2 FORTMESH. | 1.0 | | D1.1 |
| 26 | D1.1 | CM | Castlenet | Cast262 | CXC250 | 2951 | 010 | | D1.1 |
| 26 | D1.1 | CM | Linksys | Link263 | VXCG200 | 1.1.3.0.1 | 1.20 | | PC1.0 |
| 26 | P1.0 | CMS | Syndeo | GSynd251 | Syon 426 | 5.19.20.2.2 | Sun Blade 1000 | | D2.0 |
| 26 | D2.0 | CM | Terayon | Tera253 | TJ715 | 6.20 | 9.0 | | CH1.0 |
| 25 | C1.0 | Embedded PS | Linksys | Link258 | WCG200 | 2.0.1.0.2 | 1.0b | | CH1.0 |
| 25 | C1.0 | Embedded PS | Thomson | Thom254 | DCW615/DCW615R | 2.82R03 | 1.40 | | D1.1 |
| 26 | C1.0 | CM | Toshiba | Toah255 | PCX4500/DA26841 | 1.0.0 | 17.0.0 | | D1.1 |
| 25 | D1.1 | CMS | Aris | Arit252 | CM450A | CMA9.02.0117D3C | 1.0 | | PC1.0 |
| 25 | D1.1 | CMS | Cisco | 0Cisc251 | BTS10200 | R4.0 | R4.0 | | D2.0 |
| 25 | D1.1 | CM | Linksys | Link255 | WCG200 | 2.0.1.0.1 | 1.0b | | D1.1 |
| 25 | D1.1 | CM | Linksys | Link251 | BEFCMU10 | 1.1.5 | 3.0 | | D1.1 |
| 25 | D1.1 | CM | Linksys | Link257 | WCC200 | 2.0.1.0.1 | 10.b | | D1.1 |
| 25 | D1.1 | CM | Scientific Atlanta | Sele252 | VoIP STAR DPX100 | 1.1.2/1.1.3.1 | 1A | | D1.1 |
| 25 | D1.1 | CM | SMC | Smor251 | SMC8013WG | 2.0.0 | 1A | | D1.1 |
| 25 | D2.0 | CM | Terayon | Tera251 | TA-102 | 2315 | 8.15 | | D2.0 |
| 25 | D2.0 | CM | Terayon | Tera252 | TJ715 | 5.26 | 1.9 | | D2.0 |
| 25 | D2.0 | CM | Terayon | Thom255 | Tera252 | 2.81R01 | 1A | | D2.0 |
| 25 | D2.0 | CM | Thomson | Thom255 | Thom255 | 2.57.2007 | 1.40 | | D2.0 |
| 25 | D2.0 | CM | Ambit | Amb251 | Amb251 | CM.04.02.0117D3C | 1.12 | | D1.1 |
| 25 | D1.1 | CM | Aris | Arit253 | Arit253 | 1.21.21 | 01 | | D2.0 |
| 25 | D2.0 | CM | Castlenet | Cast253 | Cast253 | ST32.06.00 | 1.2 | | |
| 25 | | CM | Thomson | Thom252 | Thom252 | 2.0.1 | 1A | | |
| 25 | | CM | Hitron | Hitr252 | Hitr252 | 5.25 | 1A | | |
| 25 | | CM | Terayon | Tera255 | Tera255 | 7.0 | 7.0 | | |
| 25 | D2.0 | CM | Motorola | Moto256 | SB5120 | SB5120-2.9.2.9-SCM-03-NOSH | 1 | | D2.0 |
| 25 | D2.0 | CM | Scientific Atlanta | Sele251 | SB5120 | 2.0.1.1.3.1 | 2 | | D2.0 |
| 25 | D1.1 | CM | Arris | Arit251 | WebSTAR DPX2100 | C4.CMTS-2.100-1 | 1.1 | | PC1.0 |
| 25 | D1.1 | CM | Terayon | Tera254 | TJ715 | 6.20 | 7.0 | | D2.0 |
| 25 | D1.1 | CM | Negear | Nigr251 | PCX2600/DA2823 | 3.0.13 | 19.0.0 | | D2.0 |
| 25 | D2.0 | CM | | | CGR14Mx2 | 2.0.0 | 1A | | D1.0 |
| 25 | D1.1 | CM | Motorola | Moto252 | SB5120 | SB5120-2.9.2.9-SCM-03-NOSH | 1A | | D1.1 |
| 25 | D1.1 | CM | Hitron | Hitr251 | BRG-35201 | 2.0.1 | 1A | | D1.1 |
| 25 | D1.1 | CM | Comtrend | Comt251 | EC330A | 9.2.9 | 17.0 | | D2.0 |
| 25 | D1.0 | CM | D-Link | Dlin251 | DPF1110XR2 | 2.3.111 | | | D1.1 |
| | | | | | DCN201 | 1.1.0 | | | |
| 25 | D1.1 | CMTS+PC | Cisco | 1Cisc253 | uBR774ex | 12.2(11)BC2p | rev B0, MC16S rev 1.0, NPC600: Rev A0, HW | Hitr231 | PC1.0 |
| 25 | D1.1 | EMTA | Arris | Arit251 | TTM4020P | TM.03.02.02010C | 1.03 | | PC1.0 |
| 25 | D1.0 | CM | Thomson | Thom251 | DCM3150/CM315R | ST31.04.00 | 05 | | D1.0 |
| 25 | D1.1 | CM | Motorola | Moto259 | SB3100 | SB3100-1.4.8.13-SCM00-NOSH | 1 | | D1.1 |
| 25 | D1.1 | CM | Cisco | 1Cisc252 | uBR7114 | 12.2(11)BC6c | Rev 1.3 | | PC1.0 |
| 25 | D1.0 | CM | Toshiba | Toah251 | PCX2600/DA2823 | 1.0.13 | 19.0.0 | | D1.0 |
| 25 | PC1.0 in D1.1 | EMTA | Motorola | Moto265 | SBV4200 | SBV4200-07.2.04-SCM00-NOSH | 1 | | PC1.0 |
| 25 | PC1.0 in D1.1 | CMTS+PC | Cisco | 1Cisc251 | uBR10012 | 12.2(11)BC2p | Rev 4.0 MC28 Rev A0 | | PC1.0 |
| 25 | PC1.0 in D1.1 | CMTS+PC | Motorola | 1Moto255 | BSR64000 | 1.3 0TC4P21.KRAU | PGA-A100 | | PC1.0 |
| 25 | PC1.0 in D2.0 | CMTS+PC | Terayon | 2Tera251 | BW3500 | 2.0.0.1.21 | 2.0 | | CH1.0 |
| 25 | D1.1 | CM | Kipo | Kipo251 | CMD1001 | 5.26 | 7.0 | | D1.1 |
| 25 | D1.1 | Embedded PS | Ambit | Ambi253 | 607040EUW | 5.11.1001 | 4.6 | | D1.1 |
| 24 | D1.1 | CM | DX Antenna | Dxan251 | CDMA150/DA2821 | 1.1.0 | 9.1.1 | Toah221 | D1.0 |
| 24 | D1.1 | CM | Arris | Arit243 | TC00DA1430 | SB5100h-1.1.1.1-SCM01- | 02 | | D1.0 |
| 24 | D1.1 | CM | Motorola | Moto242 | SB5100 | NOSH | 1 | | D1.1 |
| 24 | D1.0 | CM | Kipo | Kipo241 | CMD1001 | 5.25 | 7.0 | | D1.1 |
| 24 | D1.1 | CM | Comtrend | Comt241 | DPF1110XR2 | 2.5.2.110 | | | D1.1 |
| 24 | D1.1 | CM | Broadcom | Broad241 | 8601 | 1.1.5r1 | 5.2 | | D1.1 |
| 24 | D1.1 | CM | Askey | Askei241 | CME100 | 1.1.1r1 | 1.1 | | D1.1 |
| 24 | D1.1 | CM | Aris | Arit241 | TM402DH02 | 3.5.1 | 04 | | D1.0 |
| 24 | D1.1 | CM | Ambit | Ambi241 | 60194E | 2.23.1099 | 1.6 | | D1.0 |
| 24 | D1.0 | CM | Toshiba | Toah243 | PCX2200/DA/DA25818 | 1.7.022 | 7.6 | | D1.0 |
| 24 | D1.0 | CM | Thomson | Thom242 | DCM3550/CM305R | ST23.1B.41 | 028 | | D1.0 |

| Ver | # | Type | Manufacturer | Code | Model | Version A | Version B | Notes | Ver |
|---|---|---|---|---|---|---|---|---|---|
| D1.1 | 24 | CM | Pioneer | Ptxn241 | BT-4885W | 1.0 | 1.1.1 r1 | | D1.1 |
| D1.1 | 24 | CMTS | Scientific Atlanta | 1Scie231 | Phenia G1 | M2.0-G1 | 2.1.1.16B | tJley231 | D1.1 |
| D1.1 | 24 | CM | Toshiba | Tosh246 | PCX2100/DAZ7781 | 17.0.0 | 18.0 | | D1.0 |
| D1.0 | 24 | CM | Thomson | Thom243 | DCM3150/CM316R | 1.0 | ST31.01.00 | | D1.0 |
| D2.0 | 24 | CM | Terayon | Tera243 | TJ715 | 2.0 | 6.19 | | D2.0 |
| D1.1 | 24 | CMTS | Cisco | 1Cisc241 | UBR10012 | Rev 3.0 MC5xOS rw. | 12.2(11)BC2c1 | | D1.1 |
| D2.0 | 24 | CMTS | Terayon | 2Tera241 | BW5060 | 5.0 | 2.0.0.021 | | D2.0 |
| D1.1 | 24 | CMTS | Arris | 1Arri242 | ARC200048 | 2.0 | 4.2.8 | | D1.1 |
| D1.1 | 24 | CM | Cisco | 1Cisc242 | uBR7200 VXR | rev b0, MC1ßS rev 1.0, NPE400, Rev A0 HW | 12.2(11)BC1c | | D1.1 |
| D2.0 | 24 | CM | Texas Instruments | Texa242 | TNETC406 | 1.03 | 27.8.2 | | D2.0 |
| D2.0 | 24 | CM | Scientific Atlanta | Scie241 | WebSTAR DPX2100 | 13.1 | 2.0.1/4 | | D2.0 |
| D2.0 | 24 | CM | Thomson | Thom244 | DCM3100/CM316R | 1.1 | 5.25 | | D2.0 |
| D2.0 | 24 | CM | Xceedium | Xmce241 | XDA3000 | 6.0 | 7.0.1 | | D2.0 |
| D1.1 | 24 | CM | Scientific Atlanta | Scie242 | WebSTAR DPX203 | 6.0.1 | 2.61.1001 | | D1.1 |
| D1.1 | 24 | CM | Arris | Arri242 | TCX00DA103 | 5.0 | ST24.13.40 | | D1.1 |
| D1.1 | 24 | CM | Toshiba | Tosh241 | PCX3000/DAZ8831 | 01 | 17.021 | | D1.1 |
| D1.1 | 24 | CM | Texas Instruments | Texa241 | CX300 | 13.0.0 | 1.1.4 r1 | | D1.1 |
| D1.0 | 24 | CM | Terayon | Tera241 | TJ715 | 206.2 | 0.15/45.2310 | | D1.0 |
| D1.1 | 24 | CM | Terayon | Tera241 | TA-102 | 7.0 | 0.15/45.2310 | | D1.0, D1.1 |
| | | | Scientific Atlanta | Scie243 | WebSTAR DPR362 | 8.15 | 2.3.2.109 | | |
| D2.0 | 24 | CM | Motorola | Moto243 | SB5100 | 1.0 | 1.0 | | D2.0 |
| C1.0 | 24 | Embedded PS | Netgear | Ntgr241 | CG314WH | 1.30 | 1.0 | | CH1.0 |
| PC1.0 in D1.1 | 24 | EMTA | Arris | Arri241 | TM0200102 | 2.64 | 1.1.4 | | PC1.0 |
| PC1.0 in D1.1 | 24 | EMTA | Toshiba | Tosh262 | PCX3000/DAZ8831 | 13.0.0 | 7.2.3 | | |
| PC1.0 in D1.1 | 23 | CMTS+PC | Cisco | 1Cisc241 | UBR7246 VXR | Rev B0 MC1ßS rev 1.0, NPE-600 | 12.2(11)BC1c | | PC1.0 |
| PC1.0 in D2.0 | 23 | CMTS+PC | Terayon | 2Tera241 | BW5300 | 2.0 | 2.0.0.0.18 | | PC1.0 |
| C1.0 | 23 | Embedded PS | Linksys | Link241 | BEFCMU H4 | 1.30 | 1.0 | | D1.0 |
| D1.0 | 23 | CM | Arris | Arri242 | 60KRTBEU | 1.12 | 2.61 | | D1.0 |
| D1.0 | 23 | CM | Thomson | Thom231 | DCM305/DCM305R | 028 | ST54.13.40 | | D1.0 |
| D1.1 | 23 | CM | Toshiba | Tosh233 | PCX2200/DAZ8817 | 7.4 | 17.021 | | D1.1 |
| D1.1 | 23 | CM | Askey | Aske231 | CME075 | 5.4 | 1.1.4 r1 | | D1.1 |
| D1.1 | 23 | CM | Belkin | Belk231 | F5D5530-W | 10 | 0.15/45.2310 | | D1.1 |
| D1.1 | 23 | CM | CastleNet | Cast231 | CXC150 | 10 | 0.15/45.2310 | | D1.1 |
| D1.1 | 23 | CM | Com21 | Cmto231 | DP11110X8 | 3 | 2.3.2.109 | | D1.1 |
| D1.1 | 23 | CM | Hitron | Hitr231 | BRG-A500 | 4A | 1.0 | | D1.1 |
| D1.0 | 23 | CM | Toshiba | Tosh231 | PCX3000/DAZ8821 | 9.2.3 | 1.0 | | D1.0 |
| D1.0 | 23 | CM | Linksys | Link233 | BEFCMU10 Ver.2 | 4.0 | 1.1.4 | | D1.0 |
| D1.0 | 23 | CM | Toshiba | Tosh232 | PCX5000/DAZ8850 | 7.31 | 17.0215V | | D1.0 |
| D1.0 | 23 | CMTS | Motorola | Moto231 | BSR 64000 | PCA-0100 | 1.3.0TISPO8A.KRBU | | D1.0 |
| D1.0 | 23 | CMTS | Terayon | Tera231 | BW5500 | 2.0 | 1.3.2.2 | | D1.0 |
| D1.1 | 23 | CMTS | Intel | Inte231 | 5200 | 9 | 14.5.4 | | D1.1 |
| D1.1 | 23 | CMTS | Juniper | 1Junp231 | Juniper G1 | M2.0-01 | 2.1.1.16B | | D1.1 |
| D1.1 | 23 | CMTS | Linksys | Link231 | BEFCMU H4 | 1.30 | 1.0 | | D1.1 |
| D1.0 | 23 | CM | Motorola | Moto231 | SRG1000 | 01 | SB51000-A.1.1.1-SC40/3-NIOSH | | D1.0 |
| D1.0 | 23 | CM | Arris | Arri231 | CM000DA103 | 1.30 | 3.3.0 | | D1.0 |
| D1.0 | 23 | CM | Thomson | Thom232 | DCW232 | 3A | 2.63 | | D1.0 |
| D1.0 | 23 | CM | Netgear | Ntgr231 | CM212 | | 1.01 | Htr201 | D1.0 |
| D1.0 | 23 | CM | Motorola | Moto232 | SB4300 | 1.10 | 2.0.15 | | D1.0 |
| D1.1 | 23 | CM | Netgear | Ntgr232 | CG814WV | 2.1 | 2.63 | | D1.1 |
| D1.1 | 23 | CM | Scientific Atlanta | Scie231 | Webster DPX100 | 1.0 | 1.0.5.r1.1.3 | | D1.1 |
| D1.1 | 23 | CM | Scientific Atlanta | Scie232 | Webster DPX2100 | 2.1 | 2.0.1r | | D1.1 |
| D1.1 | 23 | CM | SMC | Smcn231 | SMC8013WG | 1.00 | 2.63 | ASKE211 | D1.1 |
| D1.0 | 22 | CM | Efficient Networks, Inc. | Effi231 | SpeedStream 6101 | 1.8 | 2.2.2.2 | | D1.0 |
| D1.1 | 22 | CM | Fujitsu | Fkki231 | FSC102 | 6.1 | 1.1.2 r1 | | D1.1 |
| D1.1 | 22 | CM | Motorola | Moto224 | SB4200 | 1 | 1.4.8.5 | | D1.1 |
| D1.1 | 22 | CMTS | Cisco | 1Cisc221 | UBR7200VXR/MC28C | HW 2.03 | 12.2(7)BC1c | NPE-400; Rev A0 HW 1.03, MC28C; Rev B0 | D1.1 |
| D1.1 | 22 | CM | Texas Instruments | Texa221 | TNETC405T | 9.1 | 6.3.0 | | D1.1 |
| D1.1 | 22 | CM | Toshiba | Tosh222 | PCX3000/DAZ8821 | 9.2.2 | 9.2.2 | | D1.1 |
| D1.1 | 22 | CM | Motorola | Moto223 | SB4100 | 0 | 1.4.8.5 | | D1.1 |
| D1.1 | 22 | CMTS | ADC | 1Adco221 | Code 12000 (C12-DMtn6SPM-5F) | | R3.1.23 | CMTS: Rev A5 | D1.1 |

| Dev | DI | Type | Manufacturer | Code | Model | Version | Rev/HW | Note | DI |
|---|---|---|---|---|---|---|---|---|---|
| 22 | DI.1 | CMTS | Aris | 1Anr222 | ARCD00046 | 4.2.6 | 01 | | DI.1 |
| 22 | DI.1 | CMTS | Juniper | 1Jnr221 | Juniper G10 | 2.1.8.18 | 2.0 | PCA-0057-02 | DI.1 |
| 22 | DI.1 | CMTS | Motorola | 1Mde221 | BSR 6400 | 1.47 KRC | | PCA-0027-030 | DI.1 |
| 22 | DI.1 | CMTS | Motorola | 1Mde222 | BSR 1000 | 01.01.15.PRR | 03 | | DI.1 |
| 22 | DI.1 | CMTS | ComD1 | Cmte222 | DP 11110XB | 2.3.2.108 | | | DI.1 |
| 22 | DI.1 | CMTS | ADC | 1ACcd222 | Cuda 12000 (C-12-DM1x4SFM-SF) | R3.1.23 | | CMTS: Rev. 23 | DI.1 |
| 22 | DI.0 | CM | Motorola | Moto222 | SB4220 | SB4220-5.6.3-D-SCM-01-NOSH | 1 | | DI.0 |
| 22 | DI.1 | CM | Toshiba | Tosh224 | PCX2200 | 1.7.017 | 7.3 | | DI.1 |
| 22 | DI.0 | CMTS | Scientific Atlanta | 1Sda221 | Prisma G10 | 2.1.0.1B | 2.0 | | DI.0 |
| 22 | DI.0 | CM | ComD1 | Cmte221 | DP 11110XB | 2.3.1.108 | 3 | | DI.0 |
| 22 | DI.0 | CM | Coresant | ComD21 | EC270 | 1.8.10 | 7.41 | | DI.0 |
| 22 | DI.0 | CM | Jeoheng | Jhco222 | SL-2600 | Ver6.1.0 | Verz.1 | | DI.0 |
| 22 | DI.0 | CM | AsusTek | Asus222 | ACM04MSE3 | 1.9 | 1.A | | DI.0 |
| 22 | DI.0 | CM | Linksys | Link222 | BEFCMU4H1 | 1.0.0 | 0A | | DI.0 |
| 22 | DI.0 | CM | Linksys | Link223 | BEFCMU4H4 | 2.62 | 1.f.0 | | DI.0 |
| 22 | DI.0 | CM | Motorola | Moto221 | SB4220 | SB4220-D-0.6.3-R-SCM-01-NOSH | 3.0 | | DI.0 |
| 22 | DI.0 | CM | Pioneer | Pion221 | BT-M850W | 1.0.7 r1 | 1.0 | | DI.0 |
| 22 | DI.0 | CM | Scientific Atlanta | Sda221 | WebStar DPX100 | 1.0.5.r1 | 1.0 | | DI.0 |
| 22 | DI.0 | CM | 3Com | 3Com221 | 3CR29223 | 02.06 | 2.00 | | DI.0 |
| 22 | DI.0 | CM | Scientific Atlanta | Sda223 | WebStar DPX100 | 1.0.5.r1 | 2.2 | | DI.0 |
| 22 | DI.0 | CM | Thomson | Thom221 | DCM305/305R | ST23.05.01 | 028 | | DI.0 |
| 22 | DI.0 | CM | Thomson | Thom222 | DCM305/305R | ST23.10.00 | 028 | | DI.0 |
| 22 | DI.0 | CM | Toshiba | Tosh221 | PCX2500/DAZ2821 | 1.0.6 | 9.1.1 | | DI.0 |
| 22 | DI.1 | CM | Scientific Atlanta | Sda722 | WebStar DPX100 | 1.0.5.r1.1 | 2.1 | | DI.1 |
| 22 | DI.0 | CM | Broadsent | Broa221 | 8601 | 1.1.2.r1 | 5.1 | | DI.1 |
| 22 | DI.1 | CM | Aris | 1Anr221 | C4-CMTS-2100-1 | v02.00.02.10 | 2.1 | Aske211 | DI.1 |
| 22 | DI.1 | CM | Conexant | Cone211 | CX2421CM | 4.12704 | 24943.15.0 | | DI.0 |
| 22 | DI.1 | CM | Askey | Aske211 | CME075 | 1.1.2 r1 | 5.1 | | DI.1 |
| 22 | DI.1 | CM | Arts | Arit211 | AZTM02NA | 2.1.0 | 04 | | DI.1 |
| 21 | DI.1 | CM | SMC | Achr211 | CSMC8001CM-B | 2.3.1 | 3.0 | | DI.1 |
| 21 | DI.0 | CM | Thomson | Thom211 | RCA DCM305 | ST.22.04.00 | 028 | | DI.0 |
| 21 | DI.0 | CM | Motorola | Moto214 | SB4200 | 0.4.4.0p | Rev.A | | DI.0 |
| 21 | DI.0 | CM | Motorola | Moto213 | SB4100 | 0.4.4.9p | Rev. 0 | | DI.0 |
| 21 | DI.0 | CM | Linksys | Link211 | BEFMCU10 ver.2 | 1.0.6 | 4.0 | | DI.0 |
| 21 | DI.0 | CM | AsusTek | Asus211 | ACM04MSEB | 1.80 | 1.00 | | DI.0 |
| 21 | DI.0 | CM | Aestra | Aest211 | HM306c | 71-0001-10 | ROA 219 767/1 R1A | | DI.0 |
| 21 | DI.1 | CM | Quanta Network Systems | Quan211 | QCM200 | 2.4.1 | 3.2 | | DI.1 |
| 21 | DI.1 | CMTS | DX Antenna | Dxon211 | CDMA-1200/DAZ2820 | 1.1R.005 | 3.2.2.1 | Tosh182 | DI.0 |
| 21 | DI.1 | CM | Arts | 1Art212 | C4-CMTS2100 | V01.01.00.12 | 3.0 | | DI.0 |
| 21 | DI.1 | CM | Linksys | Link212 | BEFCMU10 | 1.0.6 Rel.2 | 3.1 | | DI.0 |
| 21 | DI.1 | CMTS | Scientific Atlanta | 1Sda212 | WebSTAR DPX100 | 1.1.2 r1 | 2.1 | | DI.0 |
| 21 | DI.1 | CM | Tellabs | Tel211 | CVM315A | 2.5.0 | RevA | | DI.1 |
| 21 | DI.1 | CM | Tenpyon | Tene211 | ECM615 | 4.34 | 1.3 | | DI.0 |
| 21 | DI.1 | CM | Tenpyon | Tene212 | EQM15 | 2.16 | 3.0 | | DI.0 |
| 21 | DI.1 | CM | Thomson | Thom211 | DCM245/DCM245R | ST.1C.00.00 | 026 | | DI.0 |
| 21 | DI.1 | CM | Conexant | Cone211 | CM0011 | 0.5096.360 | 04 | | DI.0 |
| 21 | DI.1 | CM | Best Data | Best211 | CMX300 | 0.5096.360 | 04 | | DI.0 |
| 21 | DI.1 | CM | Xincil | Xinc211 | XCM-2000 | 5.0.2 | 5.1.2 | | DI.1 |
| 21 | DI.1 | CMTS | RiverStone | 1Rst211 | RS-8600 | 8.2.1.1 | Beckdeine Rev.A | CastI191 | DI.1 |
| 21 | DI.1 | CMTS | Tenpyon | 01ene212 | B2600 | 6.1.2.C.1 | 300-005-03-06 | Cast191 | DI.0 |
| 21 | DI.1 | CMTS | ADC | 1Adcc211 | Cuda 12000 | R3.1.91 | 1 | | DI.0 |
| 21 | DI.1 | CM | Cisco | 1Cisc211 | UBR10012 | 12.2(4)BC2 | Rev 4.0 MC28 RevA0 | RiverStone | DI.1 |
| 21 | DI.1 | CM | Scientific Atlanta | Sci212 | WebSTAR DPX213 | 1.1.2 r1 | 1.0 | | DI.1 |
| 21 | DI.1 | CM | Scientific Atlanta | 0Sda201 | Prisma G10 | 2.0.0 | 2.0.0 | | DI.1 |
| 21 | DI.1 | CM | Samsung | Sams211 | SCM-140U | 2.1.0 | 14.00 | | DI.1 |
| 21 | DI.1 | CM | Motorola | Moto201 | SB4100 | 0.4.3.3p | Rev. 0 | | DI.0 |
| 21 | DI.1 | CM | Scientific Atlanta | Sci202 | SB4200 | 0.4.3.3p | 2.0 | 1Anr211 | DI.1 |
| 21 | DI.1 | CM | Ericsson | Eric201 | HM205C | 2.10 | 22.0 | | DI.0 |
| 20 | DI.1 | CM | Arts | Arit201 | AZTM01NA | 1.1.0 | 7.1 | | DI.0 |
| 20 | DI.0 | CM | Toshiba | Tosh204 | PCX2200 / DAZ2817 | 17.014 | 2.0 | | DI.1 |
| 20 | DI.1 | CM | Thomson | Thom201 | RCA DCM245 | ST.05.05.00 | 26 | | DI.0 |
| 20 | DI.1 | CM | Scientific Atlanta | Sda201 | WebSTAR DPX100 | 1.0.5.r1 | 1.0 | | DI.0 |
| 20 | DI.0 | CM | Tellabs | Tel201 | CVM410A | V3.20 | V1.A | | DI.1 |
| 20 | DI.1 | CM | Motorola | Moto202 | SB4200 | 0.4.3.3p | Rev. 1 | | DI.0 |
| 20 | DI.1 | CM | Ambit | Amb201 | 6019AE | 2.25.988 | 1.9 | | DI.1 |

| # | Type | Manufacturer | Code | Product | Version | Rev | Notes | DOCSIS |
|---|------|--------------|------|---------|---------|-----|-------|--------|
| 20 | CM | Hitron | Hitr201 | BRG-3520 | 1.0.1 | 3A | | D1.0 |
| 20 | CM | D-Link | Dlin201 | DCM-200 | 4.4/32.1 | 3.2 | | D1.0 |
| 20 | CM | Cisco | Cisc201 | UBR922 | Ver 12.2 | 3| | | D1.0 |
| 20 | CM | Ambit | Ambz202 | 60201ELW | 5.1.309 | 4.2 | | D1.0 |
| 20 | CM | 3Com | 3Com201 | 3CR29223 | 01.22 | 2.00 | | D1.1 |
| 20 | CMTS | Cisco | 1Cisc201 | UBR7200 VXRMC16S | 12.1(7)CX2 | 2.1 | rev B0 MC16S rev 1.0 | D1.0 |
| 20 | CM | Panasonic | Pana201 | TZ-CM200 | | 2.1 | | D1.0 |
| 20 | CM | Toshiba | Tosh202 | PCX2500 / DAZ6831 | 2.0.3 | 9.1.0 | | D1.1 |
| 20 | CM | Toshiba | Tosh203 | PCX3000 / DAZ6831 | 2.2.3 | 13.0.0 | | D1.1 |
| 20 | CMTS | Cisco | 0Cisc201 | UBR10012 | 12.2(2)XF1 | 1.0.2 | rev 3.0 MC28 Rev A0 | D1.0 |
| 20 | CM | Toshiba | Tosh201 | PCX2500 / DAZ6821 | 1.0.2 | 6.1.0 | | D1.1 |
| 20 | CM | Texas Instruments | Texa201 | TNETC405T | 4.0.9 | 9.0 | | D1.1 |
| 19 | CMTS | Pacific Broadband | 0Pbro201 | Kodak G10 | 2.0.0.16 | 2.0.0 (M2.0/A1.2/D2.0) | | D1.0 |
| 19 | CM | Thomson | Thom191 | DCM245 / DCM245R | ST12-07.01 | 26 | | D1.0 |
| 19 | CM | Samsung | Sams191 | SCM-120U | 1.5.1 | 12.20 | | D1.0 |
| 19 | CM | Scientific Atlanta | Scin191 | WebSTAR DPX110 | 1.0.4 Release 2 | 04 | | D1.0 |
| 19 | CM | Scientific Atlanta | Scie192 | WebSTAR DPX110 | 1.0.4 Release 2 | 3.0 | | D1.0 |
| 19 | CM | Askey | Aske192 | CME063 | 1.0.4 Release 2 | 4.0 | | D1.0 |
| 19 | CM | Tenayon | Tena192 | ECM615 | 1.0.4 Release 2 | 1.2 | | D1.0 |
| 19 | CM | Corrdent | Corr191 | EC2000T | 1.7.11 | 7.11 | | D1.0 |
| 19 | CM | Astry | Aske191 | CMH033 | 1.0.4 Release 2 | 3.0 | Scie191 | D1.0 |
| 19 | CM | Acston | Acbn191 | SMC6002CM | 4.5096 | 9A14./8.0 | Scie192 | D1.0 |
| 19 | CM | Hauppauge Computer | Haup191 | BRG-3510 | 1.0/M1.2 | A0 | | D1.0 |
| 19 | CM | LG Innotek | Lgin192 | LCH3000 | 1.0/M1.2 | A0 | Htr181 | D1.0 |
| 19 | CM | Tempyon | Tena191 | ECM610 | 3.47 | 1.2 | Htr181 | D1.0 |
| 19 | CM | AsusTek | Asus191 | ACM6059EB | 1.60 | 1.30 | | D1.0 |
| 19 | CM | CastleNet | Cast191 | CXC110 | 0.5098.360 | 04 | | D1.0 |
| 19 | CM | Ericsson | Eric191 | HM206c | CXC 112 2096/I R5B | 2.1 | | D1.0 |
| 19 | CM | Ericsson | Eric192 | HM024c | CXC 112 2096/I R5B | 1.0 | | D1.0 |
| 19 | CM | Motorola | Moto193 | SB4101 | R35 | R2B | RGA 117 8439/1 R2A | D1.0 |
| 19 | CM | Panasonic | Pana191 | TZ-CM200 | 1.7.11 | 02 | RGA 117 8439/1 R2A | D1.0 |
| 19 | CMTS | Cadent | 1Cade191 | C4-CMTS-2100 | v00.80.17 | 1.0 | Htr181 | D1.1 |
| 19 | CM | Ambit | Ambi191 | 6010WE | 2.22.2 | 1.0 | | D1.0 |
| 19 | CM | Aris | 1Arif191 | 1500 | 4.2.0 | 01 | | D1.1 |
| 19 | CM | Toshiba | Tosh192 | PCX1500/DAZ6816 | 1.7.011 | 7.1 | | D1.0 |
| 19 | CM | Toshiba | Tosh184 | PCX1200/DAZ6815 | 1.7.011 | 7.1 | | D1.0 |
| 19 | CMTS | Motorola | 0Moto191 | DCC4200 | Release 11x | 49447-001 Rev A | Corrdent EC280T | D1.0 |
| 19 | CM | Turbocomm | Turb191 | EC200T | 1.7.11 | 7.0 | | D1.0 |
| 19 | CM | Toshiba | Tosh193 | PCX2500D/DAZ6821 | 2.0.1 | 9.0.0 | | D1.1 |
| 19 | CM | Texas Instruments | Texa191 | TNETC405 | 2.0.1 | 2.0.0 | | D1.1 |
| 18 | CM | Zoom | Zoom191 | Zoom Cable Modem | | | | D1.0 |
| 18 | CM | Zoom | Zoom191 | 5041 | 4.100 | 14D | | D1.0 |
| 18 | CM | Samsung | Sams181 | SCM-120U | 1.0.0 | 20 | | D1.0 |
| 18 | CM | Ericsson | Eric182 | HM024c | CXC112 2096/I R5A | A0 | RGA 117 8439/1 R2A | D1.0 |
| 18 | CM | Linksys | Link181 | BEFCM11 | 0.4381.108 | 3A | | D1.0 |
| 18 | CM | D-Link | Dlin181 | DCM-200 | 4.4382 | 3.2 | | D1.0 |
| 18 | CM | Net & Sys | Nets181 | MNG2000 | 4.4382 | 4.0 | | D1.0 |
| 18 | CM | Ericsson | Eric183 | HM206c | 2.1.0 | R2B | | D1.0 |
| 18 | CM | Zoom | Zoom181 | 5001 | 1.86 | 0285-014 (MIB:285014) | | D1.0 |
| 18 | CM | US Robotics | Usro181 | USR6000 | 2.13.2 | 1.6 | Ambit | D1.0 |
| 18 | CM | Thomson | Thom181 | DCM245/DCM245R | ST12.07 | 26 | | D1.0 |
| 18 | CM | Toshiba | Tosh181 | PCX 2000D/DAZ6820 | 1.1R/.008 | 3.3.2 | | D1.0 |
| 18 | CM | 3Com | 3Com183 | 3CR29250 | 2.5.1 | 1.6 | | D1.0 |
| 18 | CM | Toshiba | Tosh182 | PCX 2000D/DAZ6820 | 1.1S/.005 | 3.2.1 | Ambit | D1.0 |
| 18 | CM | Ambit | Ambit181 | 6019WE | 2.8.3 | 1.6 | | D1.0 |
| 18 | CM | Hitron | Hitr181 | BRG-3510 | 1.03/M1.2 | A0 | | D1.0 |
| 18 | CM | Cadvent | Cast181 | CXC110/Cabvrl Link | 0.4590.220 | 1.6 | | D1.0 |
| 18 | CM | 3Com | 3Com181 | 3CR29250 | 2.10.5 | A0 | Ambit | D1.0 |
| 18 | CMTS | Pacific Broadband | 0Pbro181 | KODAK F10 | 1.1.0.17 | M1.1/A1.7/D1.1 | Cast172 | D1.0 |
| 18 | CM | High Speed Surfing | High181 | SM100 | R3D | 04 | | D1.0 |

| No. | Spec | Category | Vendor | Code | Model | Version | Version 2 | Notes | Spec |
|---|---|---|---|---|---|---|---|---|---|
| 18 | D1.0 | CM | Infinet | Inf181 | ICM1150T | VCMom v1.8 | ICM1150T Rev D | | D1.0 |
| 18 | D1.0 | CM | Hiton | Htr182 | BWG5-3511 | 1.0.9WY1.3 | A0 | | D1.0 |
| 18 | D1.0 | CM | Ericsson | Eric181 | HM200c | CXC112 20R6/1 R5A | RDA117 843R1 R2A | | D1.0 |
| 17 | D1.0 | CM | Samsung | Sema171 | SCM-430U | V2.1.0 | 13/10 | | D1.0 |
| 17 | D1.0 | CM | Global Telenam | Glac171 | MediaLynx CM-2000 | K | MediaLynx CM-2000 | | D1.0 |
| 17 | D1.0 | CM | Samsung | Siems171 | SCM-120R | 4.4381 | 12.00 | Aske171 | D1.0 |
| 17 | D1.0 | CM | Scientific Atlanta | Scia171 | Webstar DPX-110 | 1.0.3R4 | 3.0 | | D1.0 |
| 17 | D1.0 | CM | High Speed Surfing | High171 | SM110 | 0.43R1.108 | 04 | | D1.0 |
| 17 | D1.0 | CM | Terayon | Tera171 | ECM210 | 1.7.8 | 6.62 | | D1.0 |
| 17 | D1.0 | CM | Texas Instruments | Texa171 | 1NETC400G | .217 | 3.2 | Correlant | D1.0 |
| 17 | D1.0 | CM | Askey | Aske171 | CM206X | 1.0.3R4 | 3.0 | Aske171 | D1.0 |
| 17 | D1.0 | CM | Nortel Networks | Nort171 | CM115U | 1.0.3R4 | Rev 3 | | D1.0 |
| 17 | D1.0 | CM | Motorola | Moto173 | SBA100 Rev 3 | 4.0.9p | 4.0.9p | | D1.0 |
| 17 | D1.0 | CM | Motorola | Moto171 | SBA100 Rev 1 | 4.0.9p | Rev 1 | | D1.0 |
| 17 | D1.0 | CM | Motorola | Moto172 | SBA100 Rev 1 | 4.0.9p | Rev 0 | | D1.0 |
| 17 | D1.0 | CM | Matsushita | Mxts171 | TZ-CM100 | 1.1 | 1.1 | | D1.0 |
| 17 | D1.0 | CM | Cisco | Cisc171 | CVA 122 | con120-t1-v4y5-me.TLN | 3.1 | | D1.0 |
| 17 | D1.0 | CM | Daiko | Daiko171 | CableXpert CMZ1100 | 4.0.A8.81 | 1.0 | | D1.0 |
| 17 | D1.0 | CM | Castlenet | Cast172 | CXC116-CTI | 0.43R1.108 | A3 | | D1.0 |
| 17 | D1.0 | CM | ElsaAG | Elsa171 | Microlink Cable | 1.0.8 | Rev 1 | GVC | D1.0 |
| 17 | D1.0 | CM | Motorola | Moto171 | SB3100 | 3.2.12p | | | D1.0 |
| 17 | D1.0 | CM | Ericsson | Eric171 | HM200c R1A (ZAT 510 1/2(1/4) | R0D | R1A | | D1.0 |
| 17 | D1.0 | CM | Ericsson | Eric172 | HM200c R1A (ZAT 510 1/2(1/4) | R4A | R1A | | D1.0 |
| 17 | D1.0 | CM | Castlenet | Cast171 | CXC110xCadter | 0.43R1.108 | 04 | | D1.0 |
| 17 | D1.0 | CM | Powercom | Powe171 | PCR-2600U | 4.A382 | V3.2 | | D1.0 |
| 17 | D1.0 | CM | Arris | 0Arri171 | Cornerstone CMTS-1500 | 4.0.9 | 00 | | D1.0 |
| 17 | D1.0 | CMTS | RiverStone | 0Rste171 | RS 8000 | 6.1.2.C.1 | Backplane: 300-001-05-0A CMTS module 02 | | D1.0 |
| 17 | D1.0 | CMTS | Tellabs | 0Tell171 | Cablespan 2700 | 6.1.2.C.1 | Backplane: 300-005-06-0A CMTS module: 2 | | D1.0 |
| 17 | D1.0 | CMTS | Terayon | 0Tera171 | BE 2000/BE-CMTS41 | 6.1.2.C.1 | Backplane: 300-001-05-0A CMTS module: 02 | | D1.0 |
| 17 | D1.0 | CMTS | Cisco | 0Cisc172 | UBR 7100 | con7100A1p-me.121- | Line card rev 3 upconv rev 7 | | D1.0 |
| 17 | D1.0 | CM | 3Com | 3Com173 | 3CR29241 | 4.4EC | 2.0 | | D1.0 |
| 17 | D1.0 | CM | 3Com | 3Com172 | 3CR29223 | 0.1.03 | 2.0 | | D1.0 |
| 16 | D1.0 | CM | Arcdos | Acci171 | Acc271 | 0.1.15 | 2.91 | | D1.0 |
| 16 | D1.0 | CM | Zoom | Zoom166 | Zoom561 | 2.51 | 029301 | | D1.0 |
| 16 | D1.0 | CMTS | RiverDelta | 0Riod161 | BSR64000 | 2.0.4.2.70 | CHS-0001-02 | | D1.0 |
| 16 | D1.0 | CMTS | Toshiba | Tosh161 | DAZ8813 | 00.01.00.8A | 6.62 | Ambit | D1.0 |
| 16 | D1.0 | CM | Cisco | Nort161 | CM220 | 1.7.007 | V1.4 | | D1.0 |
| 16 | D1.0 | CMTS | Cisco | 0Cisc161 | UBR7200/MC28C | v2.4 patch 1 | A | | D1.0 |
| 16 | D1.0 | CM | ElsaAG | Elsa161 | 204 | 12.1.EIZ/EC | G | | D1.0 |
| 16 | D1.0 | CM | D-Link | Dlin161 | DCM100 | 1.30 | 3.2 | | D1.0 |
| 16 | D1.0 | CM | Arris | Arrb161 | 6031SP | 4.4270 | v0.1 | | D1.0 |
| 15 | D1.0 | CM | Arris | Arrb161 | 6031WE | v2.2 patch9 | 1.4 | | D1.0 |
| 15 | D1.0 | CM | Arris | Arrb161 | CM200R | 2.2.7 | 25 | Thomson | D1.0 |
| 15 | D1.0 | CM | Terayon | Tera151 | ECM110 | ST1.08 | 6.12 | | D1.0 |
| 15 | D1.0 | CM | Future Networks | Futu152 | FN110C | 1.7.6 | V1.0 | | D1.0 |
| 15 | D1.0 | CM | Net & Sys | Nets151 | MNG-1000 | V2.1.5 | 1.03 | | D1.0 |
| 15 | D1.0 | CM | 3Com | 3Com151 | 3CR29223 | 2.2EM | v 2.00 | | D1.0 |
| 15 | D1.0 | CM | Askey | Aske151 | RT080 | v1.10 | V8.0 | | D1.0 |
| 15 | D1.0 | CM | Cisco | Cisc161 | UBR905 | 1.10.0 | A0 | | D1.0 |
| 15 | D1.0 | CM | Ofre | Ofre151 | C1001 | ubr925-4.1IK2b3sw4y5-me | 01 | | D1.0 |
| 15 | D1.0 | CMTS | RiverStone | 0Rste151 | RS 8000 | 1.0.3657 | Chassis rev 8; CMTS: Rev 02 | | D1.0 |
| 15 | D1.0 | CMTS | Toshiba | Tosh153 | PCX1100/DAZ8813 | 6.1.0.1 | 6.62 | | D1.0 |
| 15 | D1.0 | CM | Lucent (Delta Kabel) | Luce151 | Densela 90-US3 | 1.7.006 | v6.0 | | D1.0 |
| 15 | D1.0 | CM | Toshiba | Tosh152 | PCX1100/DAZ8811 | V3.61.0 | 8.12 | | D1.0 |
| 15 | D1.0 | CMTS | RiverDelta | 0Rdel152 | BSR 1000 | 1.7.006 / 2.1.9 | BSR 1000 | Aske131 | D1.0 |

| # | D1.0 | Type | Manufacturer | Code | Model | Version | Rev | Company | D1.0 |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | Teralink 2000 TLU- | | Chasis: rev6: CMTS: | | |
| 15 | D1.0 | CMTS | Teryeon | 0Tera151 | CMTS41A | 6.1 | Rev 2 | | D1.0 |
| 15 | D1.0 | CM | Terayon | Test152 | ECM210 | 1.7.6 | 6.62 | | D1.0 |
| 15 | D1.0 | CM | Sae|jin | Sae151 | SC-5100RE | V1.13 | V1.2 | | D1.0 |
| 15 | D1.0 | CM | Magpro | Mag151 | 77TCM2 | V1.0 | V1.C | | D1.0 |
| 15 | D1.0 | CM | Terayon | Test153 | TCAX10 | 0036-05 | D | | D1.0 |
| 15 | D1.0 | CMTS | Motorola | Mote152 | SB3100 Rev-C | Rev-v2.2.9 | Rev C | | D1.0 |
| 16 | D1.0 | CM | Cisco | 0Cisc151 | UBR 7200 VXR | 12.1(28)C1 | A0 | | D1.0 |
| 15 | D1.0 | CM | Thomson | Thom151 | DCM235/235R | ST 1.0A | 25 | | D1.0 |
| 15 | D1.0 | CM | Com21 | Com151 | DP1110 | 2.1.0.100 | 6 | | D1.0 |
| | | CM | GIS | | VGS-CM306EDTE | v2.14 | v1.0 | | D1.0 |
| 15 | D1.0 | CM | Elsa/AG | Elsa151 | 204 | 1.18 | E | | D1.0 |
| 15 | D1.0 | CMTS | Motorola | 0Moto151 | DCM 2000 475369A-001- | | 475695-001-00 Rev 01 | | D1.0 |
| 15 | D1.0 | CM | GVC | Gvcc141 | 00 | Rev 1.0 | Rev 31 | PowerCom | D1.0 |
| 14 | D1.0 | CM | D-Link | Dlin141 | CM-204/CCN | Rev 1.44.32.52 | Rev 2.3 | Tech131 | D1.0 |
| 14 | D1.0 | CM | DX Antenna | Dxan141 | DCM100 | 6.44.32.22 | 6.11 | | D1.0 |
| | | | | | DA2811 | 1.7.003 | Engine. MXME2306- | | D1.0 |
| | | | | | | | 900 MRX, 7426TG01, | | |
| 14 | D1.0 | CMTS | Motorola | 0Moto142 | MM-H 400-HD | 5.2 | Rev C | | D1.0 |
| 14 | D1.0 | CM | Ericsson | Eric142 | HA200C | Rev R1E | Rev R2B | | D1.0 |
| 14 | D1.0 | CM | Com21 | Cmto141 | DP121 | 1.6.19 | 6.8 | | D1.0 |
| 14 | D1.0 | CM | Ericsson | Eric141 | HA2200c | Rev R1D | Rev R2B | | D1.0 |
| 14 | D1.0 | CMTS | Arris | 0arri142 | CMTS-1000 | 3.2.1 | Rev 08 | | D1.0 |
| 14 | D1.0 | CMTS | Cisco | 0Cisc141 | UBR 7200 VXR | 12.0(11)SC | A0 | | D1.0 |
| 14 | D1.0 | CM | AsusTek | Asus141 | ACM6000EB | 2.3 | 1.3 | | D1.0 |
| 14 | D1.0 | CM | Zoom | Zoom142 | 5901 | 0.44.32.52 | 0265-01C | | D1.0 |
| 14 | D1.0 | CM | Ambit | Ambi141 | 6008BE | 2.0.13 | 1.3 | | D1.0 |
| 14 | D1.0 | CM | Terayon | Tera141 | ECM210 | Rev 1.6.19 | Rev 6.6 | | D1.0 |
| 14 | D1.0 | CM | Ambit | Ambi142 | 6008BU | 2.0.5 | 2.0 | TurboNet | D1.0 |
| 14 | D1.0 | CM | Aris | Ambi141 | CM200U | Ver 5.14 | V25 | Communications | D1.0 |
| 14 | D1.0 | CM | Thomson | Thom141 | DCM100 | Rev 2.0.2 | Ver 25 | | D1.0 |
| 14 | D1.0 | CM | Samsung | Sam141 | SCM-110R Ether | 1.44.32.52 | Rev 11.10 | TurboNet | D1.0 |
| 14 | D1.0 | CM | Zoom | Zoom141 | 5001 | Rev 2.2.8 | 0265-01 | | D1.0 |
| 14 | D1.0 | CM | Motorola | Moto143 | SB3100 Rev-C | 6.44.32.81 | Rev-C | | D1.0 |
| 14 | D1.0 | CM | Powercom | Pow141 | PDX-2500 | Rev v3.2.6 | Rev 2.3 | RCA | D1.0 |
| 14 | D1.0 | CM | Motorola | Moto141 | SB3100 Rev D | 3.1.0 | Rev D | | D1.0 |
| 14 | D1.0 | CM | GVC | Gvcc131 | CMX-SO | 1.7.3 | B | | D1.0 |
| 14 | D1.0 | CM | Alcatel | Alca131 | UM141 | 1.7.003 | 6.10 | | D1.0 |
| 14 | D1.0 | CM | Toshiba | Tosh131 | DA2811 | 4.4.18 | 6.1 | | D1.0 |
| 14 | D1.0 | CM | 3Com | 03Com135 | BR-036678-10 | 1.7.3 | Rev B | | D1.0 |
| 14 | D1.0 | CM | Joohong | Jooh131 | Superflex 2000 | 1.7.3 | 6.1 | | D1.0 |
| 14 | D1.0 | CM | Sohoware | Soho131 | NSC200 | 1.1.58 | 6.10 | | D1.0 |
| 14 | D1.0 | CMTS | BAS | 0Base131 | Cuda | u6ri30A1y5-mz.120BTLN | D | | D1.0 |
| 13 | D1.0 | CM | Cisco | Cisc131 | UBR924 | 6.1 | A0 | | D1.0 |
| 13 | D1.0 | CM | Toshiba | Tosh132 | DA28813 | 1.6.018 | 6.6 | | D1.0 |
| 13 | D1.0 | CM | 3Com | 3Com133 | 3CR28220 | 1.6.16 | 2.00 | | D1.0 |
| 13 | D1.0 | CM | Askey | Aske131 | CME530 | V7.0 | V8.0 | | D1.0 |
| 13 | D1.0 | CM | Motorola | Moto133 | SB3100 Rev C | V1.0.0 | V8.0 | | D1.0 |
| 13 | D1.0 | CM | NetGame | Nete131 | Phazer | V3.2.1 | Rev C | | D1.0 |
| 13 | D1.0 | CM | 3Com | 3Com131 | 3CR28210 | 2.80 | 6.0 | | D1.0 |
| 13 | D1.0 | CM | Nortel Networks | Nort131 | CM115 | 3.1.0 | 8.2 | | D1.0 |
| 13 | D1.0 | CM | Zyxel | Zyxe131 | 941 | V21.0.0 | V8.0 | Aske121 | D1.0 |
| 13 | D1.0 | CM | Future Networks | Futu131 | 100L | 2.4 | Zygate v1.58 | | D1.0 |
| 13 | D1.0 | CM | Future Networks | Futu132 | 110L | V2.13 | V2.2 | | D1.0 |
| 13 | D1.0 | CMTS | 3Com | 00Com134 | BSc000971-01 | V2.13 | V1.0 | | D1.0 |
| 13 | D1.0 | CM | NetGear | Neg131 | CM0201 | 3.61.s-fr-l | Rev1.0 | | D1.0 |
| 13 | D1.0 | CM | Best Data | Best131 | CMX110 | 2.90 | 6.0 | | D1.0 |
| 12 | D1.0 | CM | Artis | Artl22 | CM200 | 1.7.3 | 6.10 | Aske121 | D1.0 |
| 12 | D1.0 | CM | Askey | Aske121 | CME530 | ST 4.06 | V24 | | D1.0 |
| 12 | D1.0 | CM | Artis | Arti121 | CM200U | v2.60 | v6.0 | | D1.0 |
| 12 | D1.0 | CM | 3Com | 3Com121 | 2940 | ST 1.0.05 | V25 | | D1.0 |
| 12 | D1.0 | CM | Thomson | Thom123 | DCM 225 | 2.03 | V25 | | D1.0 |
| 12 | D1.0 | CM | High Speed Surfing | High121 | SM100 | ST5.035 | L3 | | D1.0 |
| 12 | D1.0 | CM | Thomson | Thom122 | DCM 215 | 6.16 | V25 | | D1.0 |
| 12 | D1.0 | CM | Thomson | Thom121 | DCM 215 | ST 5.40b | 6.1 | | D1.0 |
| 12 | D1.0 | CM | Turbocomm | Turb121 | CM110 | ST5.005 | 6.16 | | D1.0 |
| 12 | D1.0 | CM | Terayon | Tera121 | ECM100 | 6.16.16 | 6.1 | | D1.0 |

| # | D1.0 | Type | Manufacturer | Code | Model | Version | Version 2 / Notes | D1.0 |
|---|------|------|--------------|------|-------|---------|-------------------|------|
| 12 | D1.0 | CM | Terayon | Tera122 | ECM110 | 1.6.16 | 5.4 | D1.0 |
| 12 | D1.0 | CM | Motorola | Moto122 | MMLN3150A | 2.0.0f5 | 74562G01 | D1.0 |
| 12 | D1.0 | CM | Motorola | Moto121 | MLN9200A | 1.0/CU08 | 76047G01 | D1.0 |
| 12 | D1.0 | CM | Toshiba | Tosh122 | DAZ6811 | 1.7.002 | 6.1 | D1.0 |
| 12 | D1.0 | CM | Dassault | Dass121 | VX020 | v2.80 | v6.0 | D1.0 |
| 11 | D1.0 | CM | Com21 | Com21 | DP111 | 1.6.16 | 6.1 | D1.0 |
| 11 | D1.0 | CM | Toshiba | Tosh121 | DAZ6811 | 1.6.016 | 6.1 | D1.0 |
| 11 | D1.0 | CM | Com21 | Cmto114 | DP101 | 1.6.14 | 5.4 | D1.0 |
| 11 | D1.0 | CM | Com21 | Cmto112 | CP3001 | 1.0.5.100 | 6500105 rev55 | D1.0 |
| 11 | D1.0 | CM | Thomson | Thom111 | DCM 205 | BT 1.10 | A0 | D1.0 |
| 11 | D1.0 | CMTS | Cisco | 0Clsc111 | UBR7200 | 11.3(11a)NA1 | A0 | D1.0 |
| 11 | D1.0 | CM | Com21 | Cmto113 | CP3001 | 1.10.100 | 6500106 rev.55 | D1.0 |
| 11 | D1.0 | CM | D.V.Antenna | Dash111 | DAZ6801D | 1.6.003 | 5.21 | D1.0 |
| 11 | D1.0 | CM | General Instrument | Gene112 | SB3100B | V3.07 | -001RevB | D1.0 |
| 11 | D1.0 | CM | Best Data | Best111 | CMX100 | 1.6.14 | 5.4 | D1.0 |
| 11 | D1.0 | CM | General Instrument | Gene111 | SB3100A | V3.0.7 | -002RevA | D1.0 |
| 11 | D1.0 | CM | Com21 | Cmto111 | CP3001 | 1.0.1.100 | 6500087 rev54 | D1.0 |
| 10 | D1.0 | CMTS | Thomson | Thom101 | DCM 105 | ST 20.6.3 | HW Ver 12 | D1.0 |
| 10 | D1.0 | CM | Terayon | Tera101 | ECM100 | 1.8.9 | 5.4 | D1.0 |
| 9 | D1.0 | CM | Arris | 0Arr091 | DE3901E02 | 2.0.0 | 00 | D1.0 |
| 9 | D1.0 | CM | Toshiba | Tosh092 | PCA1000DAZ6801F | Ver 1.6.003 | Ver 5.21 | D1.0 |
| 9 | D1.0 | CM | Philips | Phil091 | PD10D | 1.76 | 1.11 | D1.0 |
| 9 | D1.0 | CM | Sony | Sony091 | CMR-1000 | 1.1 (0.76.1) | 1.1 | D1.0 |
| 9 | D1.0 | CM | Askey | Aske091 | CME010 | 1.76 | 1.11 | D1.0 |
| 9 | D1.0 | CM | Motorola | Moto091 | MML-N4004D | 5.0/10p13b | MAC., 74D25G01, Rev A / Engine, MXME2306- 900MT-X-H, 74612G01, Rev16=RevA MTX-I.O, 74666G01, Rev 02 / MFX, 74207G01, Rev C | D1.0 |
| 9 | D1.0 | CM | Cisco | Clsc091 | UBRX94 | 11.3(9)NA Uc6004-1y4 | A0 | D1.0 |
| 9 | D1.0 | CM | Samsung | Sams091 | SD841005 | me.cable/abs.12hey99f | 1.2 | D1.0 |
| 8 | D1.0 | CM | 3Com | 3Com091 | 3CR3262-DE66 | 1.76 | A01-3 | D1.0 |
| 8 | D1.0 | CMTS | Arris | 0Arr081 | DE380ME25 | 12.30 | 02 | D1.0 |
| 8 | D1.0 | CM | General Instrument | Gene081 | SB2100 | 1.100.3 | X3/002 | D1.0 |
| 7 | D1.0 | CM | Toshiba | Tosh071 | DAZ2001E | V1.1.1 | 5.2 | D1.0 |
| 7 | D1.0 | CMTS | Cisco | 0Clsc071 | UBR7200 | 1.57N | A0 | D1.0 |
| 7 | D1.0 | CM | Thomson | Thom071 | DCM 105 | 11.3(7)NA STR.4 | Pilot 3 c Rev's | D1.0, CH1.0 |

B

| 1 | Data communications apparatus comprising: | Rembrandt does not express a position at this time as to whether the preamble of this claim limits the claim's scope. Nevertheless, Rembrandt identifies below aspects of the Accused Instrumentalities that correspond to the claim preamble.<br><br>Comcast operates a cable network (the Accused System) that complies with the DOCSIS 1.0, 1.1 and/or 2.0 specifications for providing high speed internet access (*i.e.*, communicating data) over a cable network. (*See, e.g.*, http://www.comcast.com/Benefits/CHSIBenefits.asp; *see also* DOCSIS 1.0, 1.1, and 2.0 at § 1.1 ("This document defines the radio-frequency interface specifications for high-speed data-over-cable systems.") and § 1.3.1 ("The intended service will allow transparent bi-directional transfer of Internet Protocol (IP) traffic, between the cable system headend and customer locations, over an all-coaxial or hybrid-fiber/coax (HFC) cable network."))<br><br>In the event the preamble is construed as limiting and found to be not literally present in the Accused Instrumentalities, Rembrandt contends that that the Accused Instrumentalities meet the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Instrumentalities are insubstantial.[1] The limitation and the aforementioned features perform substantially the same function (communicating data), in substantially the same way (transmitting and receiving digital signals), to achieve substantially the same result (enable the exchange of data), as the recited limitation. |
| | a time division multiplexed bus having a bandwidth, | Data in the Comcast network is transmitted over a cable that is both time and frequency division multiplexed. The cable is frequency division multiplexed in that its bandwidth is divided into a plurality of frequency bands or upstream channels. Each upstream channel is then time division multiplexed or divided into a plurality of time slots. (*See, e.g.*, DOCSIS 1.0 and 1.1 at § 2.2.1 and DOCSIS 2.0 at § 4.2.1 ("In the upstream direction, the cable system may have a subsplit (5-30 MHz) or extended subsplit (5-42 MHz) passband. NTSC analog television signals in 6-MHz channels may |

---

[1] Any use within these charts of the words "limitation" or "portion" of a claim are for convenience, and do not constitute any admission that such language within the claim forms the boundaries of a claim element for purposes of the doctrine of equivalents. Moreover, no statement in these contentions should be construed as an admission that any language of the preamble is limiting. Rembrandt takes no position at this time regarding whether any language of any preamble is limiting.

1

| | |
|---|---|
| | be present, as well as other signals.");, *see also* DOCSIS 1.0 and 1.1 at § 3.5.3, and DOCSIS 2.0 at § 5.5.3 ("Time in the upstream channel is slotted, providing for Time Division Multiple Access at regulated time ticks. The CMTS provides the time reference and controls the allowed usage for each regulated time ticks. The CMTS provides the time reference and controls the allowed usage for each interval.").)

In the event this limitation is construed or applied in such a way that it is found not to be literally present in the Accused Instrumentalities, Rembrandt contends that the Accused Instrumentalities meet the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Instrumentalities are insubstantial. The aforementioned features perform substantially the same function (providing time shared access for multiple communication devices on a single frequency channel ), in substantially the same way (dividing usage of a channel through a time sharing arrangement), to achieve substantially the same result (enabling a plurality of devices to communicate over the channel via a time sharing arrangement). |
| where a portion of the bandwidth is allotted to packet data; | In the Accused Instrumentalities, a scheduling algorithm in the CMTS allots some of the time slots in each upstream channel for the transmission of packet or variable bit-rate data. (*See, e.g.,* DOCSIS 1.0 at § 6.4.1, DOCSIS 1.1 at § 7.1.1, and DOCSIS 2.0 at § 9.1.1 ("The allocation MAP is a varying-length MAC Management message that . . . define[s] transmission opportunities on the upstream channel. It includes a . . . variable number of information elements (IEs). . . Each information element defines the allowed usage for a range of mini-slots.").)

The allocation MAP can include Request IEs which are time periods in which packet data may be transmitted. (*See, e.g.,* DOCSIS 1.0 at § 6.4.1.1.1, DOCSIS 1.1 at § 7.1.2.1, and DOCSIS 2.0 at § 9.1.2.1 ("The Request IE provides an upstream interval in which requests MAY be made for bandwidth for upstream data transmission.").) The allocation MAP can also include Request/Data IEs which are additional time periods in which packet data may be transmitted. (*See, e.g.,* DOCSIS 1.0 at §6.4.1.1.2, DOCSIS 1.1 at § 7.1.2.2, and DOCSIS 2.0 at §9.1.2.2 ("The Request/Data IE provides an upstream interval in which requests for bandwidth or short data packets MAY be transmitted.").)

In the event this limitation is construed or applied in such a way that it is found not to be literally present in the Accused Instrumentalities, Rembrandt contends that the Accused Instrumentalities |

2

| | | |
|---|---|---|
| | | meet the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Instrumentalities are insubstantial. The aforementioned features perform substantially the same function (designating a part of the time shared communication channel to be used for variable bit-rate data), in substantially the same way (dividing the time shared communication channel into time periods and designating certain time periods to be used for variable bit-rate data), to achieve substantially the same result (enabling a time shared communication channel to be partially used for variable bit-rate data).<br><br>This claim element may include features that relate to software of the Accused Instrumentalities, and Rembrandt reserves the right to supplement or modify these contentions under Judge Ward's modification to the Local Patent Rules, Rule 3-1(h). |
| | a plurality of packet data sources | In the Accused Instrumentalities, a plurality of CMs communicate with a single CMTS. (*See, e.g.,* DOCSIS 1.0 and 1.1 at § 3.5.3, and DOCSIS 2.0 at § 5.5.3 ("The upstream channel is characterized by many transmitters (CMs) and one receiver (the CMTS). Time in the upstream channel is slotted, providing for Time Division Multiple Access at regulated time ticks. The CMTS provides the time reference and controls the allowed usage for each interval. Intervals may be granted for transmissions by particular CMs, or for contention by all CMs. CMs may contend to request transmission time. To a limited extent, CMs may also contend to transmit actual data. In both cases, collisions can occur and retries are used.");<br><br>Certain time slots in the databus between the CMs and the CMTS are designated as Request or Request/Data IEs. The CMs can transmit packet or variable bit rate ("VBR") data in such time-slots, and can contend with other CMs to transmit packet or VBR data in such time slots. Each CM can act as and acts as a packet data source, for example to transmit variable bit-rate data during time-slots that have been allotted to a given CM or to all CMs as Request or Request/Data IEs. (*See, e.g.,* DOCSIS 1.0 at § 6.4.1, DOCSIS 1.1 at § 7.1.1, and DOCSIS 2.0 at § 9.1.1 ("The allocation MAP is a varying-length MAC Management message that is transmitted by the CMTS to define transmission opportunities on the upstream channel. It includes a fixed length header followed by a variable number of information elements (IEs). . . . Each information element defines the allowed usage for a range of mini-slots."); *see also* DOCSIS 1.0 at § 6.4.1.1, DOCSIS 1.1 at § 7.1.2.1, and DOCSIS 2.0 at § 9.1.2.1 ("The Request IE provides an upstream interval in which requests MAY be made for bandwidth for upstream data transmission. . . . If broadcast, this is an invitation for CMs to contend |

3

| | |
|---|---|
| | for requests."); *see also* DOCSIS 1.0 at § 6.4.1.1.2, DOCSIS 1.1 at § 7.1.2.2, and DOCSIS 2.0 at § 9.1.2.2 ("The Request/Data IE provides an upstream interval in which requests for bandwidth or short data packets MAY be transmitted.").)<br><br>In the event this limitation is construed or applied in such a way that it is found not to be literally present in the Accused Instrumentalities, Rembrandt contends that the Accused Instrumentalities meet the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Instrumentalities are insubstantial. The aforementioned features perform substantially the same function (providing variable bit-rate data from multiple sources), in substantially the same way (sharing a data channel between multiple sources of data), to achieve substantially the same result (providing variable bit-rate data from multiple sources on a single channel).<br><br>This claim element relates to software features of the Accused Instrumentalities, and Rembrandt reserves the right to supplement or modify these contentions under Judge Ward's modification to the Local Patent Rules, Rule 3-1(h). |
| coupled to the time-division multiplexed bus | Each CM is coupled to the TDMA bus or upstream channel. (*See, e.g.*, DOCSIS 1.0 and 1.1 at § 3.5.3, and DOCSIS 2.0 at § 5.5.3 ("The upstream channel is characterized by many transmitters (CMs) and one receiver (the CMTS).").)<br><br>In the event this limitation is construed or applied in such a way that it is found not to be literally present in the Accused Instrumentalities, Rembrandt contends that the Accused Instrumentalities meet the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Instrumentalities are insubstantial. The aforementioned features perform substantially the same function (providing a access to the time shared communication channel), in substantially the same way (providing a communication link between each of the packet data sources and the time shared communication channel), to achieve substantially the same result (enabling the packet data sources to communicate via the time shared communication channel). |
| that share the allotted bandwidth for | Each CM that transmits VBR data during the Request or Request/Data IE shares that portion of the bandwidth of the upstream channel that the CMTS has allotted for packet data. (*See, e.g.*, DOCSIS |

4

| | |
|---|---|
| transmitting packet data; and | 1.0 and 1.1 at § 3.5.3, and DOCSIS 2.0 at § 5.5.3 ("The upstream channel is characterized by many transmitters (CMs) and one receiver (the CMTS). Time in the upstream channel is slotted, providing for Time Division Multiple Access at regulated time ticks. The CMTS provides the time reference and controls the allowed usage for each interval. Intervals may be granted for transmissions by particular CMs, or for contention by all CMs. CMs may contend to request transmission time. To a limited extent, CMs may also contend to transmit actual data. In both cases, collisions can occur and retries are used."); *see also* DOCSIS 1.0 at § 6.4.1, DOCSIS 1.1 at § 7.1.1 and DOCSIS 2.0 at § 9.1.1 ("The allocation MAP is a varying-length MAC Management message that is transmitted from the CMTS to define transmission opportunities on the upstream channel. It includes a fixed length header and a variable number of information elements (IEs). . . . Each information element defines the allowed usage for a range of mini-slots."); *see also* DOCSIS 1.0 at § 6.4.1.1.1, DOCSIS 1.1 at § 7.1.2.1, and DOCSIS 2.0 at § 9.1.2.1 ("The Request IE provides an upstream interval in which requests MAY be made for bandwidth for upstream data transmission. . . . If broadcast, this is an invitation for CMs to contend for requests."); *see also* DOCSIS 1.0 at § 6.4.1.1.2, DOCSIS 1.1 at § 7.1.2.2, and DOCSIS 2.0 at § 9.1.2.2 ("The Request/Data IE provides an upstream interval in which requests for bandwidth or short data packets MAY be transmitted.").)<br><br>In the event this limitation is construed or applied in such a way that it is found not to be literally present in the Accused Instrumentalities, Rembrandt contends that the Accused Instrumentalities meet the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Instrumentalities are insubstantial. The aforementioned features perform substantially the same function (apportioning that part of the time-shared communication channel designated for variable bit-rate data among the plurality of packet data sources), in substantially the same way (establishing a procedure by which packet data sources may use the part of the time-shared communication channel designated for variable bit-rate data at a given time), to achieve substantially the same result (enabling each of the packet data sources to use a portion of the time-shared communication channel designated for the transmission of variable bit-rate data).<br><br>This claim element may include features that relate to software of the Accused Instrumentalities, and Rembrandt reserves the right to supplement or modify these contentions under Judge Ward's modification to the Local Patent Rules, Rule 3-1(h). |

5

| | |
|---|---|
| a distributed packet manager within each of said packet data sources configured to allocate access to the alloted bandwidth among said packet data sources. | Each CM includes software that allocates each CMs access to the TDMA bandwidth that has been alloted to all of the CMs in a broadcast Request or Request/Data IE. This software runs an exponential back-off based contention resolution algorithm. (*See, e.g.,* DOCSIS 1.0 at § 6.4.4, DOCSIS 1.1 at § 7.4 and DOCSIS 2.0 at § 9.4 ("The CMTS controls assignments on the upstream channel through the MAP and determines which mini-slots are subject to collisions. The CMTS MAY allow collisions on either Requests or Data PDUs."); *see also* DOCSIS 1.0 at § 6.4.4, DOCSIS 1.1 at § 7.4.1 and DOCSIS 2.0 at § 9.4.1 ("The mandatory method of contention resolution which MUST be supported is based on a truncated binary exponential back-off, with the initial back-off window and the maximum back-off window controlled by the CMTS. … The CM MUST randomly select a number within its back-off window. This random value indicates the number of contention transmit opportunities which the CM MUST defer before transmitting. A CM MUST only consider contention transmit opportunities for which this transmission would have been eligible. These are defined by either Request IEs or Request/Data IEs in the MAP. …After a contention transmission, the CM waits for a Data Grant (Data Grant Pending) or Data Acknowledge in a subsequent MAP. Once either is received, the contention resolution is complete. The CM determines that the contention transmission was lost when it finds a MAP without a Data Grant (Data Grant Pending) or Data Acknowledge for it and with an Ack time more recent than the time of transmission. The CM MUST now increase its back-off window . . . MUST randomly select a number within its new back-off window and repeat the deferring process described above."))

In the event this limitation is construed or applied in such a way that it is found not to be literally present in the Accused Instrumentalities, Rembrandt contends that the Accused Instrumentalities meet the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Instrumentalities are insubstantial. The aforementioned features perform substantially the same function (allocating access to the part of the time-shared communication channel designated for variable bit-rate data between the variable bit rate data sources), in substantially the same way (through a collision avoidance mechanism which resides within each variable bit rate data source for reducing data collisions), to achieve substantially the same result (apportioning access to the time-shared communication channel designated for the transmission of variable bit-rate data between the plurality of variable bit rate data sources).

This claim element may include features that relate to software of the Accused Instrumentalities, and |

| | | |
|---|---|---|
| | | Rembrandt reserves the right to supplement or modify these contentions under Judge Ward's modification to the Local Patent Rules, Rule 3-1(h). |
| 7 | Communications apparatus comprising: | Rembrandt does not express a position at this time as to whether the preamble of this claim limits the claim's scope. Nevertheless, Rembrandt identifies below aspects of the Accused Instrumentalities that correspond to the claim preamble.

Comcast operates a cable network (the Accused System) that complies with the DOCSIS 1.0, 1.1 and/or 2.0 specification for providing high speed internet access (*i.e.*, communicating data) over a cable network. (*See, e.g.*, http://www.comcast.com/Benefits/CHSIBenefits.asp); *see also* DOCSIS 1.0, 1.1 and 2.0 at § 1.1 ("This document defines the radio-frequency interface specifications for high-speed data-over-cable systems.") and § 1.3.1 ("The intended service will allow transparent bi-directional transfer of Internet Protocol (IP) traffic, between the cable system headend and customer locations, over an all-coaxial or hybrid-fiber/coax (HFC) cable network."))

In the event the preamble is construed as limiting and found to be not literally present in the Accused Instrumentalities, Rembrandt contends that that the Accused Instrumentalities meet the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Instrumentalities are insubstantial. The aforementioned features perform substantially the same function (communicating data), in substantially the same way (transmitting and/or receiving digital signals), to achieve substantially the same result (enabling the exchange of data), as the recited limitation. |
| | a time-division multiplexed bus | Data in the Comcast network is transmitted over a fiber or coax cable that is both time and frequency division multiplexed. The cable is frequency division multiplexed in that its bandwidth is divided into a plurality of frequency bands or upstream channels. Each upstream channel is then time division multiplexed or divided into a plurality of time slots. (*See, e.g.*, DOCSIS 1.0 and 1.1 at § 2.2.1 and DOCSIS 2.0 at § 4.2.1 ("In the upstream direction, the cable system may have a subsplit (5-42 MHz) or extended subsplit (5-42 MHz) passband. NTSC analog television signals in 6-MHz channels may be present, as well as other signals."); *see also* DOCSIS 1.0 and 1.1 at § 3.5.3, and DOCSIS 2.0 at § 5.5.3 ("Time in the upstream channel is slotted, providing for Time Division Multiple Access at regulated time ticks. The CMTS provides the time reference and controls the allowed usage for each interval.")) |

7

| | | |
|---|---|---|
| | | In the event this limitation is construed or applied in such a way that it is found not to be literally present in the Accused Instrumentalities, Rembrandt contends that the Accused Instrumentalities meet the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Instrumentalities are insubstantial. The aforementioned features perform substantially the same function (providing time shared access for multiple communication devices in a single frequency channel), in substantially the same way (dividing usage of a channel through a time sharing arrangement), to achieve substantially the same result (enabling a plurality of devices to communicate over the channel via a time sharing arrangement). |
| | having a predefined bandwidth; | Each upstream channel can carry a maximum amount of data, depending on the type of modulation used, in a limited frequency band. (See, e.g., DOCSIS 1.0 and 1.1 at § 2.2.1, and DOCSIS 2.0 at § 4.2.1 ("In the upstream direction, the cable system may have a subsplit (5-30 MHz) or extended subsplit (5-40 or 5-42 MHz) passband. NTSC analog television signals in 6-MHz channels may be present, as well as other signals.")). Moreover, for each upstream channel, the plurality of time slots the channel is divided into are counted on a fixed 32-bit counter. (See, e.g., DOCSIS 1.0 at § 6.5.4, DOCSIS 1.1 at § 7.3.4, and DOCSIS 2.0 at § 9.3.4.1.2 ("The MAP counts mini-slots in a 32-bit counter that normally counts to $(2^{32} - 1)$ and then wraps back to zero. . . . [M]ini-slot N begins at timestamp reference (N*T*64), where T = 2M is the UCD multiplier that defines the mini-slot (i.e., the number of timeticks per minislot).")) 

In the event this limitation is construed or applied in such a way that it is found not to be literally present in the Accused Instrumentalities, Rembrandt contends that the Accused Instrumentalities meet the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Instrumentalities are insubstantial. The aforementioned features perform substantially the same function (providing a predetermined communications capability), in substantially the same way (by providing a time division multiplexed communication channel with a known capacity), to achieve substantially the same result (providing a specific communications capacity via a time division multiplexed communications channel). |
| | a plurality of | In the Accused Instrumentalities a plurality of CMs communicate with a single CMTS. (See, e.g., |

8

| | |
|---|---|
| synchronous data sources | DOCSIS 1.0 and 1.1 at § 3.5.3, and DOCSIS 2.0 at § 5.5.3 ("The upstream channel is characterized by many transmitters (CMs) and one receiver (the CMTS). Time in the upstream channel is slotted, providing for Time Division Multiple Access at regulated time ticks. The CMTS provides the time reference and controls the allowed usage for each interval. Intervals may be granted for transmissions by particular CMs …"); |
| | Certain time slots in the databus between the CMs and the CMTS are designated for Unsolicited Grant Service. The CMs may transmit synchronous or isochronous, i.e., generally constant bit-rate ("CBR") data rather than variable bit-rata data, in time-slots that are designated for Unsolicited Grant Service. Each CM can and does act as a synchronous data source because it is capable of transmitting constant bit-rate (CBR) data, such as Voice-over-IP (VOIP) data, during time-slots that are designated for Unsolicited Grant Service. (See, e.g., DOCSIS 1.1 at App. M.1.1 and DOCSIS 2.0 at App. VI.1.1 ("Unsolicited Grant Service is an Upstream Flow Scheduling Service Type that is used for mapping constant bit rate (CBR) traffic onto Service Flows. Since the upstream is scheduled bandwidth, a CBR service can be established by the CMTS scheduling a steady stream of grants. These are referred to as unsolicited because the bandwidth is predetermined, and there are no ongoing requests being made. The classic example of a CBR application of interest is Voice over Internet Protocol (VoIP) packets. Other applications are likely to exist as well."); see also DOCSIS 1.1 at § 8.2.1 and DOCSIS 2.0 at § 10.2.1 ("The Unsolicited Grant Service (UGS) is designed to support real-time service flows that generate fixed size data packets on a periodic basis, such as Voice-over-IP. The service offers fixed size grants on a real-time periodic basis, which eliminate the overhead and latency of CM requests and assure that grants will be available to meet the flow's real-time needs. The CMTS MUST provide fixed size data grants at periodic intervals to the Service Flow. In order for this service to work correctly, the Request/Transmission Policy (refer to Appendix C.2.2.6.3) setting MUST be such that the CM is prohibited from using any contention request or request/data opportunities and the CMTS SHOULD NOT provide any unicast request opportunities. The Request/Transmission Policy MUST also prohibit piggyback requests. This will result in the CM only using unsolicited data grants for upstream transmission.").)

In the event this limitation is construed or applied in such a way that it is found not to be literally present in the Accused Instrumentalities, Rembrandt contends that the Accused Instrumentalities meet the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Instrumentalities are |

| | |
|---|---|
| | insubstantial. The aforementioned features perform substantially the same function (providing CBR data from multiple sources), in substantially the same way (sharing a single TDMA multiplexed data channel between multiple sources of data), to achieve substantially the same result (providing CBR data from multiple sources over a single TDMA multiplexed data channel).<br><br>This claim element may include features that relate to software of the Accused Instrumentalities, and Rembrandt reserves the right to supplement or modify these contentions under Judge Ward's modification to the Local Patent Rules, Rule 3-1(h). |
| coupled to the time-division multiplexed bus | Each CM is coupled to the TDMA bus or upstream channel. (*See, e.g.,* DOCSIS 1.0 and 1.1 at § 3.5.3, and DOCSIS 2.0 at § 5.5.3 ("The upstream channel is characterized by many transmitters (CMs) and one receiver (the CMTS).").)<br><br>In the event this limitation is construed or applied in such a way that it is found not to be literally present in the Accused Instrumentalities, Rembrandt contends that the Accused Instrumentalities meet the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Instrumentalities are insubstantial. The aforementioned features perform substantially the same function (providing access to the time shared communication channel), in substantially the same way (by providing a communication link between each of the synchronous data sources and the time shared communication channel), to achieve substantially the same result (enabling the plurality of synchronous data sources to communicate via the time shared communication channel). |
| for communicating synchronous data in a first portion of the predefined bandwidth; | Each CM that transmits CBR data does so in a portion of the bandwidth of the upstream channel that the CMTS has allotted for synchronous data. This portion of the bandwidth may be designated as a "first portion" of the bandwidth. (*See, e.g.,* DOCSIS 1.0 and 1.1 at § 3.5.3, and DOCSIS 2.0 at § 5.5.3 ("Time in the upstream channel is slotted, providing for Time Division Multiple Access at regulated time ticks. The CMTS provides the time reference and controls the allowed usage for each interval. Intervals may be granted for transmissions by particular CMs …."); *see also* DOCSIS 1.0 at § 6.4.1, DOCSIS 1.1 at § 7.1.1, and DOCSIS 2.0 at § 9.1.1 ("The allocation MAP is a varying-length MAC Management message that is transmitted by the CMTS to define transmission opportunities on the upstream channel. It includes a fixed length header followed by a variable number of information elements (IEs). … Each information element defines the allowed usage for a range of mini-slots.").) |

10

*see also* DOCSIS 1.0 at § 6.4.1.1.5, DOCSIS 1.1 at § 7.1.2.5, and DOCSIS 2.0 at § 9.1.2.5 ("The Short and Long Data Grant IEs provide an opportunity for a CM to transmit one or more upstream PDUs. These IEs are issued either in response to a request from a station, or because of an administrative policy providing some amount of bandwidth to a particular station."); *see also* DOCSIS 1.1 at App. M.1.1 and DOCSIS 2.0 at App. VI.1.1 ("Unsolicited Grant Service is an Upstream Flow Scheduling Service Type that is used for mapping constant bit rate (CBR) traffic onto Service Flows. Since the upstream is scheduled bandwidth, a CBR service can be established by the CMTS scheduling a steady stream of grants. These are referred to as unsolicited because the bandwidth is predetermined, and there are no ongoing requests being made. The classic example of a CBR application of interest is Voice over Internet Protocol (VoIP) packets. Other applications are likely to exist as well."); *see also* DOCSIS 1.1 at § 8.2.1 and DOCSIS 2.0 at § 10.2.1 ("The Unsolicited Grant Service (UGS) is designed to support real-time service flows that generate fixed size data packets on a periodic basis, such as Voice over IP. The service offers fixed size grants on a real-time periodic basis, which eliminate the overhead and latency of CM requests and assure that grants will be available to meet the flow's real-time needs. The CMTS MUST provide fixed size data grants at periodic intervals to the Service Flow. In order for this service to work correctly, the Request/Transmission Policy (refer to Appendix C.2.2.6.3) setting MUST be such that the CM is prohibited from using any contention request or request/data opportunities and the CMTS SHOULD NOT provide any unicast request opportunities. The Request/Transmission Policy MUST also prohibit piggyback requests. This will result in the CM only using unsolicited data grants for upstream transmission.").)

In the event this limitation is construed or applied in such a way that it is found not to be literally present in the Accused Instrumentalities, Rembrandt contends that the Accused Instrumentalities meet the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Instrumentalities are insubstantial. The aforementioned features perform substantially the same function (transmitting CBR data in a portion of the time shared communication channel designated for use by the synchronous data sources), in substantially the same way (dividing the time shared communication channel into time periods and designating certain time periods to be used by the synchronous data sources), to achieve substantially the same result (enabling a portion of a time shared communication channel to be used for CBR data).

11

| | |
|---|---|
| | This claim element may include features that relate to software of the Accused Instrumentalities, and Rembrandt reserves the right to supplement or modify these contentions under Judge Ward's modification to the Local Patent Rules, Rule 3-1(h). |
| a plurality of packet data sources | In the Accused Instrumentalities, a plurality of CMs communicate with a single CMTS. (*See, e.g.,* DOCSIS 1.0 and 1.1 at § 3.5.3, and DOCSIS 2.0 at § 5.5.3 ("The upstream channel is characterized by many transmitters (CMs) and one receiver (the CMTS). Time in the upstream channel is slotted, providing for Time Division Multiple Access at regulated time ticks. The CMTS provides the time reference and controls the allowed usage for each interval. Intervals may be granted for transmissions by particular CMs, or for contention by all CMs. CMs may contend to request transmission time. To a limited extent, CMs may also contend to transmit actual data. In both cases, collisions can occur and retries are used.")) |
| | Certain time slots in the databus between the CMs and the CMTS are designated as Request or Request/Data IEs. The CMs can transmit packet or variable bit rate ("VBR") data in such time-slots, and can contend with other CMs to transmit packet or VBR data in such time slots. Each CM can act as and acts as a packet data source, for example to transmit variable bit-rate data during time-slots that have been allotted to a given CM or to all CMs as Request or Request/Data IEs. (*See, e.g.,* DOCSIS 1.0 at § 6.4.1, DOCSIS 1.1 at § 7.1.1, and DOCSIS 2.0 at § 9.1.1 ("The allocation MAP is a varying-length MAC Management message that is transmitted by the CMTS to define transmission opportunities on the upstream channel. It includes a fixed length header followed by a variable number of information elements (IEs). . . . Each information element defines the allowed usage for a range of mini-slots."); *see also* DOCSIS 1.0 at § 6.4.1.1.1, DOCSIS 1.1 at § 7.1.2.1, and DOCSIS 2.0 at § 9.1.2.1 ("The Request IE provides an upstream interval in which requests MAY be made for bandwidth for upstream data transmission. . . . If broadcast, this is an invitation for CMs to contend for requests."); *see also* DOCSIS 1.0 at § 6.4.1.1.2, DOCSIS 1.1 at § 7.1.2.2, and DOCSIS 2.0 at § 9.1.2.2 ("The Request/Data IE provides an upstream interval in which requests for bandwidth or short data packets MAY be transmitted.")) |
| | In the event this limitation is construed or applied in such a way that it is found not to be literally present in the Accused Instrumentalities, Rembrandt contends that the Accused Instrumentalities meet the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Instrumentalities are |

12

# EXHIBIT A PART 3

| | |
|---|---|
| | insubstantial. The aforementioned features perform substantially the same function (providing - variable bit-rate data from multiple sources), in substantially the same way (sharing a data channel between multiple sources of data), to achieve substantially the same result (providing variable bit-rate data from multiple sources on a single channel).<br><br>This claim element may include features that relate to software of the Accused Instrumentalities, and Rembrandt reserves the right to supplement or modify these contentions under Judge Ward's modification to the Local Patent Rules, Rule 3-1(h). |
| coupled to the time-division multiplexed bus | Each CM is coupled to the TDMA bus or upstream channel. (See, e.g., DOCSIS 1.0 and 1.1 at § 3.5.3, and DOCSIS 2.0 at § 5.5.3 ("The upstream channel is characterized by many transmitters (CMs) and one receiver (the CMTS).").)<br><br>In the event this limitation is construed or applied in such a way that it is found not to be literally present in the Accused Instrumentalities, Rembrandt contends that the Accused Instrumentalities meet the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Instrumentalities are insubstantial. The aforementioned features perform substantially the same function (providing access to the time shared communication channel), in substantially the same way (providing a communication link between each of the packet data sources and the time shared communication channel), to achieve substantially the same result (enabling the multiple packet data sources to communicate via the time shared communication channel). |
| for communicating packet data in a second portion of the predefined bandwidth, | Each CM that transmits variable bit-rate data does so in a portion of the bandwidth of the upstream channel that the CMTS has allotted for packet data, for example in the form of Request or Request/Data IEs that are broadcast to all CMs. This portion of the bandwidth may be designated as a "second portion" of the predefined bandwidth. (See, e.g., DOCSIS 1.0 and 1.1 at § 3.5.3, and DOCSIS 2.0 at § 5.5.3 ("Time in the upstream channel is slotted, providing for Time Division Multiple Access at regulated time ticks. The CMTS provides the time reference and controls the allowed usage for each interval. Intervals may be granted for transmissions by particular CMs, or for contention by all CMs. CMs may contend to request transmission time. To a limited extent, CMs may also contend to transmit actual data. In both cases, collisions can occur and retries are used."); see also DOCSIS 1.0 at § 6.4.1, DOCSIS 1.1 at § 7.1.1, and DOCSIS 2.0 at § 9.1.1 ("The allocation |

13

| | |
|---|---|
| | MAP is a varying-length MAC Management message that is transmitted by the CMTS to define transmission opportunities on the upstream channel. It includes a fixed length header followed by a variable number of information elements (IEs). . . . Each information element defines the allowed usage for a range of mini-slots."); *see also* DOCSIS 1.0 at § 6.4.1.1.1, DOCSIS 1.1 at § 7.1.2.1, and DOCSIS 2.0 at § 9.1.2.1 ("The Request IE provides an upstream interval in which requests MAY be made for bandwidth for upstream data transmission. . . . If broadcast, this is an invitation for CMs to contend for requests."); see also DOCSIS 1.0 at § 6.4.1.1.2, DOCSIS 1.1 at § 7.1.2.2, and DOCSIS 2.0 at § 9.1.2.2 ("The Request/Data IE provides an upstream interval in which requests for bandwidth or short data packets MAY be transmitted.").)

In the event this limitation is construed or applied in such a way that it is found not to be literally present in the Accused Instrumentalities, Rembrandt contends that the Accused Instrumentalities meet the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Instrumentalities are insubstantial. The aforementioned features perform substantially the same function (transmitting variable bit-rate data in a part of the time shared communication channel for use by the variable bit-rate data sources), in substantially the same way (dividing the time shared communication channel into time periods and designating certain time periods, other than those designated for the synchronous data originators, to be used by the variable bit-rate data sources), to achieve substantially the same result (enabling a portion of a time shared communication channel to be used for variable bit-rate data).

This claim element may include features that relate to software of the Accused Instrumentalities, and Rembrandt reserves the right to supplement or modify these contentions under Judge Ward's modification to the Local Patent Rules, Rule 3-1(h). |
| where the plurality of packet data sources share the second portion of the predefined bandwidth for transmitting packet data; and | Each CM that transmits VBR data during a broadcast Request or Request/Data IE shares that portion of the bandwidth of the upstream channel that the CMTS has allotted for packet data with the other CMs on the network. (*See, e.g.,* DOCSIS 1.0 and 1.1 at § 3.5.3, and DOCSIS 2.0 at § 5.5.3 ("The upstream channel is characterized by many transmitters (CMs) and one receiver (the CMTS). Time in the upstream channel is slotted, providing for Time Division Multiple Access at regulated time ticks. The CMTS provides the time reference and controls the allowed usage for each interval. Intervals may be granted for transmissions by particular CMs, or for contention by all CMs. CMs |

| | |
|---|---|
| | may also contend to request transmission time. To a limited extent, CMs may also contend to transmit actual data. In both cases, collisions can occur and retries are used."); *see also* DOCSIS 1.0 at § 6.4.1, DOCSIS 1.1 at § 7.1.1 and DOCSIS 2.0 at § 9.1.1 ("The allocation MAP is a varying-length MAC Management message that is transmitted by the CMTS to define transmission opportunities on the upstream channel. It includes a fixed length header and a variable number of information elements (IEs). . . . Each information element defines the allowed usage for a range of mini-slots."); *see also* DOCSIS 1.0 at § 6.4.1.1.1, DOCSIS 1.1 at § 7.1.2.1, and DOCSIS 2.0 at § 9.1.2.1 ("The Request IE provides an upstream interval in which requests MAY be made for bandwidth for upstream data transmission. . . . If broadcast, this is an invitation for CMs to contend for requests."); *see also* DOCSIS 1.0 at § 6.4.1.1.2, DOCSIS 1.1 at § 7.1.2.2, and DOCSIS 2.0 at § 9.1.2.2 ("The Request/Data IE provides an upstream interval in which requests for bandwidth or short data packets MAY be transmitted.").)

In the event this limitation is construed or applied in such a way that it is found not to be literally present in the Accused Instrumentalities, Rembrandt contends that the Accused Instrumentalities meet the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Instrumentalities are insubstantial. The aforementioned features perform substantially the same function (apportioning the part of the time shared communication channel designated for variable bit-rate data among the packet data sources), in substantially the same way (establishing a procedure to determine which packet data sources may use the part of the time shared communication channel designated for variable bit-rate data at a given time), to achieve substantially the same result (enabling all the packet data sources to use the part of the time shared communication channel for variable bit-rate data).

This claim element may include features that relate to software of the Accused Instrumentalities, and Rembrandt reserves the right to supplement or modify these contentions under Judge Ward's modification to the Local Patent Rules, Rule 3-1(b). |
| a distributed packet manager within each of said packet data sources configured to allocate access to the | Each CM includes software that allocates each CMs access to the TDMA bandwidth that has been allotted to all of the CMs during a Request or Request/Data IE that has been broadcast to all the CMs. This software runs an exponential back-off based contention resolution algorithm. (*See, e.g.*, DOCSIS 1.0 at § 6.4.4, DOCSIS 1.1 at § 7.4 and DOCSIS 2.0 at § 9.4 ("The CMTS controls assignments on the upstream channel through the MAP and determines which mini-slots are subject |

| | | |
|---|---|---|
| | second portion of the predefined bandwidth among said packet data sources. | to collisions. The CMTS MAY allow collisions on either Requests or Data PDUs."); *see also* DOCSIS 1.0 at § 6.4.4, DOCSIS 1.1 at § 7.4.1 and DOCSIS 2.0 at § 9.4.1 ("The mandatory method of contention resolution which MUST be supported is based on a truncated binary exponential back-off, with the initial back-off window and the maximum back-off window controlled by the CMTS. ... The CM MUST randomly select a number within its back-off window. This random value indicates the number of contention transmit opportunities which the CM MUST defer before transmitting. A CM MUST only consider contention transmit opportunities for which this transmission would have been eligible. These are defined by either Request IEs or Request/Data IEs in the MAP. ...After a contention transmission, the CM waits for a Data Grant (Data Grant Pending) or Data Acknowledge in a subsequent MAP. Once either is received, the contention resolution is complete. The CM determines that the contention transmission was lost when it finds a MAP without a Data Grant (Data Grant Pending) or Data Acknowledge for it and with an Ack time more recent than the time of transmission. The CM MUST now increase its back-off window . . . MUST randomly select a number within its new back-off window and repeat the deferring process described above.")) <br><br> In the event this limitation is construed or applied in such a way that it is found not to be literally present in the Accused Instrumentalities, Rembrandt contends that the Accused Instrumentalities meet the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Instrumentalities are insubstantial. The aforementioned features perform substantially the same function (allocating access to the part of the time shared communication channel designated for variable bit-rate data between the packet data sources), in substantially the same way (through a collision avoidance mechanism which resides within each packet data source to reduce packet collisions), to achieve substantially the same result (apportioning access to the part of the time shared communication channel designated for variable bit-rate data between the packet data sources). <br><br> This claim element may include features that relate to software of the Accused Instrumentalities, and Rembrandt reserves the right to supplement or modify these contentions under Judge Ward's modification to the Local Patent Rules, Rule 3-1(h). |
| 8. | The apparatus of claim 7 further including a | Each Accused CMTS acts as a network access manager in that it is coupled to both the TDMA multiplexed cable databus and to a wide area network, and is configured to communicate both the |

16

| | | |
|---|---|---|
| | network access manager coupled to the time-division-multiplexed bus for communicating the synchronous data and the packet data to at least one network facility. | synchronous and packet data transmitted on the databus to the wide area network. (*See, e.g.,* DOCSIS 1.0, 1.1 and 2.0 at Figure 1-1 (showing the CMTS coupled at one end to the cable network and at the other end to a wide area network); *see also* DOCSIS 1.0, 1.1 and 2.0 at Figure 1-2 (showing the CMTS coupled at one end to the cable network and at the other end to both the public switched telephone network ("PSTN") and to a wide area backbone network ("WAN")); *see also* DOCSIS 1.0, 1.1 and 2.0 at § 1.3.1 ("The transmission path over the cable system is realized at the headend by a Cable Modem Termination System (CMTS), and at each customer location by a Cable Modem (CM). At the headend (or hub), the interface to the data-over-cable system is called the Cable Modem Termination System - Network-Side Interface (CMTS-NSI) and is specified in [DOCSIS3]. At the customer locations, the interface is called the cable-modem-to-customer premises-equipment interface (CMCI) and is specified in [DOCSIS4]. The intent is for operators to transparently transfer IP traffic between these interfaces, including but not limited to datagrams, DHCP, ICMP, and IP Group addressing (broadcast and multicast).")) |
| | | In the event this limitation is construed or applied in such a way that it is found not to be literally present in the Accused Instrumentalities, Rembrandt contends that the Accused Instrumentalities meet the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Instrumentalities are insubstantial. The aforementioned features perform substantially the same function (communicating CBR and variable bit-rate data from the time shared communication channel to a communication network), in substantially the same way (coupling the time shared communication channel to the communication network), to achieve substantially the same result (enabling CBR and variable bit-rate data sources to provide CBR and variable bit-rate data to a communication network). |
| 9 | Communications apparatus comprising: | This claim element may include features that relate to software of the Accused Instrumentalities, and Rembrandt reserves the right to supplement or modify these contentions under Judge Ward's modification to the Local Patent Rules, Rule 3-1(h). |
| | | Rembrandt does not express a position at this time as to whether this portion of the preamble of this claim limits the claim's scope. Nevertheless, Rembrandt identifies below aspects of the Accused Instrumentalities that correspond to this portion of the claim preamble. |
| | | Comcast operates a cable network (*i.e.,* the Accused System) that complies with the DOCSIS |

17

| | |
|---|---|
| | specification for providing high speed internet access (*i.e.*, communicating data) over a cable network. (*See, e.g.*, http://www.comcast.com/Benefits/CHSIBenefits.asp); *see also* DOCSIS 1.0, 1.1 and 2.0 at § 1.1 ("This document defines the radio-frequency interface specifications for high-speed data-over-cable systems.") and § 1.3.1 ("The intended service will allow transparent bi-directional transfer of Internet Protocol (IP) traffic, between the cable system headend and customer locations, over an all-coaxial or hybrid-fiber/coax (HFC) cable network.")) |
| | In the event the preamble is construed as limiting and found to be not literally present in the Accused Instrumentalities, Rembrandt contends that that the Accused Instrumentalities meet the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Instrumentalities are insubstantial.  The aforementioned features perform substantially the same function (communicating data), in substantially the same way (transmitting and/or receiving digital signals), to achieve substantially the same result (enabling the exchange of data). |
| a time-division multiplexed bus | Data in the Comcast network is transmitted over a fiber or coax cable that is both time and frequency division multiplexed.  The cable is frequency division multiplexed in that its bandwidth is divided into a plurality of frequency bands or upstream channels.  Each upstream channel is then time division multiplexed or divided into a plurality of time slots.  (*See, e.g.*, DOCSIS 1.0 and 1.1 at § 2.2.1 and DOCSIS 2.0 at § 4.2.1 ("In the upstream direction, the cable system may have a subsplit (5-30 MHz) or extended subsplit (5-42 MHz) passband.  NTSC analog television signals in 6-MHz channels may be present, as well as other signals."); *see also* DOCSIS 1.0 and 1.1 at § 3.5.3, and DOCSIS 2.0 at § 5.5.3 ("Time in the upstream channel is slotted, providing for Time Division Multiple Access at regulated time ticks.  The CMTS provides the time reference and controls the allowed usage for each interval.")) |
| | In the event this limitation is construed or applied in such a way that it is found not to be literally present in the Accused Instrumentalities, Rembrandt contends that the Accused Instrumentalities meet the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Instrumentalities are insubstantial.  The aforementioned features perform substantially the same function (providing time shared access for multiple communication devices in a single frequency band), in substantially the same way (dividing usage of a channel through a time sharing arrangement), to achieve substantially the |

18

| | | the same result (enabling a plurality of devices to communicate over the channel via a time sharing arrangement). |
|---|---|---|
| | having a predefined bandwidth; | Each upstream channel can carry a maximum amount of data, depending on the type of modulation used, in a limited frequency band. (*See, e.g.,* DOCSIS 1.0 and 1.1 at § 2.2.1, and DOCSIS 2.0 at § 4.2.1 ("In the upstream direction, the cable system may have a subsplit (5-30 MHz) or extended subsplit (5-40 or 5-42 MHz) passband. NTSC analog television signals in 6-MHz channels may be present, as well as other signals.")). Moreover, for each upstream channel, the plurality of time slots present, as well as other signals.")). Moreover, for each upstream channel, the plurality of time slots the channel is divided into are counted on a fixed 32-bit counter. (*See, e.g.,* DOCSIS 1.0 at § 6.5.4, DOCSIS 1.1 at § 7.3.4, and DOCSIS 2.0 at § 9.3.4.1.2 ("The MAP counts mini-slots in a 32-bit counter that normally counts to (2^32 - 1) and then wraps back to zero. . . . [M]ini-slot N begins at timestamp reference (N*T*64), where T = 2M is the UCD multiplier that defines the mini-slot (*i.e.,* the number of timeticks per minislot).")) <br><br> In the event this limitation is construed or applied in such a way that it is found not to be literally present in the Accused Instrumentalities, Rembrandt contends that the Accused Instrumentalities meet the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Instrumentalities are insubstantial. The aforementioned features perform substantially the same function (providing a predetermined communications capability), in substantially the same way (by providing a time shared communication channel with a known capacity), to achieve substantially the same result (providing a specific communications capacity via a time shared communication channel). |
| | a plurality of synchronous data sources | In the Accused Instrumentalities, a plurality of CMs communicate with a single CMTS. (*See, e.g.,* DOCSIS 1.0 and 1.1 at § 3.5.3, and DOCSIS 2.0 at § 5.5.3 ("The upstream channel is characterized by many transmitters (CMs) and one receiver (the CMTS). Time in the upstream channel is slotted, providing for Time Division Multiple Access at regulated time ticks. The CMTS provides the time reference and controls the allowed usage for each interval. Intervals may be granted for transmissions by particular CMs . . .").) <br><br> Certain time slots in the databus between the CMs and the CMTS are designated for Unsolicited Grant Service. The CMs may transmit CBR data in time-slots that are designated for Unsolicited Grant Service. Each CM can and does act as a synchronous data source because it is capable of |

19

transmitting CBR data, such as Voice-over-IP (VOIP) data, during time-slots that are designated for Unsolicited Grant Service. (*See, e.g.*, DOCSIS 1.1 at App. M.1.1 and DOCSIS 2.0 at App. VI.1.1 ("Unsolicited Grant Service is an Upstream Flow Scheduling Service Type that is used for mapping constant bit rate (CBR) traffic onto Service Flows. Since the upstream is scheduled bandwidth, a CBR service can be established by the CMTS scheduling a steady stream of grants. These are referred to as unsolicited because the bandwidth is predetermined, and there are no ongoing requests being made. The classic example of a CBR application of interest is Voice over Internet Protocol (VoIP) packets. Other applications are likely to exist as well."); *see also* DOCSIS 1.1 at § 8.2.1 and DOCSIS 2.0 at § 10.2.1 ("The Unsolicited Grant Service (UGS) is designed to support real-time service flows that generate fixed size data packets on a periodic basis, such as Voice over IP. The service offers fixed size grants on a real-time periodic basis, which eliminate the overhead and latency of CM requests and assure that grants will be available to meet the flow's real-time needs. The CMTS MUST provide fixed size data grants at periodic intervals to the Service Flow. In order for this service to work correctly, the Request/Transmission Policy (refer to Appendix C.2.2.6.3) setting MUST be such that the CM is prohibited from using any contention request or request/data opportunities and the CMTS SHOULD NOT provide any unicast request opportunities. The Request/Transmission Policy MUST also prohibit piggyback requests. This will result in the CM only using unsolicited data grants for upstream transmission.").)

In the event this limitation is construed or applied in such a way that it is found not to be literally present in the Accused Instrumentalities, Rembrandt contends that the Accused Instrumentalities meet the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Instrumentalities are insubstantial. The aforementioned features perform substantially the same function (providing CBR data from multiple sources), in substantially the same way (sharing a single TDMA multiplexed data channel between multiple sources of data), to achieve substantially the same result (providing CBR data from multiple sources over a single TDMA multiplexed data channel).

This claim element may include features that relate to software of the Accused Instrumentalities, and Rembrandt reserves the right to supplement or modify these contentions under Judge Ward's modification to the Local Patent Rules, Rule 3-1(h).

| | |
|---|---|
| coupled to the time- | Each CM is coupled to the TDMA bus or upstream channel. (*See, e.g.*, DOCSIS 1.0 and 1.1 at § |

| | |
|---|---|
| division multiplexed bus | 3.5.3, and DOCSIS 2.0 at § 5.5.3 ("The upstream channel is characterized by many transmitters (CMs) and one receiver (the CMTS).").<br><br>In the event this limitation is construed or applied in such a way that it is found not to be literally present in the Accused Instrumentalities, Rembrandt contends that the Accused Instrumentalities meet the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Instrumentalities are insubstantial. The aforementioned features perform substantially the same function (providing access to the time shared communication channel), in substantially the same way (by providing a communication link between each of the synchronous data sources and the time shared communication channel), to achieve substantially the same result (enabling the plurality of synchronous data sources to communicate via the time shared communication channel). |
| for communicating synchronous data in a first portion of the predefined bandwidth; and | Each CM that transmits CBR data does so in a portion of the bandwidth of the upstream channel that the CMTS has allotted for synchronous data. This portion of the bandwidth may be designated as a "first portion" of the bandwidth. (See, e.g.. DOCSIS 1.0 and 1.1 at § 3.5.3, and DOCSIS 2.0 at § 5.5.3 ("Time in the upstream channel is slotted, providing for Time Division Multiple Access at regulated time ticks. The CMTS provides the time reference and controls the allowed usage for each interval. Intervals may be granted for transmissions by particular CMs ..."); see also DOCSIS 1.0 at § 6.4.1, DOCSIS 1.1 at § 7.1.1, and DOCSIS 2.0 at § 9.1.1 ("The allocation MAP is a varying-length MAC Management message that is transmitted by the CMTS to define transmission opportunities on the upstream channel. It includes a fixed length header followed by a variable number of information elements (IEs). ... Each information element defines the allowed usage for a range of mini-slots."); see also DOCSIS 1.0 at § 6.4.1.1.5, DOCSIS 1.1 at § 7.1.2.5, and DOCSIS 2.0 at § 9.1.2.5 ("The Short and Long Data Grant IEs provide an opportunity for a CM to transmit one or more upstream PDUs. These IEs are issued either in response to a request from a station, or because of an administrative policy providing some amount of bandwidth to a particular station."); see also DOCSIS 1.1 at App. M.1.1 and DOCSIS 2.0 at App. VI.1.1 ("Unsolicited Grant Service is an Upstream Flow Scheduling Service Type that is used for mapping constant bit rate (CBR) traffic onto Service Flows. Since the upstream is scheduled bandwidth, a CBR service can be established by the CMTS scheduling a steady stream of grants. These are referred to as unsolicited because the bandwidth is predetermined, and there are no ongoing requests being made. The classic example of a CBR application of interest is Voice over Internet Protocol (VoIP) packets. Other applications are |

21

| | |
|---|---|
| | likely to exist as well.") *see also,* DOCSIS 1.1 at § 8.2.1 and DOCSIS 2.0 at § 10.2.1 ("The Unsolicited Grant Service (UGS) is designed to support real-time service flows that generate fixed size data packets on a periodic basis. The service offers fixed size grants on a real-time periodic basis, which eliminate the overhead and latency of CM requests and assure that grants will be available to meet the flow's real-time needs. The CMTS MUST provide fixed size data grants at periodic intervals to the Service Flow. In order for this service to work correctly, the Request/Transmission Policy (refer to Appendix C.2.2.6.3) setting MUST be such that the CM is prohibited from using any contention request or request/data opportunities and the CMTS SHOULD NOT provide any unicast request opportunities. The Request/Transmission Policy MUST also prohibit piggyback requests. This will result in the CM only using unsolicited data grants for upstream transmission.").)<br><br>In the event this limitation is construed or applied in such a way that it is found not to be literally present in the Accused Instrumentalities, Rembrandt contends that the Accused Instrumentalities meet the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Instrumentalities are insubstantial. The aforementioned features perform substantially the same function (transmitting CBR data in a portion of the time shared communication channel designated for use by the synchronous data sources), in substantially the same way (dividing the time shared communication channel into time periods and designating certain time periods to be used by the synchronous data sources), to achieve substantially the same result (enabling a portion of a time shared communication channel to be used for synchronous data).<br><br>This claim element may include features that relate to software of the Accused Instrumentalities, and Rembrandt reserves the right to supplement or modify these contentions under Judge Ward's modification to the Local Patent Rules, Rule 3-1(h). |
| a plurality of packet data sources | In the Accused Instrumentalities, a plurality of CMs communicate with a single CMTS. *(See, e.g.,* DOCSIS 1.0 and 1.1 at § 3.5.3, and DOCSIS 2.0 at § 5.5.3 ("The upstream channel is characterized by many transmitters (CMs) and one receiver (the CMTS). Time in the upstream channel is slotted, providing for Time Division Multiple Access at regulated time ticks. The CMTS provides the time reference and controls the allowed usage for each interval. Intervals may be granted for transmissions by particular CMs . . .")) |

22

Certain time slots in the databus between the CMs and the CMTS are designated as unicast Request or Request/Data IEs or as Short or Long Data Grant IEs. The CMs can transmit packet or variable bit rate ("VBR") data in time-slots that are so designated. Each CM can and does act as a packet data source because it is capable of transmitting and does transmit variable bit-rate data, for example during time-slots allotted for unicast Request or Request/Data IEs or Short or Long Data Grant IEs. (*See, e.g.*, DOCSIS 1.0 at § 6.4.1, DOCSIS 1.1 at § 7.1.1, and DOCSIS 2.0 at § 9.1.1 ("The allocation MAP is a varying-length MAC Management message that is transmitted by the CMTS to define transmission opportunities on the upstream channel. It includes a fixed length header followed by a variable number of information elements (IEs). . . . Each information element defines the allowed usage for a range of mini-slots."); see also DOCSIS 1.0 at § 6.4.1.1.1, DOCSIS 1.1 at § 7.1.2.1, and DOCSIS 2.0 at § 9.1.2.1 ("The Request IE provides an upstream interval in which requests MAY be made for bandwidth for upstream data transmission. . . . If unicast, this is an invitation for a particular CM to request bandwidth."); see also DOCSIS 1.0 at § 6.4.1.1.2, DOCSIS 1.1 at § 7.1.2.2 and DOCSIS 2.0 at § 9.1.2.2 ("The Request/Data IE provides an upstream interval in which requests for bandwidth or short data packets MAY be transmitted."); see also DOCSIS 1.0 at § 6.4.1.1.5, DOCSIS 1.1 at § 7.1.2.5 and DOCSIS 2.0 at § 9.1.2.5 ("The Short and Long Data Grant IEs provide an opportunity for a CM to transmit one or more upstream PDUs. These IEs are issued either in response to a request from a station, or because of an administrative policy providing some amount of bandwidth to a particular station.").)

In the event this limitation is construed or applied in such a way that it is found not to be literally present in the Accused Instrumentalities, Rembrandt contends that the Accused Instrumentalities meet the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Instrumentalities are insubstantial. The aforementioned features perform substantially the same function (providing variable bit-rate data from multiple sources), in substantially the same way (sharing a data channel between multiple sources of data), to achieve substantially the same result (providing variable bit-rate data from multiple sources on a single channel).

This claim element may include features that relate to software of the Accused Instrumentalities, and Rembrandt reserves the right to supplement or modify these contentions under Judge Ward's modification to the Local Patent Rules, Rule 3-1(h).

23

| | |
|---|---|
| coupled to the time-division multiplexed bus | Each CM is coupled to the TDMA bus or upstream channel. (*See, e.g.,* DOCSIS 1.0 and 1.1 at § 3.5.3, and DOCSIS 2.0 at § 5.5.3 ("The upstream channel is characterized by many transmitters (CMs) and one receiver (the CMTS).")) <br><br> In the event this limitation is construed or applied in such a way that it is found not to be literally present in the Accused Instrumentalities, Rembrandt contends that the Accused Instrumentalities meet the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Instrumentalities are insubstantial. The aforementioned features perform substantially the same function (providing access to the time shared communication channel), in substantially the same way (providing a communication link between each of the packet data sources and the time shared communication channel), to achieve substantially the same result (enabling the multiple packet data sources to communicate via the time shared communication channel). |
| for communicating packet data in a second portion of the predefined bandwidth, | Each CM that transmits variable bit-rate data can do so in a portion of the bandwidth of the upstream channel that the CMTS has allotted for packet data, for example in the form of time slots designated as unicast Request or Request IEs or as Short or Long Data Grant IEs. This portion of the predefined bandwidth may be designated as a "second portion" of the predefined bandwidth. (*See, e.g.,* DOCSIS 1.0 and 1.1 at § 3.5.3, and DOCSIS 2.0 at § 5.5.3 ("Time in the upstream channel is slotted, providing for Time Division Multiple Access at regulated time ticks. The CMTS provides the time reference and controls the allowed usage for each interval. Intervals may be granted for transmissions by particular CMs . . ."); *see also* DOCSIS 1.0 at § 6.4.1, DOCSIS 1.1 at § 7.1.1 and DOCSIS 2.0 at § 9.1.1 ("The allocation MAP is a varying-length MAC Management message that is transmitted by the CMTS to define transmission opportunities on the upstream channel. It includes a fixed length header and a variable number of information elements (IEs). . . . Each information element defines the allowed usage for a range of mini-slots."); *see also* DOCSIS 1.0 at § 6.4.1.1.1, DOCSIS 1.1 at § 7.1.2.1 and DOCSIS 2.0 at § 9.1.2.1 ("The Request IE provides an upstream interval in which requests MAY be made for bandwidth for upstream data transmission. . . . If unicast, this is an invitation for a particular CM to request bandwidth."); *see also* DOCSIS 1.0 at § 6.4.1.1.2, DOCSIS 1.1 at § 7.1.2.2 and DOCSIS 2.0 at § 9.1.2.2 ("The Request/Data IE provides an upstream interval in which requests for bandwidth or short data packets MAY be transmitted."); *see also* DOCSIS 1.0 at § 6.4.1.1.5, DOCSIS 1.1 at § 7.1.2.5 and DOCSIS 2.0 at § 9.1.2.5 ("The Short |

24

| | | |
|---|---|---|
| | | and Long Data Grant IEs provide an opportunity for a CM to transmit one or more upstream PDUs. These IEs are issued either in response to a request from a station, or because of an administrative policy providing some amount of bandwidth to a particular station.").) <br><br> In the event this limitation is construed or applied in such a way that it is found not to be literally present in the Accused Instrumentalities, Rembrandt contends that the Accused Instrumentalities meet the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Instrumentalities are insubstantial. The aforementioned features perform substantially the same function (transmitting variable bit-rate data in a part of the time shared communication channel for use by the variable bit-rate data sources), in substantially the same way (dividing the time shared communication channel into time periods and designating certain time periods, other than those designated for the synchronous data originators, to be used by the variable bit-rate data sources), to achieve substantially the same result (enabling a portion of a time shared communication channel to be used for variable bit-rate data). <br><br> This claim element may include features that relate to software of the Accused Instrumentalities, and Rembrandt reserves the right to supplement or modify these contentions under Judge Ward's modification to the Local Patent Rules, Rule 3-1(h). |
| | where the plurality of packet data sources share the second portion of the predefined bandwidth for transmitting packet data, | Each CM that transmits variable bit-rate data during time slots designated as unicast Request or Request/Data IEs or as Short or Long Data Grant IEs shares the portion of the bandwidth of the upstream channel that the CMTS has allotted for packet data. (*See, e.g.*, DOCSIS 1.0 at § 6.4.1, DOCSIS 1.1 at § 7.1.1, and DOCSIS 2.0 at § 9.1.1 ("The allocation MAP is a varying-length MAC Management message that is transmitted by the CMTS to define transmission opportunities on the upstream channel. It includes a fixed length header followed by a variable number of information elements (IEs). ... Each information element defines the allowed usage for a range of mini-slots."); see also DOCSIS 1.0 at § 6.4.1.1.1, DOCSIS 1.1 at § 7.1.2.1, and DOCSIS 2.0 at § 9.1.2.1 ("The Request IE provides an upstream interval in which requests MAY be made for bandwidth for upstream data transmission. ... If unicast, this is an invitation for a particular CM to request bandwidth."); see also DOCSIS 1.0 at § 6.4.1.1.2, DOCSIS 1.1 at § 7.1.2.2 and DOCSIS 2.0 at § 9.1.2.2 ("The Request/Data IE provides an upstream interval in which requests for bandwidth or short data packets MAY be transmitted."); see also DOCSIS 1.0 at § 6.4.1.1.5, DOCSIS 1.1 at § |

25

| | |
|---|---|
| | 7.1.2.5 and DOCSIS 2.0 at § 9.1.2.5 ("The Short and Long Data Grant IEs provide an opportunity for a CM to transmit one or more upstream PDUs. These IEs are issued either in response to a request from a station, or because of an administrative policy providing some amount of bandwidth to a particular station.").)<br><br>In the event this limitation is construed or applied in such a way that it is found not to be literally present in the Accused Instrumentalities, Rembrandt contends that the Accused Instrumentalities meet the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Instrumentalities are insubstantial. The aforementioned features perform substantially the same function (apportioning the packet data among the packet data sources), in substantially the same way (establishing a procedure to determine which packet data sources may use the part of the time shared communication channel designated for variable bit-rate data at a given time), to achieve substantially the same result (enabling each of the packet data sources to use the part of the time shared communication channel for variable bit-rate data).<br><br>This claim element may include features that relate to software of the Accused Instrumentalities, and Rembrandt reserves the right to supplement or modify these contentions under Judge Ward's modification to the Local Patent Rules, Rule 3-1(h). |
| the second portion of the predefined bandwidth being shared in such a way that only one of the plurality of packet data sources accesses the second portion of the predefined bandwidth at a time. | Each CM that transmits variable bit-rate data during time slots that are designated as a unicast Request or Request/Data IE, or as a Short or Long Data Grant IE, is the only CM that can access that the portion of the bandwidth of the upstream channel that the CMTS has allotted for packet data. (See, e.g., DOCSIS 1.0 and 1.1 at § 3.5.3 and DOCSIS 2.0 at § 5.5.3 ("The upstream channel is characterized by many transmitters (CMs) and one receiver (the CMTS). Time in the upstream channel is slotted, providing for Time Division Multiple Access at regulated time ticks. The CMTS provides the time reference and controls the allowed usage for each interval. Intervals may be granted for transmissions by particular CMs . . . .""))<br><br>In the event this limitation is construed or applied in such a way that it is found not to be literally present in the Accused Instrumentalities, Rembrandt contends that the Accused Instrumentalities meet the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Instrumentalities are |

26

insubstantial. The aforementioned features perform substantially the same function (apportioning the part of the time shared communication channel designated for variable bit-rate data among the packet data sources so that only one source accesses that part of the time shared communication channel at a given time), in substantially the same way (establishing a procedure to determine which packet data source may use the part of the time shared communication channel designated for variable bit-rate data at a given time), to achieve substantially the same result (prevent more than one packet data source from accessing the part of the time shared communication channel designated for variable bit-rate data at the same time).

This claim element may include features that relate to software of the Accused Instrumentalities, and Rembrandt reserves the right to supplement or modify these contentions under Judge Ward's modification to the Local Patent Rules, Rule 3-1(h).

| 10 | The apparatus of claim 7 wherein each one of the plurality of packet data sources includes interface circuitry to the time-division multiplexed bus for synchronizing packet data to the time-division multiplexed bus. | Each CM includes interface circuitry (including, e.g., logic and/or time-slot counters) for synchronizing its transmission of packet data on the upstream channel. This interface circuitry may control, for example, the timing of data transmissions from the CM to the upstream channel. (*See, e.g.*, DOCSIS 1.0 at § 6.5, DOCSIS 1.1 at § 7.3, DOCSIS 2.0 at § 9.3 ("[T]he cable modem MUST be able to time its transmissions precisely to arrive at the CMTS at the start of the assigned mini-slot. To accomplish this, two pieces of information are needed by each cable modem: a global timing reference sent downstream from the CMTS to all cable modems; [and] a timing offset, calculated during a ranging process, for each cable modem."); *see also* DOCSIS 1.0 and 1.1 at § 4.2.7, DOCSIS 2.0 at § 6.2.19.1 ("Ranging Offset is the delay correction applied by the CM to the CMTS Upstream Frame Time derived at the CM. It is an advancement equal to roughly the round-trip delay of the CM from the CMTS, and is needed to synchronize upstream transmissions in the TDMA scheme. . . . The CM MUST implement the correction with resolution of at most 1 symbol duration.").)<br><br>In the event this limitation is construed or applied in such a way that it is found not to be literally present in the Accused Instrumentalities, Rembrandt contends that the Accused Instrumentalities meet the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Instrumentalities are insubstantial. The aforementioned features perform substantially the same function (matching the transmission of variable bit-rate data to the time periods of the time shared communication channel to which the variable bit-rate data is assigned), in substantially the same way (providing a procedure |

27

| | | through which the time periods of the time shared communication channel are tracked), to achieve substantially the same result (ensuring that variable bit-rate data is transmitted during the correct time periods of the time shared communication channel).

This claim element may include features that relate to software of the Accused Instrumentalities, and Rembrandt reserves the right to supplement or modify these contentions under Judge Ward's modification to the Local Patent Rules, Rule 3-1(b). |
|---|---|---|
| 11 | Communications apparatus comprising: | Rembrandt does not express a position at this time as to whether the preamble of this claim limits the claim's scope.  Nevertheless, Rembrandt identifies below aspects of the Accused Instrumentalities that correspond to the claim preamble.

Comcast operates a cable network (the Accused System) that complies with the DOCSIS 1.0, 1.1 and/or 2.0 specifications for providing high speed internet access (*i.e.*, communicating data) over a cable network.  (*See, e.g.*, http://www.comcast.com/Benefits/CHSIBenefits.asp; *see also* DOCSIS 1.0, 1.1 and 2.0 at § 1.1 ("This document defines the radio–frequency interface specifications for high-speed data-over-cable systems.") and § 1.3.1("The intended service will allow transparent bi-directional transfer of Internet Protocol (IP) traffic, between the cable system headend and customer locations, over an all-coaxial or hybrid-fiber coax (HFC) cable network.").

In the event the preamble is construed as limiting and found to be not literally present in the Accused Instrumentalities, Rembrandt contends that that the Accused Instrumentalities meet the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Instrumentalities are insubstantial.  The aforementioned features perform substantially the same function (communicating data), in substantially the same way (transmitting and/or receiving digital signals), to achieve substantially the same result (enabling the exchange of data), as the recited limitation. |
| | a time-division multiplexed bus | Data in the Comcast network is transmitted over a fiber or coax cable that is both time and frequency division multiplexed.  The cable is frequency division multiplexed in that its bandwidth is divided into a plurality of frequency bands or upstream channels.  Each upstream channel is then time division multiplexed or divided into a plurality of time slots.  (*See, e.g.*, DOCSIS 1.0 and 1.1 at § 2.2.1 and DOCSIS 2.0 at § 4.2.1 ("In the upstream direction, the cable system may have a subsplit |

28

| | |
|---|---|
| | (5-30 MHz) or extended subsplit (5-42 MHz) passband. NTSC analog television signals in 6-MHz channels may be present, as well as other signals."); *see also* DOCSIS 1.0 and 1.1 at § 3.5.3, and DOCSIS 2.0 at § 5.3.3 ("Time in the upstream channel is slotted, providing for Time Division Multiple Access at regulated time ticks. The CMTS provides the time reference and controls the allowed usage for each interval.").) <br><br> In the event this limitation is construed or applied in such a way that it is found not to be literally present in the Accused Instrumentalities, Rembrandt contends that the Accused Instrumentalities meet the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Instrumentalities are insubstantial. The aforementioned features perform substantially the same function (providing time shared access for multiple communication devices in a single frequency band), in substantially the same way (dividing usage of a channel through a time sharing arrangement), to achieve substantially the same result (enabling a plurality of devices to communicate over the channel in a time sharing arrangement). |
| having a predefined bandwidth; | Each upstream channel can carry a maximum amount of data, depending on the type of modulation used, in a limited frequency band. (*See, e.g.*, DOCSIS 1.0 and 1.1 at § 2.2.1, and DOCSIS 2.0 at § 4.2.1 ("In the upstream direction, the cable system may have a subsplit (5-30 MHz) or extended subsplit (5-40 or 5-42 MHz) passband. NTSC analog television signals in 6-MHz channels may be present, as well as other signals.")). Moreover, for each upstream channel, the plurality of time slots the channel is divided into are counted on a fixed 32-bit counter. (*See, e.g.*, DOCSIS 1.0 at § 6.5.4, DOCSIS 1.1 at § 7.3.4, and DOCSIS 2.0 at § 9.3.4.1.2 ("The MAP counts mini-slots in a 32-bit counter that normally counts to ($2^{32}$ - 1) and then wraps back to zero. . . . [M]ini-slot N begins at timestamp reference (N*T*64), where T = 2M is the UCD multiplier that defines the mini-slot (*i.e.*, the number of timeticks per minislot).")) <br><br> In the event this limitation is construed or applied in such a way that it is found not to be literally present in the Accused Instrumentalities, Rembrandt contends that the Accused Instrumentalities meet the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Instrumentalities are insubstantial. The aforementioned features perform substantially the same function (providing a predetermined communications capability), in substantially the same way (by providing a time |

29

| | | shared communication channel with a known capacity), to achieve substantially the same result (providing a specific communications capacity via a time shared communications channel). |
|---|---|---|
| | a plurality of synchronous data sources | In the Accused Instrumentalities, a plurality of CMs communicate with a single CMTS. (*See, e.g.,* DOCSIS 1.0 and 1.1 at § 3.5.3, and DOCSIS 2.0 at § 5.5.3 ("The upstream channel is characterized by many transmitters (CMs) and one receiver (the CMTS). Time in the upstream channel is slotted, providing for Time Division Multiple Access at regulated time ticks. The CMTS provides the time reference and controls the allowed usage for each interval. Intervals may be granted for transmissions by particular CMs …").)

Certain time slots in the databus between the CMs and the CMTS are designated for Unsolicited Grant Service. The CMs may transmit CBR data in time-slots that are designated for Unsolicited Grant Service. Each CM can and does act as a synchronous data source because it is capable of transmitting CBR data, such as Voice-over-IP (VOIP) data, during time-slots that are designated for Unsolicited Grant Service. (*See, e.g.,* DOCSIS 1.1 at App. M.1.1 and DOCSIS 2.0 at App. VI.1.1 ("Unsolicited Grant Service is an Upstream Flow Scheduling Service Type that is used for mapping constant bit rate (CBR) traffic onto Service Flows. Since the upstream is scheduled bandwidth, a CBR service can be established by the CMTS scheduling a steady stream of grants. These are referred to as unsolicited because the bandwidth is predetermined, and there are no ongoing requests being made. The classic example of a CBR application of interest is Voice over Internet Protocol (VoIP) packets. Other applications are likely to exist as well."); *see also* DOCSIS 1.1 at § 8.2.1 and DOCSIS 2.0 at § 10.2.1 ("The Unsolicited Grant Service (UGS) is designed to support real-time service flows that generate fixed size data packets on a periodic basis, such as Voice-over-IP. The service offers fixed size grants on a real-time periodic basis, which eliminate the overhead and latency of CM requests and assure that grants will be available to meet the flow's real-time needs. The CMTS MUST provide fixed size data grants at periodic intervals to the Service Flow. In order for this service to work correctly, the Request/Transmission Policy (refer to Appendix C.2.2.6.3) setting MUST be such that the CM is prohibited from using any contention request or request/data opportunities and the CMTS SHOULD NOT provide any unicast request opportunities. The Request/Transmission Policy MUST also prohibit piggyback requests. This will result in the CM only using unsolicited data grants for upstream transmission.").)

In the event this limitation is construed or applied in such a way that it is found not to be literally |

30

| | |
|---|---|
| | present in the Accused Instrumentalities, Rembrandt contends that the Accused Instrumentalities meet the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Instrumentalities are insubstantial. The aforementioned features perform substantially the same function (providing CBR data from multiple sources), in substantially the same way (sharing a data channel between multiple sources of data), to achieve substantially the same result (providing CBR data from multiple sources). |
| | This claim element may include features that relate to software of the Accused Instrumentalities, and Rembrandt reserves the right to supplement or modify these contentions under Judge Ward's modification to the Local Patent Rules, Rule 3-1(h). |
| coupled to the time-division multiplexed bus | Each CM is coupled to the TDMA bus or upstream channel. (*See, e.g.,* DOCSIS 1.0 and 1.1 at § 3.5.3, and DOCSIS 2.0 at § 5.5.3 ("The upstream channel is characterized by many transmitters (CMs) and one receiver (the CMTS).").) |
| | In the event this limitation is construed or applied in such a way that it is found not to be literally present in the Accused Instrumentalities, Rembrandt contends that the Accused Instrumentalities meet the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Instrumentalities are insubstantial. The aforementioned features perform substantially the same function (providing access to the time shared communication channel), in substantially the same way (providing a communication link between each of the synchronous data sources and the time shared communication channel), to achieve substantially the same result (enabling the plurality of synchronous data sources to communicate via the time shared communication channel). |
| for communicating synchronous data in a first portion of the predefined bandwidth; | Each CM that transmits CBR data does so in a portion of the bandwidth of the upstream channel that the CMTS has allotted for synchronous data. This portion of the predefined bandwidth may be designated as a "first portion" of the bandwidth. (*See, e.g.,* DOCSIS 1.0 and 1.1 at § 3.5.3, and DOCSIS 2.0 at § 5.5.3 ("Time in the upstream channel is slotted, providing for Time Division Multiple Access at regulated time ticks. The CMTS provides the time reference and controls the allowed usage for each interval. Intervals may be granted for transmissions by particular CMs…."); *see also* DOCSIS 1.0 at § 6.4.1, DOCSIS 1.1 at § 7.1.1, and DOCSIS 2.0 at § 9.1.1 ("The allocation |

31

MAP is a varying-length MAC Management message that is transmitted by the CMTS to define transmission opportunities on the upstream channel. It includes a fixed length header followed by a variable number of information elements (IEs). . . . Each information element defines the allowed usage for a range of mini-slots."); *see also* DOCSIS 1.0 at § 6.4.1.1.5, DOCSIS 1.1 at § 7.1.2.5, and DOCSIS 2.0 at § 9.1.2.5 ("The Short and Long Data Grant IEs provide an opportunity for a CM to transmit one or more upstream PDUs. These IEs are issued either in response to a request from a station, or because of an administrative policy providing some amount of bandwidth to a particular station."); *see also* DOCSIS 1.1 at App. M.1.1 and DOCSIS 2.0 at App. VI.1.1 ("Unsolicited Grant Service is an Upstream Flow Scheduling Service Type that is used for mapping constant bit rate (CBR) traffic onto Service Flows. Since the upstream is scheduled bandwidth, a CBR service can be established by the CMTS scheduling a steady stream of grants. These are referred to as unsolicited because the bandwidth is predetermined, and there are no ongoing requests being made. The classic example of a CBR application of interest is Voice over Internet Protocol (VoIP) packets. Other applications are likely to exist as well."); *see also* DOCSIS 1.1 at § 8.2.1 and DOCSIS 2.0 at § 10.2.1 ("The Unsolicited Grant Service (UGS) is designed to support real-time service flows that generate fixed size data packets on a periodic basis, such as Voice over IP. The service offers fixed size grants on a real-time periodic basis, which eliminate the overhead and latency of CM requests and assure that grants will be available to meet the flow's real-time needs. The CMTS MUST provide fixed size data grants at periodic intervals to the Service Flow. In order for this service to work correctly, the Request/Transmission Policy (refer to Appendix C.2.2.6.3) setting MUST be such that the CM is prohibited from using any contention request or request/data opportunities and the CMTS SHOULD NOT provide any unicast request opportunities. The Request/Transmission Policy MUST also prohibit piggyback requests. This will result in the CM only using unsolicited data grants for upstream transmission.").

In the event this limitation is construed or applied in such a way that it is found not to be literally present in the Accused Instrumentalities, Rembrandt contends that the Accused Instrumentalities meet the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Instrumentalities are insubstantial. The aforementioned features perform substantially the same function (transmitting CBR data in a portion of the time shared communication channel designated for use by the synchronous data sources), in substantially the same way (dividing the time shared communication channel into time periods and designating certain time periods to be used by the synchronous data

| | | |
|---|---|---|
| | | sources), to achieve substantially the same result (enabling a portion of a time shared communication channel to be used for synchronous data). |
| | | This claim element may include features that relate to software of the Accused Instrumentalities, and Rembrandt reserves the right to supplement or modify these contentions under Judge Ward's modification to the Local Patent Rules, Rule 3-1(b). |
| | a plurality of packet data sources | In the Accused Instrumentalities, a plurality of CMs communicate with a single CMTS. C (*See, e.g.,* DOCSIS 1.0 and 1.1 at § 3.5.3, and DOCSIS 2.0 at § 5.5.3 ("The upstream channel is characterized by many transmitters (CMs) and one receiver (the CMTS). Time in the upstream channel is slotted, providing for Time Division Multiple Access at regulated time ticks. The CMTS provides the time reference and controls the allowed usage for each interval. Intervals may be granted for transmissions by particular CMs, or for contention by all CMs. CMs may contend to request transmission time. To a limited extent, CMs may also contend to transmit actual data. In both cases, collisions can occur and retries are used.")). Certain time slots in the databus between the CMs and the CMTS are designated as Request or Request/Data IEs or as Short or Long Data Grant IEs. The CMs can transmit packet or variable bit rate ("VBR") data in time-slots that are so designated. Each CM can and does act as a packet data source because it is capable of transmitting variable bit-rate data, for example during time-slots allotted for Request or Request/Data IEs or Short or Long Data Grant IEs. (*See, e.g.,* DOCSIS 1.0 at § 6.4.1, DOCSIS 1.1 at § 7.1.1, and DOCSIS 2.0 at § 9.1.1 ("The allocation MAP is a varying-length MAC Management message that is transmission by the CMTS to define transmission opportunities on the upstream channel. It includes a fixed length header followed by a variable number of information elements (IEs). ... Each information element defines the allowed usage for a range of mini-slots."); see also DOCSIS 1.0 at § 6.4.1.1.1, DOCSIS 1.1 at § 7.1.2.1, and DOCSIS 2.0 at § 9.1.2.1 ("The Request IE provides an upstream interval in which requests MAY be made for bandwidth for upstream data transmission. ... If broadcast, this is an invitation for CMs to contend for requests. ... If unicast, this is an invitation for a particular CM to request bandwidth."); see also DOCSIS 1.0 at § 6.4.1.1.2, DOCSIS 1.1 at § 7.1.2.2 and DOCSIS 2.0 at § 9.1.2.2 ("The Request/Data IE provides an upstream interval in which requests for bandwidth or short data packets MAY be transmitted."); see also DOCSIS 1.0 at § 6.4.1.1.5, DOCSIS 1.1 at § 7.1.2.5 and DOCSIS 2.0 at § 9.1.2.5 ("The Short and Long Data Grant IEs provide an opportunity for a CM to transmit |

33

| | | one or more upstream PDUs. These IEs are issued either in response to a request from a station, or because of an administrative policy providing some amount of bandwidth to a particular station.").) |
|---|---|---|
| | | In the event this limitation is construed or applied in such a way that it is found not to be literally present in the Accused Instrumentalities, Rembrandt contends that the Accused Instrumentalities meet the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Instrumentalities are insubstantial. The aforementioned features perform substantially the same function (providing variable bit-rate data from multiple sources), in substantially the same way (sharing a data channel between multiple sources of data), to achieve substantially the same result (providing variable bit-rate data from multiple sources on a single channel). |
| | | This claim element may include features that relate to software of the Accused Instrumentalities, and Rembrandt reserves the right to supplement or modify these contentions under Judge Ward's modification to the Local Patent Rules, Rule 3-1(h). |
| coupled to the time-division multiplexed bus | | Each CM is coupled to the TDMA bus or upstream channel. (*See, e.g.*, DOCSIS 1.0 and 1.1 at § 3.5.3, and DOCSIS 2.0 at § 5.5.3 ("The upstream channel is characterized by many transmitters (CMs) and one receiver (the CMTS).").) |
| | | In the event this limitation is construed or applied in such a way that it is found not to be literally present in the Accused Instrumentalities, Rembrandt contends that the Accused Instrumentalities meet the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Instrumentalities are insubstantial. The aforementioned features perform substantially the same function (providing access to the time shared communication channel), in substantially the same way (providing a communication link between each of the packet data sources and the time shared communication channel), to achieve substantially the same result (enabling the multiple packet data sources to communicate via the time shared communication channel). |
| for communicating packet data in a second portion of the | | Each CM that transmits variable bit-rate data does so in a portion of the bandwidth of the upstream channel that the CMTS has allotted for packet data, for example, in the form of Request or Request/Data IEs and Short and Long Data Grant IEs issued in response to requests from CMs. |

34

| | |
|---|---|
| | for variable bit-rate data). |
| | This claim element may include features that relate to software of the Accused Instrumentalities, and Rembrandt reserves the right to supplement or modify these contentions under Judge Ward's modification to the Local Patent Rules, Rule 3-1(h). |
| where the plurality of packet data sources share the second portion of the predefined bandwidth for transmitting packet data, | Each CM that transmits variable bit-rate data during time slots designated as Request or Request/Data IEs or as Short or Long Data Grant IEs shares that portion of the bandwidth of the upstream channel that the CMTS has allotted for packet data. (*See, e.g.,* DOCSIS 1.0 at § 6.4.1, DOCSIS 1.1 at § 7.1.1 and DOCSIS 2.0 at § 9.1.1 ("The allocation MAP is a varying-length MAC Management message that is transmitted by the CMTS to define transmission opportunities on the upstream channel. It includes a fixed length header and a variable number of information elements (IEs). . . . Each information element defines the allowed usage for a range of mini-slots."); *see also* DOCSIS 1.0 at § 6.4.1.1.1, DOCSIS 1.1 at § 7.1.2.1 and DOCSIS 2.0 at § 9.1.2.1 ("The Request IE provides an upstream interval in which requests MAY be made for bandwidth for upstream data transmission. . . . If broadcast, this is an invitation for CMs to contend for requests. . . . If unicast, this is an invitation for a particular CM to request bandwidth."); *see also* DOCSIS 1.0 at § 6.4.1.1.2, DOCSIS 1.1 at § 7.1.2.2 and DOCSIS 2.0 at § 9.1.2.2 ("The Request/Data IE provides an upstream interval in which requests for bandwidth or short data packets MAY be transmitted."); *see also* DOCSIS 1.0 at § 6.4.1.1.5, DOCSIS 1.1 at § 7.1.2.5 and DOCSIS 2.0 at § 9.1.2.5 ("The Short and Long Data Grant IEs provide an opportunity for a CM to transmit one or more upstream PDUs. These IEs are issued either in response to a request from a station, or because of an administrative policy providing some amount of bandwidth to a particular station.").)

In the event this limitation is construed or applied in such a way that it is found not to be literally present in the Accused Instrumentalities, Rembrandt contends that the Accused Instrumentalities meet the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Instrumentalities are insubstantial. The aforementioned features perform substantially the same function (apportioning the part of the time shared communication channel designated for variable bit-rate data among the packet data sources), in substantially the same way (establishing a procedure to determine which packet data sources may use the part of the time shared communication channel designated for variable bit-rate data at a given time), to achieve substantially the same result (enabling each of the packet data |

| predefined bandwidth, | Either the portion allotted for Request or Request/Data IEs or the portion allotted to Short and Long Data Grant IEs, or both collectively, may be designated as a "second portion" of the bandwidth. (*See, e.g.*, DOCSIS 1.0 and 1.1 at § 3.5.3, and DOCSIS 2.0 at § 5.5.3 ("Time in the upstream channel is slotted, providing for Time Division Multiple Access at regulated time ticks. The CMTS provides the time reference and controls the allowed usage for each interval. Intervals may be granted for transmissions by particular CMs, or for contention by all CMs. CMs may contend to request transmission time. To a limited extent, CMs may also contend to transmit actual data. In both cases, collisions can occur and retries are used."); *see also* DOCSIS 1.0 at § 6.4.1, DOCSIS 1.1 at § 7.1.1, and DOCSIS 2.0 at § 9.1.1 ("The allocation MAP is a varying-length MAC Management message that is transmitted by the CMTS to define transmission opportunities on the upstream channel. It includes a fixed length header and a variable number of information elements (IEs). . . . Each information element defines the allowed usage for a range of mini-slots."); *see also* DOCSIS 1.0 at § 6.4.1.1.1, DOCSIS 1.1 at § 7.1.2.1 and DOCSIS 2.0 at § 9.1.2.1 ("The Request IE provides an upstream interval in which requests MAY be made for upstream data transmission. . . . If broadcast, this is an invitation for CMs to contend for requests. . . . If unicast, this is an invitation for a particular CM to request bandwidth."); *see also* DOCSIS 1.0 at § 6.4.1.1.2, DOCSIS 1.1 at § 7.1.2.2 and DOCSIS 2.0 at § 9.1.2.2 ("The Request/Data IE provides an upstream interval in which requests for bandwidth or short data packets MAY be transmitted."); *see also* DOCSIS 1.0 at § 6.4.1.1.5, DOCSIS 1.1 at § 7.1.2.5 and DOCSIS 2.0 at § 9.1.2.5 ("The Short and Long Data Grant IEs provide an opportunity for a CM to transmit one or more upstream PDUs. These IEs are issued either in response to a request from a station, or because of an administrative policy providing some amount of bandwidth to a particular station.").)

In the event this limitation is construed or applied in such a way that it is found not to be literally present in the Accused Instrumentalities, Rembrandt contends that the Accused Instrumentalities meet the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Instrumentalities are insubstantial. The aforementioned features perform substantially the same function (transmitting variable bit-rate data in a part of the time shared communication channel for use by the variable bit-rate data sources), in substantially the same way (dividing the time shared communication channel into time periods and designating certain time periods, other than those designated for the synchronous data originators, to be used by the variable bit-rate data sources), to achieve substantially the same result (enabling a portion of a time shared communication channel to be used |

35

| | |
|---|---|
| | sources to use the part of the time shared communication channel for variable bit-rate data).<br><br>This claim element may include features that relate to software of the Accused Instrumentalities, and Rembrandt reserves the right to supplement or modify these contentions under Judge Ward's modification to the Local Patent Rules, Rule 3-1(h). |
| wherein each one of the plurality of packet data sources includes interface circuitry to the time-division multiplexed bus for synchronizing packet data to the time-division multiplexed bus, and | Each CM includes interface circuitry (including, e.g., logic and/or time-slot counters) for synchronizing its transmission of packet data on the upstream channel. This interface circuitry may control, for example, the timing of data transmissions from the CM to the upstream channel. *See, e.g.*, DOCSIS 1.0 at § 6.5.1, DOCSIS 1.1 at § 7.3 and DOCSIS 2.0 at § 9.3 ("[T]he cable modem MUST be able to time its transmissions precisely to arrive at the CMTS at the start of the assigned mini-slot. To accomplish this, two pieces of information are needed by each cable modem: a global timing reference sent downstream from the CMTS to all cable modems; [and] a timing offset, calculated during a ranging process, for each cable modem."); *see also* DOCSIS 1.0 and 1.0 at § 4.2.7, and DOCSIS 2.0 at § 6.2.19.1 ("Ranging Offset is the delay correction applied by the CM to the CMTS Upstream Frame Time derived at the CM. It is an advancement equal to roughly the round-trip delay of the CM from the CMTS, and is needed to synchronize upstream transmissions in the TDMA scheme. . . . The CM MUST implement the correction with resolution of at most 1 symbol duration.").<br><br>In the event this limitation is construed or applied in such a way that it is found not to be literally present in the Accused Instrumentalities, Rembrandt contends that the Accused Instrumentalities meet the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Instrumentalities are insubstantial. The aforementioned features perform substantially the same function (matching the transmission of variable bit-rate data to the time periods of the time shared communication channel to which the variable bit-rate data is assigned), in substantially the same way (providing a procedure through which the time periods of the time shared communication channel are tracked), to achieve substantially the same result (ensuring that variable bit-rate data is transmitted during the correct time periods of the time shared communication channel).<br><br>This claim element may include features that relate to software of the Accused Instrumentalities, and Rembrandt reserves the right to supplement or modify these contentions under Judge Ward's |

37

| | | modification to the Local Patent Rules, Rule 3-1(h). |
|---|---|---|
| | the interface circuitry includes a counter for counting time-slots representing the second portion of the predefined bandwidth. | The interface circuitry in each CM includes a counter for counting mini-slots on the upstream channel to synchronize its transmission of packet data. The counter allows the CM to transmit data at a selected time slot that is counted by a corresponding counter in the CMTS. (*See, e.g.*, DOCSIS 1.0 at § 6.4.1, DOCSIS 1.1 at § 7.1.1, and DOCSIS 2.0 at § 9.1.1 ("Note that it should be understood by both CM and CMTS that the lower (26-M) bits of the alloc start and ack times MUST be used as the effective MAP start and ack times where M is given in Section 6.3.3. The relationship between the Alloc Start/Ack time counters and the timestamp counter is described in Section 7.3.4."); *see also* DOCSIS 1.0 at § 6.5.4 DOCSIS 1.1 at § 7.3.4, and DOCSIS 2.0 at § 9.3.4.1.2 ("The MAP counts mini-slots in a 32-bit counter that normally counts to $(2^{32} - 1)$ and then wraps back to zero. The least-significant bits (i.e., bit 0 to bit 25-M) of the mini-slot counter MUST match the most-significant bits (i.e., bit 6+M to bit 31) of the SYNC timestamp counter. That is, mini-slot N begins at timestamp reference (N*T*64), where T = 2M is the UCD multiplier that defines the mini-slot (i.e., the number of timeticks per minislot). Note: The unused upper bits of the 32-bit mini-slot counter (i.e., bit 26-M to bit 31) are not needed by the CM and MAY be ignored."). <br><br> In the event this limitation is construed or applied in such a way that it is found not to be literally present in the Accused Instrumentalities, Rembrandt contends that the Accused Instrumentalities meet the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Instrumentalities are insubstantial. The aforementioned features perform substantially the same function (tracking the time periods of a selected portion of the time shared communication channel), in substantially the same way (enumerating the time periods of the selected portion of time shared communication channel), to achieve substantially the same result (transmitting data in appropriate time periods of the selected portion of time shared communication channel). <br><br> This claim element may include features that relate to software of the Accused Instrumentalities, and Rembrandt reserves the right to supplement or modify these contentions under Judge Ward's modification to the Local Patent Rules, Rule 3-1(h). |
| 15 | A method for use in a data communications | Rembrandt does not express a position at this time as to whether this portion of the preamble of this claim limits the claim's scope. Nevertheless, Rembrandt identifies below aspects of the Accused |

38

| | |
|---|---|
| apparatus | Method that correspond to this portion of the claim preamble.

Comcast operates a cable network (the Accused System) that utilizes a method or methods that comply with the DOCSIS 1.0, 1.1 or 2.0 specifications for providing high speed internet access (*i.e.*, data communications) over a cable network. (*See, e.g.*, *http://www.comcast.com/Benefits/CHSIBenefits.asp*; *see also* DOCSIS 1.0, 1.1 and 2.0 at § 1.1 ("This document defines the radio-frequency interface specifications for high-speed data-over-cable systems.") and § 1.3.1 ("The intended service will allow transparent bi-directional transfer of Internet Protocol (IP) traffic, between the cable system headend and customer locations, over an all-coaxial or hybrid-fiber coax (HFC) cable network."))

In the event this portion of the preamble is construed as limiting and found to be not literally present in the Accused Method, Rembrandt contends that that the Accused Method meets the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Instrumentalities are insubstantial. The aforementioned features perform substantially the same function (communicating data), in substantially the same way (transmitting and/or receiving digital signals), to achieve substantially the same result (enabling the exchange of data), as the recited limitation. |
| for transmitting packet data on a time-division multiplexed bus, the method comprising the steps of: | Rembrandt does not express a position at this time as to whether this portion of the preamble of this claim limits the claim's scope. Nevertheless, Rembrandt identifies below aspects of the Accused Method that correspond to this portion of the claim preamble.

The methods used in the Comcast network are for transmitting data over a fiber or coax cable that is both time and frequency division multiplexed. The cable is frequency division multiplexed in that its bandwidth is divided into a plurality of frequency bands or upstream channels. Each upstream channel is then time division multiplexed or divided into a plurality of time slots. (*See, e.g.*, DOCSIS 1.0 and 1.1 at § 2.2.1 and DOCSIS 2.0 at § 4.2.1 ("In the upstream direction, the cable system may have a subsplit (5-30 MHz) or extended subsplit (5-42 MHz) passband. NTSC analog television signals in 6-MHz channels may be present, as well as other signals."); *see also* DOCSIS 1.0 and 1.1 at § 3.5.3, and DOCSIS 2.0 at § 5.5.3 ("Time in the upstream channel is slotted, providing for Time Division Multiple Access at regulated time ticks. The CMTS provides the time reference and controls the allowed usage for each interval.").) |

39

| | |
|---|---|
| | In the event this portion of the preamble is construed as limiting and found to be not literally present in the Accused Method, Rembrandt contends that that the Accused Method meets the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Instrumentalities are insubstantial. The aforementioned features perform substantially the same function (providing time shared access for multiple communication devices in a single frequency band), in substantially the same way (dividing usage of a channel's frequency band through a time sharing arrangement), to achieve substantially the same result (enabling a plurality of devices to communicate over the channel in a time sharing arrangement). |
| | This claim element may include features that relate to software of the Accused Instrumentalities, and Rembrandt reserves the right to supplement or modify these contentions under Judge Ward's modification to the Local Patent Rules, Rule 3-1(b). |
| coupling a plurality of packet data sources to the time-division multiplexed bus; | In the Accused Instrumentalities, a plurality of CMs are coupled to the TDMA bus or upstream channel. (*See, e.g.,* DOCSIS 1.0 and 1.1 at § 3.5.3, and DOCSIS 2.0 at § 5.5.3 ("The upstream channel is characterized by many transmitters (CMs) and one receiver (the CMTS). Time in the upstream channel is slotted, providing for Time Division Multiple Access at regulated time ticks.").) |
| | Each CM can act as and acts as a packet data source since each CM is capable of transmitting variable bit-rate data over the TDMA bus. (*See, e.g.,* DOCSIS 1.0 at § 6.4.1.1.1, DOCSIS 1.1 at § 7.1.2.1, and DOCSIS 2.0 at § 9.1.2.1 ("The Request IE provides an upstream interval in which requests MAY be made for bandwidth for upstream data transmission. . . . If broadcast, this is an invitation for CMs to contend for requests."); see also DOCSIS 1.0 at § 6.4.1.1.2, DOCSIS 1.1 at § 7.1.2.2 and DOCSIS 2.0 at § 9.1.2.2 ("The Request/Data IE provides an upstream interval in which requests for bandwidth or short data packets MAY be transmitted.").) |
| | In the event this limitation is construed or applied in such a way that it is found not to be literally present in the Accused Method, Rembrandt contends that the Accused Method meets the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Instrumentalities are insubstantial. The aforementioned features perform substantially the same function (providing access to the time shared |

40

| | |
|---|---|
| | communication channel), in substantially the same way (providing a communication link between each of the variable bit-rate data sources and the time shared communication channel), to achieve substantially the same result (enabling the variable bit-rate data sources to communicate via the time shared communication channel). |
| allocating a portion of the bandwidth of the time-division multiplexed bus to the plurality of packet data sources | In the Accused Method, the CMTS allocates some of the time slots in each upstream channel for the transmission of packet or variable bit-rate data, for example, during time slots designated as Request or Request/Data IEs. (*See, e.g.,* DOCSIS 1.0 at § 6.4.1, DOCSIS 1.1 at § 7.1.1, and DOCSIS 2.0 at § 9.1.1 ("The allocation MAP is a varying-length MAC Management message that is transmitted by the CMTS to define transmission opportunities on the upstream channel. It includes a fixed length header and a variable number of information elements (IEs). . . . Each information element defines the allowed usage for a range of mini-slots."). The allocation MAP can include Request or Request/Data IEs which are time periods in which packet data may be transmitted. (*See, e.g.,* DOCSIS 1.0 at § 6.4.1.1.1, DOCSIS 1.1 at § 7.1.2.1, and DOCSIS 2.0 at § 9.1.2.1 ("The Request IE provides an upstream interval in which requests MAY be made for bandwidth for upstream data transmission. . . . If broadcast, this is an invitation for CMs to contend for requests."); *see also* DOCSIS 1.0 at § 6.4.1.1.2, DOCSIS 1.1 at § 7.1.2.2 and DOCSIS 2.0 at § 9.1.2.2 ("The Request/Data IE provides an upstream interval in which requests for bandwidth or short data packets MAY be transmitted.")) |
| | In the event this limitation is construed or applied in such a way that it is found not to be literally present in the Accused Method, Rembrandt contends that the Accused Method meets the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Instrumentalities are insubstantial. The aforementioned features perform substantially the same function (designating a part of the time shared communication channel to be used for variable bit-rate data by a number of variable bit-rate data sources), in substantially the same way (dividing the time shared communication channel into time periods and designating certain time periods to be used for variable bit-rate data), to achieve substantially the same result (enabling a time shared communication channel to be partially used for variable bit-rate data). |
| | This claim element may include features that relate to software of the Accused Instrumentalities, and Rembrandt reserves the right to supplement or modify these contentions under Judge Ward's |

41

| | |
|---|---|
| | modification to the Local Patent Rules, Rule 3-1(h). |
| in such a way that the allocated portion is shared among the plurality of packet data sources; | Each CM that transmits VBR data during time slots designated as Request or Request/Data IEs shares that portion of the bandwidth of the upstream channel that the CMTS has allocated for packet data. (*See, e.g.,* DOCSIS 1.0 and 1.1 at § 3.5.3, and DOCSIS 2.0 at § 5.5.3 ("The upstream channel is characterized by many transmitters (CMs) and one receiver (the CMTS). Time in the upstream channel is slotted, providing for Time Division Multiple Access at regulated time ticks. The CMTS provides the time reference and controls the allowed usage for each interval. Intervals may be granted for transmissions by particular CMs, or for contention by all CMs. CMs may contend to request transmission time. To a limited extent, CMs may also contend to transmit actual data. In both cases, collisions can occur and retries are used."); *see also* DOCSIS 1.0 at § 6.4.1, DOCSIS 1.1 at § 7.1.1 and DOCSIS 2.0 at § 9.1.1 ("The allocation MAP is a varying-length MAC Management message that is transmitted by the CMTS to define transmission opportunities on the upstream channel. It includes a fixed length header and a variable number of information elements (IEs)... *see also* DOCSIS 1.0 at § 6.4.1.1.1, DOCSIS 1.1 at § 7.1.2.1, and DOCSIS 2.0 at § 9.1.2.1 ("The Request IE provides an upstream interval in which requests MAY be made for bandwidth for upstream data transmission. Each information element defines the allowed usage for a range of mini-slots."); *see also* DOCSIS 1.0 at § ... If broadcast, this is an invitation for CMs to contend for requests."); *see also* DOCSIS 1.0 at § 6.4.1.1.2, DOCSIS 1.1 at § 7.1.2.2 and DOCSIS 2.0 at § 9.1.2.2 ("The Request/Data IE provides an upstream interval in which requests for bandwidth or short data packets MAY be transmitted.").)<br><br>In the event this limitation is construed or applied in such a way that it is found not to be literally present in the Accused Method, Rembrandt contends that the Accused Method meets the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Instrumentalities are insubstantial. The aforementioned features perform substantially the same function (apportioning the part of the time shared communication channel designated for variable bit-rate data among variable bit-rate data sources), in substantially the same way (establishing a procedure by which variable bit-rate data sources may use the part of the time shared communication channel designated for variable bit-rate data at a given time), to achieve substantially the same result (enable each of the variable bit-rate data sources to use the part of the time shared communication channel for variable bit-rate data).<br><br>This claim element may include features that relate to software of the Accused Instrumentalities, and |

42

| | |
|---|---|
| | Rembrandt reserves the right to supplement or modify these contentions under Judge Ward's modification to the Local Patent Rules, Rule 3-1(b). |
| transmitting packet data from the plurality of packet data sources on the allocated portion of the bandwidth; and | Each CM can and does transmit VBR data during that portion of the bandwidth of the upstream channel that the CMTS has allocated for the transmission of packet data. (*See, e.g.,* DOCSIS 1.0 and 1.1 at § 3.5.3, and DOCSIS 2.0 at § 5.5.3 ("The upstream channel is characterized by many transmitters (CMs) and one receiver (the CMTS). Time in the upstream channel is slotted, providing for Time Division Multiple Access at regulated time ticks. The CMTS provides the time reference and controls the allowed usage for each interval. Intervals may be granted for transmissions by particular CMs, or for contention by all CMs. CMs may contend to request transmission time. To a limited extent, CMs may also contend to transmit actual data. In both cases, collisions can occur and retries are used."); *see also* DOCSIS 1.0 at § 6.4.1, DOCSIS 1.1 at § 7.1.1 and DOCSIS 2.0 at § 9.1.1 ("The allocation MAP is a varying-length MAC Management message that is transmitted by the CMTS to define transmission opportunities on the upstream channel. It includes a fixed length header and a variable number of information elements (IEs). . . . Each information element defines the allowed usage for a range of mini-slots."); *see also* DOCSIS 1.0 at § 6.4.1.1.1, DOCSIS 1.1 at § 7.1.2.1 and DOCSIS 2.0 at § 9.1.2.1 ("The Request IE provides an upstream interval in which requests MAY be made for bandwidth for upstream data transmission. . . . If broadcast, this is an invitation for CMs to contend for requests."); *see also* DOCSIS 1.0 at § 6.4.1.1.2, DOCSIS 1.1 at § 7.1.2.2 and DOCSIS 2.0 at § 9.1.2.2 ("The Request/Data IE provides an upstream interval in which requests for bandwidth or short data packets MAY be transmitted.").)

In the event this limitation is construed or applied in such a way that it is found not to be literally present in the Accused Method, Rembrandt contends that the Accused Method meets the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Instrumentalities are insubstantial. The aforementioned features perform substantially the same function (utilizing the part of the time shared communication channel designated for sending variable bit-rate data by variable bit-rate data sources), in substantially the same way (establishing a procedure by which variable bit-rate data sources may use the part of the time shared communication channel designated for variable bit-rate data at a given time), to achieve substantially the same result (enabling each of the variable bit-rate data sources to use the part of the time shared communication channel for variable bit-rate data). |

43

| | | This claim element may include features that relate to software of the Accused Instrumentalities, and Rembrandt reserves the right to supplement or modify these contentions under Judge Ward's modification to the Local Patent Rules, Rule 3-1(h). |
|---|---|---|
| | controlling access by said packet data sources to the allocated portion of the bandwidth via a distributed packet manager within each of said packet data sources. | Each CM runs software to allocate its own access to the TDMA bandwidth that the CMTS has allocated to all of the CMs for the transmission of packet data . That software executes a binary exponential back-off algorithm that controls the CM's ability to access the portion of the bandwidth the CMTS has allocated for the transmission of packet data. (*See, e.g.*, DOCSIS 1.0 at § 6.4.4, 1.1 at § 7.4 and DOCSIS 2.0 at § 9.4 ("The CMTS controls assignments on the upstream channel through the MAP and determines which mini-slots are subject to collisions. The CMTS MAY allow collisions on either Requests or Data PDUs."); *see also* DOCSIS 1.0 at § 6.4.4, DOCSIS 1.1 at § 7.4.1 and DOCSIS 2.0 at § 9.4.1 ("The mandatory method of contention resolution which MUST be supported is based on a truncated binary exponential back-off, with the initial back-off window and the maximum back-off window controlled by the CMTS. ... The CM MUST randomly select a number within its back-off window. This random value indicates the number of contention transmit opportunities which the CM MUST defer before transmitting. A CM MUST only consider contention transmit opportunities for which this transmission would have been eligible. These are defined by either Request IEs or Request/Data IEs in the MAP. ...After a contention transmission, the CM waits for a Data Grant (Data Grant Pending) or Data Acknowledge in a subsequent MAP. Once either is received, the contention resolution is complete. The CM determines that the contention transmission was lost when it finds a MAP without a Data Grant (Data Grant Pending) or Data Acknowledge for it and with an Ack time more recent than the time of transmission. The CM MUST now increase its back-off window ... MUST randomly select a number within its new back-off window and repeat the deferring process described above.")) In the event this limitation is construed or applied in such a way that it is found not to be literally present in the Accused Method, Rembrandt contends that the Accused Method meets the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Instrumentalities are insubstantial. The aforementioned features perform substantially the same function (allocating access to the part of the time shared communication channel designated for variable bit-rate data between the variable bit-rate data sources), in substantially the same way (through a collision avoidance mechanism which resides in each variable bit-rate data source for reducing data collisions), to achieve substantially the same |

44

| | | |
|---|---|---|
| | | result (apportioning access to the time shared communication channel designated for variable bit-rate data between the variable bit-rate data sources).<br><br>This claim element may include features that relate to software of the Accused Instrumentalities, and Rembrandt reserves the right to supplement or modify these contentions under Judge Ward's modification to the Local Patent Rules, Rule 3-1(h). |
| 20 | A method for transmitting packet data on a time-division multiplexed bus in data communications equipment, the method comprising the steps of: | Rembrandt does not express a position at this time as to whether the preamble of this claim limits the claim's scope. Nevertheless, Rembrandt identifies below aspects of the Accused Method that correspond to the claim preamble.<br><br>Comcast operates a cable network (the Accused System) that utilizes a method or methods that comply with the DOCSIS 1.0, 1.1 and/or 2.0 specifications for providing high speed internet access (*i.e.*, data communications) over a cable network. (*See, e.g.,* *see also* DOCSIS 1.0, 1.1 and 2.0 at § 1.1 http://www.comcast.com/Benefits/CHSIBenefits.asp); *see also* DOCSIS 1.0, 1.1 and 2.0 at § 1.1 ("This document defines the radio-frequency interface specifications for high-speed data-over-cable systems.") and § 1.3.1 ("The intended service will allow transparent bi-directional transfer of Internet Protocol (IP) traffic, between the cable system headend and customer locations, over an all-coaxial or hybrid-fiber coax (HFC) cable network.")<br><br>The methods used in the Comcast network are for transmitting data over a fiber or coax cable that is both time and frequency division multiplexed. The cable is frequency division multiplexed in that its bandwidth is divided into a plurality of frequency bands or upstream channels. Each upstream channel is then time division multiplexed or divided into a plurality of time slots. *See, e.g.,* DOCSIS 1.0 and 1.1 at § 2.2.1 and DOCSIS 2.0 at § 4.2.1 ("In the upstream direction, the cable system may have a subsplit (5-30 MHz) or extended subsplit (5-42 MHz) passband. NTSC analog television signals in 6-MHz channels may be present, as well as other signals."); *see also* DOCSIS 1.0 and 1.1 at § 3.5.3, DOCSIS 2.0 at § 5.5.3 ("Time in the upstream channel is slotted, providing for Time Division Multiple Access at regulated time ticks. The CMTS provides the time reference and controls the allowed usage for each interval.").<br><br>In the Accused Method, packet data is transmitted. Each CM can act as and acts as a packet data source since each CM is capable of transmitting variable bit-rate data over the TDMA bus. (*See,* |

| | |
|---|---|
| | *e.g.*, DOCSIS 1.0 at § 6.4.1.1.1, DOCSIS 1.1 at § 7.1.2.1, and DOCSIS 2.0 at § 9.1.2.1 ("The Request IE provides an upstream interval in which requests MAY be made for bandwidth for upstream data transmission. . . . If broadcast, this is an invitation for CMs to contend for requests."); *see also* DOCSIS 1.0 at § 6.4.1.1.2, DOCSIS 1.1 at § 7.1.2.2 and DOCSIS 2.0 at § 9.1.2.2 ("The Request/Data IE provides an upstream interval in which requests for bandwidth or short data packets MAY be transmitted.")) <br><br> In the event the preamble is construed as limiting and found to be not literally present in the Accused Method, Rembrandt contends that that the Accused Method meets the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Instrumentalities are insubstantial. The aforementioned features perform substantially the same function (communicating variable bit-rate data), in substantially the same way (transmitting and/or receiving digital signals by sharing access to a network in a time-dependent fashion), to achieve substantially the same result (enabling the exchange of data while helping avoid collisions), as the recited limitation <br><br> This claim element may include features that relate to software of the Accused Instrumentalities, and Rembrandt reserves the right to supplement or modify these contentions under Judge Ward's modification to the Local Patent Rules, Rule 3-1(h). |
| allocating a portion of the bandwidth of the time-division multiplexed bus as a multiple-access packet channel; | In the Accused Method, the CMTS allocates some of the time slots in each upstream channel to all of the CMs, allowing all of the CMs to contend to transmit packet or variable bit-rate data during the allocated time slots. For example, the CMTS can and does allocate time slots designated as broadcast Request or Request/Data IEs. The CMs contend to transmit packet data during these time slots, which therefore act as a multiple-access packet channel. (*See, e.g.*, DOCSIS 1.0 and 1.1 at § 3.5.3, DOCSIS 2.0 at § 5.5.3 ("The upstream channel is characterized by many transmitters (CMs) and one receiver (the CMTS). Time in the upstream channel is slotted, providing for Time Division Multiple Access at regulated time ticks. The CMTS provides the time reference and controls the allowed usage for each interval. Intervals may be granted for transmissions by particular CMs, or for contention by all CMs. CMs may contend to request transmission time. To a limited extent, CMs may also contend to transmit actual data. In both cases, collisions can occur and retries are used."); *see also* DOCSIS 1.0 at § 6.4.1, DOCSIS 1.1 at § 7.1.1 and DOCSIS 2.0 at § 9.1.1 ("The allocation MAP is a varying-length MAC Management message that is transmitted by the CMTS to define |

46

| | |
|---|---|
| | transmission opportunities on the upstream channel. It includes a fixed length header and a variable number of information elements (IEs). . . . Each information element defines the allowed usage for a range of mini-slots."); *see also* DOCSIS 1.0 at § 6.4.1.1.1, DOCSIS 1.1 at § 7.1.2.1 and DOCSIS 2.0 at § 9.1.2.1 ("The Request IE provides an upstream interval in which requests MAY be made for bandwidth for upstream data transmission. . . . If broadcast, this is an invitation for CMs to contend for requests."); *see also* DOCSIS 1.0 at § 6.4.1.1.2, DOCSIS 1.1 at § 7.1.2.2 and DOCSIS 2.0 at § 9.1.2.2 ("The Request/Data IE provides an upstream interval in which requests for bandwidth or short data packets MAY be transmitted.").<br><br>In the event this limitation is construed or applied in such a way that it is found not to be literally present in the Accused Method, Rembrandt contends that the Accused Method meets the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Instrumentalities are insubstantial. The aforementioned features perform substantially the same function (designating a part of the time shared communication channel to be used for variable bit-rate data by a number of variable bit-rate data sources), in substantially the same way (dividing the time shared communication channel into time periods and designating certain time periods to be used by a plurality of sources for the transmission of variable bit-rate data), to achieve substantially the same result (enabling a time shared communication channel to be partially used by a plurality of sources for the transmission of variable bit-rate data).<br><br>This claim element may include features that relate to software of the Accused Instrumentalities, and Rembrandt reserves the right to supplement or modify these contentions under Judge Ward's modification to the Local Patent Rules, Rule 3-1(h). |
| coupling a plurality of packet data sources to the time-division multiplexed bus; | In the Accused Instrumentalities, a plurality of CMs are coupled to the TDMA bus or upstream channel. (*See, e.g.,* DOCSIS 1.0 and 1.1 at § 3.5.3, and DOCSIS 2.0 at § 5.5.3 ("The upstream channel is characterized by many transmitters (CMs) and one receiver (the CMTS). Time in the upstream channel is slotted, providing for Time Division Multiple Access at regulated time ticks.").)<br><br>Each CM can act as and acts as a packet data source since each CM is capable of transmitting variable bit-rate data over the TDMA bus. (*See, e.g.,* DOCSIS 1.0 at § 6.4.1.1.1, DOCSIS 1.1 at § 7.1.2.1, and DOCSIS 2.0 at § 9.1.2.1 ("The Request IE provides an upstream interval in which |

47

| | |
|---|---|
| | requests MAY be made for bandwidth for upstream data transmission. . . . If broadcast, this is an invitation for CMs to contend for requests."); *see also* DOCSIS 1.0 at § 6.4.1.1.2, DOCSIS 1.1 at § 7.1.2.2 and DOCSIS 2.0 at § 9.1.2.2 ("The Request/Data IE provides an upstream interval in which requests for bandwidth or short data packets MAY be transmitted.").)

In the event this limitation is construed or applied in such a way that it is found not to be literally present in the Accused Method, Rembrandt contends that the Accused Method meets the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Instrumentalities are insubstantial. The aforementioned features perform substantially the same function (providing access to the time shared communication channel), in substantially the same way (providing a communication link between each of the variable bit-rate data sources and the time shared communication channel), to achieve substantially the same result (enabling the variable bit-rate data sources to communicate via the time shared communication channel). |
| controlling the access by said packet data sources to the allocated portion of the bandwidth via a distributed packet manager within each of said packet data sources; | Each CM runs software to allocate its own access to the TDMA bandwidth that the CMTS has allocated for the transmission of packet data in a multiple access packet channel. . That software executes a binary exponential back-off algorithm that controls the CM's ability to access the portion of the bandwidth the CMTS has allocated for the transmission of packet data. (*See, e.g.*, DOCSIS 1.0 at § 6.4.1, DOCSIS 1.1 at § 7.4, and DOCSIS 2.0 at § 9.4 ("The CMTS controls assignments on the upstream channel through the MAP and determines which mini-slots are subject to collisions. The CMTS MAY allow collisions on either Requests or Data PDUs."); *see also* DOCSIS 1.0 at § 6.4.4, DOCSIS 1.1 at § 7.4.1 and DOCSIS 2.0 at § 9.4.1 ("The mandatory method of contention resolution which MUST be supported is based on a truncated binary exponential back-off, with the initial back-off window and the maximum back-off window controlled by the CMTS. . . . The CM MUST randomly select a number within its back-off window. This random value indicates the number of contention transmit opportunities which the CM MUST defer before transmitting. A CM MUST only consider contention transmit opportunities for which this transmission would have been eligible. These are defined by either Request IEs or Request/Data IEs in the MAP. ...After a contention transmission, the CM waits for a Data Grant (Data Grant Pending) or Data Acknowledge in a subsequent MAP. Once either is received, the contention resolution is complete. The CM determines that the contention transmission was lost when it finds a MAP without a Data Grant (Data Grant Pending) or Data Acknowledge for it and with an Ack time more recent than the time of |

48

transmission. The CM MUST now increase its back-off window . . . MUST randomly select a number within its new back-off window and repeat the deferring process described above.") DOCSIS 1.1 at § 7.4.1.)

In the event this limitation is construed or applied in such a way that it is found not to be literally present in the Accused Method, Rembrandt contends that the Accused Method meets the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Instrumentalities are insubstantial. The limitation and the aforementioned features perform substantially the same function (allocating access to the part of the time shared communication channel designated for variable bit-rate data between the variable bit-rate data sources), in substantially the same way (through a collision avoidance mechanism which resides in each variable bit-rate data source for reducing data collisions), to achieve substantially the same result (apportioning access to the time shared communication channel designated for variable bit-rate data between the variable bit-rate data sources)

This claim element may include features that relate to software of the Accused Instrumentalities, and Rembrandt reserves the right to supplement or modify these contentions under Judge Ward's modification to the Local Patent Rules, Rule 3-1(h).

| transmitting packet data from the one of the plurality of packet data sources having access to the multiple-access packet channel. | In the Accused Instrumentalities, each CM can and does transmit variable bit-rate data during that transmission portion of the bandwidth of the upstream channel that the CMTS has allocated for the transmission of packet data. (See, e.g., DOCSIS 1.0 and 1.1 at § 3.5.3, and DOCSIS 2.0 at § 5.5.3 ("The upstream channel is characterized by many transmitters (CMs) and one receiver (the CMTS). Time in the upstream channel is slotted, providing for Time Division Multiple Access at regulated time ticks. The CMTS provides the time reference and controls the allowed usage for each interval. Intervals may be granted for transmissions by particular CMs, or for contention by all CMs. CMs may contend to request transmission time. To a limited extent, CMs may also contend to transmit actual data. In both cases, collisions can occur and retries are used."); see also DOCSIS 1.0 at § 6.4.1, DOCSIS 1.1 at § 7.1.1 and DOCSIS 2.0 at § 9.1.1 ("The allocation MAP is a varying-length MAC Management message that is transmitted by the CMTS to define transmission opportunities on the upstream channel. It includes a fixed length header and a variable number of information elements (IEs). . . . Each information element defines the allowed usage for a range of mini-slots."); see also DOCSIS 1.0 at § 6.4.1.1.1, DOCSIS 1.1 at § 7.1.2.1 and DOCSIS 2.0 at § 9.1.2.1 ("The Request IE provides |

| | | an upstream interval in which requests MAY be made for bandwidth for upstream data transmission. . . . If broadcast, this is an invitation for CMs to contend for requests."); *see also* DOCSIS 1.0 at § 6.4.1.1.2, DOCSIS 1.1 at § 7.1.2.2 and DOCSIS 2.0 at § 9.1.2.2 ("The Request/Data IE provides an upstream interval in which requests for bandwidth or short data packets MAY be transmitted."). |
| | | In the event this limitation is construed or applied in such a way that it is found not to be literally present in the Accused Method, Rembrandt contends that the Accused Method meets the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Instrumentalities are insubstantial. The aforementioned features perform substantially the same function (providing variable bit-rate data from a variable bit-rate data source), in substantially the same way (providing the variable bit-rate data during the part of the time shared communication channel designated for access by multiple variable bit-rate data sources), to achieve substantially the same result (providing the variable bit-rate data during the part of the time shared communication channel designated for access by multiple variable bit-rate data sources). |
| | | This claim element may include features that relate to software of the Accused Instrumentalities, and Rembrandt reserves the right to supplement or modify these contentions under Judge Ward's modification to the Local Patent Rules, Rule 3-1(h). |
| 26 | The method of claim 20 further comprising the step of coupling a network access module to the time-division multiplexed bus for receiving the packet data for transmission over a network facility. | In the Accused Instrumentalities, a CMTS is coupled to one end of the TDMA bus, and acts a network access manager that communicates the synchronous and packet data transmitted over the upstream channel to a wide area network to which it is also attached. (*See, e.g.,* DOCSIS 1.0, 1.1 and 2.0 at Figure 1-1 (showing the CMTS coupled at one end to the cable network and at the other end to a wide area network); *see also* DOCSIS 1.0, 1.1 and 2.0 at Figure 1-2 (showing the CMTS coupled at one end to the cable network and at the other end to both the public switched telephone network ("PSTN") and to a wide area backbone network ("WAN")); *see also* DOCSIS 1.0, 1.1 and 2.0 § 1.3.1 ("The transmission path over the cable system is realized by a Cable Modem Termination System (CMTS), and at each customer location by a Cable Modem (CM). At the headend (or hub), the interface to the data-over-cable system is called the Cable Modem Termination System - Network-Side Interface (CMTS-NSI) and is specified in [DOCSIS3]. At the customer locations, the interface is called the cable-modem-to-customer premises-equipment interface (CMCI) and is specified in [DOCSIS4]. The intent is for operators to transparently transfer |

IP traffic between these interfaces, including but not limited to datagrams, DHCP, ICMP, and IP Group addressing (broadcast and multicast).")

In the event this limitation is construed or applied in such a way that it is found not to be literally present in the Accused Method, Rembrandt contends that the Accused Method meets the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Instrumentalities are insubstantial.  The aforementioned features perform substantially the same function (communicating CBR and variable bit-rate data from the time shared communication channel to a communication network), in substantially the same way (coupling the time shared communication channel to the communication network), to achieve substantially the same result (enabling CBR and variable bit-rate data sources to provide CBR and variable bit-rate data to a communication network).

This claim element may include features that relate to software of the Accused Instrumentalities, and Rembrandt reserves the right to supplement or modify these contentions under Judge Ward's modification to the Local Patent Rules, Rule 3-1(h).

51

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 21, 2006, a true and correct copy of this document was served on the following attorneys of record at the address and in the manner indicated:

**BY ELECTORNIC MAIL AND**
**FEDERAL EXPRESS**
Brian L. Ferrall
Keker & Van Nest
710 Sansome Street
San Franciscco, CA 94111

**VIA ELECTRONIC MAIL AND**
**FEDERAL EXPRESS**
John Peyton Perkins, III
James N. Haltom
Haltom & Doan, LLP
6500 N. Summerhill Road, Suite 1A
P.O. Box 6227
Texarkana, TX 75505-6227

*/S/ Timothy Devlin*
Timothy Devlin

7

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

REMBRANDT TECHNOLOGIES, LP

        Plaintiff,

    v.

COMCAST CORPORATION, COMCAST
CABLE COMMUNICATIONS, LLC, and
COMCAST OF PLANO, LP

        Defendants.

Case No. 2:05-CV-443 (TJW)

Jury Trial Demanded

## PLAINTIFF'S DISCLOSURE OF ASSERTED CLAIMS AND PRELIMINARY INFRINGEMENT CONTENTIONS

**Preliminary Infringement Analysis for U.S. Patent No. 5,852,631**

**A.    Identification of Infringed Claims**

Pursuant to Local Patent Rule 3-1(a), Rembrandt hereby identifies claims 1 and 3-10 of U.S. Patent No. 5,852,631 ("the '631 patent") as infringed by Defendants (also referred to collectively herein as "Comcast").

**B.    Identification of Accused Instrumentalities**

Defendants infringe claims 1 and 3-10 of the '631 patent by their sale, offer for sale, use or operation of cable modem networks including cable modems and cable modem termination systems that have the capability of being operated in compliance with the Data-Over-Cable Service Interface Specification (DOCSIS), version CM-SP-RFIv2.0-I09-050812, dated August 12, 2005 (the "DOCSIS 2.0 standard"). Certain cable modem networks, cable modems, and cable modem termination systems that are sold, leased, or operated by defendants conform to the DOCSIS 2.0 standard.

Accordingly, pursuant to Local Patent Rule 3-1(b), Rembrandt identifies as the Accused Instrumentalities (1) Comcast's high speed cable modem network and infrastructure, including any DOCSIS 2.0-compliant cable modems and DOCSIS 2.0-compliant cable modem termination systems configured for use in the Defendant's cable modem network ("Accused System"), (2) Comcast's use or operation of its high speed cable modem network and infrastructure ("Accused Method"), and (3) any computer software (including firmware, whether stored on an EPROM, EEPROM, field programmable gate array, or otherwise) configured for use in Comcast's high speed cable modem network and infrastructure, including in any DOCSIS 2.0-compliant cable modems ("Accused CM Software") and DOCSIS 2.0-compliant cable modem termination systems ("Accused CMTS Software"), (collectively, "Accused Software").

2

The DOCSIS 2.0-compliant CMs and CMTSes configured for use in Comcast's high speed cable modem network include, without limitation, those products identified in Exhibit A, attached hereto, that are compatible with at least DOCSIS 2.0. Rembrandt is not currently aware of the names or model numbers of all the CMs and CMTSes used by Defendants or by customers of Defendants, and reserves the right to modify or supplement the attached list as discovery progresses.

Rembrandt reserves the right to add additional Accused Instrumentalities as discovery progresses, including equipment or methods compatible with other versions of the DOCSIS standard, including DOCSIS 1.0 and DOCSIS 1.1.

## C. **Preliminary Infringement Claim Chart**

Pursuant to Local Patent Rule 3-1(c), Plaintiff provides the following claim chart, attached hereto as Exhibit B, that explains how Defendants infringe the asserted claims in connection with their sale, offer for sale use and/or operation of a high speed cable modem network that includes DOCSIS 2.0 compliant CMs and CMTSes. The citations to the DOCSIS 2.0 specification are included for reference, but should not be construed as limiting.

## D. **Reliance on the Doctrine of Equivalents**

Pursuant to Patent Local Rule 3-1(d), Plaintiff presently contends that the sale, offer for sale, and/or use of such devices by defendants literally infringes the identified claims. In addition, Plaintiff contends that each claim limitation is met under the doctrine of equivalents, as set forth below. Plaintiff has included certain contentions regarding doctrine of equivalents, but reserves the right to modify or supplement any such contentions to the extent made relevant by the Court's claim construction ruling or subsequent discovery of facts of which Plaintiff is not currently aware.

3

In the event that discovery reveals that the Accused Instrumentalities utilized by Defendants implement the claimed invention in software, Plaintiff reserves the right, pursuant to the Order Relating To Patent Cases Before Judge T. John Ward ("Appendix C"), Rule 3-1(h), to provide supplemental infringement contentions following the production of source code for such software, should such supplemental contentions be necessary.

In the following claim charts, Plaintiff has subdivided each claim element into sub-elements to more clearly indicate where on the Accused Instrumentalities each element may be found. The subdivisions in the following chart should not be taken as an indication of the boundaries of claim elements for the purposes of determining infringement under the doctrine of equivalents.

**E.     Statement of Earliest Priority Date**

Pursuant to Patent Local Rule 3-1(e), Plaintiff states that the earliest priority date all claims of the '631 Patent are entitled to is the June 21, 1996 filing date of U.S. Provisional Application Serial No. 60/02,474.

**F.     Identification of Instrumentalities Embodying the Patent**

Pursuant to Patent Local Rule 3-1(f), Plaintiff states that it does not manufacture any products that embody the claims of the '631 Patent.

PARKER & BUNT, P.C.

/s/ Robert ChristopherBunt
Robert Christopher Bunt
State Bar No. 00787165
PARKER & BUNT, P.C.
100 E. Ferguson, Suite 1114
Tyler, Texas 75702
Tel: 903/531-3535
Fax: 903/533-9687

4

E-mail: cbunt@cox-internet.com

Robert M. Parker
State Bar No. 15498000
PARKER & BUNT, P.C.
100 E. Ferguson, Suite 1114
Tyler, Texas 75702
Tel: 903-531-3535
Fax: 903-533-9687
E-mail: rmparker@cox-internet.com

Otis Carroll – Lead Attorney
State Bar No. 03895700
IRELAND, CARROLL & KELLEY, P.C.
6101 S. Broadway, Suite 500
Tyler, Texas 75703
Tel: (903) 561-1600
Fax: (903) 581-1071
E-mail: Fedserve@icklaw.com

OF COUNSEL:

Frank E. Scherkenbach
Lawrence K. Kolodney
FISH & RICHARDSON P.C.
225 Franklin Street
Boston, Massachusetts 02110
Tel: (617) 542-5070
Fax: (617) 542-8906

Alan D. Albright
State Bar No. 00973650
FISH & RICHARDSON P.C.
One Congress Plaza, 4th Floor
111 Congress Avenue
Austin, Texas 78701
Tel: (512) 391-4930
Fax: (512) 391-6837

Timothy Devlin
FISH & RICHARDSON P.C.
919 Market Street, Suite 1100
P.O. Box 1114
Wilmington, Delaware 19899
Tel: (302) 652-5070
Fax: (302) 652-0607

5

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 21, 2006, a true and correct copy of this document was served on the following attorneys of record at the address and in the manner indicated:

**BY ELECTORNIC MAIL AND FEDERAL EXPRESS**
Brian L. Ferrall
Keker & Van Nest
710 Sansome Street
San Franciscco, CA 94111

**VIA ELECTRONIC MAIL AND FEDERAL EXPRESS**
John Peyton Perkins, III
James N. Haltom
Haltom & Doan, LLP
6500 N. Summerhill Road, Suite 1A
P.O. Box 6227
Texarkana, TX 75505-6227


/S/ Timothy Devlin _____
Timothy Devlin



CableHome® DOCSIS® PacketCable™ Certified Products - 10/28/05

CH = CableHome   D = DOCSIS   PC = PacketCable

Beginning with Certification Wave 20, products may be awarded certification/qualification of multiple specifications through the CableLabs "combined certification program".

Note that certification will not automatically apply retroactively to any product certified prior to Certification Wave 20, unless that product is submitted for re-certification.

Disclaimer: The model number, software version and hardware version information is provided by the vendor when submitting product for certification and CableLabs assumes no responsibility for accuracy or completeness of that information.

* This product is certified only for the uses as defined in the executive summary of the certification application.

| CW | Version | Type | Manufacturer | CL ID | Model # | SW Version | HW Version | OEM Vendor ID | Spec Combo - Certified As | Verified For Interoperability |
|---|---|---|---|---|---|---|---|---|---|---|
| 39 | D2.0 | CM | WideView Technology | Wais391 | VXM-100 | 17.1.7.17 | 35.4.2 | | D1.1, D2.0 | |
| 39 | C1.1 | CM | SMC | Smcm391 | SMC901HWG-CHM | 3.17.11 | 1.65 | | D1.1, D2.0, C1.1 | |
| 39 | D2.0 | CM | Ashley | Ashs391 | CAM300 | 1.0.2 | 1.0.0 | | D1.1 | |
| 39 | D2.0 | CM | Tollgrade | Tolt381 | 1.0.0 | 3.7.16001 | V1.0 | | D1.1, D2.0 | |
| 38 | D2.0 | DSG eCM | Pace | Pace381 | TDC775D | 4.5.0 | 01 | | D1.1, D2.0 | |
| 38 | D2.0 | CM | Aris | Arit381 | TM500G | S5V5200.2.1.3710.1- | 1 | | D1.1, D2.0 | X |
| 38 | | EMTA | Motorola | Moto382 | SBV5200 | SCM00-5H | | | D1.1, D2.0, PC1.0 | |
| 38 | PC1.0 in D2.0 | EMTA | Motorola | Moto383 | SBV5121 | S5V5121-2.17.5.23-SCM01-NOSH | V1.0 | | D1.1, D2.0, PC1.0 | |
| 38 | PC1.0 in D2.0 | EMTA | Pace | Pace382 | DV015 | v05.38.01 | 1.0 | | D1.1, D2.0, PC1.0 | |
| 38 | PC1.0 in D2.0 | EMTA | Scientific Atlanta | Scek382 | DPC2203 | v2.0.2r1254 | 1.0 | | D1.1, D2.0, PC1.0 | |
| 38 | PC1.0 in D2.0 | EMTA | Scientific Atlanta | Scek381 | DPC2223 | v2.0.2r1154 | 1.0 | | D1.1, D2.0, PC1.0 | |
| 38 | PC1.0 in D2.0 | EMTA | Thomson | Thom381 | DHS535 | ST70.01.00 | 5.31 | | D1.1, D2.0, PC1.0 | |
| 38 | PC1.0 in D2.0 | EMTA | Thomson | Thom382 | DHS526 | ST62.08.00 | 2.0 | | D1.1, D2.0, PC1.1 | |
| 38 | PC1.0 in D2.0 | EMTA | Ambit | Amb381 | U10C021 | 4.71.1091 | 2.0 | | D1.1, D2.0, PC1.0 | |
| 38 | Embedded PS | | Cisco-Linksys | Link383 | WCG104 | 2.0.3.7.16 | 1.0 | | D1.1, D2.0, PC1.1 | |
| 38 | PC1.0 in D2.0 | EMTA | Cisco-Linksys | Link382 | CMP200B | 2.0.3.7.16 | | | D1.1, D2.0, PC1.0 | |
| 36 | C1.1 | Embedded PS | Motorola | Moto381 | SBG940 | SCM01-NOSH | 1 | | D1.1, D2.0, C1.1 | |
| 36 | D2.0 | CM | Alpha | Alph381 | Alpha CMH | S6G940-2.11.1- | 1.0 | | D1.1, D2.0 | |
| 36 | PC1.0 in D2.0 | EMTA | Alpha | Link381 | CMP200B | 2.01.01KH1.0 | 59.0 | | D1.1, D2.0, PC1.0 | |
| 36 | P1.1 | MG | Nuera | 4Nue571 | BTX-4K | 1.1 | A | | PC1.0, PC1.1 | |
| 37 | P1.1 | MGC | Siemens | SSiem371 | Surpass hiQ 8000 | 08.04.01.US.05 | Netra 1400T | Sun Microsystems | PC1.0, PC1.1 | |
| 37 | P1.1 | MGC | Nortel | 3Nort371 | CS 2000 MGC | SN08.PSM | SN08.PHM | Sun Microsystems | PC1.0, PC1.1 | |
| 37 | P1.1 | CMS | Siemens | 0Siem371 | Surpass hiQ 8000 | 08.04.01.US.05 | Netra 1400T | Sun Microsystems | PC1.0, PC1.1 | |
| 37 | P1.1 | CMS | Nortel | 0Nort371 | CS 2000 CMS | SN08.PSC | SN08.PHC | Sun Microsystems | PC1.0, PC1.1 | |
| 37 | D2.0 | CM | Turbocomm | Turb371 | EC420 | 17.0.1.11 | 29.2 | | D1.1, D2.0 | |
| 35 | D2.0 | CM | Motorola | Moto371 | SB5121 | S5V5121-2.17.0.12-SCM01-NOSH | 1.0 | | D1.1, D2.0 | |
| 35 | D1.1 | CM | Asustek | Asus371 | ACM6EM6EB | 3.7.7 | 3.00 | | D1.1 | |
| 35 | D2.0 | CM | Toshiba | Tosh352 | PCX2200 | 2.1R.067 | 3.2.1 | | D1.1 | |
| 35 | D2.0 | CM | Toshiba | Tosh351 | PCX3000 | 8.43-2 | 25.0.0 | | D2.0 | |
| 35 | D2.0 | CM | Ambit | Amb351 | U10C018 | 4.4.1 | 32 | | D1.1, D2.0 | |
| 35 | PC1.0 in D2.0 | EMTA | Thomson | Thom341 | DHG535 | ST62.06.00 | 5.0 | | D1.1, D2.0, PC1.0 | |
| 34 | PCMM in D2.0 | CMTS+MM | Motorola | 2Moto341 | BSR 64000 | 4.1.0106P10.12.KRAU | | CHS-0009-01 | PCMM | |
| 34 | PCMM | Policy Server | Tekoelia | 5Tek341 | Policy Manager 1.0 | PS-#1.0.2005020912041 | SUNW,Ultra-80 | | PCMM | |
| 34 | PCMM | Cisco | | 4Cisc341 | MGX8890 | 5.50 | VXSM | | PC1.0, PC1.1 | |
| 34 | PCMM | EMTA | Ambit | Amb341 | U10C017 | 4.36.101E | 2.22 | | PCMM | |
| 34 | PCMM | Policy Server | Camfield | 5Cam341 | CAMS-2275 | 2.0.0 | Intel SR 1300 Server | | PCMM | |
| 34 | D2.0 | CMTS | Bigband Networks | 2Bigt341 | Cuda 12000 (C12-DM2e8-2.0) | R6.0.0 | Rev 4 | | D1.1, D2.0 | |
| 34 | D1.0 | MG | Nuera | 4Nue541 | BTX-4K | 1.1.0.4 | A | | D1.1, D2.0, PC1.0 | |
| 34 | PC1.0 in D2.0 | EMTA | Cisco-Linksys | Link341 | CM2P2B | 2.0.3.5.10 | 2.1 | | D1.1, D2.0, PC1.0 | |
| 34 | PC1.0 in D2.0 | EMTA | Cisco-Linksys | Link342 | CG3P2WR8 | 2.0.3.5.10 | 2.1 | | D1.1, D2.0, PC1.0 | |
| 34 | PC1.0 in D2.0 | EMTA | Netgear | Netg341 | CVG824G | 3.5.6R01 | 1.00 | | D1.1, D2.0, PC1.0 | |
| 34 | PCMM | Policy Server | Tazz Networks | 5Tazz341 | TAZZ PCS | 1.2 | SUN V60/V20z | | PCMM | |
| 34 | PC1.0 in D2.0 | EMTA | Terayon | Terd341 | TJ845 | 16.0.0.10 | 31.0 | | D1.1, D2.0, PC1.0 | |
| 34 | PCMM | Policy Server | CableMatrix | 5Cab341 | ODISP | 0.8.6 | NA | | PCMM | |
| 34 | PCMM | Policy Server | C-Cor | 5Ccor341 | NA | 1.0 | NA | | PCMM | |
| 33 | CMS | EMTA | Sonus | 0Sonu341 | ASX Access Server | V06.01.00R04 | 1.0 | | PC1.0 | |
| 33 | D2.0 | CM | Scientific Atlanta | Scek332 | DPX2213 | v2.0.2r1251 | 2.0 | | D1.1, D2.0, C1.1 | |
| 33 | C1.0 | CM | Cisco-Linksys | Link331 | BEFCMU10 ver. 5 | v2.0.3.5.6 | 4.10 | | D1.1, D2.0 | |
| 33 | D2.0 | CM | Ambit | Amb331 | U10C019 | 6.85-1000 | 2.1 | | D1.1, D2.0 | |
| 33 | PC1.0 in D2.0 | EMTA | Cisco-Linksys | Link333 | CG3P2WG3 | v2.0.2r1151 | 2.1 | | D1.1, D2.0, PC1.0 | |
| 33 | PC1.0 in D2.0 | EMTA | Scientific Atlanta | Scek331 | DPX2203 | v2.0.2r1251 | 2.1 | | D1.1, D2.0, PC1.0 | |
| 33 | PC1.0 in D2.0 | EMTA | Cisco-Linksys | Link332 | CM2P2B | 2.0.3.5 | 2.1 | | D1.1, D2.0, PC1.0 | |
| 33 | PC1.0 in D2.0 | EMTA | Thomson | Thom331 | DHG525 | ST62.05.00 | 5.0 | | D1.1, D2.0, PC1.0 | |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 32 | D2.0 | CMTS=DSG Agent | Motorola | 2Moo321 | BSR 64000 | 4.1.0T08F10.KRAU | CHS-0009-01 | Come291 | D1.1, D2.0 |
| 32 | D2.0 | CM | Zoom | Zoom321 | 5241 | 5.33.3.5 | 100 | | D1.1, D2.0 |
| 32 | D2.0 | CMTS=DSG Agent | Zoom | 2Zoom321 | C4-CMTS-2100-1 | CMTS_V04.02.00.10 | 02 | | D1.1, D2.0 |
| 32 | D2.0 | CMTS=DSG Agent | Bighand Networks | Hligb321 | Cuda 12000 | RS.5.0 | 2.0 | | D1.1, D2.0 |
| 32 | D2.0 | CM | Terayon | Tera321 | TJ7f0x | 15.0.0.20 | Rev 4 | | D2.0 |
| 32 | D1.0 | Embedded PS | Zyxel | Zyxe322 | Prestige 974 | V3.7.0.01 | V3.9 | | D2.0 |
| 32 | D1.0 | OSS eCM | Zyxel | Zyxe321 | B300 DVR FR | V3.70.01 | V3.9 | | D1.0 |
| 32 | D1.1 | Embedded PS | Scientific Atlanta | Scie321 | Prestige 971 | 2.3.7 | VA.1 | | D1.1, D2.0, CH1.1 |
| 32 | C1.1 | Embedded PS | Zyxel | Zyxe321 | DCW725 | VA.1 | 4.1 | | D1.1, D2.0, CH1.1 |
| 32 | C1.1 | Embedded PS | Thomson | Thom321 | CG2P2WB | V7.0.01 | 2.0 | | D1.1, D2.0, CH1.1 |
| 32 | C1.1 | CM | Cisco-Linksys | Link321 | TMA02G | 3.4.2 | 07 | | D1.1, D2.0 |
| 32 | C1.1 | CM | Arris | Arri321 | | 4.4.1 | 02 | | D1.1, D2.0 |
| 32 | C1.1 | Embedded PS | Tollgrade | Toll321 | 1.0.0 | 1.0.0 | 1.0 | | D1.1, D2.0, CH1.1 |
| 32 | C1.1 | Embedded PS | Netgear | Ntgr321 | | 3.4.2 | 1.02 | | D1.1, D2.0, CH1.1 |
| 32 | PC1.1 in D1.1 | CMTS=PC | Cisco | 1Cisc311 | CG814WG | 12.2(15)BC2p1 | 1.02 | | D1.1, PC1.0, PC1.1 |
| | | | | | uBR7246 VXR/MC28U | SB5220/2.10.0.0- | MC28U/Rev 8.5 | | |
| 31 | D1.1 | EMTA | Motorola | Moto311 | SB9V5220 | SCM11-NOSH | 1 | | D1.1 |
| 31 | D1.1 | CM | Electroline | Elec311 | DHT-FS-A/A-01 | 2.14 | 02 | | D1.1 |
| 31 | D1.1 | CM | AM Communications | Amco311 | 936Z | 1.88 | 4.9 | | D1.1 |
| 31 | D1.1 | CMTS | Motorola | Toll311 | 1.0.0 | 1.0 | 1.0.0 | | D1.1 |
| 31 | D1.1 | Electroline | Electroline | Elec302 | BSR 64000 | 4.1.0T04F08.KRAU | 01 | | D2.0 |
| 31 | D2.0 | Embedded PS | Thomson | Thom302 | DCW725 | 2.10 | 4.0 | | D1.1, D2.0, CH1.1 |
| 30 | D2.0 | CM | Terayon | Tera301 | TJ7f0x | STSA.02.01 | 35.0 | | D1.1, D2.0 |
| 30 | D2.0 | CM | Motorola | Moto301 | SB9V5220 | SB9V5220.2.9.1.0- | 1 | | D1.1, D2.0, PC1.0 |
| 30 | PC1.0 in D2.0 | CM | Cisco-Linksys, LLC | Link301 | CM2P2B | SCM08-NOSH | 2.0 | | D1.1, D2.0, PC1.0 |
| 30 | PC1.0 in D2.0 | EMTA | Scientific Atlanta | Scie301 | DPX2203 | 2.0.3.2.5 | 2.1 | | D1.1, D2.0, PC1.0 |
| 30 | PC1.0 in D2.0 | EMTA | Arris | Arri301 | U10C017 | v2.0.0.143 | 2.22 | | D1.1, D2.0, PC1.0 |
| 30 | PC1.0 in D2.0 | EMTA | Cisco-Linksys, LLC | Link302 | CG2P2WB | 4.36.1097 | 2.0 | | D1.1, D2.0, PC1.0 |
| 29 | D2.0 | CMTS=PC | Scientific Atlanta | Scie302 | WebSTAR DPC2100 | 2.0.3.2.5 | 2.0 | | D1.1, PC1.0 |
| 29 | D2.0 | MG | Motorola | 1Moto291 | BSR 64000 | v2.0.2r1242 | 1.20 | | D1.1, D2.0, PC1.0, PC1.1 |
| 29 | D2.0 | MG | Arris | Arri291 | U10C018 | 3.1.0T09F07,J05,KRBU | 100 | | D1.1, D2.0 |
| 29 | D2.0 | CM | Conexant | Cnxt291 | BEFCM10U ver. 4 | 2.93.1000 | 10 | | D1.1, D2.0 |
| 29 | D2.0 | CM | Conexant | Cnxe291 | ACM851 | 5.35.33.5 | 10 | | D1.1, D2.0 |
| 29 | D2.0 | CM | Conexant | Cone291 | XCM851 | 5.35.33.5 | | | D1.1, D2.0 |
| 29 | D2.0 | CM | Motorola | Moto291 | SB5120 | SCM05-NOSH | 4 | | D1.1, D2.0 |
| 29 | D1.1 | CM | Thomson | Thom291 | DCM425 | S7.92.01.02 | 4.0 | | D1.1, D2.0, CH1.1 |
| 29 | D1.1 | PS | Scientific Atlanta | Scie291 | WebSTAR DPC2100 | S7.92.01142 | 4.0 | | D1.0, D1.1 |
| 29 | P1.0 | CM | Cisco-Linksys | Link291 | CG927N | 2.0.3.1.0 | 2.0 | | PC1.0 |
| 29 | P1.0 | ADC | ADC | 1Adc291 | Cuda 12000 | RS.5.0 | RevA | | PC1.0 |
| 29 | PC1.0 in D2.0 | CMTS | Motorola | 1Moto292 | BSR 64000 | 3.1.0T09F87,03A,KRBU | CHS-0009-01 | | D1.1, D2.0, PC1.0 |
| 29 | C1.1 | CMTS | AudioCodes | 4Audc291 | Mediant 5000 | nd_4.001_0_0_8X | Rev B | | D1.1, D2.0, CH1.1 |
| 29 | D2.0 | MG | General Bandwidth | 4Gene291 | G6 | SB9V5120-2.9.0.1- | 1.0 | | D1.1, CH1.0 |
| 29 | D2.0 | | | | | SCM16-NOSH | | | D1.1, D2.0 |
| 29 | PC1.0 in D2.0 | EMTA | Motorola | Moto282 | SB9V5120 | SB9V5120 ver. 2 | 1 | | D1.1, D2.0, PC1.0 |
| 29 | C1.1 | Embedded PS | Cisco-Linksys | Link282 | WCG200 ver. 2 | 2.0.3.1.1 | | | D1.1, D2.0, CH1.1 |
| 28 | D2.0 | CMTS | Arris | 2Arri281 | C4-CMTS-2100-1 | CMTS_V04.00.00.104 | 23.2 | | D1.1, CH1.0 |
| 28 | D2.0 | CM | Motorola | Moto286 | 6074X/EU | 5.11.111 | 4.7 | | D1.1, D2.0 |
| 28 | D2.0 | CM | Motorola | Moto286 | SB9300 | 2.1.8.2SCM01 | 3 | | D1.1, D2.0 |
| 28 | C1.0 | Embedded PS | Motorola | Moto281 | SBG940 | SB9940-2.1.8.1- | 1 | | D1.1, D2.0 |
| | | | | | | SCM00-NOSH | | | |
| 28 | D2.0 | | | | | SB9940-2.1.8.1- | | | |
| | | | | | | SCM00-NOSH | | | |
| 28 | D2.0 | Embedded PS | Motorola | Moto281 | SBG940 | SB9101/2.A0.1-SCM00- | 1 | | D1.1, D2.0 |
| 28 | D2.0 | CM | Motorola | Moto287 | SB5101 | SB9V5120-2.6.0.4- | 1 | | D1.1, D2.0 |
| | | | | | | SCM02-NOSH | | | |
| 28 | D2.0 | CM | Motorola | Moto283 | SB9V5120 | 2.0.2.10.0 | 1.2b | | D1.1, D2.0 |
| 28 | D2.0 | Embedded PS | Cisco-Linksys | Link281 | WCG200 | 1.0.32.13 | 35.0 | | D1.1, D2.0, CH1.1 |
| 28 | D2.0 | CM | Shenzhen Coship | Cosh281 | CCA92000A | 2.0.2.0.6 | 2.1 | | D2.0 |
| 28 | D2.0 | CM | D-Link | Dlin281 | UME100 | 2.0.1 | 1A | | D1.1, D2.0 |
| 28 | D2.0 | CM | Dasnernet | Dneb281 | DCW-202 | 10.2.0 | 29.2 | HM252 | D1.1, D2.0 |
| 28 | C1.0 | CM | Arris | 2Arri281 | LP3200 | 4.0.1.416 | 04 | | D1.1, D2.0 |
| 28 | D2.0 | CM | Castlenet | Cast281 | T10622_(C3) | 2.7.2.200 | 1.0 | JHC0261 | D1.1, D2.0 |
| 28 | D2.0 | CM | Arris | Arrib281 | DP1110XB2A | 2.93.1000 | 1.18 | | D1.1, D2.0 |
| 28 | P1.0 | MGC | Nortel Networks | 3Nort281 | 10018EU | 2.93.1000 | 1 | | D1.1, D2.0 |
| 28 | P1.0 | CM | Castlenet | Cast282 | CS 2000 MGC | SN06.PFM | | | PC1.0 |
| 28 | D1.1 | CM | Castlenet | Nxgr281 | DP1110XB2 | SN06.PFSM | 2.51.17 | | D1.1, D2.0 |
| 28 | D2.0 | Embedded PS | Conexant | Cone281 | CG814WG | 2.3.11.17 | 1.02 | | D1.1, D2.0, CH1.1 |
| | | | | | ACM851 | 2.3.0R01 | 100 | | D1.1, D2.0 |

# EXHIBIT A PART 4

| # | Spec | Type | Manufacturer | ID | Product | Version | Sun Microsystems | Platform | Spec |
|---|---|---|---|---|---|---|---|---|---|
| 28 | P1.0 | CMS | Siemens | 6Siem291 | Surpass hiG 8000 | 06.02.01.05.09 | Netra 1400T | | PC1.0 |
| 28 | PC1.1 in D1.1 | CMTS+PC | Cisco | 1Cisc281 | uBR7246 VXR/NC28U | TS.2.3(9)NC2p | MC28U; Rev 8.5 | | D1.1, PC1.0, PC1.1 |
| 28 | PC10 in D2.0 | CM | Arris | Arr281 | TM402P | TS.04.01.01.013004C | 04 | | D1.1, D2.0, PC1.0 |
| 28 | D1.1 | CM | Electroline | Elec281 | DKT-FS-NA-01 | 2.00 | | | D1.1 |
| 28 | D1.1 | CM | Toshiba | Tosh281 | PCX1100/DA28 | 1.6.022 | 6.11 | | D1.1 |
| 28 | D1.1 | CM | Toshiba | Tosh282 | PCX1100/DA2/2813 | 18.02.41.11 | 6.62 | | D1.0 |
| 28 | D1.1 | CM | Thomson | Thom281 | DCM325 | ST31.06.01 | 1.7 | | D1.1, D2.0 |
| 28 | D1.1 | CM | Thomson | Thom282 | DCM325 | ST32.0D.00 | 1.7 | | D1.1, D2.0 |
| 28 | D1.0 | CM | Conexant | Cone282 | XCM951 | 5.29.30.6.MMAII | 010 | | CH1.0 |
| 28 | D2.0 | Embedded PS | Ambit | Ambi272 | 6074EUW | 5.11.11.111 | 4.7 | | D2.0 |
| 28 | D2.0 | CM | Cisco-Linksys | Linx271 | BEFCM810 ver.3 | 2.0.2.0.1 | 1.1 | | D2.0 |
| 28 | D2.0 | CMTS | Terayon | Tera272 | TJ815g | 4.21.5 | 41.0.0 | | D1.1 |
| 28 | D1.1 | CMTS | Cisco | 1Cisc271 | uBR7246VXR/NC28U | 12.2(15)CX | MC28U; Rev 6.2 | | |
| 27 | D2.0 | Embedded PS | Motorola | Moto271 | SBG900 | SBG900v2.16.0-SCM04-NOSH | 3 | Cas4281 | CH1.0 |
| 27 | C1.0 | CM | Best Data | Best271 | CMX300v2 | SBG900v2.1.6.2- | 2 | | D1.1 |
| 27 | P1.0 | CMS | Telcordia | GTele271 | Telcordia Call Agent | 0.14457.2570 | 10 | | PC1.0 |
| 27 | P1.0 | CM | Scientific Atlanta | Sci271 | WebSTAR DPC2100 | 2.3.3 | Sun Ultra 80 | | D2.0 |
| 27 | PC1.0 in D2.0 | EMTA | Scientific Atlanta | Scie271 | WebSTAR DPX2203 | v2.0.1r1133 | 1.1 | | PC1.0 |
| 27 | D2.0 | CM | Scientific Atlanta | Scie272 | PCX2600/DA2/8823 | v2.0.1r1133 | 1.1 | | D2.0 |
| 27 | P1.0 | Embedded PS | Scientific Atlanta | Scie274 | WebSTAR DPX2100 | 3.0.14 | 19.0.1 | | D2.0 |
| 27 | C1.0 | Embedded PS | Netgear | Ntgr271 | CG814WG | v2.0.1r1134 | 1.3 | | CH1.0 |
| 27 | D2.0 | CM | Thomson | Thom271 | DCM315 | ST32.0A.00 | 1.02 / 3.1 | | D2.0 |
| 27 | D2.0 | CM | Motorola | Moto272 | SB5100 | NOSH / SB5100-2.1.6.0-SCM01- | 3 | | D2.0 |
| 27 | D2.0 | CM | Motorola | Moto272 | SBG900 | SBG900v2.16.0-SCM04-NOSH | 2 | Xms241 | D2.0 |
| 27 | D2.0 | CM | Cabletron, Inc. | Cabl271 | CRM3800 | 7.0.2 | 6.0.1 | | D2.0 |
| 27 | P1.0 | CM | Zyxel | Zyxe271 | Prestige 964 | SW_REV:3.61 | HW_REV:3.6 | | PC1.0 |
| 27 | P1.0 | MSC | Cisco | 3Cisc271 | BTS10200 | R5.4.1011 | BTS10200 | | PC1.0 |
| 27 | P1.0 | CMS | Cisco | 0Cisc271 | BTS10200 | R5.4.1011 | BTS10200 | | PC1.0 |
| 27 | D2.0 | CMS | Cedar Point | 0Ceda271 | SAFARI | R3.0.9.3 | 1.2 | | |
| 26 | PC1.0 in D1.1 | Embedded PS | ADC | 1Adco281 | SBG900 | SBG900v2.2.13.4-SCM0+-NOSH / SBG900v2.3.0.9-SCM01- | 1 / R5.0.0 | | PC1.0 |
| 26 | D2.0 | CM | Motorola | Moto281 | SB5100 | NOSH | 3 | | D2.0 |
| 26 | D2.0 | CM | Scientific Atlanta | Scie285 | WebSTAR DPC2100 | SM41.03.00 | 1.0 | | D2.0 |
| 26 | D2.0 | CM | Ambit | Ambi261 | 6087IEU | v1.0.1r1131+0424 | 1.12 | | D2.0 |
| 26 | D2.0 | CM | Scientific Atlanta | Scie261 | WebSTAR DPX2100 | 2.0.2.0.1 | 1.11 | | D1.0 |
| 26 | D2.0 | MG | Nuera | 4Nuer261 | ETX-4B | 2.0.7.3 | 2.0 | | PC1.0 |
| 26 | C1.0 | CM | Cedar Point | 0Ceda261 | SAFARI | ST48.04.00 | 1.4 | | PC1.0 |
| 26 | PC1.0 in D2.0 | Embedded PS | Thomson | Thom265 | DCM515 (DCM815/DCM815R) | v2.0.1r1132 | 1.1 | | D1.1 |
| 26 | D2.0 | CMS | Thomson | Scie263 | Cuda 12000 (C-12 DMX/XRS/NMS-SF) | | | | CH1.0 |
| 26 | D2.0 | CM | Motorola | Moto264 | SB5100 | NOSH | 3 | | D2.0 |
| 26 | D2.0 | CM | Belkin | Belk261 | F5D5530-W | 0.14457.2571 | 10 | Hitr251 | D2.0 |
| 26 | D2.0 | CM | Castlenet | Cast261 | CXC-150 | 0.14457.2570 | 10 | | PC1.0 |
| 26 | D1.1 | CM | SMC | Smsc262 | SMCD3GN | 1A | 1A | | D1.1 |
| 26 | D1.1 | CM | Thomson | Thom251 | DCM315/DCM815R | ST31.07.00 | 1.5 | | D1.1 |
| 26 | D1.1 | CM | Thomson | Thom264 | DCM315/DCM815R | ST31.08.00 | 1.5 | | D1.0 |
| 26 | D1.1 | Embedded PS | Netgear | Ntgr261 | CG814WG | 2.96R01 | 1.02 | | D1.0 |
| 26 | C1.0 | CM | Thomson | Thom263 | DCM3416D/DCM3416R | ST35.10 | 50.1 | | D2.0 |
| 26 | D2.0 | CM | Terayon | Tera261 | TINET-421A | 10.2.4 | 51.2 | | D2.0 |
| 26 | D2.0 | CM | Terayon | Tera263 | TJ715X | 6.22 | 10.0 | | D2.0 |
| 26 | D2.0 | CM | Terayon | Tera262 | TA-102 | 6.0.1v | 9.3 | | D2.0 |
| 26 | D1.1 | CM | Toshiba | Tosh263 | PCX2200/DA28817 | 1.8.017 | 7.4 | | D1.1 |

| Idx | Ver | Category | Manufacturer | Model | Full Name | Value 1 | Value 2 | Note | Cert |
|---|---|---|---|---|---|---|---|---|---|
| 26 | D1.1 | CM | Motorola | Moto263 | SBG1000-1.1.3.5-SCM040-NOSH | 1.0 | SBG1000-1.1.3.5-SCM040-NOSH | | D1.1 |
| 26 | D1.1 | CM | Linksys | Link261 | BEFCM010 ver.3 | | 1.1./0.1 | | D1.1 |
| 26 | D1.1 | CM | Castlenet | Cast262 | CXC250 | 010 | 5.19.20.2.FORTMESH. | | D1.1 |
| 26 | D1.1 | CM | Linksys | Link263 | WCG200 | 1.0b | 2561 | | PC1.0 |
| 26 | D2.0 | CMS | Synpko | Synp251 | Sysxn 426 | San Blade 1000 | 1.1.5.0.1 | | D2.0 |
| 26 | C1.0 | Embedded PS | Terayon | Tera261 | TJ715 | 9.0 | 22.6/6.1 | | CH1.0 |
| 25 | C1.0 | Embedded PS | Thomson | Thom264 | WCG200 | 1.0b | 6.20 | | CH1.0 |
| 25 | D1.1 | CM | Toshiba | Tosh263 | DCM515DCW615R | 1.40 | 2.0.1.0.2 | | D1.0 |
| 25 | D1.1 | CM | Arris | Arri252 | FCA450A | 17.0.0 | 2.62/003 | | CH1.0 |
| 25 | P1.0 | CMS | Cisco | 0Cisc251 | CM450A | 01 | 1.80 | | PC1.0 |
| 25 | D2.0 | CM | Linksys | Link265 | BTS10200 | R4.0 | CM.04.02.0117/03C | | D1.1 |
| 25 | D1.1 | CM | Linksys | Link261 | WCG200 | 1.0b | R4.0 | | D2.0 |
| 25 | D1.1 | CM | Linksys | Link251 | BEFCMU10 | 3.0 | 2.0.1.0.1 | | D1.1 |
| 25 | D1.1 | CM | Linksys | Link267 | WCG200 | 10.b | 1.5 | | D1.1 |
| 25 | D1.1 | CM | Scientific Atlanta | Scie252 | WebSTAR DPX100 | 2.1 | 2.0.1.0.1 | | D1.1 |
| 25 | D1.1 | CM | SMC | Smco252 | SMC8013WG | 1A | 1.1.2/r.1.3.1 | | D1.1 |
| 25 | D1.1 | CM | Terayon | Tera251 | TA-102 | 0.15 | 2.0.0 | | D1.1 |
| 25 | D2.0 | CM | Terayon | Tera262 | TJ715 | 9.0 | 5.215 | | D2.0 |
| 25 | D2.0 | CM | Thomson | Thom263 | DCW615,DCW615R | 1.40 | 5.26 | | D2.0 |
| 25 | D2.0 | CM | Ambit | Ambi251 | 6067EU | 1.12 | 2.81R01 | | D2.0 |
| 25 | D2.0 | CM | Arris | Arri253 | CM450A | 01 | 2.57.2007 | | D2.0 |
| 25 | D2.0 | CM | Castelnet | Cast253 | CXC250 | 010 | CM.04.02.0117/03C | | D1.1 |
| 25 | D2.0 | CM | Thomson | Thom252 | DCM315, DCM315R | 1.2 | 5.12121 | | D2.0 |
| 25 | | CM | Hilton | Hilt262 | BKG-3520T | 1A | ST32.06.00 | | D1.1 |
| 25 | | CM | Terayon | Tera255 | TJ716X | 7.0 | 2.0.1 | | D1.1 |
| 25 | D2.0 | CM | Motorola | Moto253 | SB5120 | 1 | SB5120-2.9.2.9-SCM-03-NOSH | | D2.0 |
| 25 | D2.0 | CM | Motorola | Moto256 | SB5120 | 2 | 03-NOSH | | D2.0 |
| 25 | P2.0 | CM | Scientific Atlanta | Scie251 | WebSTAR DPX2100 | 1.1 | 2.0.1/1.3.1 | | D2.0 |
| 25 | PC1.0 in D1.1 | CMTS+PC | Arris | 1Arri251 | C4-CMTS-2100-1 | 1.3 | CMTS_V03.01.00.20 | | D2.0 |
| 25 | D2.0 | CM | Terayon | Tera254 | TJ715 | 7.0 | 6.20 | | D2.0 |
| 25 | D2.0 | CM | Toshiba | Tosh252 | PCX2600/DAZ8823 | 190.0.0 | 2.0.13 | | D2.0 |
| 25 | D1.1 | CM | Netgear | Negr251 | C3B14Nx2 | 1A | 1A | | D1.1 |
| 25 | D1.1 | CM | Motorola | Moto262 | SB5120 | 03 | 03-NOSH | | D1.1 |
| 25 | D1.1 | CM | Hilton | Hilt251 | BRG-3520T | 2.0.1 | 2.0.1 | | D1.1 |
| 25 | D1.1 | CM | Comcast | Com251 | EE330A | 1 | 1.1 | | D2.0 |
| 25 | D2.0 | CM | Com21 | Cmtc251 | DP1110XR2 | 17.0 | 2.5.2.111 | | D2.0 |
| 25 | D1.1 | CM | D-Link | Dlnk251 | DCM-201 | 1 | 1.1.0 | | D1.1 |
| 25 | PC1.0 in D1.1 | CMTS+PC | Cisco | 1Cisc253 | uBR7246fvcr | 4A | 12.2(11)BC2p | Hltn231 | PC1.0 |
| 25 | PC1.0 in D1.1 | EMTA | Arris | Arri251 | TTM202P | 1.03 | TM.03.02.0207/03C | | D1.0 |
| 25 | D1.0 | CM | Thomson | Thom251 | DCM315DCM315R | 05 | ST31.04.00 | | D1.0 |
| 25 | PC1.0 in D1.1 | EMTA | Motorola | Moto259 | SB5100 | 1.2 | SBV30/14.1.4.6.13-SCM00-NOSH | | PC1.0 |
| 25 | PC1.0 in D1.1 | CMTS+PC | Cisco | 1Cisc252 | uBR7114 | 1 | 12.2(11)BC3c | | D1.1 |
| 25 | D1.0 | CM | Toshiba | Tosh251 | PCX2600/DAZ8823 | Rev 1.3 / 180.0.0 | 1.0.13 | | PF1.0 |
| 25 | PC1.0 in D1.1 | EMTA | Motorola | Moto255 | SBV4200 | 1 | SBV4200-07.2.04-SCM00-NOSH | | PC1.0 |
| 25 | PC1.0 in D1.1 | CMTS+PC | Cisco | 1Cisc251 | uBR10012 | Rev 4.0 MC28 Rev A0 | 12.2(11)BC2p | | PF1.0 |
| 25 | PC1.0 in D1.1 | CMTS+PC | Motorola | 1Moto251 | BSR64000 | PCA-0100 | 1.3.07/IAP21.KRAU | NPF5400: Rev A0, H/W | PF1.0 |
| 25 | PC1.0 in D2.0 | CMTS+PC | Terayon | 2Tera251 | BW6500 | 5.26 | 10.00.1.21 | | CH1.0 |
| 25 | C1.0 | Embedded PS | Kirpo | Kirp251 | CMD1001 | 4.6 | 5.26 | | D1.0 |
| 25 | D1.1 | CM | Ambit | Ambi253 | 6074DEUW | 9.1.1 | 5.11.1001 | Tech221 | D1.1 |
| 25 | D1.1 | CM | DX Antenna | Dxan251 | CDM-1330DAZ8821 | 1.05 | 1.05 | | D1.1 |
| 25 | D1.1 | CM | Arris | Arri243 | TC000AH430 | 02 | SB5100-1.1.1.1-SCM01- | | D1.0 |
| 24 | D1.1 | CM | Motorola | Moto242 | SB5100 | 1 | NOSH | | D1.1 |
| 24 | D1.1 | CM | Kirpo | Kipo241 | CMD1001 | 7.0 | 5.25 | | D1.1 |
| 24 | D1.1 | CM | Com21 | Cmtc241 | DP1110XB2 | 5.2 | 2.5.2.110 | | D1.1 |
| 24 | D1.1 | CM | Broadband | Broa241 | 8601 | 1.0 | 1.1.1.r1 | | D1.1 |
| 24 | D1.1 | CM | Askey | Aske241 | CME100 | 04 | 1.1.1.r1 | | D1.0 |
| 24 | D1.0 | CM | Arris | Arri241 | TM202D8102 | 1.6 | 3.5.1 | | D1.0 |
| 24 | | CM | Ambit | Ambi241 | 0019AE | 7.8 | 2.23.1099 | | |
| 24 | | CM | Toshiba | Tosh243 | PCX2200/DAZ6818 | 028 | 1.1.02 | | |
| 24 | | CM | Thomson | Thom242 | DCM3505DCM365R | | ST23.19.41 | | |

| # | DOCSIS | Type | Vendor | Model | Product | Ver A | Ver B | Notes | DOCSIS |
|---|--------|------|--------|-------|---------|-------|-------|-------|--------|
| 24 | D1.1 | CM | Pioneer | Pion241 | BT-M650W | 1.1.1 r1 | 1.0 | | D1.1 |
| 24 | D1.1 | CMTS | Scientific Atlanta | ISce2t31 | Prisma E1 | 2.1.1.18B | M2.0-G1 | | D1.1 |
| 24 | D1.0 | CMTS | Toshiba | Tosh245 | PCX201/DA27781 | 1.0.0 | 17.0.0 | | D1.0 |
| 24 | D2.0 | CM | Thomson | Thom241 | DCM315/DCM315R | ST31.01.00 | 3.0 | | D1.0 |
| 24 | D2.0 | CM | Terayon | Tera243 | TJ715 | 6.19 | Rev 3.0 MC5x20S rev. | U.Npr231 | D2.0 |
| 24 | | CMTS | Cisco | 1Cisc241 | U.BR10012 | 12.2(11)BC2c1 | 5.0 | | D1.1 |
| 24 | | CMTS | Terayon | 2Tera241 | BW5500 | 2.0.0.021 | 2.0 | | D2.0 |
| 24 | | CMTS | Arris | 1Arr242 | ARCC00048 | 4.2.6 | | | D1.1 |
| 23 | D1.1 | CMTS | Cisco | 1Cisc242 | U.BR7200 VXR | 12.2(11)BC1c | rev B0, MC16S rev 1.0, / NFE400 Rev40, HW | | D1.1 |
| 23 | C1.0 | CM | Texas Instruments | Texa242 | TNETC406 | 27.8.2 | 1.03 | | D2.0 |
| 23 | D1.1 | CM | Scientific Atlanta | Scie241 | WebSTAR DPX2100 | 2.0.1 r4 | 13.1 | | D2.0 |
| 23 | D1.1 | CM | Thomson | Thom244 | DCM315R/DCM315R | 5.2.6 | 1.1 | | D1.1 |
| 23 | D1.1 | CM | Xrosstech | Xros241 | KCM-3800 | 7.0.2 | 6.0.1 | | D2.0 |
| 23 | D1.1 | CM | Scientific Atlanta | Scie242 | WebSTAR DPX203 | 1.0.4 r4 | 5.0 | | D1.1 |
| 23 | D1.1 | CM | Arris | Arri242 | TCP00A100 | 4.2.0 | 01 | | D1.1 |
| 23 | D1.1 | CM | Toshiba | Tosh241 | PCX3000DA20831 | 6.2.3 | 13.0.0 | | D1.1 |
| 23 | D1.1 | CM | Texas Instruments | Texa241 | CX500 | 8.2.2 | 200.2 | | D1.1 |
| 23 | D1.1 | CM | Terayon | Tera242 | TJ715 | 5.25 | 7.0 | | D1.0, D1.1 |
| 23 | D1.1 | CM | Terayon | Tera241 | TA-102 | 1.1 r3 | 8.15 | | D1.1 |
| 23 | D1.1 | CM | Scientific Atlanta | Scie243 | WebSTAR DPF3362 | S95100-1.1.1-SCM201- | 1.0 | | |
| 23 | D1.0 | CM | Motorola | Moto243 | SB5100 | NIOSH | 1.30 | | D2.0 |
| 23 | D1.0 | Embedded PS | Netgear | Ntgr241 | CG314IW1 | 2.84 | 04 | | CH1.0 |
| 23 | D1.0 | EMTA | Arris | Arri241 | TM822H | 3.1.6 | 13.0.0 | | PC1.0 |
| 23 | D1.0 | EMTA | Toshiba | Tosh232 | PCX3000DA20831 | 7.2.3 | Rev B0 MC16S rev 1.0, | | PC1.0 |
| 23 | D1.0 | CMTS=PC | Cisco | 1Cisc241 | U.BR7246 VXR | 12.2(11)BC1c | NFE400 | | PC1.0 |
| 23 | D1.0 | CMTS=PC | Terayon | 2Tera241 | BW5500 | 2.0.0.0.18 | 2.0 | | PC1.0 |
| 23 | D1.0 | Embedded PS | Linksys | Link241 | BEFCMU.H4 | 2.57.1001 | 1.30 | | CH1.0 |
| 23 | D1.0 | CM | Ambit | Ambi242 | E067EEU | 2.67.1001 | 1.12 | | CH1.0 |
| 23 | D1.0 | CM | Thomson | Thom231 | DCM6205/DCM305R | ST24.13.40 | 028 | | D1.0 |
| 23 | D1.0 | CM | Toshiba | Tosh233 | PCX2700DA20817 | 17.021 | 7.4 | | D1.1 |
| 23 | D1.0 | CM | Askey | Aske231 | CME075 | 1.1.4 r1 | 5.4 | | D1.1 |
| 23 | D1.0 | CM | Ballon | Balk231 | FS05530-W | 0.19045.2310 | 10 | | D1.1 |
| 23 | | CM | Castelnet | Cast231 | CXC150 | 0.19045.2310 | 10 | | D1.0 |
| 23 | | CM | Com21 | Com231 | DP11100B | 2.0.1.r09 | 3 | | D1.0 |
| 23 | | CMTS | Hitron | Hitr231 | BRG-3520 | 1.1.0 | 4A | | D1.0 |
| 23 | | CM | Toshiba | Tosh241 | PCX2500DA20821 | 1.0.11 | 9.2.3 | | D1.0 |
| 23 | | CM | Linksys | Link233 | BEFCMU10 Ver 2 | 1.1 | 4.0 | | D1.0 |
| 23 | | CM | Toshiba | Tosh232 | PCX5000DA20850 | 1.7.0215V | 7.0 | | D1.0 |
| 23 | | CMTS | Motorola | Moto232 | BSR 64000 | 1.3.0703P08A/KRBU | PCA-0100 | | D1.0 |
| 23 | | CMTS | Terayon | 1Tera231 | BW3500 | 3.3.21.2 | 2.0 | | D1.0 |
| 23 | | CM | Intel | Inte231 | 5200 | 14.5.4 | 9 | | D1.0 |
| 23 | | CMTS | Juniper | 1Unpr231 | Juniper G1 | 2.1.160b | M2.0-01 | | D1.0 |
| 23 | | CMTS | Linksys | Link231 | BEFCMU.H4 | 2.63 | 1.30 | | D1.0 |
| 23 | D1.0 | CM | Motorola | Moto231 | SB5100 | SBG1000-0.1.1.1- / SCM003-NIOSH | 1 | | D1.0 |
| 23 | D1.1 | CM | Arris | Arri231 | CM800/DA103 | 3.3.0 | 1.30 | | D1.1 |
| | | CM | Thomson | Thom232 | DCI0232 | 2.63 | 3A | | D1.0 |
| | | CM | Netgear | Ntgr231 | CM212 | 1.01 | 1.0 | | D1.0 |
| 23 | D1.1 | CM | Motorola | Moto232 | SB4200 | 2.7.1b | 2.1 | | D1.0 |
| 23 | D1.1 | CM | Netgear | Ntgr232 | CG814W | 3.63 | 1.0 | | D1.0 |
| 23 | D1.1 | CM | Scientific Atlanta | Scie231 | WebSTAR DPX2100 | 1.0.1-r11.3 | 1.00 | | D1.0 |
| | | CM | Scientific Atlanta | Scie232 | Webstar DPX2100 | 2.0.1r | | | D1.0 |
| 23 | D1.1 | CM | SMC | Simon231 | SMC8012WG | 2.63 | | Hit201 | D1.0 |
| 22 | D1.0 | CM | Efficient Networks, Inc. | Effi231 | SpeedStream 6101 | 2.22.2 | 1.8 | | D1.0 |
| 22 | D1.1 | CM | Fujitsu | Fmit231 | FSC102 | 1.1.2 r1 | 5.1 | | D1.1 |
| 22 | D1.1 | CM | Motorola | Moto224 | SB4200 | 1.4.8.5 | 1 | A5NE211 | D1.1 |
| 22 | D1.1 | CMTS | Cisco | 1Cisc221 | U.BR7200/AS/MC2RC | 12.2(7)BC1c | NFE400, Rev A6 HW / I.O3, MC2RC Rev 80 | | D1.1 |
| 22 | D1.1 | CM | Texas Instruments | Texa221 | TNETC405T | 6.3.0 | HW 2.03 | | D1.1 |
| | | CM | Toshiba | Tosh222 | PCX2500DA20821 | 2.0.7 | 9.1 | | D1.1 |
| | | CM | Motorola | Moto223 | SB4100 | 1.4.8.5 | 9.2.2 | | D1.1 |
| 22 | D1.1 | CMTS | ADC | 1Adco221 | Cuda 12000 (C12- / DM1x6SFM-SF1) | R3.1.23 | 0 | CMTS: Rev A5 | D1.1 |

| Wave | D1.1 | Type | Manufacturer | Code | Model | Version | Build/Rev | Ref | D1.1 | D1.0 |
|---|---|---|---|---|---|---|---|---|---|---|
| 22 | D1.1 | CMTS | Arris | 1Arb222 | ARC0000N8 | 4.2.6 | 01 | | D1.1 | D1.1 |
| 22 | D1.1 | CMTS | Juniper | 1Jnr221 | Juniper G10 | 2.1.0.18 | 2.0 | | D1.1 | D1.1 |
| 22 | D1.1 | CMTS | Motorola | 1Moto222 | BSR 64000 | 1.2.47 KRC | PCA-0057-02 | | D1.1 | D1.1 |
| 22 | D1.1 | CMTS | Motorola | 1Moto222 | BSR 1000 | 01.01.15 PRR | PCA-0027-030 | | D1.1 | D1.1 |
| 22 | D1.1 | CM | Com21 | Cmio222 | DP 1115XB | 2.3.2.108 | 03 | | D1.1 | D1.0 |
| 22 | D1.1 | CMTS | ADC | 1ACo222 | Cuda 12000 (C-12-DMT+ASFM-SF) | R3.1.23 | CMTS: Rev. 23 | | D1.1 | |
| 22 | D1.0 | CM | Motorola | Moto222 | SB4220 | SB4220-1.6.3.0-SCM- / 01-NOSH | 1 | | D1.1 | D1.0 |
| 22 | D1.0 | CM | Toshiba | Tosh224 | PCX2200 | 1.7.017 | 7.5 | | D1.1 | D1.0 |
| 22 | D1.1 | CMTS | Scientific Atlanta | 1Sbe221 | Prisma G10 | 2.1.0.18 | 2.0 | 1Jnr221 | D1.1 | D1.0 |
| 22 | D1.1 | CM | Com21 | Cmto221 | DP 1115XB | 2.3.1.108 | 3 | | D1.1 | D1.0 |
| 22 | D1.0 | CM | Cornelant | Con221 | EC270 | 1.8.10 | 7.41 | | D1.1 | D1.0 |
| 22 | D1.0 | CM | Joohong | Jhoo222 | SL-2890 | Ver5.1.0 | Ver2.1 | | D1.1 | D1.0 |
| 22 | D1.0 | CM | AsusTek | Asu222 | AGM6045EB | 1.9 | 1.4 | | D1.1 | D1.0 |
| 22 | D1.0 | CM | Linksys | Lnk222 | BEFCMUH41 | 1.0 | 0A | | D1.1 | D1.0 |
| 22 | D1.0 | CM | Linksys | Lnk223 | BEFCMUH4 | 2.62 | 1.10 | | D1.1 | D1.0 |
| 22 | D1.0 | CM | Motorola | Moto221 | SB4220 | SB4220-0.6.3.0-SCM- / 01-NOSH | | | D1.1 | D1.0 |
| 22 | D1.0 | CM | Pioneer | Pio221 | BT-M600W | 1.0.7 r1 | 3.0 | | D1.1 | D1.0 |
| 22 | D1.0 | CM | Scientific Atlanta | Sck221 | WebStar DPX100 | 1.0.5.1-1 | 1.0 | | D1.1 | D1.0 |
| 22 | D1.0 | CM | 3Com | 3Com221 | 3CR29223 | 02.06 | 2.00 | | D1.1 | D1.0 |
| 22 | D1.1 | CM | Scientific Atlanta | Sck223 | WebStar DPX100 | 1.0.5.1:1 | 2.2 | | D1.1 | D1.0 |
| 22 | D1.0 | CM | Thomson | Thom222 | DCM305C905R | ST22.05.01 | 028 | | D1.1 | D1.0 |
| 21 | D1.1 | CM | Thomson | Thom222 | DCM305C905R | ST23.10.00 | 029 | | D1.1 | D1.0 |
| 21 | D1.1 | CM | Toshiba | Tosh221 | PCX2500DA2B821 | 1.0.6 | 9.1.1 | | D1.1 | D1.0 |
| 21 | D1.1 | CM | Scientific Atlanta | Sbe222 | WebStar DPX100 | 1.0.5.r1.1 | 2.1 | | D1.1 | D1.0 |
| 21 | D1.1 | CM | Broadsonic | Bma221 | 8601 | 1.1.2 r1 | 5.1 | | D1.1 | D1.0 |
| 21 | D1.0 | CMTS | Arris | 1Arb221 | C4-CMTS-2100-1 | v02.00.02.10 | 1.0 | | D1.1 | D1.0 |
| 21 | D1.0 | CM | Conexant | Cone211 | CX942IC4 | 4.12734 | 2494.3.15.0 | Aska211 | D1.1 | D1.0 |
| 21 | D1.0 | CM | Askey | Asek211 | CMD15 | 1.1.2 r1 | 5.1 | | D1.1 | D1.0 |
| 21 | D1.0 | CM | Avila | Avil211 | A0TM02NA | 2.1.0 | 04 | | D1.1 | D1.0 |
| 21 | D1.0 | CM | | | CM3503- | | | | D1.1 | D1.0 |
| 21 | D1.1 | CM | SMC | Azb211 | CSMCB011CM-B | 2.3.1 | 3.0 | | D1.1 | D1.0 |
| 21 | D1.1 | CM | Thomson | Thom212 | RCA DCM305 | ST22.04.00 | 028 | | D1.1 | D1.0 |
| 21 | D1.0 | CM | Motorola | Moto214 | SB4200 | 0.4.4.0p | Rev.1 | | D1.1 | D1.0 |
| 21 | D1.0 | CM | Motorola | Moto213 | SB4100 | 0.4.4.0p | Rev.0 | | D1.1 | D1.0 |
| 21 | D1.0 | CM | Linksys | Linksys | BEFMCU110 ww-2 | 1.0.6 | 4.0 | | D1.1 | D1.0 |
| 21 | D1.0 | CM | AsusTek | Asxs211 | AGM6045EB | 1.0 | 1.80 | | D1.1 | D1.0 |
| 21 | D1.0 | CM | Austar | Aust211 | HM300c | 71-0001-10 | R0A 219 787/1 R1A | | D1.1 | D1.0 |
| 21 | D1.1 | CM | Quanta Network Systems | Quan211 | QCM200 | 2.4.1 | 3.2 | | D1.1 | D1.0 |
| 21 | D1.1 | CM | DX Antenna | Dnan211 | CDM 1200DA28820 | 1.1R.006 | 3.2 r1 | | D1.1 | D1.0 |
| 20 | D1.1 | CMTS | Arris | 1Arb212 | C4-CMTS100 | V01.01.00.12 | 1.0 | | D1.1 | D1.0 |
| 20 | D1.1 | CM | Linksys | Lnk212 | BEFCMU110 | 1.0.4 Rel.2 | 3.0 | | D1.1 | D1.0 |
| 20 | D1.1 | CM | Scientific Atlanta | Sde211 | WebSTAR DPX100 | 1.1.2 r1 | 2.1 | | D1.1 | D1.0 |
| 20 | D1.1 | CM | Teltaia | Tel211 | CVM315A | 2.50 | RevA | | D1.1 | D1.0 |
| 20 | D1.0 | CM | Terayon | Tera211 | ECM615 | 4.34 | 1.3 | | D1.1 | D1.0 |
| 20 | D1.0 | CM | Terayon | Tera212 | ECM715 | 5.08 | 3.0 | | D1.1 | D1.0 |
| 20 | D1.1 | CM | Thomson | Thom211 | DCM2455CCM245R | ST.1C.00.09 | 026 | | D1.1 | D1.0 |
| 20 | D1.1 | CM | Coresma | Crsm211 | CM6011 | 0.5096.360 | 04 | Cast191 | D1.1 | D1.0 |
| 20 | D1.1 | CM | Best Data | Best211 | CM3000 | 0.0096.360 | 04 | Cast191 | D1.1 | D1.0 |
| 20 | D1.1 | CM | Xceedtech | Xcrs211 | XCM-3300 | 5.0.2 | 5.1.2 | | D1.1 | D1.0 |
| 20 | D1.1 | CMTS | RiverStone | 1ReNe211 | RS 8600 | 8.2.1.1 | Backplane Rev/A | | D1.1 | D1.0 |
| 20 | D1.1 | CMTS | Terayon | 0Tera212 | 92800 | 6.1.2.C-1 | 300-005-03-2B | | D1.1 | D1.1 |
| 20 | D1.0 | CMTS | ADC | 1Adco211 | Cuda 12000 | F3.1.5R | 04 | | D1.1 | D1.0 |
| 20 | D1.0 | CMTS | Cisco | 1Csc211 | UBR10012 | 12.2(4) BCc | Rev 4.0 MC28 Rev/A0 | | D1.1 | D1.0 |
| 20 | D1.1 | CM | Scientific Atlanta | Sde212 | WebSTAR DPX213 | 1.1.2 r1 | 1.0 | RiverStone | D1.1 | D1.0 |
| 20 | D1.1 | CM | Scientific Atlanta | 6Ska201 | Prisma G10 | 2.0.0 | 2.0.0 | | D1.1 | D1.0 |
| 20 | D1.1 | CM | Samsung | Samu211 | SCM-110U | 2.1.0 | 14.00 | | D1.1 | D1.0 |
| 20 | D1.1 | CM | Motorola | Moto201 | SB4100 | 0.4.3.3p | Rev.0 | | D1.1 | D1.0 |
| 20 | D1.1 | CM | Scientific Atlanta | Sde202 | WebSTAR DPX100 | 1.1.1 r1 | 2.0 | | D1.1 | D1.0 |
| 20 | D1.1 | CM | Ericsson | Eric201 | HM206C | CKC 112 2239/1 R1B | R0A 117 8459/1 R2A | 1Anp211 | D1.1 | D1.0 |
| 20 | D1.1 | CM | Arris | Arr201 | A0TM010A | 02 | 02 | | D1.1 | D1.0 |
| 20 | D1.0 | CM | Toshiba | Tosh204 | PCX2200 / DA2B817 | 7.1 | 7.1 | | D1.1 | D1.0 |
| 20 | D1.0 | CM | Thomson | Thom201 | RCA DCM245 | T0A244 | 26 | | D1.1 | D1.0 |
| 20 | D1.1 | CM | Scientific Atlanta | Sde201 | CVM410A | ST13.05.00 | V1.A | | D1.0 | D1.0 |
| 20 | D1.1 | CM | Teltaia | Tel201 | WebSTAR DPX100 | 1.0.5 r1 | Rev.1 | | D1.0 | D1.0 |
| 20 | D1.0 | CM | Motorola | Moto202 | SB4200 | V3.20 | 1.8 | | D1.0 | D1.0 |
| 20 | D1.1 | CM | Ambit | Amb201 | 6019HE | 0.4.3.0p | | | D1.0 | D1.0 |
| 20 | D1.1 | CM | | | | 2.25.988 | | | D1.0 | D1.1 |

| Left# | L-D | Type | Vendor | Product | Version | Rev/Build | Note | R-D |
|---|---|---|---|---|---|---|---|---|
| 20 | D1.0 | CM | Hitron | BRG-3520 | 1.0.1 | 3A | | D1.0 |
| 20 | D1.0 | CM | D-Link | DCM-200 | 4.2.92.1 | 3.2 | | D1.0 |
| 20 | D1.0 | CM | Cisco | UBR925 | Ver 12.2 | 3i | | D1.0 |
| 20 | D1.1 | CM | Ambit | 6023TEUW | 5.1.309 | 4.2 | | D1.0 |
| 20 | D1.0 | CMTS | 3Com | 3CR29023 | 01.22 | 2.00 | | D1.0 |
| 20 | D1.0 | CM | Panasonic | UBR7200 VXR/MC16S | 12.1/CXX2 | rev B9 MC16S rev 1.0 | | D1.1 |
| 20 | D1.0 | CM | Toshiba | TZ-CM200 | 1.7.14 | 2.1 | | D1.0 |
| 20 | D1.0 | CM | Cisco | PCX2500/DA28821 | 2.0.3 | 9.1.0 | | D1.0 |
| 20 | D1.0 | CMTS | Cisco | PCX3000/DA28831 | 2.2.3 | 13.0.0 | | D1.1 |
| 20 | D1.0 | CM | Toshiba | UBR10012 | 2.2.2(IXF1 | rev 3.0 MC28 Rev A0 | | D1.0 |
| 20 | D1.1 | CM | Texas Instruments | TNETC405T | 4.0.9 | 9.0 | | D1.1 |
| 20 | D1.0 | CMTS | Pacific Broadband | Kodak G10 | 2.0.0.16 | 2.0.0 (M2.0/A1.2/D2.0) | | D1.0 |
| 19 | D1.0 | CM | Thomson | DCM245/DCM245H | ST12.07.01 | 26 | | D1.0 |
| 19 | D1.0 | CM | Samsung | SDM-120U | 1.1.1 | 12.20 | | D1.0 |
| 19 | D1.0 | CM | Scientific Atlanta | WebSTAR DPX110 | 1.0.4 Release 2 | 4.0 | | D1.0 |
| 19 | D1.0 | CM | Scientific Atlanta | WebSTAR DPX110 | 1.0.4 Release 2 | 3.0 | | D1.0 |
| 19 | D1.0 | CM | Askey | USB5003 | 3.52 | 4.0 | Scie191 | D1.0 |
| 19 | D1.0 | CM | Terayon | ECM815 | 1.7.11 | 1.2 | | D1.0 |
| 19 | D1.0 | CM | Convedent | EC280T | 1.0.4 Release 2 | 7.11 | Scie192 | D1.0 |
| 19 | D1.0 | CM | Askey | CM4033 | 4.5096 | 3.0 | | D1.0 |
| 19 | D1.0 | CM | Accton | SMC8002CM | 1.0.9M1.2 | 94/4.18.0 | | D1.0 |
| 19 | D1.0 | CM | Hauppauge Computer | BRG-3510 | 1.0.9M1.2 | A0 | | D1.0 |
| 19 | D1.0 | CM | LG Innotek | LCM5000 | 3.47 | A0 | | D1.0 |
| 19 | D1.0 | CM | Terayon | ECM610 | 1.30 | 1.2 | | D1.0 |
| 19 | D1.0 | CM | AsusTek | ACM605/2EB | 04 | 1.30 | | D1.0 |
| 19 | D1.0 | CM | CadantNet | CXC110 | 0.5096,300 | 04 | | D1.0 |
| 19 | D1.0 | CM | Ericsson | HM206c | R56 | 0.5096,300 | Hitr181 | D1.0 |
| 19 | D1.0 | CM | Ericsson | HM204c | R56 | RCA 117 8439/1 R2A | Hitr181 | D1.0 |
| 19 | D1.0 | CM | Ericsson | HM200c | v00,80.17 | RCA 117 8439/1 R2A | | D1.0 |
| 19 | D1.0 | CM | LG Innotek | SM200 | 2.22.2 | R2B | | D1.0 |
| 19 | D1.0 | CM | Motorola | LCM100 | 4.5096 | 03 | | D1.0 |
| 19 | D1.0 | CAM | SMC | S84000 | 4.2.12r | Rev.1 | | D1.0 |
| 19 | D1.0 | CM | Motorola | SMC8002 CM | 2.0.3 | 1.6 | | D1.0 |
| 19 | D1.0 | CM | TriGem Computer | S84100 | 4.0.12P | Rev. 0 | | D1.0 |
| 19 | D1.0 | CM | Motorola | Dream Port-1200 | 1.0.0M1.2 | A0 | | D1.1 |
| 19 | D1.0 | CM | Panasonic | S84101 | 4.0.12P | Rev. 4 | | D1.0 |
| 19 | D1.0 | CM | Cadant | TZ-CM200 | 1.11 | 2.1 | | D1.0 |
| 19 | D1.0 | CMTS | Ambit | C4-CMTS-2100 | v00,80.17 | 1.0 | | D1.1 |
| 19 | D1.0 | CM | | 6016HE | 2.22.2 | 1.8 | | D1.0 |
| 19 | D1.0 | CMTS | Arris | Cornerstone CMTS 1500 | 4.2.0 | 01 | | D1.1 |
| 19 | D1.0 | CM | Toshiba | PCX1500/DA28816 | 1.7.011 | 7.1 | | D1.0 |
| 19 | D1.0 | CM | Toshiba | PCX1200/DA28815 | 1.7.011 | 7.0 | | D1.0 |
| 19 | D1.0 | CMTS | Motorola | DCM-2100 | Release 11x | 4.9447-.001 Rev. A | Corrdent EC280T | D1.0 |
| 19 | D1.0 | CM | Turbocomm | EC200T | 1.7.11 | 7.0 | | D1.1 |
| 19 | D1.0 | CM | Toshiba | PCX2000/DA28821 | 2.01 | 9.0.0 | | D1.0 |
| 19 | D1.0 | CM | Texas Instruments | TNETC405 | 2.0.1 | 2.0.0 | | D1.1 |
| 19 | D1.0 | CM | | Zoom Cable Modem | | | | D1.1 |
| 19 | D1.0 | CM | Zoom | 5041 | 4.100 | 140 | | D1.0 |
| 19 | D1.0 | CM | Samsung | SDM-120U | 1.0.3 | 2.0 | | D1.0 |
| 18 | D1.0 | CM | Ericsson | HM204c | CXC112 20951 R6A | RCA117 8439/1 R2A | | D1.0 |
| 18 | D1.0 | CM | LinkSys | BEUCM11 | 0.4381.108 | 04 | | D1.0 |
| 18 | D1.0 | CM | D-Link | DCM-200 | 4.4382 | 3.2 | | D1.0 |
| 18 | D1.0 | CM | Net & Sys | MNG2000 | 2.1.0 | 4.0 | | D1.0 |
| 18 | D1.0 | CM | Ericsson | HM200c | R3D | R2B | | D1.0 |
| 18 | D1.0 | CM | Zoom | 5001 | 1.66 | 0205-014 (MiB 225014) | Ambit | D1.0 |
| 18 | D1.0 | CM | US Robotics | USR8000 | 2.0.1.2 | 1.6 | | D1.0 |
| 18 | D1.0 | CM | Thomson | DCM245/245R | ST12.07 | 26 | | D1.0 |
| 18 | D1.0 | CM | 3Com | PCX 2000/DA28820 | 1.1R.005 | 3.3.2 | Ambit | D1.0 |
| 18 | D1.0 | CM | Toshiba | 3CR20250 | 2.16.1 | 1.6 | | D1.0 |
| 18 | D1.0 | CM | Ambit | PCX 2000/DA28820 | 1.1R.005 | 3.3.2.1 | | D1.0 |
| 18 | D1.0 | CM | Hitron | 6019HE | 2.8.3 | 1.6 | | D1.0 |
| 18 | D1.0 | CM | Cadlenet | BRG-3510 | 1.0.9M1.2 | A0 | Ambit | D1.0 |
| 18 | D1.0 | CM | 3Com | CXC110-Dual Link | 0.4590,230 | 1.6 | | D1.0 |
| 18 | D1.0 | CMTS | Pacific Broadband | 3CR20250 | 2.16.5 | 2.10.5 | Cast172 | D1.0 |
| 18 | D1.0 | CMTS | | KRD304K F10 | 1.10.17 | Powr171 | | D1.0 |
| 18 | D1.0 | CM | High Speed Surfing | SM100 | 0.4381.108 | 04 | Cast172 | D1.0 |

| No. | Type | Manufacturer | Code | Product | Version | Revision / Note | Extra | D1.0 |
|---|---|---|---|---|---|---|---|---|
| 18 | CM | Infinite | Inf181 | ICM1150T | V.bem v1.8 | ICM1150T Rev D | | D1.0 |
| 18 | CM | Hicon | Hie182 | BWC-3S1.3 | 1.8 rev0.3 | A0 | | D1.0 |
| 18 | CM | Ericsson | Eric181 | HHA206 | CXC112 209401 R5A | ROA117 843911 R2A 13/10 | | D1.0 |
| 17 | CM | Samsung | Sem6171 | SCA-130U | V2.1.0 | Medialynx CM-2000 | | D1.0 |
| 17 | CM | Global Teleman | Gtec171 | MediaLynx CM-2000 | K | Rev 0.5 | | D1.0 |
| 17 | CM | Samsung | Sem171 | SCM-130R | 4.4381 | 12.00 | | D1.0 |
| 17 | CM | Scientific Atlanta | Sci171 | Webster DPX-110 | 1.0.3R4 | 3.0 | Astel171 | D1.0 |
| 17 | CM | High Speed Surfing | High171 | SM110 | 0.4381.108 | 04 | | D1.0 |
| 17 | CM | Tenayon | Tere171 | ECM210 | 1.7.8 | 6.62 | Cornelsen | D1.0 |
| 17 | CM | Texas Instruments | Teas171 | THETC400G | 217 | 3.2 | | D1.0 |
| 17 | CM | Askey | Aske171 | CME063 | 1.0.3R4 | 3.0 | Astel171 | D1.0 |
| 17 | CM | Nortel Networks | Nort171 | CM115U | 1.0.3R4 | 3.0 | | D1.0 |
| 17 | CM | Motorola | Moto174 | SB4100 Rev 3 | 4.0.9p | Rev 3 | | D1.0 |
| 17 | CM | Motorola | Moto173 | SB4100 Rev i | 4.0.9p | Rev 1 | | D1.0 |
| 17 | CM | Motorola | Moto172 | SB4100 Rev 0 | 4.0.9p | Rev 0 | | D1.0 |
| 17 | CM | Matsushite | Mats171 | TZ-CAM100 | 1.1 | 1.1 | | D1.0 |
| 17 | CA | Cisco | Ctec171 | CVA-122 | cre120×1v4y5-roz.TLN 3.1 | | | D1.0 |
| 17 | CA | Daxox | Dato171 | CableXpert CM21100 | 4.0.43.81 | 1.0 | | D1.0 |
| 17 | CA | Castlenet | Cast172 | CXC110-CTI | 0.4381.108 | 04 | | D1.0 |
| 17 | CA | ElsaAG | Elen171 | Microlink Cable | 0.6 | A5 | GVC | D1.0 |
| 17 | CA | Motorola | Moto171 | SB3100 | 3.2.1.2p | Rev 1 | | D1.0 |
| 17 | CM | Ericsson | Eric171 | HX206c R1A (ZAT 510 102/14) | R30 | R1A | | D1.0 |
| 17 | CM | Ericsson | Eric172 | HX204c R1A (ZA1 510 112/14) | r4A | R1A | | D1.0 |
| 17 | CM | Castlenet | Cast171 | CXC110-Cabler | 0.4381.108 | 04 | | D1.0 |
| 17 | CM | Powercom | Powe171 | PCR-2000U | 4.4382 | V3.2 | | D1.0 |
| 17 | CMTS | Arris | 0Arri171 | Cornerstone CMTS-1500 | 4.0.0 | 00 | | D1.0 |
| 17 | CMTS | RiverStone | 0Rise171 | RS 6000 | 6.1.2.C.1 | Backplane 300-001-o5-0A CMTS module 02 | | D1.0 |
| 17 | CMTS | Tellabs | 0Tell171 | Cablespan 2700 | 6.1.2.C.1 | Backplane 300-001-o5-0A CMTS module: -2 | | D1.0 |
| 17 | CMTS | Tenayon | 0Tena171 | BE 2000/BE-CMTS41 | 6.1.2.C.1 u2=7100-41p-mz.121- | Backplane 300-001-o5-0A CMTS module: 02 | | D1.0 |
| 17 | CMTS | Cisco | 0Cisc172 | UBR7100 | 4.4.EC | Line card rev 3 upconv:rev 7 | | D1.0 |
| 17 | CMTS | 3Com | 3Com173 | 3CR29244 | 01.03 | 2.0 | | D1.0 |
| 17 | CMTS | 3Com | 3Com172 | 3CR29223 | 01.15 | 2.0 | | D1.0 |
| 17 | CMTS | Accton | Acct171 | SMC 8001 | 21.0 | 2/1 | | D1.0 |
| 16 | CM | Zoom | Zoom161 | 5931 | 2.0.42.70 | 029D01 | | D1.0 |
| 16 | CMTS | RiverDelta | 6Ridel161 | BSR64000 | 00.01.00.09A | CHS-0001-02 | | D1.0 |
| 16 | CM | Toshiba | Tosh161 | DA3094 | 1.7.007 | 6.62 | | D1.0 |
| 16 | CM | Nortel Networks | Nort161 | CM220 | v2.4 patch 1 | V1.4 | | D1.0 |
| 16 | CM | Cisco | 0Cisc161 | UBR7200/MC28C | 12.1(0a)EC | A0 | | D1.0 |
| 16 | CM | ElsaAG | Elsa161 | 204 | 1.30 | G | | D1.0 |
| 16 | CM | D-Link | Dlin161 | DCM-600 | 4.2.70 | 3.2 | | D1.0 |
| 16 | CM | Ambit | Ambt161 | 60218P | v2.2 patch.9 | v3.1 | | D1.0 |
| 16 | CM | Ambit | Ambt161 | 60194ME | 2.2.7 | 1.4 | | D1.0 |
| 15 | CM | Arris | Aril151 | CM200R | ST1.08 | 25 | | D1.0 |
| 15 | CM | Tenayon | Tere151 | ECM110 | 1.7.6 | 6.12 | | D1.0 |
| 15 | CM | Future Networks | Fulu152 | FN110C | V2.15 | v1.C | | D1.0 |
| 15 | CM | Net & Sys | Nels151 | MNG-1000 | 2.204 | 1.03 | | D1.0 |
| 15 | CM | 3Com | 3Com151 | 3CR29223 | v 1.10 | v 2.00 | | D1.0 |
| 15 | CM | Askey | Aske151 | RT080 | 1.10.0 | V8.0 | | D1.0 |
| 15 | CA | Cisco | Cisc151 | UBR005 | mz | A0 | | D1.0 |
| 15 | CA | DPw | 0Iwe151 | C1001 | 1.0.3657 | 0? Chassis: rev 9; CMTS: Rev 02 | | D1.0 |
| 15 | CMTS | RiverStone | 0Rism151 | RS 8000 | 6.1.0.1 | 6.62 | | D1.0 |
| 15 | CM | Toshiba | Tosh153 | PCX1100U/DA29813 | V2.91.0 | v6.0 | Thomson | D1.0 |
| 15 | CM | Lucent (Delta Kabel) | Lucet151 | Demos 38-u33 | 1.7.006 | 6.12 | | D1.0 |
| 15 | CM | Toshiba | Tosh152 | PCX1100/DA29811 | 1.7.006 | | Aske131 | D1.0 |
| 15 | CMTS | RiverDelta | 6Ridel152 | BSR 1000 | 2.1.9 | BSR 1000 | | D1.0 |

| D1.0 | # | D1.0 | Type | Vendor | Code | Model | Version | Chassis / Rev | Notes | D1.0 |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | Chassis: revE. CMTS: | | |
| D1.0 | 15 | D1.0 | CMTS | Teranyon | 0Tera151 | Teralink 2000 TLL- CMTS41A | 6.1 | Rev. 2 | | D1.0 |
| D1.0 | 15 | D1.0 | CM | Teranyon | Tera152 | ECM210 | 1.7.8 | 6.62 | | D1.0 |
| D1.0 | 15 | D1.0 | CM | Serjon | Serj151 | SC-5100E | V1.13 | V1.2 | | D1.0 |
| D1.0 | 15 | D1.0 | CM | Maxpro | Maxp151 | 77TCM2 | V1.0 | V1.C | | D1.0 |
| D1.0 | 15 | D1.0 | CM | Teranyon | Tera153 | TCM310 | 6006-5B | D | | D1.0 |
| D1.0 | 14 | D1.0 | CM | Motorola | Moto152 | SB3100 Rev C | Rev v3.2.9 | A0 | | D1.0 |
| D1.0 | 14 | D1.0 | CM | Cisco | Cisc151 | UBR 7200 VXR | 12.1(2)EC1 | 25 | | D1.0 |
| D1.0 | 14 | D1.0 | CM | Thomson | Thom151 | DCM235/235R | ST 1.0A | 6 | | D1.0 |
| D1.0 | 14 | D1.0 | CM | Com21 | Cmto151 | DP1110 | 2.3.0.100 | v1.0 | | D1.0 |
| D1.0 | | D1.0 | CM | CIS | Cis151 | WS-CM30E01E | v0.14 | E | | D1.0 |
| D1.0 | | D1.0 | CM | ElsaAG | Elsa151 | 204 | 1.18 | | | D1.0 |
| | | | | | | DCM 2000 475390-001- | | | | |
| D1.0 | 14 | D1.0 | CMTS | Motorola | 0Moto151 | 00 | Rev 1.0 | 475595-001-00 Rev 01 | | D1.0 |
| D1.0 | 14 | D1.0 | CM | GVC | Gvcc141 | CM40/CM/CM | 00 | Rev 2.3 | PowerCom | D1.0 |
| D1.0 | 14 | D1.0 | CM | D-Link | Dlin141 | DCM100 | 0.44.32.52 | 6.11 | Tosh131 | D1.0 |
| D1.0 | 14 | D1.0 | CM | D/X Antenna | Dxan141 | DAZ2811 | 1.7.003 | Engine: MVMEZ306-900 MRX, 742070G01, | | D1.0 |
| D1.0 | 14 | D1.0 | CMTS | Motorola | 0Moto142 | MMLN 4004D | 5.2 | Rev R2B | | D1.0 |
| D1.0 | 14 | D1.0 | CM | Ericsson | Eric142 | HM200c | Rev R1E | | | D1.0 |
| D1.0 | 14 | D1.0 | CM | Com21 | Cmto141 | DP121 | 1.6.19 | 6.6 | | D1.0 |
| D1.0 | 14 | D1.0 | CM | Ericsson | Eric141 | HM200c | Rev R1O | Rev R2B | | D1.0 |
| D1.0 | 14 | D1.0 | CMTS | Arris | 0Arri142 | CMTS-1000 | 3.2.1 | Rev 08 | | D1.0 |
| D1.0 | 14 | D1.0 | CMTS | Cisco | 0Cisc141 | UBR 7200 VXR | 12.0(11)SC | A0 | | D1.0 |
| D1.0 | 14 | D1.0 | CM | AsusTek | Asus141 | ACM6000EB | 1.3 | 1.3 | | D1.0 |
| D1.0 | 14 | D1.0 | CM | Zoom | Zoom142 | 5011 | 0.44.32.52 | 0293-01C | | D1.0 |
| D1.0 | 14 | D1.0 | CM | Ambit | Ambi141 | 6006BE | 2.0.13 | 1.3 | | D1.0 |
| D1.0 | 14 | D1.0 | CM | Terayon | Tera141 | ECM210 | Rev 1.6.19 | Rev 6.6 | | D1.0 |
| D1.0 | 14 | D1.0 | CM | Ambit | Ambi142 | 6006BU | 2.0.5 | 2.0 | | D1.0 |
| D1.0 | 14 | D1.0 | CM | Arris | Arri141 | CM200U | ST 5.14 | V25 | | D1.0 |
| D1.0 | 14 | D1.0 | CM | Thomson | Thom141 | DCM 225 | Ver 5.14 | Ver 25 | RCA | D1.0 |
| D1.0 | 14 | D1.0 | CM | Samsung | Sams141 | SGM-110R Ether | Rev 2.0.2 | Rev 11.10 | | D1.0 |
| D1.0 | 14 | D1.0 | CM | Zoom | Zoom141 | 5031 | 1.44.32.52 | 0293-01 | | D1.0 |
| D1.0 | 14 | D1.0 | CM | Motorola | Moto143 | SB3100 Rev C | Rev 4.3.6 | Rev C | | D1.0 |
| D1.0 | 13 | D1.0 | CM | Powercom | Powe141 | PCR-2600 | 0.44.32.51 | Rev 2.3 | | D1.0 |
| D1.0 | 13 | D1.0 | CM | Motorola | Moto141 | SB3100 Rev D | Rev v3.2.6 | Rev D | | D1.0 |
| D1.0 | 13 | D1.0 | CM | GVC | Gvcc131 | CMX-S0 | 3.1.0 | B | | D1.0 |
| D1.0 | 13 | D1.0 | CM | Alcatel | Alca131 | UM141 | 1.7.3 | 6.10 | | D1.0 |
| D1.0 | 13 | D1.0 | CM | Toshiba | Tosh131 | DAZ2811 | 1.7.003 | 6.11 | | D1.0 |
| D1.0 | 13 | D1.0 | CMTS | 3Com | 03Com135 | 8R-0026178-10 | 4.4.18 | Rev B | | D1.0 |
| D1.0 | 13 | D1.0 | CMTS | Jiaohong | Jioh131 | Superlink 2000 | 1.7.3 | 6.1 | | D1.0 |
| D1.0 | 13 | D1.0 | CM | Softworks | Soho131 | NSC200 | 1.7.3 | 6.10 | TurboNet | D1.0 |
| D1.0 | 13 | D1.0 | CM | BAS | 0Bass131 | Cuda | 0.1.58 | D | Communications | D1.0 |
| D1.0 | 13 | D1.0 | CM | Cisco | Cisc131 | UBR924 | uln020-a1y5- mz.12o6RTLN | A0 | | D1.0 |
| D1.0 | 13 | D1.0 | CM | Toshiba | Tosh132 | 0Az2813 | 1.9/-4.6/4.6 | 6.6 | | D1.0 |
| D1.0 | 13 | D1.0 | CM | 3Com | 3Com133 | 3CR29220 | 1.0.4 | 2.00 | | D1.0 |
| D1.0 | 13 | D1.0 | CM | Askey | Aske131 | CME033 | V2.91.0 | V8.0 | | D1.0 |
| D1.0 | 13 | D1.0 | CM | Motorola | Moto133 | SB3100 Rev C | Rev C | Rev C | | D1.0 |
| D1.0 | 13 | D1.0 | CM | NetGame | Netai131 | Phaze | x5.2.1 | 6.0 | | D1.0 |
| D1.0 | 13 | D1.0 | CM | 3Com | 3Com131 | 3CR29210 | 2.83 | B.2 | | D1.0 |
| D1.0 | 13 | D1.0 | CM | Nortel Networks | Nort131 | CM115 | 3.1.0 | V8.0 | | D1.0 |
| D1.0 | 13 | D1.0 | CM | ZyXel | Zyxe131 | 941 | V2.81.0 | Zygate v1.58 | | D1.0 |
| D1.0 | 13 | D1.0 | CM | Future Networks | Futu131 | 100L | 2.4 | V2.2 | | D1.0 |
| D1.0 | 13 | D1.0 | CM | Future Networks | Futu132 | 110L | V2.13 | V1.0 | | D1.0 |
| D1.0 | 13 | D1.0 | CM | 3Com | 03Com134 | 60A000971-01 | V2.13 | 6.0 | | D1.0 |
| D1.0 | 13 | D1.0 | CM | NetGear | Netg131 | CM201 | 3.61.48-1 | 6.10 | | D1.0 |
| D1.0 | 12 | D1.0 | CM | Best Date | Best131 | CMX110 | 2.80 | 1.7.3 | | D1.0 |
| D1.0 | 12 | D1.0 | CM | Arris | Arri131 | CM200 | 1.7.3 | ST 4.66 | | D1.0 |
| D1.0 | 12 | D1.0 | CM | Askey | Aske132 | CME030 | ST 4.3.6 | v6.0 | Aske121 | D1.0 |
| D1.0 | 12 | D1.0 | CM | Arris | Arri122 | CM200U | v2.80 | V25 | | D1.0 |
| D1.0 | 12 | D1.0 | CM | 3Com | Arif121 | 2940 | ST 5.05 | L3 | | D1.0 |
| D1.0 | 12 | D1.0 | CM | Thomson | 3Com121 | DCM 225 | 2.03 | V25 | | D1.0 |
| D1.0 | 12 | D1.0 | CM | High Speed Surfing | Thom123 | SM100 | ST5.0.65 | 6.1 | | D1.0 |
| D1.0 | 12 | D1.0 | CM | Thomson | High121 | DCM 215 | 1.6.16 | V24 | | D1.0 |
| D1.0 | 12 | D1.0 | CM | Thomson | Thom122 | DCM 215 | ST4.0b | V24 | Aske121 | D1.0 |
| D1.0 | 12 | D1.0 | CM | Thomson | Thom121 | DCM 215 | ST6.05 | 6.1 | | D1.0 |
| D1.0 | 12 | D1.0 | CM | Turbocomm | Turb121 | GM110 | 1.6.16 | 6.1 | | D1.0 |
| D1.0 | 12 | D1.0 | CM | Terayon | Tera121 | ECM100 | 1.6.16 | 6.1 | | D1.0 |

| Ver | Tier | Type | Manufacturer | Code | Model | SW Version | HW Version | DOCSIS |
|---|---|---|---|---|---|---|---|---|
| 12 | D1.0 | CM | Terayon | Teon122 | ECM110 | 1.6.16 | 5.4 | D1.0 |
| 12 | D1.0 | CM | Motorola | Moto122 | MML-N3160A | 2.0.2051 | 74362G01 | D1.0 |
| 12 | D1.0 | CM | Motorola | Moto121 | MLN6200A | 1.0CL08 | 75987G01 | D1.0 |
| 12 | D1.0 | CM | Toshiba | Toeh122 | DAZ2811 | 1.7.002 | 6.1 | D1.0 |
| 12 | D1.0 | CM | Dasatuit | Dses121 | VJ0020 | v2.90 | v6.0 | D1.0 |
| 11 | D1.0 | CM | Com21 | Cmto123 | EP111 | 1.6.16 | 6.1 | D1.0 |
| 11 | D1.0 | CM | Toshiba | Toeh121 | EP111 | 1.6.016 | 6.1 | D1.0 |
| 11 | D1.0 | CM | Com21 | Cmto121 | DAZ2811 | 1.6.14 | 5.4 | D1.0 |
| 11 | D1.0 | CM | Com21 | Cmto114 | DP101 | 5.0.5.100 | 6500106 rev05 | D1.0 |
| 11 | D1.0 | CM | Thomson | Cmto112 | CP3001 | ST1.1.10 | ver 16 | D1.0 |
| 11 | D1.0 | CMTS | Cisco | Thom111 | DCM 2055 | 11.3(11a)NA1 | A0 | D1.0 |
| 11 | D1.0 | CM | Com21 | 6Clsct111 | UBR7200 | 1.1.0.100 | 6500106 rev55 | D1.0 |
| 10 | D1.0 | CM | DX Antenna | Cmto113 | CP3001 | 1.6.003 | 5.21 | D1.0 |
| 10 | D1.0 | CM | General Instrument | Dsen111 | DAZ2801D | V3.0.7 | -001Rev0 | D1.0 |
| 10 | D1.0 | CM | Best Data | Gene112 | SB3100B | 1.6.14 | 5.4 | D1.0 |
| 10 | D1.0 | CM | General Instrument | Best111 | CMX100 | V3.0.7 | -002Rev A | D1.0 |
| 10 | D1.0 | CM | Com21 | Gene111 | SB3100A | 1.0.1.100 | 6500087 rev04 | D1.5 |
| 10 | D1.0 | CM | Thomson | Cmto111 | CP3001 | ST 20.5.3 | HW Ver 12 | D1.5 |
| 9 | D1.0 | CM | Terayon | Thom101 | DCM 105 | 1.6.9 | 5.4 | D1.0 |
| 9 | D1.0 | CMTS | Arris | Tera101 | ECM100 | 2.0.0 | 03 | D1.0 |
| 9 | D1.0 | CM | Toshiba | 0Arl051 | DE2801E02 | Ver 1.6.053 | Ver 5.21 | D1.0 |
| 9 | D1.0 | CMTS | Philips | Toeh092 | PCX1000/DAZ6801F | 1.76 | 1.11  Toeh092 | D1.0 |
| 9 | D1.0 | CM | Sony | Phil091 | PD10D | 1.1 (0.76.1) | 1.11 | D1.0 |
| 9 | D1.0 | CM | Askey | Sony091 | CMR-U000 | 1.76 | 1.11 | D1.0 |
| 9 | D1.0 | CM | — | Askel091 | CME010 |  |  | D1.0 |
| 9 | D1.0 | CM | Motorola | Moto091 | MML-N4004D | 5.0(10p1)3b | MAC, 74026G01, Rev A Engine, MXME2306-9500MTX-H, 74612G01, RevD6+RevA MTX-LO, 74039G01, Rev 02 MRX, 74261G01, Rev C | D1.0 |
| 9 | D1.0 | CM | Cisco | Cledt081 | UBR904 | 11.3(8)NA.ucr904-k1y4-mx.cablelabs.13may99 | A0 | D1.0 |
| 9 | D1.0 | CM | Samsung | Sams091 | SCM-100R | 1.1.78 | 1.2 | D1.0 |
| 8 | D1.0 | CM | 3Com | 3Como081 | 3CR292-0IE56 | 12.30 | AH-3 | D1.0 |
| 8 | D1.0 | CMTS | Arris | 0Arl081 | UE3904225 | V1.0.0.3 | 02 | D1.0 |
| 8 | D1.0 | CM | General Instrument | Gene091 | SB3100 | V1.1.1 | X3.002 | D1.0 |
| 7 | D1.0 | CM | Toshiba | Toeh071 | DAZ2801E | 1.51k | 5.2 | D1.0 |
| 7 | D1.0 | CMTS | Cisco | 6Clsd071 | UBR7200 | 11.2(47)NA | A0 | D1.0 |
| 7 | D1.0 | CM | Thomson | Thom071 | DCM 105 | STR.4 | Pilot 3 o Rev/s | D1.0, CH1.0 |

# B

| Claim Element | Evidence of Infringement |
|---|---|
| 1. A method for establishing a link layer connection | Rembrandt does not express a position at this time as to whether this portion of the preamble of this claim limits the claim's scope. Nevertheless, Rembrandt identifies below aspects of the Accused Instrumentalities that correspond to this portion of the claim preamble. |
| | As described in the '631 patent, one example of a link layer connection is an error-control protocol. The Accused Method establishes a link layer connection by establishing an error-corrected upstream data connection between a DOCSIS 2.0 compliant CM and CMTS. |
| | The '631 patent describes that a link layer connection "is provided to perform error checking functions as well as retransmitting frames that are not received correctly." (1:53-54.) The Accused Method, to comply with the DOCSIS 2.0 standard, must establish an error-corrected (i.e., link layer) connection between the DOCSIS 2.0 compliant CMs and CMTSes. The DOCSIS 2.0 standard sets forth at least four protocols to establish such a connection: Reed-Solomon Forward Error Correction ("RS encoding") without block interleaving; RS encoding with block interleaving (with a plurality of permissible interleaver depths); trellis-coded modulation; and no error correction. (*See* DOCSIS 2.0 standard at 142, Table 8-19.) |
| | In the event this portion of the preamble is construed as limiting and found to be not literally present in the Accused Method, Rembrandt contends that the Accused Method meets the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the Accused Method are insubstantial.[1] The Accused Method performs substantially the same function (establishing a link layer connection), in substantially the same way (by establishing an error control protocol), to achieve substantially the same result (establishment of a connection using a shared link layer protocol), as the recited limitation. |
| | This claim element may include features that relate to software of the Accused Instrumentalities, and Rembrandt reserves the right to supplement or modify these contentions under Judge Ward's |

[1] Any use within these charts of the words "limitation" or "portion" of a claim are for convenience, and do not constitute any admission that such language within the claim forms the boundaries of a claim element for purposes of the doctrine of equivalents. Moreover, no statement in these contentions should be construed as an admission that any language of the preamble is limiting. Rembrandt takes no position at this time regarding whether any language of any preamble is limiting.

1

| Claim Element | Evidence of Infringement |
|---|---|
| between a calling modem having a plurality of possible first physical layer modulations and a plurality of possible link layer connections | modification to the Local Patent Rules, Rule 3-1(b). |
| | Rembrandt does not express a position at this time as to whether this portion of the preamble of this claim limits the claim's scope. Nevertheless, Rembrandt identifies below aspects of the Accused Instrumentalities that correspond to this portion of the claim preamble. |
| | The Accused Method involves a calling modem, for example a DOCSIS 2.0 compliant CM. The Accused Method establishes a link layer connection (e.g., an error-corrected upstream or downstream data connection) between the calling modem (a DOCSIS 2.0 compliant CM) and an answering modem (a DOCSIS 2.0 compliant CMTS). The DOCSIS 2.0 compliant CM is typically located in the home or business of a Comcast cable Internet subscriber. The DOCSIS 2.0 compliant CMTS is operated by Comcast. |
| | The DOCSIS 2.0 compliant CMs have a plurality of possible first physical layer modulations. As described in the '631 patent, a physical layer connection "is concerned with establishing the electrical and mechanical connection between two modems." (1:50-51). The Time Division Multiple Access (TDMA) and Synchronous Code Division Multiple Access (S-CDMA) protocols relate to the electrical and mechanical connection between the DOCSIS 2.0 compliant CMs and CMTSes. The DOCSIS 2.0 compliant CMs therefore have a "a plurality of possible first physical layer modulations." |
| | In addition, modulation formats such as QPSK, 8QAM, 16QAM, 32QAM, 64QAM, and 128QAM are prescribed by the DOCSIS 2.0 standard. (See DOCSIS 2.0 standard at 141, Table 8-19.) Because these formats relate to the electrical and mechanical connection between the DOCSIS 2.0 compliant CMs and CMTSes, they represent, with respect to the DOCSIS 2.0 compliant CM, "a plurality of possible first physical layer modulations." |
| | In addition, the DOCSIS 2.0 standard specifies that compliant devices must support a plurality of data rates: 160, 320, 640, 1280, 2560, or 5120 KHz. (See id. at 137, Table 8-18.) The data rate relates to the electrical and mechanical connection between the DOCSIS 2.0 compliant CMs and CMTSes. The various data rates represent, with respect to the DOCSIS 2.0 compliant CM, "a plurality of possible first physical layer modulations." |

2

| Claim Element | Evidence of Infringement |
|---|---|
| | The DOCSIS 2.0 compliant CMs have a plurality of possible link layer connections. The DOCSIS standard sets forth at least four possible link layer connections that compliant DOCSIS 2.0 compliant CMs, used in the Accused Method, must support: Reed-Solomon Forward Error Correction ("RS CMs, used in the Accused Method, must support: Reed-Solomon Forward Error Correction ("RS encoding") without block interleaving; RS encoding with block interleaving (with a plurality of permissible interleaver depths, see DOCSIS 2.0 standard at 141, Table 8-19 (showing "FEC Error Correction (T)" parameter); trellis-coded modulation with $m$ (bits per symbol) equal to 1, 2, 3, 4, 5, or 6, and at a coding rate of 1/2 or 2/3 (see DOCSIS 2.0 standard at 50, § 6.2.8); and no error correction. (See DOCSIS 2.0 standard at 142, Table 8-19.) |
| | In the event this portion of the preamble is construed as limiting and found to be not literally present in the Accused Method, Rembrandt contends that the Accused Method meets the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the physical layer modulations and link layer connections utilized by the DOCSIS 2.0 compliant CMs are insubstantial. The DOCSIS 2.0 compliant CMs, physical layer modulations and link layer connections of the Accused Method perform substantially the same function (providing physical modulation and link layer connection between a calling and answering modem), in substantially the same way (providing a calling modem that supports a plurality of physical layer modulations and link layer connections), to achieve substantially the same result (communication from a calling modem using a physical layer modulation and a link layer connection selected from a plurality of modulations and connections), as the recited limitation. |
| | In the alternative, the DOCSIS 2.0 compliant CM constitutes an answering modem and the DOCSIS 2.0 compliant CMTS constitutes a calling modem. It is understood that in this case the roles of these components can be reversed. For clarity and convenience, the descriptions within this chart describe the functionality of the DOCSIS 2.0 compliant Method utilizing the CM as the recited "calling modem" and the CMTS as the recited "answering modem." |
| | This claim element may include features that relate to software of the Accused Instrumentalities, and Rembrandt reserves the right to supplement or modify these contentions under Judge Ward's modification to the Local Patent Rules, Rule 3-1(h). |
| and an answering modem | Rembrandt does not express a position at this time as to whether this portion of the preamble of this |

3

| Claim Element | Evidence of Infringement |
|---|---|
| having a plurality of possible second physical layer modulations and a plurality of possible second link layer connections, | claim limits the claim's scope. Nevertheless, Rembrandt identifies below aspects of the Accused Instrumentalities that correspond to this portion of the claim preamble.

The Accused Method involves an answering modem, for example an DOCSIS 2.0 compliant CMTS. The Accused Method establishes a link layer connection (an error-corrected upstream or downstream data connection) between a calling modem (an DOCSIS 2.0 compliant CM) and an answering modem (an DOCSIS 2.0 compliant CMTS). Alternatively, an DOCSIS 2.0 compliant CM constitutes an answering modem and an DOCSIS 2.0 compliant CMTS constitutes a calling modem.

The DOCSIS 2.0 compliant CMTSes have a plurality of possible second physical layer modulations. As described in the '631 patent, a physical layer connection "is concerned with establishing the electrical and mechanical connection between two modems." (1:50-51). The Time Division Multiple Access (TDMA) and Synchronous Code Division Multiple Access (S-CDMA) protocols relate to the electrical and mechanical connection between the DOCSIS 2.0 compliant CMs and the DOCSIS 2.0 compliant CMTSes. The DOCSIS 2.0 compliant CMTSes therefore have a "a plurality of possible second physical layer modulations."

In addition, modulation formats such as QPSK, 8QAM, 16QAM, 32QAM, 64QAM, and 128QAM are prescribed by the DOCSIS 2.0 standard. (See DOCSIS 2.0 standard at 141, Table 8-19.) Because these formats relate to the electrical and mechanical connection between the DOCSIS 2.0 compliant CMs and the DOCSIS 2.0 compliant CMTSes, they represent, with respect to the DOCSIS 2.0 compliant CMTS, "a plurality of possible second physical layer modulations."

In addition, the DOCSIS 2.0 standard specifies that compliant devices must support a plurality of data rates: 160, 320, 640, 1280, 2560, or 5120 KHz. (See id. at 137, Table 8-18.) The data rate relates to the electrical and mechanical connection between the DOCSIS 2.0 compliant CMs and the DOCSIS 2.0 compliant CMTSes. The various data rates represent, with respect to the DOCSIS 2.0 compliant CMTS, "a plurality of possible second physical layer modulations."

The DOCSIS 2.0 compliant CMTSes have a plurality of possible second link layer connections. The DOCSIS 2.0 standard sets forth at least four possible link layer connections that compliant DOCSIS 2.0 compliant CMTSes, used in the Accused Method, must support: Reed-Solomon Forward Error |

4

| Claim Element | Evidence of Infringement |
|---|---|
| | Correction ("RS encoding'") without block interleaving; RS encoding with block interleaving (with a plurality of permissible interleaver depths, see DOCSIS 2.0 standard at 141, Table 8-19 (showing "FEC Error Correction (T)" parameter); trellis-coded modulation with m (bits per symbol) equal to 1, 2, 3, 4, 5, or 6, and at a coding rate of 1/2 or 2/3 (*see* DOCSIS 2.0 standard at 50, § 6.2.8); and no error correction. (*See* DOCSIS 2.0 standard at 142, Table 8-19.)

In the event this portion of the preamble is construed as limiting and found to be not literally present in the Accused Method, Rembrandt contends that the Accused Method meets the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Method are insubstantial. The aforementioned features perform substantially the same function (providing physical modulation and link layer connection between a calling and answering modem), in substantially the same way (providing an answering modem that supports a plurality of physical layer modulations and link layer connections), to achieve substantially the same result (communication with an answering modem using a physical layer modulation and a link layer connection selected from a plurality of modulations and connections), as the recited limitation.

This claim element may include features that relate to software of the Accused Instrumentalities, and Rembrandt reserves the right to supplement or modify these contentions under Judge Ward's modification to the Local Patent Rules, Rule 3-1(h). |
| comprising the steps of: | |
| establishing a physical layer connection between said calling and said answering modems | In the Accused Method, the DOCSIS 2.0 compliant CMs and the DOCSIS 2.0 compliant CMTSes establish a physical layer connection on an upstream channel as follows: After the CM has acquired a downstream channel (*see* DOCSIS 2.0 standard at 241-42, § 11.2.1) the CM waits for the CMTS to send an upstream channel descriptor (UCD) message on the downstream channel. (*See id.* at 243, § 11.2.2.) The UCD describes the parameters of a specific upstream channel, including parameters for physical layer modulations as described in connection with the preamble analysis, above.

In the event this limitation is construed or applied in such a way that it is found to be not literally |

5

| Claim Element | Evidence of Infringement |
|---|---|
| | present in the Accused Method, Rembrandt contends that the Accused Method meets the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Method are insubstantial. The aforementioned features of the Accused Method performs substantially the same function (establishing a physical layer connection between two modems), in substantially the same way (by selecting a physical layer modulation supported by each of the modems), to achieve substantially the same result (establishment of a physical layer connection using a common physical layer modulation), as the recited limitation. |
| wherein said physical layer connection is based on a negotiated physical layer modulation chosen from said first and second physical layer modulations; and | In the Accused Method, the physical layer modulation is negotiated when the CM selects an upstream channel based on a UCD message that contains channel description parameters, including parameters reflecting the physical layer modulation, that the CM supports. (*See* DOCSIS 2.0 standard at 243, § 11.2.2.)

Because the CMTS will only offer, in the UCD, parameters for physical layer modulations that it supports, the negotiated physical layer modulation is chosen from the second physical layer modulation. Similarly, because the CM will only accept an upstream channel described by a UCD containing parameters for physical layer modulations that it supports, the negotiated physical layer modulation is chosen from the second physical layer modulation.

In the event this limitation is construed or applied in such a way that it is found to be not literally present in the Accused Method, Rembrandt contends that the Accused Method meets the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Method are insubstantial. The aforementioned features of the Accused Method performs substantially the same function (establishing a physical layer connection between two telecommunications devices), in substantially the same way (by selecting a mutually agreed upon physical layer modulation supported by each of the devices), to achieve substantially the same result (establishment of a physical layer connection between the devices using a common physical layer modulation supported by each device), as the recited limitation. |

6

| Claim Element | Evidence of Infringement |
|---|---|
| establishing said link layer connection based upon said negotiated physical layer modulation. | This claim element may include features that relate to software of the Accused Instrumentalities, and Rembrandt reserves the right to supplement or modify these contentions under Judge Ward's modification to the Local Patent Rules, Rule 3-1(h). |
| | In the Accused Method, a link layer connection is established when the DOCSIS 2.0 compliant CM communicates on an upstream channel with an DOCSIS 2.0 compliant CMTS using Reed-Solomon encoding with a specified interleaver depth, trellis-coded modulation, or no error correction. |
| | The link layer connection that is established is based on the negotiated physical layer modulation. RS encoding with block interleaving is only available on a TDMA connection (DOCSIS type 1, 2, or 3A channel), whereas trellis-coded modulation is only available on an S-CDMA connection (DOCSIS type 3S channel). (*See id.* at 50, § 6.2.8 & *id.* at 142, Table 8-19.) |
| | In addition, on information and belief, the Accused Method establishes a higher-strength link level connection on a higher-speed connection. Specifically, on information and belief, the CMTS sets the interleaver depth for the RS encoder to a higher value on higher-speed channels. Because link speed is one of the parameters of the negotiated physical layer modulation, and the interleaver depth is a parameter of the link level connection, the link layer connection is based on the physical layer connection. |
| | In addition, in the trellis encoding and decoding related components used in a DOCSIS cable modem channel involve a link layer connection that is established based on the negotiated physical layer modulation. Specifically, one parameter of the physical layer modulation is the number of bits per symbol (*m*). The trellis-encoder interacts with a symbol mapper to produce different types of link layer connections based on the number of bits per symbol negotiated in the physical layer. For example, if *m*=1, a rate 1/2 coder is used in the link layer connection and if *m*>1, a rate 2/3 coder is used in the link layer connection. Also, for different values *m*=2,3,...6, i.e., when a rate 2/3 coder is used, different link layer encoding/decoding schemes will be implemented via the symbol mapper in the DOCSIS 2.0 CDMA compliant transmitter and the trellis decoder in the DOCSIS 2.0 CDMA compliant receiver. (*See* DOCSIS 2.0 standard at 70-71, Figs. 6-8, 6-18-6-26, and Table 6-3.) |
| | In the event this limitation is construed or applied in such a way that it is found to be not literally |

7

| Claim Element | Evidence of Infringement |
|---|---|
| | present in the Accused Method, Rembrandt contends that the Accused Method meets the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Method are insubstantial. The aforementioned features of the Accused Method performs substantially the same function (establishing a link layer connection between two telecommunications devices), in substantially the same way (selecting a link layer protocol based on the mutually agreed upon physical layer modulation), to achieve substantially the same result (establishing a mutually acceptable link layer connection between the devices that can be used by both the calling and answering devices), as the recited limitation. |
| | This claim element may include features that relate to software of the Accused Instrumentalities, and Rembrandt reserves the right to supplement or modify these contentions under Judge Ward's modification to the Local Patent Rules, Rule 3-1(h). |
| 3. The method of claim 1, wherein said link layer connection is an error-correcting protocol. | The link-layer connection described above with respect to claim 1 is an error-correcting protocol. RS encoding and trellis-coded modulation are error-correcting protocols. |
| | In the event this limitation is construed or applied in such a way that it is found to be not literally present in the Accused Method, Rembrandt contends that the Accused Method meets the recited limitation under the doctrine of equivalents, because any purported differences between the aforementioned features of the Accused Method are insubstantial. The aforementioned features of the Accused Method perform substantially the same function (providing error control), in substantially the same way (encoding data for transmission), to achieve substantially the same result (reducing data errors in transmission), as the recited limitation. |
| | This claim element may include features that relate to software of the Accused Instrumentalities, and Rembrandt reserves the right to supplement or modify these contentions under Judge Ward's modification to the Local Patent Rules, Rule 3-1(h). |
| 4. The method of claim 1, further comprising the step of presetting link layer parameters of said | In the Accused Method, the CM negotiates a link layer connection with the CMTS by selecting a channel offered by the CMTS with acceptable parameters for an error-correction protocol. The link layer parameters are preset to default values: RS encoding with block interleaving defaults to, and is preset to, *on*, with a predefined interleaver depth in a TDMA channel, and *off* in an S-CDMA channel. |

8

| Claim Element | Evidence of Infringement |
|---|---|
| link layer connection to default settings based on said negotiated physical layer modulation. | Trellis-coded modulation defaults to, and is preset to, *off* in a TDMA channel, and *on* in an S-CDMA channel. (*See id.* at 50, § 6.2.8 & *id.* at 142, Table 8-19.) |
| | These link layer parameters are default settings, and may be changed. (*See id.* at 142, Table 8-19 (showing that TCM encoding can be turned on or off, that the RS interleaving depth can be modified or turned off, and that the RS interleaver block size may be specified). Once an upstream channel is selected, the CM sends ranging signals to the CMTS on the selected channel. (*See* DOCSIS 2.0 standard at 244, § 11.2.2.) If the CMTS determines that the error level is too high, then the CMTS requires the CM to select a different channel. (*See id.* at 250, Fig. 11-8.) If ranging fails, the CM selects a different channel with the same channel type (1, 2, 3A, or 3S), with different link layer parameters set. (*See id.* at 250, Fig. 11-8 & *id.* at 243, § 11.2.2 ("If initial ranging fails on a type 3 upstream, the CM MUST ensure that it has allowed sufficient time to detect any other type 3 upstreams that are available before moving on to a type 2 or type 1 upstream. . . . [I]t MUST try [type 2 upstreams] in preference to any type 1 upstreams.")) Thus, on a noisy channel on which the default link layer parameters are unsuitable, new link layer parameters will be selected. |
| | These default settings are based on the negotiated physical layer modulation. For example, RS encoding with block interleaving defaults to *on* with a given interleaver depth only on TDMA channels; and trellis-coded modulation defaults to *on* only on S-CDMA channels. (*See* DOCSIS 2.0 standard at 50, § 6.2.8 & *id.* at 142, Table 8-19.) In addition, on information and belief, the Accused Method defaults the interleaver depth to a higher value on higher-speed channels. Furthermore, in an S-CDMA channel, the encoding rate defaults to 2/3, but can be changed to 1/2. (*See* DOCSIS 2.0 standard at 50-51, § 6.2.8.) |
| | In the event this limitation is construed or applied in such a way that it is found to be not literally present in the Accused Method, Rembrandt contends that the Accused Method meets the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Method are insubstantial. The aforementioned features of the Accused Method perform substantially the same function (setting link layer values, e.g., error control values), in substantially the same way (providing initial preset values for the link layer based on physical layer characteristics), to achieve substantially the same result (selecting |

9

| Claim Element | Evidence of Infringement |
|---|---|
| | a link layer protocol, e.g. an error control protocol), as the recited limitation. |
| | This claim element may include features that relate to software of the Accused Instrumentalities, and Rembrandt reserves the right to supplement or modify these contentions under Judge Ward's modification to the Local Patent Rules, Rule 3-1(h). |
| 5. The method of claim 3, wherein said error-correcting protocol includes parameters that are set to pre-defined settings based on said negotiated physical layer modulation. | In the Accused Method, the CM negotiates a link layer connection with the CMTS by selecting a channel offered by the CMTS with acceptable parameters for an error-correction protocol. The link layer parameters are preset to default values; RS encoding with block interleaving is set to a predefined setting. In a TDMA channel, the predefined setting is *on*, with a predefined interleaver depth. In an S-CDMA channel, the predefined setting is *off*. Trellis-coded modulation is set to a predefined setting as well. In a TDMA channel, the predefined setting is *off*; and in an S-CDMA channel, the predefined setting is *on*. (*See* DOCSIS 2.0 standard at 50, § 6.2.8 & *id.* at 142, Table 8-19.) |
| | The default settings are based on the negotiated physical layer modulation. RS encoding with block interleaving defaults to *on* with a given interleaver depth only on TDMA channels; and trellis-coded modulation defaults to *on* only on S-CDMA channels. (See DOCSIS 2.0 standard at 50, § 6.2.8 & *id.* at 142, Table 8-19. In addition, on information and belief, the Accused Method defaults the interleaver depth to a higher value on higher-speed channels. |
| | In the event this limitation is construed or applied in such a way that it is found to be not literally present in the Accused Method, Rembrandt contends that the Accused Method meets the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Method are insubstantial. The aforementioned features of the Accused Method performs substantially the same function (setting link layer values, e.g., error control values), in substantially the same way (providing initial preset values for the link layer based on physical layer characteristics), to achieve substantially the same result (selecting a link layer protocol, e.g. an error control protocol), as the recited limitation. |
| | This claim element may include features that relate to software of the Accused Instrumentalities, and Rembrandt reserves the right to supplement or modify these contentions under Judge Ward's |

10

| Claim Element | Evidence of Infringement |
|---|---|
| | modification to the Local Patent Rules, Rule 3-1(h). |
| 6. A system for establishing a link layer connection | Rembrandt does not express a position at this time as to whether this portion of the preamble of this claim limits the claim's scope. Nevertheless, Rembrandt identifies below aspects of the Accused Instrumentalities that correspond to this portion of the claim preamble.

As described in the '631 patent, one example of a link layer connection is an error-control protocol. The Accused System establishes a link layer connection by establishing an error-corrected upstream data connection between an DOCSIS 2.0 compliant CM and an DOCSIS 2.0 compliant CMTS.

The '631 patent describes that a link layer connection "is provided to perform error checking functions as well as retransmitting frames that are not received correctly." (1:53-54.) The Accused System, to comply with the DOCSIS 2.0 standard, must establish an error-corrected (i.e., link layer) connection between the DOCSIS 2.0 compliant CMs and the DOCSIS 2.0 compliant CMTSes. The DOCSIS 2.0 standard sets forth at least four protocols to establish such a connection: Reed-Solomon Forward Error Correction ("RS encoding") without block interleaving; RS encoding with block interleaving (with a plurality of permissible interleaver depths); trellis-coded modulation; and no error correction. (*See* DOCSIS 2.0 standard at 142, Table 8-19.)

In the event this portion of the preamble is construed as limiting and found to be not literally present in the Accused System, Rembrandt contends that the Accused System meets the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused System are insubstantial. The aforementioned features of the Accused System performs substantially the same function (establishing a link layer connection), in substantially the same way (by establishing an error control protocol), to achieve substantially the same result (establishment of a connection using a shared link layer protocol), as the recited limitation. |
| between a calling modem having a plurality of possible first physical layer modulations and a | Rembrandt does not express a position at this time as to whether this portion of the preamble of this claim limits the claim's scope. Nevertheless, Rembrandt identifies below aspects of the Accused Instrumentalities that correspond to this portion of the claim preamble. |

11

| Claim Element | Evidence of Infringement |
|---|---|
| plurality of possible link layer connections | The Accused System includes a calling modem, for example an DOCSIS 2.0 compliant CM. The Accused System establishes a link layer connection (e.g., an error-corrected upstream or downstream data connection) between the calling modem (an DOCSIS 2.0 compliant CM) and an answering modem (an DOCSIS 2.0 compliant CMTS). The DOCSIS 2.0 compliant CM is typically located in the home or business of a Comcast cable Internet subscriber. The DOCSIS 2.0 compliant CMTS is operated by Comcast. |
| | The DOCSIS 2.0 compliant CMs have a plurality of possible first physical layer modulations. As described in the '631 patent, a physical layer connection "is concerned with establishing the electrical and mechanical connection between two modems." (1:50-51). The Time Division Multiple Access (TDMA) and Synchronous Code Division Multiple Access (S-CDMA) protocols relate to the electrical and mechanical connection between the DOCSIS 2.0 compliant CMs and the DOCSIS 2.0 compliant CMTSes. The DOCSIS 2.0 compliant CMs therefore have a "a plurality of possible first physical layer modulations." |
| | In addition, modulation formats such as QPSK, 8QAM, 16QAM, 32QAM, 64QAM, and 128QAM are prescribed by the DOCSIS 2.0 standard. (See DOCSIS 2.0 standard at 141, Table 8-19.) Because these formats relate to the electrical and mechanical connection between the DOCSIS 2.0 compliant CMs and the DOCSIS 2.0 compliant CMTSes, they represent, with respect to the DOCSIS 2.0 compliant CM, "a plurality of possible first physical layer modulations." |
| | In addition, the DOCSIS 2.0 standard specifies that compliant devices must support a plurality of data rates: 160, 320, 640, 1280, 2560, or 5120 KHz. (See id. at 137, Table 8-18.) The data rate relates to the electrical and mechanical connection between the DOCSIS 2.0 compliant CMs and the DOCSIS 2.0 compliant CMTSes. The various data rates represent, with respect to the DOCSIS 2.0 compliant CM, "a plurality of possible first physical layer modulations." |
| | The DOCSIS 2.0 compliant CMs have a plurality of possible link layer connections. The DOCSIS 2.0 compliant CMs have a plurality of possible link layer connections that compliant DOCSIS 2.0 compliant CMs, used in the Accused System, must support: Reed-Solomon Forward Error Correction ("RS encoding") without block interleaving; RS encoding with block interleaving (with a plurality of permissible interleaver depths, see DOCSIS 2.0 standard at 141, Table 8-19 (showing "FEC Error |

12

| Claim Element | Evidence of Infringement |
|---|---|
| | Correction (T)" parameter); trellis-coded modulation with m (bits per symbol) equal to 1, 2, 3, 4, 5, or 6, and at a coding rate of 1/2 or 2/3 (*see* DOCSIS 2.0 standard at 50, § 6.2.8); and no error correction. (*See* DOCSIS 2.0 standard at 142, Table 8-19.) |
| | In the event this portion of the preamble is construed as limiting and found to be not literally present in the Accused System, Rembrandt contends that the Accused System meets the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of Accused System are insubstantial. The aforementioned features of the Accused System perform substantially the same function (providing physical modulation and link layer connection between a calling and answering modem), in substantially the same way (providing a calling modem that supports a plurality of physical layer modulations and link layer connections), to achieve substantially the same result (communication from a calling modem using a physical layer modulation and a link layer connection selected from a plurality of modulations and connections), as the recited limitation. |
| | For clarity and convenience, the descriptions within this chart describe the functionality of the Accused System utilizing the CM as the recited "calling modem" and the CMTS as the recited "answering modem." In the alternative, the DOCSIS 2.0 compliant CM constitutes an answering modem and the DOCSIS 2.0 compliant CMTS constitutes a calling modem. It is understood that in this case the roles of these components can be reversed. |
| | This claim element may include features that relate to software of the Accused Instrumentalities, and Rembrandt reserves the right to supplement or modify these contentions under Judge Ward's modification to the Local Patent Rules, Rule 3-1(h). |
| and a[n] answering modem having a plurality of possible second physical layer modulations and a plurality of possible second link layer | Rembrandt does not express a position at this time as to whether this portion of the preamble of this claim limits the claim's scope. Nevertheless, Rembrandt identifies below aspects of the Accused Instrumentalities that correspond to this portion of the claim preamble.<br><br>The Accused System includes an answering modem, for example an DOCSIS 2.0 compliant CMTS. The Accused System establishes a link layer connection (an error-corrected upstream or downstream data connection) between a calling modem (an DOCSIS 2.0 compliant CM) and an answering modem |

13

| Claim Element | Evidence of Infringement |
|---|---|
| connections, | (an DOCSIS 2.0 compliant CMTS). Alternatively, an DOCSIS 2.0 compliant CM constitutes an answering modem and an DOCSIS 2.0 compliant CMTS constitutes a calling modem.

The DOCSIS 2.0 compliant CMTSes have a plurality of possible second physical layer modulations. As described in the '631 patent, a physical layer connection "is concerned with establishing the electrical and mechanical connection between two modems." (1:50-51). The Time Division Multiple Access (TDMA) and Synchronous Code Division Multiple Access (S-CDMA) protocols relate to the electrical and mechanical connection between the DOCSIS 2.0 compliant CMs and the DOCSIS 2.0 compliant CMTSes. The DOCSIS 2.0 compliant CMTSes therefore have a "a plurality of possible second physical layer modulations."

In addition, modulation formats such as QPSK, 8QAM, 16QAM, 32QAM, 64QAM, and 128QAM are prescribed by the DOCSIS 2.0 standard. (See DOCSIS 2.0 standard at 141, Table 8-19.) Because these formats relate to the electrical and mechanical connection between the DOCSIS 2.0 compliant CMs and the DOCSIS 2.0 compliant CMTSes, they represent, with respect to the DOCSIS 2.0 compliant CMTS, "a plurality of possible second physical layer modulations."

In addition, the DOCSIS 2.0 standard specifies that compliant devices must support a plurality of data rates: 160, 320, 640, 1280, 2560, or 5120 KHz. (See id. at 137, Table 8-18.) The data rate relates to the electrical and mechanical connection between the DOCSIS 2.0 compliant CMs and the DOCSIS 2.0 compliant CMTSes. The various data rates represent, with respect to the DOCSIS 2.0 compliant CMTS, "a plurality of possible second physical layer modulations."

The DOCSIS 2.0 compliant CMTSes have a plurality of possible second link layer connections. The DOCSIS standard sets forth at least four possible link layer connections that compliant DOCSIS 2.0 compliant CMTSes, used in the Accused System, must support: Reed-Solomon Forward Error Correction ("RS encoding") without block interleaving; RS encoding with block interleaving (with a plurality of permissible interleaver depths, see DOCSIS 2.0 standard at 141, Table 8-19 (showing "FEC Error Correction (T)" parameter); trellis-coded modulation with m (bits per symbol) equal to 1, 2, 3, 4, 5, or 6, and at a coding rate of 1/2 or 2/3 (see DOCSIS 2.0 standard at 50, § 6.2.8); and no error correction. (See DOCSIS 2.0 standard at 142, Table 8-19.) |

14

| Claim Element | Evidence of Infringement |
|---|---|
| | In the event this portion of the preamble is construed as limiting and found to be not literally present in the Accused System, Rembrandt contends that the Accused System meets the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused System are insubstantial. The aforementioned features of the Accused System perform substantially the same function (providing physical modulation and link layer connection between a calling and answering modem), in substantially the same way (providing an answering modem that supports a plurality of physical layer modulations and link layer connections), to achieve substantially the same result (communication with an answering modem using a physical layer modulation and a link layer connection selected from a plurality of modulations and connections), as the recited limitation.

This claim element may include features that relate to software of the Accused Instrumentalities, and Rembrandt reserves the right to supplement or modify these contentions under Judge Ward's modification to the Local Patent Rules, Rule 3-1(h). |
| comprising: | |
| means for establishing a physical layer connection between said calling and said answering modems, | The Accused Instrumentalities include electronics and/or one or more processors executing code that implement the following features.

In the Accused System, the DOCSIS 2.0 compliant CMs and the DOCSIS 2.0 compliant CMTSes establish a physical layer connection on an upstream channel as follows: After the CM has acquired a downstream channel (see DOCSIS 2.0 standard at 241-42, § 11.2.1) the CM waits for the CMTS to send an upstream channel descriptor (UCD) message on the downstream channel. (See id. at 243, § 11.2.2.) The UCD describes the parameters of a specific upstream channel, including parameters for physical layer modulations as described in connection with the preamble analysis, above.

The DOCSIS 2.0 compliant CMs and DOCSIS 2.0 compliant CMTSes perform this function using a programmable processor configured to execute instructions to carry out the functions identified in Figure 2. The precise algorithms used in the Accused System cannot be discerned without reference to |

15

| Claim Element | Evidence of Infringement |
|---|---|
| | the source code of these devices. Therefore, to the extent necessary, plaintiff reserves the right to supplement this disclosure pursuant to Appendix C, Rule 3-1(h). |
| | In the event this limitation is construed or applied in such a way that it is found to be not literally present in the Accused System, Rembrandt contends that the Accused System meets the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused System are insubstantial. The aforementioned features of the Accused System performs substantially the same function (establishing a physical layer connection between two modems), in substantially the same way (by selecting a physical layer modulation supported by each of the modems), to achieve substantially the same result (establishment of a physical layer connection using a common physical layer modulation), as the recited limitation. |
| | This claim element may include features that relate to software of the Accused Instrumentalities, and Rembrandt reserves the right to supplement or modify these contentions under Judge Ward's modification to the Local Patent Rules, Rule 3-1(h). |
| wherein said physical layer connection is based on a negotiated physical layer modulation chosen from said first and second physical layer modulations; and | In the Accused System, the physical layer modulation is negotiated when the CM selects an upstream channel based on a UCD message that contains channel description parameters, including parameters reflecting the physical layer modulation, that the CM supports. (*See* DOCSIS 2.0 standard at 243, § 11.2.2.) |
| | Because the CMTS will only offer, in the UCD, parameters for physical layer modulations that it supports, the negotiated physical layer modulation is chosen from the second physical layer modulation. Similarly, because the CM will only accept an upstream channel described by a UCD containing parameters for physical layer modulations that it supports, the negotiated physical layer modulation is chosen from the second physical layer modulation. |
| | In the event this limitation is construed or applied in such a way that it is found to be not literally present in the Accused System, Rembrandt contends that the Accused System meets the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused System are insubstantial. The |

16

| Claim Element | Evidence of Infringement |
|---|---|
| | aforementioned features of the Accused Method performs substantially the same function (establishing a physical layer connection between two telecommunications devices), in substantially the same way (by selecting a mutually agreed upon physical layer modulation supported by each of the devices), to achieve substantially the same result (establishment of a physical layer connection between the devices using a common physical layer modulation supported by each device), as the recited limitation. |
| | This claim element may include features that relate to software of the Accused Instrumentalities, and Rembrandt reserves the right to supplement or modify these contentions under Judge Ward's modification to the Local Patent Rules, Rule 3-1(h). |
| means for establishing said link layer connection based upon said negotiated physical layer modulation. | The Accused Instrumentalities include electronics and/or one or more processors executing code that implement the following features. |
| | In the Accused System, a link layer connection is established when the DOCSIS 2.0 compliant CM communicates on an upstream channel with an DOCSIS 2.0 compliant CMTS using Reed-Solomon encoding with a specified interleaver depth, trellis-coded modulation, or no error correction. |
| | The link layer connection that is established is based on the negotiated physical layer modulation. RS encoding with block interleaving is only available on a TDMA connection (DOCSIS type 1, 2, or 3A channel), whereas trellis-coded modulation is only available on an S-CDMA connection (DOCSIS type 3S channel). (*See id.* at 50, § 6.2.8 & *id.* at 142, Table 8-19.) |
| | In addition, on information and belief, the Accused System establishes a higher-strength link level connection on a higher-speed connection. Specifically, on information and belief, the CMTS sets the interleaver depth for the RS encoder to a higher value on higher-speed channels. Because link speed is one of the parameters of the negotiated physical layer modulation, and the interleaver depth is a parameter of the link level connection, the link layer connection is based on the physical layer connection. |
| | In addition, the trellis encoding and decoding related components used in a DOCSIS cable modem channel involve a link layer connection that is established based on the negotiated physical layer modulation. Specifically, one parameter of the physical layer modulation is the number of bits per |

17

| Claim Element | Evidence of Infringement |
|---|---|
| | symbol ($m$).   The trellis-encoder interacts with a symbol mapper to produce different types of link layer connections based on the number of bits per symbol negotiated in the physical layer.  For example, if $m=1$, a rate 1/2 coder is used in the link layer connection and if $m>1$, a rate 2/3 coder is used in the link layer connection.  Also, for different values $m=2,3,...6$, i.e., when a rate 2/3 coder is used, different link layer encoding/decoding schemes will be implemented via the symbol mapper in the DOCSIS 2.0 CDMA compliant transmitter and the trellis decoder in the DOCSIS 2.0 CDMA compliant receiver.  (*See* DOCSIS 2.0 standard at 70-71, Figs. 6-8, 6-18-6-26, and Table 6-3.) |
| | The DOCSIS 2.0 compliant CMs and DOCSIS 2.0 compliant CMTSes perform this function using a programmable processor configured to execute instructions to carry out the functions identified in Figure 2.  The precise algorithms used in the Accused System cannot be discerned without reference to the source code of these devices.  Therefore, to the extent necessary, plaintiff reserves the right to supplement this disclosure pursuant to Appendix C, Rule 3-1(h). |
| | In the event this limitation is construed or applied in such a way that it is found to be not literally present in the Accused System, Rembrandt contends that the Accused System meets the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused System are insubstantial.  The aforementioned features of the Accused System perform substantially the same function (establishing a link layer connection between two telecommunication devices), in substantially the same way (selecting a link layer protocol based on the mutually agreed upon physical layer modulation), to achieve substantially the same result (establishing a mutually acceptable link layer connection between the devices that can be used by both the calling and answering devices), as the recited limitation. |
| | This claim element may include features that relate to software of the Accused Instrumentalities, and Rembrandt reserves the right to supplement or modify these contentions under Judge Ward's modification to the Local Patent Rules, Rule 3-1(h). |
| 8. The system of claim 6, wherein said link layer connection is an error- | The link-layer connection described above with respect to claim 6 is an error-correcting protocol.  RS encoding and trellis-coded modulation are error-correcting protocols. |
| | In the event this limitation is construed or applied in such a way that it is found to be not literally |

18

| Claim Element | Evidence of Infringement |
|---|---|
| correcting protocol. | present in the Accused System, Rembrandt contends that the Accused System meets the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the RS encoding and/or trellis-coded modulation in the Accused System are insubstantial. The RS encoding and/or trellis-coded modulation of the Accused System perform substantially the same function (providing error control), in substantially the same way (encoding data for transmission), to achieve substantially the same result (reducing data errors in transmission), as the recited limitation. |
| | This claim element may include features that relate to software of the Accused Instrumentalities, and Rembrandt reserves the right to supplement or modify these contentions under Judge Ward's modification to the Local Patent Rules, Rule 3-1(h). |
| 9. The system of claim 6, further comprising means for presetting link layer parameters of said link layer connection to pre-defined settings based on said negotiated physical layer modulation. | The Accused Instrumentalities include electronics and/or one or more processors executing code that implement the following features. |
| | In the Accused System, the CM negotiates a link layer connection with the CMTS by selecting a channel offered by the CMTS with acceptable parameters for an error-correction protocol. The link layer parameters are preset to default values: RS encoding with block interleaving defaults to, and is preset to, *on*, with a predefined interleaver depth in a TDMA channel, and *off* in an S-CDMA channel. Trellis-coded modulation defaults to, and is preset to, *off* in a TDMA channel, and *on* in an S-CDMA channel. (*See id.* at 50, § 6.2.8 & *id.* at 142, Table 8-19.) |
| | These link layer parameters are default settings, and may be changed. (*See id.* at 142, Table 8-19 (showing that TCM encoding can be turned on or off, that the RS interleaving depth can be modified or turned off, and that the RS interleaver block size may be specified). Once an upstream channel is selected, the CM sends ranging signals to the CMTS on the selected channel. (*See* DOCSIS 2.0 standard at 244, § 11.2.2.) If the CMTS determines that the error level is too high, then the CMTS requires the CM to select a different channel. (*See id.* at 250, Fig. 11-8.) If ranging fails, the CM selects a different channel with the same channel type (1, 2, 3A, or 3S), with different link layer parameters set. (*See id.* at 250, Fig. 11-8 & *id.* at 243, § 11.2.2 ("If initial ranging fails on a type 3 upstream, the CM MUST ensure that it has allowed sufficient time to detect any other type 3 upstreams that are available before moving on to a type 2 or type 1 upstream. . . . [I]t MUST try [type 2 |

19

| Claim Element | Evidence of Infringement |
|---|---|
| | upstreams] in preference to any type 1 upstreams.")) Thus, on a noisy channel on which the default link layer parameters are unsuitable, new link layer parameters will be selected. |
| | These default settings are based on the negotiated physical layer modulation. For example, RS encoding with block interleaving defaults to *on* with a given interleaver depth only on TDMA channels; and trellis-coded modulation defaults to *on* only on S-CDMA channels. (See DOCSIS 2.0 standard at 50, § 6.2.8 & id. at 142, Table 8-19.) In addition, on information and belief, the Accused System defaults the interleaver depth to a higher value on higher-speed channels. |
| | The DOCSIS 2.0 compliant CMs and DOCSIS 2.0 compliant CMTSes perform this function using a programmable processor configured to execute instructions to carry out the functions identified in Figure 2. The precise algorithms used in the Accused System cannot be discerned without reference to the source code of these devices. Therefore, to the extent necessary, plaintiff reserves the right to supplement this disclosure pursuant to Appendix C, Rule 3-1(h). |
| | In the event this limitation is construed or applied in such a way that it is found to be not literally present in the Accused System, Rembrandt contends that the Accused System meets the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused System are insubstantial. The aforementioned features of the Accused System perform substantially the same function (setting link layer values, e.g., error control values), in substantially the same way (providing initial preset values based on physical layer characteristics), to achieve substantially the same result (selecting a link layer protocol, e.g. an error control protocol), as the recited limitation. |
| | This claim element may include features that relate to software of the Accused Instrumentalities, and Rembrandt reserves the right to supplement or modify these contentions under Judge Ward's modification to the Local Patent Rules, Rule 3-1(h). |

20

| Claim Element | Evidence of Infringement |
|---|---|
| 10. A computer program product having a computer readable medium including computer program logic recorded thereon for use in a calling modem | Rembrandt does not express a position at this time as to whether this portion of the preamble of this claim limits the claim's scope. Nevertheless, Rembrandt identifies below aspects of the Accused Instrumentalities that correspond to this portion of the claim preamble.

On information and belief, the Accused Software is a computer program product having a computer readable medium including computer program logic recorded thereon. The DOCSIS 2.0 compliant CM Software is used on the DOCSIS 2.0 compliant CMs (the claimed "calling modem").

In the alternative, the DOCSIS 2.0 compliant CMTSes constitute the claimed calling modem. On information and belief, the DOCSIS 2.0 compliant CMTS Software is a computer program product having a computer readable medium including computer program logic.

In the event this portion of the preamble is construed as limiting and found to be not literally present in the Accused Software, Rembrandt contends that the Accused Software meets the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Software are insubstantial. The aforementioned features of the Accused Software performs substantially the same function (establishing a link layer connection), in substantially the same way (by establishing an error control protocol), to achieve substantially the same result (establishment of a connection using a shared link layer protocol), as the recited limitation.

This claim element may include features that relate to software of the Accused Instrumentalities, and Rembrandt reserves the right to supplement or modify these contentions under Judge Ward's modification to the Local Patent Rules, Rule 3-1(h). |
| for establishing a link layer connection between said calling modem having a plurality of possible first physical layer modulations and a plurality of possible link | Rembrandt does not express a position at this time as to whether this portion of the preamble of this claim limits the claim's scope. Nevertheless, Rembrandt identifies below aspects of the Accused Instrumentalities that correspond to this portion of the claim preamble.

The Accused Software includes a program residing on a calling modem, for example an DOCSIS 2.0 compliant CM, referred to herein as the DOCSIS 2.0 compliant CM Software. The Accused Software including the DOCSIS 2.0 compliant CM Software establishes a link layer connection (e.g., an error- |

21

| Claim Element | Evidence of Infringement |
|---|---|
| layer connections | corrected upstream or downstream data connection) between the calling modem (an DOCSIS 2.0 compliant CM) and an answering modem (an DOCSIS 2.0 compliant CMTS). The DOCSIS 2.0 compliant CM is typically located in the home or business of a Comcast cable Internet subscriber. The DOCSIS 2.0 compliant CMTS is operated by Comcast.

The DOCSIS 2.0 compliant CMs have a plurality of possible first physical layer modulations. As described in the '631 patent, a physical layer connection "is concerned with establishing the electrical and mechanical connection between two modems." (1:50-51). The Time Division Multiple Access (TDMA) and Synchronous Code Division Multiple Access (S-CDMA) protocols relate to the electrical and mechanical connection between the DOCSIS 2.0 compliant CMs and the DOCSIS 2.0 compliant CMTSes. The DOCSIS 2.0 compliant CMs therefore have a "a plurality of possible first physical layer modulations."

In addition, modulation formats such as QPSK, 8QAM, 16QAM, 32QAM, 64QAM, and 128QAM are prescribed by the DOCSIS 2.0 standard. (*See* DOCSIS 2.0 standard at 141, Table 8-19.) Because these formats relate to the electrical and mechanical connection between the DOCSIS 2.0 compliant CMs and the DOCSIS 2.0 compliant CMTSes, they represent, with respect to the DOCSIS 2.0 compliant CM, "a plurality of possible first physical layer modulations."

In addition, the DOCSIS 2.0 standard specifies that compliant devices must support a plurality of data rates: 160, 320, 640, 1280, 2560, or 5120 KHz. (*See id.* at 137, Table 8-18.) The data rate relates to the electrical and mechanical connection between the DOCSIS 2.0 compliant CMs and the DOCSIS 2.0 compliant CMTSes. The various data rates represent, with respect to the DOCSIS 2.0 compliant CM, "a plurality of possible first physical layer modulations."

The DOCSIS 2.0 compliant CMs have a plurality of possible link layer connections. The DOCSIS 2.0 standard sets forth at least four possible link layer connections that compliant DOCSIS 2.0 compliant CMs, used in the Accused Software, must support: Reed-Solomon Forward Error Correction ("RS encoding") without block interleaving; RS encoding with block interleaving (with a plurality of permissible interleaver depths, see DOCSIS 2.0 standard at 141, Table 8-19 (showing "FEC Error Correction (T)" parameter); trellis-coded modulation with *m* (bits per symbol) equal to 1, 2, 3, 4, 5, or 6, and at a coding rate of 1/2 or 2/3 (*see* DOCSIS 2.0 standard at 50, § 6.2.8); and no error correction. |

22

| Claim Element | Evidence of Infringement |
|---|---|
| | *(See* DOCSIS 2.0 standard at 142, Table 8-19.) |
| | In the event this portion of the preamble is construed as limiting and found to be not literally present in the Accused Software, Rembrandt contends that the Accused Software meets the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Software are insubstantial. The aforementioned features of the Accused Software performs substantially the same function (providing physical modulation and link layer connection between a calling and answering modem), in substantially the same way (providing a program on a calling modem that supports a plurality of physical layer modulations and link layer connections), to achieve substantially the same result (communication from a calling modem using a physical layer modulation and a link layer connection selected from a plurality of modulations and connections), as the recited limitation. |
| | In the alternative, the DOCSIS 2.0 compliant CM constitutes an answering modem and the DOCSIS 2.0 compliant CMTS constitutes a calling modem. It is understood that in this case the roles of these components can be reversed. For clarity and convenience, the descriptions within this chart describe the Accused Software utilizing the CM as the recited "calling modem" and the CMTS as the recited "answering modem." |
| | This claim element may include features that relate to software of the Accused Instrumentalities, and Rembrandt reserves the right to supplement or modify these contentions under Judge Ward's modification to the Local Patent Rules, Rule 3-1(h). |
| and an answering modem having a plurality of possible second physical layer modulations and a plurality of possible second link layer connections, | Rembrandt does not express a position at this time as to whether this portion of the preamble of this claim limits the claim's scope. Nevertheless, Rembrandt identifies below aspects of the Accused Instrumentalities that correspond to this portion of the claim preamble.<br><br>The Accused Software includes a program residing on an answering modem, for example an DOCSIS 2.0 compliant CMTS, referred to herein as the DOCSIS 2.0 compliant CMTS Software. The Accused Software including the DOCSIS 2.0 compliant CMTS Software establishes a link layer connection (an error-corrected upstream or downstream data connection) between a calling modem (an DOCSIS 2.0 compliant CM) and an answering modem (an DOCSIS 2.0 compliant CMTS). Alternatively, an |

23

| Claim Element | Evidence of Infringement |
|---|---|
| | DOCSIS 2.0 compliant CM constitutes an answering modem and an DOCSIS 2.0 compliant CMTS constitutes a calling modem. |
| | The DOCSIS 2.0 compliant CMTSes have a plurality of possible second physical layer modulations. As described in the '631 patent, a physical layer connection "is concerned with establishing the electrical and mechanical connection between two modems." (1:50-51). The Time Division Multiple Access (TDMA) and Synchronous Code Division Multiple Access (S-CDMA) protocols relate to the electrical and mechanical connection between the DOCSIS 2.0 compliant CMs and the DOCSIS 2.0 compliant CMTSes. The DOCSIS 2.0 compliant CMTSes therefore have a "a plurality of possible second physical layer modulations." |
| | In addition, modulation formats such as QPSK, 8QAM, 16QAM, 32QAM, 64QAM, and 128QAM are prescribed by the DOCSIS 2.0 standard. (*See* DOCSIS 2.0 standard at 141, Table 8-19.) Because these formats relate to the electrical and mechanical connection between the DOCSIS 2.0 compliant CMs and the DOCSIS 2.0 compliant CMTSes, they represent, with respect to the DOCSIS 2.0 compliant CMTS, "a plurality of possible second physical layer modulations." |
| | In addition, the DOCSIS 2.0 standard specifies that compliant devices must support a plurality of data rates: 160, 320, 640, 1280, 2560, or 5120 KHz. (*See id.* at 137, Table 8-18.) The data rate relates to the electrical and mechanical connection between the DOCSIS 2.0 compliant CMs and the DOCSIS 2.0 compliant CMTSes. The various data rates represent, with respect to the DOCSIS 2.0 compliant CMTS, "a plurality of possible second physical layer modulations." |
| | The DOCSIS 2.0 compliant CMTSes have a plurality of possible second link layer connections. The DOCSIS standard sets forth at least four possible link layer connections that compliant DOCSIS 2.0 compliant CMTSes, used in the Accused Software, must support: Reed-Solomon Forward Error Correction ("RS encoding") without block interleaving; RS encoding with block interleaving (with a plurality of permissible interleaver depths, see DOCSIS 2.0 standard at 141, Table 8-19 (showing "FEC Error Correction (T)" parameter); trellis-coded modulation with *m* (bits per symbol) equal to 1, 2, 3, 4, 5, or 6, and at a coding rate of 1/2 or 2/3 (*see* DOCSIS 2.0 standard at 50, § 6.2.8); and no error correction. (*See* DOCSIS 2.0 standard at 142, Table 8-19.) |

24

| Claim Element | Evidence of Infringement |
|---|---|
| | In the event this portion of the preamble is construed as limiting and found to be not literally present in the Accused Software, Rembrandt contends that the Accused Software meets the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of Accused Software are insubstantial. The aforementioned features of the Accused Software performs substantially the same function (providing physical modulation and link layer connection between a calling and answering modem), in substantially the same way (providing a program on an answering modem that supports a plurality of physical layer modulations and link layer connections), to achieve substantially the same result (communication with an answering modem using a physical layer modulation and a link layer connection selected from a plurality of modulations and connections), as the recited limitation.

This claim element may include features that relate to software of the Accused Instrumentalities, and Rembrandt reserves the right to supplement or modify these contentions under Judge Ward's modification to the Local Patent Rules, Rule 3-1(h). |
| comprising: | |
| logic for establishing a physical layer connection between said calling and said answering modems, | The Accused Software is utilized by the DOCSIS 2.0 compliant CMs and the DOCSIS 2.0 compliant CMTSes to establish a physical layer connection on an upstream channel as follows: After the CM has acquired a downstream channel (see DOCSIS 2.0 standard at 241-42, § 11.2.1) the CM waits for the CMTS to send an upstream channel descriptor (UCD) message on the downstream channel. (See id. at 243, § 11.2.2.) The UCD describes the parameters of a specific upstream channel, including parameters for physical layer modulations as described in connection with the preamble analysis, above.

In the event this limitation is construed or applied in such a way that it is found to be not literally present in the Accused Software, Rembrandt contends that the Accused Software meets the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Software are insubstantial. The aforementioned features of the Accused Software performs substantially the same function |

25

| Claim Element | Evidence of Infringement |
|---|---|
| | (establishing a physical layer connection between two modems), in substantially the same way (by selecting a physical layer modulation supported by each of the modems), to achieve substantially the same result (establishment of a physical layer connection using a common physical layer modulation), as the recited limitation. |
| | This claim element may include features that relate to software of the Accused Instrumentalities, and Rembrandt reserves the right to supplement or modify these contentions under Judge Ward's modification to the Local Patent Rules, Rule 3-1(h). |
| wherein said physical layer connection is based on a negotiated physical layer modulation chosen from said first and second physical layer modulations; and | Utilizing the Accused Software, the physical layer modulation is negotiated when the CM selects an upstream channel based on a UCD message that contains channel description parameters, including parameters reflecting the physical layer modulation, that the CM supports. (*See* DOCSIS 2.0 standard at 243, § 11.2.2.) |
| | Because the CMTS will only offer, in the UCD, parameters for physical layer modulations that it supports, the negotiated physical layer modulation is chosen from the second physical layer modulation. Similarly, because the CM will only accept an upstream channel described by a UCD containing parameters for physical layer modulations that it supports, the negotiated physical layer modulation is chosen from the second physical layer modulation. |
| | In the event this limitation is construed or applied in such a way that it is found to be not literally present in the Accused Software, Rembrandt contends that the Accused Software meets the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Software are insubstantial. The aforementioned features of the Accused Method performs substantially the same function (establishing a physical layer connection between two telecommunications devices), in substantially the same way (by selecting a mutually agreed upon physical layer modulation supported by each of the devices), to achieve substantially the same result (establishment of a physical layer connection between the devices using a common physical layer modulation supported by each device), as the recited limitation.. |
| | This claim element may include features that relate to software of the Accused Instrumentalities, and Rembrandt reserves the right to supplement or modify these contentions under Judge Ward's |

26

| Claim Element | Evidence of Infringement |
|---|---|
| | modification to the Local Patent Rules, Rule 3-1(h). |
| logic for establishing link layer connection based upon said negotiated physical layer modulation. | Utilizing the Accused Software, a link layer connection is established when the DOCSIS 2.0 compliant CM communicates on an upstream channel with an DOCSIS 2.0 compliant CMTS using Reed-Solomon encoding with a specified interleaver depth, trellis-coded modulation, or no error correction.

The link layer connection that is established is based on the negotiated physical layer modulation. RS encoding with block interleaving is only available on a TDMA connection (DOCSIS type 1, 2, or 3A channel), whereas trellis-coded modulation is only available on an S-CDMA connection (DOCSIS type 3S channel). (*See id.* at 50, § 6.2.8 & *id.* at 142, Table 8-19.)

In addition, on information and belief, the Accused Software establishes a higher-strength link level connection on a higher-speed connection. Specifically, on information and belief, the CMTS sets the interleaver depth for the RS encoder to a higher value on higher-speed channels. Because link speed is one of the parameters of the negotiated physical layer modulation, and the interleaver depth is a parameter of the link level connection, the link layer connection is based on the physical layer connection.

In addition, the trellis encoding and decoding related components used in a DOCSIS cable modem channel involve a link layer connection that is established based on the negotiated physical layer modulation. Specifically, one parameter of the physical layer modulation is the number of bits per symbol (*m*). The trellis-encoder interacts with a symbol mapper to produce different types of link layer connections based on the number of bits per symbol negotiated in the physical layer. For example, if *m*=1, a rate 1/2 coder is used in the link layer connection and if *m*>1, a rate 2/3 coder is used in the link layer connection. Also, for different values *m*=2,3...6, i.e., when a rate 2/3 coder is used, different link layer encoding/decoding schemes will be implemented via the symbol mapper in the DOCSIS 2.0 CDMA compliant transmitter and the trellis decoder in the DOCSIS 2.0 CDMA compliant receiver. (*See* DOCSIS 2.0 standard at 70-71, Figs. 6-8, 6-18-6-26, and Table 6-3.)

In the event this limitation is construed or applied in such a way that it is found to be not literally |

27

| Claim Element | Evidence of Infringement |
|---|---|
|  | present in the Accused Software, Rembrandt contends that the Accused Software meets the recited limitation under the doctrine of equivalents, because any purported differences between the recited limitation and the aforementioned features of the Accused Software are insubstantial. The aforementioned features of the Accused Software performs substantially the same function (establishing a link layer connection between two telecommunication devices), in substantially the same way (selecting a link layer protocol based on the mutually agreed upon physical layer modulation), to achieve substantially the same result (establishing a mutually acceptable link layer connection that can be used by both the devices), as the recited limitation. This claim element may include features that relate to software of the Accused Instrumentalities, and Rembrandt reserves the right to supplement or modify these contentions under Judge Ward's modification to the Local Patent Rules, Rule 3-1(h). |

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

MARSHALL DIVISION

| | |
|---|---|
| REMBRANDT TECHNOLOGIES, INC., | |
| Plaintiff, | Case No. 2:05CV443 (TJW) |
| v. | |
| COMCAST CORPORATION; COMCAST CABLE COMMUNICATIONS; LLC; and COMCAST OF PLANO, LP, | |
| Defendant. | |

**DEFENDANT COMCAST CORPORATION'S RESPONSES TO
PLAINTIFF REMBRANDT TECHNOLOGIES, INC.'S
FIRST SET OF INTERROGATORIES**

Defendant Comcast Corporation ("Comcast") responds and objects to Plaintiff

Rembrandt Technologies, Inc.'s ("Rembrandt") First Set of Interrogatories, pursuant to the

Federal Rules of Civil Procedure and Local Rules of the Untied States District Court for the

Eastern District of Texas.  Discovery is ongoing in this matter; Comcast reserves the right to

supplement its responses once discovery is completed.

## GENERAL OBJECTIONS

Comcast makes the following general objections to each and every interrogatory,

definition and instruction (collectively, the "Interrogatories"), whether or not separately set forth

in its specific responses:

1.     Comcast objects to the Interrogatories, and each of them, to the extent they seek

to impose obligations on Comcast that are broader than, or inconsistent with, the Federal Rules

of Civil Procedure, the local rules of this Court, or as otherwise imposed or authorized by law.

2.     Comcast objects to the Interrogatories, and each of them, to the extent they are

vague, ambiguous, unintelligible, overbroad, and/or to the extent they fail to describe the

information sought with the required reasonable particularity.

3.     Comcast objects to the Interrogatories, and each of them, to the extent they seek

information protected by any privilege, including without limitation the attorney-client privilege

and the work product doctrine.  Comcast will not produce such privileged or protected

information.  Any inadvertent disclosure of any privileged or protected information is not

deemed a waiver of the privilege, and Comcast expressly reserves the right to object to

introduction at trial or other use of any privileged information that may be inadvertently

disclosed.

4.     Comcast objects to the Interrogatories, and each of them, to the extent they relate

to activities, documents, or information outside the territorial force of the patents-in-suit.

1

CASE NO. 2:05CV443 (TJW)
Defendant Comcast Corporation's Responses to
Plaintiff Rembrandt Technologies, Inc.'s
First Set of Interrogatories

5.     The responses herein are based upon such information and documents as are reasonably available to Comcast at this time.  Further independent discovery, investigation, legal research and analysis by Comcast or its counsel may supply additional facts or documents and/or add meaning to known facts or documents.  Comcast reserves the right to revise, amend, alter and/or supplement these responses at a later time and to make any additional objections that may become apparent.  Comcast expressly reserves the right to make any use of, or introduce at any hearing or trial, information not produced in response to these Interrogatories if such information is not known or thought to be responsive at the time of response or is uncovered during the course of Comcast's ongoing investigation.

6.     Comcast objects to the Interrogatories, and each of them, to the extent they seek information that is not relevant to the claims or defenses in this action, or reasonably calculated to lead to the discovery of admissible evidence.  Comcast's agreement to furnish information in response to the Interrogatories shall not be deemed to constitute an admission as to the relevancy of such information, nor is it intended to waive any right to object to such information's admissibility at trial or in any other proceeding.

7.     Comcast objects to the Interrogatories, and each of them, to the extent they seek information not within Comcast's possession, custody or control.

8.     Comcast objects to the Interrogatories, and each of them, to the extent they seek public information, information or things from third parties or services, or other information that is more or equally accessible to Plaintiff.  Comcast will not respond with such information.

9.     Comcast objects to the Interrogatories, and each of them, to the extent they seek answers, or production of documents in lieu of written answers, containing trade secrets, proprietary information, or other confidential or competitively sensitive business information, to the extent that such information is not adequately protected by any protective orders which will ultimately be in force in this action.

2

CASE NO. 2:05CV443 (TJW)
Defendant Comcast Corporation's Responses to
Plaintiff Rembrandt Technologies, Inc.'s
First Set of Interrogatories

10.     Comcast objects to the Interrogatories, and each of them, to the extent they purport to require Comcast to disclose information that is subject to any protective order, privacy interest, contractual obligation, or other confidentiality obligation owed to any third party and therefore in violation of a legal or contractual obligation of nondisclosure to a third party. Comcast will not provide such information without the consent of the relevant third party or a court order.

11.     No incidental or implied admissions are intended by the following responses.  The fact that Comcast has responded or objected to any Interrogatory or part thereof shall not be deemed an admission that Comcast accepts or admits any particular claim construction, the existence of any facts set forth or assumed by such Interrogatory, or that such responses or objections constitute admissible evidence.

12.     Comcast objects to Rembrandt's First Set of Interrogatories, and the definitions and instructions attached thereto, to the extent they call for the premature disclosure of expert opinions or analysis.

13.     Comcast objects to Rembrandt's First Set of Interrogatories, and the definitions and instructions attached thereto, to the extent each interrogatory seeks information already in Rembrandt's possession, and/or is in the possession of third-parties and, therefore, is equally available to Rembrandt as to Comcast.

14.     Comcast objects to the Interrogatories, and each of them, and to Rembrandt's definition of "Comcast" to the extent they require Comcast to collect and produce documents from local offices of affiliated operating companies.  Collecting and producing such documents would be highly burdensome and expensive, and Rembrandt has not demonstrated any need for them.  Comcast will produce documents from its corporate offices in Philadelphia and from its regional offices.

CASE NO. 2:05CV443 (TJW)
Defendant Comcast Corporation's Responses to
Plaintiff Rembrandt Technologies, Inc.'s
First Set of Interrogatories

## RESPONSES TO INTERROGATORIES

Subject to the foregoing General Objections, which are incorporated by reference as though set forth fully in each Response herein, Comcast responds to Rembrandt's First Set of Interrogatories as follows, reserving the right to supplement these responses as additional information or documents become available.

## INTERROGATORY NO. 1:

State in detail all facts upon which Comcast relies in asserting each of Comcast's Affirmative Defenses set forth in Defendants' Answer and Counterclaims and provide the identity of all individuals with knowledge of any such facts and the identity of all documents and things concerning any such facts.

## RESPONSE TO INTERROGATORY NO. 1:

Comcast incorporates its General Objections herein by reference. Comcast further objects to this interrogatory to the extent it seeks the disclosure of information protected by the attorney-client privilege and the work product doctrine. Comcast further objects to this interrogatory because it is overbroad, unduly burdensome and oppressive. Comcast further objects to this interrogatory because it seeks premature disclosure of Comcast's expert witnesses and Comcast's positions regarding invalidity, non-infringement, and claim construction. See Local Patent Rule 2-5. Comcast further objects to this interrogatory because Defendants did not receive Plaintiffs' Preliminary Infringement Contentions and list of Accused Instrumentalities until approximately two weeks after these interrogatories were served. Comcast further objects to this interrogatory on the basis that Plaintiff's Preliminary Infringement Contentions and list of Accused Instrumentalities were improperly designated by Plaintiff as "Confidential", which has restricted Comcast's ability to disclose the Infringement Contentions and list of Accused Instrumentalities to third parties who may have information relevant to Comcast's affirmative

4

defenses. Therefore, Comcast has been hindered in its ability to investigate the factual bases for

its affirmative defenses, and on that basis, objects to this interrogatory. Comcast further objects

on the basis that this interrogatory calls for information equally or more readily known and

available to Rembrandt.

Subject to and without waiving the foregoing objections, Comcast responds as follows:

For the bases of its invalidity defense, Defendant refers Plaintiff to Defendant's Preliminary

Invalidity Contentions, which will be served by June 16, 2006. For the bases of its non-

infringement defense, Rembrandt bears the burden of proof on infringement, and will not be able

to meet its burden of proving infringement, either literally or under the doctrine of equivalents,

of every element of the asserted claims. For the bases of its misuse defense, on information and

belief, the asserted patents have been misused by Rembrandt by the commencement and

maintenance of this action, in bad faith, without probable cause in knowing, or when it should

have known, that it has no valid claim of patent infringement against Comcast, and for

Rembrandt's enforcement of said patents and demands for royalties and other damages with

respect to products not covered by its patents.

Based on the allegations in Rembrandt's Complaint and Comcast's investigation thus far,

Comcast presently believes that the individuals and entities identified in Comcast's Initial

Disclosures, which are herein incorporated by reference, may have discoverable information that

Comcast may use to support its defenses in this action. Comcast anticipates that other

individuals may also have discoverable information and specifically reserves the right to identify

additional individuals as discovery proceeds.

Comcast reserves the right to supplement or amend this answer based on additional

investigation or analysis, proposed claim constructions or constructions ordered by the Court, or

in response to any proof offered by Rembrandt.

CASE NO. 2:05CV443 (TJW)
Defendant Comcast Corporation's Responses to
Plaintiff Rembrandt Technologies, Inc.'s
First Set of Interrogatories

**INTERROGATORY NO. 2:**

State in detail all facts upon which Comcast relies in asserting each of Comcast's

Counterclaims set forth in Defendants' Answer and Counterclaims and provide the identity of all

individuals with knowledge of any such facts and the identity of all documents and things

concerning any such facts.

**RESPONSE TO INTERROGATORY NO. 2:**

Comcast incorporates its General Objections herein by reference. Comcast further

objects to this interrogatory to the extent it seeks the disclosure of information protected by the

attorney-client privilege and the work product doctrine. Comcast further objects to this

interrogatory because it seeks premature disclosure of Comcast's expert witnesses and

Comcast's positions regarding invalidity, non-infringement, and claim construction. See Local

Patent Rule 2-5. Comcast further objects to this interrogatory because Defendants did not

receive Plaintiffs' Preliminary Infringement Contentions and list of Accused Instrumentalities

until approximately two weeks after these interrogatories were served. Comcast further objects

to this interrogatory on the basis that Plaintiff's Preliminary Infringement Contentions and list of

Accused Instrumentalities were improperly designated by Plaintiff as "Confidential", which has

restricted Comcast's ability to disclose the Infringement Contentions and list of Accused

Instrumentalities to third parties who may have information relevant to Comcast's counterclaims.

Therefore, Comcast has been hindered in its ability to investigate the factual bases for its

counterclaims, and on that basis, objects to this interrogatory.

Subject to and without waiving the foregoing objections, Comcast responds as follows:

Comcast reserves the right to supplement or amend this answer based on additional investigation

or analysis, proposed claim constructions or constructions ordered by the Court, or in response to

any proof offered by Rembrandt. For the bases of its invalidity counterclaim, Defendant refers

6

CASE NO. 2:05CV443 (TJW)
Defendant Comcast Corporation's Responses to
Plaintiff Rembrandt Technologies, Inc.'s
First Set of Interrogatories

Plaintiff to Defendant's Preliminary Invalidity Contentions, which will be served by June 16,

2006.  For the bases of its non-infringement counterclaim, Comcast asserts that Rembrandt bears

the burden of proof on infringement, and will not be able to meet its burden of proving

infringement, either literally or under the doctrine of equivalents, of every element of the

asserted claims.  For the bases of its unenforceability counterclaim, Comcast asserts, on

information and belief, that the asserted patents have been misused by Rembrandt by the

commencement and maintenance of this action, in bad faith, without probable cause in knowing,

or when it should have known, that it has no valid claim of patent infringement against Comcast,

and for Rembrandt's enforcement of said patents and demands for royalties and other damages

with respect to products not covered by its patents.

Based on the allegations in Rembrandt's Complaint and Comcast's investigation thus far,

Comcast presently believes that the individuals and entities identified in Comcast's Initial

Disclosures, which are herein incorporated by reference, may have discoverable information that

Comcast may use to support its counterclaims in this action.  Comcast anticipates that other

individuals may also have discoverable information and specifically reserves the right to identify

additional individuals as discovery proceeds.

Comcast reserves the right to supplement or amend this answer based on additional

investigation or analysis, proposed claim constructions or constructions ordered by the Court, or

in response to any proof offered by Rembrandt.


**INTERROGATORY NO. 3:**

If you contend that Comcast has not infringed any claim of Plaintiff's patent-in-suit,

explain the specific basis for each such contention, including which specific claim limitation(s)

Comcast alleges are not met literally or equivalently by the Accused Instrumentalities, the

CASE NO. 2:05CV443 (TJW)
Defendant Comcast Corporation's Responses to
Plaintiff Rembrandt Technologies, Inc.'s
First Set of Interrogatories

reasons why Comcast so alleges, and the identity of each person with information concerning

such contention and the production numbers of all documents that support such contentions.

**RESPONSE TO INTERROGATORY NO. 3:**

Comcast incorporates its General Objections herein by reference.  Comcast further

objects to this interrogatory to the extent it seeks the disclosure of information protected by the

attorney-client privilege and the work product doctrine.  Comcast further objects to this

interrogatory because it seeks premature disclosure of Comcast's expert witnesses and

Comcast's positions regarding invalidity, non-infringement, and claim construction.  See Local

Patent Rule 2-5.  Comcast further objects to this interrogatory because Defendants did not

receive Plaintiffs' Preliminary Infringement Contentions and list of Accused Instrumentalities

until approximately two weeks after these interrogatories were served.  Comcast further objects

to this interrogatory because Rembrandt bears the burden of proof on infringement, and has not

yet met its burden of proving infringement, either literally or under the doctrine of equivalents,

of every element of the asserted claims.  Comcast further objects to this interrogatory on the

basis that Plaintiff's Preliminary Infringement Contentions and list of Accused Instrumentalities

were improperly designated by Plaintiff as "Confidential", which has restricted Comcast's ability

to disclose the Infringement Contentions and list of Accused Instrumentalities to third parties

who may have information relevant to Comcast's affirmative defenses.  Therefore, Comcast has

been hindered in its ability to investigate the factual bases for its non-infringement defense, and

on that basis, objects to this interrogatory.

Comcast reserves the right to supplement or amend this answer based on additional

investigation or analysis, orders by the Court, or in response to any proof offered by Rembrandt.

Subject to and without waiving the foregoing objections, Comcast responds as follows:  For the

bases of its non-infringement defense, Rembrandt bears the burden of proof on infringement, and

will not be able to meet its burden of proving infringement, either literally or under the doctrine

of equivalents, of any of the following claim limitations that are underlined and/or in bold type[1]:

## '627 Patent:

Claim 9.   Receiver apparatus for recovering information from a received stream of trellis encoded signal points, said signal points having been transmitted to said receiver apparatus by **transmitter apparatus which generates said signal points by generating a plurality of streams of trellis encoded channel symbols in response to respective portions of said information, each of said channel symbols being comprised of a plurality of signal points, and by interleaving the signal points of said generated channel symbols to form said stream of trellis encoded signal points, said interleaving being carried out in such a way that the signal points of each channel symbol are non-adjacent in said stream of trellis encoded signal points and such that the signal points of adjacent symbols in any one of said channel symbol streams are non- adjacent in said stream of trellis encoded signal points,**

said receiver apparatus comprising

**means for deinterleaving the interleaved signal points to recover said plurality of streams of trellis encoded channel symbols,** and

**a distributed Viterbi decoder for recovering said information from the deinterleaved signal points.**

Claim 19.   A method for use in a receiver to recover information from a received stream of trellis encoded signal points, said signal points having been transmitted to said receiver apparatus by a method which includes the steps of

**generating a plurality of streams of trellis encoded channel symbols in response to respective portions of said information, each of said channel symbols being comprised of a plurality of signal points,** and

**interleaving the signal points of said generated channel symbols to form said stream of trellis encoded signal points, said interleaving being carried out in such a way that the signal points of each channel symbol are non-adjacent in said stream of trellis encoded signal points and such that the signal points of adjacent symbols in any one of said channel symbol streams are non-adjacent in said stream of trellis encoded signal points,**

said method comprising the steps of

**deinterleaving the interleaved signal points to recover said plurality of streams of trellis encoded channel symbols,** and

**using a distributed Viterbi decoder to recover said information from the deinterleaved signal points.**

---

[1] Please note that every dependent claim incorporates all the limitations from the claim that it depends on, and is not infringed for the same reasons that Rembrandt will not be able to satisfy the claim limitation(s) from the corresponding independent claim.

CASE NO. 2:05CV443 (TJW)
Defendant Comcast Corporation's Responses to
Plaintiff Rembrandt Technologies, Inc.'s
First Set of Interrogatories

## '631 Patent:

Claim 1.  A method for establishing a link layer connection between a **calling modem having a plurality of possible first physical layer modulations and a plurality of possible link layer connections and an answering modem having a plurality of possible second physical layer modulations and a plurality of possible second link layer connections**, comprising the steps of:

establishing a physical layer connection between said calling and said answering modems, wherein **said physical layer connection is based on a negotiated physical layer modulation chosen from said first and second physical layer modulations**; and

**establishing said link layer connection based upon said negotiated physical layer modulation**.

Claim 3.  The **method of claim 1**, wherein **said link layer connection is an error-correcting protocol**.

Claim 4.  The **method of claim 1**, further comprising the **step of presetting link layer parameters of said link layer connection to default settings based on said negotiated physical layer modulation**.

Claim 5.  The **method of claim 3**, wherein **said error-correcting protocol includes parameters that are set to pre-defined settings based on said negotiated physical layer modulation**.

Claim 6.  A system for establishing a link layer connection between a **calling modem having a plurality of possible first physical layer modulations and a plurality of possible link layer connections and a answering modem having a plurality of possible second physical layer modulations and a plurality of possible second link layer connections**, comprising:

**means for establishing a physical layer connection between said calling and said answering modems, wherein said physical layer connection is based on a negotiated physical layer modulation chosen from said first and second physical layer modulations**; and

**means for establishing said link layer connection based upon said negotiated physical layer modulation**.

Claim 7.  The **system of claim 6**, wherein **said negotiated physical layer modulation is a fast connect modem modulation**.

Claim 8.  The **system of claim 6**, wherein **said link layer connection is an error-correcting protocol**.

Claim 9.  The **system of claim 6**, further comprising **means for presetting link layer parameters of said link layer connection to pre- defined settings based on said negotiated physical layer modulation**.

Claim 10.  A **computer program product having a computer readable medium**

10

including computer program logic recorded thereon for use in a calling modem for establishing a link layer convention between said calling modem having a plurality of possible first physical layer modulations and a plurality of possible link layer connections and an answering modem having a plurality of possible second physical layer modulations and a plurality of possible second link layer connections, comprising:

logic for establishing a physical layer connection between said calling and said answering modems, wherein said physical layer connection is based on a negotiated physical layer modulation chosen from said first and second physical layer modulations; and

logic for establishing link layer connection based upon said negotiated physical layer modulation.

## '819 Patent

Claim 1. A communications network comprising:

a master unit;

a plurality of remote units communicating with said master unit in a multidrop configuration;

wherein each of said remote units execute at least one application program, at least one of said remote units executing at least two application programs, said remote units receiving messages outbound from said master unit and responding in a time slot assigned to each of said application programs;

said master unit including a master network timing means with a period which is divided into a plurality of subframes, wherein each subframe is divided into said time slots, and each of said time slots is used as an interval in which one of said application programs in said one of said remote units is assigned to transmit to said master unit in a time division multiple access fashion; and

said master unit including ranging means communicating with said master network timing means wherein a transmission time between said master unit and each of said respective remote units is calculated and transmitted from said master unit to each of said respective remote units, each of said respective remote units using said transmission time to adjust initiation of said time slots.

Claim 2. The network of claim 1 wherein said remote units include a reservation request generator which activates a reservation request bit for requesting an additional time interval inbound to said master unit, and wherein said master unit includes a reservation request processor communicating to said master network timing means, said reservation request processor being responsive to said reservation request bit.

Claim 11. The network of claim 2 wherein said time slot comprises a format so as to include a preamble, a poll response data bit, said reservation request bits, at least one priority bit and error detection bit.

Claim 12. The network of claim 1 wherein the master unit includes means for calculating clock drifts of the remote units and issuing reset commands to correct the same whereby each remote unit determines its transmit epoch accurately, thereby minimizing guard time while maintaining contention-free transmission to said master unit, said means for calculating clock drifts and issuing reset commands being in communication with said master network timing means.

11

Claim 14.   A method for a plurality of remote units to **operate a plurality of application programs** in communication with a master unit in a multidrop configuration, comprising the steps of:

**calculating and storing in said master unit inbound and outbound transmission times between the master unit and said remote units;**

**dividing a period of a clock in said master unit into a number of subframes, dividing each subframe into a number of slots, each corresponding to transmission times for one of said remote units, and assigning a slot to each of said application programs in said one of said remote units;**

**transmitting from said master unit to each of said respective remote units the transmission time between said master unit and said respective remote unit, each of said respective remote units using said transmission time to adjust initiation of said slots**; and

transmitting data from each of said remote units to said master unit in a time division multiple access configuration wherein **each application in each remote unit transmits during said assigned subframe.**

### '858 Patent

Claim 1.   Data communications apparatus comprising:

a time division multiplexed bus having a bandwidth, where **a portion of the bandwidth is allotted to packet data;**

a plurality of packet data sources coupled to the time-division multiplexed bus that **share the allotted bandwidth for transmitting packet data**; and

**a distributed packet manager within each of said packet data sources configured to allocate access to the allotted bandwidth among said packet data sources.**

Claim 7.   Communications apparatus comprising:

a time-division multiplexed bus having a predefined bandwidth;

**a plurality of synchronous data sources coupled to the time-division multiplexed bus for communicating synchronous data in a first portion of the predefined bandwidth;**

a plurality of packet data sources coupled to the time-division multiplexed bus for **communicating packet data in a second portion of the predefined bandwidth, where the plurality of packet data sources share the second portion of the predefined bandwidth for transmitting packet data**; and

**a distributed packet manager within each of said packet data sources configured to allocate access to the second portion of the predefined bandwidth among said packet data sources.**

Claim 8.   The **apparatus of claim 7** further including a network access manager coupled to the time-division-multiplexed bus for **communicating the synchronous data** and the packet data to at least one network facility.

Claim 9.   Communications apparatus comprising:

a time-division multiplexed bus having a predefined bandwidth;

12

**a plurality of synchronous data sources coupled to the time-division multiplexed bus for communicating synchronous data in a first portion of the predefined bandwidth**; and

a plurality of packet data sources coupled to the time-division multiplexed bus for **communicating packet data in a second portion of the predefined bandwidth, where the plurality of packet data sources share the second portion of the predefined bandwidth for transmitting packet data, the second portion of the predefined bandwidth being shared in such a way that only one of the plurality of packet data sources accesses the second portion of the predefined bandwidth at a time**.

Claim 10.   The **apparatus of claim 7** wherein each one of the plurality of packet data sources includes interface circuitry to the time-division multiplexed bus for synchronizing packet data to the time-division multiplexed bus.

Claim 11.   Communications apparatus comprising:

a time-division multiplexed bus having a predefined bandwidth;

**a plurality of synchronous data sources coupled to the time-division multiplexed bus for communicating synchronous data in a first portion of the predefined bandwidth**;

a plurality of packet data sources coupled to the time- division multiplexed bus for **communicating packet data in a second portion of the predefined bandwidth, where the plurality of packet data sources share the second portion of the predefined bandwidth for transmitting packet data,** wherein each one of the plurality of packet data sources includes interface circuitry to the time-division multiplexed bus for synchronizing packet data to the time-division multiplexed bus, and the interface circuitry includes **a counter for counting time-slots representing the second portion of the predefined bandwidth**.

Claim 15.   A method for use in a data communications apparatus for transmitting packet data on a time-division multiplexed bus, the method comprising the steps of:

coupling a plurality of packet data sources to the time-division multiplexed bus;

**allocating a portion of the bandwidth of the time-division multiplexed bus to the plurality of packet data sources in such a way that the allocated portion is shared among the plurality of packet data sources**;

**transmitting packet data from the plurality of packet data sources on the allocated portion of the bandwidth**; and

**controlling access by said packet data sources to the allocated portion of the bandwidth via a distributed packet manager within each of said packet data sources**.

Claim 20.   A method for transmitting packet data on a time-division multiplexed bus in data communications equipment, the method comprising the steps of:

**allocating a portion of the bandwidth of the time-division multiplexed bus as a multiple-access packet channel**;

coupling a plurality of packet data sources to the time-division multiplexed bus;

**controlling the access by said packet data sources to the allocated portion of the bandwidth via a distributed packet manager within each of said packet data sources**;

**transmitting packet data from the one of the plurality of packet data sources having access to the multiple-access packet channel**.

13

Claim 26.  The **method of claim 20** further comprising the **step of coupling a network access module to the time-division multiplexed bus for receiving the packet data for transmission over a network facility**.

**INTERROGATORY NO. 4:**

State in detail the circumstances under which Comcast first became aware of each of the patents-in-suit, identifying each person who first gained knowledge of each patent-in-suit and the circumstances under which that person became aware of the patent.

**RESPONSE TO INTERROGATORY NO. 4:**

Comcast incorporates its General Objections herein by reference.  Comcast further objects to this request on the grounds that its investigation of the facts is not yet complete and its answer to this interrogatory is therefore necessary preliminary.  Comcast reserves the right to supplement and/or amend its answer to this interrogatory as discovery progresses.  Comcast further objects to this interrogatory because it seeks the disclosure of information protected by the attorney-client privilege and the work product doctrine.  Subject to and without waiving the foregoing objections, Comcast responds as follows:  Comcast first became aware of each of the patents-in-suit upon the filing of the complaint in this action.

**INTERROGATORY NO. 5:**

Identify each cable modem, cable modem termination system, digital television receiver, and any other Accused Instrumentality that Comcast has made, used, sold, imported, or caused any of these acts, or any such device used in connection with any data network or cable television network owned or operated by Comcast, since June 26, 1990, and identify three persons affiliated with Comcast with the most knowledge concerning the information sought by this interrogatory.  For each product identified, include the manufacturer and model number, state whether Comcast makes, uses, sells, imports, or causes any of these acts.

14

CASE NO. 2:05CV443 (TJW)
Defendant Comcast Corporation's Responses to
Plaintiff Rembrandt Technologies, Inc.'s
First Set of Interrogatories

## RESPONSE TO INTERROGATORY NO. 5:

Comcast incorporates its General Objections herein by reference. Comcast further objects to this request on the grounds that its investigation of the facts is not yet complete and its answer to this interrogatory is therefore necessary preliminary. Comcast further objects to this interrogatory because it is overbroad and unduly burdensome in that it seeks information regarding the entire Comcast cable television network and data network covering approximately the last 16 years. Comcast further objects that this interrogatory is compound and contains multiple discreet subparts, and therefore should count as three interrogatories under Federal Rule of Civil Procedure 33(a). Comcast further objects to this interrogatory because it seeks premature disclosure of Comcast's expert witnesses and Comcast's positions regarding invalidity, non-infringement, and claim construction. <u>See</u> Local Patent Rule 2-5. Comcast further objects to this interrogatory because Defendants did not receive Plaintiffs' Preliminary Infringement Contentions and list of Accused Instrumentalities until approximately two weeks <u>after</u> these interrogatories were served. Comcast further objects to this interrogatory on the basis that Plaintiff's Preliminary Infringement Contentions and list of Accused Instrumentalities were improperly designated by Plaintiff as "Confidential", which has restricted Comcast's ability to disclose the Infringement Contentions and list of Accused Instrumentalities to third parties who may have information relevant to Comcast's response. Therefore, Comcast has been hindered in its factual investigation in this matter, and on that basis, objects to this interrogatory.

Comcast reserves the right to supplement or amend this answer based on additional investigation or analysis, orders by the Court, or in response to any proof offered by Rembrandt. Subject to and without waiving the foregoing objections, Comcast responds as follows: The cable modems that Comcast was able to determine that it has purchased are located in what is attached hereto as Exhibit A. The cable modem termination systems that Comcast was able to determine that it has purchased are located in what is attached hereto as Exhibit B. The digital

15

receivers that Comcast was able to determine that it has purchased are located in what is attached hereto as Exhibit C.

**INTERROGATORY NO. 6:**

For each cable modem and cable modem termination system identified in your response to Interrogatory No. 5 (collectively the "cable modem products"), state whether the cable modem product is compliant with any version of DOCSIS, and, if so, which version or versions, and explain in detail the basis for your contention, if any, that the cable modem or cable modem termination system is either (a) not compliant with DOCSIS 2.0, or (b) not compliant with any version of DOCSIS.

**RESPONSE TO INTERROGATORY NO. 6:**

Comcast incorporates its General Objections herein by reference. Comcast further objects to this interrogatory on the grounds that the information requested is not within Comcast's custody or control, as Comcast does not manufacture or develop any of the products or devices identified in response to Interrogatory No. 5. Comcast further objects to this interrogatory on the grounds that its investigation of the facts is not yet complete and its answer to this interrogatory is therefore necessary preliminary. Comcast further objects to this interrogatory because it is overbroad and unduly burdensome in that it seeks information regarding the entire Comcast cable television network and data network covering approximately the last 16 years. Comcast further objects to this interrogatory because it seeks premature disclosure of Comcast's expert witnesses and Comcast's positions regarding invalidity, non-infringement, and claim construction. See Local Patent Rule 2-5. Comcast further objects to this interrogatory because Defendants did not receive Plaintiffs' Preliminary Infringement Contentions and list of Accused Instrumentalities until approximately two weeks after these interrogatories were served. Comcast further objects to this interrogatory on the basis that

16

CASE NO. 2:05CV443 (TJW)
Defendant Comcast Corporation's Responses to
Plaintiff Rembrandt Technologies, Inc.'s
First Set of Interrogatories

Plaintiff's Preliminary Infringement Contentions and list of Accused Instrumentalities were

improperly designated by Plaintiff as "Confidential", which has restricted Comcast's ability to

disclose the Infringement Contentions and list of Accused Instrumentalities to third parties who

may have information relevant to Comcast's affirmative defenses. Therefore, Comcast has been

hindered in its factual investigation in this matter, and on that basis, objects to this interrogatory.

Comcast reserves the right to supplement or amend this answer based on additional

investigation or analysis, proposed claim constructions or constructions ordered by the Court, or

in response to any proof offered by Rembrandt. Subject to and without waiving the foregoing

objections, Comcast responds as follows: Upon information and belief, all cable modem

products identified in Comcast's response to Interrogatory No. 5 are compliant with one or more

versions of DOCSIS. To determine which versions of DOCSIS a particular cable modem

product is compliant with, Comcast refers Rembrandt to the user manuals for that product, which

will be produced as part of Comcast's initial document production.


**INTERROGATORY NO. 7:**

For each digital television receiver identified in your response to Interrogatory No. 5

(collectively the "ATSC products"), state whether the digital television receiver receives and/or

decodes signals generated by equipment that is compliant with the ATSC Digital Television

Standard. Explain in detail the basis for your contention, if any, that the digital television

receiver does not receive and/or decode signals generated by equipment that is compliant with

the ATSC Digital Television Standard.

**RESPONSE TO INTERROGATORY NO. 7:**

Comcast incorporates its General Objections herein by reference. Comcast further

objects to this interrogatory on the grounds that the information requested is not within

Comcast's custody or control, as Comcast does not manufacture or develop any of the products

CASE NO. 2:05CV443 (TJW)
Defendant Comcast Corporation's Responses to
Plaintiff Rembrandt Technologies, Inc.'s
First Set of Interrogatories

or devices identified in response to Interrogatory No. 5. Comcast further objects to this request

on the grounds that its investigation of the facts is not yet complete and its answer to this

interrogatory is therefore necessary preliminary. Comcast further objects to this interrogatory

because it is overbroad and unduly burdensome in that it seeks information regarding the entire

Comcast cable television network and data network covering approximately the last 16 years.

Comcast further objects that this interrogatory is compound and contains multiple discreet

subparts, and therefore should count as three interrogatories under Federal Rule of Civil

Procedure 33(a). Comcast further objects to this interrogatory because it seeks premature

disclosure of Comcast's expert witnesses and Comcast's positions regarding invalidity, non-

infringement, and claim construction. See Local Patent Rule 2-5. Comcast further objects to this

interrogatory because Defendants did not receive Plaintiffs' Preliminary Infringement

Contentions and list of Accused Instrumentalities until approximately two weeks after these

interrogatories were served. Comcast further objects to this interrogatory on the basis that

Plaintiff's Preliminary Infringement Contentions and list of Accused Instrumentalities were

improperly designated by Plaintiff as "Confidential", which has restricted Comcast's ability to

disclose the Infringement Contentions and list of Accused Instrumentalities to third parties who

may have information relevant to Comcast's affirmative defenses. Therefore, Comcast has been

hindered in its factual investigation in this matter, and on that basis, objects to this interrogatory.

Comcast reserves the right to supplement or amend this answer based on additional

investigation or analysis, proposed claim constructions or constructions ordered by the Court, or

in response to any proof offered by Rembrandt. Subject to and without waiving the foregoing

objections, Comcast responds as follows: Each digital television receiver identified by Comcast

in response to Interrogatory No. 5 is compliant with the ATSC Digital Television Standard.

18

**INTERROGATORY NO. 8:**

For each product identified in your response to Interrogatory No. 5 used by Comcast or used in connection with any data or cable network owned or operated by Comcast, explain in detail the manner in which the product is used.

**RESPONSE TO INTERROGATORY NO. 8:**

Comcast incorporates its General Objections herein by reference. Comcast further objects to this request on the grounds that its investigation of the facts is not yet complete and its answer to this interrogatory is therefore necessary preliminary. Comcast further objects to this interrogatory because it is vague, overbroad and unduly burdensome in that it seeks information regarding the entire Comcast cable television network and data network covering approximately the last 16 years. Comcast further objects to this interrogatory because it seeks premature disclosure of Comcast's expert witnesses and Comcast's positions regarding invalidity, non-infringement, and claim construction. See Local Patent Rule 2-5. Comcast further objects to this interrogatory because Defendants did not receive Plaintiffs' Preliminary Infringement Contentions and list of Accused Instrumentalities until approximately two weeks after these interrogatories were served. Comcast further objects to this interrogatory on the basis that Plaintiff's Preliminary Infringement Contentions and list of Accused Instrumentalities were improperly designated by Plaintiff as "Confidential", which has restricted Comcast's ability to disclose the Infringement Contentions and list of Accused Instrumentalities to third parties who may have information relevant to Comcast's affirmative defenses. Therefore, Comcast has been hindered in its factual investigation in this matter, and on that basis, objects to this interrogatory.

Comcast reserves the right to supplement or amend this answer based on additional investigation or analysis, proposed claim constructions or constructions ordered by the Court, or in response to any proof offered by Rembrandt. Subject to and without waiving the foregoing objections, Comcast responds as follows:

19

The cable modems identified in Comcast's Response to Interrogatory No. 5 are components installed at the Comcast subscriber end, which are used to permit Comcast subscribers to connect their computers to the internet via the Comcast network.

The cable modem termination systems identified in Comcast's Response to Interrogatory No. 5 are components deployed with Comcast Regional Headend facilities, and installed between the Comcast subscribers' cable modems and the Comcast network, which are used to provide control of, and communications with the cable modems.

The digital receivers identified in Comcast's Response to Interrogatory No. 5 are used to receive digital television signals that are transmitted in compliance with the ATSC Digital Television Standard.

## INTERROGATORY NO. 9:

For each product identified in your response to Interrogatory No. 5, explain in detail the manner in which the product is acquired by Comcast and, where applicable, distributed to an end-user, including an identification of each step in the supply chain, beginning with the manufacturer of the product, and ending with the installation at the end-user's location.

## RESPONSE TO INTERROGATORY NO. 9:

Comcast incorporates its General Objections herein by reference. Comcast further objects to this request on the grounds that its investigation of the facts is not yet complete and its answer to this interrogatory is therefore necessary preliminary. Comcast further objects to this interrogatory because it is vague, overbroad and unduly burdensome in that it seeks information regarding the entire Comcast cable television network and data network covering approximately the last 16 years. Comcast further objects to this interrogatory because Defendants did not receive Plaintiffs' Preliminary Infringement Contentions and list of Accused Instrumentalities until approximately two weeks after these interrogatories were served. Comcast further objects

20

CASE NO. 2:05CV443 (TJW)
Defendant Comcast Corporation's Responses to
Plaintiff Rembrandt Technologies, Inc.'s
First Set of Interrogatories

to this interrogatory on the basis that Plaintiff's Preliminary Infringement Contentions and list of Accused Instrumentalities were improperly designated by Plaintiff as "Confidential", which has restricted Comcast's ability to disclose the Infringement Contentions and list of Accused Instrumentalities to third parties who may have information relevant to Comcast's affirmative defenses. Therefore, Comcast has been hindered in its factual investigation in this matter, and on that basis, objects to this interrogatory.

Comcast reserves the right to supplement or amend this answer based on additional investigation or analysis, proposed claim constructions or constructions ordered by the Court, or in response to any proof offered by Rembrandt. Subject to and without waiving the foregoing objections, Comcast responds as follows: The products listed in Exhibits A, B, and C are acquired by Comcast directly from the company that is listed next to a particular product. Upon information and belief, CMTS products are installed at various Comcast Headends. Cable modems are installed in subscribers' homes. Digital Receivers are deployed at various Comcast local systems as needed to receive over-the-air digital broadcasts.

**INTERROGATORY NO. 10:**

For each applicable product identified in your response to Interrogatory No. 5, identify the person or persons involved in the design or development of the product's software, firmware, or other instructions intended to be executed by a processor or microprocessor. If a natural person is identified, identify the person's employer (if any), and state the person's address and telephone number. If a corporate person is identified, state the person's principal place of business, the address at which the software or firmware development takes place, and identify the natural person or persons responsible for such development.

CASE NO. 2:05CV443 (TJW)
Defendant Comcast Corporation's Responses to
Plaintiff Rembrandt Technologies, Inc.'s
First Set of Interrogatories

## RESPONSE TO INTERROGATORY NO. 10:

Comcast incorporates its General Objections herein by reference. Comcast further objects to this interrogatory on the grounds that the information requested is not within Comcast's custody or control, as Comcast does not manufacture or develop any of the products or devices identified in response to Interrogatory No. 5. Comcast further objects to this request on the grounds that its investigation of the facts is not yet complete and its answer to this interrogatory is therefore necessary preliminary. Comcast further objects to this interrogatory because it is overbroad and unduly burdensome in that it seeks information regarding the entire Comcast cable television network and data network covering approximately the last 16 years. Comcast further objects to this interrogatory because Defendants did not receive Plaintiffs' Preliminary Infringement Contentions and list of Accused Instrumentalities until approximately two weeks <u>after</u> these interrogatories were served. Comcast further objects to this interrogatory on the basis that Plaintiff's Preliminary Infringement Contentions and list of Accused Instrumentalities were improperly designated by Plaintiff as "Confidential", which has restricted Comcast's ability to disclose the Infringement Contentions and list of Accused Instrumentalities to third parties who may have information relevant to Comcast's affirmative defenses. Therefore, Comcast has been hindered in its factual investigation in this matter, and on that basis, objects to this interrogatory.

Comcast reserves the right to supplement or amend this answer based on additional investigation or analysis, proposed claim constructions or constructions ordered by the Court, or in response to any proof offered by Rembrandt. Subject to and without waiving the foregoing objections, Comcast responds as follows: Comcast refers plaintiff to the Exhibits A, B, and C, attached hereto, which list the manufacturer for each of the products and devices identified in Comcast's response to Interrogatory No. 5.

22

**INTERROGATORY NO. 11:**

For each product identified in your response to Interrogatory No. 5, identify all communications between Comcast and the manufacturer of the product relating to the product.

**RESPONSE TO INTERROGATORY NO. 11:**

Comcast incorporates its General Objections herein by reference. Comcast further objects to this request on the grounds that its investigation of the facts is not yet complete and its answer to this interrogatory is therefore necessary preliminary. Comcast further objects to this interrogatory because it is overbroad, unduly burdensome, and oppressive in that it seeks information regarding the entire Comcast cable television network and data network covering approximately the last 16 years. Comcast further objects to this interrogatory because it is overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of relevant information in that it requests all communications between Comcast and numerous manufacturers, regardless of whether such communications have any bearing on the subject matter of this lawsuit. Comcast further objects to this interrogatory because Defendants did not receive Plaintiffs' Preliminary Infringement Contentions and list of Accused Instrumentalities until approximately two weeks _after_ these interrogatories were served. Comcast further objects to this interrogatory on the basis that Plaintiff's Preliminary Infringement Contentions and list of Accused Instrumentalities were improperly designated by Plaintiff as "Confidential", which has restricted Comcast's ability to disclose the Infringement Contentions and list of Accused Instrumentalities to third parties who may have information relevant to Comcast's affirmative defenses. Therefore, Comcast has been hindered in its factual investigation in this matter, and on that basis, objects to this interrogatory.

CASE NO. 2:05CV443 (TJW)
Defendant Comcast Corporation's Responses to
Plaintiff Rembrandt Technologies, Inc.'s
First Set of Interrogatories

**INTERROGATORY NO. 12:**

State with specificity Comcast's revenues derived from each cable modem product (specified by manufacturer and model), including the revenues by month Comcast derives from the provision of data service through the specified cable modem product, separately including equipment rental fees, service provision fees, and any other type of fee or charge for the use of Comcast's cable modem network, cable modem, or cable modem head-end, and identify three persons affiliated with Comcast with the most knowledge concerning the information sought by this interrogatory.

**RESPONSE TO INTERROGATORY NO. 12:**

Comcast incorporates its General Objections herein by reference. Comcast further objects to the interrogatory to the extent that it calls for information protected by the attorney-client privilege, the work product immunity, or any other applicable privilege or immunity. Comcast further objects to the use of the term "cable modem product" in this interrogatory for the reasons set forth in its objections and responses to interrogatory number 5. Comcast further objects to this interrogatory to the extent that it suggests that the revenues associated with all of Comcast's services provided using a cable modem product are "derived from" the use of that cable modem product alone; Comcast does not agree with that statement and does not indicate its assent therein by providing its response to the interrogatory. Comcast further objects to this interrogatory to the extent it purports to require Comcast to break down its revenues by model number or manufacturer of cable modem products, which is not a manner in which it tracks, or has any rational business reason to track, its revenues; being required to undertake a project to break down its revenues in that manner would be highly burdensome and entirely not calculated to lead to the discovery of admissible evidence. Comcast further objects to this interrogatory to the extent that it contains no reasonable time limitation upon the information it seeks; Comcast will provide responsive information only since 1999. Comcast further objects to this

24

interrogatory as vague, overbroad, and compound to the extent that it purports to require Comcast to provide the identities of three persons most knowledgeable about the "information sought by this interrogatory." The interrogatory could be viewed as dealing with the different sorts of cable modem products used by Comcast or Comcast's revenues. Without knowing with more specificity the type of information sought herein, Comcast is unable to identify which persons would have the most knowledge of that information. Subject to and without waiving the foregoing objections, Comcast responds as follows: Pursuant to Federal Rule of Civil Procedure 33(d), Comcast refers Rembrandt to the electronic business records produced along with these responses. The burden of ascertaining the information Rembrandt seeks from those records is the same for Rembrandt as it would be for Comcast.

**INTERROGATORY NO. 13:**

State with specificity Comcast's revenues derived from each ATSC product, including a list of ATSC products (specified by manufacturer and model), including the revenues by month Comcast derives from customers who receive signals originally received from the specified ATSC product, separately including equipment rental fees, service provision fees, and any other type of fee or charge for cable television service, or any tier or service level thereof, and identify three persons affiliated with Comcast with the most knowledge concerning the information sought by this interrogatory.

**RESPONSE TO INTERROGATORY NO. 13:**

Comcast incorporates its General Objections herein by reference. Comcast further objects to the interrogatory to the extent that it calls for information protected by the attorney-client privilege, the work product immunity, or any other applicable privilege or immunity. Comcast further objects to the use of the term "ATSC product" in this interrogatory for the reasons set forth in its objections and responses to interrogatory number 5. Comcast further

25

objects to this interrogatory to the extent that it suggests that the revenues associated with all of Comcast's services provided using an ATSC product are "derived from" the use of signals originally received from that ATSC product alone; Comcast does not agree with that statement and does not indicate its assent therein by providing its response to the interrogatory. Comcast further objects to this interrogatory to the extent it purports to require Comcast to break down its revenues by model number or manufacturer of ATSC products, which is not a manner in which it tracks, or has any rational business reason to track, its revenues; being required to undertake a project to break down its revenues in that manner would be highly burdensome and entirely not calculated to lead to the discovery of admissible evidence. Comcast further objects to this interrogatory to the extent that it contains no reasonable time limitation upon the information it seeks; Comcast will provide responsive information only since 1999. Comcast further objects to this interrogatory as vague, overbroad, and compound to the extent that it purports to require Comcast to provide the identities of three persons most knowledgeable about the "information sought by this interrogatory." The interrogatory could be viewed as dealing with the different sorts of ATSC products used by Comcast or Comcast's revenues. Without knowing with more specificity the type of information sought herein, Comcast is unable to identify which persons would have the most knowledge of that information. Subject to and without waiving the foregoing objections, Comcast responds as follows: Pursuant to Federal Rule of Civil Procedure 33(d), Comcast refers Rembrandt to the electronic business records produced along with these responses. The burden of ascertaining the information Rembrandt seeks from those records is the same for Rembrandt as it would be for Comcast.


**INTERROGATORY NO. 14:**

Explain in detail all manners in which Comcast receives over-the-air TV signals according to the Terrestrial Broadcast provisions of the ATSC Digital TV Standard, and

26

transmits such signals to its customers since September 7, 1993, and identify three persons affiliated with Comcast with the most knowledge concerning the information sought by this interrogatory.

**RESPONSE TO INTERROGATORY NO. 14:**

Comcast incorporates its General Objections herein by reference. Comcast further objects to this interrogatory on the grounds that the information requested is not within Comcast's custody or control, as Comcast does not manufacture or develop any of the products or devices identified in response to Interrogatory No. 5. Comcast further objects to this request on the grounds that its investigation of the facts is not yet complete and its answer to this interrogatory is therefore necessary preliminary. Comcast further objects to this interrogatory because it is overbroad and unduly burdensome in that it seeks information regarding the entire Comcast cable television network and data network covering approximately the last 13 years. Comcast further objects to this interrogatory because it seeks premature disclosure of Comcast's expert witnesses and Comcast's positions regarding invalidity, non-infringement, and claim construction. See Local Patent Rule 2-5. Comcast further objects to this interrogatory because Defendants did not receive Plaintiffs' Preliminary Infringement Contentions and list of Accused Instrumentalities until approximately two weeks after these interrogatories were served. Comcast further objects to this interrogatory on the basis that Plaintiff's Preliminary Infringement Contentions and list of Accused Instrumentalities were improperly designated by Plaintiff as "Confidential", which has restricted Comcast's ability to disclose the Infringement Contentions and list of Accused Instrumentalities to third parties who may have information relevant to Comcast's affirmative defenses. Therefore, Comcast has been hindered in its factual investigation in this matter, and on that basis, objects to this interrogatory.

Comcast reserves the right to supplement or amend this answer based on additional investigation or analysis, proposed claim constructions or constructions ordered by the Court, or

27

in response to any proof offered by Rembrandt. Subject to and without waiving the foregoing

objections, Comcast responds as follows: Comcast uses the digital receivers identified in

Comcast's Response to Interrogatory No. 5 to receive digital television signals that are

transmitted in compliance with the ATSC Digital Television Standard. Comcast does not

transmit digital television signals to its customers using the ATSC Digital Television Standard.

## INTERROGATORY NO. 15:

For each Accused Instrumentality identified in response to Interrogatory No. 5, identify

all persons involved in the conception, design or development of any such product, whether or

not such persons are currently or were previously employed by Comcast, and state the role that

each such person played in the conception, design or development.

## RESPONSE TO INTERROGATORY NO. 15:

Comcast incorporates its General Objections herein by reference. Comcast further

objects to this interrogatory on the grounds that the information requested is not within

Comcast's custody or control, as Comcast does not manufacture or develop any of the products

or devices identified in response to Interrogatory No. 5. Comcast further objects to this request

on the grounds that its investigation of the facts is not yet complete and its answer to this

interrogatory is therefore necessary preliminary. Comcast further objects to this interrogatory

because it is overbroad and unduly burdensome in that it seeks information regarding the entire

Comcast cable television network and data network covering approximately the last 16 years.

Comcast further objects to this interrogatory because Defendants did not receive Plaintiffs'

Preliminary Infringement Contentions and list of Accused Instrumentalities until approximately

two weeks <u>after</u> these interrogatories were served. Comcast further objects to this interrogatory

on the basis that Plaintiff's Preliminary Infringement Contentions and list of Accused

Instrumentalities were improperly designated by Plaintiff as "Confidential", which has restricted

28

CASE NO. 2:05CV443 (TJW)
Defendant Comcast Corporation's Responses to
Plaintiff Rembrandt Technologies, Inc.'s
First Set of Interrogatories

Comcast's ability to disclose the Infringement Contentions and list of Accused Instrumentalities to third parties who may have information relevant to Comcast's affirmative defenses. Therefore, Comcast has been hindered in its factual investigation in this matter, and on that basis, objects to this interrogatory.

Comcast reserves the right to supplement or amend this answer based on additional investigation or analysis, proposed claim constructions or constructions ordered by the Court, or in response to any proof offered by Rembrandt. Subject to and without waiving the foregoing objections, Comcast responds as follows: Comcast is not involved in the conception, design, or development of any of the Accused Instrumentalities identified in Comcast's response to Interrogatory No. 5.

**INTERROGATORY NO. 16:**

To the extent that persons other than Comcast sell or offer for sale any of the cable modem products or ATSC products on behalf of Comcast, or for use with any data network or cable television network owned or operated by Comcast, identify the persons, providing the address, telephone number, and person at each entity in charge of such activities, and the dates during which each entity performed such activities since June 26, 1990.

**RESPONSE TO INTERROGATORY NO. 16:**

Comcast incorporates its General Objections herein by reference. Comcast further objects to this request on the grounds that its investigation of the facts is not yet complete and its answer to this interrogatory is therefore necessary preliminary. Comcast further objects to this interrogatory because it is overbroad and unduly burdensome in that it seeks information regarding the entire Comcast cable television network and data network covering approximately the last 16 years. Comcast further objects to this interrogatory because Defendants did not receive Plaintiffs' Preliminary Infringement Contentions and list of Accused Instrumentalities

29

until approximately two weeks _after_ these interrogatories were served. Comcast further objects to this interrogatory on the basis that Plaintiff's Preliminary Infringement Contentions and list of Accused Instrumentalities were improperly designated by Plaintiff as "Confidential", which has restricted Comcast's ability to disclose the Infringement Contentions and list of Accused Instrumentalities to third parties who may have information relevant to Comcast's affirmative defenses. Therefore, Comcast has been hindered in its factual investigation in this matter, and on that basis, objects to this interrogatory.

Comcast reserves the right to supplement or amend this answer based on additional investigation or analysis, proposed claim constructions or constructions ordered by the Court, or in response to any proof offered by Rembrandt. Subject to and without waiving the foregoing objections, Comcast responds as follows: Persons other than Comcast do not sell or offer for sale any cable modem products or ATSC products on behalf of Comcast. For a listing of products used within the Comcast data network and cable television network, Comcast refers plaintiff to the Exhibits A, B, and C, attached hereto.

**INTERROGATORY NO. 17:**

Identify all persons involved in Comcast's marketing, accounting, design, and development of any of the cable modem products and ATSC products, including the provision of cable modem service, indicating for each person which activity each person is associated with.

**RESPONSE TO INTERROGATORY NO. 17:**

Comcast incorporates its General Objections herein by reference. Comcast further objects to this request on the grounds that its investigation of the facts is not yet complete and its answer to this interrogatory is therefore necessary preliminary. Comcast further objects to this interrogatory because it is overbroad and unduly burdensome in that it seeks information regarding the entire Comcast cable television network and data network covering approximately

30

the last 16 years. Comcast further objects to this interrogatory because Defendants did not receive Plaintiffs' Preliminary Infringement Contentions and list of Accused Instrumentalities until approximately two weeks after these interrogatories were served. Comcast further objects to this interrogatory on the basis that Plaintiff's Preliminary Infringement Contentions and list of Accused Instrumentalities were improperly designated by Plaintiff as "Confidential", which has restricted Comcast's ability to disclose the Infringement Contentions and list of Accused Instrumentalities to third parties who may have information relevant to Comcast's affirmative defenses. Therefore, Comcast has been hindered in its factual investigation in this matter, and on that basis, objects to this interrogatory.

Comcast reserves the right to supplement or amend this answer based on additional investigation or analysis, proposed claim constructions or constructions ordered by the Court, or in response to any proof offered by Rembrandt. Subject to and without waiving the foregoing objections, Comcast responds as follows: Comcast is not involved in the design or development of any of the cable modem products and ATSC products identified in Comcast's response to Interrogatory No. 5. Persons involved in Comcast's marketing of the cable modem products and ATSC products include: Tom White, Suzanne McFadden, John Vonk, and David Juliano. Persons involved in Comcast's accounting of the cable modem products and ATSC products include: Gary Rostick, Ernie Pighini, and Marc Sirota. Contact information for each of these individuals is included as part of Comcast's Initial Disclosures, submitted on June 1, 2006.

## INTERROGATORY NO. 18:

List every patent that includes one or more claims that cover any of the cable modem products or ATSC products, and for each listed patent, include the name and address of the patent owner, identify the cable modem or ATSC product(s) covered by the patent, and identify

31

the claim or claims covering the cable modem or ATSC product(s), and identify with specificity any licensing agreement Comcast has entered with respect to the patent.

**RESPONSE TO INTERROGATORY NO. 18:**

Comcast incorporates its General Objections herein by reference. Comcast further objects to this request on the grounds that its investigation of the facts is not yet complete and its answer to this interrogatory is therefore necessary preliminary. Comcast further objects to this interrogatory on the grounds that the information requested is not within Comcast's custody or control, as Comcast does not manufacture or develop any of the products or devices identified in response to Interrogatory No. 5. Comcast further objects to this interrogatory to the extent if calls for attorney work product or attorney client communications, or any other applicable privilege. Comcast further objects to this interrogatory because Defendants did not receive Plaintiffs' Preliminary Infringement Contentions and list of Accused Instrumentalities until approximately two weeks _after_ these interrogatories were served. Comcast further objects to this interrogatory on the basis that Plaintiff's Preliminary Infringement Contentions and list of Accused Instrumentalities were improperly designated by Plaintiff as "Confidential", which has restricted Comcast's ability to disclose the Infringement Contentions and list of Accused Instrumentalities to third parties who may have information relevant to Comcast's affirmative defenses. Therefore, Comcast has been hindered in its factual investigation in this matter, and on that basis, objects to this interrogatory.

Comcast reserves the right to supplement or amend this answer based on additional investigation or analysis, proposed claim constructions or constructions ordered by the Court, or in response to any proof offered by Rembrandt. Subject to and without waiving the foregoing objections, Comcast responds as follows: Comcast is still investigating whether there are other patents that could be read to include one or more claims that cover any of the cable modem products or ATSC products. Comcast will supplement this answer in the event that it discovers

32

CASE NO. 2:05CV443 (TJW)
Defendant Comcast Corporation's Responses to
Plaintiff Rembrandt Technologies, Inc.'s
First Set of Interrogatories

any such patents.  Comcast further asserts that its use of accused devices purchased by third

parties is protected by patent law's first-sale doctrine.  Comcast does not have information

sufficient to identify such patents at this time.

Dated:  June 5, 2006

By: _____
Eric H. MacMichael

Brian Ferrall
Daralyn Durie
Leo L. Lam
Eric H. MacMichael
KEKER & VAN NEST LLP
710 Sansome Street
San Francisco, CA  94111-1724

Telephone:  (415) 391-5400
Facsimile:  (415) 397-7188

Jennifer Haltom Doan
HALTOM & DOAN, LLP
6500 N. Summerhill Road, Suite 1A
P.O. Box 6227
Texarkana, TX  75505-6227

Telephone:  (903) 255-1000
Facsimile:  (903) 255-0800
Attorneys for Defendant
COMCAST CORPORATION

33

Exhibit A

## Rembrandt Technologies, LP v. Comcast Corporation, et al.
### CABLE MODEMS

| VENDOR | MODEL | QUANTITY |
|---|---|---|
| 3Com | 3CR29220 | 79,720 |
| 3Com | 3CR29221 | 1,099 |
| 3Com | 3CR29223: USB Cable Modem | 19,285 |
| 3Com | 3CR29241: USB Cable Modem | 21 |
| 3Com | OfficeConnect 3CR29210 | 6 |
| 3Com | US Robotics: CMX Cable Modem | 22,813 |
| AM Communications | MAM-9362 Transponder | 20,345 |
| Ambit Microsystems Corp. | CM 60194E: Ethernet/USB Cable Modem | 12,607 |
| Ambit Microsystems Corp. | CM 60678E | 22,524 |
| Ambit Microsystems Corp. | CM 60678EU: Ethernet/USB Cable Modem | 681 |
| Ambit Microsystems Corp. | U10C018 | 104,244 |
| Arcwavell | BRM-35202 (Arcwave Wireless Bypass) | 16 |
| Arris | CM300A | 1,171 |
| Arris | CM450A | 1,639 |
| Arris | DOCSIS Cable Modem | 4 |
| Arris | TC00DA103 | 37 |
| Arris | TM402P | 626,016 |
| Arris | TTM202P | 15 |
| Belkin | F5D5530-W | 3,303 |
| Best Data Products Inc. | CMX300V2 | 4,474 |
| Best Data Products Inc. | Smart One CMX 100 Cable Modem | 1,780 |
| Best Data Products Inc. | Smart One CMX 110 Cable Modem | 8,760 |
| Best Data Products Inc. | Smart One CMX 300 Cable Modem | 473 |
| CastleNet | CXC110-Dual Link | 2,743 |
| CastleNet | CXC150 | 3,638 |
| CastleNet | CXC250 | 25,707 |
| Cisco Systems | uBR905 Cable Access Router | 5,769 |
| Cisco Systems | uBR924 | 30 |
| Cisco Systems | uBR925 | 20 |
| Com21 | CP3001 | 2,426 |
| Com21 | DOXport 101 | 3 |
| Com21 | DOXport 111 | 19,896 |
| Com21 | DOXport 1110 XB | 613 |

**Rembrandt Technologies, LP v. Comcast Corporation, et al.**

CABLE MODEMS

| VENDOR | MODEL | QUANTITY |
|---|---|---|
| Com21 | DOXport 1110: 10/100 Ethernet/USB Cable Modem | 38,236 |
| Com21 | DOXport 121 | 2 |
| Com21 | DOXport 5020 | 2 |
| D-Link Systems | DCM-100 Ethernet Cable Modem | 2,401 |
| D-Link Systems | DCM-200 Ethernet/USB Cable Modem | 13,087 |
| D-Link Systems | DCM-201 Ethernet/USB Cable Modem | 8,217 |
| D-Link Systems | DCM-202 Ethernet/USB Cable Modem | 95,915 |
| Electroline | DHT-PS-NA-01 Transponder | 26,191 |
| Ericsson | HM200C PipeRider Cable Modem | 105 |
| Ericsson | PipeRider CableModem ZAT 510 102 | 18 |
| General Instrument | SB2100 | 3,112 |
| General Instrument | SB2100D | 6,899 |
| General Instrument | SB3100 | 14,994 |
| HighSpeed Surfing | SM100 | 4,523 |
| HighSpeed Surfing | SM200 | 11 |
| Hitron Technologies | BRG-3520 | 239 |
| Hitron Technologies | BRM-35202 | 1 |
| Linksys | BEFCMU10 | 30,217 |
| Linksys | BEFCMU10 Version 2 | 93,485 |
| Linksys | BEFCMU10 Version 4 | 53,343 |
| Linksys | BEFCMUH10 Version 3 | 154,990 |
| Linksys | BEFCMUH4 Cable Gateway | 4,017 |
| Linksys | WCG200 Comcast | 127,271 |
| Linksys | WCG200 Retail | 30,693 |
| Linksys | WCG200v2 Comcast | 486 |
| Linksys | WCG200v2 Retail | 10,967 |
| Motorola | MMLN3150A | 214 |
| Motorola | SBG1000 | 1,962 |
| Motorola | SBV4200 | 102 |
| Motorola | SURFboard 3100 | 199,391 |
| Motorola | SURFboard 4000 | 26 |
| Motorola | SURFboard 4100 | 468,698 |
| Motorola | SURFboard 4101 | 15,812 |

## Rembrandt Technologies, LP v. Comcast Corporation, et al.
### CABLE MODEMS

| VENDOR | MODEL | QUANTITY |
|---|---|---|
| Motorola | SURFboard 4200 | 368,851 |
| Motorola | SURFboard 4220 | 220,983 |
| Motorola | SURFboard 5100 | 1,044,327 |
| Motorola | SURFboard 5101 | 555,367 |
| Motorola | SURFboard 5120 | 1,608,989 |
| Motorola | SURFboard SBG900 | 19,365 |
| NetGear | CG814CCR-V2 | 31 |
| NetGear | CG814M | 629 |
| NetGear | CG814Mv2 | 19 |
| NetGear | CG814W Wireless Cable Modem Gateway | 57 |
| NetGear | CG814WG | 65,738 |
| NetGear | CG814WGv2 | 48,360 |
| NetGear | CM212 | 2,098 |
| Nortel | CM6220-B4-R1 |  |
| Nortel | CM6220-B4-R1 |  |
| Nortel | CM6220-B4-R1 | 6 |
| Samsung | SCM-120U: USB Cable Modem | 1 |
| Samsung | SCM-140U: USB Cable Modem | 11 |
| Scientific-Atlanta | WebSTAR Model DPC-2100 | 718,135 |
| Scientific-Atlanta | WebSTAR Model DPR-300 | 17 |
| Scientific-Atlanta | WebSTAR Model DPX-100 Cable Modem | 67,001 |
| Scientific-Atlanta | WebSTAR Model DPX-110 Cable Modem | 18,741 |
| Scientific-Atlanta | WebSTAR Model DPX-2100 | 148,045 |
| SMC Networks | CM3503B-CSMC8011CM-B | 42 |
| SMC Networks | SMC 8002CM | 641 |
| SMC Networks | SMC8004CM | 232 |
| SMC Networks | SMC8012WG | 2 |
| SMC Networks | SMC8013WG-CCR | 87,123 |
| Speedstream | SpeedStream Cable Modem | 1,580 |
| TCE | DCM 105 | 16,318 |
| TCE | DCM 205 | 7,107 |
| Terayon Communication Systems | DOCSIS Cable Modem | 788 |

374239                                    3

**Rembrandt Technologies, LP v. Comcast Corporation, et al.**
## CABLE MODEMS

| VENDOR | MODEL | QUANTITY |
|---|---|---|
| Terayon Communication Systems | Terajet ECM615 | 40,394 |
| Terayon Communication Systems | Terajet ECM715 | 650,293 |
| Terayon Communication Systems | Terajet ECM716x | 155 |
| Thomson | DCM215 | 40,024 |
| Thomson | DCM225 | 17,961 |
| Thomson | DCM235/235R | 121,511 |
| Thomson | DCM245/245R | 273,209 |
| Thomson | DCM305 | 38,997 |
| Thomson | DCM315 | 407,906 |
| Thomson | DCM325 | 137,057 |
| Thomson | DCM425 | 654,878 |
| Thomson | DCW615 | 1,155 |
| Thomson | DCW725 | 7,444 |
| Thomson | RCA DCM226 | 6,071 |
| Thomson | TCM305 | 84,499 |
| Tollgrade Communications, Inc | 1.0.0 | 206 |
| Tollgrade Communications, Inc | 1.0.0-EXT 1 | 2,121 |
| Tollgrade Communications, Inc | CMD-P | 510 |
| Toshiba | DOCSIS Cable Modem | 63 |
| Toshiba | DOCSIS Cable Modem | 1 |
| Toshiba | DOCSIS Cable Modem | 7,388 |
| Toshiba | DOCSIS Cable Modem | 2,988 |
| Toshiba | DOCSIS Cable Modem | 23,229 |
| Toshiba | DOCSIS Cable Modem | 18,242 |
| Toshiba | PCX1000/DAZ8801F | |
| Toshiba | PCX1100U/DAZ8813 | 37,126 |
| Toshiba | PCX2000/DAZ8820 | 11,580 |
| Toshiba | PCX2200/DAZ8817 | 42,816 |
| Toshiba | PCX2500 | 2,048 |
| Toshiba | PCX2600 | 13,287 |
| Toshiba | PCX5000 | 674 |

Rembrandt Technologies, LP v. Comcast Corporation, et al.
## CABLE MODEMS

| VENDOR | MODEL | QUANTITY |
|---|---|---|
| U.S. Robotics | USR6000: Cable Modem | 152 |
| Zoom Telephonics | Ethernet (10Base-T) 5011 | 1,344 |
| Zoom Telephonics | PCI 5001 | 116 |
| Zoom Telephonics | USB 5031/5041 | 2,647 |
| ZyXEL | 941 | 5 |
| ZyXEL | Prestige 944S | 10 |

Exhibit B

Rembrandt Technologies, LP v. Comcast Corporation, et al.

CMTS

| VENDOR | MODEL | QUANTITY |
|--------|-------|----------|
| Cisco | UBR | 1403 |
| Arris | C4 | 419 |
| Motorola | BSR | 94 |

Exhibit C

Rembrandt Technologies, LP v. Comcast Corporation, et al.

## Digital Receivers

| VENDOR | MODEL | QUANTITY |
|---|---|---|
| KTECH Telecommunications Inc. | 200 | 10 |
| KTECH Telecommunications Inc. | DCC-150 | 7 |
| KTECH Telecommunications Inc. | DDR-150 | 23 |
| KTECH Telecommunications Inc. | DVM100 | 7 |
| KTECH Telecommunications Inc. | DVM-100 | 8 |
| KTECH Telecommunications Inc. | DVM-150 | 22 |
| KTECH Telecommunications Inc. | VSB FRQ200 | 10 |
| Samsung | SIR-T151 | 1 |
| Samsung | SIR-T351 | 1 |
| Samsung | SIR-T451 | 2 |
| Scientific-Atlanta | D6239 | 24 |
| Sencore | 3384A | 1 |
| Sencore | AT982 | 4 |
| Sencore | AT983 | 1 |
| Sencore | DM3382 | 3 |
| Sencore | IRD3381 | 3 |
| Terayon | CP 7585 | 131 |
| Terayon | CP 7586 | 38 |
| U.S. Digital | DB2010 | 1 |
| VideoTek | DDM540 | 1 |
| Wegener | DTV700 | 14 |
| Wegener | DTV701 | 6 |
| Wegener | DTV742 | 3 |

1   PROOF OF SERVICE

2   I am employed in the City and County of San Francisco, State of California in the office of a
    member of the bar of this court at whose direction the following service was made. I am over the
3   age of eighteen years and not a party to the within action. My business address is Keker & Van
    Nest, LLP, 710 Sansome Street, San Francisco, California 94111.
4

5   On June 5, 2006, I served the following document(s):

6   **COMCAST'S RESPONSES TO PLAINTIFF'S FIRST SET OF**
    **INTERROGATORIES**
7

8   Select   by regular **UNITED STATES MAIL** by placing a true and correct copy in a sealed envelope addressed as
             shown below. I am readily familiar with the practice of Keker & Van Nest, LLP for collection and
9            processing of correspondence for mailing. According to that practice, items are deposited with the United
             States Postal Service at San Francisco, California on that same day with postage thereon fully prepaid. I
10           am aware that, on motion of the party served, service is presumed invalid if the postal cancellation date or
             the postage meter date is more than one day after the date of deposit for mailing stated in this affidavit.
11

12   Michael H. Bunis, Esq.                    Otis Carroll, Esq.
     Frank E. Scherkenbach, Esq.               Wesley Hill, Esq.
13   Lawrence K. Kolodney, Esq.                Ireland, Carroll & Kelley, P.C.
     Fish & Richardson, P.C.                   6101 S. Broadway, Suite 500
14   225 Franklin Street                       Tyler, TX  75703
     Boston, MA  02110
15

16   Executed on June 5, 2006, at San Francisco, California.

17   I, Aaron L. Madfes, declare under penalty of perjury under the laws of the State of California
18   that the above is true and correct.

19

20

21

22

23

24

25

26

27

28

PROOF OF SERVICE
CASE NO. 2:05cv443

# EXHIBIT C

# FISH & RICHARDSON P.C.

225 Franklin Street
Boston, Massachusetts
02110-2804

Telephone
617 542-5070

Facsimile
617 542-8906

Web Site
www.fr.com

Frederick P. Fish
1855-1930

W.K. Richardson
1859-1951

**VIA EMAIL**

November 1, 2006

Eric MacMichael
Keker & Van Nest LLP
710 Sansome Street
San Francisco, CA 94111

Re:   Rembrandt Technologies, LP v. Comcast Corp. et al.
        USDC-E.D. TX (Marshall) - Civil Action No. 2:05-cv-00443-TJW

**FR**

ATLANTA

AUSTIN

BOSTON

DALLAS

DELAWARE

NEW YORK

SAN DIEGO

SILICON VALLEY

TWIN CITIES

WASHINGTON, DC

Dear Eric:

In Rembrandt's preliminary infringement contentions, we provided extensive analysis as to why the Accused Instrumentalities infringe the patents-in-suit. Our analysis of the source code in escrow, thus far, confirms our previously-submitted analysis. It is Rembrandt's position that Judge Ward's P.R. 3-1(h) does not require us to supplement our infringement contentions in this situation. Rather, we believe that we are permitted to rely on our original infringement contentions, and use at trial any evidence produced during discovery to support those contentions, including source code. If, however, future review of source code requires Rembrandt to amend its substantive infringement contentions, we believe that we are permitted to do so in compliance with Judge Ward's rule.

If Comcast's understanding differs, please let us know at your earliest convenience so that we may ask the Court for clarification.

Very truly yours,

Thomas A. Brown

21466962.doc

# EXHIBIT D

LAW OFFICES
## KEKER & VAN NEST
### LLP

710 SANSOME STREET
SAN FRANCISCO, CA 94111-1704
TELEPHONE (415) 391-5400
FAX (415) 397-7188
WWW.KVN.COM

ERIC H. MacMICHAEL
EMACMICHAEL@KVN.COM

November 3, 2006

**VIA E-MAIL**
Thomas Brown, Esq.
Fish & Richardson, P.C.
225 Franklin Street
Boston, MA 02110

     Re:    *Rembrandt Technologies, LP v. Comcast Corporation, et al.*

Dear Tom:

     I write to inform you that Comcast disagrees with Rembrandt's characterization of Judge Ward's P.R. 3-1(h), and the obligations imposed thereunder. Rule 3-1(h) states that:

> If a party claiming patent infringement asserts that a claim element is a software limitation, the party need not comply with P.R. 3-1 for those claim elements until 30 days after source code for each Accused Instrumentality is produced by the opposing party. Thereafter, the party claiming patent infringement shall identify, on an element-by-element basis for each asserted claim, what source code of each Accused Instrumentality allegedly satisfies the software limitations of the asserted claim elements.

     If Rembrandt contends that a claim element is a software limitation, please supplement your Preliminary Infringement Contentions immediately to "identify, on an element-by-element basis for each asserted claim, what source code of each Accused Instrumentality allegedly satisfies the software limitations of the asserted claim elements." If Rembrandt fails to comply with this requirement, it is Comcast's position that this rule prohibits Rembrandt from later relying on source code to prove that any claim limitation is satisfied by the Accused Instrumentality.

     Thank you for your attention to these matters. If you disagree, please do not hesitate to contact me and/or to discuss if this matter should be raised with the Court.

     Sincerely,

     Eric H. MacMichael

383646.03

Tom Brown, Esq.
Page 2



EHM:dc

cc:  BFerrall
     MWerdegar